Daniel Johnson Jr. (Bar No. 57409)
Sean P. DeBruine (Bar No. 168071)
Mario Moore (Bar No. 231644)
Robert G. Litts (Bar No. 205984)
DAN JOHNSON LAW GROUP, LLP
400 Oyster Point Blvd., Suite 321
South San Francisco, CA 94080
Telephone: (415) 604-4500
dan@danjohnsonlawgroup.com
sean@danjohnsonlawgroup.com
mario@danjohnsonlawgroup.com
robert@danjohnsonlawgroup.com

Attorneys for Defendant
UNITED MICROELECTRONICS CORPORATION

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| MICRON TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED MICROELECTRONICS CORPORATION, FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD., and DOES 1-10 <br><br> Defendants. | Case No. 4:17-CV-6932-JSW <br><br> DEFENDANT UNITED MICROELECTRONICS CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION <br><br> Judge: Hon. Jeffrey S. White <br> Courtroom: 5, 2nd Floor <br> Hearing date (preliminary): March 23, 2018 <br> Hearing time (preliminary): 9:00 a.m. |

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on March 23, 2018, at 9:00 a.m. or as soon thereafter as counsel may be heard, in Courtroom 5 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, defendant United Microelectronics Corporation ("UMC") will and hereby does move this Court, pursuant to Fed. R. Civ. P. 12(b)(2), for an order dismissing the Complaint by plaintiff Micron Technology, Inc.

1  ("Micron") against it on the grounds that this Court lacks personal jurisdiction over UMC in this
2  matter.
3        As set forth more fully below in the Memorandum of Points and Authorities, the causes
4  of action asserted against UMC in the Complaint do not arise out of or relate to UMC's *de*
5  *minimis* contact with California.  To the contrary, Micron's causes of action arise out of and
6  relate to activities taking place entirely in the Republic of China ("ROC" or "Taiwan") and the
7  People's Republic of China ("PRC" or "Mainland China").  Moreover, all potential witnesses,
8  documents and other sources of evidence are located in Taiwan and/or Mainland China.  It is
9  likewise clear that California has no interest in the outcome of this litigation while Taiwan both
10 has an interest in, and is capable of, adjudicating Micron's claims.
11       California law and the Fourteenth Amendment to the United States Constitution require
12 that this action be dismissed because UMC and the allegations in the Complaint are insufficient
13 as a matter of law to allow this Court to find specific jurisdiction, and Micron did not bother to
14 assert general jurisdiction, as to do so would not be consistent with traditional notions of fair
15 play and substantial justice.  In short, this matter must be dismissed in its entirety.
16       This motion is based on this Notice of Motion and accompanying Memorandum of Points
17 and Authorities, the declarations of Robert G. Litts and Jennifer Wang filed herewith, all
18 pleadings and papers filed herein, and any argument of counsel or other matter as the Court may
19 allow.
20       Respectfully submitted,
21
22 Dated:  February 15, 2018      DAN JOHNSON LAW GROUP LLP
23       /s/ *Daniel Johnson Jr.*
24       Daniel Johnson, Jr.
25       *Attorneys for Defendant*
      UNITED MICROELECTRONICS
26       CORPORATION
27
28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

I. SUMMARY OF ARGUMENT ................................................................................................1

II. RELEVANT FACTS ................................................................................................................2

    A. The Parties..................................................................................................................2

    B. The Alleged Trade Secret Misappropriation in Taiwan.............................................3

    C. UMC's Lone Alleged Contact with California ..........................................................4

III. ARGUMENT ..........................................................................................................................5

    A. Micron Fails to Establish Specific Jurisdiction in This Court over its Claims Against UMC ...............................................................................................................5

    B. The Complaint Does Not Allege Facts That "Arise Out Of or Relate To Actions in This Jurisdiction".......................................................................................7

    C. Micron's Allegations That Files Were Uploaded to a Google Drive Account Do Not Confer Jurisdiction ........................................................................................9

    D. It Would Be Unreasonable for this Court to Assert Specific Personal Jurisdiction over UMC in This Case .......................................................................10

        1. Purposeful Interjection ................................................................................11

        2. Having to Defend Claims That Arose in Taiwan Would Be Unduly Burdensome for UMC..................................................................................12

        3. Sovereignty .................................................................................................12

        4. Forum State's Interest .................................................................................13

        5. Efficient Resolution....................................................................................13

        6. Convenient and Effective Relief for Plaintiff ............................................13

        7. Taiwan Is an Alternative Forum.................................................................14

CONCLUSION ..........................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*Anthony Cal., Inc. v. Fire Power Co.*,
   2015 U.S. Dist. LEXIS 190232 (C.D. Cal. Dec. 3, 2015) .................................................. 10

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995) ........................................................................................... 8

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ......................................................................................... 5

*Bristol-Meyers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017) ............................................................................................ 5, 6, 7

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ........................................................................................................ 7

*Cheng v. Boeing Co.*,
   708 F.2d 1406 (9th Cir. 1983) ....................................................................................... 14

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) .................................................................................................. 6, 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) .................................................................................................... 6, 7

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ............................................................................ 12, 13, 14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ........................................................................................................ 7

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
   649 F.2d 1266 (9th Cir. 1981) ............................................................................ 11, 12, 13

*Intermedics, Inc. v. Ventritex, Inc.*,
   822 F. Supp. 634 (N.D. Cal. 1993) .................................................................................. 9

*Kazakhstan v. Ketebaev*,
   2017 U.S. Dist. LEXIS 211198, (N.D. Cal. Dec. 21, 2017) ..................................... passim

-ii-

*OOO Brunswick Rail Mgmt. v. Sultanov*,
    2017 U.S. Dist. LEXIS 8374 (N.D. Cal. Jan. 20, 2017) ...................................................... 10

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) ............................................................................... 5, 12, 13

Schwarzenegger v. Fred Martin Motor Co.,
    374 F.3d 797 (9th Cir. 2004) ........................................................................................ 7, 8

*Sinatra v. National Inquirer*,
    854 F.2d 1191 (9th Cir. 1988) ......................................................................................... 12

*Ziegler v. Indian River County*,
    64 F.3d 470 (9th Cir. 1995) .......................................................................................... 8, 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF ARGUMENT

Micron filed suit against UMC in this Court, but it asserts claims arising entirely in a foreign country. Micron alleges that UMC, from its headquarters in Taiwan, recruited away employees of another Taiwanese company, now called Micron Memory Taiwan ("MMT"), and that those employees misappropriated MMT trade secrets and used them in their new jobs with UMC in Taiwan. Micron further alleges that the trade secrets were incorporated into DRAM technology developed by UMC, and that UMC has or will transfer that technology to co-defendant Fujian Jinhua Integrated Circuit Co. Ltd. ("Jinhua"), a Chinese company, so Jinhua can produce DRAM products in Mainland China.

It bears emphasis that Micron does not allege this court has general jurisdiction over UMC. It did not do so because it cannot. The alleged theft of trade secrets and other related claims allegedly occurred in Taiwan and took place no later than August 2016. Instead, Micron attempts to invoke this Court's specific jurisdiction over UMC based on a single contact between UMC and this District: a one-day visit by UMC employees to Santa Clara, California in October 2016, to attend a job fair held by a local semiconductor professional organization. That lone contact, which occurred well after the claims arose, as a matter of law does not satisfy the constitutional requirements to establish specific jurisdiction.

California law and the Due Process Clause of the Fourteenth Amendment require that Micron has the burden of establishing that its claims "arise from" UMC's contacts with California as is necessary to establish specific personal jurisdiction here. It failed to meet that burden in this case and therefore Micron's claims against UMC must be dismissed.

II.     **RELEVANT FACTS**

   A.     **The Parties**

Micron is a Delaware corporation headquartered in Boise, Idaho.  Complaint, ¶5.  Micron alleges that it has three locations within the Northern District of California but makes no claim that they are relevant to its claims.  Complaint, ¶5.  In 2013 Micron acquired a majority ownership interest in a Taiwanese DRAM manufacturer, Rexchip Electronics Corporation ("Rexchip"), which it then renamed Micron Memory Taiwan Co., Ltd ("MMT").  Declaration of Robert G. Litts filed herewith ("Litts Decl."), Ex. A at pp. 2, 9, 14-15, 33, 36-37, 47-48, 62-64, 73, 79, 87, and Exhibit 21.1; Ex. B at p. 26.

Micron alleges that UMC, as part of a plan with Jinhua, hired employees away from MMT in Taiwan, intending to obtain trade secrets regarding MMT's DRAM manufacturing technology.  Complaint, ¶6.  Micron alleges that it is the "sole owner of trade secrets in the Micron group of companies" and that "Micron in turn licenses its trade secrets to certain subsidiaries such as MMT to enable their business operations."  Complaint, ¶6.  Micron does not specifically allege that legal title to the trade secrets at issue passed to Micron Technology, Inc., or that they are licensed to MMT.  *Id.,* ¶47 ("all legal *or equitable* title in these trade secrets is reposed in Micron.").

UMC is incorporated under the laws of Taiwan, ROC and is headquartered in Hsinchu, Taiwan.  Complaint, ¶7; Litts Decl., Ex. C at p. 23.  UMC operates semiconductor fabrication plants where it manufactures, assembles, and tests semiconductor devices for its customers in accordance with the customers' designs.  *Id.*  In industry parlance, UMC acts as a "foundry" for its customers.  *Id.*  UMC has no manufacturing facilities in the United States.  *Id.* at pp. 28-29.  In support of its foundry business, which is one of the oldest and most advanced in the world, UMC makes significant investments in research and development ("R&D") relating to the semiconductor process technologies used by its wafer fabrication facilities.  *Id.* at pp. 23, 30, 35, 37, 52-53, 57.  That R&D is carried out in Taiwan.  *Id.* at p. 29.  A UMC subsidiary based in this District, UMC Group (USA), provides sales and marketing services for UMC pursuant to an agreement between UMC and UMC Group (USA).  *Id.* at pp. 35, 75; Ex. D.  Micron's

Complaint contains no allegations that UMC Group (USA) played any role in the acts or events giving rise to Micron's claims.

Jinhua is allegedly a Chinese company controlled by the Fujian Province of the PRC. Complaint, ¶8. Jinhua was allegedly formed for the purpose of manufacturing DRAM products in Mainland China. *Id.*, ¶2. Micron alleges that UMC entered into an agreement with Jinhua for UMC to develop DRAM technology that Jinhua will use to fabricate such products at a facility in Mainland China. *Id.*, ¶¶2, 8, 31.

### B.     The Alleged Trade Secret Misappropriation in Taiwan

Micron alleges that UMC and Jinhua engaged in a scheme to "recruit key personnel" from MMT to work for UMC, and to induce those former employees "to misappropriate electronic and paper files containing Micron trade secrets from MMT and deliver those trade secrets to UMC." Complaint, ¶2. Those trade secrets were then to be "incorporated . . . into technologies that [UMC] transferred and/or plans to transfer to Jinhua to enable Jinhua to mass produce advanced DRAM products" in Mainland China. *Id.* Micron identifies three former Rexchip employees who left after the Micron acquisition to work for UMC, and a fourth UMC employee who did not work for Micron, *id.*, ¶¶9-12, as involved in the acts of alleged misappropriation. According to Micron, Stephen Chen ("Chen") left MMT in 2015 to join UMC as a Senior Vice President to lead the effort to develop the DRAM technology to fulfill UMC's agreement with Jinhua. *Id.*, ¶¶9, 25. Micron does not accuse Chen of improperly taking any MMT trade secrets to UMC. Rather, Micron alleges that, after joining UMC, Chen recruited others at MMT to join UMC, intending those others to take and use Micron's alleged trade secrets. *Id.*, ¶¶9-11, 25. According to Micron, Chen enticed J.T. Ho ("Ho") to leave his job with MMT in Taiwan and to work under him at UMC in Taiwan. *Id.* Ho in turn allegedly recruited Kenny Wang ("Wang") to join UMC from MMT. *Id.*, ¶¶12, 27.

Micron alleges that Ho obtained hard copies of documents containing MMT trade secrets and stored electronic records containing Micron trade secrets on a personal USB storage device and on the hard drive of his personal laptop, and that he kept those materials after leaving MMT. Complaint, ¶26. After joining UMC, Ho allegedly accessed those electronic records from his

-3-

1  UMC-issued laptop, and also brought the paper documents to his office – all in Taiwan. *Id.*
2  Micron similarly alleges that, before leaving MMT, Wang used his MMT-issued laptop to access
3  electronic records containing Micron trade secrets, and then transferred those files to a USB
4  storage device and to his online Google Drive cloud storage account. *Id.*, ¶27. The final act of
5  alleged misappropriation came when Leh-Tian Rong ("Rong"), a UMC Assistant Vice President,
6  allegedly held a meeting in July or August 2016 attended by Wang and other UMC personnel.
7  Complaint, ¶¶32-33. At that meeting, Rong allegedly asked Wang to provide certain MMT trade
8  secrets concerning aspects of MMT's technology that UMC was not able to learn by reverse
9  engineering. *Id.* Wang allegedly complied, incorporating the MMT trade secrets into the
10  DRAM manufacturing process then under development. *Id.* Again, all these individuals are
11  located in Taiwan, and all their actions are alleged to have taken place in Taiwan.

**C.   UMC's Lone Alleged Contact with California**

13  Micron cites only one purposeful contact directed by UMC to California other than its
14  marketing and sales of completely unrelated foundry services pursuant to its agreement with
15  UMC Group (USA) – a visit to this District by Chen and other UMC employees to participate in
16  a job fair hosted by the Chinese American Semiconductor Professional Association ("CASPA").
17  Complaint, ¶¶17, 35. That event was held in October 2016 in Santa Clara, California. *Id.*
18  Micron alleges that the positions UMC sought to fill related to its DRAM development effort
19  with Jinhua. *Id.* However, Micron's attempt to imply that this lone contact had any relationship
20  to the alleged trade secret misappropriation is not supported by the facts. Micron does not allege
21  that it has any employees in the Silicon Valley with the DRAM expertise sought by UMC (or by
22  Jinhua). It does not allege that any of its employees were members of CASPA or that any
23  attended the October 2016 job fair. To the contrary, UMC spoke to no Micron employees at that
24  event, and received no inquiries from Micron employees in response to its involvement with
25  CASPA. Declaration of Jennifer Wang filed herewith ("Wang Decl."). Micron also alleges that
26  electronic files containing its trade secrets were stored on servers maintained by Google "in the
27  United States" – but not specifically in California. *Id.*, ¶27.

To mask the paucity of facts to support its jurisdictional allegation, Micron alleges several other purported contacts between UMC and California. Complaint, ¶18. However, those contacts can have no bearing on jurisdiction for purposes of this case. For example, Micron alleges it entered into a non-disclosure agreement ("NDA") with UMC on August 14, 2014 that is governed by California law. *Id.* That agreement predates the acts underlying Micron's complaint by more than one year, and Micron makes no attempt to connect that NDA to its causes of action. *Id.* Micron also cites UMC's sales of its unrelated foundry services to customers in the United States, through UMC Group (USA). *Id.* Again, Micron makes no attempt to link those sales to UMC's alleged acts of trade secret misappropriation in Taiwan or its business arrangement with Jinhua in Mainland China. *Id.* Since these alleged contacts with California, like UMC's single recruiting visit to California, are utterly unrelated to Micron's causes of action, Micron has failed to meet its burden of establishing this Court's jurisdiction over UMC in this case.

### III. ARGUMENT

#### A. Micron Fails to Establish Specific Jurisdiction in This Court over its Claims Against UMC

Micron bears the burden of establishing facts sufficient to establish that jurisdiction is proper in this Court. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). To resolve this issue the Court applies the law of the state in which it sits when there is no applicable federal statute governing personal jurisdiction. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). As Micron alleges no federal statute governing personal jurisdiction in this case, California law governs. California's long-arm statute allows courts to exercise personal jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution. *Id.* at 1320. Either general (*i.e.* "all purpose") jurisdiction or specific (*i.e.* "case-linked") jurisdiction may satisfy the constitutional standard. *Bristol-Meyers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779-80 (2017).

Micron alleges only that "[t]his Court has *specific* personal jurisdiction over UMC" based on alleged acts of trade secret misappropriation and/or acts in furtherance of the conspiracy to

-5-

commit trade secret misappropriation taking place in California. Complaint, ¶17 (emphasis added). Micron does not and cannot assert that UMC is subject to general jurisdiction in this Court because it is not "at home" here, as it is both incorporated and headquartered in Taiwan, not in California. *See, e.g. Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Nevertheless, Micron alleges that "UMC continually engages in other commercial activities in the United States, whereby it purposefully avails itself of the protections of U.S. law." *Id.*, ¶18. Micron attempts to support this conclusion by citing:

- UMC's alleged non-disclosure agreement with Micron dated August 14, 2014, which is be governed by, and construed under, the laws of California; and

- UMC's alleged sales in the United States, amounting to roughly $1.8 billion (and 43% of UMC's foundry sales), through its United States subsidiary, UMC Group (USA), located in the Northern District of California.

*Id.* Even if true, however, these alleged contacts do not support a finding of either general or specific jurisdiction. These limited activities in California, as alleged by Micron, clearly are not "so substantial and of such a nature" as to present an "exceptional case" in which a company is deemed "at home" for purposes of general jurisdiction somewhere other than its formal place of incorporation or its principal place of business. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n.18 (2014). Moreover, Micron makes no attempt to allege that UMC's "purposeful availment" of the protections of U.S. law is related in any way to the claims raised in its Complaint. To the extent that Micron is suggesting that these unrelated activities should be factored into the specific jurisdiction determination here, that sort of "sliding scale" approach has been expressly rejected by the Supreme Court as "a loose and spurious form of general jurisdiction." *Bristol-Meyers Squibb*, 137 S. Ct. at 1781. Therefore, the unrelated NDA between UMC and Micron allegedly governed by California law, and the unrelated sales of UMC's foundry services to U.S. customers through UMC Group (USA), may not be considered when determining whether the Court may exercise specific jurisdiction over UMC in this matter.

**B.     The Complaint Does Not Allege Facts that "Arise out of or Relate to Actions in This Jurisdiction"**

Specific jurisdiction requires a direct relationship between the defendant's contacts with the state and the underlying claims of the suit. *See Daimler*, 134 S. Ct. 746 at 754. In other words, "for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Meyers Squibb*, 137 S. Ct. at. 1781 (quoting *Goodyear*, 564 U.S. at 919). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Bristol-Meyers Squibb*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919). Accordingly, specific jurisdiction may be exercised only when "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler*, 134 S. Ct. at 754 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.8 (1984)).

The Ninth Circuit applies a three-pronged test to determine if it may exercise specific jurisdiction consistent with Due Process requirements:

> (1) The non-resident defendant must ***purposefully direct*** its activities or consummate some transaction with the forum or a resident thereof; or perform some act by which he ***purposefully avails*** himself of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which ***arises out of*** or ***relates to*** the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of establishing that the first two prongs of the test are satisfied. *Id.* at 802. If the plaintiff fails to establish either of these two prongs, Courts in the forum lack personal jurisdiction over the defendant. *Id.* at 802. If the plaintiff demonstrates that both the first and second prongs are met, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

UMC's only purposeful contact with California alleged in Micron's Complaint, other than its foundry sales through UMC Group (USA), is the single alleged visit by UMC employees to Santa Clara in October 2016, to participate in the CASPA job fair. Complaint, ¶17, 35. That lone contact is a far cry from what is required to establish specific personal jurisdiction consistent with federal due process requirements. None of Micron's claims arise out of that contact under the controlling precedent. To the contrary, Micron's claims would have arisen irrespective of that visit and, in fact, Micron's claims had already arisen in Taiwan before UMC's employees attended the job fair. Moreover, even if that one recruiting visit could somehow satisfy the first two prongs of the specific jurisdiction test – which it does not – the circumstances surrounding this dispute are such that exercising jurisdiction over UMC in this matter would be unreasonable. For these reasons, as demonstrated below, the exercise of jurisdiction over UMC in this case would violate the Due Process Clause of the Fourteenth Amendment.

To show that its claims "arise out of or relate" to UMC's forum-related, Micron must establish that "but for" the defendant's forum-related contacts its claims would not have arisen. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995); *Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995) (Plaintiff's claims would not have arisen but for defendant's forum-related actions). There is simply no "but for" relationship between UMC's recruiting visit (or any of UMC's other alleged forum-directed contacts) and the claims asserted against it in Micron's Complaint. All of Micron's claims "arise from" and "relate to" the alleged acts of trade secret misappropriation taking place in Taiwan between October 2015 and August 2016. *See* Complaint, ¶¶25-34. All of those claims would have existed regardless of UMC's single effort to recruit potential employees in this District. This is underscored by the fact that the acts of alleged trade secret theft were completed – in Taiwan – *before* UMC's contact with California. For these reasons there is no but-for relationship between that visit and Micron's claims.

Micron makes cursory allegations that UMC engaged in acts of trade secret misappropriation under the DTSA "in at least Taiwan, Mainland China and the Northern District

-8-

of California," Complaint, ¶53, and that those same acts, undertaken "abroad and in California," constitute "racketeering activities". *Id.*, ¶65-69 and 76. But Micron's complaint is devoid of any alleged facts showing that the recruiting visit to California involved or gave rise to any act of trade secret misappropriation. Even so, Micron's claims had already arisen by the time of that visit, negating any but-for relationship. Trade secret misappropriation is not deemed a "continuing wrong" under California law; rather, the wrong is deemed "committed when the first act of misappropriation occurs, i.e. when a defendant commits the first act in breach of his duty of confidentiality, and [therefore] subsequent additional acts of misappropriation are not deemed new 'wrongs' … [and] are of significance only in calculating damages." *Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 649-50 (N.D. Cal. 1993). Accordingly, "any subsequent additional acts of misappropriation of … trade secrets [after the first occurrence] cannot be considered 'in furtherance' of the alleged conspiracy …." *Id.* at 650. Because Micron cannot show that its claims would not have arisen "but for" UMC's lone contact with this District, there is no personal jurisdiction and the Complaint must be dismissed.

### C. Micron's Allegations That Files Were Uploaded To a Google Drive Account Do Not Confer Jurisdiction

The Court need not seriously consider the allegation that Wang uploaded files containing Micron's alleged trade secrets to a Google Drive cloud storage server when he left Micron. This assertion is legally insufficient and factually flawed. First, the bare allegation that Wang uploaded Micron trade secrets to "servers located in the United States …" does not connect that activity to *California*.[1] Moreover, this Court recently rejected the access of Google online services as a sufficient basis for jurisdiction. In *Kazakhstan v. Ketebaev*, 2017 U.S. Dist. LEXIS 211198, (N.D. Cal. Dec. 21, 2017), the defendant allegedly "expressly aimed actions at California by hacking . . . Gmail accounts" because Google is headquartered in California. *Id.* at

---

[1] Micron's jurisdictional allegation is premised on UMC's acts "in the Northern District of California." Complaint, ¶17. Nevertheless, if Micron argues that jurisdiction for its federal DTSA and RICO claims should be judged on UMC's contacts with the United States as a whole, pursuant to Fed. R. Civ. P. 4(k)(2), the outcome would be the same because California law is coextensive with the Constitution.

-9-

UNITED MICROELECTRONICS CORPORATION'S
MOTION TO DISMISS                                                    Case No. 4:17-CV-6932-JSW

*18-19. Recognizing that "Google's servers that store its users' emails 'can be located anywhere in the world.'"  the court held that the plaintiff "has not sufficiently established that the hacking involved 'entering California, contacting anyone in California, or otherwise reaching out to California.'" *Id*. at *19.  *See also OOO Brunswick Rail Mgmt. v. Sultanov*, 2017 U.S. Dist. LEXIS 8374, *10 (N.D. Cal. Jan. 20, 2017).  ("even if true, … allegations – that [defendants] sent confidential materials to Gmail accounts, and that Google and its servers are located in California -- do not establish specific personal jurisdiction.").

Second, even if this allegation could support jurisdiction, it is factually flawed. According to its public statements, Google does not maintain any data servers in California. Litts Decl., Ex. E.  Google does, however, maintain a data center in Taiwan.  *Id.*  There is no factual basis for Micron's claim that Wang's alleged act of uploading files to a Google storage service had any connection with California (or any other state).  Rather, it is just as likely, if not more so, that the data was stored on servers in Taiwan, far closer to the location from where Wang allegedly uploaded them.  Finally, Micron does not allege that Wang knew where Google would store his files, much less that Wang intended to store those files on servers located in California (or even the U.S. generally).  As such, Wang, and by extension UMC, did not purposefully direct or aim any contact to California.  *See Anthony Cal., Inc. v. Fire Power Co.*, 2015 U.S. Dist. LEXIS 190232, at *15-16 (C.D. Cal. Dec. 3, 2015) ("Without knowledge that the alleged confidential information was stored on servers in California, as opposed to the cloud or an off-site facility, it cannot be said that James Moran 'expressly aimed' his allegedly infringing use of Plaintiff's website at California.").

Since Micron has not alleged that Wang knew the locations of Google's servers and intended to store the data on servers at those locations, Micron cannot use Wang's alleged use of Google storage to support its jurisdiction claim.

**D.     It Would Be Unreasonable for this Court to Assert Specific Personal Jurisdiction over UMC in This Case**

Even if UMC's contacts were sufficient under the first and second prongs of the constitutional analysis, jurisdiction over Micron's claims against UMC in this case would not

comport with traditional notions of fair play and substantial justice, and therefore would violate the Due Process Clause.  Evaluating the reasonableness of exercising specific personal jurisdiction involves examining seven factors:

> (1) the extent of the defendant's purposeful injection into the forum;
>
> (2) the defendant's burdens from litigating in the forum;
>
> (3) the extent of conflict with the sovereignty of the defendant's state;
>
> (4) the forum state's interest in adjudicating the dispute;
>
> (5) the most efficient judicial resolution of the controversy;
>
> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
>
> (7) the existence of an alternative forum.

*Ziegler v. Indian River County*, 64 F.3d 470, 474-75 (9th Cir. 1995).  Each of these seven factors must be evaluated in determining reasonableness, and no single factor is dispositive.  *Id.*  All seven factors strongly demonstrate that the exercise of specific personal jurisdiction over UMC in this case would be unreasonable and unconstitutional.

### 1.     Purposeful Interjection

"Even if there is sufficient 'interjection' into the state to satisfy the [purposeful direction prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction . . ."  *Kazakhstan*, 2017 U.S. Dist. LEXIS, 211198, at *28-29 (quoting *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981).  "The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise.'"  *Id.*  Here, UMC's only "interjection" into California for purposes of Micron's claims was its alleged participation in the CASPA job fair.  As explained above, this single interjection was brief, transitory, and had no connection with or effect on Micron, and is unrelated to any of the claims at issue in this case.  This limited interjection into California cannot be deemed significant, and therefore this factor weighs against exercising jurisdiction in this case.

### 2. Having to Defend Claims That Arose in Taiwan Would Be Unduly Burdensome For UMC

"The second factor, the burden on the defendant, addresses the logistical challenges for a defendant to litigate in the forum state." *Kazakhstan*, 2017 U.S. Dist. LEXIS, 211198, at *29. Particularly in cases involving a defendant from another country, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* at *29-30 (quoting *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003)). With respect to burden, the Ninth Circuit has cautioned that "[t]he primary concern is for the burden on a defendant. If the burdens of trial are too great for a plaintiff, the plaintiff can decide not to sue or, perhaps, to sue elsewhere. *Ins. Co. of N. Am.*, 649 F.2d at 1272. The burdens on a defendant are of particular significance if, as here, the defendant has done little to reach out to the forum state." *Id.* UMC is a Taiwanese company, and therefore litigating in the Northern District of California would present significant logistical challenges. These burdens are particularly significant considering that, for reasons provided above, UMC has done nothing in this District in any way connected with the issues relevant to Micron's complaint. Therefore, this factor weighs against exercising jurisdiction in this case.

### 3. Sovereignty

The third factor, sovereignty, "concerns the extent to which the district court's exercise of jurisdiction in California would conflict with the sovereignty of [Taiwan], [UMC's] state of domicile." *Kazakhstan*, 2017 U.S. Dist. LEXIS, 211198, at *32 (quoting *Panavision*, 141 F.3d at 1323). "Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Harris Rutsky*, 328 F.3d at 1133 (quoting *Sinatra v. National Inquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988)). That Micron's complaint is premised largely on an indictment decision issued by Taiwanese authorities makes it abundantly clear that Taiwan has an interest in adjudicating this dispute, as it involves alleged wrongdoing by Taiwanese citizens in Taiwan employed by Taiwan companies. This factor weighs against exercising jurisdiction in this case.

####    4.   Forum State's Interest

While a state may have a "strong interest in providing an effective means of redress for its residents tortuously injured," *Kazakhstan*, 2017 U.S. Dist. LEXIS, 211198, at *32 (quoting *Panavision*, 141 F.3d at 1323), Micron is not a resident of California.  It is a Delaware company headquartered in Idaho.  Complaint, ¶5.  The alleged trade secrets were allegedly stolen from MMT, a Taiwanese subsidiary of Micron, by MMT's former Taiwanese employees.  *Id.*, ¶¶11-12, 32-33.  UMC is a Taiwanese company headquartered in Taiwan, and Jinhua is a Chinese company headquartered in Mainland China.  Id., ¶¶7-8.  The State of California has no interest in adjudicating this case.  This factor weighs against exercising jurisdiction in this case.

####    5.   Efficient Resolution

The fifth factor "focuses on the location of the evidence and witnesses." *Kazakhstan*, 2017 U.S. Dist. LEXIS, 211198, at *33 (quoting *Panavision*, 141 F.3d at 1324).  Here, all UMC and Jinhua employees who are mentioned in the Complaint or are likely to be potential witnesses reside in Taiwan or Mainland China.  Micron's witnesses are also likely to reside in either Taiwan or Idaho.  Similarly, the physical evidence, such as documents and computer storage devices, is all alleged to be located in Taiwan.  This factor weighs strongly against exercising jurisdiction in this case.

####    6.   Convenient and Effective Relief for Plaintiff

The sixth factor recognizes that "[c]onsideration should also be given to the plaintiff's interest in obtaining convenient and effective relief." *Kazakhstan*, 2017 U.S. Dist. LEXIS, 211198, at *34 (quoting *Ins. Co.*, 649 F.2d at 1273).  This factor, however, "should not weigh heavily in the analysis." *Id.* (quoting *Harris Rutsky*, 328 F.3d at 1133).  Even though this factor is discounted in the reasonableness analysis, there is no reason to believe that this is the only forum offering convenient and effective relief for Micron.  As discussed below, Micron may pursue its claims in Taiwan or elsewhere.  This factor weighs against exercising jurisdiction in this case.

### 7. Taiwan Is an Alternative Forum

The seventh factor involves "determin[ing] whether an adequate alternative forum exists. The plaintiff bears the burden of proving the unavailability of an alternative forum." *Kazakhstan*, 2017 U.S. Dist. LEXIS, 211198, at *35 (quoting *Harris Rutsky*, 328 F.3d at 1133-34). Here, there is no reason to believe that Taiwan would not provide an adequate forum for Micron's civil claims. *See, e.g., Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983) ([t]he district court did not abuse its discretion in finding that Boeing's assertion that Taiwan was an adequate forum was supported by sufficient evidence.") It is evident that Plaintiff will be unable to meet its burden of proving the unavailability of an alternative forum. This weighs against exercising jurisdiction in this case.

Every single factor in the reasonableness test weighs against – most often heavily against – exercising jurisdiction over UMC in this case. Rather, those factors strongly demonstrate that this dispute should be resolved where they arose and where the majority of the evidence is located – in Taiwan. Therefore, even if Micron had met its burden of satisfying the first two prongs of the test for exercising specific personal jurisdiction – which it has not – it would nonetheless be unreasonable to subject UMC to jurisdiction in the Northern District of California. Doing so would violate the Due Process Clause of the Fourteenth Amendment.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety with prejudice.

DATED: February 15, 2018

                DAN JOHNSON LAW GROUP, LLP

                By: */s/ Daniel Johnson, Jr.*
                        Daniel Johnson, Jr.

                *Attorneys for Defendant*
                UNITED MICROELECTRONICS CORPORATION