Randall E. Kay (State Bar No. 149369)
rekay@jonesday.com
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA  92121.3134
Telephone:    +1.858.314.1200
Facsimile:    +1.844.345.3178

Patrick T. Michael (State Bar No. 169745)
pmichael@jonesday.com
Marcus S. Quintanilla (State Bar No. 205994)
mquintanilla@jonesday.com
JONES DAY
555 California Street, Suite 2600
San Francisco, CA  94104.1501
Telephone:    +1.415.626.3939
Facsimile:    +1.415.875.5700

*Attorneys for Plaintiff*
*MICRON TECHNOLOGY, INC.*

Daniel Johnson Jr. (Bar No. 57409)
Mario Moore (Bar No. 231644)
Robert G. Litts (Bar No. 205984)
DAN JOHNSON LAW GROUP, LLP
400 Oyster Point Blvd., Suite 321
South San Francisco, CA 94080
Telephone: +1.415.604.4500
dan@danjohnsonlawgroup.com
mario@danjohnsonlawgroup.com
robert@danjohnsonlawgroup.com
*Attorneys for Defendant*
  UNITED MICROELECTRONICS
  CORPORATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICRON TECHNOLOGY, INC.,<br>            Plaintiff,<br><br>       v.<br><br>UNITED MICROELECTRONICS CORPORATION, FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD., and DOES 1-10,<br><br>            Defendants. | **Case No. 4:17-CV-06932-JSW**<br><br>**JOINT LETTER<br>RE: DISCOVERY PROPOUNDED BY PLAINTIFF MICRON TECHNOLOGY, INC. ON DEFENDANT UNITED MICROELECTRONICS CORP. AND UMC GROUP (USA)**<br><br>Judge: Hon. Robert M. Illman<br><br>McKinleyville Federal Courthouse<br>3140 Boeing Avenue<br>McKinleyville, CA 95519 |

Dear Judge Illman:

Having met and conferred regarding plaintiff Micron Technology, Inc.'s ("Micron") initial jurisdictional discovery, the parties submit the following joint letter addressing their respective positions pursuant to the Court's Order Granting Plaintiff's Request For Jurisdictional Discovery and Referring Discovery Disputes To Magistrate Judge (the "Order" Dkt. 53).

On December 5, 2017, Micron filed its complaint against Taiwan-based United Microelectronics Corp. ("UMC") and China-based Fujian Jinhua Integrated Circuit Co. Ltd. ("Jinhua"). Micron alleges claims under the Defend Trade Secrets Act, the California Uniform Trade Secrets Act, and Civil RICO. UMC has been served, but service on Jinhua is pending because of delays in service of process in China.

On April 23, 2018, in connection with UMC's motion to dismiss for lack of personal jurisdiction, the Court called for further factual development on two issues: "(1) whether UMC, or someone working on UMC's behalf . . . downloaded alleged trade secrets from Plaintiff's servers knowing that the servers were located in the United States; and (2) the extent to which UMC's American subsidiary, UMC Group (USA), aided UMC's recruitment activities and whether these recruitment activities relate to the allegations in this lawsuit." (Dkt. 53). The Court set a discovery cut-off date of July 23, 2018.

To meet the Court's schedule, the parties agreed that document discovery will proceed through June and depositions, including in the U.S. and Taiwan, will follow in July. The parties have now reached an impasse on the scope of permissible discovery regarding Micron's (1) Rule 30(b)(6) deposition notice to UMC; (2) requests for production to UMC; and (3) subpoena for records and testimony to UMC's U.S. subsidiary, UMC Group (USA). (Exh. 1, 2 and 3 contain UMC's objections and responses to Micron's discovery). Given the July 23, 2018 cut-off date for jurisdictional discovery, the parties request guidance from this Court as soon as possible.

**I. Micron's Position**

This case marks another chapter in the playbook of foreign espionage against the U.S. semiconductor industry. As prosecutors in Taiwan have already concluded, UMC – a Taiwanese chip foundry – conspired with former Micron employees to misappropriate thousands of proprietary documents containing Micron's trade secrets for DRAM (memory chip) technology. (Indictment (Dkt. 1-2).) UMC stole Micron technology in concert with co-defendant Jinhua, a DRAM start-up in the People's Republic of China, indirectly owned by government entities. The defendants' plan is for UMC to "develop" the DRAM technology (based on theft from Micron) and then transfer it to Jinhua for mass production. Forensic evidence demonstrates that UMC agents downloaded Micron data from servers in the United States. (Decl. of J. Heller (Dkt. 42-2) ¶¶ 4-11.) In addition, UMC, together with its co-conspirator Jinhua and subsidiary UMC Group (USA), has actively participated in recruiting engineers from the U.S. in furtherance of their use of Micron's trade secrets and efforts to commercialize DRAM technology based on Micron's trade secrets. (*See* Decl. of W. Lee (Dkt. 42-3) ¶¶ 4, 8.)

The scope of discovery must include anything "relevant" to the two issues authorized by the Court, so long as it is proportional to the needs of the case, and relevance is broadly construed. Fed. R. Civ. P. 26(b)(1); *Wit v. United Behavioral Health*, No. 14-CV-02346-JCS, 2016 WL 258604, at *10 (N.D. Cal. Jan. 21, 2016). Importantly, the trade secret theft at issue here is massive – potentially billions of dollars are at stake, Taiwan authorities have indicted UMC for its criminal acts, and it is no secret that Chinese companies are continuing their campaign of technology theft from U.S. semiconductor companies. Equally important, the DTSA was enacted precisely to strengthen U.S. trade-secret protection, including foreign misappropriation where acts in furtherance of that misappropriation occur in the U.S.

UMC is not entitled to misconstrue Judge White's Order by reading it so narrowly that it side-steps production of the very evidence that would permit Micron to establish its case for jurisdiction. As shown below, Micron's discovery is reasonably tailored to elicit information on the downloading of Micron documents from U.S. servers and recruiting activities in the U.S., both of which are clearly relevant to the jurisdictional inquiry under the DTSA and the issues on which Judge White called for further factual development.

### A. *Requests Re: Micron Documents in UMC's Possession and How UMC Obtained Them* (UMC: 30(b)(6) Topics 1-5; RFP Nos. 1-8.)

Micron has proof that Wang, a former Micron employee acting on behalf of UMC, downloaded confidential documents from Micron's U.S. servers. To determine the full extent to which Micron's trade secrets were knowingly downloaded from U.S. servers, Micron is entitled to discover what Micron documents UMC possesses. Only after it knows the full set of documents at issue can Micron ascertain how UMC obtained them and what UMC knew about the source of those documents. These requests seek precisely that information: documents (with metadata intact) which, on their face, may show they came from U.S. servers. (Exh. 1, 30(b)(6) Topics 1-2; RFP Nos. 1, 2, 7.) In addition, the requests seek to uncover who downloaded Micron data on UMC's behalf and where they understood the documents to come from. (*Id.*, 30(b)(6) Topics 3-5; RFP Nos. 3-6, 8.) UMC's position that Micron's discovery should be limited to "Micron's own records" flies in the face of Judge White's Order. Micron is entitled to discover *from UMC* downloading activities relating to Micron's alleged trade secrets.

In many instances, UMC has rejected these requests in their entirety. (*Id.*, 30(b)(6) Topics 1-5; RFP Nos. 1, 2, 7, 8.) In other cases, it has attempted to limit its production of evidence to those "instances, if any, in which UMC *employees* downloaded Micron trade secrets from Micron's servers *knowing* that the servers were located in the United States." (*Id.*, RFP Nos. 3-6 (emphasis added).) That narrow commitment to produce evidence is improper for at least two reasons.

First, UMC obviously cannot limit its evidence to downloading by UMC "employees." Judge White's Order extends to anyone "working on UMC's behalf." Second, UMC cannot limit its production to cases where it believes its agents had actual knowledge that they were downloading from the United States. Indeed, during the parties' meet-and-confer, UMC's counsel asserted that there would be few if any responsive documents since former Micron employees now at UMC believed that Micron documents were stored on servers in Taiwan and Singapore. In essence, UMC claims the prerogative to shield such information from discovery based on a self-serving assertion that its agents lacked sufficient actual "knowledge" of downloading from servers located in the U.S.

UMC should not be permitted to prevent discovery into evidence that may demonstrate its agents' knowledge of the source location of the stolen data by making an unsupported and self-serving factual assertion about what its agents believed. Case law is clear that constructive knowledge is all that is required, and that the Court may infer knowledge from the circumstances. *See, e.g., Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00561-WHO, 2017 WL 3485881, at*25-26 (N.D. Cal. July 15, 2017); *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 825–26 (N.D. Cal. 2014). Any evidence concerning efforts by UMC agents to access documents from Micron servers may provide circumstantial evidence that they understood some of the data was being downloaded from the United States. Examples include the documents themselves, which may bear watermarks or metadata showing that they relate to or come from Micron's R&D facilities in the United States.

Providing the requested documents and testimony should impose no substantial burden on UMC because these materials should already have been located and preserved in connection with the Taiwanese criminal proceedings in which UMC stands indicted.

**B. Requests Re: UMC Recruiting in the US, Including Assistance from UMC Group (USA)**
**(UMC: 30(b)(6) Topics 6-8, 10, 11; RFP Nos. 9-11, 13-16 and UMC Group (USA): 30(b)(6) Topics 5-8; RFP Nos. 7-9.)**

These requests seek evidence regarding three fundamental points and cover the period from January 2015 to the present:

(1) Micron is entitled to discovery on *all* UMC recruitment activities in the U.S. to ascertain whether they relate to allegations in the lawsuit.  UMC has sought to withhold most of the requested information by agreeing to provide testimony and documents only "to the extent such [recruiting] activities involved UMC Group (USA)." (Exh. 1, 30(b)(6) Topics 6, 7, 8;  RFP Nos. 1, 2, 7, 8, 9; *cf.* Exh. 2, 30(b)(6) Topics 5, 6.)  That narrow commitment to produce evidence impermissibly omits U.S.-based recruitment activities that UMC self-servingly decides did *not* involve the American subsidiary.  Judge White's Order authorizes discovery into whether any UMC recruitment activity relates to the allegations in this action – not just activity involving UMC Group (USA).[1]

(2) The Order also entitles Micron to discover UMC Group (USA)'s role in any of UMC's recruiting – including information about the corporate structure and relationship of UMC and UMC Group (USA), which is likely to bear on the type of business activities UMC's US-based subsidiary is involved in, including recruitment activity.  The subsidiary's role in recruiting is highly relevant to jurisdiction since UMC Group (USA) is based in the Northern District of California.  UMC has attempted to block discovery on those issues.  (Exh. 1, 30(b)(6) Topic 11; RFP Nos. 15, 16; Exh. 3, 30(b)(6) Topic 8; RFP No. 8.)

(3) Micron is also entitled to discovery relating to Jinhua's recruiting to the extent that it related to or was assisted by "UMC's recruitment activities."  UMC and Jinhua have conspired to come to the U.S. to recruit engineers to help Jinhua mass produce stolen Micron technology.  (Complaint (Dkt. 1) ¶ 14-15, 17.)  In addition, UMC's public filings indicate that there is a Cooperation Agreement between UMC and Jinhua, and there is little doubt that agreement  addresses the "cooperation" between the defendants, including on recruiting.  Any such agreement is directly relevant here.  UMC has refused to provide discovery on those key issues.  (Exh. 1, 30(b)(6) Topics 8, 10;  RFP Nos. 11, 13-14; Exh. 3, 30(b)(6) Topic 7; RFP Nos. 7, 9.)  UMC's activity, even if only to assist Jinhua, is an act by UMC in furtherance of its misappropriation of Micron technology.  That conduct – intentionally directed at the United States – supports personal jurisdiction over UMC, and Micron is entitled to establish these facts through discovery, regardless of whether UMC Group (USA) was involved.

### III.  UMC's Position

**<u>The April 23 Order on Jurisdictional Discovery</u>**

The starting point for UMC's opposition is the Court's April 23 Order.  Over three months ago, Micron conceded in its brief to the Court that full discovery was not needed to resolve the issue of jurisdiction before the case can proceed past the motion to dismiss stage. (See Dkt. 47) (the Court noted "Micron does not argue that it requires full discovery to resolve the motion to dismiss.").  The only discovery permitted by the Court covers two topics.  The first goes to the state of mind of Wang and whether he was acting on UMC's behalf when downloading documents allegedly "knowing that the documents were from Micron servers in the US."  The second topic concerns recruitment activity by UMC Group (USA).  UMC has agreed to provide the appropriate UMC and UMC Group (USA) corporate designees and individual deponents and documents germane to the two jurisdictional discovery topics.  Instead of limiting its inquiry to the topics ordered by the Court, Micron seeks documents and

---

[1] In its portion of this joint letter, UMC purports to be "providing witnesses and documents concerning: 'UMC's DRAM-related recruiting activities in, or directed to individuals in, the United States from January 1, 2015 to present, including, but not limited to any recruiting activities in connection or cooperation with Jinhua and/or UMC Group (USA).'" (Emphasis added.)  This is misleading.  UMC's formal responses make clear that its production will be limited to DRAM recruiting involving UMC Group (USA); UMC is not agreeing to provide *all* responsive documents.

3

depositions that bear directly on what, if any, trade secrets were taken and/or utilized by UMC. In short, Micron seeks general discovery of the type that it claimed it would not need to respond to the jurisdictional motion and that is not authorized by the April 23 Order.

**April 23 Order, Topic 1**: "whether UMC, or someone working on UMC's behalf (such as Mr. Wang), downloaded alleged trade secrets <u>from Plaintiff's servers</u> knowing that the servers were located in the United States"

Micron's requested discovery on server downloads is overbroad, unduly burdensome, and disproportionate to the present needs of the case in light the case's recent procedural history. Contrary to Micron's baseless espionage claims and cartoonish generalizations about companies of Chinese origin, Micron's complaint focuses on two Micron Memory Taiwan ("MMT" or formerly Rexchip and Elpida) employees, J.T. Ho and Kenny Wang, who allegedly downloaded trade secrets from MMT's servers in Taiwan and later left MMT and joined UMC in Taiwan.

In the absence of any evidence of downloads from any U.S. servers, the Court found that "Plaintiffs have failed to make a *prima facie* showing that the exercise of personal jurisdiction over UMC is proper." (Dkt. 53). Micron's letter brief asserts that Kenny Wang, while still employed by Micron, downloaded from a Micron U.S. server "on behalf of" UMC. Micron's motion position is fundamentally inconsistent with Micron's complaint, which alleged downloads from the servers of MMT, a Taiwan entity, not from Micron servers in the U.S. Micron's only citation for its subsequent never-plead allegations of downloads from U.S. servers (in its opposition to UMC's motion to dismiss) is its reliance on the conclusory declaration of Micron employee Jonathan Heller. But Heller's declaration did not recite or attach even a single record of a Micron document being downloaded from any U.S. server by Wang.

Micron's proposed discovery is disproportionately burdensome because it seeks discovery from UMC that should be ascertainable from Micron's own records, or from deposing Kenny Wang. For example, Micron speculates that metadata is relevant to its theory that Kenny Wang knowingly downloaded from U.S. servers. But Micron fails to mention that the downloads at issue in topic 1 are downloads from ***Micron servers***, <u>not</u> UMC servers. If, as Micron's Heller declaration postulates, records of such downloads exist and the files in question have metadata indicating that the file(s) came from the U.S., then ***Micron*** should produce the files from Micron's U.S. servers or server records or Kenny Wang's Micron employee laptop mentioned in the Heller declaration. Jurisdictional discovery should be limited to those specific downloaded files identified from Micron's records that it has already relied upon in the Heller Declaration (but did not cite or attach). Limiting the discovery to the specific files that Micron contends, based on its records already reviewed by its own IT employee, were downloaded from the U.S. will provide for a manageable scope of inquiry on whether the specific files were downloaded "knowing that the servers were located in the United States."

Micron's broad requests for UMC documents regarding Wang's state of mind are non-sensical given the chronology of events. Micron speculates that ***UMC*** will somehow have documents relating to the state of mind of Wang between April 16 and 23, 2016. However, Wang was *not employed by UMC* at the time. Knowledge of Wang's state of mind between April 16 and April 23, 2016 would be possessed by (a) Wang or (b) Micron, which has Wang's employee laptop and server records of his work at Micron. Wang is a citizen and resident of Taiwan, and is not a current employee of UMC. UMC has no ability to compel a non-employee and resident of Taiwan to testify in this matter. The only depositions currently scheduled in Taiwan are those of UMC employees J.T. Ho, Stephen Chen, and Jennifer Wang.

UMC is providing discovery concerning UMC's corporate knowledge of downloads "from Plaintiff's [Micron's] servers"…"knowing that the servers were located in the United States" and Micron has been permitted to depose whichever UMC employees it believes may have personal knowledge of downloads from Micron's U.S. servers, including those UMC employees who previously worked at Micron and therefore were in position to have knowledge, if any, of server downloads. Accordingly, Micron's motion should be denied because Micron's discovery is not permitted by the Court's Order since Micron seeks full discovery after admitting it didn't need it, is overbroad, and is beyond the scope

4

of topic 1.  Furthermore, UMC has agreed to provide all of the relevant discovery that Micron is entitled to.

**April 23 Order, Topic 2**: "the extent to which UMC's American subsidiary, UMC Group (USA), aided UMC's recruitment activities and whether these recruitment activities relate to the allegations in this lawsuit."

UMC has agreed to provide a witness concerning UMC Group (USA)'s involvement in or alleged aiding of UMC's recruiting, which is the crux of topic 2 in the April 23 Order.  For example UMC is providing witnesses and documents concerning: "UMC's DRAM-related recruiting activities in, or directed to individuals in, the United States from January 1, 2015 to present, including, but not limited to any recruiting activities in connection or cooperation with Jinhua and/or UMC Group (USA)" as well as "UMC's knowledge of, or involvement in, UMC Group (USA)'s DRAM-related recruiting activities from January 1, 2015 to present, including but not limited to UMC's awareness and understanding of UMC Group's (USA) recruiting efforts."  (RFP Nos. 9-10; 30(b)(6) Topics 7, 8).

UMC objects to Micron's overbroad discovery concerning UMC Group (USA)'s overall relationship with UMC untethered to any recruiting-related activities.  For example, Micron's deposition topic 11 and RFP No. 15 seek discovery on "corporate formation, structure, organization and business operations of UMC and its relationship to UMC Group (USA) . . . the financial connection, the sharing of officers or directors, the sharing of any profits and losses, the sharing of technology, engineering, marketing, and business relationships."  Such discovery covers activities entirely unrelated to UMC Group (USA)'s recruiting activities.

Micron also misstates and misunderstands UMC's position regarding Jinhua recruiting.  UMC is providing discovery concerning any recruiting efforts that involved UMC, Jinhua, *and* UMC Group (USA).  In particular, UMC is providing discovery concerning the CASPA job fair referenced in Micron's complaint, and any similar recruiting that involved all three entities, to the extent there was any.  UMC has justifiably objected to providing discovery generally on UMC and Jinhua's relationship to the extent that it involves issues other than recruiting, or has no tie to UMC Group (USA)'s involvement.  For example, Micron's deposition topic 10 does not even mention UMC Group (USA)'s recruiting activities: "The relationship between UMC and Jinhua, including but not limited to any agreements between the two parties relating to recruitment and their joint plans for developing and producing DRAM technology."  Likewise, general discovery on Jinhua is beyond the scope of the April 23 Order to the extent that such discovery does not also involve UMC; jurisdictional discovery is expressly limited "to the extent to which UMC's American subsidiary" . . . "aided UMC's recruiting", not Jinhua's recruiting.

Accordingly, Micron's motion should be denied because the requested discovery is outside the scope of the April 23 Order.  UMC has agreed to provide appropriate discovery on topics 1 and 2 of the April 23 Order relevant to knowing downloads from Micron's U.S. servers by or on behalf of UMC, and UMC Group (USA)'s involvement in UMC recruiting.

Respectfully submitted,

June 8, 2018                                                                                          June 8, 2018

 *s/ Randall E. Kay*                                                                          *s/ Daniel Johnson, Jr.*
Randall E. Kay                                                                                  Daniel Johnson, Jr.
JONES DAY                                                                                     DAN JOHNSON LAW GROUP
Counsel for Plaintiff                                                                         Counsel for Defendant
Micron Technology Inc.                                                                  United Microelectronics Corp. and
                                                                                                           Third Party UMC Group (USA)

5

**FILER'S ATTESTATION**

Pursuant to Civil Local Rule 5.1, of the United States District Court of the Northern District of California, I certify that authorization for the filing of this document has been obtained from the other signatory shown above and that said signatory has authorized placement of his electronic signatures on this document.

Dated:  June 8, 2018

                        *s/ Randall E. Kay*
                        Randall E. Kay
                        rekay@jonesday.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on June 8, 2018 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

Executed on June 8, 2018, at San Diego, California.

                                         *s/ Randall E. Kay*
                                         Randall E. Kay
                                         rekay@jonesday.com