PAGES 1 - 48

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE ROBERT M. ILLMAN, MAGISTRATE JUDGE**

MICRON TECHNOLOGY, INC.,      )
                              )
            PLAINTIFF,        )      NO. C-17-6932 MMC (RMI)
                              )
 VS.                          )      THURSDAY, JUNE 21, 2018
                              )
UNITED MICROELECTRONICS       )      SAN FRANCISCO, CALIFORNIA
CORPORATION, ET AL.,          )
                              )      DISCOVERY HEARING
            DEFENDANTS.       )
_____)


**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**
**RECORDING 10:08 - 10:42; 11:29 - 11:54**

**APPEARANCES:**

**FOR PLAINTIFF:**        JONES DAY
                          4655 EXECUTIVE DRIVE, SUITE 1500
                          SAN DIEGO, CALIFORNIA 92121
                 BY:  RANDALL E. KAY, ESQUIRE

                          JONES DAY
                          555 CALIFORNAI STREET, SUITE 2600
                          SAN FRANCISCO, CALIFORNIA 94104
                 BY:  MARCUS S. QUINTANILLA, ESQUIRE


**FOR DEFENDANTS:**       DAN JOHNSON LAW GROUP
                          400 OYSTER POINT BLVD., SUITE 321
                          SOUTH SAN FRANCISCO, CALIFORNIA 94080
                 BY:  DANIEL JOHNSON, JR., ESQUIRE
                      MARIO MOORE, ESQUIRE



**TRANSCRIBED BY:**       DIANE E. SKILLMAN, TRANSCRIBER

THURSDAY, JUNE 21, 2018                          10:08 A.M.

TRANSCRIBER'S NOTE:  DUE AT TIMES TO COUNSEL'S FAILURE TO

IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER

ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

                    P R O C E E D I N G S

        **THE CLERK:**  CALLING CIVIL ACTION 17-6932 MICRON

TECHNOLOGY INC. VERSUS UNITED MICROELECTRONICS CORPORATION, ET

AL.

    COUNSEL, PLEASE APPROACH THE PODIUM AND STATE YOUR

APPEARANCES FOR THE RECORD.

        **MR. KAY:**  GOOD MORNING, YOUR HONOR.  RANDY KAY AND

MARCUS QUINTANILLA FROM JONES DAY APPEARING FOR MICRON

TECHNOLOGY.

        **THE COURT:**  GOOD MORNING.

        **MR. JOHNSON:**  GOOD MORNING, YOUR HONOR.  DANIEL

JOHNSON JUNIOR AND MARIO MOORE APPEARING ON BEHALF OF UMC.

        **THE COURT:**  ALL RIGHT.  GOOD MORNING.

    ALL RIGHT.  I'VE READ THROUGH THE PARTIES' PAPERS IN

CONJUNCTION WITH JUDGE WHITE'S ORDER.  I THINK IT'S GOING -- I

THINK IT WOULD BE EASIER FOR ME TO TELL YOU WHERE I'M AT THIS

MORNING AND THEN ALLOW YOU TO CONVINCE ME OTHERWISE OR STAND

IN AGREEMENT WITH ME.

    IT'S GOING TO BE ONE OF THOSE WONDERFUL DISCOVERY THINGS

WHERE I THINK BOTH SIDES ARE RIGHT AND BOTH SIDES ARE WRONG A

LITTLE BIT EACH WAY.  ALL RIGHT?

1      SO THE WAY I'M LEANING AT THIS POINT IS THAT I THINK UMC'S

2  TAKING TOO NARROW APPROACH WITH REGARD TO THE ORDER, JUDGE

3  WHITE'S ORDER WITH REGARD TO SOME OF THE THINGS, BUT THAT

4  MICRON IS TRYING TO EXPAND ON SOME OF THE OTHERS.  SO I'LL GO

5  THROUGH THAT.  YOU CAN TAKE NOTES AND THEN SORT OF ADDRESS

6  THOSE WITH ME.  I THINK THAT WOULD PROBABLY BE BEST, THE

7  EASIEST FOR YOU AND THE EASIEST FOR ME.

8      WITH REGARD TO WHAT I WILL CALL MICRON'S PART A, THE

9  MICRON DOCUMENTS IN UMC'S POSSESSION AND HOW UMC OBTAINED

10  THEM.  I AM IN AGREEMENT WITH MICRON WITH REGARD TO THAT.  I

11  DON'T BELIEVE THAT JURISDICTIONAL DISCOVERY SHOULD BE LIMITED

12  TO THE SPECIFIC DOWNLOAD OF FILES IDENTIFIED BY MICRON'S

13  RECORDS THAT ITS ALREADY RELIED UPON IN THE HELLER DECLARATION

14  STATED BY UMC.

15      WITH REGARD TO... WITH REGARD TO THE CHRONOLOGY OF EVENTS

16  REGARDING WANG'S STATE OF MIND, UMC MAKES THE ARGUMENT THAT

17  WANG WAS NOT AN EMPLOYEE.  SO THE RECORDS RELATED TO THE STATE

18  OF MIND BETWEEN APRIL 16TH AND APRIL 23RD WERE EITHER

19  POSSESSED BY WANG OR MICRON.  SOMEBODY TELL ME -- I GUESS I'LL

20  HEAR FROM MICRON, WHAT IS THE TIMELINE OF WHEN WANG WAS

21  EMPLOYED WITH MICRON, WHEN HE LEFT, AND WHEN HE ENDED UP

22  WORKING FOR UMC.  IS THERE A GAP IN TIME IN THAT?

23           (PAUSE IN THE PROCEEDINGS.)

24      **MR. KAY:**  YES, YOUR HONOR.  WE BELIEVE THAT THE

25  EVIDENCE AND INFORMATION SHOWS THAT MR. WANG BEGAN WORK WITH

1   MICRON IN ROUGHLY 2015.  AND THEN WE DO, IN THE COMPLAINT,

2   HAVE, IN PARAGRAPH 27 HAVE SPECIFIC DATES WHICH ARE REFERENCED

3   IN THE CRIMINAL INDICTMENT IN TAIWAN, AND WE CITE THAT

4   MARCH 25TH, 2016 IS THE DATE MR. WANG RECEIVED AN OFFER LETTER

5   FROM UMC.

6           **THE COURT:**  OKAY.

7           **MR. KAY:**  THEN APRIL 5TH, 2016, MR. WANG GAVE NOTICE

8   OF RESIGNATION FROM MICRON.  AND THEN APRIL 26TH, ROUGHLY

9   THREE WEEKS LATER, MR. WANG LEAVES MICRON.  AND IN THAT WINDOW

10  BETWEEN APRIL 5TH WHEN MR. WANG GAVE NOTICE OF RESIGNATION AND

11  APRIL 26TH WHEN MR. WANG ACTUALLY LEFT MICRON, WITHIN THAT

12  RANGE, BETWEEN APRIL 16TH AND APRIL 23RD, IS WHEN MR. WANG

13  MADE THE DOWNLOADS OF ROUGHLY 931 FILES CONTAINING AN

14  EXTRAORDINARY AMOUNT OF MICRON TRADE SECRETS.

15      SO ALL OF THIS DOWNLOADING ACTIVITY OCCURRED AFTER

16  MR. WANG RECEIVED THE OFFER LETTER FROM UMC, AFTER MR. WANG

17  RESIGNED, AND WE BELIEVE, BUT IT WILL TAKE ADDITIONAL

18  DISCOVERY, THAT MR. WANG WAS, IN FACT, IN ALLIANCE WITH UMC

19  DURING THAT PERIOD.

20          **THE COURT:**  OKAY.  ARE YOU IN AGREEMENT WITH REGARD

21  TO THE TIMELINE?

22          **MR. JOHNSON:**  THE ANSWER TO YOUR QUESTION IS MOST OF

23  IT WE DON'T KNOW ABOUT.

24          **THE COURT:**  OKAY.

25          **MR. JOHNSON:**  MR. WANG STARTED AT UMC APRIL 28TH,

1    2016.  AND SO HIS ACTIVITIES BEFORE THAT WE WERE NOT AWARE OF.

2      THAT IS, THE DAY HE STARTED, WE CAN PROVIDE INFORMATION AS

3    OF THAT DATE, BUT PRIOR TO -- PRIOR THERETO, WE HAVE NO

4    EXPLANATION.  WE ALSO DON'T HAVE ANY EXPLANATION, FOR EXAMPLE,

5    WHY, IF MR. WANG IS GIVING NOTICE BACK IN MARCH AND DIDN'T

6    LEAVE UNTIL APRIL, WHAT, IF ANY, PROTOCOL MICRON HAD IN PLACE

7    TO EITHER MAKE SURE THAT INFORMATION THAT IT CONTINUED TO BE

8    TRADE SECRET WAS BEING PROTECTED, OR WHAT, IF ANY, EXIT

9    INTERVIEWS IT CONDUCTED WITH MR. WANG.

10     SO ALL WE HEAR ABOUT IS HAMMERING ABOUT, OH, WHAT UMC

11   ALLEGEDLY DID.  AND YET HERE IS AN EMPLOYEE WHO STARTED

12   MARCH 28 AND GAVE NOTICE, DIDN'T LEAVE UNTIL A MONTH LATER,

13   AND YET NOTHING WAS DONE.

14     NOW, I'M NOT GOING TO GET INTO THAT ISSUE NOW BECAUSE THIS

15   IS JUST A JURISDICTIONAL CASE, BUT IF YOU WERE ANYBODY WHO

16   KNOWS ANYTHING ABOUT TRADE SECRET LAWS KNOWS, THAT IS A HUGE

17   PROBLEM FOR MICRON.  WE CAN'T TELL YOU WHAT HIS STATE OF MIND

18   WAS BEFORE.  WE CAN TELL YOU WHAT HE WAS TOLD BY US ON

19   APRIL 28TH, AND WE CAN ALSO STATE ON THE RECORD THAT ONCE THIS

20   DISPUTE HAPPENED, MR. WANG WAS TERMINATED IMMEDIATELY.

21         **THE COURT:**  WITH REGARD TO THE SECOND PORTION, WHICH

22   IS THE ISSUE OF UMC RECRUITING, OKAY?  I'M WITH MICRON ON

23   PARAGRAPH 1.  I'M HAVING TROUBLE WITH PARAGRAPH 2.  AND SO

24   THAT IS PAGE 3 OF YOUR JOINT DISCOVERY LETTER BRIEF.

25     SO IN THAT -- IN THAT FIRST SENTENCE THERE, YOU'RE TALKING

1    ABOUT CORPORATE STRUCTURE AND RELATIONSHIP.  AND THEN YOU SAY

2    IT'S GOING TO GIVE YOU INFORMATION LIKELY TO BE THE TYPE OF

3    BUSINESS ACTIVITIES INCLUDING RECRUITMENT ACTIVITY.  BUT I

4    THINK THAT JUDGE WHITE'S ORDER ISN'T THAT BROAD.  IT'S NOT TO

5    INCLUDE RECRUITMENT ACTIVITY, IT IS JUST TO RECRUITMENT

6    ACTIVITY.

7         SO I'M NOT INCLINED TO GRANT YOUR REQUEST RELATED TO

8    INFORMATION ABOUT THE CORPORATE STRUCTURING RELATIONSHIP WITH

9    UMC AND UMC GROUP U.S.A. TO THE EXTENT IT'S OUTSIDE OF

10   RECRUITMENT TAILORING.

11        AND I BELIEVE THAT IS UMC'S POSITION AS TO THOSE REQUESTS;

12   IS THAT CORRECT?

13             **MR. JOHNSON:**  YES, YOUR HONOR.

14        JUST FOR CONTEXT, UMC U.S.A. IS THE SALES LINE.  IT'S NOT

15   PART OF THE FOUNDRY.  IT'S SEPARATE AND DISTINCT.

16        SO, YES, TO THE EXTENT THEY HAVE QUESTIONS CONCERNING

17   RECRUITMENT -- AND LET'S BE -- MAKE SURE I PUT A FINE POINT ON

18   THIS.  RECRUITMENT CONCERNING DRAM.  BECAUSE THIS CASE IS

19   ABOUT DRAM.  DYNAMIC RANDOM ACCESS MEMORY PRODUCTS, NOT ABOUT

20   OTHER PRODUCTS WHICH OUR COMPANY MANUFACTURES.

21             **THE COURT:**  THAT IS CONSISTENT WITH JUDGE WHITE'S

22   ORDER --

23             **MR. JOHNSON:**  CORRECT.

24             **THE COURT:**  -- WHICH IS THAT IT'S RECRUITMENT

25   ACTIVITIES THAT RELATE TO THE ALLEGATIONS IN THE LAWSUIT.

1          **MR. JOHNSON:**  CORRECT.

2          **THE COURT:**  SO ANY OF THOSE REQUESTS WOULD HAVE TO BE

3     LIMITED BY THAT.  AND SO IF YOU HAVE ALLEGATIONS IN THE

4     LAWSUIT RELATED TO DRAM THAT WOULD CERTAINLY BE APPROPRIATE.

5          DO YOU HAVE ALLEGATIONS IN THE LAWSUIT RELATED TO OTHER

6     VIOLATIONS?

7          **MR. KAY:**  NO, YOUR HONOR.  THIS LAWSUIT IS ABOUT

8     DRAM.

9          **THE COURT:**  OKAY.  SO YOU'RE FINE WITH THAT ANSWER?

10         **MR. KAY:**  YES.

11         **THE COURT:**  WITH REGARD TO THE THIRD PARAGRAPH, IT

12    APPEARS THAT THE PARTIES HAVE SORT OF... SEEMS LIKE THERE'S

13    SOME AGREEMENT ON THAT.  RECRUITMENT ACTIVITIES, BASED ON WHAT

14    UMC STATES IN THEIR PARAGRAPHS ON PAGE 5.  IT APPEARS THAT UMC

15    IS COMPLYING WITH THE REQUEST.

16         IS THERE -- AM I MISSING THAT?  IS THERE SOMETHING MORE

17    YOU'RE SEEKING?

18         **MR. KAY:**  YOUR HONOR, AS WE INTERPRET UMC'S OBJECTION

19    AND STATEMENT OF RESPONSE, THEY ARE ONLY PRODUCING INFORMATION

20    IF IT INVOLVES UMC U.S.A.  AND IF IT'S WITHOUT UMC U.S.A.'S

21    INVOLVEMENT, THEY ARE WITHHOLDING IT.  AND WE BELIEVE THAT IS

22    TOO RESTRICTIVE BECAUSE IF IT'S UMC RECRUITING, WE OUGHT TO

23    HAVE THE ABILITY TO PROBE IN DISCOVERY IS THAT REASONABLY

24    RELATED TO U.S. ACTIVITIES.

25         AND WE DON'T SEE JUDGE WHITE NARROWING TOPIC 2 TO

1    REQUIRING UMC U.S.A. EXPRESSLY BEING IDENTIFIED AS INVOLVED.

2    WE KNOW THE ACTIVITY OCCURRED IN NORTHERN CALIFORNIA.  THERE'S

3    NO DISPUTE THE RECRUITING EVENT OCCURRED AT THE HOTEL IN

4    NORTHERN CALIFORNIA.  AND UMC U.S.A. IS THE RESIDENT

5    CORPORATION HERE.  SO WE ARE ENTITLED TO PROBE UMC'S PRESENCE

6    HERE.  THAT'S THE WHOLE POINT OF THIS MOTION.

7         **THE COURT:**  RIGHT.  SO, OKAY.

8         SO TAKING A LOOK AT UMC'S STATEMENT ON PAGE 5, TALKS ABOUT

9    UMC IS PROVIDING DISCOVERY CONCERNING THE CASPA JOB FAIR

10   REFERENCE IN MICRON'S COMPLAINT AND ANY OTHER SIMILAR

11   RECRUITING THAT INVOLVED ALL THREE ENTITIES TO THE EXTENT

12   THERE WAS ANY.

13        SO, IN OTHER WORDS, THEY ARE PULLING IN THE JINHUA --

14        **MR. JOHNSON:**  JINHUA.

15        **THE COURT:**  JINHUA.

16        DOES THAT CONCESSION THAT THEY'RE GOING TO RELY ON THAT

17   DISCOVERY RELATING TO JINHUA MEET WHAT YOU'RE SEEKING IN

18   PARAGRAPH 3 OF B?

19        **MR. KAY:**  IT DOES NOT BECAUSE UMC IS, AGAIN,

20   REQUIRING THAT UMC U.S.A. BE AN INVOLVED PARTY IN THE

21   COMMUNICATION, AND THAT'S TOO RESTRICTIVE.

22        THE JUDGE WHITE ORDER OUGHT TO ALLOW DISCOVERY OF UMC'S

23   RECRUITING, AND THEN ALLOW THE PARTIES TO ARGUE INFERENCES AND

24   CIRCUMSTANTIAL EVIDENCE FROM THAT ABOUT WHETHER UMC U.S.A. WAS

25   INVOLVED OR NOT AND WHETHER --

1        **THE COURT:**  ISN'T THE -- ISN'T THE ORDER THAT IT'S

2    WHETHER OR NOT UMC U.S.A. AIDED UMC'S RECRUITMENT ACTIVITIES?

3    SO IT GOES TO UMC U.S.A.'S ACTIVITIES, RIGHT?

4        AND SO WHAT THEY'RE SAYING IS THAT THEY'LL GIVE THAT TO

5    YOU AS LONG AS IT HAS THE UMC U.S.A. HOOK, RIGHT?  ISN'T THAT

6    WHAT YOU --

7        **MR. JOHNSON:**  YOU HAVE IT EXACTLY RIGHT.

8        **THE COURT:**  OKAY.  SO I SEE THAT AS COMPLYING WITH

9    JUDGE WHITE'S ORDER.

10        **MR. KAY:**  I WOULD INTERPRET JUDGE WHITE'S ORDER MORE

11    BROADLY BECAUSE I WOULD LOOK AT TOPIC 2 TO SAY THE TOPIC IS

12    UMC'S RECRUITMENT ACTIVITIES.  THE WORDING IN THE MIDDLE OF 2,

13    ON PAGE 1 OF JUDGE WHITE'S ORDER.

14        UMC IS THE DEFENDANT HERE CHALLENGING PERSONAL

15    JURISDICTION.

16        **THE COURT:**  HANG ON.  LET ME GET TO THE TOPIC.

17        **MR. KAY:**  SO THE ISSUE BEFORE THE COURT IS UMC'S

18    STATUS AND PERSONAL JURISDICTION.  UMC HAS A 12(B)(6) MOTION

19    PENDING ON PERSONAL JURISDICTION.  UMC U.S.A. IS NOT A PARTY.

20        **THE COURT:**  I UNDERSTAND.

21        **MR. KAY:**  SO THE RELEVANT ISSUE FOR JUDGE CHESNEY,

22    WHOM WE ARE BEFORE NOW, IS DOES THE COURT HAVE PERSONAL

23    JURISDICTION OVER UMC.  AND JUDGE WHITE WROTE --

24        **THE COURT:**  BUT I THINK -- ISN'T HE WRITING THAT WITH

25    REGARD TO THE U.S.A. -- UMC U.S.A. IN ORDER TO GET THAT HOOK

```
1    INTO UMC?

2              MR. KAY:   IN PART, YES.  BUT I SUBMIT THAT JUDGE

3    WHITE'S ORDER IS BROADER BECAUSE IT'S DISCOVERY REGARDING

4    UMC'S RECRUITMENT ACTIVITIES AND TO WHAT EXTENT DID UMC GROUP

5    U.S.A. AID THOSE ACTIVITIES.

6         SO YOU CAN'T JUST LOOK AT THE AIDING WITHOUT LOOKING AT

7    WHAT'S BEING AIDED BECAUSE YOU HAVE A VACUUM THEN.  BECAUSE

8    THE OTHER SIDE'S POSITION IS THERE'S BASICALLY NOTHING.  AND

9    YOU HAVE TO LOOK AT WHAT IS BEING IDENTIFIED AS THE UMC

10   RECRUITMENT ACTIVITIES TO KNOW WAS THERE AIDING OF IT.  YOU

11   CAN'T, IN A VACUUM, NOT LOOK AT THE ORIGINAL EVENT TO ASSESS

12   AIDING OF IT.

13             THE COURT:   OKAY.

14             MR. JOHNSON:  WOULD YOU LIKE A RESPONSE?

15             THE COURT:   NO.  I'M -- I DON'T NEED YOUR RESPONSE.

16        I'M NOT GOING TO EXPAND THAT... THAT SENTENCE OF THE ORDER

17   FROM JUDGE WHITE.  JUDGE CHESNEY MAY HAVE ANOTHER VIEW FURTHER

18   ON DOWN THE ROAD, BUT FOR RIGHT NOW I'M NOT GOING TO DO THAT.

19        SO WITH REGARD TO THE FIRST PORTION OF THE -- THIS LETTER

20   BRIEF, WITH REGARD TO MY RULING ON THAT, MICRON DOCUMENTS IN

21   UMC'S POSSESSION AND HOW UMC CAME, I FIND THAT UMC IS

22   CONSTRUING THAT TOO NARROWLY.  WITH REGARD TO THE SECOND ISSUE

23   I'M FINDING THAT MICRON IS EXPANDING IT TOO BROADLY.

24        SO LET'S TALK ABOUT A, AND LET'S GO DOWN AND FIGURE OUT

25   HOW IT IS GOING TO PLAY OUT WITH REGARD TO THE TOPICS AND THE
```

1    30(B)(6) TOPICS AND THE PRESS FOR PRODUCTION.

2        SO WHAT I THINK WHAT I WOULD LIKE TO DO IS -- EVERYONE HAS

3    COPIES OF THE REQUEST FOR PRODUCTIONS AND THE TOPICS IN FRONT

4    OF THEM, RIGHT?

5        **MR. KAY:**  YES.

6        **THE COURT:**  SO WHAT I'M GOING TO DO IS, I'M GOING TO

7    LEAVE AND I'M GOING TO LET YOU GUYS TALK ABOUT THIS IN REGARDS

8    TO HOW UMC CAN PRODUCE THESE DOCUMENTS AND MAKE THIS STUFF

9    AVAILABLE WITH REGARDS TO THIS ISSUE A, AND THEN I'LL LET YOU

10   GUYS TALK ABOUT TOPIC 2, KEEPING IN MIND THAT MY DETERMINATION

11   IS THAT MICRON IS ASKING FOR TOO MUCH AS IT RELATES TO THE

12   BUSINESS ACTIVITIES AND RELATIONSHIPS, CORPORATE FORMATION

13   STRUCTURE, ORGANIZATION AND OPERATIONS OF UMC WITH RELATION TO

14   THE UMC GROUP AND THEY'RE ASKING TOO MUCH WITH REGARD TO THE

15   UMC'S AMERICAN SUBSIDIARIES, RECRUITMENT ACTIVITIES BY ASKING

16   FOR UMC'S ACTIVITIES AS IT RELATES TO JINHUA OR ANYTHING ELSE

17   THAT DOESN'T HAVE A UMC GROUP U.S.A.'S HOOK.

18       AND THEN I'LL COME BACK IN WHEN YOU GUYS ARE DONE, AND IF

19   THERE'S ANY LIKE, YOU KNOW, ONE OR TWO ISSUES ON ONE OF THOSE

20   REQUEST FOR PRODUCTIONS OR ON ANY OF THOSE TOPICS ON 30(B)(6),

21   THEN WE CAN GO THROUGH THEM, YOU KNOW, ON AN INDIVIDUAL BASIS.

22       HOW DOES THAT SOUND?  DO YOU HAVE A QUESTION?

23       **MR. KAY:**  YES, YOUR HONOR, I ACTUALLY DO HAVE A

24   QUESTION AND FOR CLARIFICATION.

25       SO LOOKING AT THE LETTER BRIEF, IN OUR SECTION B RELATING

1    TO THE RECRUITING ACTIVITIES.

2              THE COURT:  YEP.

3              MR. KAY:  MY UNDERSTANDING FROM WHAT YOU SAID IS THAT

4    YOU WERE IN AGREEMENT WITH MICRON AS TO OUR PARAGRAPH NO. 1 --

5              THE COURT:  THAT'S CORRECT.

6              MR. KAY:  OKAY.

7              THE COURT:  YES.  IT HAS TO BE ON THEIR RECRUITMENT

8    ACTIVITIES IN THE U.S.  I DON'T THINK IT'S LIMITED UNDER JUDGE

9    WHITE'S ORDER.  BUT I DON'T THINK YOU'RE ENTITLED TO ITS

10   CORPORATE STRUCTURE RELATIONSHIP.

11        SO YOU GUYS CAN TALK ABOUT THOSE THINGS TOGETHER, HAMMER

12   SOME OF THOSE INDIVIDUAL DETAILS ON THE REQUEST FOR

13   PRODUCTION, AND WE CAN GO THROUGH THEM TO MAKE SURE EVERYONE

14   IS ON THE SAME PAGE.

15        YES, SIR.

16             MR. JOHNSON:  ON THE A PART?

17        THE COURT:  YES.

18             MR. JOHNSON:  I DIDN'T GET A CHANCE TO ADDRESS IT.

19        THE COURT:  YES.

20             MR. JOHNSON:  THE DIFFICULTY I HAVE IS BASICALLY THE

21   JUDGE SAID UMC'S AGENTS OR PEOPLE ACTING ON THEIR BEHALF --

22   PEOPLE ACTING ON BEHALF, SPECIFICALLY MR. WANG.

23        AND THE PLEADINGS, THEY MADE IT VERY CLEAR WHAT MR. WANG

24   DOWNLOADED.  IT IS, IN FACT, THE CASE THAT THERE WERE ONLY

25   THREE MICRON EMPLOYEES WHO WERE INVOLVED IN THIS CASE:

MR. WANG, MR. HO, AND MR. CHEN.

AND WE HAD PRODUCED OR ARE PREPARED TO PRODUCE MR. HO AND MR. CHEN.  I DON'T KNOW, WHEN YOU SAY WE READ IT TOO NARROWLY, HOW WE COULD... HOW WE COULD READ IT MORE EXPANSIVELY.  ALL THE PEOPLE WHO WERE FORMER MICRON EMPLOYEES WHO WERE IMPLICATED IN THIS CASE EITHER BY WAY OF ALLEGATIONS IN THEIR COMPLAINT OR IN THE VARIOUS DECLARATIONS, WE ARE PRODUCING.

**THE COURT:**  IT SEEMS TO ME YOU WOULD BE IN COMPLIANCE WITH JUDGE WHITE'S ORDER IF YOU ARE -- YOU ARE PRODUCING EITHER UMC OR THEIR EMPLOYEES, OR SOMEONE WORKING ON BEHALF OF UMC.

**MR. JOHNSON:**  RIGHT.

**THE COURT:**  SUCH AS A MR. WANG -- SUCH AS MR. WANG, AND WOULDN'T INCORPORATE ANYBODY ELSE THAT'S UNKNOWN TO THEM AT THIS POINT.

**MR. JOHNSON:**  WE KNOW THE UNIVERSE IS FIXED.  IT'S WANG, HO, AND CHEN.

**THE COURT:**  OKAY.

**MR. JOHNSON:**  NOW, WE PRODUCED WANG, HO AND CHEN.  I DON'T KNOW WHAT MORE WE CAN BE ASKED TO DO UNLESS -- BECAUSE I THINK --

(SIMULTANEOUS COLLOQUY.)

**THE COURT:**  YOU'VE GIVEN THEM EVERYTHING PURSUANT TO THAT, THEN WHAT'S THE PROBLEM?

**MR. JOHNSON:**  THAT'S THE PROBLEM.  I THINK THEY'RE

1    AFTER MUCH MORE THAN THAT.

2         **THE COURT:**  OKAY.

3         **MR. JOHNSON:**  I THINK THEY WANT TO GO ON THIS

4    EXPANSIVE SEARCH AND DESTROY AND WANT TO DEPOSE ANYBODY WHO

5    HAD ANYTHING TO DO WITH ANYTHING AT UMC AND THEN ARGUE THAT BY

6    IMPLICATION IF THEY HAD PROXIMITY TO WANG, HO, OR CHEN, THAT

7    WE NOW HAVE TO PRODUCE THEM.

8        AND THAT'S NOT -- WE ARE NOT GOING TO DO.  WE WILL

9    PRODUCE, AS I UNDERSTAND THE JUDGE'S ORDERS, THOSE PEOPLE --

10        **THE COURT:**  IF THEY ARE TRADE SECRETS FROM MICRON'S

11   SERVERS.

12        **MR. JOHNSON:**  CORRECT.

13        **THE COURT:**  THAT ARE LOCATED IN THE UNITED STATES.

14        **MR. JOHNSON:**  RIGHT.

15        **THE COURT:**  AND THEY WERE DOWNLOADED BY THEM, THEN

16   THEY ARE PRODUCED.  RIGHT?  THEN THOSE -- THEN THAT

17   INFORMATION RELATED TO THEM IS PRODUCED.

18        **MR. JOHNSON:**  WELL, THE PROBLEM WITH THAT, YOUR

19   HONOR, IS THE ONLY PERSON WHO KNOWS WHAT THOSE TRADE SECRETS

20   ARE IS MICRON.

21        **THE COURT:**  OKAY.  SO HAS MICRON IDENTIFIED FOR YOU

22   OTHER PEOPLE THEN?

23        **MR. JOHNSON:**  NO.  THE ONLY PEOPLE WE HAVE ARE WANG,

24   HO, AND CHEN.  AND WE WILL PRODUCE WANG, HO, AND CHEN, AND

25   THEY CAN GRILL THEM TO THEIR HEART'S DELIGHT.  WE CAN'T

1    PRODUCE WANG BECAUSE WANG IS TAIWANESE.  WE DON'T HAVE

2    SUBPOENA POWER.  HE NO LONGER WORKS FOR US.

3         **THE COURT:**  WHAT ARE YOU ASKING FOR THAT HE'S NOT

4    ALREADY GIVING?

5         **MR. KAY:**  YES.  THANK YOU.

6      WE ARE ASKING FOR UMC TO DECLARE COMPLIANCE WITH JUDGE

7    WHITE'S ORDER THAT THEY HAVE PRODUCED ALL INFORMATION, WHETHER

8    IT'S DOCUMENTS OR DEPOSITION TESTIMONY, WHETHER IT'S ONE OF

9    THOSE NAMED PEOPLE OR SOMEONE WORKING ON UMC'S BEHALF, SUCH AS

10   MR. WANG.

11     SO, FOR EXAMPLE, WE ARE -- MR. JOHNSON AND I ARE SCHEDULED

12   TO GO TO TAIWAN, AND WE ARE STARTING DEPOSITIONS ON JULY 9.  I

13   WILL BE DEPOSING MR. HO.

14     I WILL ASK MR. HO:  MR. HO, DID YOU DIRECT ANYONE TO

15   DOWNLOAD INFORMATION FROM MICRON SERVERS THAT CONTAIN TRADE

16   SECRET MICRON INFORMATION?

17     UNDER MR. JOHNSON'S VIEW, THAT'S AN OBJECTIONABLE QUESTION

18   AND HE CAN INSTRUCT THE WITNESS NOT TO ANSWER BECAUSE IT IS

19   SOMEONE OTHER THAN MR. WANG, MR. HO, AND THE THIRD PERSON --

20        **THE COURT:**  I'M NOT HEARING HIM SAY THAT.

21        **MR. JOHNSON:**  THAT'S NOT WHAT I'M SAYING.  THAT'S

22   ABSOLUTELY PROPER.  HIS STATE OF MIND IS RELEVANT.

23     WHAT I AM SAYING THOUGH IS, YOU CAN ASK MR. HO THAT.  YOU

24   CAN ASK MR. CHEN THAT.  AND IF YOU DEPOSE MR. WANG, YOU CAN

25   ASK HIM THAT.

1    **THE COURT:**  WOULD YOU BE ABLE TO CERTIFY TO THEM THAT

2    THIS IS ALL YOU KNOW ABOUT?

3    **MR. JOHNSON:**  CORRECT.

4    **THE COURT:**  SO THEY WILL -- SO THAT WOULD SATISFY

5    WHAT YOU'RE TALKING ABOUT, WHAT YOU REQUEST.

6    **MR. KAY:**  IN PART.

7    **THE COURT:**  OKAY.

8    **MR. KAY:**  I'M CURIOUS WHY WE ARE EVEN HAVING THE

9    DISCUSSION.  BECAUSE IF UMC IS DECLARING COMPLETE COMPLIANCE

10   WITH THAT CLAUSE, THEN THERE'S NOTHING TO DISCUSS.  BUT WE

11   SHOULD NOT REDEFINE IT TO SAY THAT THE ONLY OBLIGATION TO

12   RESPOND IS WITH REGARD TO THREE SPECIFIC INDIVIDUALS.

13     AND IN FRONT OF ME IS THE UMC PRODUCTION TO DATE, AND

14   THERE IS NO EVIDENCE IN THE UMC PRODUCTION OF DOWNLOADING.  SO

15   WE HAVE AN ABSENCE OF PRODUCTION ON THE TOPIC THAT WE KNOW

16   DOCUMENTS EXIST SOMEWHERE.

17   **THE COURT:**  YOU KNOW THERE ARE DOCUMENTS CONCERNING

18   OTHER PEOPLE OR AS TO LIKE THE PEOPLE THAT HE'S IDENTIFIED?

19   **MR. KAY:**  AT LEAST THE PEOPLE THAT ARE IDENTIFIED.

20   **THE COURT:**  IF THERE ARE ADDITIONAL DOCUMENTS RELATED

21   TO THOSE PEOPLE THAT YOU KNOW ARE IN THEIR POSSESSION, THEY

22   HAVE NOT TURNED OVER TO YOU YET.

23   **MR. KAY:**  WE DON'T KNOW ABOUT ADDITIONAL DOCUMENTS,

24   THAT'S WHY WE ARE PROBING IN DISCOVERY.

25   **MR. JOHNSON:**  YOUR HONOR, IF I MIGHT.

1          **THE COURT:**  YEAH.

2          **MR. JOHNSON:**  THAT IS ABSOLUTELY WRONG.  HE KNOWS

3     WHAT WAS DOWNLOADED BECAUSE IT CAME FROM HIS SERVERS.

4          **THE COURT:**  RIGHT.

5          **MR. JOHNSON:**  SO WHAT WE'RE SAYING IS, WHAT WE'RE

6     SAYING IS, YOU SAY 1A DOWNLOADED.  YOU SAY HO AND CHEN -- HO

7     USED A USB DRIVE, AT LEAST THAT'S WHAT THEY ALLEGED IN THEIR

8     COMPLAINT.  I HAVE NO IDEA IF THAT'S WHAT THEY ARE GOING TO

9     ASSERT, AND THAT CHEN SOMEHOW WAS A PUPPET MASTER.  THEY CAN

10    ALL TESTIFY AS TO WHAT THEY KNEW AND WHEN THEY KNEW IT, BUT

11    THAT IS WHAT I UNDERSTAND THE JUDGE'S ORDER TO BE.

12        AND IF THEY -- IF THEY WANT MORE THAN THAT, THEN THEY HAVE

13    A PROBLEM.  AND THAT PROBLEM IS THE TAIWANESE CRIMINAL

14    AUTHORITIES WHO SEIZED THE VARIOUS RECORDS AND HAVE IT IN

15    THEIR POSSESSION.  WE DON'T HAVE IT.

16        **THE COURT:**  ALL YOU HAVE TO DO IS CERTIFY THAT IT IS

17    NOT IN YOUR POSSESSION, THAT YOU DON'T HAVE ANYTHING OUTSIDE

18    OF THIS REQUEST IN YOUR POSSESSION.

19        **MR. JOHNSON:**  THE ONLY PROBLEM WITH THAT, YOUR HONOR,

20    IS WHAT IF IT TURNS OUT THAT SOMEWHERE SOME WAY THERE WAS A --

21    THERE WAS SOME LINES OF CODE THAT THEY CAN ARGUE LATER WERE,

22    IN FACT, IN OUR POSSESSION?

23        I CAN ANSWER AS TO INDIVIDUALS WHO EITHER EMPLOYED THERE

24    OR WHO WORKED WITH HIM.  THOSE ARE THE THREE WE HAVE.  BUT IF

25    WE GO BEYOND IT, NOW IT'S A WITCH HUNT.  AND MY CLIENT DOES

```
1    NOT WANT TO BE -- PARTICULARLY GIVEN THE SPECIFICITY OF THIS

2    ORDER, TO HAVE TO ENGAGE IN SPECULATION AS TO WHAT HAPPENED

3    AND WHO MIGHT OF DONE IT.

4              THE COURT:  I UNDERSTAND IT, BUT AT THE SAME TIME IT

5    SAYS WHETHER UMC OR SOMEONE WORKING FOR UMC.  I MEAN, IF IT'S

6    IN YOUR POSSESSION... I MEAN, YOU'RE CONCERNED ABOUT HAVING TO

7    DO THE SEARCH FOR IT?

8              MR. JOHNSON:  WELL, NOT ONLY THAT, IT'S THE DOWNLOAD

9    IS ONE THING.  THE DOWNLOAD WITH KNOWLEDGE THAT IT CAME FROM A

10   U.S. SERVER IS ANOTHER.

11             THE COURT:  WELL --

12             MR. JOHNSON:  AND SO --

13             THE COURT:  BUT THE QUESTION FOR THEM IS WHETHER OR

14   NOT UMC KNEW OR, OR ONE OF UMC'S AGENTS KNEW.  SO EVEN IF YOU

15   SAY MR. WANG DIDN'T KNOW --

16             MR. JOHNSON:  RIGHT.

17             THE COURT:  -- THAT DOESN'T MEAN THAT UMC DIDN'T KNOW

18   THAT THAT WAS A U.S. SERVER.  RIGHT?

19             MR. JOHNSON:  RIGHT.  BUT WHO WOULD KNOW?  BUT THE

20   ONLY PEOPLE WHO WOULD HAVE KNOWLEDGE OF THAT MOST LIKELY, I'M

21   NOT SAYING -- I'M SAYING ANYTHING IS POSSIBLE, WOULD BE

22   MR. HO --

23                    (SIMULTANEOUS COLLOQUY.)

24             THE COURT:  THAT IS DISCOVERY THAT IS --

25             MR. JOHNSON:  BUT THAT'S ALSO --
```

```
 1                    (SIMULTANEOUS COLLOQUY.)

 2          MR. JOHNSON:  -- THE POINT OF THE PROBLEM.  BECAUSE

 3    THEY CAN SIMPLY SAY, WELL SOMEBODY ELSE MIGHT HAVE KNOWN, AND

 4    NOW WE'RE DOWN A RAT HOLE.

 5       THE COURT ORDERED SPECIFIC KNOWLEDGE.  THE SPECIFIC

 6    KNOWLEDGE WAS THAT IT WAS FROM A U.S. SERVER.  AND THEY

 7    IDENTIFIED THE PEOPLE WHO WERE INVOLVED.

 8       WE ARE PRODUCING THOSE PEOPLE.  BUT I DON'T SEE HOW I CAN

 9    THEN GO WITHOUT INTERVIEWING OVER 3,000 PEOPLE TO FIND OUT,

10    WELL, DID YOU KNOW ABOUT MICRON'S POLICY, AND WHAT WAS IT, AND

11    WHEN DID YOU KNOW?

12          THE COURT:  SO WHAT CAN THEY DO THAT WOULD SATISFY

13    WHAT YOU WANT OUT OF THIS?

14          MR. KAY:  YES.

15       SO WHAT I BELIEVE IS THE CASE IS THAT UMC, THE COMPANY, IS

16    AWARE OF WHAT WAS COLLECTED AS EVIDENCE FOR THE TAIWANESE

17    CRIMINAL MATTER AND THE DEGREE UMC IS IN POSSESSION CUSTODY OR

18    CONTROL OF THAT INFORMATION CURRENTLY, IT WOULD MAKE IT

19    AVAILABLE TO COUNSEL FOR REVIEW AND PRODUCTION.

20          MR. JOHNSON:  THAT IS NOT WHAT -- THAT'S NOT WHAT'S

21    REQUIRED.

22       HE'S NOW ASKING US TO SAY ALL OF THE DOCUMENTS THAT WE

23    KNOW GOT DOWNLOADED YOU HAVE TO GIVE TO US.  AND THAT'S NOT

24    WHAT THE JUDGE ORDERED.

25       WHAT THE JUDGE ORDERED IS IF DOCUMENTS WERE DOWNLOADED
```

1   WITH KNOWLEDGE THAT THEY WERE COMING FROM A U.S. SERVER, YOU

2   ARE ENTITLED TO THAT INFORMATION.  BECAUSE OTHERWISE WE NOW

3   HAVE FULL BLOWN DISCOVERY, WHICH IS EXACTLY WHAT THE COURT

4   SAID THEY WERE NOT ENTITLED TO BECAUSE THEY HAD NOT MADE OUT A

5   PRIMA FACIE CASE.

6          **MR. KAY:**  IF I MAY ADDRESS THAT?

7          **THE COURT:**  SURE.

8          **MR. KAY:**  THE ACTUAL PRODUCTION OF THE MICRON

9   DOCUMENTS WILL DEMONSTRATE THE KNOWLEDGE BECAUSE THE METADATA

10  IN REQUEST NO. 1 WHICH IS SOUGHT WILL LIKELY SHOW THE SOURCE

11  AND OTHER INFORMATION DEMONSTRATING THE LINK TO THE BOISE

12  SERVER.  AND COMBINED WITH OTHER EMAIL AND DOCUMENTS, WE WILL

13  BE ABLE TO LINK AND SHOW THAT THAT METADATA DEMONSTRATE THE

14  KNOWLEDGE OF ACCESS FROM THE U.S. SERVERS.

15         **THE COURT:**  AND THAT'S THE PARAMETERS OF THE

16  DISCOVERY, RIGHT?  IF THE PARAMETERS OF THE DISCOVERY RELATE

17  TO WHETHER UMC OR SOMEONE WORKING ON THEIR BEHALF

18  DOWNLOADED -- SO THEY ARE DOING DISCOVERY RELATED TO THAT.

19  RELATED TO THAT, IF THEY GET AHOLD OF THE DOCUMENTS AND THE

20  DOCUMENTS HAVE THE METADATA ON IT THAT EXPLAINS THAT, YES,

21  THIS WAS DOWNLOADED FROM A U.S. SERVER AND THEY WOULD HAVE

22  KNOWN THAT WHEN THEY DOWNLOADED THAT, OR UMC WOULD HAVE KNOWN

23  THAT, YOU KNOW, AGENTS OR EMPLOYEES, WHATEVER.

24      SO IT'S NOT THAT THEY HAVE TO HAVE THE EVIDENCE THAT THERE

25  WAS KNOWLEDGE AND DOCUMENTS DOWNLOADED FROM U.S. SERVERS PRIOR

1    TO REQUESTING THE DISCOVERY, THEY ARE DOING THE DISCOVERY IN

2    ORDER TO ESTABLISH THOSE THINGS.  THAT'S WHAT THE FURTHER

3    DISCOVERY ON FACTUAL DEVELOPMENT IS ORDERED FOR, RIGHT?

4              **MR. JOHNSON:**  WELL, YOU -- YOU -- THIS IS TWO MAJOR

5    STEPS.

6              **THE COURT:**  OKAY.

7              **MR. JOHNSON:**  FIRST OF ALL, IS THERE METADATA?  THEY

8    KNOW WHAT WAS DOWNLOADED, WHEN IT WAS DOWNLOADED.  SO THEY

9    KNOW IF, IN FACT, THE METADATA DISCLOSED WHATEVER IT

10   DISCLOSED.  WHAT THAT METADATA WILL NOT SHOW IS WHAT THE

11   PERSON WHO DOWNLOADED KNEW.  AND THERE'S NO --

12             **THE COURT:**  MAYBE, MAYBE IN THE PROCESS OF

13   DOWNLOADING IT OR HOW THEY SORT OF HACKED IN AND TOOK IT WOULD

14   LEAD THEM TO KNOW THAT IT WAS A U.S. --

15             **MR. JOHNSON:**  WELL, THAT'S TRUE -- IF THAT WERE TRUE

16   THEN, AND THEY -- THE PEOPLE THEY IDENTIFIED, MR. WANG,

17   MR. HO, AND MR. CHEN WOULD HAVE THAT INFORMATION.  AND THOSE

18   PEOPLE ARE ALREADY AVAILABLE.

19        THEY ARE ASKING FOR MUCH MORE THAN THAT.  I NOW AM

20   SUPPOSED TO GUESS WHAT THEIR METADATA SAID AND THEN I HAVE TO

21   GO FURTHER TO GUESS WHAT PEOPLE REVIEWED IT AND THEN

22   UNDERSTOOD IT.

23        THEY HAVE THE BURDEN HERE OF ESTABLISHING JURISDICTION.

24             **THE COURT:**  CORRECT.

25             **MR. JOHNSON:**  THIS IS -- WHAT -- THAT BURDEN IS

1    EASILY SATISFIED BY THEIR ARGUMENT, LOOKING AT THEIR SERVER

2    AND THEIR METADATA TO SATISFY WHAT WAS DOWNLOADED AND IT WENT

3    TO WHOM.

4        AND IF THEY WERE TO SAY, WE KNOW THAT A NUMBER OF -- X

5    EMPLOYEE GOT IT, THAT'S ONE THING.  I CAN TALK TO THAT.  WE

6    HAVE IDENTIFIED THOSE PEOPLE AND WE ARE PRODUCING.

7        BUT WHAT YOU ARE ASKING ME TO DO IS AN IMPOSSIBILITY.  YOU

8    ARE ASKING ME TO ASSUME I KNOW WHAT THEY DID ON THEIR SERVERS,

9    READ THEIR METADATA, AND THEY KNEW THE STATE OF MIND OF AN

10   INDIVIDUAL WHEN HE DOWNLOADED AS TO WHERE IT CAME FROM.  AND

11   THAT'S AGAINST THE BACKGROUND --

12           **THE COURT:**  NO.

13           **MR. JOHNSON:**  -- WE'RE IN TAIWAN.  WE ARE NOT IN THE

14   UNITED STATES.

15           **THE COURT:**  THEY'RE NOT ASKING YOU TO KNOW WHAT

16   THEIR -- WHAT THE STATE OF MIND IS.  THEY'RE ASKING YOU TO

17   PRODUCE THOSE DOCUMENTS THAT THEY COULD THEN IDENTIFY AS BEING

18   SOMETHING THAT SOMEBODY WOULD HAVE KNOWN OR EVEN GO IN AND

19   DEPOSE THEM, OR WHATEVER THEY DO WITH REGARD TO THAT PERSON,

20   RIGHT?  THEY WANT THE RAW DATA SO THEY COULD THEN --

21           **MR. JOHNSON:**  BUT, YOUR HONOR, THE PROBLEM WITH THAT

22   IS THEY PARTICIPATED WITH THE CRIMINAL AUTHORITIES IN TAIWAN.

23   THEY FROZE -- THEY OBTAINED A COPY OF MR. WANG'S HARDWARE.

24   THEY HAVE ALL THAT OF INFORMATION --

25           **THE COURT:**  WHAT HE'S ASKING FOR IS ANYTHING THAT YOU

1   HAVE IN YOUR POSSESSION RELEVANT TO THESE, TO THESE REQUESTS

2   THAT WEREN'T TURNED OVER TO THE TAIWAN AUTHORITIES, WEREN'T --

3   THAT YOU JUST HAVE IN YOUR CURRENT POSSESSION NOW.

4       AND SO IF YOU'RE ABLE TO EITHER TURN THOSE OVER OR CERTIFY

5   THAT YOU DON'T HAVE ANYTHING, THEN WHAT'S -- I DON'T

6   UNDERSTAND THE PROBLEM WITH THAT.

7           **MR. JOHNSON:**  WELL, THE -- BECAUSE --

8           **THE COURT:**  I KNOW YOU'RE WORRIED THAT LATER ON THEY

9   ARE GOING TO COME BACK --

10          **MR. JOHNSON:**  NO, NO.

11          **THE COURT:**  -- AND FOUND SOMETHING.

12          **MR. JOHNSON:**  LET'S JUST STOP WITH THE ARGUMENT JUST

13  MADE.

14      TO TURN OVER SOMETHING THAT THEY DON'T HAVE.  I KNOW WHAT

15  MR. WANG DOWNLOADED AND SO DO THEY BECAUSE THEY HAVE IT.  SO

16  IF THERE WAS SOMEONE ELSE, THEY WOULD ALSO KNOW BECAUSE IT

17  COMES FROM THEIR SERVERS.

18      I CAN'T -- WHAT -- SO YOU'RE ASKING ME --

19          **THE COURT:**  LET'S TAKE THAT ONE THING.  HOW WOULD

20  THEY KNOW?  LET'S SAY THEY HAVE A BREACH.

21          **MR. JOHNSON:**  RIGHT.

22          **THE COURT:**  SOMEBODY TAKES SOMETHING.  HOW WOULD THEY

23  NECESSARILY KNOW THAT THAT PERSON WAS ACTING ON BEHALF OF UMC?

24          **MR. JOHNSON:**  WELL, THE ANSWER IS THEY WOULDN'T, BUT

25  THEY WOULD HAVE A RIGHT TO TAKE THEIR DEPOSITION.  BUT WHAT

```
 1    THEY WOULD KNOW IS WHO THE PERSON WHO MADE THE DOWNLOAD WAS.
 2            THE COURT:  SO --
 3            MR. JOHNSON:  SO MR. HO, MR. WANG, MR. CHEN ARE THE
 4    PEOPLE IDENTIFIED.
 5            THE COURT:  BUT THERE MIGHT BE SOMEBODY ELSE.  I
 6    MEAN, WE DON'T KNOW.  SO --
 7            MR. JOHNSON:  BUT WHOSE --
 8            THE COURT:  HE IS ASKING YOU IF YOU HAVE INFORMATION
 9    IN YOUR POSSESSION RELATED TO THE STEALING OF TRADE SECRETS
10    OFF OF THEIR SERVERS THAT YOU SHOULD TURN IT OVER TO THEM.
11    THAT DOESN'T SEEM UNREASONABLE.
12            MR. JOHNSON:  WELL, YOU SAY IT DOESN'T SEEM
13    UNREASONABLE, BUT WITHOUT BOTHERING TO EXPLAIN TO ME HOW I AM
14    SUPPOSED TO KNOW SOMETHING THEY SHOULD ALREADY KNOW.
15            THE COURT:  THEY DON'T KNOW THERE IS MAYBE A UMC HOOK
16    THERE, RIGHT?  THEY MAY HAVE -- THEY MAY HAVE A THOUSAND
17    ATTEMPTS AT HACKS A DAY OR PEOPLE STEALING TRADE SECRET --
18    ATTEMPTING TO OR STEALING TRADE SECRETS OFF THEIR SERVERS,
19    THEY'VE GOT TO ESTABLISH THERE'S A UMC HOOK ON THIS THING.
20         AND SO IF YOU HAVE SOMETHING IN YOUR POSSESSION THAT THEN
21    ESTABLISHES THAT THIS UNIDENTIFIED DOWNLOAD THAT WAS ALLEGED
22    OR ILLEGAL, THEN THEY'RE ABLE TO MAKE THAT CONNECTION, THEN
23    THEY NOW KNOW THAT HE'S INVOLVED, AND THEY CAN USE THAT AS
24    PART OF THEIR MOTION TO ESTABLISH JURISDICTION.
25            MR. JOHNSON:  BUT, YOUR HONOR, THE HYPOTHETICAL FALLS
```

APART BECAUSE THEY IDENTIFIED THIS STEP IN 2016.  THEY

SEARCHED THEIR SERVERS AND IDENTIFIED EVERYTHING THAT WAS

DOWNLOADED, TO WHOM, AND TO WHO IT WAS DIRECTED.  THEY DID

THAT.  THAT'S PURPORTEDLY WAS WHAT MR. HELLER DID, RIGHT?

SO IF THEY DID IT, BECAUSE THEY HAD THE ACCESS TO THE

INFORMATION AND TO WHOM IT WOULD HAVE BEEN DIRECTED, THEN

ASKING ME NOW TO GO AND SAY, WELL, THERE MIGHT HAVE BEEN

SOMEBODY ELSE, GO SEARCH A NEEDLE IN THE HAY STACK IS NOT ONLY

UNFAIR, IT'S NOT REQUIRED BY THIS ORDER.

I'M HAPPY TO PRODUCE ANYBODY WHO THEY HAVE IDENTIFIED AS

HAVING SOME KNOWLEDGE.  AND I SAID THE ONLY THREE WE HAVE

IDENTIFIED ARE THESE.

**THE COURT:**  SO ESSENTIALLY YOUR ARGUMENT IS THAT IT'S

GOING TO BE OVERLY BURDENSOME, IT'S NEARLY IMPOSSIBLE TO BE

ABLE TO FIND ANY HOOK ON THESE ALLEGED DOWNLOADS FROM THE

SERVERS.

ARE YOU GUYS ABLE TO IDENTIFY ANY OF THESE ALLEGED

DOWNLOADS AND THEN MAKE SPECIFIC REQUESTS WITH REGARD TO THEM

TO UMC?

**MR. KAY:**  IN PART, YES, BUT THAT OUGHT NOT TO BE THE

TEST.  BECAUSE THE INFORMATION ON OUR END IS NOT NECESSARILY

AS STRONG PROOF AS THE INFORMATION ON THE UMC END BECAUSE OF

THE METADATA SHOWING THE CHRONOLOGY OF WHO, WHAT, WHEN, IP

ADDRESS, ACCESS TO SERVERS.

SO IT'S ALMOST IRRELEVANT THAT WE UNCOVER VERSIONS FROM

1   OUR SIDE.  THE MORE INTERESTING VERSIONS MAY VERY WELL BE FROM

2   THE UMC SIDE.

3         **MR. JOHNSON:**  WELL, BUT THE PROBLEM WITH THAT

4   ARGUMENT IS, IS THAT IF -- WHAT THEY ARE REALLY SAYING IS, IF

5   ANY INFORMATION WAS DISSEMINATED INSIDE UMC, THAT NOW BECOMES

6   RELEVANT.

7      IT CANNOT BE RELEVANT BECAUSE THE ISSUE IS NOT JUST THE

8   DOWNLOAD, BUT THE STATE OF MIND OF THE PERSON WHO DID THE

9   DOWNLOAD.

10        **THE COURT:**  NO, THEY ARE GOING TO ESTABLISH THAT OR

11  NOT ESTABLISH THAT WITH THEIR METADATA OR WHAT WAS DOWNLOADED,

12  WHO IT WAS DOWNLOADED FOR, OR MAYBE BOTH TO USE LATER.

13     SO I'M FINDING THAT... I'M GOING TO RULE THAT THEY ARE

14  ENTITLED TO ITS REQUEST.  I WANT YOU GUYS TO WORK TOGETHER ON

15  A AND B, AND THEN NOTIFY THE COURTROOM DEPUTY AND I'LL COME

16  BACK OUT AND WE WILL SORT OUT IF THERE ARE INDIVIDUAL REQUESTS

17  WITHIN THOSE IF THERE ARE STILL OBJECTIONS TO THEM.

18     ALL RIGHT?

19        **MR. JOHNSON:**  THANK YOU, YOUR HONOR.

20        **MR. KAY:**  THANK YOU, YOUR HONOR.

21     (RECORDING STOPPED AT 10:42; RESUMED AT 11:29.)

22        **MR. QUINTANILLA:**  I THINK WE HAVE REACHED SOME

23  CLARITY AND MAY STILL NEED A LITTLE BIT OF GUIDANCE.

24        **THE COURT:**  ALL RIGHT.

25        **MR. QUINTANILLA:**  WOULD YOU LIKE US TO HANDLE IT FROM

```
 1    THE LECTERN, YOUR HONOR?

 2           THE COURT:  THAT WOULD BE FINE.  WHEREVER YOU ARE

 3    COMFORTABLE IS FINE.

 4           MR. JOHNSON:  ALL RIGHT.  WELL, WE HAVE A MECHANICAL

 5    PROBLEM.

 6           THE COURT:  OKAY.

 7           MR. JOHNSON:  MR. MOORE'S HIEROGLYPHICS ARE AS BAD AS

 8    MINE, SO I WANT TO MAKE SURE IT GETS READ CORRECTLY.  SO HE'S

 9    GOING TO HAVE TO STATE IT ON THE RECORD.

10           THE COURT:  OKAY.  SO IF YOU GUYS HAVE PAGES YOU WANT

11    TO POINT ME TO IN YOUR EXHIBITS OR IF THERE'S AN EXACT PIECE

12    OF PAPER YOU WANT ME TO LOOK AT, YOU CAN HAND IT TO ME,

13    WHICHEVER.

14           MR. QUINTANILLA:  AND WE WOULD -- WE APPRECIATE FROM

15    YOUR HONOR THE FORMAT IN WHICH YOU WOULD LIKE US TO ULTIMATELY

16    SUBMIT THIS, BUT WHAT WE THOUGHT -- WHAT WE HAVE DONE, WHILE

17    YOU ALLOWED US TO MEET AND CONFER, IS WE HAVE GONE THROUGH THE

18    REQUESTS AND ESSENTIALLY COME TO SOME AGREEMENTS ABOUT HOW THE

19    LANGUAGE WOULD BE REFORMULATED SO THAT THEY WOULD SIMPLY

20    PRODUCE THE REQUESTED DOCUMENTS.

21           THE COURT:  OKAY.

22           MR. QUINTANILLA:  AND IN SOME INSTANCES WE STILL HAVE

23    SOME LINGERING DISAGREEMENTS WHERE WE REQUIRE SOME GUIDANCE.

24           THE COURT:  LET'S JUST TALK ABOUT THE ONES YOU HAVE

25    PROBLEMS WITH.
```

1          **MR. QUINTANILLA:**  OKAY.  SO THE -- WELL, KIND OF AS A

2     FRAMING MATTER, IN REQUEST -- SO TALKING ABOUT OUR ISSUE

3     NO. 1, WHICH IS THE DOWNLOADING ACTIVITY?

4          **THE COURT:**  YES.

5          **MR. QUINTANILLA:**  SO IN RELATION TO REQUEST NOS. 1,

6     2, 3 BASICALLY I THINK IT'S 1 THROUGH --

7          **MR. MOORE:**  5 RFP 1 THROUGH 8 --

8          **MR. QUINTANILLA:**  YES, RFP --

9          **MR. MOORE:**  1 THROUGH 5.

10         **MR. QUINTANILLA:**  RFP 1 THROUGH 6, ACTUALLY -- WE'LL

11    JUST SAY 1 THROUGH 5, AS I UNDERSTAND IT, A COMMITMENT NOW HAS

12    BEEN MADE TO PRODUCE ALL DOWNLOADED MICRON DOCUMENTS RELATED

13    TO THE TRADE SECRET ALLEGATIONS IN THE COMPLAINT THAT ARE IN

14    UMC'S POSSESSION, CUSTODY, OR CONTROL, INCLUDING ANY METADATA

15    IDENTIFYING THE SOURCE OF THOSE DOCUMENTS.

16         AND MY UNDERSTANDING IS THAT WHEN WE SAY "ALLEGATIONS

17    RELATED TO THE COMPLAINT" OR "ALLEGATIONS" -- "THE TRADE

18    SECRET ALLEGATIONS IN THE COMPLAINT", THAT IS NOT LIMITED TO

19    THE SPECIFIC INDIVIDUALS THAT WERE IDENTIFIED IN THE

20    COMPLAINT, MR. WANG AND MR. HO, BECAUSE THERE MAY HAVE BEEN

21    OTHER INDIVIDUALS THAT WERE INVOLVED IN THAT ACTIVITY.

22         SO THAT'S MY UNDERSTANDING OF THE COMMITMENT FROM UMC.  IF

23    I'M WRONG OR IF I MISSTATED SOMETHING, IT WOULD BE HELPFUL TO

24    HEAR THAT.

25         **MR. MOORE:**  SO I THINK FOR UMC, THAT STATES THE

1   LANGUAGE CORRECTLY.

2       THE POINT THAT WE WANTED TO MAKE WITH RESPECT TO

3   ALLEGATIONS IN THE COMPLAINT IS THAT WE WOULD FOCUS ON THE

4   SPECIFIC THREE INDIVIDUALS IDENTIFIED IN THE COMPLAINT.  IF IN

5   THAT REASONABLE INVESTIGATION OTHER INDIVIDUALS COME TO LIGHT,

6   FAIR ENOUGH, BUT THE FOCUS OF THE INVESTIGATION IS THOSE TWO

7   INDIVIDUALS.

8               **THE COURT:**  OKAY.  YOU ARE IN AGREEMENT ON THAT THEN?

9               **MR. QUINTANILLA:**  YES, YOUR HONOR.

10              **THE COURT:**  ALL RIGHT.  SO THAT IS WITH RESPECT TO 1

11  THROUGH 6 OR 5?

12              **MR. QUINTANILLA:**  THAT'S 1 THROUGH 6.  SO -- 1

13  THROUGH 5.

14      NO. 6 --

15              **MR. MOORE:**  SORRY, JUST A THOUGHT.

16      ON 1 THROUGH 5, JUST ONE OTHER CLARIFICATION.  AS TO

17  METADATA, THERE HAD BEEN A SEPARATE MEET AND CONFER AS TO AN

18  ESI PROTOCOL WITH CERTAIN METADATA FIELDS THAT MICRON HAS

19  PROPOSED, AND SO THAT'S THE METADATA WE ARE TALKING ABOUT

20  HERE.

21              **THE COURT:**  OKAY.

22              **MR. QUINTANILLA:**  NOW, NO. 6, WHAT WAS REPRESENTED TO

23  ME DURING OUR MEET AND CONFER IS THAT NO. 6 IS ENCOMPASSED BY

24  NOS. 1 THROUGH 5.

25      NO. 6 BASICALLY ASKS FOR DOCUMENTS RELATED TO INFORMATION

1    THAT UMC PROVIDED TO TAIWANESE AUTHORITIES CONCERNING MICRON

2    DOCUMENTS IN ITS POSSESSION.

3              **THE COURT:**  RIGHT.

4              **MR. QUINTANILLA:**  SO, TO THE EXTENT THAT SOME DOSSIER

5    WAS PREPARED THAT THEY SHARED WITH TAIWANESE PROSECUTORS, MY

6    UNDERSTANDING IS WE WILL GET THAT, AND IT WILL FALL INTO -- TO

7    THE EXTENT THAT IT IS RESPONSIVE, IT WILL ALSO HAVE BEEN

8    INCLUDED WITHIN NOS. 1 THROUGH 5.

9              **MR. JOHNSON:**  YOUR HONOR, THAT IS NOT --

10             **THE COURT:**  THAT'S AS TO MICRON DOCUMENTS?

11             **MR. QUINTANILLA:**  CORRECT.

12             **MR. JOHNSON:**  YOUR HONOR, WE -- JUST FOR YOUR -- FOR

13   YOUR EDIFICATION, THE TAIWANESE GOVERNMENT SEIZED DOCUMENTS

14   AND COMPUTERS.  THEY TOOK THEM AWAY.

15             **THE COURT:**  UH-HUH.

16             **MR. JOHNSON:**  WE DON'T HAVE THEM.  I DON'T KNOW IF

17   MICRON HAS ACCESS TO THEM OR NOT, BUT WE DON'T HAVE THEM.

18        WHAT WE SAID HERE WAS, WITH THE BASIC LIMITATIONS THAT WE

19   WOULD PRODUCE THE SAME TRADE SECRET TYPE INFORMATION THAT WAS

20   ALLEGED IN THE COMPLAINT, AND THAT'S WHAT WE ARE PREPARED TO

21   DO.

22        A DOSSIER IS NOT INCLUDED.  WE HAVE DONE ALL THE INTERNAL

23   INVESTIGATION IN THIS MATTER, AND WE ARE NOT PRODUCING IT.

24             **THE COURT:**  THAT'S REASONABLE.  THAT'S REASONABLE.

25             **MR. QUINTANILLA:**  YOUR HONOR, IF I MAY COMMENT ON

1    THAT.

2        I WASN'T SUGGESTING THAT THEY ARE TURNING OVER THEIR WORK

3    PRODUCT OF AN INTERNAL INVESTIGATION.

4        ALL THAT I AM SAYING IS, AND WHAT THIS REQUEST IS DIRECTED

5    TOWARD IS IF THEY HAVE PRODUCED MATERIALS TO TAIWANESE

6    AUTHORITIES AND THEY CONTINUE TO POSSESS A COPY OF THE

7    MATERIALS THAT THEY PRODUCED TO TAIWANESE AUTHORITIES, AND IF

8    THE CONTENTS OF THOSE MATERIALS ARE RESPONSIVE TO OUR REQUESTS

9    BECAUSE THEY ARE MICRON DOCUMENTS IN UMC'S POSSESSION --

10            **THE COURT:**  AND THEY ARE RELATED TO TRADE SECRETS --

11            **MR. QUINTANILLA:**  YES.

12            **THE COURT:**  THESE ARE DOWNLOADS?

13            **MR. QUINTANILLA:**  CORRECT.

14            **THE COURT:**  IS THAT A PROBLEM?

15            **MR. JOHNSON:**  I DON'T HAVE A PROBLEM WITH TRADE

16    SECRET DOWNLOADS.  THE PROBLEM I HAVE IS THIS IS A CRIMINAL

17    INVESTIGATION.  SO --

18            **THE COURT:**  IT'S SOMETHING YOU TURNED OVER IN

19    RESPONSE TO THAT AND IT'S RELATED TO THE DOWNLOAD OF THE

20    DOCUMENTS FROM THEIR... FROM THEIR SERVERS, WOULD YOU HAVE A

21    PROBLEM WITH ANY OF THAT --

22            **MR. JOHNSON:**  NO, I DON'T --

23            **THE COURT:**  -- BEING TURNED OVER?

24            **MR. JOHNSON:**  NO, I DON'T --

25            **THE COURT:**  OKAY.

1    **MR. JOHNSON:**  WHAT I AM NERVOUS ABOUT IS I HAVE NO

2    IDEA IF THERE WERE CRIMINAL PRESENTATIONS MADE --

3         **THE COURT:**  RIGHT.

4         **MR. JOHNSON:**  AND WHICH COULD RELATE -- AND I'M NOT

5    GOING TO PRODUCE IT.  THEY'VE GOT AN ONGOING CRIMINAL

6    INVESTIGATION GOING.

7         **THE COURT:**  BUT IF IT'S RELATED TO THAT, IT'S RELATED

8    TO A DOCUMENT THAT YOU'VE TURNED OVER RELATED TO THOSE

9    DOWNLOADS, YOU'RE OKAY WITH THAT?

10        **MR. JOHNSON:**  YEAH.

11        **THE COURT:**  SO THAT WOULD BE --

12        **MR. QUINTANILLA:**  YES, YOUR HONOR.

13        **THE COURT:**  SUFFICIENT.  OKAY.

14    SO THAT GETS US TO 7 AND 8, AND WE HAVE --

15        **MR. QUINTANILLA:**  NO. 7 AND 8 IS WHERE WE HAVE A

16    LITTLE BIT OF A STICKING POINT.

17        **THE COURT:**  OKAY.

18        **MR. QUINTANILLA:**  OKAY?  AND I THINK IT MIGHT BE

19    EASIEST TO START WITH NO. 8.

20        **THE COURT:**  OKAY.

21        **MR. QUINTANILLA:**  WHICH IS EVEN NARROWER THAN NO. 7.

22    OKAY?

23    SO HERE WHAT WE HAVE ASKED FOR IS THAT IF -- AND THEY MAY

24    NOT HAVE IT.  AND IF THEY DON'T HAVE IT, THEY CAN TELL US THEY

25    DON'T HAVE IT.

1    BUT IF THEY HAVE AN IMAGE OR A COPY OF ANY DATA STORAGE

2    DEVICE, A COMPUTER OR A USB DRIVE, THAT WAS FORMERLY ASSIGNED

3    TO MR. WANG, WE WOULD LIKE THE OPPORTUNITY TO DO OUR OWN

4    FORENSIC ANALYSIS OF THAT DATA STORAGE.

5         **THE COURT:**  I ASSUME YOU DON'T WANT THAT.

6         **MR. JOHNSON:**  NO.

7         **THE COURT:**  NO, THAT'S -- THAT'S THE NARROWER ONE.

8    THAT'S TOO BROAD.

9         **MR. QUINTANILLA:**  IF I MAY --

10        **THE COURT:**  NO.  IF THEY HAVE INFORMATION RELATED TO

11   THIS THAT IS RESPONSIVE TO THE ISSUE OF WHETHER OR NOT THERE

12   WAS A DOWNLOAD, OR IF THEY HAVE INFORMATION FROM THEIR IMAGING

13   THAT HAD DOWNLOAD INFORMATION IN IT, THEN THEY SHOULD TURN

14   THAT OVER TO YOU.

15   BUT I'M NOT GOING TO ALLOW YOU TO INSPECT THEIR CORPORATE

16   COMPUTERS SIMPLY BECAUSE MR. WANG WAS IN POSSESSION OF THEM

17   FOR A PERIOD OF TIME.

18        **MR. QUINTANILLA:**  OKAY, YOUR HONOR.  IF I MAY, LET ME

19   JUST ADD A SLIGHT CLARIFICATION TO THAT.

20   CERTAINLY IF THE DATA STORAGE DEVICE, IF THROUGH THEIR OWN

21   INSPECTION OF IT, THEY CAN SAY WITH CERTAINTY THAT THERE IS

22   NOTHING IN THERE RELATED TO DOWNLOADS FROM MICRON, THEN I

23   WOULD AGREE WITH YOU, IT'S NOT NECESSARY FOR US TO INSPECT

24   THAT.

25   BUT THE DEVICE ITSELF IS THE MOST IMPORTANT KIND OF

1    EVIDENCE THAT SHOWS WHERE DOCUMENTS CAME FROM.  AND THAT'S

2    BECAUSE IT'S NOT JUST THE DOCUMENTS --

3          **THE COURT:**  SEE, YOU MAY GET THAT LATER, BUT I THINK

4    THAT YOU HAVE ENOUGH HERE TO ESTABLISH -- THIS PARTICULAR

5    MOTION IN FRONT OF JUDGE CHESNEY WITH REGARD TO JURISDICTION,

6    I DON'T THINK AT THIS POINT YOU WOULD BE PERMITTED TO DO YOUR

7    OWN FORENSIC IMAGING OF THE COMPUTER.  I DON'T THINK THAT

8    WOULD BE APPROPRIATE HERE.

9          **MR. QUINTANILLA:**  THE -- SO FOR CLARIFICATION THEN,

10   ALSO YOUR HONOR, WE HAVE IN OUR PRODUCTION TO UMC, WHICH WE

11   JUST MADE YESTERDAY AND INCLUDED, I'M TOLD, WELL OVER A

12   HUNDRED THOUSAND PAGES OF DATA, WE'VE PROVIDED TO UMC FORENSIC

13   DATA OF THE ANALYSIS OF -- THAT WE WERE ABLE TO --

14         **THE COURT:**  UH-HUH.

15         **MR. QUINTANILLA:**  -- PERFORM OF THE IMAGE THAT WE

16   HAVE OF MR. WANG'S MICRON COMPUTER.  WE DON'T ACTUALLY HAVE

17   HIS COMPUTER BECAUSE IT WAS TAKEN BY TAIWANESE AUTHORITIES AS

18   WELL.

19         **THE COURT:**  OKAY.

20         **MR. QUINTANILLA:**  BUT WE DO HAVE AN IMAGE OF IT.  AND

21   WE HAVE PROVIDED FORENSIC DATA RELATING TO THAT IMAGE SHOWING

22   DOWNLOAD ACTIVITY.

23        AND WE'VE EXPRESSED TO THE OTHER SIDE THAT UPON ENTRY OF

24   AN APPROPRIATE PROTECTIVE ORDER, IF THEY WISH TO CONDUCT THEIR

25   OWN FORENSIC ASSESSMENT OF THE IMAGE ITSELF, THEY CAN.  BUT I

1    DO THINK THE DOOR SHOULD SWING BOTH WAYS.

2         **THE COURT:**  THE PROBLEM IS, IS THAT'S... THAT'S GOING

3    TO BE SO BROAD.  I MEAN, IT'S GOING TO BE, I ASSUME, PROTECTED

4    INFORMATION ON THAT COMPUTER THAT THEY'RE NOT GOING TO WANT

5    YOU TO SEE THAT'S REALLY NOT THIS LITIGATION AND EVEN SUBJECT

6    TO A PROTECTIVE ORDER.

7       HAVE YOU DONE A FORENSIC ANALYSIS OF THAT COMPUTER?

8         **MR. JOHNSON:**  NO, YOUR HONOR --

9         **THE COURT:**  ARE YOU IN POSSESSION OF IT?

10        **MR. JOHNSON:**  NO, WE AREN'T.  AND WE WOULD NOT AGREE

11   TO THIS DOOR DOESN'T SWING BOTH WAYS.  THEY'VE GOT TO GET

12   PASSED THE JURISDICTIONAL ISSUE FIRST, AND WE CAN FIGHT THIS

13   BATTLE ANOTHER DAY.

14        **THE COURT:**  I AGREE WITH THAT.  I'M NOT GOING TO

15   ALLOW THAT.

16      LET'S GO TO NO. 7.

17        **MR. QUINTANILLA:**  I THINK 7 FALLS --

18        **THE COURT:**  WITHIN THE SAME THING.

19        **MR. QUINTANILLA:**  WITHIN THE SAME CATEGORY.

20        **THE COURT:**  ALL RIGHT.

21      SO THAT SORTS OUT ISSUE NO. 1, RIGHT?  BECAUSE THERE WERE

22   ONLY EIGHT REQUESTS FOR PRODUCTION AND YOU HAVE ALREADY BEEN

23   ABLE TO FIGURE OUT WHAT'S GOING ON WITH REGARD TO THE TOPICS 1

24   THROUGH 5 AND 30(B)(6); IS THAT RIGHT?

25        **MR. QUINTANILLA:**  CORRECT.  I THINK WHAT WE AGREE AND

1    UNDERSTAND IS THAT THE RFP'S AS REFORMULATED, BASICALLY THE

2    SAME LOGIC APPLIES OVER TO THE COURT'S FINAL --

3            **THE COURT:**  CORRECT.

4            **MR. QUINTANILLA:**  -- CATEGORIES.

5            **THE COURT:**  CORRECT.

6            **MR. QUINTANILLA:**  OKAY.

7            **THE COURT:**  THE POINT IS THAT I CAN, YOU KNOW, MAKE A

8    BROAD RULING AND MAKE YOU GUYS GO AWAY AND DO THIS, BUT I

9    THINK IT'S BETTER IF WE JUST GO AHEAD AND HASH IT OUT NOW, AND

10   JUST MAKE SURE WE ARE ALL ON THE SAME PAGE SO THAT WE'RE NOT

11   COMING BACK EVERY TIME.

12       I MAY END UP SEEING YOU GUYS MANY TIMES OVER THE COURSE OF

13   THIS LITIGATION.

14           **MR. JOHNSON:**  IT IS MORE LIKELY YOU'LL HAVE SOME

15   MIDNIGHT CALLS BECAUSE WE WILL BE IN TAIWAN IN A WEEK.

16           **THE COURT:**  THAT WILL BE FUN.  YOU GUYS GET IT SORTED

17   OUT NOW, OKAY?  ALL RIGHT.

18       SO LET'S GO TO B.  WE'VE GOT A BUNCH OF DIFFERENT STUFF.

19   ARE THERE -- ARE THERE GROUPS THAT WE CAN CERTIFY THAT WE ARE

20   SORT OF -- WE'VE BEEN ABLE TO WORK THROUGH THOSE BASED ON MY

21   PRELIMINARY RULINGS?

22           **MR. QUINTANILLA:**  I THINK THERE IS REALLY ONLY ONE

23   MAJOR ISSUE.

24           **THE COURT:**  OKAY.

25           **MR. QUINTANILLA:**  I THINK WE ARE IN AGREEMENT, BUT

1    THERE WAS SOME AMBIGUITY IN OUR DISCUSSIONS.

2              **THE COURT:**  OKAY.

3         **MR. QUINTANILLA:**  MY UNDERSTANDING IS THE COURT, YOU,

4    HAVE RULED THAT WE ARE ENTITLED TO DISCOVERY OF ALL UMC -- UMC

5    CORP., DRAM-RELATED RECRUITING ACTIVITIES IN THE U.S.

6              **THE COURT:**  UH-HUH.

7         **MR. QUINTANILLA:**  WHETHER OR NOT UMC U.S.A. HAPPENED

8    TO BE INVOLVED.

9         AND WHAT I UNDERSTOOD FROM OPPOSING COUNSEL IS THERE

10   REALLY IS A NULL SET.  THEY'VE ALREADY GIVEN US EVERYTHING

11   THAT THERE IS.

12             **THE COURT:**  RIGHT.

13        **MR. QUINTANILLA:**  AND THAT MAY BE, WE JUST WANT -- IF

14   THAT'S THE CASE, WE JUST WANT A REPRESENTATION TO THAT EFFECT

15   IN WRITING, BUT ULTIMATELY THE BOTTOM LINE IS, IF UMC WAS

16   ENGAGED IN DRAM-RELATED RECRUITING IN THE UNITED STATES, IN

17   ANY FORM OR FASHION, WITH OR WITHOUT U.S.A., WE GET IT.

18             **THE COURT:**  IF IT'S -- SO THE IDEA BEHIND THAT IS

19   THEY'RE TRYING TO FIND A JURISDICTIONAL HOOK.  THEN OBVIOUSLY

20   IF UMC THEMSELVES ARE RELATED DIRECTLY INTO IT, THAT WOULD

21   MAKE SENSE, RIGHT?

22        SO, DO YOU GUYS HAVE A PROBLEM WITH ANY OF THAT?

23             **MR. JOHNSON:**  NO, YOUR HONOR.  THERE WAS ONE EVENT,

24   CASPA.  WE PRODUCED IT OR WE ARE IN THE PROCESS OF PRODUCING

25   IT.  THERE IS NO OTHER -- I WAS WORRIED MORE -- IS NOT REALLY

1    AN ISSUE HERE.

2              **THE COURT:**  OKAY.

3        SO WE'VE GOT THE REST OF THAT SORTED OUT THEN.

4              **MR. QUINTANILLA:**  2NOW THE -- THERE WAS AN ADDITIONAL

5    ISSUE, I GUESS, THAT WE DIDN'T ACTUALLY DISCUSS.  IT WASN'T

6    REALLY THE FOCUS OF THE COURT'S DISCUSSION.

7              **THE COURT:**  OKAY.

8              **MR. QUINTANILLA:**  BUT ONE OF OUR REQUESTS INVOLVED

9    SEEKING DISCOVERY OF ANY AGREEMENT THAT MIGHT EXIST BETWEEN

10   UMC AND JINHUA THAT RELATES TO RECRUITING.

11             **THE COURT:**  I THOUGHT WE DID DISCUSS THAT, AND I

12   THOUGHT THAT YOU GUYS WERE FINE WITH THAT, BUT YOU COULDN'T GO

13   INTO THE CORPORATE STRUCTURE BETWEEN THAT, RIGHT?  DIDN'T YOU

14   AGREE TO ADDRESS THAT IN --

15             **MR. QUINTANILLA:**  I DON'T THINK THAT THEY AGREED TO

16   PRODUCE THAT.

17             **THE COURT:**  GO AHEAD.

18             **MR. MOORE:**  YOUR HONOR, I THINK THE DISTINCTION IS WE

19   HAVE GIVEN THEM THE MATERIAL ON CASPA, WHICH WAS THIS

20   RECRUITING EVENT WHERE JINHUA WAS INVOLVED AS WAS UMC U.S.A.

21   AS WAS UMC.

22             **THE COURT:**  SO YOU SAY IN YOUR BRIEF, UMC IS

23   PROVIDING DISCOVERY CONCERNING ANY RECRUITING EFFORTS THAT

24   INVOLVE UMC, JINHUA, AND UMC GROUP U.S.A.  UMC IS PROVIDING

25   DISCOVERY CONCERNING CASPA JOB FAIR.

1  SO WHAT YOU ARE SAYING IS, THE DIFFERENCE IS IF UMC U.S.A.

2  IS NOT INVOLVED, YOU STILL WANT THE JINHUA UMC RECRUITING

3  MATERIALS, CORRECT?  OR RECRUITING --

4      **MR. QUINTANILLA:**  CORRECT.  AND NOT ONLY -- DEPENDING

5  ON HOW BROADLY YOU DEFINE "RECRUITING MATERIALS", WHAT WE KNOW

6  IS THAT THERE IS A COOPERATION AGREEMENT BETWEEN JINHUA AND

7  UMC FOR THIS DRAM PROJECT.

8      **THE COURT:**  OKAY.  SO I THINK WE DID DISCUSS THAT.

9  AND WHAT THEY SAY IN THEIR BRIEF IS UMC HAS JUSTIFIABLY

10  OBJECTED TO PROVIDING DISCOVERY GENERALLY ON UMC AND JINHUA'S

11  RELATIONSHIP TO THE EXTENT IT INVOLVES ISSUES OTHER THAN

12  RECRUITING OR HAS NO TIE TO UMC GROUP'S U.S.A. INVOLVEMENT.

13  SO TO THE EXTENT IT DOES HAVE ISSUES RELATED TO RECRUITING

14  AND HAS A TIE -- OR HAS A TIE TO UMC GROUP U.S.A.'S

15  INVOLVEMENT, THEN THERE WAS NO OBJECTION; IS THAT CORRECT?

16      **MR. MOORE:**  THAT'S CORRECT.  SO WE ASK --

17      **THE COURT:**  SO THAT THEN FITS WITHIN YOUR PARAMETERS,

18  CORRECT?  NO?

19      **MR. QUINTANILLA:**  WELL --

20      **THE COURT:**  ALL RIGHT.

21      **MR. QUINTANILLA:**  THE SPECIFIC WAY THAT THEY

22  FORMULATED THEIR FORMAL OBJECTIONS?

23      **THE COURT:**  UH-HUH.

24      **MR. QUINTANILLA:**  IT WOULD NOT HAVE PRODUCED THIS

25  DOCUMENT.  SO THE DOCUMENT THAT I HAVE IN MIND --

1          **THE COURT:**  UH-HUH.

2          **MR. QUINTANILLA:**  -- IS AN AGREEMENT BETWEEN UMC AND

3     JINHUA WHICH SAYS WE ARE GOING TO WORK ON DRAM TOGETHER, UMC.

4     YOU'RE GOING TO DEVELOP THE TECHNOLOGY FOR US AND YOU'RE GOING

5     TO HANDLE RECRUITING FOR US.

6        IF THAT AGREEMENT RELATES TO THE ROLE OF RECRUITING IN

7     THEIR JOINT PROJECT, WHICH WE ALLEGE TO BE A CO-CONSPIRACY FOR

8     MISAPPROPRIATION, WE SHOULD GET THAT AGREEMENT.

9          **THE COURT:**  AND YOU DON'T WANT TO GIVE THAT?

10          **MR. MOORE:**  NO.  IT'S AN AGREEMENT SOLELY IN TAIWAN

11     AND CHINA, HAS NO TIES TO THE U.S. RECRUITING.

12          **THE COURT:**  DOES IT TALK -- IT DOESN'T TALK ANYTHING

13     ABOUT U.S. RECRUITING?

14          **MR. JOHNSON:**  IT TALKS ABOUT THE BUSINESS

15     RELATIONSHIP AS IT RELATES TO THE DEVELOPMENT OF THE

16     TECHNOLOGY WHICH IS GOING TO BE -- RESULT IN IT BEING BUILT IN

17     CHINA.

18        WE CAN HAVE A SIDEBAR WHERE I CAN EXPLAIN WHY WHAT APPEARS

19     TO BE INNOCUOUS IS ANYTHING BUT BECAUSE MICRON HAS ALL THE

20     CLAIMS --

21          **THE COURT:**  WE DON'T NEED TO GET INTO THAT.

22        BUT THE POINT IS IS THAT WHEN I EMPHASIZED EARLIER WAS

23     THAT JUDGE WHITE'S ORDER RELATED TO THOSE RECRUITMENT

24     ACTIVITIES THAT RELATE TO THE ALLEGATIONS IN THE LAWSUIT.  SO

25     IT HAS TO HAVE A RECRUITMENT ACTIVITY HOOK INTO IT.

1          AND IF YOU DON'T HAVE THAT HOOK, THEN HOW ARE YOU GOING TO

2     SEEK THAT?  AND IT HAS TO HAVE A UMC GROUP U.S.A. HOOK TO IT.

3          **MR. QUINTANILLA:**  WELL, WE DON'T HAVE THE AGREEMENT

4     SO WE DON'T KNOW IF THE AGREEMENT HAS ANY PROVISIONS THAT

5     RELATE TO RECRUITING ACTIVITIES.

6          **THE COURT:**  SO, BUT YOU GUYS ARE RESPONDING TO THEIR

7     REQUESTS WITH IT IN MIND THAT TO THE EXTENT UMC'S AMERICAN

8     SUBSIDIARY UMC GROUP U.S.A. AIDED UMC RECRUITMENT ACTIVITIES,

9     IN LIGHT OF THESE RECRUITMENT ACTIVITIES RELATE TO THE

10    ALLEGATIONS IN THE LAWSUIT, AND IF THEY ARE ASKING FOR

11    SOMETHING AND THEY COME BACK AND SAY WE HAVE GIVEN YOU

12    EVERYTHING BUT YOU ARE NOT ENTITLED TO THIS BECAUSE IT DOESN'T

13    FIT WITHIN THE PARAMETERS OF EITHER UMC RECRUITMENT ACTIVITIES

14    IN THE UNITED STATES OR IT DOESN'T HAVE A UMC GROUP U.S.A.

15    HOOK, WHICH IS WHAT THEY SAY IN THEIR BRIEF, THEN I DON'T SEE

16    HOW YOU GET THAT.

17         I MEAN, THEY SPELL IT OUT IN THE BRIEF AND SAY LIKE IT

18    DOESN'T -- IT EITHER HAS TO HAVE ONE OR BOTH OF THOSE THINGS.

19    IT DOESN'T HAVE IT IN THERE, THEN IT IS LIMITED TO THAT.

20         **MR. MOORE:**  THAT'S THE POINT.  WE THINK THAT IT HAS

21    TO HAVE ONE OR THE OTHER OF THOSE THINGS --

22         **THE COURT:**  WHICH ONE DOES IT HAVE IN HERE?

23         **MR. MOORE:**  WELL, I DON'T KNOW IF IT HAS IT OR NOT --

24         **THE COURT:**  I SEE WHAT YOU'RE SAYING.

25         **MR. MOORE:**  I HAVEN'T SEEN THE AGREEMENT, RIGHT?

1      **THE COURT:**  THIS IS WHAT I WAS CLARIFYING EARLIER

2   WITH YOU, AND THIS IS THE PART THAT I WENT AGAINST YOUR SIDE

3   ON, WHICH WAS THAT IT HAD TO HAVE THE UMC GROUP U.S.A. HOOK.

4      AND THAT'S CLEAR FROM THE ORDER, FROM JUDGE WHITE'S ORDER,

5   WHICH IS IT IS SPECIFICALLY TO THE AMERICAN SUBSIDIARY UMC

6   U.S.A.

7      NOW, IF OBVIOUSLY THERE IS A DIRECT RELATIONSHIP BETWEEN

8   UMC, AS WE TALKED ABOUT EARLIER, TO THE UNITED STATES, THEN

9   THAT WOULD FALL WITHIN THE PARAMETERS.  BUT AS TO THIS PART 2

10  OF THAT, IT HAS TO HAVE A UMC GROUP U.S.A. HOOK.

11     SO TO THE EXTENT IT DOESN'T, THEN THAT REQUEST WOULD HAVE

12  TO BE DENIED.

13     **MR. JOHNSON:**  THANK YOU, YOUR HONOR.

14     **THE COURT:**  OKAY.  ANYTHING ELSE ON THAT SECOND

15  GROUP?

16     ARE WE -- THAT SHOULD BE IT THEN, RIGHT?

17     **MR. JOHNSON:**  YOUR HONOR, PROCEDURALLY HOW WILL THIS

18  HAPPEN?  WILL YOU PREPARE AN ORDER?  DO YOU WANT US --

19     **THE COURT:**  YES, I WANT THE PARTIES TO PREPARE AN

20  ORDER.  I MEAN, WE CAN DO THIS ONE OF TWO WAYS.

21     YOU CAN RELY ON MY ORAL RULING AND THEN YOU GUYS CAN GET A

22  TRANSCRIPT AND MAKE SURE EVERYBODY IS LOCKED IN, OR I THINK IT

23  WOULD JUST BE BETTER FOR YOU GUYS TO JOINTLY PREPARE A

24  PROPOSED ORDER, SUBMIT TO ME, THAT WAY WE DON'T HAVE

25  OBJECTIONS THAT THEN GO TO ANOTHER JUDGE.  JUST GET IT DONE

1   NOW.

2   **MR. JOHNSON:**  YOUR HONOR, THE ONLY THING, BECAUSE WE

3   ARE IN THE START OF DISCOVERY --

4   **THE COURT:**  THE ORDER --

5   (SIMULTANEOUS COLLOQUY.)

6   **MR. JOHNSON:**  WE GET THE ORDER TO YOU RIGHT AWAY AND

7   HOPEFULLY WE GET IT SIGNED.  THE LAST THING WE WANT TO DO IS

8   BE IN TAIWAN --

9   **THE COURT:**  SO, I MEAN, THIS IS AN ORAL RULING ON

10  THESE PROVISIONS.  YOU GUYS START TODAY ON THEM.

11     AND THEN THE FINE DETAILS WE DISCUSSED TODAY, IT WILL GO

12  INTO EFFECT AS SOON AS I SIGN IT.  YOU GUYS CAN GET WORKING ON

13  THAT RIGHT AWAY, RIGHT?

14  **MR. JOHNSON:**  UNDERSTAND.

15  **THE COURT:**  ANY OTHER MATTERS?

16  **MR. KAY:**  THAT WILL DO IT.

17  **THE COURT:**  YOU GUYS HAVE A GOOD TIME IN TAIWAN.

18  DON'T CALL ME, SORT IT ALL OUT.

19  **MR. JOHNSON:**  OH, YEAH.  NOTHING LIKE 90 IN 90.

20  **MR. KAY:**  A COUPLE OF HOUSEKEEPING ITEMS.

21  **THE COURT:**  YEAH.

22  **MR. KAY:**  ONE IS WE WILL ENDEAVOR TO JOINTLY SUBMIT

23  THE, WHAT WE WILL CALL A PROPOSED ORDER, BY CLOSE OF BUSINESS

24  TOMORROW.

25  **THE COURT:**  OKAY.

1          **MR. KAY:**  UNDERSTANDING THAT'S FRIDAY, THE END OF THE

2     WEEK.  AND --

3          **THE COURT:**  THIS IS JOINT AND YOU GUYS ARE -- I MEAN,

4     WE SHOULD HAVE A FULL AGREEMENT.  IT SHOULD BE EASY, RIGHT?

5          **MR. KAY:**  YES.

6          **THE COURT:**  OKAY.

7          **MR. KAY:**  AND THEN THE QUESTION IS, IF NEEDED,

8     HOPEFULLY IT WOULD NEVER BE, IF NEEDED, FOR A DISCUSSION,

9     COULD WE HAVE A CONFERENCE CALL SOMETIME NEXT WEEK?

10          **THE COURT:**  OF COURSE.

11          **MR. KAY:**  GREAT.  AND THEN THE OTHER QUESTION, IF

12     MR. QUINTANILLA CAN ADDRESS THE STATUS OF THE PROTECTIVE ORDER

13     AND THE ESI ORDER, BECAUSE THAT WILL BE COMING SOON FOR

14     SIGNATURE.

15          **THE COURT:**  YOU GUYS HAVE A PROPOSED ESI READY TO GO?

16          **MR. QUINTANILLA:**  I THINK SO.  THERE IS JUST A COUPLE

17     OF MINOR --

18          **THE COURT:**  ARE YOU FOLLOWING --

19          **MR. JOHNSON:**  THERE IS ONE POINT THAT IS NOT MINOR.

20          **THE COURT:**  OKAY.

21          **MR. JOHNSON:**  WE HAVE -- HE'S NOT CO-COUNSEL IN THIS

22     CASE.

23          **THE COURT:**  OKAY.

24          **MR. JOHNSON:**  BUT HE IS COUNSEL FOR UMC IN TAIWAN.

25          **THE COURT:**  OKAY.

1          **MR. JOHNSON:**  AND HE IS INVOLVED WITH REVIEWING THE

2     MATERIALS THAT ARE AT ISSUE HERE, AND WE WANT HIM ON THE

3     PROTECTIVE ORDER FOR A COUPLE OF REASONS, NOT THE LEAST OF

4     WHICH IS HE'S GOT MUCH BETTER ACCESS THAN WE DO TO THE

5     DOWNLOADED MATERIAL.

6          **THE COURT:**  UH-HUH.

7          **MR. JOHNSON:**  AND WE WANT TO MAKE SURE HE IS COVERED

8     BECAUSE OTHERWISE IT MAKES OUR JOB A LOT MORE DIFFICULT.  AND

9     SINCE HE'S ALREADY LOOKING AT THE DOCUMENTS ANYWAY, IT SHOULD

10    BE A NO-BRAINER, YET WE'VE GOT SOME PUSH BACK FROM THE OTHER

11    SIDE.

12         **MR. QUINTANILLA:**  YES, AND I CAN ADDRESS THAT.

13       YOUR HONOR, THIS IS A PERSON IN TAIWAN WHO IS NOT A U.S.

14    ATTORNEY AND NOT LICENSED TO PRACTICE LAW IN ANY OF THE U.S.

15    STATES, AND HE'S ALSO ON MICRON'S INITIAL DISCLOSURE LIST AS A

16    WITNESS.  AND THE REASON HE IS ON THE INITIAL DISCLOSURE LIST

17    IS WE BELIEVE THE EVIDENCE LINKS HIM TO THE WRONGDOING IN

18    TAIWAN AND THE MISAPPROPRIATION.

19       SO IT WOULD BE COMPLETELY IMPROPER FOR HIM TO THEN GET

20    ACCESS TO ATTORNEY'S-EYES-ONLY INFORMATION IN DISCOVERY UNDER

21    THE PROTECTIVE ORDER HERE.  AND IN BALANCING THE COMPETING

22    ISSUES, IT'S NOT NECESSARY THAT THAT PERSON SERVE IN THAT

23    CAPACITY UNDER ATTORNEY'S-EYES-ONLY ACCESS AND CONFIDENTIAL

24    INFORMATION ACCESS.

25         **THE COURT:**  WHEN DO YOU GUYS ANTICIPATE THIS ESI

1    PROPOSED ORDER TO BE FINISHED AND THE PROTECTIVE ORDER?

2           **MR. QUINTANILLA:**  I WAS HOPING THAT IT WOULD BE THIS

3    WEEK.  I THINK THE ESI ORDER IS NOT A SUBJECT OF GREAT

4    CONTROVERSY.

5           **THE COURT:**  OKAY.

6           **MR. QUINTANILLA:**  THE PROTECTIVE ORDER AND, AGAIN, WE

7    REALLY WANT TO FOCUS HERE.  THIS IS ABOUT ALLOWING SOMEONE WHO

8    IS PERHAPS IMPLICATED IN THE WRONGDOING --

9           **THE COURT:**  I UNDERSTAND.

10          **MR. QUINTANILLA:**  -- AND HE HAS ACCESS TO MICRON'S --

11          **THE COURT:**  WITH REGARD TO THE PROTECTIVE ORDER, IS

12   THIS A STANDARD PROTECTIVE ORDER THAT YOU GUYS -- OR ARE YOU

13   GUYS CRAFTING THIS?

14          **MR. QUINTANILLA:**  IT IS BASED ON THE NORTHERN

15   DISTRICT STANDARD --

16          **THE COURT:**  STANDARD.

17          **MR. QUINTANILLA:**  -- WHICH DOES NOT HAVE A PROVISION

18   FOR LOCAL COUNSEL ACCESS WHO ARE NOT U.S. ATTORNEYS AND NOT

19   BOUND U.S. ETHICAL RULES.

20          **THE COURT:**  SO WHEN DO YOU GUYS NEED THIS?  WHEN DO

21   YOU GUYS NEED THE ESI AND THE PROTECTIVE ORDER IN PLACE?

22          **MR. QUINTANILLA:**  WELL, WE ARE CURRENTLY OPERATING

23   UNDER KIND OF AN INTERNAL ARRANGEMENT --

24          **THE COURT:**  SO YOU WANT IT SOON.

25          **MR. QUINTANILLA:**  WE ARE.  WE HAVE BEEN PRODUCING

```
 1   DOCUMENTS --
 2            THE COURT:  RIGHT.
 3            MR. QUINTANILLA:  -- SUBJECT TO AN AGREEMENT THAT WE
 4   WILL FOLLOW THE DEFAULT ORDER UNTIL SOMETHING FINAL IS
 5   COMPROMISED.
 6            THE COURT:  OKAY.  THEN I NEED YOU GUYS TO SUBMIT
 7   THIS AS A JOINT BRIEF TO ME.  THAT'S THE ONLY WAY I'M GOING TO
 8   BE ABLE TO DEAL WITH THAT.  SO, GET THAT TO ME.  IT DOESN'T
 9   HAVE TO BE LONG, BUT GET SOME PAPER IN FRONT OF ME.
10       AND SO, ESSENTIALLY, YOU'RE OBJECTING TO HIM BEING ADDED,
11   AND YOU GUYS WANT TO MAKE SURE THAT HE CAN BE ADDED.  SO IF
12   YOU CAN FIND SOME LAW ON ANY OF THIS STUFF, LET ME KNOW THAT
13   TOO.  AND I CAN RULE ON THE PAPERS OR I CAN GET YOU -- YOU
14   GUYS ARE GONE ALL NEXT WEEK, RIGHT?
15            MR. JOHNSON:  WE WILL BE HERE NEXT WEEK.
16            THE COURT:  YOU WILL BE HERE NEXT WEEK?
17            MR. JOHNSON:  YES.
18            THE COURT:  SO I WILL GET YOU ON THE PHONE NEXT WEEK
19   AND SORT THAT OUT.
20            MR. JOHNSON:  OKAY.
21            THE COURT:  ALL RIGHT.  LET'S DO THAT.
22            MR. QUINTANILLA:  OKAY.  THANK YOU, YOUR HONOR.
23            MR. KAY:  VERY GOOD.
24            MR. JOHNSON:  I HAVE TO SAY, I FOUND IT RATHER IRONIC
25   THAT YOU GUYS ARE PROBABLY THE SECOND, THIRD LARGEST LAW FIRM
```

1    IN TAIWAN AND YOU'VE GOT 25, 50 PEOPLE.  BECAUSE HE'S NOT --

2    HE'S NOT -- NOW HE'S NOT A U.S. LAWYER, WE DON'T WANT HIM TO

3    SEE IT, WHILE THEY WANT TO DRAG MY CLIENT 10,000 MILES INTO A

4    U.S. COURT SAYING THAT THIS COURT SHOULD SOMEHOW HAVE A

5    GREATER INTEREST IN THIS THAN THE TAIWANESE COURT.  BUT WE

6    WILL DEAL WITH THAT.

7              **THE COURT:**  ALL RIGHT.  YEAH.  WE'RE GOING TO BE

8    SEEING EACH OTHER A LOT.  I CAN FEEL IT.

9        HAVE A GOOD WEEKEND.

10             **MR. KAY:**  THANK YOU, YOUR HONOR.

11             **MR. QUINTANILLA:**  THANK YOU.

12             **MR. JOHNSON:**  THANK YOU.

13             **THE CLERK:**  COURT IS ADJOURNED.

14                  (RECORDING STOPPED AT 11:54 A.M.)

15

16

17

18

19

20

21

22

23

24

25

1

2                    **CERTIFICATE OF TRANSCRIBER**

3

4        I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

5   TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

6   THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

7   U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

8   PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN

9   THE ABOVE MATTER.

10       I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED

11  TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH

12  THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

13  FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

14  ACTION.

15

16                    _Diane E. Skillman_

17             DIANE E. SKILLMAN, TRANSCRIBER

18              SATURDAY, JUNE 23, 2018

19

20

21

22

23

24

25