Daniel Johnson Jr. (Bar No. 57409)
Mario Moore (Bar No. 231644)
DAN JOHNSON LAW GROUP, LLP
400 Oyster Point Blvd., Suite 321
South San Francisco, CA 94080
Telephone: (415) 604-4500
dan@danjohnsonlawgroup.com
mario@danjohnsonlawgroup.com

Lyle B. Vander Schaaf (DC Bar No. 422380)
Evi T. Christou (DC Bar No. 1600066)
Fei Hu (DC Bar No. 1016150)
BRINKS GILSON & LIONE
1775 Pennsylvania Ave, NW, Suite 900
Washington, DC 20006
Telephone: (202) 296-8700
lvanderschaaf@brinksgilson.com
echristou@brinksgilson.com
fhu@brinksgilson.com
Appearance *pro hac vice*

Harold V. Johnson (IL Bar No. 6188149)
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Drive, Suite 3600
Chicago, IL 60611
Telephone: (312) 321-4200
hjohnson@brinksgilson.com
Appearance *pro hac vice*

*Attorneys for Specially Appearing Defendant*
Fujian Jinhua Integrated Circuit Co., Ltd.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

MICRON TECHNOLOGY, INC.,

        Plaintiff,

    v.

UNITED MICROELECTRONICS
CORPORATION, FUJIAN JINHUA
INTEGRATED CIRCUIT CO., LTD.,
and DOES 1-10,

        Defendants.

Case No. 3:17-cv-6932-MMC

**DEFENDANT FUJIAN JINHUA
INTEGRATED CIRCUIT CO., LTD.'S
NOTICE OF MOTION AND MOTION
TO DISMISS FOR INSUFFICIENT
SERVICE OF PROCESS AND FOR
LACK OF PERSONAL JURISDICTION**

Judge: Honorable Maxine M. Chesney
Courtroom: 7, 19th Floor
(Proposed) Hearing Date:  November 9, 2018
(Proposed) Hearing Time: 9:00 AM

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on November 9, 2018, at 9:00 am, or as soon thereafter as the matter may be heard before the Honorable Maxine M. Chesney, United States District Court Judge, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 7, 19th Floor, Defendant Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua") will and hereby does move to dismiss the Complaint filed on December 5, 2017 by Plaintiff Micron Technology, Inc. ("Micron"), pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(2) and 12(b)(5) for lack of personal jurisdiction and insufficient service of process.  For the reasons set forth below, Jinhua respectfully requests this court to dismiss the Complaint for lack of personal jurisdiction with prejudice and for insufficient service of process without prejudice.

This motion is based on this notice of motion, and the following memorandum of points and authorities, the exhibits filed herewith, including the declarations of Jinfu Zheng and Yongdong Xu, all pleadings and papers filed herein, and any argument of counsel or other matter as the Court may allow.

DATED:  October 2, 2018                DAN JOHNSON LAW GROUP, LLP


                                       By:   /s/ Daniel Johnson Jr.
                                           Daniel Johnson, Jr.

                                           *Attorneys for Defendant*
                                           FUJIAN JINHUA INTEGRATED CIRCUIT
                                           CO., LTD.

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES……………………………………1

I.      SUMMARY OF ARGUMENT…………………………………………....………1

     A.  SERVICE OF PROCESS…………………………………………………....1

     B.  PERSONAL JURISDICTION……………………………………………1

II.     RELEVANT FACTS……………………………………………………………3

     A.  SERVICE OF PROCESS…………………………………………………....3

     B.  PERSONAL JURISDICTION……………………………………………3

III.    LEGAL STANDARDS………………………………………………………....5

     A.   SERVICE OF PROCESS…………………………………………………5

     B.  PERSONAL JURISDICTION……………………………………………6

IV.     ARGUMENT…………………………………………………………………7

     A.  INSUFFICIENT SERVICE OF PROCESS (FRCP 12(b)(5)) ……………….………...…7

         1.  Service Should Be Governed By FRCP 4(f)(1) Because China Is
            A Signatory To The Hague Convention……………………………………..8

         2.  If Micron Seeks To Use Alternative Methods Of Service, Micron
            Should Have At Least Obtained A Court Order…………………………….9

         3.  Micron's Attempted Service Is Prohibited By Chinese
            Law…………………………………………………………………………10

     B.  LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2))……………………….…...12

         1.  Jinhua Has No Contacts With California
           To Support General Jurisdiction…………………………………………12

         2.  Jinhua Has No Contacts With California
           To Support Specific Jurisdiction…………………………………………13

         3. Exercising Jurisdiction Over Jinhua In California
           Is Unreasonable……………………………………………………...15

V.      CONCLUSION………………………………………………………………17

-ii-

JINHUA'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION
Case No. 3:17-cv-6932-MMC

# TABLE OF AUTHORITIES

**Cases**

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,

    223 F.3d 1082 (9th Cir. 2000)……………………………………….…..…..7

*Bogart LLC v. Corinthian, Inc.*,

    2012 U.S. Dist. LEXIS 199509 (C.D. Cal. May 3, 2012)…………………..……...………16

*Brand v. Menlove Dodge*,

    796 F.2d 1070 (9th Cir. 1986)……………………………….………..……....…7

*Brayton Purcell LLP v. Recordon & Recordon*,

    575 F.3d 981 (9th Cir. 2009)…………………………………………...………..7

*Brockmeyer v. May*,

    383 F.3d 798 (9th Cir. 2004)………………………………………….………..5

*Codigo Music, LLC v. Televisa, S.A. de C.V.*,

    2017 U.S. Dist. LEXIS 160747 (S.D. Fla. Sept. 29, 2017)……………………...…9, 11

*Cucuz v. Rosta Int'l Ltd.*,

    2017 U.S. Dist. LEXIS 76367 (E.D. Mich. May 19, 2017)………………….……....11

*Daimler AG v. Bauman*,

    571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)……………….……………...6, 15

*De Leon v. KBR, Inc.*,

    2012 U.S. Dist. LEXIS 64738 (D. Haw., May 8, 2012)……………………….……………14

*Emery v. Wood Indus.*,

    2001 U.S. Dist. LEXIS, 12914 (D.N.H. Aug. 20, 2001)…………………………………12

*Emine Tech. Co. v. Aten Int'l Co.*,

    2008 U.S. Dist. LEXIS 95136 (N.D. Cal. Nov. 21, 2008)……………………….......5

*Flynt Distributing Co. v. Harvey*,

    734 F.2d 1389 (9th Cir. 1984)………………………………….…………...…………...…7

*Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co.*,

    2018 U.S. Dist. LEXIS 62367 (S.D. Cal. April 11, 2018)……………………….……10

-iii-

JINHUA'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION
Case No. 3:17-cv-6932-MMC

*Fujitsu Ltd. v. Nanya Tech, Corp.*,
 2007 U.S. Dist. LEXIS 13132 (N.D. Cal. Feb. 9, 2007)……………………………….....11

*Gates Lear Jet Corp. v. Jensen*,
 743 F.2d 1325 (9th Cir. 1984)……………………..…………………….…..…...7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011)……………………………………………….…………...12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
 466 U.S. 408, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)……………………….…….…….7

*Hirsch v. Blue Cross, Blue Shield of Kansas City*,
 800 F.2d 1474 (9th Cir. 1986)………………………………………...….…………...7

*Int'l Designs Corp., LLC v. Qingdao Seaforest Hair Prods. Co., Ltd.*,
 2018 U.S. Dist. LEXIS 3038 (S.D. Fla. Jan. 4, 2018)……………….......…………….9

*Intercontinental Indus. Corp. v. Qingquan Luo*,
 2011 U.S. Dist. LEXIS 9081 (C.D. Cal. Jan. 20, 2011)……………………….……...10

*Marcantonio v. Primorsk Shipping Corp.*,
 206 F. Supp. 2d 54 (D. Mass. 2002)………………………………….……....11

*Murtech Energy Servs., LLC v. ComEnCo Sys.*,
 2014 U.S. Dist. LEXIS 85502 (E.D. Mich. June 24, 2014)…………….………….11

*Pebble Beach Co. v. Caddy*,
 453 F.3d 1151 (9th Cir. 2006)………………………….………………...…….6

*Power Integrations, Inc. v. Sys. Gen. Corp.*,
 2004 U.S. Dist. LEXIS 25414 (N.D. Cal. Dec. 7, 2004)…………………………...12

*Rio Props. v. Rio Int'l Interlink*,
 284 F.3d 1007 (9th Cir. 2002)……………………….………………...6, 9, 13

*Roth v. Garcia Marquez*,
 942 F.2d 617 (9th Cir. 2011)……………….………........................16

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004)………………………….……………..…….7

*South Carolina v. Hitachi Displays, Ltd*.,

   2013 U.S. Dist. LEXIS 117518 (D.S.C. Aug. 20, 2013)………….……………….……..9

*Trueposition, Inc. v. Sunon, Inc.,*

   2006 U.S. Dist. LEIS 39681 (E.D. Pa. June 14, 2006)………………………………...11

*Volkswagenwerk Aktiengesellschaft v. Schlunk,*

   486 U.S. 694 (1988)………………….……………….…………..……………5, 8

*Water Splash Inc. v. Menon*,

   137 S. Ct. 1504 (2017)………………….……………….………….…..……6, 9

*Willamette Green Innovation Ctr., LLC v. Quartis Capital Partners,*

   2014 U.S. Dist. LEXIS 148665 (N.D. Cal. Jan. 21, 2014)………………….…………6, 8

*Ziegler v. Indian River County,*

   64 F. 3d 470 (9th Cir. 1995)………………….…………….….…..……………7

**Treaties**

Hague Convention Treaty, art. 10(a), 15 Nov. 1965……………………………….…….….*passim*

**Rules**

Fed. R. Civ. P. 4………………………………………………….…….…………1, 6, 12

Fed. R. Civ. P. 4(f)…………………………………………...…….………………5, 6

Fed. R. Civ. P. 4(f)(1)……………………………………………….………...5, 6, 8

Fed. R. Civ. P. 4(f)(2)……………………………………………….…...5, 6, 10, 11

Fed. R. Civ. P. 4(f)(2)(C)(ii)……………………………………….…..3, 8, 11

Fed. R. Civ. P. 4(f)(3)……………………………………………….…...*passim*

Fed. R. Civ. P. 4(h)………………………………………………...……5

Fed. R. Civ. P. 12(b)(2)……………………………………….…..1, 6, 17

Fed. R. Civ. P. 12(b)(5)…………………………………………….…....1, 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      SUMMARY OF ARGUMENT

### A.  SERVICE OF PROCESS

Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua") is a state-owned enterprise in the People's Republic of China, which has been a signatory to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("Hague Convention") for over 25 years.  Rather than utilizing the Hague Convention to serve Jinhua, Micron attempted to circumvent China's Convention procedures by sending Federal Express ("FedEx") packages to Jinhua's President, Stephen Chen ("Chen") at his Taiwan residence and at United Microelectronics Corporation's ("UMC") business address in Taiwan, without requesting permission to serve via alternative means.  Micron's unilateral attempt at service must fail because, as a Chinese state-owned enterprise, Jinhua has the right to receive proper service under China's Convention procedures, and China has expressly objected to service by postal channels under Article 10(a) of the Hague Convention.

Moreover, both Chinese and Taiwanese laws prohibit service unless performed by a domestic court official.  As such, Micron's attempt complies with neither the Hague Convention nor any foreign country law relevant to this case.  Because Micron failed to serve Jinhua under any applicable paragraph of FRCP 4, Micron's Complaint should be dismissed without prejudice for insufficient service of process.

### B.  PERSONAL JURISDICTION

Micron's Complaint should be dismissed with prejudice pursuant to FRCP 12(b)(2) because neither general nor specific personal jurisdiction applies over Jinhua.  First, Jinhua does not have any general contacts with California, much less anywhere else in the United States.  As set forth in more detail below, Jinhua is a state-owned enterprise controlled by Fujian Province and located in Mainland China.   Jinhua has not purposely done any business in the state of California, has not actively or constructively been licensed to do business in California, does not have a registered agent authorized to accept service on its behalf in California and does not make, sell, import, market or promote any

product in California. Moreover, Jinhua does not own, rent, lease or possess any real or personal property in California, does not maintain any bank accounts in California, does not pay taxes in California, does not maintain employees, officers, directors, or representatives in California, does not maintain manufacturing or sales facilities in California, and does not have any shareholders or members residing in California. Lastly, Jinhua does not maintain a physical address, mailing addresses, telephone numbers or fax numbers in California, does not travel to California by way of salespersons, and does not visit potential customers in California.

Jinhua also does not have any specific contacts with California related to this case. Micron's only claim that this Court has specific personal jurisdiction over Jinhua is Jinhua's attendance at the Chinese American Semiconductor Professional Association ("CASPA") job fair in California in 2016. This one event is insufficient to establish specific personal jurisdiction because the CASPA job fair was a one-time event, with only two representatives from Jinhua in attendance. Jinhua only attended the CASPA job fair to attract Chinese students with prior experience in DRAM technology. Moreover, Micron's claims do not "arise out of or relate to" Jinhua's attendance at the job fair because Jinhua's participation in the CASPA event has no relation whatsoever to the trade secret misappropriation and RICO claims in the Complaint. Ultimately, Micron did not suffer any injury arising out of Jinhua's attendance at the CASPA job fair because Micron employees were not the target of Jinhua's job efforts there, no Micron employees applied for jobs at Jinhua at the event and no Micron employees were hired as a result of the event. Moreover, Chen was a UMC employee acting on behalf of UMC, rather than Jinhua, and did not speak to any Micron employees at the job fair, and received no inquiries from Micron employees in response to the job fair.

Lastly, specific jurisdiction over Jinhua in this case would be unreasonable, and therefore, unconstitutional, because Jinhua did not purposefully interject itself into California or into the U.S. market. Additionally, it would be significantly burdensome for Jinhua to defend this action because California is more than six-thousand (6,000) miles away from China and this Court's exercise of jurisdiction in California would conflict with the sovereignty of China. Moreover, California has no interest in the dispute because Micron is a Delaware corporation based in Idaho and Jinhua is non-US corporation based in China. Micron obviously has more appropriate forums available to it which

would have a greater interest is resolving the dispute, such as Taiwan or China.  Given this, there is simply no benefit to have the matter adjudicated in California where little to no aspect of the controversy took place.  California will also not provide the litigants with better access to proof and will not result in a more efficient resolution of the case because most, if not all of the Jinhua witnesses and the evidence are located in China.  China, or even Taiwan, is a more convenient forum for Micron to bring its claims against Jinhua.

## II.   RELEVANT FACTS

### A.  SERVICE OF PROCESS

Jinhua is a limited liability corporation in China, which is a signatory to the Hague Convention.  Declaration of Jinfu Zheng filed herewith ("Zheng Decl."), ¶3; Declaration of Yongdong Xu filed herewith ("Xu Decl."), ¶5.  Jinhua is controlled by Fujian Province, and its principal place of business is located at No.88, Lianhua Avenue, Integrated Circuit Science Park, Jinjiang City, Quanzhou City, Fujian Province, China. Zheng Decl., ¶¶3-5.  On January 10, 2018, Micron initiated service on Jinhua pursuant to China's Convention procedures under the Hague Convention.  Dkt. 13; Zheng Decl., ¶6.  To date, Micron has not demonstrated that its attempt to serve Jinhua under the Hague Convention is futile.

On September 3, 2018, Chen, the President of Jinhua and a Vice President of UMC, received two packages via FedEx in Taiwan, one at his personal address and the other at UMC's business address.  Zheng Decl., ¶¶ 23-24; Dkt. 96; Dkt. 97.  These packages contained only English language documents and were sent by the Clerk of the Court purportedly pursuant to FRCP 4(f)(2)(C)(ii).  Zheng Decl., ¶25.  Micron now asserts that Jinhua was properly served even though Micron did not effect service via the Hague Convention, did not ask for permission to use alternative service under FRCP 4(f)(3), and did not comply with foreign laws.

### B.  PERSONAL JURISDICTION

Micron filed its Complaint on December 5, 2017 alleging trade secret misappropriation and RICO claims against Jinhua.  Micron is a Delaware corporation headquartered in Boise, Idaho.  Complaint ¶5.  Jinhua is a state-owned limited liability corporation founded in Mainland China in early 2016 and ultimately controlled by Fujian Province.  Zheng Decl., ¶¶3, 4.   Jinhua's principal

place of business located at No. 88, Lianhua Avenue, Integrated Circuit Science Park, Jinjiang City, Quanzhou City, Fujian Province, China, 362200. *Id.*, ¶5. Jinhua does not have any general contacts with California. Jinhua has not purposely done any business in California, or anywhere in the United States, has not actively or constructively been licensed to do business in California, or anywhere in the United States, and does not have a registered agent authorized to accept service on its behalf in California, or anywhere in the United States. *Id.*, ¶¶7-9. Jinhua does not make, sell, import, market, or promote any product in California, or anywhere in the United States, does not own, rent, lease, possess or control any assets, real or personal, in California, or anywhere in the United States – all real and personal property owned, rented, leased, possessed or controlled by Jinhua is located in Mainland China. *Id.*, ¶¶10-12.

Additionally, Jinhua does not maintain bank accounts in California, or anywhere in the United States, has no employees, officers, directors or representatives in California, or anywhere in the United States, has no manufacturing or sales facilities in California, or anywhere in the United States, and does not have any shareholders or members residing in California. *Id.*, ¶¶13-16. Additionally, Jinhua has no physical address, phone or fax listings in California, or anywhere in the United States, does not travel to California, or anywhere in the United States, by way of salespersons, does not pay taxes in California, or anywhere in the United States, and does not visit potential customers in California, or anywhere in the United States. *Id.*, ¶¶17-20.

Apart from the lack of general contacts with California, Jinhua also does not have any connections specific to Micron's claims. Micron's only claim that this Court has specific personal jurisdiction over Jinhua is based on one isolated event: Jinhua's attendance at a job fair hosted by CASPA in October 2016 in Santa Clara, California and posting of a job opening on the CASPA website. Complaint, ¶¶17, 35. That job fair was focused on attracting Chinese students with prior experience in DRAM technology. Zheng Decl., ¶27. Micron employees were not the target of Jinhua's job efforts. *Id.* Only two Jinhua employees participated in the job fair. *Id.*, ¶29. Moreover, although Chen is the President of Jinhua as well as the Vice President of UMC, Chen was not Jinhua's employee during the job fair – he joined Jinhua in January 2017. *Id.*, ¶¶21, 28.

Neither UMC nor Jinhua received any resumes from Micron employees prior to the event and no Micron employees applied for jobs at Jinhua at the job fair. *Id.* ¶30, 31.   Chen, acting on behalf of UMC, did not speak to any Micron employees at that event, and received no inquiries from Micron employees in response to its involvement with CASPA. *Id.* ¶30. Jinhua did not hire anyone, including anyone from Micron, as a result of the job fair or the job posting. *Id.* ¶¶32, 35.   Jinhua's participation in the 2016 job fair represents Jinhua's only trip to California. *Id.* ¶33.   Except for the job openings post on the CASPA website, Jinhua has not made other advertisements in California, or anywhere in the United States. *Id.* ¶34.   Jinhua has not been a party to any litigation in the United States other than Micron's lawsuit comprising the instant case. *Id.* ¶35.

## III.   LEGAL STANDARDS

### A.   SERVICE OF PROCESS

FRCP 4 "governs service of process in federal district court." *Brockmeyer v. May*, 383 F.3d 798, 800 (9th Cir. 2004).   If a return of service is produced, the moving party should include "affidavits, discovery materials, or other admissible evidence establishing the lack of proper service" in its motion to dismiss. *Emine Tech. Co. v. Aten Int'l Co.*, 2008 U.S. Dist. LEXIS 95136, at *4 (N.D. Cal. Nov. 21, 2008).   "In response, the [P]laintiff must provide evidence showing that the service was proper, or creating an issue of fact requiring an evidentiary hearing to resolve." *Id.*

Under FRCP 4(h), a foreign corporation must be served pursuant to the "manner[s] prescribed by FRCP 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."   Specifically, FRCP 4(f)(1) allows service "by any internationally agreed means of service that is reasonably calculated to give notice," including the means provided in the Hague Convention. FRCP 4(f)(2) applies "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice."   Finally, FRCP 4(f)(3) allows service "by other means not prohibited by international agreement, as the court orders."

Where the Hague Convention applies, service may be made pursuant to either FRCP 4(f)(1) or FRCP 4(f)(3). *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988); FRCP 4 advisory committee's note to 1993 amendment ("Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service."); *see also*

*Brockmeyer*, 383 F.3d at 804 (finding that "[FRCP] 4(f)(1) authorizes service by those methods of service authorized by international agreements, including the Hague Convention"); *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("As obvious from its plain language, service under FRCP 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement.").[1]  Since 1991, China has been a signatory to the Hague Convention and has expressly objected to service by postal channels under Article 10(a) of the treaty.  Xu Decl., ¶¶5, 7.

The Supreme Court recently determined that service by postal channels is permitted under the Hague Convention when: (1) "the receiving state has not objected to service by mail"; and (2) "service by mail is authorized under otherwise-applicable law."  *Water Splash Inc. v. Menon*, 137 S. Ct. 1504, 1511 (2017).  Under the Hague Convention, sending documents by private couriers, including FedEx, are considered "postal channels" in this district.  *See Willamette Green Innovation Ctr., LLC v. Quartis Capital Partners*, 2014 U.S. Dist. LEXIS 148665, at *12 (N.D. Cal. Jan. 21, 2014).

### B.  PERSONAL JURISDICTION

The plaintiff bears the burden of providing that the court may exercise personal jurisdiction over a defendant when the defendant moves to dismiss under FRCP 12(b)(2).  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  Courts properly exercise personal jurisdiction over a defendant "if it is permitted by a long-arm statute and if the exercise of jurisdiction does not violate federal due process."  *Id.* at 1154.  In California, a court "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10; *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 753, 187 L. Ed. 2d 624 (2014) ("California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the

---

[1] Unlike the defendant in *Rio Props.*, Jinhua does not argue that "[FRCP] 4(f) should be read to create a hierarchy of preferred methods of service of process."  284 F.3d at 1014-15.  Rather, Jinhua maintains that where service proceeds under the Hague Convention, FRCP 4(f)(1) applies *unless* the court grants alternative service under FRCP 4(f)(3).  Even then, service under FRCP 4(f)(3) must "not [be] prohibited by international agreement."  *Id.* at 1014.  Because courts may grant alternative service under FRCP 4(f)(3), there is no reason for FRCP 4(f)(2) to apply.  As provided in the advisory committee's notes, FRCP 4(f)(2) "provides alternative methods for use when internationally agreed methods are not intended to be exclusive, or where there is no international agreement applicable." *See* FRCP 4 advisory committee's note to 1993 amendment.  Here, neither is the case.

U.S. Constitution."). As such, "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004).

"The basic federal rule is that the defendant must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984). Personal jurisdiction may be either general or specific. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). For general jurisdiction, courts "employ[] a three-prong test to determine whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction." *Brayton Purcell LLP v. Recordon,* 575 F.3d 981, 985 (9th Cir. 2009). General jurisdiction is satisfied if a defendant whose contacts with a state are "substantial" or "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984). The standard for establishing general jurisdiction is "fairly high," *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986), and requires the defendant's contacts to approximate physical presence. *Gates Lear Jet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984). Courts also consider whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, or is incorporated there. *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986).

In determining whether to exercise specific jurisdiction, courts consider whether "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Bancroft & Masters, Inc.*, 223 F.3d at 1086. Evaluating the reasonableness of exercising specific personal jurisdiction depends on: (1) the extent of the defendant's purposeful injection into the forum; (2) the defendant's burdens from litigating in the form; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Ziegler v. Indian River County*, 64 F. 3d 470, 474-75 (9th Cir. 1995).

IV.   **ARGUMENT**

    **A.  INSUFFICIENT SERVICE OF PROCESS (FRCP (b)(5))**

      Micron's unilateral attempt to serve Jinhua, a Chinese state-owned enterprise, under FRCP 4(f)(2)(C)(ii) is improper because China is a signatory to the Hague Convention and has objected to service by postal channels under Article 10(a).  Micron did not request permission for alternative service upon Jinhua's executive at his Taiwanese residence or UMC's business address in Taiwan. Even if Micron had requested permission, service by private courier is improper because China does not allow service by postal channels, and any means provided under FRCP 4(f)(3) must not be prohibited by international agreement.  Even under FRCP 4(f)(2), Micron's attempted service fails because both China and Taiwan require service to be performed by a domestic court official. For these reasons, Micron's attempt to serve Jinhua via FedEx fails.

      **1.   Service Should Be Governed By FRCP 4(f)(1) Because China Is A Signatory To The Hague Convention**

      It is well-established that China is a signatory to the Hague Convention and, as a result, FRCP 4(f)(1) governs service unless alternative service is granted under FRCP 4(f)(3).  Xu Decl., ¶¶4, 5, 7; *see also Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 705; FRCP 4 advisory committee's note to 1993 amendment.  Micron plainly recognizes that the Hague Convention applies since Micron initiated service under China's Convention procedures at the outset of this case. Dkt. 13.  Rather than exploring options to perfect that service, Micron attempts to invent a new way to serve Chinese defendants that apparently does not even require a court order: sending FedEx packages directly to a Jinhua executive in Taiwan.

      Such tactics blatantly ignore China's express objection to service by postal channels under Article 10(a) of the Hague Convention and, if upheld, would effectively trample the meaning of China's Convention procedures, which have been recognized and upheld by foreign courts for over 25 years.[2]  Xu Decl., ¶¶5, 7; *see Willamette Green Innovation Ctr., LLC*, 2014 U.S. Dist. LEXIS

---

[2] At a bare minimum, China also requires documents to be in Chinese or translated into Chinese to comply with the Hague Convention. *See* Declaration of Mario Moore ("Moore Decl."), Ex. A (stating that "service requested within the meaning of Art. 5(1) of the Convention requires that all documents and evidence to be served must be written in Chinese or that a translation in Chinese be attached thereto"). Here, Micron has failed to comply with even this basic requirement, thus exhibiting a clear disregard for China's Convention procedures.

148665, at *12 (finding "that private couriers, such as FedEx, come within the meaning of 'postal channels' under the Hague Convention"); s*ee also Water Splash Inc.*, 137 S. Ct. at 1512 (noting that the Supreme Court "give[s] 'considerable weight' to the views of other parties to a treaty").  To date, Jinhua has not been served via China's Convention procedures even though China intended for foreign parties to serve Chinese defendants under these procedures.  Zheng Decl., ¶6; Xu Decl., ¶¶5, 7; Dkt. 96; Dkt. 97.  Because China is a signatory to the Hague Convention and Micron has never asked for permission to serve Jinhua via alternative means, Micron's attempted service should be found ineffective.

### 2.  If Micron Seeks To Use Alternative Methods Of Service, Micron Should Have At Least Obtained A Court Order

Micron may argue that alternative service is available under FRCP 4(f)(3), and as a result, it is not required to follow the procedures for service under FRCP 4(f)(1).  Service of process under FRCP 4(f)(3) is not a "last resort" and requires, at a bare minimum, that Micron obtain permission for alternative service. *See Rio Props.*, 284 F.3d at 1014-15.  Micron, however, did not even ask.

Moreover, Micron's argument fails in both theory and execution.  First, where the Hague Convention applies, courts have found that alternative service is permitted on a limited basis, such as "where the defendant's foreign address is unknown; the defendant has successfully evaded service; failure to permit alternate service will result in unduly long delays in litigation; or where attempted Hague Convention service has failed."  *Int'l Designs Corp., LLC v. Qingdao Seaforest Hair Prods. Co., Ltd.*, 2018 U.S. Dist. LEXIS 3038, at *8-9 (S.D. Fla. Jan. 4, 2018); *see also Codigo Music, LLC v. Televisa, S.A. de C.V.*, 2017 U.S. Dist. LEXIS 160747, at *27-28 (S.D. Fla. Sept. 29, 2017) (finding that Plaintiffs' "concern that no subsequent attempts at service under the Hague Convention will be successful" does not demonstrate "that particular available method of service is unduly burdensome or futile"); *South Carolina v. Hitachi Displays, Ltd.*, 2013 U.S. Dist. LEXIS 117518, at *7-8 (D.S.C. Aug. 20, 2013) (denying alternative service under FRCP 4(f)(3) because "Japan is a signatory to the Hague Service Convention, which provides South Carolina with an international process for effectuation service," and the party's "correct address in Japan is readily obtainable").

Here, Jinhua's China address is publicly available.  *See* Moore Decl., Ex. B.  Micron cannot demonstrate that Jinhua has ever attempted to evade service.   Moreover, Micron attempted to serve Jinhua via the Hague Convention at the outset of this case, but has yet to show how doing so would be unduly burdensome or futile.  To the extent that Micron believes that alternative service is required to prevent "unduly long delays in litigation," Micron should have filed a motion with the court to seek appropriate ways to resolve this issue rather than act on its own initiative.  Given this, Micron is not entitled to alternative service under FRCP 4(f)(3).

Second, even if alternative service is permitted, Micron failed to acknowledge that China has expressly objected to service by postal channels via Article 10(a) of the Hague Convention. Xu Decl., ¶7.  As a result, attempting to serve Jinhua via FedEx violates China's Convention procedures. *Intercontinental Indus. Corp. v. Qingquan Luo*, 2011 U.S. Dist. LEXIS 9081, at *7-8 (C.D. Cal. Jan. 20, 2011) ("In light of China's objection to service by postal channels, the Permanent Bureau's position that private couriers should be treated as postal channels under the Hague Convention,  and other courts' treatment of private couriers as postal channels, the Court cannot authorize service to Luo through a commercial carrier pursuant to 4(f)(3) as it is prohibited by international agreement").

Micron may also assert that service could be made upon Jinhua's counsel.  This too is improper, because counsel is allowed to enter appearances to dispute service without "waiv[ing] any arguments regarding service or that Defendants have been served." *See Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co.*, 2018 U.S. Dist. LEXIS 62367, at *4-5 (S.D. Cal. April 11, 2018).  Moreover, the fact that "the requested alternative methods of service are the most efficient and effective methods of service" does not justify alternative means when service via the Hague Convention remains viable. *Id.* at *5-6.  Here, Jinhua should not have to forfeit its rights to proper service because Micron made an improper attempt to serve Jinhua, especially since Micron acted without a court order and has no legitimate reason for serving Jinhua via a private courier upon a Jinhua executive in Taiwan.  Thus, Jinhua should not be forced to accept service through counsel.

### 3.  Micron's Attempted Service is Prohibited by Chinese Law

In any event, Micron should not be allowed to serve Jinhua under FRCP 4(f)(2) because China is a signatory to the Hague Convention, and as a result, an "internationally agreed means" for service

is available.   As provided in the advisory committee's notes, FRCP 4(f)(2) applies "when internationally agreed methods are not intended to be exclusive, or where there is no international agreement applicable."   Here, neither is the case, as China is a signatory to the Hague Convention and intended for foreign parties to utilize the Hague Convention's procedures for service.[3]  Xu Decl., ¶¶5, 7.   As such, Micron's attempt to serve Jinhua under FRCP 4(f)(2) where the Hague Convention is in place and Micron has made no attempt to perfect its service under the Hague Convention, is improper.

Micron may attempt to argue that service was proper because the FedEx mailings were sent to Jinhua's executive at his Taiwan residence and at UMC's place of business in Taiwan, which permits service "by international registered mail/return receipt requested."[4]  *See Taiwan*, U.S. DEPARTMENT OF STATE – BUREAU OF CONSULAR AFFAIRS, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Taiwan.html (last visited Sept. 30, 2018).   That argument, however, is incorrect.   Jinhua is a Chinese defendant. Zheng Decl., ¶¶3-5.   Jinhua is neither incorporated in Taiwan nor a Taiwanese resident.   Zheng Decl., ¶¶2-5, 12.   As such, whether Jinhua was effectively served by a foreign party should be determined by the laws of China, not the laws of Taiwan.   *See Cucuz v. Rosta Int'l Ltd.*, 2017 U.S. Dist. LEXIS 76367, at *17-18 (E.D. Mich. May 19, 2017) (indicating that service on a foreign corporation should be effectuated in either the place of incorporation or principal place of business).

Moreover, even under FRCP 4(f)(2), Micron's attempted service fails because China and Taiwan prohibit service unless performed by a domestic court official.   Xu Decl., ¶¶3, 4; *see also*

---

[3] China also prohibits "serv[ing] a party by serving the party's manager's home address or the party's manager when the manager is at a third party's address."  Xu Decl., ¶¶3, 4.  As such, even under FRCP 4(f)(2)(C)(ii), Micron's service is improper because its method of sending FedEx packages to Chen at his residence and UMC's business address in Taiwan is prohibited by China's laws.

[4] Where service may be effectuated in two countries that are both signatories to the Hague Convention, district courts have found that "[t]he country in which service is being made is the country whose laws must be obeyed, not the country of origin of the person or corporation being served."  *See Marcantonio v. Primorsk Shipping Corp.*, 206 F. Supp. 2d 54, 58 (D. Mass. 2002); *see also Murtech Energy Servs., LLC v. ComEnCo Sys.*, 2014 U.S. Dist. LEXIS 85502, at *21 (E.D. Mich. June 24, 2014).  Here, this does not apply because Taiwan, unlike China, is not a signatory to the Hague Convention. Where service may be accomplished pursuant to the Hague Convention, compliance with the Hague Convention is mandatory unless alternative service is granted.  *See Codigo Music, LLC*, 2017 U.S. Dist. LEXIS 160747, at *27-28.

(Footnote Cont'd on Following Page)

Moore Decl., Ex. C, Articles 123 and 124 of the Taiwanese Code of Civil Procedures. Where Taiwan allows service by mail from foreign clerks, such service must be directed to a Taiwanese defendant or ordered by the court to be effective.[5]  Here, Micron's use of FedEx, a private courier, was not performed by or at the direction of a Chinese or Taiwanese court official.  Micron did not seek this court's permission to use FedEx, and Jinhua is not a Taiwanese corporation.  As such, Micron's attempt to serve Jinhua is improper under FRCP 4(f)(2)(C)(ii).

## B.  LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2))

### 1.  Jinhua Has No Contacts With California To Support General Jurisdiction

This Court can only exercise general jurisdiction over an out-of-state defendant where a defendant's contacts are so "continuous and systematic" that it is "essentially at home in the forum State" and could reasonably foresee being sued in that state.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  It cannot be disputed that Jinhua does not have any general contacts with California, much less anywhere else in the United States for the following reasons.

Jinhua is a limited liability corporation founded in Mainland China in early 2016.  Zheng Decl., ¶3.  Jinhua is a state-owned enterprise ultimately controlled by Fujian Province with a principal place of business at No. 88, Lianhua Avenue, Integrated Circuit Science Park, Jinjiang City, Quanzhou City, Fujian Province, China, 362200. *Id.*, ¶¶4, 5.   Jinhua has not purposely done any business in the state of California, or anywhere in the United States. *Id.*, ¶7.  Jinhua has not actively or constructively been licensed to do business in California, or anywhere in the United States. *Id.*, ¶8.  Jinhua does not have a registered agent authorized to accept service on its behalf, in California, or anywhere in the United States. *Id.*, ¶9.  Jinhua does not make, sell, import, market or promote any product in California, or anywhere in the United States. *Id.*, ¶10.  Jinhua does not own, rent, lease or

---

[5] Indeed, in these instances, service was directed to a Taiwanese corporate defendant, which Jinhua is not.  *See, e.g.*, *Fujitsu Ltd. v. Nanya Tech. Corp.*, 2007 U.S. Dist. LEXIS 13132, at *12-13 (N.D. Cal. Feb. 9, 2007) (finding that "[b]ecause Taiwan is not a party to the Hague Convention, [FRCP 4(f)(1)] is not of use" for purposes of serving Taiwanese defendants); *Power Integrations, Inc. v. Sys. Gen. Corp.*, 2004 U.S. Dist. LEXIS 25414, at *2-3 (N.D. Cal. Dec. 7, 2004) (where the serving party filed a request with the Clerk of Court to perfect service to a Taiwanese corporation via FedEx prior to mailing); *Trueposition, Inc. v. Sunon, Inc.*, 2006 U.S. Dist. LEXIS 39681, at *2-3 (E.D. Pa. June 14, 2006) (where the defendant was a Taiwanese corporation); *Emery v. Wood Indus.*, 2001 U.S. Dist. LEXIS 12914, at *1-2 (D.N.H. Aug. 20, 2001) (same).

possess any real or personal property in California, or anywhere in the United States. *Id*., ¶11. All real and personal property owned, rented, leased, possessed or controlled by Jinhua is located in Mainland China. *Id*., ¶12. Jinhua does not maintain any bank accounts in California, or anywhere in the United States and does not pay taxes in California, or anywhere in the United States. *Id*., ¶¶13, 19). Jinhua does not maintain employees, officers, directors, or representatives in California, or anywhere in the United States. *Id*., ¶14. Jinhua maintains no manufacturing or sales facilities in California, or anywhere in the United States. *Id*., ¶15. Jinhua does not have any shareholders or members residing in California. *Id*., ¶16. Jinhua does not maintain a physical address, mailing addresses, telephone numbers or fax numbers in California, or anywhere in the United States. *Id*., ¶17. Jinhua does not travel to California by way of salespersons, or anywhere in the United States. *Id*., ¶18. Jinhua does not visit potential customers in California, or anywhere in the United States. *Id*., ¶20.

Given these facts, Jinhua does not possess the requisite continuous and systematic general business contacts for it to be considered "essentially at home" in California as required for this Court to exercise general personal jurisdiction over Jinhua.

## 2. Jinhua Has No Contacts With California To Support Specific Jurisdiction

Micron's only claim that this Court has specific personal jurisdiction over Jinhua is based on one isolated event: Jinhua's attendance at a job fair hosted by CASPA in October 2016 in Santa Clara, California and the posting of a job opening on the CASPA website. Complaint, ¶¶17, 35. This one event is insufficient to establish specific personal jurisdiction for several reasons. First, Micron presents no evidence that Jinhua attended the CASPA job fair to specifically recruit California residents. Jinhua asserts that its intention to attend the CASPA job fair was generally focused on attracting Chinese graduates in the United States. Zheng Decl., ¶27. Thus, the location of the job fair in California, which Jinhua had no control over, is the only evidence of contact with the forum. Moreover, the CASPA job fair, was a one-time event, with only two representatives from Jinhua in attendance. *Id*., ¶29.

Second, with respect to the job posting that Jinhua made on the CASPA website, Micron presents no evidence that the website was specifically directed to California and its residents.

Although the CASPA job fair may have been held in California, Jinhua's job posting on the CASPA website, which is accessible nationwide, does not establish that Jinhua was specifically seeking potential hires from California. *Rio Props. v. Rio Int'l Interlink,* 284 F.3d 1007 (9th Cir. 2002) (noting that to establish specific jurisdiction based on internet contacts, plaintiff must show that the "objectionable webpage" was aimed intentionally at the forum state); *De Leon v. KBR, Inc.*, 2012 U.S. Dist. LEXIS 64738, at *27 (D. Haw. May 8, 2012) (finding that a recruiting website that was available to any and all people located nationwide and throughout the world was not enough for the court to confer specific personal jurisdiction over the defendant without more).

Even if Jinhua's attendance at the CASPA job fair is sufficient to satisfy the first prong in the specific jurisdiction analysis (which Jinhua submits is not), Micron has not demonstrated that its claims "arise out of or relate to" Jinhua's attendance at the job fair.  Specifically, Micron has failed to show how Jinhua's actions at the CASPA event constituted trade secret misappropriation and "steps in furtherance of the conspiracy in the United States."  Complaint, ¶35.  Indeed, Jinhua's participation in the CASPA event has no relation whatsoever to the trade secret misappropriation and RICO claims in the Complaint.  The only allegations in the Complaint that conceivably could be construed as supportive of the second prong, are conclusory, unsupported and speculative allegations.  For example, Micron alleges that the roadmap that UMC and Jinhua presented at the job fair "which would tend to assuage any concerns of job candidates that the project was distant or speculative, would not be possible without the use of stolen trade secrets." Complaint, ¶36. However, this allegation is purely speculative and, in any event, has no connection whatsoever to the trade secret or the RICO violations alleged in the Complaint.  Notably, Micron only makes conclusory allegations in its Complaint that the acts of misappropriation were "encouraged and directed by UMC, Chen and Jinhua."  Complaint, ¶34.

Micron also alleges that UMC and Jinhua's slides at a presentation at the CASPA job fair referred to two DRAM products as "F32" and "F32S," which Micron alleges were the "exact internal codenames of DRAM products developed and designed by Elpida (later acquired and owned by Micron). . . ."  Complaint, ¶36.  However, Micron does not even allege that those codes even constituted trade secrets or that they were allegedly misappropriated by UMC and/or Jinhua.  *Id.*

Given this, Micron has failed to show it would not have suffered any injury "but for" Jinhua's attendance at the CASPA job fair and can neither support its jurisdictional grounds, much less its substantive claims.  In fact, Micron did not suffer any injury arising out of Jinhua's attendance at the CASPA job fair because Micron employees were not the target of Jinhua's job efforts there, no Micron employees applied for jobs at Jinhua at the event and no Micron employees were hired as a result of the event.  Zheng Decl., ¶¶27, 30-32.  Moreover, Chen, was acting on behalf of UMC, rather than Jinhua, and did not speak to any Micron employees at the job fair, and received no inquiries from Micron employees in response to the job fair.  *Id.*, ¶30.

To the extent Micron alleges facts other than those related to the CASPA job fair in support of its claim that specific jurisdiction is appropriate over both UMC and Jinhua in this case, these facts are not applicable to Jinhua.  For example, Micron alleges that before leaving MMT, Kenny Wang used his MMT-issued laptop to access electronic records containing Micron trade secrets, and then transferred those files to a USB storage device and to his online Google Drive cloud storage account.  Complaint, ¶27.  This fact is not applicable to Jinhua because Mr. Wang was an employee of UMC, not Jinhua.  Zheng Decl., ¶22.  Moreover, many of the other facts alleged by Micron against UMC also are not applicable to Jinhua.  For example, Jinhua has no contracts, such as a non-disclosure agreement, or any interactions with Micron, and Jinhua does not have any sales in the United States.  Moreover, Jinhua does not have a subsidiary or office in California or the United States.  There simply has been no activity by Jinhua in the United States that ties to the allegations in the Complaint relating to a project in Taiwan and China.

### 3.  Exercising Jurisdiction Over Jinhua In California Is Unreasonable

Even if the Court were to find that it has personal jurisdiction over Jinhua, the Court should still grant Jinhua's motion to dismiss because under the Ninth Circuit's precedent, specific jurisdiction over Jinhua in this case would be unreasonable, and therefore, unconstitutional.

First, Jinhua's alleged contacts with California do not constitute "purposeful interjection."  To the extent Jinhua's attendance at the CASPA job fair could even constitute "purposeful interjection," it was a single act limited in time and scope, had no connection with or effect on Micron, and is unrelated to any of the claims in this case.  Similarly, just because the CASPA job fair was located

in California, Jinhua did not attend the event because it sought to recruit potential hires it knew to be residents of the forum.  Rather, Jinhua was focused on attracting Chinese students with prior experience in DRAM technology – regardless of their residency.  Zheng Decl., ¶27.  Not only did Jinhua not purposefully interject itself into California, it did not purposefully interject itself into the U.S. market either.  Moreover, Jinhua does not have any sales from the United States or have any subsidiaries or offices in the United States, both of which are facts that courts have found are insufficient to support the type of attenuated jurisdictional theory Micron is attempting to spin in this case.  *Daimler AG v. Bauman,* 571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) (rejecting the exercise of general jurisdiction over foreign corporations based on the presence of an in-state subsidiary or affiliate); *Bogart LLC v. Corinthian, Inc.,* 2012 U.S. Dist. LEXIS 199509, at *6 (C.D. Cal. May 3, 2012) (finding that no sales to forum was insufficient to give rise to either general or specific jurisdiction).

Second, it would be significantly burdensome for Jinhua to defend this action because California is more than six-thousand (6,000) miles away from China – Jinhua's base of operations.  Representatives from Jinhua do not frequently travel to California, much less the United States.  Moreover, Jinhua neither has any agents or subsidiaries in the United States nor has been involved in litigation in the United States other than the instant case.  Although the CASPA job fair took place in this forum, this event alone did not give rise to Micron's claims.  Rather, it is clear that Micron's claims were the result of other alleged key events all taking place outside of the United States.  Third, this Court's exercise of jurisdiction in California conflicts with the sovereignty of China, Jinhua's state of domicile.   The Ninth Circuit has held that this factor favors the party opposing the exercise of jurisdiction when such party does not have an agent in the United States, or any office or affiliate in this Country.  *Roth v. Garcia Marquez,* 942 F.2d 617, 620 (9th Cir. 2011).

Fourth, California has no interest in the dispute inasmuch as Micron is a corporation based in Boise, Idaho, Jinhua is a non-US corporation, and California residents could have little, if any, interest in hearing a conspiracy and trade secret misappropriation suit between non-California companies.  Micron obviously has more appropriate forums available to it which would have a greater interest is resolving the dispute, such as China and/or Taiwan.  There is simply no benefit to the implicated

1    states to have the matter adjudicated, under federal law, where little to no aspect of the controversy

2    took place.   Fifth, this forum will not provide the litigants with better access to proof and, therefore,

3    will not result in a more efficient resolution of the case.   Here, most, if not all of the Jinhua witnesses

4    and the evidence are located in Taiwan or China.   All Jinhua employees reside outside of the United

5    States.   In fact, most, if not all, reside in Mainland China.   Similarly, any evidence relevant to Jinhua

6    is located in China, not California, much less anywhere else in the United States.

7          Finally, there is no reason to believe that this is the only forum that can offer convenient and

8    effective relief for Micron.   China would offer more convenient and effective relief as well as provide

9    an adequate alternative forum for Micron to bring its claims against Jinhua.   It is clear that Micron

10   cannot support either its jurisdictional or substantive claims under U.S. law, and as a result, Micron

11   should consider bringing its claims between MMT and Jinhua in China.

12   **V.     CONCLUSION**

13         For the reasons set forth herein, Jinhua respectfully requests that the Court dismiss the

14   Complaint for lack of insufficient service of under the FRCP 12(b)(5) (without prejudice) and lack of

15   personal jurisdiction under FRCP 12(b)(2) (with prejudice).

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

1

2

3   Dated:  October 2, 2018                                    _____/s/ Daniel Johnson Jr._____

4                                                              Daniel Johnson Jr. (Bar No. 57409)
                                                               Mario Moore (Bar No. 231644)
5                                                              DAN JOHNSON LAW GROUP, LLP
                                                               400 Oyster Point Blvd., Suite 321
6                                                              South San Francisco, CA 94080
                                                               Telephone: (415) 604-4500
7                                                              dan@danjohnsonlawgroup.com
                                                               mario@danjohnsonlawgroup.com
8
                                                               Lyle B. Vander Schaaf (DC Bar No. 422380)
9                                                              Evi T. Christou (DC Bar No. 1600066)
                                                               Fei Hu (DC Bar No. 1016150)
10                                                             BRINKS GILSON & LIONE
                                                               1775 Pennsylvania Ave, NW, Suite 900
11                                                             Washington, DC 20006
                                                               Telephone: (202) 296-8700
12                                                             lvanderschaaf@brinksgilson.com
                                                               echristou@brinksgilson.com
13                                                             fhu@brinksgilson.com
                                                               Appearance *pro hac vice*
14
                                                               Harold V. Johnson (IL Bar No. 6188149)
15                                                             BRINKS GILSON & LIONE
                                                               455 N. Cityfront Plaza Drive, Suite 3600
16                                                             Chicago, IL 60611
                                                               Telephone: (312) 321-4200
17                                                             hjohnson@brinksgilson.com
                                                               Appearance *pro hac vice*
18
19                                                             *Attorneys for Specially Appearing Defendant*
                                                               Fujian Jinhua Integrated Circuit Co., Ltd.
20

21

22

23

24

25

26

27

28