Randall E. Kay (State Bar No. 149369)
rekay@jonesday.com
Douglas L. Clark (State Bar No. 279408)
dlclark@jonesday.com
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA  92121.3134
Telephone:     +1.858.314.1200
Facsimile:     +1.844.345.3178

Patrick T. Michael (State Bar No. 169745)
pmichael@jonesday.com
Marcus S. Quintanilla (State Bar No. 205994)
mquintanilla@jonesday.com
JONES DAY
555 California Street, Suite 2600
San Francisco, CA 94104.1501
Telephone:     +1.415.626.3939
Facsimile:     +1.415.875.5700

Emily M. Whitcher (State Bar No. 321790)
ewhitcher@jonesday.com
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071
Telephone:     +1.213.489.3939
Facsimile:     +1.213.243.2539

Attorneys for Plaintiff
MICRON TECHNOLOGY, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICRON TECHNOLOGY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED MICROELECTRONICS CORPORATION, FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD., and DOES 1-10,<br><br>Defendants. | **Case No. 3:17-CV-06932-MMC**<br><br>**PLAINTIFF MICRON'S REPLY IN SUPPORT OF ITS MOTION TO SERVE DEFENDANT FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD. BY ALTERNATIVE MEANS**<br><br>Date: November 30, 2018<br>Time: 9:00 a.m.<br>Judge: Hon. Maxine M. Chesney<br>Courtroom: 7, 19th Floor |

Micron's Reply in Support of Its Motion
for Alternative Service on Jinhua
Case No. 3:17-CV-06932-MMC

1    **I.     INTRODUCTION**

2            Micron has spent nearly a year attempting to serve Jinhua in accordance with Federal Rules

3    of Civil Procedure 4(f)(1)—at Jinhua's physical address in China under the Hague Convention—

4    and 4(f)(2)—on Jinhua's Taiwanese President in Taiwan by means permitted in that country,

5    which is not a signatory to the Hague Convention.  Micron continues to believe its service under

6    Rule 4(f)(2) was proper.  Nonetheless, alternative service under Rule 4(f)(3) is also warranted

7    given Micron's urgent need to obtain preliminary injunctive relief, the demonstrated difficulty in

8    serving Jinhua under Rules 4(f)(1) and 4(f)(2), and to avoid two-track litigation against Jinhua and

9    its co-defendant in this case, UMC.  Alternative service by Micron's proposed means—via email

10   and through Jinhua's United States counsel—is not prohibited by international agreement and

11   comports with the notice requirements of due process.  Jinhua provides no legitimate reason to

12   deny this motion and further delay this case, particularly given the recent actions taken against

13   Jinhua by the U.S. Department of Justice.

14   **II.    ARGUMENT**

15       **A.     Micron Has Followed the Federal Rules of Civil Procedure.**

16           Micron does not dispute Jinhua's right to receive proper service under the Federal Rules of

17   Civil Procedure, nor suggest that actual notice establishes the effectiveness of service.  It is

18   relevant, however, that Micron has made repeated good faith attempts to serve Jinhua under Rules

19   4(f)(1) and 4(f)(2) for nearly a year, and that Jinhua has had notice of this case from the start.

20           Current Jinhua counsel—South San Francisco's Dan Johnson Law Group, LLP—initially

21   noticed an appearance for Jinhua at the outset of this case before quickly withdrawing that notice

22   and disclaiming representation of Jinhua (a position that counsel maintained until filing Jinhua's

23   motion to dismiss last month).  Given that Jinhua had not identified counsel from which Micron

24   could seek a waiver of service, Micron maintained its efforts to effectuate service on Jinhua under

25   Rule 4(f)(1) via the Hague Convention.  After China's Ministry of Justice ("Chinese MOJ")

26   rejected that method of service for an unspecified translation defect, Micron learned that Jinhua's

27   Taiwanese President, Stephen Chen, ran the company from Taiwan.  Accordingly, Micron

28   attempted service under Rule 4(f)(2)(C)(ii) by having the Clerk of this Court mail the service

1                    Micron's Reply in Support of Its Motion
for Alternative Service on Jinhua
Case No. 3:17-CV-06932-MMC

documents via FedEx "international priority delivery" to "Stephen Chen, President of Fujian Jinhua Integrated Circuit Co., Ltd." in Taiwan (Dkts. 89 at 2; 90 at 2), where the Hague Convention does not apply.[1]  Although Stephen Chen has admitted that he in fact received the service documents addressed to him as the President of Jinhua (Dkt. 106 at 9), Jinhua contests the sufficiency of service in its motion to dismiss.  Before Jinhua filed its motion, and in an attempt to move the case forward, Micron attempted to resolve any service issues through Jinhua's counsel.  Jinhua refused.[2]

Micron maintains that service was properly effected on Jinhua in accordance with Rule 4(f)(2).  (*See* Dkt. 116-4, Micron's Opposition to Jinhua's Motion to Dismiss, at 15.)  However, in the alternative, and to render unnecessary a ruling on the merits of Jinhua's motion to dismiss on service grounds, Micron now requests permission to serve Jinhua under Rule 4(f)(3).  Each of Micron's service attempts, including this one, has been in good faith and in full compliance with the Federal Rules of Civil Procedure.  Jinhua's attempt to blame Micron for any delay cannot be squared with the facts.  And regardless of blame, Jinhua provides no support for its repeated assertion that alternative service may be denied simply because it was not sought earlier in the case or immediately after an initial service attempt failed.  Micron at all times followed Rule 4(f), and brought this motion under Rule 4(f), to finally resolve the issue of service so that this case can proceed against both defendants without further unnecessary delay.

**B.     Alternative Service on Jinhua Is Necessary In This Case.**

The standard for alternative service is not as onerous as Jinhua suggests.  Micron does not have to prove that service via the Hague Convention would be *impossible* for the Court to grant

---

[1] This was no attempt to "trick" Jinhua into accepting service.  Micron successfully served Jinhua's co-defendant UMC (which is also represented by Jinhua's counsel Dan Johnson Law Group, LLC) in Taiwan under Rule 4(f)(2)(C)(ii) by having the Clerk of this Court mail the service documents to UMC via FedEx.  UMC did not contest service, and Micron believes that service on Jinhua was accomplished in the same way consistent with United States law.  And Jinhua has never alleged that it was unaware of this case or deprived of a fair opportunity to respond.

[2] Jinhua's accusation that Micron has "unnecessarily forc[ed] the parties to dispute the sufficiency of Micron's attempted service" is disingenuous.  Micron tried to work with Jinhua's counsel, who initially expressed a desire to "avoid unnecessary motion practice" and resolve the "service issues at play." (Dkt. 117-3 at 5.)  Jinhua could have accepted service through its U.S. counsel to avoid this dispute.

2                    Micron's Reply in Support of Its Motion
for Alternative Service on Jinhua
Case No. 3:17-CV-06932-MMC

alternative service.  To obtain relief under Rule 4(f)(3), the plaintiff need "only to demonstrate that the facts and circumstances of the present case necessitated the district court's intervention." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002).  Alternative service is warranted in this case because there is an urgent need for Micron to obtain preliminary injunctive relief once jurisdiction is established.  As Jinhua has recognized, urgency is a reason for a court to grant a motion for alternative service.  *See, e.g., Microsoft Corp. v. Goldah.com Network Tech. Co.*, No. 17-CV-02896-LHK, 2017 WL 4536417, at *3–4 (N.D. Cal. Oct. 11, 2017) (granting motion because of urgent need for preliminary relief); *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, No. 11-cv-02460-LHK, 2011 WL 2607158, at *11−12 (N.D. Cal. July 1, 2011) (same).

The urgency of this matter cannot be overstated.  Indeed, the U.S. Government has determined that "Jinhua is nearing completion of substantial production capacity" at its DRAM factory in China and, on October 29, 2018, the U.S. Department of Commerce determined that Jinhua "poses a significant risk of becoming involved in activities that could have a negative impact on the national security interests of the United States."[3]  Then, on November 1, 2018, the U.S. Department of Justice announced a criminal indictment against Jinhua, UMC, and three former Micron employees hired away by UMC, as well as the filing of a civil injunction action—all based on the theft and use of Micron trade secrets at issue in this action.[4]  This lawsuit is of critical importance to Micron, and Micron is entitled to seek immediate injunctive relief once the Court resolves the pending jurisdictional issues.[5]  Knowing this, Jinhua seeks to delay service and a ruling on the jurisdictional issues—a delay that does nothing but risk the further use and disclosure of Micron's trade secrets.

_____

[3] U.S. Dept. of Commerce, "Addition of Fujian Jinhua Integrated Circuit Company, Ltd. (Jinhua) to the Entity List" (Oct. 29, 2018), https://www.commerce.gov/news/press-releases/2018/10/addition-fujian-jinhua-integrated-circuit-company-ltd-jinhua-entity-list.

[4] U.S. Dept. of Justice, "PRC State-Owned Company, Taiwan Company, and Three Individuals Charged With Economic Espionage" (Nov. 1, 2018), https://www.justice.gov/opa/pr/prc-state-owned-company-taiwan-company-and-three-individuals-charged-economic-espionage.

[5] Micron informed the Court in the Case Management Statement that it intended to file for preliminary injunctive relief when the discovery stay is lifted.  (Dkt. 52 at 6.)  Because of the challenges to personal jurisdiction by UMC, and now Jinhua, Micron has been unable to seek injunctive relief to date.

Micron's Reply in Support of Its Motion
for Alternative Service on Jinhua
Case No. 3:17-CV-06932-MMC

As such, Jinhua's reliance on three examples from the Advisory Committee Notes on when Rule(f)(3) applies—one of which is "cases of urgency"—gets Jinhua nowhere.  Moreover, nothing suggests that the three examples provided in the Advisory Committee Notes were intended to be exclusive.  Jinhua's own authority recognizes that courts have permitted alternative service where "failure to permit alternative service will result in unduly long delays in litigation," which is necessarily a situational inquiry, and "where attempted Hague Convention service has failed," as here.  *Int'l Designs Corp., LLC v. Qingdao Seaforest Hair Prods. Co.*, No. 17-60431-CIV-MORENO, 2018 U.S. Dist. LEXIS 3038, at *8-9 (S.D. Fla. Jan. 4. 2018).  Courts have also ordered alternative service for the avoidance of a "two-track litigation [with the] potential to create inefficiencies and to prejudice plaintiff."  *Prods. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-CV-00669-YGR, 2017 WL 1378532, at *3 (N.D. Cal. Apr. 11, 2017).

In any event, Micron also falls within two of the Advisory Committee examples.  First, as described above, this is a "case of urgency."  Second, Micron has every reason to believe service will not be effected within the six-month period provided by the Hague Convention were it to retry that method of service.  It took the Chinese MOJ *four months* to reject Micron's materials as improperly translated, and presumably, it would take even longer to actually effect service if the documents are ever accepted by the Chinese MOJ as complete.  Should Micron attempt service through the Hague Convention again, the time for service will clearly extend well beyond the six-month period contemplated by the Advisory Committee.  Indeed, the long delays accompanying Hague Convention service in China are well documented, and that is before accounting for the fact that Jinhua is a state-owned enterprise that the Chinese government has every incentive to protect.[6]

---

[6] *See* Aaron Lukken, "How to Serve Process in China… important updates," Hague Law Blog (May 14, 2018), https://www.haguelawblog.com/2018/05/serve-process-chinaimportant-updates/ ("For starters, the Chinese bureaucracy is excruciatingly slow – historically, they've taken six to nine months to return a proof of service. Lately, though, more than a year passes, and there are rumblings in the transnational litigation community that they've stopped executing U.S. requests altogether."); Jacob Schindler, "Suing a Chinese entity in the United States? Expect a two year wait to serve process," IAM (May 18, 2018), https://www.iammedia. com/frandseps/suing-chinese-entity-united-states-expect-two-year-wait-serve-process ("Until recently, service in China in accordance with the Hague Service Convention averaged 8 months to 1 year. Although the situation with China remains frustrating and unbending, we recently received notification from the Ministry of Justice in Beijing that the standard turnaround time for service will now be between 1 and 2 years and proofs of service are starting to be returned for requests in various cases that were originally sent to China 2 years ago.")

1    Further, Jinhua has already received notice through Micron's good-faith service attempts and there

2    is no legitimate reason to delay this litigation for an indefinite period of time while Micron again

3    attempts to serve Jinhua through the Hague Convention. *See Prods. & Ventures Int'l*, 2017 WL

4    1378532, at *3. The two-track litigation Jinhua is advocating for would be prejudicial to Micron

5    and would unduly burden the Court with separate schedules for substantially similar matters that

6    should be tried together.

7        Jinhua has not provided any compelling reasons for denying this motion. Jinhua rests on

8    its fabricated "right" to service under the Hague Convention, and even suggests that the motion

9    may be denied to punish Micron for allegedly delaying the filing of this motion and not following

10   the Federal Rules. But Micron is not asking the Court to validate its prior attempts at service by

11   granting its motion for alternative service under Rule 4(f)(3). And Jinhua cites to no authority to

12   support denying a motion for alternative service because of a plaintiff's delay in bringing the

13   motion. In any event, as explained above, Micron has been diligently pursuing service in

14   accordance with the Federal Rules for almost a year. Micron has acted in good faith and with all

15   due speed.[7]

16        **C.    Jinhua Does Not Have a Right to Service Via the Hague Convention.**

17        To be clear, Micron is not attempting to circumvent the Hague Convention. Compliance

18   with the Hague Convention is not mandatory under the Federal Rules, and Jinhua does not have a

19   right to be served via the Hague Convention. *Microsoft*, 2017 WL 4536417, at *4 ("[Chinese]

20   Defendants' claim incorrectly assumes that the Hague Convention is the only means of effecting

21   service."); *Xilinx, Inc. v. Godo Kaisha IP Bridge 1*, 246 F. Supp. 3d 1260, 1263 (N.D. Cal. 2017)

22   ("IPB's position that it has a 'right' to force service through strict compliance with the Hague

23   Convention misapprehends governing law."). Service in the United States is governed by the

24   Federal Rules of Civil Procedure, and China cannot require that service under United States law be

25   accomplished through the Hague Convention. *See Marcantonio v. Primorsk Shipping Corp.*, 206

26   F. Supp. 2d 54, 58 (D. Mass. 2002) ("The country in which service is being made is the country

27        [7] Nor is a ruling on Jinhua's motion to dismiss on service grounds necessary or warranted
     should the Court grant this motion for alternative service. Jinhua is essentially seeking an advisory

28   opinion in arguing otherwise. (*See* Dkt. 128 at 8 n.3.)

Micron's Reply in Support of Its Motion
                                                                    for Alternative Service on Jinhua
                                                                    Case No. 3:17-CV-06932-MMC

1    whose laws must be obeyed, not the country of origin of the person or corporation being served.").

2         Micron initially attempted to serve Jinhua through the Hague Convention because it was

3    trying to serve Jinhua at its physical address *in China*.  The Hague Convention applies to service

4    physically accomplished in China.  It does not apply based on citizenship, but based on the country

5    where service occurs.  *Murtech Energy Servs., LLC v. ComEnCo Sys., Inc.*, No. 2:13-CV-12721,

6    2014 WL 2863745, at *7 (E.D. Mich. June 24, 2014) ("While Defendants hint that Hangzhou's

7    status as a Chinese corporation mandates sole use of the Chinese Central Authority, the Hague

8    Convention applies based upon the country in which service occurs, not a corporation's

9    citizenship.").  Despite all required documents being professionally translated and certified before

10   being submitted for service (Dkt. 116-5 ¶¶ 2-3), the Chinese MOJ rejected the materials *after four*

11   *months* with a one-sentence statement that the translation was, inexplicably, not complete.  Jinhua

12   argues that the Chinese MOJ provides a three to four month timeline for execution of Hague

13   Convention service requests.  Clearly, service had not been accomplished within four months, and

14   could not have been because it took the Chinese MOJ four months merely to review the materials

15   for compliance.[8]

16        Attempted service through the Hague Convention for a second time would unreasonably

17   delay this case.  Courts do not require an attempt at Hague Convention service before alternative

18   service can be granted, and they certainly do not require multiple attempts when the first attempt

19   failed for unspecified "defects" in the translation.  *See Richmond Techs.*, 2011 WL 2607158, at

20   *11−12 (granting alternative service where plaintiff did not first attempt to complete service

21   through the Hague Convention).  Jinhua has not pointed to a single case where the court required a

22   showing that service through the Hague Convention would be impossible before granting

23   alternative service.  In fact, cases relied on by Jinhua are to the contrary.  *See, e.g., Codigo Music,*

24   *LLC v. Televisa S.A. de C.V.*, No. 15-CIV-21737, 2017 WL 4346968, at *7 (S.D. Fla. Sept. 29,

25   2017) ("[T]here is no express requirement that the Plaintiffs demonstrate that service under the

26

27   ───────────────
     [8] That the Chinese MOJ responded almost immediately to a request from Jinhua, a state-
     owned enterprise, is not surprising and does not reasonably suggest that Micron would receive
     equal treatment.  Micron has no obligation to further pursue a failed service attempt when the
28   Federal Rules provide for other, equally-favored methods of service.

Micron's Reply in Support of Its Motion
for Alternative Service on Jinhua
Case No. 3:17-CV-06932-MMC

1    Hague Convention is not possible before the court may authorize the Plaintiffs to serve the

2    Defendant under alternative means pursuant to Rule 4(f)(3).")

3         **D.    Service By Electronic Means and Through Counsel Are Appropriate, and**

4              **Micron Will Comply With Any Means Ordered By the Court.**

5         The purpose of service of process is to ensure that a defendant has notice and an

6    opportunity to respond.  *See Rio Props., Inc.*, 284 F.3d at 1016-17 (service must be "reasonably

7    calculated, under all the circumstances, to apprise interested parties of the pendency of the action

8    and afford them an opportunity to present their objections.") (quoting *Mullane v. Cent. Hanover*

9    *Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  That objective has been met.  Micron is not arguing

10   that notice is sufficient by itself, but that alternative service is justified, in part, given the

11   undisputed fact that Jinhua has actual notice of this case.

12        Rule 4(f)(3) allows service "by other means not prohibited by international agreement, as

13   the court orders."  Both email service and service through United States counsel have been

14   sanctioned by the Ninth Circuit and courts in this district in cases where court intervention was

15   deemed necessary.[9]  *See, e.g., Keck v. Alibaba.com, Inc.*, No. 17-CV-05672-BLF, 2018 WL

16   3632160, at *3 (N.D. Cal. July 31, 2018) ("there is no international agreement precluding service

17   on China-based defendants by electronics means"); *Carrico v. Samsung Elecs. Co*, No. 15-cv-

18   02087-DMR, 2016 WL 2654392, at *4 (N.D. Cal. May 10, 2016) (noting that "[n]othing in the

19   Hague Convention bars Plaintiffs' requested service on [the defendant] through her attorney.").  In

20   attempting to distinguish Micron's cases, Jinhua confuses the issue of whether the means of

21   alternative service was adequate with whether alternative service was warranted at all.  (*See* Dkt.

22   128 at 13-15.)

23        Micron is not arguing that, by itself, Jinhua's special appearance through counsel to contest

24   service waives service or permits service on counsel.  Rather, that the Court has authority under

25   _____

26        [9] Jinhua does not dispute that service@jhicc.cn is a valid email address that would be an
     effective means of service.  (Dkt. 128 at 14 n.6.)  However, Jinhua claims that its physical address
27   is "more preferred."  As part of the order granting alternative service, Micron would be happy to
     arrange for the service materials to be delivered to Jinhua at its physical address in China, as well,
     so long as Jinhua is not contending that service at its physical address must be accomplished
28   through the Hague Convention, rather than a personal courier or other efficient means.

                                      7                    Micron's Reply in Support of Its Motion
                                                           for Alternative Service on Jinhua
                                                           Case No. 3:17-CV-06932-MMC

1    Rule 4(f)(3) to order service on a defendant's counsel notwithstanding the client's refusal to

2    authorize its counsel to accept service.  *See Cheetah Mobile, Inc. v. APUS Grp.*, No. 15-CV-

3    02363-HSG, 2016 WL 4036098, at *3 (N.D. Cal. July 28, 2016) ("Defendant's attempt to

4    distinguish the facts of this case from other cases in which courts have permitted service on an

5    international defendant's U.S. counsel is unavailing. Under clear Ninth Circuit precedent, the only

6    requirements for Rule 4(f)(3) service are that it is (1) directed by the Court and (2) not prohibited

7    by international agreement such as the Hague Convention.").  Jinhua's cited cases are not on point

8    and do not address whether service on counsel under Rule 4(f)(3) is permissible.  *See Fourte Int'l*

9    *Ltd. BVI v. Pin Shine Indus. Co.*, No. 18-cv-00297-BAS-BGS, 2018 U.S. Dist. LEXIS 62367, at

10   *4 (S.D. Cal. Apr. 11, 2018) (refusing to deem defendant served because of appearance of counsel,

11   and not ruling on whether service on counsel was appropriate means of alternative service);

12   *Kruska v. Perverted Justice Found.*, No. CV-08-0054-PHX-SMM, 2009 U.S. Dist. LEXIS

13   112892, at *5-6 (D. Ariz. Nov. 16, 2009) (finding that previous service attempt on counsel was

14   ineffective, and not in the context of a Rule 4(f)(3) motion); *Lasswell Found. for Learning &*

15   *Laughter, Inc. v. Schwartz*, No. 3:16-cv-00497-BEN-WVG, 2016 U.S. Dist. LEXIS 154373, at

16   *4-5 (S.D. Cal. Nov. 4, 2016) (same).

17         Jinhua does not cite a single case holding that email service or service on a foreign

18   defendant's United States counsel is prohibited by international agreement.[10]  Here, service via

19   these methods is appropriate because Jinhua already has notice of this case and the methods are

20   not prohibited by international agreement.  As demonstrated above, alternative service is necessary

21   because of the urgency of this case and the undue delay that would be caused by repeated (and

22   uncertain) attempts at Hague Convention service.  Should the Court find Micron's proposed means

23   of service insufficient, Micron will comply with any means provided for by the Court.

24   _____

25         [10] Jinhua cites two cases that it claims shed doubt on the permissibility of email service.
     Neither case held that email service was prohibited, and both cases allowed service on the
     defendant's United States counsel.  *See Cheetah Mobile,* 2016 WL 4036098, at *3 (granting
26   motion for alternative service on defendant's United States counsel and declining to rule on
     permissibility of email service); *Juicero, Inc. v. iTaste Co.*, No. 17-cv-01921-BLF, 2017 U.S. Dist.
27   LEXIS 86033, at *8 (N.D. Cal. June 5, 2017) (finding email service "permissible means in this
     case when combined with [service on defendant's United States counsel and through defendant's
28   Facebook].")

8                    Micron's Reply in Support of Its Motion
                                          for Alternative Service on Jinhua
                                          Case No. 3:17-CV-06932-MMC

III.    **CONCLUSION**

For the reasons stated above and in Micron's moving papers, the Court should grant Micron's motion for alternative service.

Respectfully submitted,

Dated:  November 6, 2018                    JONES DAY

By: _s/ Randall E. Kay_
Randall E. Kay

Attorneys for Plaintiff
MICRON TECHNOLOGY, INC.

9                    Micron's Reply in Support of Its Motion
for Alternative Service on Jinhua
Case No. 3:17-CV-06932-MMC