Daniel Johnson Jr. (Bar No. 57409)
Mario Moore (Bar No. 231644)
DAN JOHNSON LAW GROUP, LLP
400 Oyster Point Blvd., Suite 321
South San Francisco, CA 94080
Telephone: (415) 604-4500
dan@danjohnsonlawgroup.com
mario@danjohnsonlawgroup.com

Lyle B. Vander Schaaf (DC Bar No. 422380)
Evi T. Christou (DC Bar No. 1600066)
Fei Hu (DC Bar No. 1016150)
BRINKS GILSON & LIONE
1775 Pennsylvania Ave, NW, Suite 900
Washington, DC 20006
Telephone: (202) 296-8700
lvanderschaaf@brinksgilson.com
echristou@brinksgilson.com
fhu@brinksgilson.com
Appearance *pro hac vice*

Harold V. Johnson (IL Bar No. 6188149)
Judy K. He (IL Bar No. 6327020)
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Drive, Suite 3600
Chicago, IL 60611
Telephone: (312) 321-4200
hjohnson@brinksgilson.com
jhe@brinksgilson.com
Appearance *pro hac vice*

*Attorneys for Defendant*
Fujian Jinhua Integrated Circuit Co., Ltd.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICRON TECHNOLOGY, INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>UNITED MICROELECTRONICS CORPORATION, FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD., and DOES 1-10,<br><br>                    Defendants. | Case No. 3:17-cv-6932-MMC<br><br>**DEFENDANT FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM AND FORUM NON CONVENIENS**<br><br>Judge: Honorable Maxine M. Chesney<br>Courtroom: 7, 19th Floor<br>(Proposed) Hearing Date: April 19, 2019<br>(Proposed) Hearing Time: 9:00 am PCT |

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on April 19, 2019 at 9:00 am, or as soon thereafter as the matter may be heard before the Honorable Maxine M. Chesney, United States District Court Judge, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 7, 19th Floor, Defendant Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua") will and hereby does move to dismiss the First Amended Complaint ("FAC") filed on February 8, 2019 by Plaintiff Micron Technology, Inc. ("Micron"), pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(2) for lack of personal jurisdiction, FRCP 12(b)(6) for failure to state a claim, and *forum non conveniens*.  For the reasons set forth below, Jinhua respectfully requests this Court to dismiss the FAC for lack of personal jurisdiction, failure to state a claim, and *forum non conveniens* with prejudice.

This motion is based on this notice of motion, and the following memorandum of points and authorities, the exhibits and declarations filed herewith, all pleadings and papers filed herein, and any argument of counsel or other matter as the Court may allow.

Respectfully submitted,

DATED: March 14, 2019

DAN JOHNSON LAW GROUP LLP
BRINKS GILSON & LIONE

By: _/s/ Daniel Johnson Jr._

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

1

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ - 1 -

II.     LEGAL STANDARDS...................................................................................... - 2 -

     A.      PERSONAL JURISDICTION………………………………………….- 2 -

     B.      FAILURE TO STATE A CLAIM…………………………………...- 3 -

     C.      FORUM NON CONVENIENS………………………………………...- 3 -

III.    ARGUMENT ..................................................................................................... - 4 -

     A.      LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2) AND 4(k)(2))……….- 4 -

         1.      Jinhua Has No Contacts With California To Support General
             Jurisdiction ................................................................................ - 4 -

         2.      Jinhua Has No Contacts With California To Support Specific
             Jurisdiction ................................................................................ - 4 -

         3.      Jurisdiction Is Not Proper Under FRCP 4(k)(2) ........................................ - 9 -

     B.      FAILURE TO STATE A CLAIM (FRCP 12(b)(6))……………………………..- 11 -

         1.      Micron's FAC Falls Far Short Of Pleading Conspiracy .......................... - 11 -

         2.      Micron's FAC Impermissibly Lumps Jinhua With UMC........................ - 12 -

         3.      Micron's FAC Is A Classic Example Of "Shotgun Pleading".................. - 14 -

         4.      Micron Cannot Show How Jinhua Was Specifically Involved In
             Any Alleged Misappropriation Under Either DTSA Or CUTSA............. - 14 -

         5.      Micron's Defective RICO Claims Cannot Be Cured................................ - 15 -

     C.      THIS COURT SHOULD DISMISS THE ACTION ON
         GROUNDS OF FORUM NON CONVENIENS……..……………………- 16 -

         1.      Taiwan Is An Adequate Alternative Forum ............................................. - 17 -

         2.      The Private Interest Factors Favor Taiwan As An Alternative
             Forum ....................................................................................... - 18 -

         3.      The Public Interest Factors Favor Taiwan As An Alternative
             Forum ....................................................................................... - 22 -

IV.     CONCLUSION................................................................................................. - 25 -

1

## TABLE OF AUTHORITIES

2 **Cases**

3 *American Dredging Co. v. Miller*,

     510 U.S. 443 (1994)…………………………………………………………3, 17

4 *Appalachian Ins. Co. v. Superior Court*,

5      208 Cal. Rptr. 627 (Cal. Ct. App. 1984)…………………………..…..…………20

6 *Ashcroft v. Iqbal*,

7      556 U.S. 662 (2009)…………………………………………………………3, 12

8 *Associated General Contractors v. Cal. State Council of Carpenters*,

9      459 U.S. 519 (1983)……………………………………………………………..3

10 *Avago Techn. U.S. Inc. v. Nanoprecision Prods., Inc.*,

     2017 WL 412524 (N.D. Cal. Jan. 1, 2017)……………………………………11

11 *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,

12      874 F.3d 1064, (9th Cir. 2017)…………………………………………………10

13 *Ballard v. Savage*,

14      65 F.3d 1495 (9th Cir. 1995)……………………………………………..………7

15 *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,

16      223 F.3d 1082 (9th Cir. 2000)…………………………………………….…..….5

17 *In re Bell*,

18      122 P.2d 22 (Cal. 1942)…………......………………………......………………13

19 *Bell Atl. Corp. v. Twombly*,

20      550 U.S. 544 (2007)…………….…..………………………….………….....3, 12

21 *Boschetto v. Hansing*,

     539 F.3d 1011 (9th Cir. 2008)…………………………………………………..2

22 *Butcher's Union Local No. 498 v. SDC Investment, Inc.*,

23      788 F.2d 535 (9th Cir. 1986)…………………………………….…..…...8

24 *Byrne v. Nezhat*,

25      261 F.3d 1075 (11th Cir. 2001)……………………………………….……14

26 *Carijano v. Occidental Petroleum Corp.*,

     643 F.3d 1216 (9th Cir. 2011)………………….…………….......……………20

27 *Cave Consulting Gp., Inc. v. Truven Health Analytics Inc.*,

28      2017 U.S. Dist. LEXIS 62109 (N.D. Cal. Apr. 24, 2017)……………......…………15

*Champion Courage Ltd. v. Fighter's Market, Inc.*,

    2018 U.S. Dist. LEXIS 69043 (S.D. Cal. Apr. 24, 2018)…………….......…………….. ..15

*Chaset v. Fleer/Skybox Int'l, LP*,

    300 F.3d 1083 (9th Cir. 2002)…………….......…… ………………………………..…16

*Cisneros v. Instant Capital Funding Grp., Inc.*,

    263 F.R.D. 595 (E.D. Cal. 2009)………… …………………………………..…10

*Core-Vent Corp. v. Nobel Indus.*,

    11 F.3d 1482 (9th Cir. 1993)…………….......……………………….......…………9

*Daimler AG v. Bauman*,

    571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)…………….......……………..…2

*De Leon v. KBR, Inc.*,

    2012 U.S. Dist. LEXIS 64738 (D. Haw. May 8, 2012)…………….......…………………..6

*Destfino v. Kennedy*,

    2009 U.S. Dist. LEXIS 18138 (E.D. Cal. Jan. 7, 2009)…………….......………….……14

*Dole Food Co. Inc., v. Watts*,

    303 F.3d 1104 (9th Cir. 2002)…………….......………….......…………’a…………17

*Galderma Labs., L.P. v. Teva Pharms. U.S., Inc.*,

    290 F. Supp. 3d 599 (N.D. Tex. 2017)…………….......……………………….....…12-13

*Good Earth Lighting, Inc. v. New Chao Fend Indus. Co.*,

    1999 U.S. Dist. LEXIS 1126 (N.D. Ill. Feb. 3, 1999)…………….......………….……18

*Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*

    284 F.3d 1114, 1125-26 (9th Cir. 2002)……………………………………….……9

*Gulf Oil Corp. v. Gilbert*,

    330 U.S. 501 (1947) …………….......…………………………….......……….…4, 19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,

    466 U.S. 408, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984).…………….......………….…..4

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,

    485 F.3d 450 (9th Cir. 2007)……………………….......………….......……….9, 24

*L.A. Gem & Jewelry Design, Inc. v. An & Assocs. Co.*,

    2017 U.S. Dist. LEXIS 201918 (C.D. Cal. Dec. 6, 2017)…………….......……..…….10

*Lockman Foundation v. Evangelical Alliance Mission*,

    930 F.2d 764 (9th Cir. 1991)…………….......………………….......………………18

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
    583 F.3d 656 (9th Cir. 2009)…………….......………………………….……17

Lueck v. Sundstrand Corp.,
236 F.3d 1137 (9th Cir. 2001)………………………………………….....3, 17, 19

*Maatuk v. Emerson Electric, Inc.*,
    2016 WL 10100271 (N.D. Cal. Nov. 21, 2016)………………………..…………….2

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
    858 F.2d 509 (9th Cir. 1988)………………………………………..……………24

*Mattel, Inc. v. MGA Ent't Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2010)…………………………………..……….16

*MedioStream, Inc. v. Microsoft Corp.*,
    869 F. Supp. 2d 1095 (N.D. Cal. 2012)…………………………………….……14

*Menken v. Emm*,
    503 F.3d 1050, 1058 (9th Cir. 2007)……………………………………......7, 11

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.*,
    2007 U.S. Dist. LEXIS 59946 (N.D. Cal. Aug. 9, 2007)………………………………12, 14

*Mocha Mill v. Port of Mokha*,
    2019 U.S. Dist. LEXIS 35218 (N.D. Cal. March 5, 2019)…………………………….10

*Monolithic Power Sys. v. O2 Micro Int'l Ltd.*,
    2006 U.S. Dist. LEXIS 74340 (N.D. Cal. Oct. 3, 2006)…………………………….17, 18

Morrill v. Scott Fin. Corp.,
873 F.3d 1136 (9th Cir. 2017)…………………………………………...…….5

*Nat'l Football League v. Fireman's Fund Ins. Co.*,
    157 Cal. Rptr. 3d 318 (Cal. Ct. App. 2013)……………………………………… …..19

*Panavision, Intern., L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir.1998)……………………………………………………10

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006)………………………………………….……..2

*Physician's Surrogacy, Inc. v. German*,
    2018 U.S. Dist. LEXIS 16261 (S.D. Cal. Jan. 31, 2018) …………………………….13

*Pillsbury, Madison & Sutro v. Lerner*,
    31 F.3d 924 (9th Cir. 1994)……………………………………………………16

Piper Aircraft Co. v. Reyno,
454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2d. 419 (1981)………………………………...3, 4

*Primarch Mfg., Inc. v. At Large Nutrition LLC,*

    2014 WL 585632 (S.D. Cal. Feb. 14, 2014……………………………………..………9

    Rio Props. v. Rio Int'l Interlink,
    284 F.3d 1007 (9th Cir. 2002)……………………………………………………..6

*Robertson v. Dean Witter Reynolds Co.,*

    749 F. 2d 530 (9th Cir. 1984)..…………………………………………………11

*Rupert v. Bond,*

    2013 WL 5272462 (N.D. Cal. Sept. 2013)………………………………….....7, 11

*Sanford v. MemberWorks, Inc.,*

    625 F.3d 550 (9th Cir. 2010)……………………………………………………16

*Schwarzenegger v. Fred Martin Motor Co.,*

    374 F.3d 797 (9th Cir. 2004)..……………………………………………...3, 7

*SEC v. Fraser,*

    2010 U.S. Dist. LEXIS 7038 (D. Ariz. Jan. 28, 2010)………………………….….14

*Shu v. Wang,*

    2016 U.S. Dist. LEXIS 143222 (D.N.J. Oct. 17, 2016) ……………………………18

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,*

    549 U.S. 422 (2007)..……………………………………………………………3

*Space Data Corp. v. X,*

    U.S. Dist. LEXIS 22571 (N.D. Cal. Feb. 16, 2017)………………………..…………15

*Stangvik v. Shiley, Inc.,*

    819 P.2d 14 (Cal. 1991)..…………………………………………………..3, 17, 25

*Stereoscope, LLC v. U.S. Bank N.A.,*

    675 Fed. Appx. 725 (9th Cir. 2017)……………………………………………3

*Toyota Motor Corp. v. Superior Court,*

    130 Cal. Rptr. 3d 131 (Cal. Ct. App. 2011)……………………………………21

*Ultratech, Inc. v. Ensure Nanotech (Beijing), Inc.,*

    108 F. Supp. 3d 816 (N.D. Cal. June 5, 2015) …………………………….....24

*VIA Techs., Inc. v. ASUS Computer Int'l,*

    2015 U.S. Dist. LEXIS 80124 (N.D. Cal. June 18, 2015)……………………….......18

*Yi-Zarn Wang v. Medical Ctr.-Kenner, LLC,*

    2017 U.S. Dist. LEXIS 201571 (E.D. La. Dec. 7, 2017). …………………………12

**Statutes**

18 U.S.C. § 1831 *et seq*. ("EEA")…..………………..…………………………….....…16

18 U.S.C. § 1962(c)………………………………………………………………....1, 16

18 U.S.C. § 1962(d)………………………………………………………………....1, 16

Cal. Civ. Proc. Code § 410.10………………………………………………………2

**Rules**

Fed. R. Civ. P. 4(k)(2)……………………………………..………..……………...…9, 10

Fed. R. Civ. P. 8……..…………………………………..…..……………….......13

Fed. R. Civ. P. 9(b)………………………………………..…..……………………3, 14

Fed. R. Civ. P. 12(b)(2)………………………………………………..……….…2, 4

Fed. R. Civ. P. 12(b)(6)……………………………………………………..…..*passim*

Fed. R. Civ. P. 26(a)(1)…………………………………………………………….19

**Other Secondary Sources**:

Victoria F. Maroulis, *China's Evolving IP Regime and Avenues of Enforcement,*

        2013 WL 4192387 (2013)……………………………………..……………………22

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On January 18, 2019, the Court dismissed Micron Technology, Inc.'s ("Micron") initial Complaint (alleging violations of the Defend Trade Secrets Act ("DTSA"), §§ 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the California Uniform Trade Secrets Act ("CUTSA")) for lack of personal jurisdiction over Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua"). D.E. 139. At the same time, the Court granted leave for Micron to amend. *Id.* On February 8, 2019, Micron filed a First Amended Complaint ("FAC") alleging the same claims against Jinhua, but with the addition of a few "magic words." D.E. 140-4. Micron's FAC contains the same conclusory assertions as its initial Complaint and fails to provide sufficient facts to establish this Court's jurisdiction over Jinhua.

This Court has neither general nor specific jurisdiction over Jinhua because it is a state-owned enterprise located in Mainland China that does not have any general contacts with California, much less anywhere else in the United States. Likewise, Jinhua has no specific contacts with California that give rise to or further any of the misappropriation allegations. Micron's sole argument is limited to one standalone trip in October 2016 by two Jinhua representatives to California to attend the Chinese American Semiconductor Professional Association ("CASPA") event and to visit certain semiconductor equipment vendors. Micron never shows how or why these isolated events give rise to, or further any, of its misappropriation claims, thereby failing for the second time now to demonstrate how the CASPA event or vendor visits establish personal jurisdiction over Jinhua.

Micron's FAC also fails to state a claim upon which relief can be granted. Micron's claims stem from three statutes –DTSA, RICO, and CUTSA – however, Micron lumps all of its arguments and claims against UMC and Jinhua together, making it effectively impossible for Jinhua to understand what claims are being asserted against it.[1] Micron ignores the fact that the DTSA was

---

[1] Micron also names Does 1-10 as Defendants ("Doe Defendants") but never states how any of them were involved in any way with the alleged acts other than a blanket statement that their "act and omissions . . . were performed within the course and scope of that agency, conspiracy, aiding, or abetting." This is a classic example of a conclusory allegation.

made effective on May 11, 2016, after the alleged event in question, and does not apply retroactively. Moreover, the alleged event occurred outside California, and CUTSA does not apply extraterritorially. Micron also fails to state a RICO claim inasmuch as it attempts to merely substitute the *magic words*, "in furtherance of," for specific facts concerning Jinhua that establish a conspiracy, as required for RICO claims.

Finally, Micron's FAC against Jinhua should be dismissed for *forum non conveniens*. In addition to the facts demonstrating Jinhua's complete lack of contacts with California, it would be significantly burdensome for Jinhua to defend this action here. California has no interest in the dispute because Micron is a Delaware corporation based in Idaho and Jinhua is a non-US entity based in China. The only facts alleged in the FAC against Jinhua involve the vaguely worded and amorphous conspiracy. Most, if not all, of the witnesses that would be pertinent to proving or disproving any conspiracy involving Jinhua would be in Taiwan (or are Jinhua employees in Mainland China), as are most, if not all, of the relevant documents. Unlike the courts in California, the courts in Taiwan would be able to compel the appearance of the many third-party witnesses located in Taiwan who might provide relevant testimony. Furthermore, Taiwan has a greater interest in adjudicating this dispute in light of the ongoing criminal investigation involving the same parties and issues there. There is simply no benefit to having this matter adjudicated in California where none of the acts of the alleged conspiracy involving Jinhua took place.

## II.   LEGAL STANDARDS

### A.   PERSONAL JURISDICTION

On a motion under Rule 12(b)(2), "the plaintiff bears the burden of establishing that jurisdiction is proper." *Maatuk v. Emerson Electric, Inc.*, 2016 WL 10100271, at *3 (N.D. Cal. Nov. 21, 2016) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Courts exercise personal jurisdiction over a defendant "if it is permitted by a long-arm statute and if the exercise of jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). In California, a court "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10; *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 753, 187 L. Ed. 2d 624 (2014) ("California's long-arm

statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution."). As such, "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 801 (9th Cir. 2004).

### B.   FAILURE TO STATE A CLAIM

To survive a FRCP 12(b)(6) motion to dismiss, a complaint must at least allege sufficient facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Stereoscope, LLC v. U.S. Bank N.A.*, 675 Fed. Appx. 725, 726 (9th Cir. 2017) ("Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."). Any allegations involving fraud are scrutinized under a heightened pleading standard and must be "state[d] with particularity." FRCP 9(b). Allegations that are "mere conclusions" "are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 664. It is further improper "to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the [] laws in ways that have not been alleged." *Associated General Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### C.   FORUM NON CONVENIENS

The doctrine of *forum non conveniens* invokes the court's discretionary power to decline to exercise jurisdiction when the action is more appropriately and justly tried elsewhere. *American Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001); *Stangvik v. Shiley, Inc.*, 819 P.2d 14, 17 (Cal. 1991). This common law doctrine applies in federal courts when the alternative forum is abroad. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). In general, the defendant invoking *forum non conveniens* bears the burden in opposing the plaintiff's chosen forum, but when the choice is not the plaintiff's home forum, "the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'" *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56, 102 S. Ct. 252, 70 L. Ed. 2d. 419 (1981)). The Supreme Court "provided a list of 'private interest factors' affecting the convenience of the

litigants, and a list of 'public interest factors' affecting the convenience of the forum." *Piper Aircraft*, 454 U.S. at 241 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)).

## III.   ARGUMENT

### A.   LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2) AND 4(k)(2))

#### 1.   Jinhua Has No Contacts With California To Support General Jurisdiction

General jurisdiction is satisfied if a defendant's contacts with a state are "substantial" or "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984). Here, just as in the initial Complaint, Micron only alleges that this Court has specific jurisdiction over Jinhua. FAC, ¶ 22. This Court agrees. D.E. 139, p. 3, lns. 20-21 ("Personal jurisdiction may be 'general' or 'specific.' . . . Here, Micron alleges the Court has specific jurisdiction over Jinhua.") (citations omitted). Just as it argued in its Motion to Dismiss Micron's initial Complaint, Jinhua does not have any general contacts with California, much less anywhere else in the United States. [2] Given these facts, Jinhua does not possess the requisite continuous and systematic general business contacts for it to be considered "essentially at home" in California as required for this Court to exercise general personal jurisdiction over Jinhua.

#### 2.   Jinhua Has No Contacts With California To Support Specific Jurisdiction

Specific jurisdiction is satisfied if "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed [itself] of the

---

[2] Jinhua is a limited liability corporation in Mainland China. (Declaration of Jinfu Zheng filed herewith ("Zheng Decl."), ¶ 3) with a principal place of business in Quanzhou City, Fujian Province, China (*Id*., ¶¶ 4, 5); Jinhua has not actively or constructively been licensed to do business in California or anywhere in the United States. (*Id*., ¶ 6); Jinhua does not have a registered agent authorized to accept service on its behalf, in California, or anywhere in the United States ( *Id*., ¶ 7); Jinhua does not make, sell, import, market or promote any product in California or anywhere in the United States (*Id*., ¶ 8); Jinhua does not own, rent, lease, possess, or control any assets, real or personal in California. (*Id*., ¶ 9); Jinhua does not maintain any bank accounts in California or anywhere in the United States and does not pay taxes in California or anywhere in the United States. (*Id*., ¶¶ 10, 16); Jinhua maintains no employees, officers, directors, or representatives in California or anywhere in the United States (*Id*., ¶ 11); Jinhua maintains no manufacturing or sales facilities in California or anywhere in the United States (*Id*., ¶ 12); Jinhua does not have any shareholders or members residing in California (*Id*., ¶ 13); Jinhua does not maintain a physical address, mailing addresses, telephone numbers or fax numbers in California or anywhere in the United States. (*Id*., ¶ 14).

privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000). Most of the narrative in the initial Complaint concerned one trip to California in October 2016 where a few Jinhua employees merely attended at a job fair hosted by CASPA in Santa Clara, posted a job opening on the CASPA website and visited with semiconductor vendors. FAC, ¶¶ 4, 24, 80. The heart of this narrative remains unchanged in the FAC and equally fails to satisfy the requirements necessary to establish specific jurisdiction in this case. Jinhua's single trip to California in October 2016 is insufficient to establish specific personal jurisdiction. As the Court already held, these alleged contacts do not establish personal jurisdiction over Jinhua, because "Micron has not based any of its claims on those activities." D.E. 139, at 4-5. Rather, these activities are merely efforts to lay the groundwork for Jinhua's eventual launch of its DRAM manufacturing program and is fully consistent with Jinhua's belief that UMC's DRAM technology would be lawfully developed pursuant to the Cooperation Agreement.

### i.   Purposeful Direction

Because Plaintiff's claims sound in tort, the purposeful direction analysis applies, which requires the intentional commission of an act by the defendant that is "expressly aimed at the forum state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). The expressly aimed requirement is satisfied when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters*, 223 F.3d at 1087 (2000). Just as in the initial Complaint, the FAC does not allege any facts to support an inference that Jinhua targeted acts toward Micron by traveling to California in 2016 to attend the CASPA job fair or visit with semiconductor vendors.

As a threshold matter, Micron is not a resident of California – rather, it is a resident of Idaho, Micron's domicile. FAC, ¶ 62. For this reason, to the extent Jinhua engaged in any alleged conspiracy-related conduct, it was not targeted at Micron in California. With respect to the CASPA job fair, Jinhua's attendance was generally focused on attracting Chinese graduates in the United States – not graduates specifically in California. Zheng Decl., ¶ 22. Moreover, the CASPA job fair,

was a one-time event, with only two representatives from Jinhua in attendance. *Id.*, ¶ 24. With respect to the job posting that Jinhua made on the CASPA website, Micron presents no evidence that the website was specifically directed to California and its residents, nor can it. Jinhua's job posting on the CASPA website, which is accessible nationwide, does not establish that Jinhua was specifically seeking potential hires from California. *Rio Props. v. Rio Int'l Interlink,* 284 F.3d 1007, 1020 (9th Cir. 2002) (noting that to establish specific jurisdiction based on internet contacts, plaintiff must show that the "objectionable webpage" was aimed intentionally at the forum state); *De Leon v. KBR, Inc.*, 2012 U.S. Dist. LEXIS 64738, at *27 (D. Haw. May 8, 2012) (a recruiting website that was available to any and all people located nationwide and throughout the world was not enough for specific personal jurisdiction over the defendant without more). Micron does not allege or even explain how any of this activity at CASPA constituted, gave rise to or was in furtherance of the allegations directed to Jinhua in the complaint -- engaging in an alleged conspiracy relevant to the alleged trade secret misappropriation. Ultimately, the allegations in the FAC establish only that Defendants made an unsuccessful, inconsequential attempt at a preliminary step towards Jinhua's planned DRAM production under the Cooperation Agreement.

Micron also places great emphasis on presentation slides at the CASPA job fair that referred to two DRAM products as "F32" and "F32S," which Micron alleges were the "exact internal codenames of DRAM products developed and designed by Elpida (later acquired and owned by Micron). . . ." FAC, ¶ 81. However, Micron does not even explain how this activity at CASPA relates to the allegations directed to Jinhua in the FAC regarding Jinhua engaging in an alleged conspiracy relevant to the alleged trade secret misappropriation. Micron also does not allege that those codes constituted trade secrets or that they were allegedly misappropriated by Jinhua. *Id.* In fact, the codes are not among the trade secrets that Micron has identified in its FAC. FAC, ¶ 73.

As with the job fair, the FAC does not allege that either UMC or Jinhua disclosed any of Micron's trade secrets to these semiconductor vendors. FAC ¶¶ 37-46, 83-84. Nor does Micron articulate any harm caused by these visits. As the FAC alleges, "these vendors make and sell equipment used for the manufacture of DRAM." *Id.* ¶ 38. The FAC does not allege, for example, that any exclusivity arrangement with these vendors violated by any subsequent purchase orders, or

1
2
3

that these vendors' products are uniquely suitable for Micron's DRAM technology—as opposed to that of any other DRAM manufacturer. Nor does the FAC allege that these visits permitted Jinhua to complete its DRAM program or compete unfairly with Micron.

4

ii.    Claim(s) Arising From Defendants' Forum Related Activities

5
6
7
8
9
10
11
12

Micron also failed to show the second prong of the specific direction test is met, which is whether the claim or claims arise out of the defendants' forum-related activities. *Schwarzenegger*, 374 F.3d at 802. To determine whether the defendant's forum-related contacts arise from or relate to the cause of action, the Ninth Circuit uses a but-for test. *Rupert v. Bond*, 2013 WL 5272462, at * 16 (N.D. Cal. Sept. 2013) (quoting *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007)). The but-for test is: but-for the defendant's contacts with the forum state, would the claims against the defendant have arisen? *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). To satisfy this prong, Micron must demonstrate that it would not have suffered an injury but for Jinhua's forum-related conduct.

13
14
15
16
17
18
19
20
21
22
23
24

Here, Micron has failed to show it would not have suffered any injury "but for" Jinhua's attendance at the CASPA job fair or the visits to the semiconductor vendors, and cannot support its jurisdictional grounds or its substantive claims. With respect to the CASPA job fair, Micron did not suffer any injury arising out of Jinhua's attendance at the CASPA job fair because Micron employees were not the target of Jinhua's job efforts there, no Micron employees applied for jobs at Jinhua at the event and no Micron employees were hired as a result of the event. Zheng Decl., ¶¶ 22, 25, 27. Micron makes only conclusory allegations in its FAC that the acts of misappropriation were "encouraged and directed by UMC, Chen and Jinhua" and that "the Co-Conspirators knew or expected that some or all of their recruits would come from Micron." FAC, ¶¶ 79, 80. Moreover, Stephen Chen, was acting on behalf of UMC at the CASPA event, not Jinhua,[3] and did not speak to any Micron employees at the job fair, and received no inquiries from Micron employees in response to the job fair. *Id.*, ¶ 30. Micron's conclusory allegations and use of "magic words" asserting that

25
26
27

[3] To the extent Micron alleges facts other than those related to the CASPA job fair in support of its claim that specific jurisdiction is appropriate in this case, these facts are not applicable to Jinhua. Micron's allegations concerning other employees at CASPA (FAC, ¶ 52), are not applicable to Jinhua because they were employees of UMC, not Jinhua. Zheng Decl., ¶ 19.

28

1  "by seeking to recruit employees in the United States to assist in producing products that
2  incorporate Micron's trade secrets, UMC and Jinhua each engaged in acts in furtherance of
3  misappropriation of Micron's trade secrets," (FAC, ¶ 36) without more, fails to supply facts that
4  support personal jurisdiction. Lastly, to the extent Micron adds new facts in the FAC, such as that
5  Jinhua "shipped posters to UMC's San Francisco office for use at the recruiting event," Micron has
6  not shown that it suffered an injury as a result of this mailing. This is unrelated to Micron's
7  conspiracy, trade secret misappropriation and RICO claims against Jinhua. FAC, ¶ 26.

8       Micron's amendments to its facts concerning Jinhua's visits to semiconductor vendors in
9  California also continue to fail to support personal jurisdiction. The argument that the purchase of
10  equipment is "in furtherance of misappropriation of Micron's trade secrets" is without support and
11  too attenuated (FAC, ¶ 46) as the visits have no relation to the claims of conspiracy or actual trade
12  secret misappropriation, and Micron points to no trade secrets discussed or disclosed at the visits, no
13  trade secrets that Jinhua used at the visits and no trade secrets from which the vendor visits spring.
14  The FAC does not allege, for example, that any exclusivity arrangement with these vendors violated
15  by any subsequent purchase orders, or that these vendors' products are uniquely suitable for
16  Micron's DRAM technology—as opposed to that of any other DRAM manufacturer. Nor does the
17  FAC allege that these visits permitted Jinhua to complete its DRAM program or compete unfairly
18  with Micron. Moreover, Micron's amendments to the complaint continue to fail to assert that the
19  alleged trade secret misappropriation, or conspiracy thereof, arose out of Jinhua's visits to the
20  vendors. *See, e.g.*, FAC, ¶ 38 (amending the complaint to add that Jinhua "had dinner with people
21  from Allied Materials"). Without providing additional detail how the alleged misappropriation and
22  conspiracy arising out of the purported acts, the FAC fails to add necessary detail missing from the
23  initial complaint. *See Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 540
24  (9th Cir. 1986) (nonspecific conclusory statements insufficient to show minimum contacts giving
25  rise to the RICO claim or contacts making defendants liable in California for out-of-state activities).

26                          **iii.    Jurisdiction Is Neither Reasonable Nor Fair**

27       Even if the Court were to find that the FAC satisfies the "purposefully directed" and "but
28  for" requirements, it should still decide that jurisdiction is not reasonable or fair. To determine

whether the exercise of jurisdiction over a nonresident defendant comports with fair play and substantial justice, the Ninth Circuit considers seven factors: (1) the extent of defendant's purposeful interjection into the forum state; (2) the burden on defendant of defending in the forum; (3) the extent of conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the suit; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See Core-Vent Corp. v. Nobel Indus.,* 11 F.3d 1482, 1487-88 (9th Cir. 1993). These factors weigh against exercising personal jurisdiction because it would not be reasonable.

The first factor favors Jinhua because, as discussed above, its contacts with California do not amount to "purposeful interjection" and it has not sought the protection of California's laws. The second factor is substantial because it would require each of Jinhua's representatives and employees to travel six-thousand (6,000) miles from China to the United States to litigate claims that do not arise here. All Jinhua employees reside outside of the United States in Mainland China. *Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co*., 284 F.3d 1114, 1125-26 (9th Cir. 2002) (personal jurisdiction unreasonable where, inter alia, defendant's potential witnesses and evidence were outside the U.S.). The remaining "reasonableness" factors weigh against jurisdiction for the same reasons warranting dismissal for forum non conveniens. *See infra* Section C. California has a *de minimis* interest in adjudicating a dispute accusing two foreign defendants of misappropriating trade secrets from Micron's Taiwanese affiliate through a judgment unenforceable against Jinhua. *See Primarch Mfg., Inc. v. At Large Nutrition LLC*, 2014 WL 585632, at *1 (S.D. Cal. Feb. 14, 2014) (personal jurisdiction over foreign defendant unreasonable given lack of forum contacts).

### 3.      Jurisdiction Is Not Proper Under FRCP 4(k)(2)

FRCP 4(k)(2) rarely applies and has been approved to confer jurisdiction only when defendants have extensive contacts with the United States. *Holland Am. Line, Inc. v. Wartsila N. Am., Inc*., 485 F.3d 450, 462 (9th Cir. 2007) ("[I]n the fourteen years since Rule 4(k)(2) was enacted, none of our cases has countenanced jurisdiction under the rule."). First, Micron notably

cites to various UMC/Jinhua patent filings,[4] but dances around the only relevant inquiry to a FRCP 4(k)(2) analysis: whether Jinhua has significant "nationwide contacts – as a whole – [to] merit" the exercise of personal jurisdiction in any district of the United States. *Mocha Mill v. Port of Mokha*, 2019 U.S. Dist. LEXIS 35218, at *19-20 (N.D. Cal. March 5, 2019). Indeed, Micron's argument would subject any foreign patent owner to personal jurisdiction in any district of the United States. Moreover, to the extent there are any contacts based on the UMC/Jinhua Patent Filings, the Court already addressed this issue and found that none of Micron's claims are based "on those activities, and, consequently, any such contacts cannot support a finding of specific jurisdiction here." D.E. 139. Second, Micron's "bare assertion[] that [Jinhua] must have been involved" in this "conspiracy" is no more than a red herring. *See id.* at *17. Tellingly, Micron fails to allege any facts identifying "specific misconduct on the part of" Jinhua.[5] *See id.* at *16-17; *see also Cisneros v. Instant Capital Funding Grp., Inc.*, 263 F.R.D. 595, 606-07 (E.D. Cal. 2009) (finding that Plaintiffs must "differentiate their allegations when suing more than one defendant").

Third, nowhere in the FAC does Micron state that its claims "arise" from the UMC/Jinhua Patent Filings (because no facts support such an allegation). This omission is fatal because "[t]he Ninth Circuit has adopted a 'but for' test when assessing whether an action arises out of a defendant's contacts with the forum state." *L.A. Gem & Jewelry Design, Inc. v. An & Assocs. Co.*, 2017 U.S. Dist. LEXIS 201918, at *15-16 (C.D. Cal. Dec. 6, 2017) (citing *Panavision, Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir.1998)). In fact, the FAC cites to several other alleged acts, such as a "conspir[acy] to induce former [Micron] employees to misappropriate electronic and

---

[4] To the extent Micron argues that the UMC/Jinhua Patent Filings provide an alternative basis for jurisdiction under Rule 4(k)(2), the Court was faced with this same issue in the initial Complaint and found that (1) "Micron has not based any of its claims on those activities, and, consequently, any such contacts cannot support a finding of specific jurisdiction here"; and (2) leave to amend was granted because "it appear[ed] [that] Micron may be able to plead facts to support its conclusory assertion that *Jinhua's recruitment efforts in the United States were in furtherance of one or more acts of misappropriation*," i.e., not to re-litigate the Patent Filings. D.E. 139.

[5] Indeed, Micron never exactly states what role Jinhua had with the patent prosecution process, thereby undermining its position that Jinhua was actually involved. In fact, the FAC does not even show that Jinhua purposefully directed its patent application activity at the United States because it does not adequately allege facts demonstrating (1) that Jinhua's patent filings caused any injury to Micron, and (2) that Jinhua **knew** that its actions were likely to cause harm. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-69 (9th Cir. 2017).

paper files" in ¶ 3.b and "recruit[ment] [of] employees in the United States to assist in producing products that incorporate Micron's trade secrets" in ¶ 36. By even citing to these events that may "relate or give rise to" Micron's claims, Micron engages in a hit-or-miss tactic that blatantly contradicts its own position that any of those events – including the Patent Filings – are "but for" causes of its claims.

Moreover, the FAC fails to plead facts demonstrating that the alleged misappropriation or conspiracy arise out of or relate to Jinhua's patent filings, i.e., that Micron "would not have suffered an injury '**but for**' [Jinhua's] forum-related conduct." *See Rupert v. Bond*, 2013 WL 5272462, at * 16 (N.D. Cal. Sept. 2013) (quoting *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007)). None of the FAC's causes of actions refers to Jinhua's patent filings, at least not expressly. Nor does that FAC even assert, much less demonstrate, that Micron would have suffered no injury "but for" Jinhua's alleged activities. Micron alleges no harm, or claim arising from the patent filings. While actual public disclosure of Micron's trade secrets in the patent applications would certainly constitute harm, Micron does not allege such no fact. Indeed, the FAC's request for injunctive relief against *further* use or disclosures of Micron's trade secrets is inconsistent with any claim that such trade secrets have already been publicly disclosed. *See, e.g.*, *Avago Techn. U.S. Inc. v. Nanoprecision Prods., Inc.*, 2017 WL 412524, at *28 (N.D. Cal. Jan. 1, 2017) (dismissing DTSA claim alleging that defendant had disclosed plaintiff's trade secrets in a patent application before DTSA's effective date, because "[o]nce the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished . . .").

## B.      FAILURE TO STATE A CLAIM (FRCP 12(b)(6))

Micron's FAC should be dismissed for failure to state a claim because it fails to set forth any facts to form "a cognizable legal theory" against Jinhua. *See Robertson v. Dean Witter Reynolds Co.*, 749 F. 2d 530, 534 (9th Cir. 1984).

### 1.      Micron's FAC Falls Far Short Of Pleading Conspiracy

Micron's baseless claim that Jinhua must have "conspired" with UMC is devoid of any factual support and fails to satisfy Micron's pleading requirements. A civil claim for conspiracy requires Micron to at least set forth sufficient facts demonstrating: (1) "the formation and operation

of a conspiracy"; (2) "wrongful conduct in furtherance of the conspiracy"; and (3) damages arising from the wrongful conduct." *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.*, 2007 U.S. Dist. LEXIS 59946, at *11-12 (N.D. Cal. Aug. 9, 2007).

Instead, Micron simply "scatters the allegations of formation of the conspiracy, wrongful conduct in furtherance of the conspiracy, and damages arising from the wrongful conduct throughout the FAC, and then simply alleges that [Jinhua] 'conspired with [UMC], to commit the'" allegedly wrongful acts in this case. *See id.* at *23-24. Micron's FAC is also internally inconsistent. For example, Micron alleges that "[s]ince at least the fall of 2015, UMC and the founders of Jinhua developed and set in motion a plan," but then apparently acknowledges that Jinhua was not "founded" until "early 2016." FAC, ¶¶ 3.a., 12.[6] At no time does Micron identify the so-called "founders of Jinhua," and Micron should not be allowed to "simply invoke legal tests in the abstract, or magic words, with no concrete facts" to satisfy its pleadings requirements. *Yi-Zarn Wang v. Medical Ctr.-Kenner, LLC*, 2017 U.S. Dist. LEXIS 201571, at *31 (E.D. La. Dec. 7, 2017).

### 2.   Micron's FAC Impermissibly Lumps Jinhua With UMC

Micron's FAC does not allege a single instance of specific misconduct that is attributable to Jinhua. Rather, Micron's FAC impermissibly lumps Jinhua with UMC to create a paper tiger that is no more than "a bare-bones conclusion" that "may simply have [been] copied [from] what they perceive to be 'magic words' . . . from other decisions without demonstrating how those allegations can support a claim . . . in this case." *Galderma Labs., L.P. v. Teva Pharms. U.S., Inc.*, 290 F. Supp. 3d 599, 617-18 (N.D. Tex. 2017); *see also Physician's Surrogacy, Inc. v. German*, 2018 U.S. Dist. LEXIS 16261, at *28 (S.D. Cal. Jan. 31, 2018) ("To state a claim under the DTSA, Plaintiff must more specifically connect allegations of misappropriation to specific Defendants' actions.").

Micron clearly does not have a cognizable claim against Jinhua since Jinhua's alleged "role" constantly changes throughout Micron's longwinded narrative. For example, FAC ¶ 67 states that

---

[6] Micron's FAC is plagued with additional inconsistencies, errors, and generalities that is confusing and in violation of the *Twombly/Iqbal* pleadings standards. *See, e.g., Bell Atl. Corp.*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." (internal citations omitted)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"*UMC and the founders of Jinhua* developed and set in motion a plan to . . . misappropriate Micron trade secrets" without articulating who the so-called "founders of Jinhua" are and any details of this "plan" or even how this "plan" was "developed and set in motion." (emphasis added). Likewise, FAC ¶ 74 generally alleges that "*Defendants* stole thousands of confidential Micron files" without indicating specifically what Jinhua did.[7] In other instances, as in FAC ¶¶ 77 and 80, Micron generally alleges that "*UMC and its Co-Conspirators* . . . incorporat[ed] the stolen Micron trade secrets" without identifying Jinhua at all, but then alleges in FAC ¶ 85 that "*UMC and Jinhua* also continued to work together" while only identifying Sandy Kuo, a UMC Project Manager, as the individual involved. Moreover, Micron broadly alleges in FAC ¶ 87 that "*UMC and Jinhua* rewarded the *individual Co-Conspirators* for their contributions to the illegal scheme" without supplying any support for the accusation. Although Micron uses many "magic words" in FAC ¶¶ 19 and 20, it fails entirely to define Jinhua's role in any conspiracy (*e.g.*, "Co-Conspirators . . . agent, conspirator, aider or abettor of UMC and/or Jinhua . . . within the course and scope of that agency, conspiracy, aiding or abetting . . . acting with one or more of the Co-Conspirators pursuant to a common scheme, course of action, enterprise, or conspiracy"). This is because Micron has nothing to show that Jinhua was involved in any bad acts, so it attempts to solve this problem by lumping Jinhua with UMC employees. Micron cannot claim that Jinhua is an agent, conspirator, co-conspirator, collaborator, defendant, aider, abettor, "and/or"[8] some other unidentified equivalent of UMC in this so-called "conspiracy" without providing the who, what, when, where, why, or how any of this was formed and setting forth the necessary facts showing how Jinhua was involved. On this basis alone Micron's FAC should be dismissed.

---

[7] As indicated above, Micron also names Does 1-10 as "Defendants," and Micron's haphazard use of "Defendants" in the FAC blurs the lines how each of the named parties – UMC, Jinhua, and Does 1-10 – were actually involved (if at all).

[8] Micron's use of "and/or" is itself reflective of its defective FAC. "The expression 'and/or' . . . had met with widespread condemnation" and "lends itself . . . as much to ambiguity as to brevity." *See In re Bell*, 122 P.2d 22, 29 (Cal. 1942) (internal citations omitted). It is well established that the phrase "and/or" "cannot intelligibly be used to fix the occurrence of past events." *Id.* Rather, "[a] purported conclusion that either one or both of two events occurred is a mere restatement of the problem, not a decision as to which event actually occurred." *Id.*

1

### 3.   Micron's FAC Is A Classic Example Of "Shotgun Pleading"

2

Allegations "incorporat[ing] each preceding paragraph, regardless of relevancy, are not

3

permitted." *Destfino v. Kennedy*, 2009 U.S. Dist. LEXIS 18138, at *14 (E.D. Cal. Jan. 7, 2009); *see*

4

*also SEC v. Fraser*, 2010 U.S. Dist. LEXIS 7038, at *29-30 (D. Ariz. Jan. 28, 2010) (holding that in

5

order for a complaint to be considered a shotgun pleading, it must incorporate 'all or nearly all' of

6

the previous allegations and 'make[] no attempt to lay out which conduct constitutes the violation

7

alleged.'). In fact, "[t]his practice has been harshly criticized as a form of 'shotgun pleading' that

8

violates FRCP 8's requirement of a 'short and plain statement' and interferes with the court's ability

9

to administer justice." *Id.* (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1129-30 (11th Cir. 2001)).

10

Here, the FAC is a classic example of shotgun pleading. Micron's claims stem from three

11

different statutes – the DTSA, RICO, and CUTSA – however, Micron fails to set forth the relevant

12

facts for any of them. Instead, Micron takes a shortcut and recites 35 "General Allegations" that

13

span over 18 pages without providing the slightest indication as to which facts relate to which

14

claims. Moreover, to the extent Micron's allegations touch on fraud (*e.g.*, ¶ 3.d. of the FAC), a

15

heightened pleading standard applies, and by lumping all of its allegations into "General

16

Allegations," Micron has made it effectively impossible to determine which allegations relate to

17

what claims and are subject to what standards. *See, e.g.*, *Mintel Learning Tech., Inc.*, 2007 U.S.

18

Dist. LEXIS 59946, at *30 ("claims that are 'grounded in fraud' or that 'sound in fraud' must

19

satisfy the particularity requirement of [FRCP] 9(b)"). It is burdensome, unreasonable, and

20

improper for Jinhua to have to decipher from the FAC what facts (if any) form the basis for each of

21

Micron's shortcut claims against Jinhua.

22

### 4.   Micron Cannot Show How Jinhua Was Specifically Involved In Any Alleged Misappropriation Under Either DTSA Or CUTSA

23

24

Micron's FAC does not allege that Jinhua acquired Micron's trade secrets, if at all, directly

25

from Micron. At most, Micron may be suggesting that Jinhua "***indirectly*** misappropriated trade

26

secrets by entering into [a] contract[]" with UMC to purchase technology based on Micron's trade

27

secrets. *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012)

28

(emphasis in original). However, even that fails.

1   To state a claim under DTSA or CUTSA, Micron must establish that: (a) Jinhua "acquired

2   the trade secret" from a third-party; (b) Jinhua "knew or had reason to know" that the information

3   was a trade secret "acquired . . . through improper means; and (c) either that (i) Micron was harmed

4   as a direct and proximate result of Jinhua's use or disclosure of the trade secret, or (ii) Jinhua

5   benefited from such use or disclosure. *Id.* at 1114; *see also Space Data Corp. v. X*, 2017 U.S. Dist.

6   LEXIS 22571, at *3 (N.D. Cal. Feb. 16, 2017). Here, Micron's FAC fails to allege a factual basis

7   for any of these three elements. First, Micron's FAC does not allege that UMC's DRAM technology

8   was ever completed or delivered to Jinhua. Second, Micron does not plead facts establishing that

9   Jinhua "knew or had reason to know" that the information at issue is allegedly a trade secret, let

10  alone the source of that information. Third, Micron's FAC alleges no injury to Micron, or benefit to

11  Jinhua, that was the "direct and proximate result" of Jinhua's "use or disclosure" of Micron's trade

12  secrets. *MedioStream*, at 1114.

13  Furthermore, the "DTSA only provides a cause of action for acts that occurred on or after

14  the date of its enactment—May 11, 2016." *Champion Courage Ltd. v. Fighter's Market, Inc.*, 2018

15  U.S. Dist. LEXIS 69043, at *12 (S.D. Cal. Apr. 24, 2018). CUTSA also does not apply

16  extraterritorially. *Cave Consulting Gp. v. Truven Health Analytics Inc.*, 2017 U.S. Dist. LEXIS

17  62109, at *18-19 (N.D. Cal. Apr. 24, 2017). Here, the event in question occurred outside California

18  and predates the DTSA. Micron has failed to allege facts showing that, after the DTSA's effective

19  date, Jinhua made a "use" or "disclosure" that was "new or somehow different" that would give rise

20  to the instant suit. *Id.* at *13. As such, Micron's DTSA and CUTSA claims should be dismissed.

21  ### 5.   Micron's Defective RICO Claims Cannot Be Cured

22  Section 1962(c) requires Micron to prove that Jinhua engaged in "(1) conduct (2) of an

23  enterprise (3) through a pattern (4) of racketeering activity," and, additionally, that Jinhua's acts

24  were the "but-for" cause of "concrete financial loss" to Micron. *Chaset v. Fleer/Skybox Int'l, LP*,

25  300 F.3d 1083, 1086 (9th Cir. 2002). Micron's FAC supports none of these elements.[9]

26

27  [9] For example, with respect to Micron's RICO claims, ¶ 120 of Micron's FAC simply defines "Enterprise" as "an association-in-fact enterprise" and states that the "Enterprise" as operated by

28  the Co-Conspirators includes UMC and Jinhua but is separate and distinct from either of them."

First, Micron fails to plead any predicate act against Jinhua. Micron relies solely on generally pled violations of the Economic Espionage Act ("EEA"), 18 U.S.C. § 1831 *et seq.*, as the supposed "predicate act" for its RICO claims, however, Micron's FAC does not even plead the elements of the EEA, let alone allege facts supporting any violations by Jinhua. Second, Micron cannot establish the requisite element of a "pattern of racketeering" cognizable under § 1962(c) given that Micron's FAC is devoid of any factual basis to infer Jinhua's commission of even a single predicate act, let alone two or more predicate acts. Third, Micron fails to articulate any "harm to a specific business or property interest" caused by Jinhua's post-enactment conduct. *See* FAC ¶ 134 (generically alleging "economic damages both domestically and abroad"), *id*. ¶ 118 (referring to unspecified "improper advantages, positions, and rights in the marketplace").[10] The mere loss of exclusive possession of a trade secret is insufficiently "tangible" to qualify as a RICO injury. *See, e.g.*, *Mattel, Inc. v. MGA Ent't Inc*., 782 F. Supp. 2d 911, 1020-21 (C.D. Cal. 2010) (neither loss of "exclusive use or confidentiality" of trade secrets or the "'competitive advantage' that sometimes flows from the deprivation of exclusive use" is sufficient for RICO injury).

With respect to Micron's § 1962(d) conspiracy RICO claim, Micron's failure to state a claim under § 1962(c) automatically requires dismissal. *See, e.g.*, *Sanford v. MemberWorks, Inc*., 625 F.3d 550, 559 (9th Cir. 2010) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO"). Accordingly, Micron's RICO claims should be dismissed.

## C.   THIS COURT SHOULD DISMISS THE ACTION ON GROUNDS OF *FORUM NON CONVENIENS*

Regardless of whether this Court finds personal jurisdiction over Jinhua, it should nevertheless dismiss this action against Jinhua based on the common law doctrine of *forum non conveniens* because an adequate alternative forum exists, in this case Taiwan, and the balancing of private and public interest weighs heavily in favor of dismissing this case. The doctrine of *forum*

---

[10] Nor can Micron establish "concrete financial losses" independent of UMC's acts of misappropriation. *See Chaset,* 300 F.3d at 1087; *Pillsbury, Madison & Sutro v. Lerner,* 31 F.3d 924, 929 (9th Cir. 1994) ("failure to adequately demonstrate that such loss resulted *directly* from the wrongful conduct of the defendants means its loss is too remote to be actionable under RICO").

1   *non conveniens* invokes the court's discretionary power to decline to exercise jurisdiction when the

2   action is more appropriately and justly tried elsewhere. *American Dredging Co.*, 510 U.S. at 447-

3   48; *Lueck*, 236 F.3d at 1143; *Stangvik*, 819 P.2d at 17. In exercising the discretion to decline

4   jurisdiction under *forum non conveniens*, the court examines: (1) whether an adequate alternative

5   forum exists, and (2) whether the balance of private and public interest factors favor dismissal. *Loya*

6   *v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664 (9th Cir. 2009); *Lueck*, 236 F.3d

7   at 1143.

8   **1.    Taiwan Is An Adequate Alternative Forum**

9           This Court has held Taiwan as an adequate alternative forum in the past. *See Monolithic*

10  *Power Sys. v. O2 Micro Int'l Ltd.*, 2006 U.S. Dist. LEXIS 74340, at *12-13 (N.D. Cal. Oct. 3,

11  2006). An adequate alternative forum exists when the defendant is amenable to service of process in

12  the alternative forum and when the alternative forum offers some practical remedy for the plaintiff's

13  complained wrong. *Dole Food Co. Inc., v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002); *Lueck*, 236

14  F.3d at 1144. Taiwan is a suitable alternative forum in this case because Jinhua is amenable to

15  service of process in Taiwan and Taiwan offers a practical remedy for Micron's purported trade

16  secret misappropriation claim. It is noteworthy that Micron now alleges in its Opposition to UMC's

17  Motion to Dismiss that Taiwan is an inadequate forum when it has agreed in its Employment

18  Agreement (with several of the individual defendants) to adjudicate "any dispute or controversy

19  arising out of or in connection with the interpretation of this Agreement or any performance of this

20  Agreement" in Taichung District Court in Taiwan. *See infra* Section III.C.3.ii. Micron should not be

21  allowed to assert Taiwan as the appropriate jurisdiction to adjudicate this issue in one instance

22  (MMT's employment contracts) and change its preference in another (this case) at its convenience.

23  Thus, Taiwan is the appropriate forum to adjudicate this dispute.

24          **i.    Jinhua is Amenable to Service of Process in Taiwan:** This court has

25  held that the courts in Taiwan can serve process and exercise jurisdiction over foreign parties. *See*

26  *VIA Techs., Inc. v. ASUS Computer Int'l*, 2015 U.S. Dist. LEXIS 80124, at *21 (N.D. Cal. June 18,

27  2015). Taiwanese courts are able to serve process on a Chinese defendant through Taiwan's Strait

28  Exchange Foundation ("SEF") and China's Association for Relations Across Taiwan Strait

("ARATS").[11] Lu Decl., ¶¶ 4, 5. Whether the procedural law is less favorable is irrelevant as it does not make a forum inadequate. *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991). Under the "Cross-Strait Joint Crime Prevention and Mutual Legal Assistance Agreement," Taiwanese courts have personal jurisdiction over Chinese defendants if the offense is conducted in Taiwan. Lu Decl., ¶ 6. As explained below, there are sufficient facts that support a court in Taiwan asserting personal jurisdiction over Jinhua.

          **ii**. **Taiwan Offers Practical Remedy for Conspiracy of Trade Secret Misappropriation Actions:** This court has also held that courts in Taiwan are capable of adjudicating the issue of a conspiracy of trade secret misappropriation. *See Shu v. Wang*, 2016 U.S. Dist. LEXIS 143222, at *15, *28 (D.N.J. Oct. 17, 2016); *see also VIA Tech., Inc.*, 2015 U.S. Dist. LEXIS 80124, at *22 ("Taiwanese courts are capable of providing monetary damages and injunctive relief for trade secret misappropriation. . . ."); *Monolithic Power Sys.*, 2006 U.S. Dist. LEXIS 74340, at *12-13. Taiwan's Trade Secrets Act was enacted on January 19, 1996, and this Court has also acknowledged other law through which parties could seek redress in Taiwan in situations involving trade secret misappropriation. *See Good Earth Lighting, Inc. v. New Chao Fend Indus. Co.*, 1999 U.S. Dist. LEXIS 1126, at *5 (N.D. Ill. Feb. 3, 1999) (providing the Fair Trade Act as an example of a Taiwanese law through which plaintiff could seek redress and holding that whether the law is less effective is immaterial as the "alternative forum does not [] have to provide the best remedy or the remedy of plaintiff's choosing to be adequate").

          **2.** **The Private Interest Factors Favor Taiwan As An Alternative Forum**

        The private interest factors all weigh against maintaining this action in California. In analyzing the more significant private interest, courts consider: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigations; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgement; and (7) all other practical

---

[11] After receiving the process to be served along with a Letter Rogatory from the Taiwanese court, Taiwan's SEF sends the documents, with another letter from itself, to China's ARATS, which then transfers these documents with its own letter to the appropriate Chinese court that will serve process on the defendant. Declaration of Shao-Fan (Frank) Lu filed herewith ("Lu Decl."), ¶¶ 4, 5.

problems that make trial of a case easy, expeditious and inexpensive. *Lueck*, 236 F.3d at 1145 (citing *Gilbert*, 330 U.S. at 508).

   **i.   All parties and witnesses are outside of California:** Because Jinhua is a company in Mainland China and Micron is a Delaware corporation with its headquarters in Boise, Idaho, neither party is a California resident (*see* FAC, ¶¶ 9, 12). Therefore, Micron is afforded no strong presumption of convenience that it would afford a California resident. *Nat'l Football League v. Fireman's Fund Ins. Co.*, 157 Cal. Rptr. 3d 318, 334 (Cal. Ct. App. 2013). A nonresident who files suit in California is only entitled to due deference under the circumstances presented, not a strong presumption, in favor of its choice of forum. *Id.* at 340.

   As noted above, Micron fails to provide any facts supporting its alleged conspiracy involving Jinhua or that any witnesses for the alleged conspiracy would be located in California. Moreover, Micron itself fails to provide a single witness in California. In Micron's Rule 26(a)(1) Initial Disclosures ("Micron's Initial Disclosures"), Micron names 47 witnesses who may have discoverable information in this case, where **over 30** witnesses are in Taiwan but ***not a single witness*** is in California. *See* Exhibit A to Declaration of Daniel Johnson filed herewith ("Johnson Decl."), at 3-7. Micron mentions its presence in California by stating California is the resident of its Executive members and "450 Micron professionals." D.E. 162-4 at 18. None of them, however, are involved or have knowledge of the conspiracy involving Jinhua. If anything, Chen, Plaintiff's Taiwanese subsidiary's (MTT) former Site Director and Jinhua's current President and, as Micron alleges, a "co-conspirator," would have more knowledge regarding this issue and he resides in *Taiwan*. FAC, ¶ 13. The acts of misappropriation that form the basis of this dispute were allegedly conceived, implemented, and perpetrated in Taiwan (FAC ¶¶ 3(a)-(d), 16, 70-71, 78, 96(2), D.E. 157-2 at 8-10 ¶¶ 1-21), against Plaintiff's Taiwanese subsidiary (FAC ¶¶ 3, 10, 85, 6), in violation of Taiwanese law (FAC ¶ 89, D.E. 157-2). It is noteworthy that *Micron's* Taiwanese subsidiary filed a criminal complaint in Taiwan. D.E. 157-2, ¶ VIII.

   **ii.  California is an inconvenient forum to the litigations**: As shown in the private interest factor analysis (and public interest factor analysis below), California is an inconvenient forum to litigate this matter because none of the parties are a California resident, all,

1   or most, of the key evidence related to the conspiracy involving Jinhua would be located outside of

2   California, and California does not likely have a strong interest in this dispute. *See generally*

3   *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1233 (9th Cir. 2011) ("[W]here defendants

4   were not California-based corporations, the state has little interest in keeping the litigation in this

5   state to deter future wrongful conduct."). Furthermore, California is an inconvenient forum to

6   litigate this dispute as the action arose outside of California, particularly the acts accused as to

7   Jinhua (*i.e.*, conspiracy). *See Appalachian Ins. Co. v. Superior Court*, 208 Cal. Rptr. 627, 628 (Cal.

8   Ct. App. 1984) (citation omitted) ("The doctrine 'is typically applied to litigation where all of the

9   parties are out-of-state residents and where the cause of action arose outside the forum state.'").

10   Micron alleges that the actual trade secret misappropriation acts occurred in Taiwan and that the

11   actors were and are located in Taiwan and involved Jinhua (in China) but, conversely, pleads no

12   facts demonstrating any acts of conspiracy occurring in California. *See,* FAC, ¶¶ 3(a)-(d), 16, 70-72,

13   78, 96(2); D.E. 157-2 at 8-10.

14         **iii. Most of the key evidence is outside of California**: Most, if not all, of

15   the evidence is located outside of California. *See* Johnson Decl., Ex. A (Micron's Initial

16   Disclosures) at 3-7. Jinhua has no location in the United States and thus has no relevant evidence in

17   California. Likewise, Micron has not plead any facts indicating that any of its evidence concerning

18   the alleged conspiracy is located in California. Any evidence asserted by Micron that could be

19   located in the United States would be limited to only the claim of trade secret misappropriation -

20   and not the conspiracy involving Jinhua – and that evidence would not be in California but rather in

21   Boise, Idaho. *See* D.E. 162-4 at 19 ("[M]uch of the evidence is already in the United States—from

22   technical details about Micron's technology, to the measures the company took to protect its secrets,

23   to the forensic evidence of UMC's misappropriation, to the economic damage that UMC's and

24   Jinhua's misconduct has caused. . . ."); *see also* FAC, ¶ 49 (SharePoint servers are in Boise, not

25   California); FAC, ¶ 50 (R&D CAD servers are in Boise, not California). Moreover, Elpida, the

26   company responsible for previously producing products practicing the trade secret at issue and

27   which was later acquired by Micron, is a Japanese company. FAC, ¶ 10. After the acquisition,

28   Micron requested to transfer certain information regarding the process flow from Japan to Boise,

Idaho (still not California). D.E. 93-3 (Ho Deposition), at 34:25, 35:1-4. Micron, however, transferred the documents back to Japan for the R&D Team in Japan to further develop the product for distribution to the fabs for mass production. *Id.*

   **iv. Unwilling witnesses cannot be compelled to testify in California:** Most of the potential UMC and non-party witnesses in this action would reside in Taiwan. *See Johnson Decl.*, Ex. A (Micron's Initial Disclosures) at 3-7. More specifically, most, if not all, of the witnesses related to the conspiracy involving Jinhua would be in Taiwan. FAC, ¶ 13-17; D.E. 157-2. Neither Micron nor Jinhua would be able to compel third-party witnesses in Taiwan to attend trial and depositions if this case remains in California. *See Toyota Motor Corp. v. Superior Court*, 130 Cal. Rptr. 3d 131, 145 (Cal. Ct. App. 2011) ("[A] trial court cannot order a non-resident to appear at a California deposition."). On the other hand, if this case was filed in Taiwan, the Taiwanese court would be able to compel the witnesses to cooperate. *See generally* Lu Decl., ¶ 6 (stating that Taiwanese courts are able to subpoena witnesses in Taiwan - and in China through the assistance of China's ARATS and Taiwan's SEF),

   **v. The cost of bringing witnesses to trial in California is burdensome:** It would be burdensome, costly and time-consuming to bring witnesses from Taiwan to California. Taiwan and China are located over 6,000 miles from California, and the time difference between Taiwan/China and California is roughly 15 hours. In addition to the costly travel and accommodation expenses, the stress from the long flight and time difference that will be placed on the witnesses will undoubtedly affect the witnesses' ability to effectively aid the litigation process. Moreover, each witness will most likely need a translator, which is another added cost and will most likely lead to translation issues.

   **vi. The enforceability of the Judgment:** Neither California courts nor any other court in the U.S. will be able to enforce the judgment regarding Micron's alleged conspiracy involving Jinhua because Jinhua is not a resident of California or any state in the U.S. On the other hand, given that the issue of conspiracy involves Jinhua and UMC, a Taiwanese company, the court in Taiwan would have a better stance of enforcing any judgment with respect to the alleged conspiracy. *See also* Victoria F. Maroulis, *China's Evolving IP Regime and Avenues of*

*Enforcement*, 2013 WL 4192387, at \*22 (2013) ("Since 2008, any judgment by . . . Taiwan can be enforced in China").

        **vii. All other practical problems that make trial of a case easy, expeditious and inexpensive**: All the foregoing facts and facts in the public interest analysis (below) clearly show that adjudicating the issue of conspiracy involving Jinhua in Taiwan would make this case more efficient and cost-effective. Not only are all the witnesses and evidence involved in the issue of conspiracy in Taiwan, but also, Micron originally designated the choice of law and forum with its employees (covering the alleged trade secrets) as the law in Taiwan and the Taichung District Court in Taiwan. *See infra* Section III.C.3.ii. Thus, this factor weighs in favor of Taiwan as the forum to adjudicate this dispute.

        **3.**      **The Public Interest Factors Favor Taiwan As An Alternative Forum**

        Courts also consider public interest factors in determining whether to dismiss a case under *forum non conveniens*. Courts consider: (1) local interest in the lawsuit; (2) the court's familiarity with the governing law and appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case; (3) the burden on local courts and the people of the community for jury duty; (4) congestion in the court; and (5) the cost of resolving a dispute unrelated to a particular forum. *Id.* Each of these elements are readily established in this case. The public interest analysis also favors Taiwan as an alternative forum and dismissing this case.

        **i.**  **Taiwan has a greater interest in this dispute than California:** The balancing of the competing interest of Taiwan and California favors dismissal. This litigation is not connected to California, and Micron's presence in California is no more impactful than its presence in Taiwan. Furthermore, Taiwan's local interest in resolving this dispute is strong. The Taiwanese courts have a vested interest in determining whether Taiwanese employees breached their employment agreements and conspired to misappropriate any trade secret on Taiwanese soil.

        **ii.**  **Taiwanese courts are familiar with trade secret law:** As mentioned above, Taiwanese courts are familiar with trade secret law. With the enactment of the Trade Secrets Act and the Fair Trade Act, Taiwan is suitable to adjudicate this matter. Moreover, the Taichung, Taiwan district court has been adjudicating matters involving Micron and UMC since 2017. FAC,

¶ 3. Although Micron brought this case under the DTSA, CUTSA, and RICO, Micron originally planned to follow the laws of Taiwan. Micron's Confidentiality and Intellectual Property Agreement ("CIPA") with several of the individual defendants includes the following provision:

> 16. Choice of Law
> This Agreement will be governed by and construed in accordance with **the laws of the state, province or country governing my employment contract** without giving effect to its conflict of law rules. (emphases added)

Micron's Employment Agreement also includes the following provision:

> 18. Applicable Law and Jurisdiction
> **This Agreement shall be governed by the laws of the Republic of China.** Any dispute or controversy arising out of or in connection with the interpretation of this Agreement or any performance of this Agreement shall be settled by the parties through amicable negotiation in good faith; in case of any litigation arising thereof, the **parties agree to be subject to Taichung District Court** in the first instance.[12] (emphases added)

Based on Micron's Employment Agreement it signed with Kuo, Wang, and Lee (all individuals identified in the FAC), it is the laws of Taiwan that would govern, and the courts in Taiwan would most definitely be familiar with this law. Provision 7 of Micron's Employment Agreement ties Micron's CIPA with its Employment Agreement. *Id.*, ¶ 7. Micron's CIPA includes provisions stating that the employee will "not [] disclose, use, access or allow access to, directly or indirectly, any Confidential Information," (CIPA, ¶ 1.1) and "will leave with Micron all documents, records, notebooks, or other repositories containing Confidential Information, . . . immediately return such Confidential Information to Micron and destroy any copies in [his] possession or control" at the end of the employee's employment with Micron. CIPA, ¶ 1.3. There is no doubt that this dispute in which Micron alleges "UMC and Jinhua conspired to induce former MMT employees to misappropriate . . . Micron trade secrets from MMT" (FAC, ¶ 3.b.) is subject to Provision 18 and the forum-selection clause within.

---

[12] Micron's Confidentiality and Intellectual Property Agreement and Employment Agreement were signed by former Micron employees including Sandy Kuo, who is currently a Jinhua employee. Zheng Decl., ¶ 20. *See* Exhibit B to Declaration of Daniel Johnson filed herewith; *see also* D.E. 160-3 (Redacted version of Kenny Wang's employment agreement) & D.E. 160-4 (Redacted version of Neil Lee's employment agreement).

Not only did Micron agree to adjudicate any issues arising out of this dispute by the laws of Taiwan, it also, in fact, agreed to bring suit in the Taichung District Court in Taiwan. Micron's Employment Agreement, ¶ 18 ("*[a]ny dispute* or controversy arising out of or in connection with . . . this Agreement"). Jinhua "is so closely related to the contractual relationship that the forum selection clause [nevertheless] applies." *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). This Court has held that "[a] forum-selection clause in an agreement extends to 'a range of transaction participants, parties *and non parties*.'" *Ultratech, Inc. v. Ensure Nanotech (Beijing), Inc.*, 108 F. Supp. 3d 816, 822 (N.D. Cal. June 5, 2015) (citing *Manetti-Farrow*, 858 F.2d at 514 n.5); *see, e.g.*, *Holland Am. Line, Inc.*, 485 F.3d at 456 (holding that plaintiff failed to meet its burden and that the forum-selection clause "applied equally" to the non-signatory companies as the transactions between the non-signatory companies and plaintiff were related to the contractual relationship plaintiff had with the signatory company).

        **iii**. **California courts and taxpayers should not bear the burden of this litigation:** Since this litigation has virtually no connection to California, California courts and taxpayers should not have to bear the burden of this litigation. "[T]he injustices and the burdens on the local courts and taxpayers, as well as on those leaving their work and business to serve as jurors, which can follow from an unchecked and unregulated importation of transitory causes of action for trial in this state . . . require that our courts . . . exercise their discretionary power to decline to proceed in those causes of action which they conclude, on satisfactory evidence, may be more appropriately and justly tried elsewhere." *Stangvik*, 819 P.2d at 17. The California judicial system is already overloaded; it should not be further loaded with a case that has minimal relation with California. Moreover, it would be nonsensical to further burden the jurors of the Northern District of California to sit through a potentially lengthy trial conducted substantially in Chinese and possibly under foreign law. *See, e.g.*, D.E. 160-3 (Micron's Employment Agreement and CIPA). All the above would make it more difficult to provide litigants who are properly before this Court with the speedy and efficient resolution of their cases that Due Process requires.

1

## IV. CONCLUSION

2       For the reasons set forth herein, Micron's claims should be dismissed in their entirety with

3 prejudice.

4

5

6  Dated: March 14, 2019                          _/s/ Daniel Johnson Jr._

7                                                 Daniel Johnson Jr. (Bar No. 57409)
                                                  Mario Moore (Bar No. 231644)
8                                                 DAN JOHNSON LAW GROUP, LLP
                                                  400 Oyster Point Blvd., Suite 321
9                                                 South San Francisco, CA 94080
                                                  Telephone: (415) 604-4500
10                                                dan@danjohnsonlawgroup.com
                                                  mario@danjohnsonlawgroup.com
11
                                                  Lyle B. Vander Schaaf (DC Bar No.
12                                                422380)
                                                  Evi T. Christou (DC Bar No. 1600066)
13                                                Fei Hu (DC Bar No. 1016150)
                                                  BRINKS GILSON & LIONE
14                                                1775 Pennsylvania Ave, NW, Suite 900
                                                  Washington, DC 20006
15                                                Telephone: (202) 296-8700
                                                  lvanderschaaf@brinksgilson.com
16                                                echristou@brinksgilson.com
                                                  fhu@brinksgilson.com
17                                                Appearance *pro hac vice*

18                                                Harold V. Johnson (IL Bar No. 6188149)
                                                  Judy K. He (IL Bar No. 6327020)
19                                                BRINKS GILSON & LIONE
                                                  455 N. Cityfront Plaza Drive, Suite 3600
20                                                Chicago, IL 60611
                                                  Telephone: (312) 321-4200
21                                                hjohnson@brinksgilson.com
                                                  jhe@brinksgilson.com
22                                                Appearance *pro hac vice*

23                                                *Attorneys for Defendant*
                                                  FUJIAN JINHUA INTEGRATED CIRCUIT
24                                                CO., LTD.

25

26

27

28