1   Daniel Johnson Jr. (Bar No. 57409)
    Mario Moore (Bar No. 231644)
2   Robert G. Litts (Bar No. 205984)
    DAN JOHNSON LAW GROUP, LLP
3   400 Oyster Point Blvd., Suite 321
    South San Francisco, CA 94080
4   Telephone: (415) 604-4500
    dan@danjohnsonlawgroup.com
5   mario@danjohnsonlawgroup.com
    robert@danjohnsonlawgroup.com
6
    Attorneys for Defendant
7   UNITED MICROELECTRONICS CORPORATION

8                    **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10  MICRON TECHNOLOGY, INC.,                Case No. 3:17-CV-06932-MMC

11              Plaintiff,                  DEFENDANT UNITED
                                            MICROELECTRONICS CORPORATION'S
12          v.                              REPLY TO PLAINTIFF MICRON
                                            TECHNOLOGY, INC.'S OPPOSITION TO
13  UNITED MICROELECTRONICS                 MOTION TO DISMISS
    CORPORATION, FUJIAN JINHUA
14  INTEGRATED CIRCUIT CO., LTD.,           Judge:        Hon. Maxine M. Chesney
    and DOES 1-10,                          Courtroom:    7 – 19th Floor
15                                          Hearing date: March 29, 2019
              Defendants.                   Hearing time: 9:00 A.M.
16
                                            FAC Filed:    February 8, 2019
17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS    CASE NO. 3:17-CV-06932-MMC

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... - 1 -

II.     BACKGROUND ............................................................................................ - 1 -

     A.      Micron Has Made Extensive Use of the Taiwanese Court Systems ................. - 1 -

     B.      The Expert Declaration Regarding the Use by UMC of Confidential
         Information is False and Fails to Disclose That the Information Micron
         Contends is Secret Are In Fact Not Trade Secrets ............................................ - 2 -

     C.      Micron's Disclosures Reveal That None of the Witnesses With Any
         Knowledge Reside in California and the Vast Majority Reside in Taiwan ....... - 2 -

III.    ARGUMENT ................................................................................................. - 3 -

     A.      Micron's Forum Non Conveniens Arguments Ignores the Record................... - 3 -

         1.      Micron's Argument That Taiwan is an Inadequate Forum is
             Contradicted By Micron's Own Behavior in Selecting That Forum
             in Thousands of Contracts and Litigating in Taiwan in 20 Different
             Lawsuits ................................................................................................ - 3 -

         2.      Each of the Forum Non Conveniens Factors Favor Adjudication in
             Taiwan ................................................................................................... - 4 -

         3.      The Micron Forum Selection Clause Requires Dismissal ..................... - 7 -

         4.      No Case Law or Evidence Supports Micron's Argument That the
             Forum Selection Clause is Not Mandatory ........................................... - 8 -

     B.      Micron's Patent Argument Fails Because it is Bereft of Any Evidence of
         Connection With Micron's Trade Secret Accusations Despite Micron's
         Ready Access to the Relevant Documentation and Individuals...................... - 10 -

         1.      Micron Had Full Opportunity to Cite Publicly Available Documents,
             Its Own Documents, and Take Discovery From UMC, But Came Up
             Empty ................................................................................................... - 10 -

         2.      Micron's Patent Theory Does Not Follow from Existing Precedent ... - 11 -

     C.      Micron's Argument Regarding Server Downloads Rests on the False
         Assumption that Wang and Ho were Acting on UMC's Behalf and Should
         Have Known About Server Downloads ........................................................... - 12 -

         1.      Neither Wang Nor Ho Acted As An Agent of UMC At The Time of
             Any Alleged Downloads ..................................................................... - 12 -

         2.      There is No Evidence Wang Should Have Known the Locations of
             Servers ................................................................................................. - 12 -

     D.      Micron's CASPA Argument Fails Again......................................................... - 13 -

     E.      Jurisdiction Over UMC Would Not Be Reasonable ....................................... - 13 -

III.    CONCLUSION ............................................................................................ - 15 -

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS      CASE NO. 3:17-CV-06932-MMC

**TABLE OF AUTHORITIES**

Page

**CASES**

*Am. Wave Machs., Inc. v. Surf Lagoons, Inc.*, 2014 U.S. Dist. LEXIS 184831 ............................ 11

*American Dredging Co. v. Miller*, 510 U.S. 443 ................................................................. 3

*Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102 .................................................. 14

*Boston Telecomms. Group, Inc. v. Wood*, 588 F.3d 1201 ................................................... 4

*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 ............................................................... 5

*Cheng v. Boeing Co.*, 708 F.2d 1406 .......................................................................... 15

*Chen-Teh Shu v. Ruey-Hwa Wang*, 2016 U.S. Dist. LEXIS 143222 ............................................... 4

*Doe v. Unocal Corp.*, 248 F.3d 915 .............................................................................. 13

*Dole Food Co. v. Watts*, 303 F.3d 1104 ...................................................................... 4

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122 ................................... 14

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450 ............................................. 9, 13

*In re Air Crash over the Taiwan Strait on May 25, 2002*, 331 F. Supp. 2d 1176 ........................... 15

*Kazakhstan v. Ketebaev*, 2017 U.S. Dist. LEXIS 211198 .......................................................... 14, 15

*Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764 ........................................... 6

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.* 583 F.3d 656 ................................................. 3

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 ...................................................................... 3, 4

*Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 ...................................................... 9

*Medicor AG v. Arterial Vascular Eng'g*, 1997 U.S. Dist. LEXIS 4384 ......................................... 5

*Monolithic Power Sys. v. O2 Micro Int'l, Ltd.*, 2006 U.S. Dist. LEXIS 74340 ............................ 3,4

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 ............................................................... 14

*Stangvik v. Shiley Inc.*, 54 Cal. 3d 744 ......................................................................... 3

*Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403 ........................................................ 11

*Ultratech, Inc. v. Ensure Nanotech (Beijing), Inc.*, 108 F. Supp. 3d 816 ....................................... 9

*Via Techs., Inc. v. Asus Computer Int'l*, 2015 U.S. Dist. LEXIS 80124 ................................... 4, 6

**OTHER AUTHORITIES**

Maroulis, China's Evolving IP Regime and Avenues of Enforcement, 2013 WL 4192387 .......... 7

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS     CASE NO. 3:17-CV-06932-MMC

## I.   INTRODUCTION

Micron's opposition is a feeble attempt to convince this court to take jurisdiction, by among other things, (1) failing to inform the court about its forum selection clauses until forced to do so by UMC, and misstating the law to avoid the consequences of Micron's express contractual provisions requiring that this case be filed in Taiwan under Taiwanese law; (2) arguing that Taiwan is an inconvenient forum while failing to inform this court that Micron has participated in 20 recent cases in Taiwan, four of which are trade secret cases; (3) failing to advise the court that Micron's lead counsel has more than 30 lawyers in Taiwan full time who, among other things, specialize in trade secret law; (4) failing to tell the Court in an earlier disclosure that there were no witnesses from California with knowledge of the claim and that all of the persons with knowledge of the alleged theft of trade secrets reside in either Taiwan, China, or Boise, Idaho; and (4) filing an expert declaration that does not identify any Micron trade secrets but "suggests" that proprietary information must have been used by UMC employees without any factual support, when in fact the information identified by the expert was in the public domain and cannot as a matter of law be a trade secret.

As the following will show this Court must decline jurisdiction under the forum selection clause and on forum non conveniens grounds and dismiss the instant action. Before proceeding with the legal argument, however, it is necessary to emphasize that the actual facts support dismissal of this case and address several glaring misstatements made in Micron's brief.

## II.   BACKGROUND

### A.   Micron Has Made Extensive Use of the Taiwanese Court Systems

Micron argues that Taiwan is an inadequate forum for a dispute relating to Micron Memory Taiwan (MMT) employees' misappropriation of trade secrets. It implies it will be somehow disadvantaged if forced to litigate in Taiwan. The reality is quite different. Micron has continuously chosen Taiwan as a forum in the clauses of its agreements with thousands of employees in Taiwan, including J.T. Ho, Kenny Wang, Neil Lee, and Sandy Kuo, all of whom are prominently featured in Micron's First Amended Complaint ("FAC"). D.N. 160-3; D.N. 160-4; D.N. 169-6.

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS     CASE NO. 3:17-CV-06932-MMC

1    Further, a review of the court docket in Taiwan reveals that Micron has participated in 20

2    recent cases including four trade secret matters. Moore Decl., ¶ 6. Jones Day, lead counsel for

3    Micron in the instant case, has 30 lawyers in Taiwan including at least four who purport to be

4    experts in trade secrets; at least three attorneys from another law firm, Tsar & Tsai, have

5    represented Micron in the Taiwan case involving allegations against UMC, Wang, and Ho. Moore

6    Decl., Exs. B and C.

7    In short, having chosen Taiwan as the forum in its agreements with thousands of employees

8    and litigated a score of commercial, IP, and employment litigation cases in Taiwan using its law

9    firms of choice, Micron cannot credibly ignore its actions and the case law to argue that Taiwan is

10   an inadequate forum.

11   **B.      The Expert Declaration Regarding the Use by UMC of Confidential

12            Information is False and Fails to Disclose That the Information Micron
          Contends is Secret Are In Fact Not Trade Secrets**

13   Micron provided the declaration of Dr. David Liu to support Micron's claim that UMC

14   employees used Micron trade secret information. In an apparent attempt to mislead this court, Dr.

15   Liu never states that any trade secrets were used by UMC employees. He never uses the words

16   **trade** or **secret** in his declaration. Instead he claims it is "highly likely" confidential information

17   was used. Another euphemism is that UMC/Jinhua patents were "based on" or "derived from"

18   confidential Micron DRAM technology. The reason Liu never uses the term "trade secret" is

19   because none of the information he cites qualifies as trade secret. John Berg, UMC's expert, did a

20   detailed analysis of the information relied upon by Liu and proves that Micron's confidential

21   information identified by Liu was derived from publicly available sources or information, and thus

22   as a matter of law cannot be a trade secret. Berg Decl., ¶¶ 28, 33, 41, 45, 50, 54, 58. .

23

24   **C.      Micron's Disclosures Reveal That None of the Witnesses With Any
          Knowledge Reside in California and the Vast Majority Reside in Taiwan**

25   Micron failed to advise the court in its brief that, in its Rule 26(a) initial disclosures served

26   in this case, it indicated that all of the relevant witnesses reside in Taiwan, including (a) the

27   individuals specifically named in Micron's complaint (J.T. Ho, Neil Lee, Kenny Wang, Sandy

28   Kuo, and Stephen Chen), (b) the individuals identified as defendants in the DOJ criminal matter

- 2 -

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS     CASE NO. 3:17-CV-06932-MMC

1   (Ho, Wang, and Chen), and (c) the individuals identified in the Taiwan indictment attached to

2   Micron's complaint. Twenty-nine different individuals identified in Micron's initial disclosures

3   reside in Taiwan as well as three others in China and Japan. D.N. 169-4. To the extent that Micron's

4   initial disclosures list a few employees with knowledge of sales, IT, and information security

5   located in the U.S., they are all in Boise, Idaho, not Northern California. The relevant corporate

6   division of Micron that employed all of the individuals listed in the complaint was Micron Memory

7   Taiwan, a Taiwanese company. Defendant UMC Corp. is a Taiwanese company. Micron points to

8   its operations in Milpitas, California, but not a single individual located there is listed in Micron's

9   complaint, pleadings, or initial disclosures or anywhere else in the Northern District of California.

10  *Id*. None of the 450 Milpitas employees or heads of the business units mentioned in Micron's

11  opposition brief are listed in Micron's initial disclosures.

12          When applying the case law to the actual facts, it is clear that this case must be dismissed,

13  and Micron must pursue its claims in Taiwan.

14  **III.   ARGUMENT**

15          **A.      Micron's Forum Non Conveniens Arguments Ignores the Record**

16          The Court here should apply the doctrine of forum non conveniens and exercise

17  discretionary power to decline to exercise jurisdiction when the action is more appropriately and

18  justly tried elsewhere. *American Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994); *Lueck v.*

19  *Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001); *Stangvik v. Shiley Inc.*, 819 P.2d 14, 17

20  (1991). In exercising the discretion to decline jurisdiction under forum non conveniens, the Court

21  has a strong basis to conclude that: (1) an adequate alternative forum exists, and (2) the balance of

22  private and public interest factors favor dismissal. *Loya v. Starwood Hotels & Resorts Worldwide,*

23  *Inc.*, 583 F.3d 656, 664 (9th Cir. 2009); *Lueck v. Sundstrand Corp.*, 236 F.3d at 1143.

24

25                  **1.      Micron's Argument That Taiwan is an Inadequate Forum is
                            Contradicted By Micron's Own Behavior in Selecting That Forum in
                            Thousands of Contracts and Litigating in Taiwan in 20 Different**

26                          **Lawsuits**

27          In light of Taiwan's well-developed trade secret law, this Court has held Taiwan as an

28  adequate alternative forum in the past. *See Monolithic Power Sys. v. O2 Micro Int'l, Ltd.*, 2006

- 3 -

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS      CASE NO. 3:17-CV-06932-MMC

1    U.S. Dist. LEXIS 74340, at *12-13 (N.D. Cal. Oct. 3, 2006), and various federal decisions likewise

2    held that courts in Taiwan are capable of adjudicating the issue of conspiracy of trade secret

3    misappropriation. *See Shu v. Wang*, 2016 U.S. Dist. LEXIS 143222, at *15, *28 (D.N.J. Oct. 17,

4    2016); *see also VIA Techs., Inc. v. Asus Computer Int'l*, 2015 U.S. Dist. LEXIS 80124, at *22

5    (N.D. Cal. June 18, 2015) ("Taiwanese courts are capable of providing monetary damages and

6    injunctive relief for trade secret misappropriation. . . ."); *Monolithic Power Sys.*, 2006 U.S. Dist.

7    LEXIS 74340, at *12-13. Therefore, an adequate alternative forum exists in this case because the

8    defendants are amenable to service of process in the alternative forum, and the alternative forum

9    offers some practical remedy for the plaintiff's complained wrong. *Dole Food Co. v. Watts*, 303

10   F.3d 1104, 1118 (9th Cir. 2002); *Lueck*, 236 F.3d at 1144. Further, as discussed above, Micron

11   (and its subsidiaries) are listed with having 20 cases on the trial docket in Taiwan, four of which

12   are trade secret cases. Moore Decl.,¶ 6. Nor can Micron claim it cannot find counsel in Taiwan.

13   Jones Day, Micron's counsel of choice, has an office there, and Micron routinely relies on Taiwan

14   firms for litigation there. Moore, Decl., Exs. B, C and ¶ 6.

15

16          **2.    Each of the Forum Non Conveniens Factors Favor Adjudication in Taiwan**

17          Micron's analysis of the forum non conveniens factors completely ignores and distorts the

18   record[1] with respect to the identification and location of the relevant witnesses and documents.

19   Accordingly, when one reviews the actual witnesses and documents relevant to a trial in this

20   matter, the seven factors set out in *Boston Telecomms. Group, Inc. v. Wood*, 588 F.3d 1201, 1206–

21   07 (9th Cir. 2009) weigh heavily in favor of trial in Taichung, Taiwan, not here.

22          **(1) Residence of the parties and witnesses.** As discussed above virtually all of the

23   witnesses reside in Taiwan or China and several are prohibited from traveling out of Taiwan due

24   to the ongoing criminal proceedings in Taiwan. Moore Decl., ¶ 8; D.N. 169-4. By contrast, the

25   _____

26   [1] Micron mischaracterizes the origin of the trade secrets by describing itself as a Boise-based
     company when in fact the alleged trade secrets at issue were accessed through Micron Memory
     Taiwan, a successor to a Taichung, Taiwan-based company called Rexchip, and Micron Memory
27   Japan, a successor to a Hiroshima, Japan-based company called Elpida. The trade secrets at issue
     were developed by those companies, not Micron, using employees based in Taiwan and Japan, not
     the U.S. The only technical witnesses listed in Micron's initial disclosures as witnesses who will
28   testify about the alleged trade secrets reside and work in Taichung, Taiwan, not the U.S.

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS      CASE NO. 3:17-CV-06932-MMC

1   Micron witnesses residing in the U.S., all of whom reside in Boise, are unlikely to have any

2   restrictions on their ability to travel to Taiwan, and many have already traveled to Taiwan in

3   connection with the criminal matter in Taichung. *Id*. In these circumstances, the state has little

4   interest in the case. *See generally Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1233

5   (9th Cir. 2011) ("[W]here defendants were not California-based corporations, the state has 'little

6   interest in keeping the litigation in this state to deter future wrongful conduct.'") (internal citation

7   omitted).

8         **(2) The Forum's Convenience to the Litigants.** Given that almost all of the relevant

9   witnesses are in Taiwan or Asia, and all of the alleged acts of misappropriation and conspiracy

10  occurred in Taiwan,[2] Taiwan is by far the most convenient forum. Indeed, even the technical

11  witnesses from Micron are located in Taichung, where Micron Memory Taiwan (MMT) is

12  headquartered. D.N. 169-4.

13        **(3) Access to Physical Evidence.** Virtually all of the physical evidence — computers, USB

14  drives, hard drives, and hard copy files — are located in Taiwan, including much evidence seized

15  by the Taiwanese police that has been impounded by the court in Taichung, and is referenced in

16  the Taiwan indictment attached to Micron's complaint. D.N. 140-6, Moore Decl., Ex. D.

17        **(4) Whether Unwilling Witnesses Can Be Compelled to Testify.** There is no evidence

18  that unwilling Taiwanese or Japanese witnesses can be compelled to come to the U.S. to testify.

19  Most, if not all, of the witnesses related to the conspiracy and misappropriation are in Taiwan.

20  None of the parties to this lawsuit would be able to compel third-party witnesses in Taiwan to

21  attend trial and depositions if this case remains in California. *See Medicor AG v. Arterial Vascular*

22  *Eng'g*, 1997 U.S. Dist. LEXIS 4384, at *10 (N.D. Cal. Jan. 30, 1997) (holding that with non-party

23  foreign residents who are unwilling witnesses, only the foreign court could compel their

24  testimony). By contrast, all of the witnesses can be compelled to testify in Taiwan if this case

25  remains in Taiwan. *See generally* D.N. 160-2 (Lu Decl., ¶ 6) (stating that Taiwanese courts are

26  _____

27        [2] Micron alleges that the actual trade secret misappropriation acts occurred in Taiwan and that
    the actors were and are located in Taiwan and involved Jinhua (in China) and, by contrast, pleads
28  no facts demonstrating any acts of conspiracy occurring in California. See, FAC, ¶¶ 3(a)-(d), 16,
    70-72, 78, 96(2); D.N. 157-2 at 8-10 ¶¶ 1-21.

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS      CASE NO. 3:17-CV-06932-MMC

1   able to subpoena witnesses in Taiwan – and in China through the assistance of China's ARATS

2   and Taiwan's SEF).

3          Jinhua, a Chinese company, is subject to jurisdiction in Taiwan, and has never suggested

4   that it was not amenable to jurisdiction in Taiwan. This court has held that the courts in Taiwan

5   can serve process and exercise jurisdiction over foreign parties. *See VIA Techs., Inc.,* 2015 U.S.

6   Dist. LEXIS 80124, at *21. Taiwanese courts can serve process on a Chinese defendant through

7   the Taiwan's Strait Exchange Foundation ("SEF") and China's Association for Relations Across

8   Taiwan Strait ("ARATS"). Whether the procedural law is less favorable is irrelevant as it does not

9   make a forum inadequate. *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764,

10  768 (9th Cir. 1991). Under the "Cross-Strait Joint Crime Prevention and Mutual Legal Assistance

11  Agreement," Taiwanese courts have personal jurisdiction over Chinese defendants if the offense

12  is conducted in Taiwan.

13         **(5) The Costs of Bringing Witnesses to Trial.** The costs to bring all 30+ witnesses from

14  Asia to trial in San Francisco would be massive. By contrast, they can testify at trial in Taichung,

15  Taiwan, a large city situated in the center of the country, a moderate train or cab ride away from

16  the cities where most of the witnesses are located in Taiwan, and a short flight from China or Japan

17  where other witnesses are located. Moore Decl., ¶ 7. The Taichung court is also the most

18  convenient location for two technical witnesses (Hideki Gomi and Eureka Yu) identified in

19  Micron's initial disclosures, who are both situated in Taichung, not Boise. D.N. 169-4. Even if all

20  10 of Micron's Boise-based witnesses testified at trial, the costs of them to travel to Taichung

21  would be far lower than the costs for the 32 Asia-based witnesses to travel to this district. Micron's

22  witnesses could work in Micron's Taichung office if there was a trial in Taichung.

23         **(6) The Enforceability of the Judgment.** Neither California courts nor any other court in

24  the U.S. will be able to enforce the judgment regarding Micron's alleged conspiracy involving

25  Jinhua because Jinhua is not a resident of California or any state in the U.S. On the other hand,

26  given that the issue of conspiracy involves Jinhua and UMC, a Taiwanese company, the court in

27  Taiwan would be able to enforce any judgment with respect to the alleged conspiracy. See also

28

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS      CASE NO. 3:17-CV-06932-MMC

1  Victoria F. Maroulis, China's Evolving IP Regime and Avenues of Enforcement, 2013 WL

2  4192387, at *22 (2013) ("Since 2008, any judgment by . . . Taiwan can be enforced in China").

3       **(7) All Other Practical Problems.** Due to logistical issues, a trial in Taiwan would be far

4  more expeditious, fair, and efficient than one in the Northern District of California. The Taichung,

5  Taiwan district court has been adjudicating matters involving the allegation in the FAC since 2017.

6  FAC, ¶ 3.

7       **3.     The Micron Forum Selection Clause Requires Dismissal**

8       Although Micron brought this case under the DTSA, CUTSA and RICO, Micron originally

9  planned to follow the laws of Taiwan. Micron's Confidentiality and Intellectual Property

10  Agreement ("CIPA") with several of the individual witnesses and criminal defendants includes the

11  following provision:

12            16. Choice of Law
13            This Agreement will be governed by and construed in accordance with ***the laws of the state, province or country governing my employment contract*** without giving effect to its conflict of law rules. (emphases added)

14       Micron's Employment Agreement also includes the following provision:

15

16            18. Applicable Law and Jurisdiction
          ***This Agreement shall be governed by the laws of the Republic of China.*** Any dispute or controversy arising out of or in connection with the

17            interpretation of this Agreement or any performance of this Agreement shall be settled by the parties through amicable negotiation in good faith;

18            in case of any litigation arising thereof, the ***parties agree to be subject to Taichung District Court*** in the first instance.[3] (emphases added)

19

20  Based on Micron's Employment Agreement it signed with Kuo, Wang, and Lee (each of whom

21  were identified in the FAC), it is the laws of Taiwan that would govern, and the courts in Taiwan

22  would most definitely be familiar with this law.[4]

23      [3] Micron's Confidentiality and Intellectual Property Agreement and Employment Agreement
24  were signed by former Micron employees, including Sandy Kuo. D.N. 168-3. *See also* D.N. 160-3 (Wang employment agreement) & 160-4 (Lee employment agreement).
    [4] Provision 7 of Micron's Employment Agreement ties Micron's CIPA with its Employment

25  Agreement. *Id.*, ¶ 7. Micron's CIPA includes provisions stating that the employee will "not [] disclose, use, access or allow access to, directly or indirectly, any Confidential Information,"

26  (CIPA, ¶ 1.1) and "will leave with Micron all documents, records, notebooks, or other repositories containing Confidential Information, . . . immediately return such Confidential Information to

27  Micron and destroy any copies in [his] possession or control" at the end of the employee's

28  employment with Micron. CIPA, ¶ 1.3. There is no doubt that this dispute in which Micron alleges
                                                          (continued...)

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS     CASE NO. 3:17-CV-06932-MMC

1    A trial in Taiwan would be conducted in Chinese, the native language of at least three-

2    quarters of the witnesses, and the language of all the transcripts from the Taiwan criminal matter.

3    By contrast, a trial here would require the continuous presence of Chinese translators, significantly

4    lengthening proceedings and introducing a host of logistical challenges. Second, a trial here would

5    raise complex procedural due process concerns with respect to non-U.S. citizen criminal defendant

6    witnesses, creating an interplay of principles of comity, and the constitutional rights of the

7    witnesses under both Taiwanese and U.S. law. All of this would be avoided if the witnesses were

8    questioned in front of the Taichung, Taiwan district court, the court where many of the relevant

9    witnesses have already appeared and testified on multiple occasions.

10    The Taichung district court is by far the best forum to address the Taiwan due process

11    rights of the Taiwanese citizen defendants, the Taiwanese documents, Taiwanese employment

12    agreements, the chain of custody for documents seized by Taiwanese police, and the past testimony

13    in Taiwanese courts by Taiwanese witnesses, as well as any prior rulings by the Taiwanese court,

14    almost all of which are in Chinese, not English. By contrast, the Court here would have limited

15    access to the documents, witnesses, police, prior testimony, and prior rulings, and would require

16    burdensome translations of the prior record, not to mention extensive briefing to understand the

17    effect of prior criminal proceedings in Taiwan.

18
19    **4.      No Case Law or Evidence Supports Micron's Argument That the
              Forum Selection Clause is Not Mandatory**

20    Micron argues that the forum selection clause at issue is not mandatory. However, it fails

21    to back up this argument with any facts or case law, or its prior actions. Missing from Micron's

22    argument regarding the forum selection clause is any actual citation to the language of the clause,

23    or discussion of the circumstances in which its employees entered into these agreements. Micron

24    conveniently ignores that each of the employees listed in its complaint as having violated their

25    obligations to Micron signed on to the language in the employment agreements. Micron ignores

26    the fact that the clauses are in a dual language contract, with Chinese language prevailing over

27    _____

28    "UMC and Jinhua conspired to induce former MMT employees to misappropriate . . . Micron trade
      secrets from MMT" (FAC, ¶ 3.b.) is subject to Provision 18 and the forum-selection clause within.

- 8 -

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS      CASE NO. 3:17-CV-06932-MMC

1  English to the extent that there is any conflict between the Chinese and English. Micron further

2  ignores that the entirety of its confidentiality agreement cross-references the employment

3  agreement. And Micron ignores its incessant citation to the Taiwan criminal indictment, which

4  reflects Micron's initial decision to seek remedy for any alleged trade secret misappropriation in

5  Taichung, Taiwan, the very place listed as the forum "in the first instance" in the forum selection

6  clause.

7  Micron points to a series of cases in which a clause was held to be mandatory when the

8  word "exclusive" was utilized. It does not follow from those cases that the *only* way to make a

9  clause mandatory is to the use the word "exclusive." Nor does it follow that the clause here, which

10  says "in the first instance" is permissive. The clause's plain meaning is that the Taichung District

11  Court must be the proper jurisdiction "before anything else can happen." Moore Decl., Ex. A. If

12  one of Micron's Taiwan employees tried to sue Micron in the U.S., there is no question that Micron

13  would follow the plain meaning and insist the lawsuit must be brought in Taiwan not the U.S. That

14  is exactly why the clause was drafted in the manner it was drafted. International companies include

15  such forum selection clauses routinely. Having elected to sue based on the actions of its employees

16  in this case, Micron cannot avoid the bargain it chose and choose a different jurisdiction than what

17  it listed in all its employment contracts.

18  UMC's alleged wrongdoing is based on former Micron employees violating their

19  contractual obligations to Micron. The sole basis for the Micron claim arises out of the breach of

20  the employment agreements. Thus, the tortious conduct "is so closely related to the contractual

21  relationship that the forum selection clause [nevertheless] applies." *Manetti-Farrow, Inc. v. Gucci*

22  *America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988); *Ultratech, Inc. v. Ensure Nanotech (Beijing),*

23  *Inc.*, 108 F. Supp. 3d 816, 822 (N.D. Cal. June 5, 2015) (citing *Manetti-Farrow*, 858 F.2d at 514

24  n.5); *see, e.g.*, *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007)

25  (holding that plaintiff failed to meet its burden and that the forum-selection clause "applied

26  equally" to the non-signatory companies as the transactions between the non-signatory companies

27  and plaintiff were related to the contractual relationship plaintiff had with the signatory company).

28

- 9 -

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS      CASE NO. 3:17-CV-06932-MMC

1

**B.     Micron's Patent Argument Fails Because it is Bereft of Any Evidence of Connection With Micron's Trade Secret Accusations Despite Micron's Ready Access to the Relevant Documentation and Individuals**

2

3      Micron claims that it has proof that UMC used Micron confidential information when

4   applying for patents in the United States and thus UMC and Jinhua availed themselves of the laws

5   of the United States.

6          **1.      Micron Had Full Opportunity to Cite Publicly Available Documents, Its Own Documents, and Take Discovery From UMC, But Came Up Empty**

7

8      As an initial matter, Micron's argument fails to point to any evidence that any of the patents

9   or patent applications of UMC actually disclose any feature referenced in any Micron trade secret

10  document. Micron's FAC fails to point to a single specification cite, diagram, or claim that

11  somehow discloses information found in one of Micron's trade secret documents. This failure is

12  telling because UMC's patent applications are publicly available and Micron's trade secret

13  documents are in Micron's possession.

14      As discussed in greater detail in his declaration, John Berg, who reviewed the Liu

15  declaration, noted that Liu never claimed that any Micron information was a "trade secret" and

16  compared the so-called secrets with publicly available material. His analysis revealed that the

17  items identified by Liu as Micron proprietary information were in fact available from public

18  sources, including Micron's own patents, and that as a matter of fact and law Micron has no trade

19  secret claims. Berg Decl., ¶¶ 28, 33, 41, 45, 50, 54, 58. Thus Micron cannot use the patent filings

20  to support its jurisdiction claims.

21      Second, Micron completely failed to seek discovery on UMC's patents despite the

22  opportunity to do so. In particular, during jurisdictional discovery, Micron could have questioned

23  J.T. Ho about whether any of the documents he allegedly downloaded contained any information

24  that was eventually disclosed in patent applications on which Ho was a named inventor. Micron

25  did not and asked nothing more than Ho's confirmation of names of inventors listed on a few

26  patents. Similarly, Micron elected not to depose Neil Lee or any of the other named inventors to

27  determine whether they were seeking patents on Micron trade secrets. Micron could have deposed

28  the patent agents; it did not. Micron could have deposed individuals from UMC's IP department,

- 10 -

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS       CASE NO. 3:17-CV-06932-MMC

1    but did not. Micron could have served interrogatories, document requests, and Rule 30(b)(6) topics

2    directed at the technology basis for the features claimed in UMC's patents and patent applications.

3    It did none of that. Having entirely foregone the opportunity to take any discovery on the patents

4    in spite of their public availability, Micron's current failure to present any actual evidence of some

5    connection between UMC's patents and any Micron trade secrets renders the bald allegations in

6    the complaint insufficient.

7              **2.       Micron's Patent Theory Does Not Follow from Existing Precedent**

8              Micron points to no case where trade secret claims premised on misappropriation was

9    sufficiently tied to a patent filing so that the patent filing provided a basis for jurisdiction over the

10   trade secret claims. Micron is therefore asking the court to take the unprecedented step of

11   establishing jurisdiction based on patent filings, but without presenting documentary evidence that

12   UMC somehow received materials that resulted in UMC's filing patents on Micron's trade secrets.

13             In order to use the patent filings as a basis for jurisdiction, Micron needed to establish a

14   nexus between patent filings and Micron's claims of misappropriation. The only cases that Micron

15   cites for a patent filing as basis for jurisdiction illustrate why this nexus is required. In *Am. Wave*

16   *Machs, Inc. v. Surf Lagoons, Inc.*, No. 13-CV-3204-CAB NLS, 2014 WL 10475281, at *22-23

17   (S.D. Cal. Nov. 12, 2014), the court agreed that patent filings could provide a basis for Rule 4(k)(2)

18   national contacts jurisdiction. However, the court did not find the patent filings to be a basis for

19   jurisdiction because they had no relation to the patent claims at issue in the case. Similarly, here

20   the misappropriation claims have nothing to do with patent filings. More importantly, Micron and

21   its expert failed to explicitly point to any trade secret information. Unless Micron can point to a

22   link between the misappropriation claims and the filings, the UMC patents and patent applications

23   cannot be a basis for jurisdiction.[5]

24

25

26       [5] Micron's other cited case on patents as a basis for Rule 4(k)(2) jurisdiction involved a
     malpractice suit relating to a Canadian law firm's participation in efforts to obtain a patent in the
     U.S. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009). Obviously, in such

27   circumstances the act of filing for patent was connected to the lawsuit, since the whole lawsuit
     arose from the law firm's patent filing activities. By contrast, here, the lawsuit for misappropriation

28   by Ho and Wang in 2015 and 2016 did not arise from the later patent filings in 2017 and 2018.

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS    CASE NO. 3:17-CV-06932-MMC

**C.    Micron's Argument Regarding Server Downloads Rests on the False Assumption that Wang and Ho were Acting on UMC's Behalf and Should Have Known About Server Downloads**

**1.    Neither Wang Nor Ho Acted As an Agent of UMC At the Time of Any Alleged Downloads**

Both Wang and Ho's alleged downloading activity occurred before they ever joined UMC, and there is no evidence that they either acted formally or informally as an agent of UMC at the time of the alleged downloads. There is no evidence of any instruction from UMC, or that they ever told UMC that they planned to take Micron materials with them when they left Micron.

**2.    There is No Evidence Wang Should Have Known the Locations of Servers**

As to Ho, there is no evidence that he actually downloaded materials from Micron U.S. servers. Micron destroyed Ho's Micron computers and destroyed Micron's server download records, thereby wiping any record of whether Ho downloaded from the U.S. Moore Decl., Ex. D at 41:3-22. All that is left is Ho's testimony that he mostly received copies of documents from Elpida officials in Japan and from Rexchip (and later MMT) computers in Taiwan. While Ho knew of Fab 4, there is no evidence that he downloaded any Fab 4 documents from U.S. servers, since Micron has no records of any such downloads. *Id*. at 59:5-60:4. Given Ho's deposition testimony and the evidence produced in discovery, there is nothing to suggest that Ho should have known he was downloading from U.S. servers.

As to Wang, while Micron points to evidence of his downloading from U.S. servers, there is no evidence that he should have known that he was downloading from U.S. servers. Micron's jurisdiction discovery production reflects no evidence that Wang ever received any training or notification that files downloaded from SharePoint came from U.S. servers as opposed to servers in Taiwan or elsewhere in Asia. D.N. 82-4 at 1-2, 7. Wang and other former Rexchip employees had long been using SharePoint before Micron ever merged with Rexchip, and there is nothing in the jurisdictional record indicating that Micron ever clearly communicated to everyday employees as to when particular files were transitioned from Rexchip servers to Micron's U.S. servers,

- 12 -

1  particularly files for DRAM processes developed at Rexchip and Elpida.[6] There is therefore no

2  record on which to say Wang should have known his SharePoint downloads were from U.S.

3  servers.

**D.      Micron's CASPA Argument Fails Again**

5        Micron's CASPA argument failed to establish jurisdiction previously and fares no better

6  this time around. UMC and Jinhua met with a few job applicants, none of whom were from Micron

7  and none of whom were hired. UMC made short presentations at the job fair. And UMC and Jinhua

8  met with a few tool vendors about tools that can be purchased for use in semiconductors wafer

9  fabrications. But none of these activities relate in any way to the alleged trade secret

10 misappropriation by Ho and Wang. The CASPA trip fails to establish sufficient contacts with the

11 district or the nation as a whole.

**E.      Jurisdiction Over UMC Would Not Be Reasonable**

13       Micron suggests that UMC has not briefed the reasonableness factors regarding personal

14 jurisdiction. This argument ignores that the parties exhaustively briefed the issue in their 2018

15 motion to dismiss briefing, and the facts relevant to those factors have barely changed. In that

16 briefing, UMC noted that Micron's arguments regarding application of the seven factors

17 fundamentally ignore the Taiwan-centric nature of the case and misapply the law by referencing

18 contacts with the United States that are irrelevant to the jurisdictional analysis. When the seven

19 factors are properly applied, personal jurisdiction over UMC for claims arising from events in

20 Taiwan would be unreasonable.

21        **(1) Purposeful Interjection.** Under Ninth Circuit law, the contacts of UMC Group (USA),

22 cannot be attributed to its parent, UMC. *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d

23 450, 461 (9th Cir. 2007); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001).

---

24       [6] The documents produced by Micron and the testimony elicited by Micron contradict Micron's
25 allegation that Ho and Wang should have known they were accessing U.S. servers; in fact, the
testimony established that Micron engineers in Taiwan have no idea where the server location is.
26 This is not surprising given that the trade secrets at issue stem from the work of Taiwanese and
Japanese engineers at companies that pre-dated any involvement by Micron. And any post-merger
27 activities reflect that Micron was a hodgepodge of subsidiaries, mostly based in Asia. This
hodgepodge and the confusing situation it created concerning where each server is located
28 contradicts Micron's argument that Wang and Ho "should have known" they were downloading
from U.S. servers.

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS        CASE NO. 3:17-CV-06932-MMC

1    Accordingly, allegations regarding the activities of UMC Group (USA) are irrelevant to whether

2    there is jurisdiction over UMC.

3         **(2) Burden to Litigate.** The Court should give significant weight to the burden for UMC

4    to litigate in California rather than Taiwan. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements*

5    *Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) ("The unique burdens placed upon one who must defend

6    oneself in a foreign legal system should have significant weight in assessing the reasonableness of

7    stretching the long arm of personal jurisdiction over national borders.") (quoting *Asahi Metal*

8    *Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987)). UMC never carried on a business

9    relationship with Micron in California relevant to this litigation. Additionally, UMC's motion to

10   transfer in a patent case has no bearing on the burden on UMC in this case. A patent case, by its

11   nature, involves alleged infringement of a U.S. patent in the U.S. By contrast, this case concerns

12   defendant UMC's alleged activities in Taiwan in allegedly taking information from Micron's

13   Taiwanese subsidiary using individuals in Taiwan.

14        **(3) Sovereignty.** Exercise of jurisdiction would conflict with the sovereignty of Taiwan.

15   *Kazakhstan v. Ketebaev*, 2017 U.S. Dist. LEXIS 211198, at *31-32 (quoting *Panavision Int'l, L.P.*

16   *v. Toeppen*, 141 F.3d 1316, 1323 (1998)). Micron's complaint and opposition heavily rely upon

17   the Taiwan Indictment, not on any *witnesses* or documents in California. With the Taiwan criminal

18   matter still ongoing, undertaking a parallel civil litigation in California concerning the very same

19   Taiwan-centric facts, witnesses, and evidence would indeed impinge on Taiwan's sovereignty as

20   well as the due process rights of Taiwan's citizens.

21        **(4) Forum State's Interest.** In light of the evidence and witnesses in Taiwan that Micron

22   relies upon in support of its opposition, as well as the ongoing police investigation in Taiwan, the

23   United States has little interest in adjudicating this case. The trade secrets at issue were developed

24   in Taiwan and Japan and stored there. The products are manufactured there. The alleged acts of

25   misappropriation occurred entirely in Taiwan. There has never been any effort to profit off the

26   alleged trade secret theft in the U.S. These facts strongly weigh against exercising jurisdiction here

27   because the United States has no interest in this litigation.

28

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS        CASE NO. 3:17-CV-06932-MMC

1    **(5) Efficient Resolution.** The fifth factor, "location of the evidence and witnesses,"

2    strongly weighs against exercising jurisdiction. *Kazakhstan*, 2017 U.S. Dist. LEXIS 211198, at

3    *33. None of Micron's witnesses referenced in its opposition and supporting declarations, the

4    complaint, or the Taiwan criminal indictment are employed in California. Similarly, none of the

5    physical evidence referenced in Micron's pleadings — hardcopy documents, computers, storage

6    devices — are located in California. D.N. 140-6 at 8-13. D.N. 140-6 at 8-13. D.N. 140-6 at 8-13.

7    **(6) Convenient and Effective Relief for Plaintiff.** The sixth factor further supports

8    litigating the case in Taiwan. *Id.* at *34. Micron is involved in the police investigation in Taiwan,

9    and the Taiwan Indictment relied heavily on the testimony of MMT and Micron witnesses

10   interviewed by the Taiwanese authorities. D.N. 140-6 at 9-11. Additionally, Taiwanese courts

11   presiding over civil matters maintain broad authority to compel witness testimony and production

12   of relevant evidence. *In re Air Crash over the Taiwan Strait on May 25, 2002*, 331 F. Supp. 2d

13   1176, 1186 (C.D. Cal. 2004) (noting, in finding that Taiwan was an adequate forum for plaintiff's

14   civil claims, that "Taiwan courts have the power to compel witnesses to testify and give evidence;

15   to take evidence from expert witnesses and order their own investigation of the case; and to compel

16   the parties to produce documents for the court's consideration. Parties may request that the court

17   compel the production of evidence, and if a party is dissatisfied with the judgment of the trial court,

18   he or she has the right to an appeal."). Similarly, Taiwan civil courts have the authority to award

19   damages and other relief for trade secret misappropriation. Taiwan Trade Secrets Act, Articles 11,

20   12, and 13, effective February 1, 2013. In short, Taiwan can provide both convenient and effective

21   relief for Micron's claims, and nothing in Taiwan will prevent discovery of relevant evidence.

22   **(7) Taiwan Is an Alternative Forum**. Micron has come forward with no evidence to

23   support its argument that Taiwan would be unable provide an adequate forum for its civil claims.

24   *See, e.g., Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983) ("Boeing's assertion that

25   Taiwan was an adequate forum was supported by sufficient evidence.")

26   **III.    CONCLUSION**

27   For the foregoing reasons, Micron's FAC should be dismissed.

28

- 15 -

DEFENDANT UMC'S REPLY TO PLAINTIFF
MICRON'S OPPOSITION TO MOTION TO DISMISS     CASE NO. 3:17-CV-06932-MMC

1     DATED: March 15, 2019

2                                                          DAN JOHNSON LAW GROUP

3                                                          By: */s/ Daniel Johnson Jr.*
                                                                    Daniel Johnson, Jr.

4
                                                          *Attorneys for Defendant*
5                                                         UNITED MICROELECTRONICS
                                                          CORPORATION
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -