Randall E. Kay (State Bar No. 149369)
rekay@jonesday.com
Douglas L. Clark (State Bar No. 279408)
dlclark@jonesday.com
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA  92121.3134
Telephone:     +1.858.314.1200
Facsimile:     +1.844.345.3178

Patrick T. Michael (State Bar No. 169745)
pmichael@jonesday.com
Marcus S. Quintanilla (State Bar No. 205994)
mquintanilla@jonesday.com
JONES DAY
555 California Street, Suite 2600
San Francisco, CA 94104.1501
Telephone:     +1.415.626.3939
Facsimile:     +1.415.875.5700

Attorneys for Plaintiff
MICRON TECHNOLOGY, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICRON TECHNOLOGY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED MICROELECTRONICS CORPORATION, FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD., and DOES 1-10,<br><br>Defendants. | Case No. 3:17-CV-06932-MMC<br><br>**PLAINTIFF MICRON TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANT FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM AND FORUM NON CONVENIENS**<br><br>Date:          April 19, 2019<br>Time:          9:00 a.m.<br>Judge:         Hon. Maxine M. Chesney<br>Courtroom:     7, 19th Floor |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................1

II.   PROCEDURAL HISTORY AND BACKGROUND.............................................3

III.  THIS COURT HAS PERSONAL JURISDICTION OVER JINHUA .................4

      A.    Under Rule 4(k)(2), Jinhua's Aggregate Contacts with the U.S. Establish
            Jurisdiction. ...........................................................................................5

            1.    Jinhua's Patent Applications in the U.S. Are Sufficient to Establish
                  Jurisdiction. ...................................................................................6

            2.    Jinhua's Delegation to Recruit Engineers Also Supports Jurisdiction..........8

            3.    Jinhua Visited Bay Area Vendors and Purchased Tools for
                  Manufacturing Products to Use the Stolen Technology. ............................9

      B.    Jinhua Has Failed to Satisfy Its Heavy Burden to Show That Exercise of the
            Court's Jurisdiction Would Be Unreasonable.........................................10

IV.   MICRON'S PLEADING STATES A CLAIM AND SATISFIES FRCP 8(A)(2)............13

V.    JINHUA FAILED TO SATISFY THE HIGH BURDEN FOR DISMISSAL
      BASED ON FORUM NON CONVENIENS .......................................................17

      A.    Taiwan Is Not an Adequate Forum. .......................................................18

      B.    Private / Public Interest Factors Weigh Strongly Against Dismissal.....................18

VI.   CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

Page

**CASES**

*Alta Devices, Inc. v. LG Elecs., Inc.*,
   343 F. Supp. 3d 868 (N.D. Cal. 2018) ............................................................. 16, 17

*Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*,
   226 Cal. App. 4th 26 (2014) .................................................................................. 6

*Am. Wave Machines, Inc. v. Surf Lagoons, Inc.*,
   No. 13-CV-3204-CAB NLS, 2014 WL 10475281 (S.D. Cal. Nov. 12, 2014) ........ 6

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip., Inc.*,
   No. C 07-05248 JW, 2008 WL 11398913 (N.D. Cal. Feb. 29, 2008) ................... 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 13, 14

*Attia v. Google LLC*,
   No. 17-CV-06037-BLF, 2018 WL 2971049 (N.D. Cal. June 13, 2018) ............... 24

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017).............................................................................. 4

*Basic Fun, Inc. v. POP Mktg. Grp., Inc.*,
   No. CIV.A. 06-1129, 2006 WL 1648982 (E.D. Pa. June 12, 2006) ..................... 24

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................... 13, 14

*Boston Telecomms. Grp., Inc. v. Wood*,
   588 F.3d 1201 (9th Cir. 2009).............................................................. 18, 20, 23

*Brand v. Menlove Dodge*,
   796 F.2d 1070 (9th Cir. 1986).............................................................................. 11

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)................................................................................................ 9

*Condos v. Condos*,
   No. CV 04-07365 DT, 2006 WL 8431432 (C.D. Cal. Feb. 9, 2006)................... 23

*Cooper v. Tokyo Elec. Power Co.*,
  166 F. Supp. 3d 1103 (S.D. Cal. 2015) ................................................................. 22

*Core-Vent Corp. v. Nobel Indus. AB*,
  11 F.3d 1482 (9th Cir. 1993) ................................................................................ 11

*Corporate Invest. Business Brokers v. Melcher*,
  824 F.2d 786 (9th Cir. 1987) ................................................................................ 11

*CYBERsitter, LLC v. People's Republic of China*,
  No. CV 10-38-JST SHX, 2010 WL 4909958 (C.D. Cal. Nov. 18, 2010) ........................ 23, 24

*Destfino v. Kennedy*,
  No. CVF081269LJODLB, 2009 WL 63566 (E.D. Cal. Jan. 8, 2009) ................................. 17

*Destfino v. Reiswig*,
  630 F.3d 952 (9th Cir. 2011) ................................................................................ 17

*DEX Sys., Inc. v. Deutsche Post AG*,
  727 F. App'x 276 (9th Cir. 2018) ............................................................................ 4

*Doe, I v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) .................................................................................. 5

*Dole Food Co. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ........................................................................... passim

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ................................................................................ 14

*Enriquez v. Interstate Grp., LLC*,
  No. 11-CV-05155 YGR, 2012 WL 3800801 (N.D. Cal. Aug. 31, 2012) ........................ 10

*Fontana v. Haskin*,
  262 F.3d 871 (9th Cir. 2001) ................................................................................ 17

*Gates Learjet Corp. v. Jensen*,
  743 F.2d 1325 (9th Cir. 1984) ......................................................................... 12, 24

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) ................................................................. 5, 10, 12, 13

*Holland Am. Line Inc. v. Wärtsilä N. Am.*,
  485 F.3d 450 (9th Cir. 2007) ............................................................................... 4, 5

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,
   817 F.2d 75 (9th Cir. 1987)................................................................................. 24

*In re Air Crash Over Taiwan Straits on May 25, 2002*,
   331 F. Supp. 2d 1176 (C.D. Cal. 2004) ............................................................... 24

*In re Cybernetic Servs., Inc.*,
   252 F.3d 1039 (9th Cir. 2009)............................................................................. 22

*Informatics Applications Grp., Inc. v. Shkolnikov*,
   836 F. Supp. 2d 400 (E.D. Va. 2011)................................................................ 6, 7

*Labor Ready, Inc. v. Williams Staffing, LLC*,
   149 F. Supp. 2d 398 (N.D. Ill. 2001) ..................................................................... 8

*Lismont v. Alexander Binzel Corp.*,
   No. 2:12cv592, 2013 WL 6095461 (E.D. Va. Nov. 18, 2013) ................................. 6

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
   858 F.2d 509 (9th Cir. 1988)............................................................................... 24

*Manu Int'l., S.A. v. Avon Prods, Inc.*,
   641 F.2d 62 (2d Cir. 1981)................................................................................... 21

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008).............................................................................. 14

*Mattel, Inc. v. MGA Ent't Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2010) ................................................................. 16

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Development Co., LTD.*,
   No. C 06-7541 PJH, 2007 WL 2403395 (N.D. Cal. Aug. 20, 2007) ................ 22, 23

*Mocha Mill, Inc. v. Port of Mokha, Inc.*,
   No. 18-CV-02539-HSG, 2019 WL 1048252 (N.D. Cal. Mar. 5, 2019) .............. 7, 8

*Nibirutech Ltd v. Jang*,
   75 F. Supp. 3d 1076 (N.D. Cal. 2014) ................................................................. 18

*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998).............................................................................. 13

*Perfect 10, Inc. v. RapidShare AG*,
   No. 09-CV-2596 (WMC), 2010 WL 11508846 (S.D. Cal. May 12, 2010) ............. 20

*Pillsbury, Madison & Sutro v. Lerner*,
   31 F.3d 924 (9th Cir. 1994) ........................................................................................ 16

*Rare Breed Distilling v. Heaven Hill Distilleries*,
   No. C-09-04728 EDL, 2010 WL 335658 (N.D. Cal. Jan. 22, 2010) ............................... 19, 20

*Repap Enters. Inc. v. Kamyr Inc.*,
   No. 92-5701, 1993 WL 322881 (E.D. Pa. June 8, 1993) ............................................... 6

*Roth v. Garcia Marquez*,
   942 F.2d 617 (9th Cir. 1991) ...................................................................................... 10

*S.E.C. v. Fraser*,
   No. CV-09-00443-PHX-GMS, 2010 WL 5776401 (D. Ariz. Jan. 28, 2010) ..................... 17

*Sarinana v. DS Waters of Am., Inc.*,
   No. C-13-0905 EMC, 2013 WL 3456687 (N.D. Cal. July 9, 2013) .................................. 21

*Sinatra v. Nat'l Enquirer, Inc.*,
   854 F.2d 1191 (9th Cir. 1988) ................................................................................ 11, 12

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
   563 F.3d 1285 (Fed. Cir. 2009) ............................................................................. 8, 9, 10

*Touchcom, Inc. v. Bereskin & Parr*,
   574 F.3d 1403 (Fed. Cir. 2009) ..................................................................................... 6

*Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*,
   108 F. Supp. 3d 816 (N.D. Cal. 2015) .......................................................................... 24

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ..................................................................................... 16

*Wood v. World Wide Ass'n of Specialty Progs. & Sch., Inc.*,
   No. 2:06-CV-708 TS, 2007 WL 2821768 (D. Utah Sept. 27, 2007) .............................. 24

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006) ...................................................................................... 4

**STATUTES**

18 U.S.C. § 1837(2) ........................................................................................................ 4, 10

18 U.S.C. § 1839(5) ............................................................................................................ 14

18 U.S.C. § 1961(1)(B) ................................................................................................... 14, 15

MICRON'S OPP'N TO JINHUA'S MTD
Case No. 3:17-CV-06932-MMC

Cal. Civ. Code § 3426.1(b) ......................................................................................... 14

California Uniform Trade Secrets Act .................................................................... passim

Defend Trade Secrets Act ...................................................................................... passim

Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1962 ............................. passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4(k)(2) ............................................................................................. passim

Fed. R. Civ. P. 8 ............................................................................................... 13, 16, 17

Fed. R. Civ. P. 9(b) .................................................................................................... 16

Fed. R. Civ. P. 12(b)(6) .................................................................................... 13, 14

H.R. Rep. No. 114-529 .................................................................................. 12, 23, 24

1    **I.       INTRODUCTION**

2           This case involves a conspiracy between United Microelectronics Corporation ("UMC"),

3    Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua") and others to acquire and use Micron

4    Technology, Inc.'s ("Micron") valuable trade secrets through acts performed in California, in the

5    United States and abroad.  Micron—headquartered in Boise, Idaho and with substantial personnel,

6    sales and assets in the Northern District of California—is the owner of the stolen trade secrets at

7    issue.  As one of the world's leading producers of dynamic random access memory ("DRAM"),

8    Micron is a target of China's efforts to acquire advanced semiconductor technologies from the

9    U.S.[1]  Micron is a victim of foreign commercial espionage that has made international headlines.[2]

10          The Court should deny Jinhua's motion to dismiss asserting lack of personal jurisdiction,

11   failure to state a claim and forum non conveniens (Dkt. 168 ("Motion")).  First, Jinhua availed

12   itself of the U.S. by misappropriating trade secrets here, directly harming Micron.  Second, Micron

13   has properly stated a claim for trade secret misappropriation and Racketeer Influenced and Corrupt

14   Organizations Act ("RICO").  Third, this forum is convenient, and Taiwan is not an adequate

15   forum.

16          Jinhua's legal argument is flawed and groundless.  For example, Jinhua mischaracterizes

17   Micron's First Amended Complaint ("FAC") (Dkts. 140-3, 156) as only including a single event

18   of trade secret misappropriation, claiming that the Defend Trade Secrets Act ("DTSA") was made

19   effective "after the alleged *event* in question" and that "the alleged *event* occurred outside

20   California."  Jinhua further states that "none of the acts of the alleged conspiracy" took place in

21   California.  These are specious and misleading arguments, as there are a multitude of events in

22   California and the U.S., including: (i) that Jinhua traveled to this District to recruit engineers in

23   furtherance of its misappropriation of DRAM technology stolen from Micron; (ii) that Jinhua met

24   with and purchased equipment from vendors in this District to monetize trade secrets stolen from

25   Micron; and (iii) that Jinhua with UMC jointly filed 117 patent applications in the U.S., in which

26   _____

[1] Comm'n on Theft of Am. Intellectual Prop., Update to the IP Commission Report, at 15 (Feb.
27   2017), *available at* http://ipcommission.org/report/IP_Commission_Report_Update_2017.pdf.
[2] New York Times, "Inside a Heist of American Chip Designs, as China Bids for Tech Power"
28   (June 22, 2018), *available at* https://www.nytimes.com/2018/06/22/technology/china-micron-
chips-theft.html.

1    at least eleven filings constitute a separate act of misappropriation.

2           The Court should deny Jinhua's Motion in its entirety. *First,* there can be no doubt that

3    Jinhua is subject to this Court's personal jurisdiction. Jinhua exploited trade secrets stolen from

4    Micron by jointly filing for and obtaining over a hundred patents in the U.S., of which at least

5    eleven of the filings constitute acts of misappropriation in the U.S. as they *use and disclose*

6    Micron's trade secrets. Additionally, Jinhua availed itself of this Court's jurisdiction with its

7    October 2016 recruiting activities at the Chinese American Semiconductor Professional

8    Association ("CASPA") in this District, along with meetings and purchases from top U.S.

9    semiconductor equipment suppliers in this District, both alleged as acts in furtherance of the

10   UMC/Jinhua DRAM Project, using Micron's trade secrets.

11          *Second*, Jinhua for the first time has raised the issue of failure to state a claim. Micron's

12   FAC, however, methodically laid out facts supporting each element of Micron's trade secret

13   misappropriation and RICO claims, including that: Jinhua and UMC formed a global business

14   enterprise premised on UMC's theft of Micron's trade secret technology; Jinhua knew the

15   technology it would receive from UMC under their agreement would be stolen from Micron; and

16   Jinhua participated in acts of misappropriation, as well as acts in furtherance of misappropriation,

17   by sending a joint delegation to this District to recruit engineers and by jointly publishing patent

18   applications disclosing Micron's technology without Micron's consent. Micron also alleged that it

19   suffered economic damages as a result of Jinhua's actions.

20          *Finally*, and also for the first time, Jinhua raised the issue of forum non conveniens,

21   claiming that Taiwan would be an adequate forum. Taiwan, however, is not adequate, at least

22   because: it lacks discovery procedures; it does not have RICO claims; it cannot compel Jinhua's

23   attendance at trial in Taiwan; and it cannot enforce a judgment against Jinhua. And even if

24   Taiwan were an adequate forum, the forum non conveniens factors weigh heavily against Jinhua,

25   because, among other things: this District and the U.S. have a huge interest in this case; much of

26   the evidence and witnesses reside here[3]; Jinhua purposefully availed itself of the U.S. and its laws

27   with over 117 UMC/Jinhua Patent Filings, at least eleven constituting acts of trade secret

28   _____

[3] Jinhua asserts more false statements, including that "not a single witness is in California," when
in fact there are over two dozen such witnesses.

1   misappropriation; Micron's business is located in this District including management and directly-

2   affected business units; and two closely related government cases against Jinhua are pending

3   before this Court.  Notably, a press release for the related criminal action states:

4       The theft of intellectual property on a continuing basis by nation-state actors is
    an even more damaging affront to the rule of law.  We in the Northern District
5       of California, one of the world's great centers of intellectual property
    development, will continue to lead the fight to protect U.S. innovation from
6       criminal misappropriation, whether motivated by personal greed or national
    economic ambition.[4]

7

8   The same principles support holding wrongdoers accountable in civil cases in this District.

9       Jinhua's Motion should be denied.

10  **II.     PROCEDURAL HISTORY AND BACKGROUND**

11      On December 5, 2017, Micron filed suit against UMC and Jinhua for trade secret

12  misappropriation and RICO.  (Dkt. 1.)  UMC filed a motion to dismiss for lack of jurisdiction,

13  resulting in jurisdictional discovery.  (Dkts. 27, 53.)  Also, during this time, Micron discovered

14  that DRAM-related patents disclosing Micron's trade secrets were publishing and were assigned to

15  UMC and Jinhua ("UMC/Jinhua Patent Filings").  Jinhua filed a first motion to dismiss for lack of

16  personal jurisdiction and insufficient service of process, which Micron opposed.  (Dkts. 106, 116.)

17  Micron filed a motion for alternative service, which was granted.  (Dkts. 117, 136.)  On January

18  18, 2019, the Court granted Jinhua's motion to dismiss with leave for Micron to amend its

19  complaint.  (Dkt. 139.)  In its Order, the Court recognized that while a U.S. patent applicant is

20  deemed to have purposefully directed its activities at the U.S., Micron had not made those

21  allegations in its complaint.  (*Id.* at 4:10-23.)  The Court also found that Micron's complaint did

22  not adequately allege meetings with equipment vendors and recruiting efforts in this District.  (*Id.*

23  at 5:1-6:10.)  Micron learned additional facts during jurisdictional discovery.

24      In response, Micron filed its FAC, following the Court's guidance.  (*See* Dkt. 139.)  In its

25  FAC, Micron alleged facts of UMC's misappropriation of thousands of files detailing Micron's

26  trade secrets, (FAC ¶¶ 4, 22, 47, 72, 74), through both the knowing downloads from U.S. servers

27

28  [4]  Declaration of Douglas L. Clark in Support of Micron's Opposition ("Clark Decl.") Ex. 1 (Press
Release of the U.S. Department of Justice).

1   (*id.* ¶¶ 47-51) and at least 117 UMC/Jinhua Patent Filings, which filings may constitute

2   independent acts of misappropriation (*id.* ¶ 4).  Also, Jinhua engaged in acts in furtherance of its

3   misappropriation by recruiting engineers and meeting with vendors and purchasing equipment in

4   this District.  (*Id.* ¶¶ 23-45, 83-84.)  Now, Jinhua filed yet another motion to dismiss, this time on

5   three grounds: personal jurisdiction, failure to state a claim and forum non conveniens.  Each fails.

6   ## III.   THIS COURT HAS PERSONAL JURISDICTION OVER JINHUA

7           Jinhua is subject to the Court's specific personal jurisdiction if: (1) Jinhua purposefully

8   directed activities at the forum; (2) Micron's claims relate to the forum-related activities; and (3)

9   the exercise of jurisdiction is reasonable.  *See DEX Sys., Inc. v. Deutsche Post AG*, 727 F. App'x

10  276, 277 (9th Cir. 2018) (citing *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-69

11  (9th Cir. 2017)).  Under that standard, "purposeful direction" requires that the defendant allegedly

12  has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that

13  the defendant knows is likely to be suffered in the forum state."  *Id.* (Quotations omitted.)

14          Because Micron asserts federal claims under the DTSA and Civil RICO, Federal Rule of

15  Civil Procedure ("Rule") 4(k)(2) expands the focus of the minimum-contacts analysis.  Where, as

16  here, Jinhua identifies no U.S. state in which it would be amenable to suit, Rule 4(k)(2) provides a

17  federal long-arm statute that allows Micron to rely on Jinhua's contacts not only with the forum

18  state, but with the U.S. as a whole.  *See Holland Am. Line Inc. v. Wärtsilä N. Am.,* 485 F.3d 450,

19  461-62 (9th Cir. 2007) (holding that a court may consider defendant's "contacts with the nation as

20  a whole" when defendant does not identify a state for jurisdiction).  Under Rule 4(k)(2),

21  jurisdiction attaches as long as the defendant's aggregate contacts with the U.S. support personal

22  jurisdiction.  *Id.* at 461.[5]  Moreover, as applied to Micron's claim under the DTSA, Rule 4(k)(2)

23  subjects Jinhua to the Court's jurisdiction if it committed some act of misappropriation—or "an act

24  in furtherance of" its misappropriation—in the U.S.  18 U.S.C. § 1837(2).

25          Thus, personal jurisdiction over Jinhua is proper if Jinhua expressly aimed intentional acts

26  at the U.S. and caused Micron injury here.[6]  Because Micron is headquartered in Idaho, owns all of

27  [5] To escape the application of Rule 4(k)(2), the defendant must stipulate that personal jurisdiction
    would be proper in another U.S. district court.  (*Id.*)  Jinhua has not done so.

28  [6] The plaintiff, however, need not have suffered the "brunt" of its harm in the forum.  *Yahoo! Inc.
    v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc).

1   the stolen trade secrets, and conducts R&D activities there, its injuries have clearly been felt in the

2   U.S. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002) (noting that a "corporation

3   can suffer economic harm both where the bad acts occurred and where the corporation has its

4   principal place of business"). Moreover, even the government has recognized Micron's injury in

5   this exact case, stating that "[i]f China acquires an American company's most important

6   technology – the very technology that makes it the leader in a field – that company will suffer

7   severe losses, and our national security could even be impacted." (Clark Decl. Ex. 1.) The crucial

8   inquiry is whether Jinhua expressly aimed its misconduct here. As shown below, it did.[7]

9       Finally, the Court weighs reasonableness (i.e., fair play and substantial justice) using seven

10  factors, which favor Micron. *Harris Rutsky*, 328 F.3d at 1132 (citations omitted). Under these

11  controlling standards, Micron's FAC establishes that Jinhua purposefully directed its actions at the

12  U.S. (including California), Micron's claims arise out of, and relate to, those activities, and

13  jurisdiction is fair.

14      **A.    Under Rule 4(k)(2), Jinhua's Aggregate Contacts with the U.S.**

15          **Establish Jurisdiction.**

16      Rule 4(k)(2) governs the jurisdictional analysis of Micron's federal claims under RICO and

17  the DTSA. Where Jinhua identifies no U.S. state in which it would be amenable to suit, Rule

18  4(k)(2) allows Micron to rely on Jinhua's minimum contacts not only with the forum state, but

19  with the U.S. as a whole.[8] Jinhua's U.S. contacts establish personal jurisdiction under Rule

20  4(k)(2). First, Jinhua has been filing U.S. patent applications incorporating trade secrets stolen

21  from Micron at an alarming rate, and Micron has pled that at least eleven patent filings constitute

22  separate acts of trade secret misappropriation. (FAC ¶¶ 4, 92-98.) Second, UMC and Jinhua sent

23  a large delegation to this District seeking DRAM engineers in furtherance of their trade secret

24  misappropriation. (FAC ¶¶ 23-36, 82.) Third, UMC and Jinhua interviewed, conducted meetings

---

25  [7] Unless directly controverted, Micron's "version of the facts is taken as true, and 'conflicts
between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor. . . .'"

26  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003)
(quoting *Doe, I v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)).

27  [8] Interestingly, Jinhua—attempting to avoid Micron's arguments under Rule 4(k)(2)—leads with a
quote from the *Holland* case about the supposed rarity of Rule 4(k)(2) cases, but, of course,

28  *Holland* is a 12-year old case, and in actuality to date over 800 cases have cited to Rule 4(k)(2).
(*See* Clark Decl. ¶ 2.)

1   with, and purchased equipment from major equipment vendors located in this District.  (FAC

2   ¶¶ 37-45, 83-84.)  Finally, Micron has been harmed in this District, as well as elsewhere in the

3   U.S.  (FAC ¶¶ 62, 126, 134, 141.)

4           **1.**        **Jinhua's Patent Applications in the U.S. Are Sufficient to**

5                   **Establish Jurisdiction.**

6           Jinhua purposefully directed its misconduct at the U.S. by seeking and obtaining U.S.

7   patents based on technology stolen from Micron, and Micron's claim for trade secret

8   misappropriation directly arises from many of the UMC/Jinhua Patent Filings.  (FAC ¶¶ 4, 95.)

9   Courts hold that the filing of a U.S. patent application based on another's trade secrets is an act of

10   misappropriation in the U.S.  *See Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp.

11   2d 400, 423 (E.D. Va. 2011); *accord Repap Enters. Inc. v. Kamyr Inc.*, No. 92-5701, 1993 WL

12   322881, at \*8 (E.D. Pa. June 8, 1993) (including trade secrets in patent applications is

13   misappropriation); *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 65-66

14   (2014) (same).  Moreover, applying Rule 4(k)(2), "[t]he Federal Circuit has determined that the

15   filing of a patent application . . .  is a 'purposeful' activity directed at 'parties in the United States,'

16   and is sufficient to establish 'minimum contacts' with the United States and 'satisfy due process.'"

17   *Lismont v. Alexander Binzel Corp.*, No. 2:12cv592, 2013 WL 6095461, at \*7 (E.D. Va. Nov. 18,

18   2013) (quoting *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009)).  As

19   such, "the filing of the U.S. patent application in this case qualifies as a 'purposefully directed'

20   activity toward, and a 'minimum contact' with, the United States."  *Id.*  Here, Jinhua purposefully

21   directed activity to the U.S. through its at least 117 UMC/Jinhua Patent Filings.  (FAC ¶¶ 4, 92.)

22           Micron's claim for trade secret misappropriation also arises out of and directly relates to

23   these UMC/Jinhua Patent Filings.  *See Touchcom, Inc.*, 574 F.3d at 1416-17; *see also Am. Wave*

24   *Machines, Inc. v. Surf Lagoons, Inc.*, No. 13-CV-3204-CAB NLS, 2014 WL 10475281, at \*8

25   (S.D. Cal. Nov. 12, 2014).  Starting in September 2016, and publishing in late 2017, UMC and

26   Jinhua have applied for and obtained patents based on Micron's trade secrets.  (FAC ¶ 92.)  All

27   were filed after UMC improperly acquired Micron's trade secrets.[9]  (FAC ¶ 93.)  Many of the

28   ---
  [9] Leading up to the filing dates of each of the UMC/Jinhua Patent Filings, UMC was in possession of more than 20,000 files that Ho had stolen from Micron.  (FAC ¶¶ 16, 54.)  UMC was also in

1    UMC/Jinhua Patent Filings describe the same technologies as described in trade secrets stolen

2    from Micron.  (*Id.*)  Given the short period of time from when UMC and Jinhua commenced

3    working on the UMC/Jinhua DRAM Project and the filing of patents, the Defendants did not and

4    could not have independently developed the DRAM in the patent applications. (*Id.*; FAC ¶ 12.)

5            Specifically, Micron alleged that at least eleven of the UMC/Jinhua Patent Filings

6    "constitute[e] improper use and disclosure of Micron's trade secrets."  (FAC ¶¶ 4, 95.)  "But for"

7    these eleven filings, these separate acts of misappropriation would not exist, harming Micron.

8    (FAC ¶¶ 62, 126, 134, 141.)  Micron further alleged the actual trade secret document title in

9    UMC's possession along with page number.  (FAC ¶ 95.)  Micron finally alleged that "[b]y using

10   and disclosing Micron's trade secrets in the UMC/Jinhua Patent Filings as set forth herein, UMC

11   and Jinhua engaged in acts of misappropriation and acts in furtherance of their misappropriation

12   from Micron in the United States and in this District."  (FAC ¶ 4.)  Additionally, the vast majority

13   of the UMC/Jinhua Patent Filings name former Micron engineers as inventors, including for

14   example co-conspirator Ho (inventor on at least 25 UMC/Jinhua Patent Filings), co-conspirator

15   Wang (inventor on at least 5), and Neil Lee (named inventor on at least 33).  (FAC ¶¶ 4, 16-17,

16   94.)  As of the filing of the FAC, former Micron employees were named inventors on as many as

17   110 of the 117 UMC/Jinhua Patent Filings—almost 95%.  (FAC ¶ 94.)  Micron's claim for trade

18   secret misappropriation arises out of and relates to the UMC/Jinhua Patent Filings, because the

19   filings constitute the improper use and disclosure of Micron's trade secrets.  *Informatics*, 836 F.

20   Supp. 2d at 423.  And contrary to what Jinhua argued, Micron was harmed in this District, as well

21   as elsewhere in the U.S.  (FAC ¶¶ 62, 126, 134, 141.)

22           Jinhua's Motion makes several erroneous arguments and statements.  First, Jinhua

23   mischaracterizes the case law by saying that under Rule 4(k)(2), "nationwide contacts" must be

24   "significant," but the case to which Jinhua cited does not support this proposition.  (Jinhua's

25   Motion at 10:1-4 (citing *Mocha Mill, Inc. v. Port of Mokha, Inc.*, No. 18-CV-02539-HSG, 2019

26   WL 1048252, at *6 (N.D. Cal. Mar. 5, 2019)).  Instead, the *Mocha Mill* court found that Rule

27   ────────────────

28   possession of those files downloaded by Wang, including many from U.S. servers.  (FAC ¶ 47.)
     UMC delivered much of this technology to Jinhua to enable it to illegally and unfairly compete in
     the DRAM business.  (FAC ¶ 90; *see also* FAC ¶¶ 11, 33, 67.)

1    4(k)(2) did not apply only because "Plaintiffs pleaded no U.S. contacts outside of California."

2    *Mocha Mill*, 2019 WL 1048252, at *6.  Here, Micron pled plenty of U.S. contacts both inside and

3    outside of California.  Second, Jinhua makes the statement—unsupported by case law or logic—

4    that Micron's argument "would subject any foreign patent owner to personal jurisdiction in any

5    district of the United States."  (Jinhua's Motion 10:4-5.)  Micron's argument, however, is isolated

6    to the scenario where a foreign patent owner files patents in the U.S. that use or disclose another's

7    trade secrets, resulting in jurisdiction.  Third, Jinhua misreads the Court's Order (Dkt. 139),

8    interpreting it to mean that the Court has already addressed and rejected the issue of patent filings.

9    (Jinhua's Motion at 10:6-8.)  But in actuality, the Court acknowledged that patent filings may be

10   deemed purposeful availment,[10] indicated that Micron did not plead them *in its complaint*, and

11   gave Micron the opportunity to properly plead the patent filings, which it did.[11]  (Dkt. 139.)

12        Jinhua's patent filings in the U.S. constitute purposeful availment, and Micron's claim for

13   trade secret misappropriation arises out of those filings.  These facts alone warrant a finding of

14   personal jurisdiction under Rule 4(k)(2).

15                **2.    Jinhua's Delegation to Recruit Engineers Also Supports Jurisdiction.**

16        Jinhua's delegation (organized by UMC) to Silicon Valley in October 2016 demonstrates

17   substantial steps in furtherance of the misappropriation plot to recruit engineers for Jinhua.  Trade

18   secret misappropriation can be sufficiently pled by alleging use of stolen information to recruit

19   employees and customers.  *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398,

20   411–12 (N.D. Ill. 2001); *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563

21   F.3d 1285, 1290 (Fed. Cir. 2009) (defendant's meeting with U.S. companies at trade show

22   constituted "purposeful direction" at the forum to support personal jurisdiction).

_____

23   [10] In the criminal proceeding, the Court said that an application for U.S. patents "is pretty big
     availment of one's resources in the Northern District or in the United States, I think."  (Clark Decl.
24   Ex. 7.)

25   [11] Jinhua makes three other arguments. It argues that Micron failed to state the role of Jinhua in the
     patent prosecution process, (Jinhua's Motion at 10 n. 5), but Micron did, including Jinhua's Power
26   of Attorney to enable U.S. Patent Agents to prosecute the patent and the executed assignment
     documents to Jinhua.  (FAC ¶ 97.)  Jinhua claims that none of the causes of action in the FAC
27   refer to the UMC/Jinhua Patent Filings, which is false, since all the causes of action incorporate
     the patent filings by reference. (*See, e.g.*, FAC ¶¶ 100-101.)  Finally, Jinhua states that the FAC
28   does not show that Jinhua "purposefully directed" its U.S. patent filings in the U.S. by alleging
     injury, which is also untrue, because Micron alleged injury.  (FAC ¶¶ 62, 116-18, 146.)

As late as 2016, Jinhua had no engineers with DRAM experience (FAC ¶ 12), and UMC was not in the DRAM business (FAC ¶ 13).  UMC and Jinhua needed engineering talent to deploy the stolen technology.  (FAC ¶ 80.)  As such, in June 2016, Jinhua posted material on the U.S.-based organization CASPA's website advertising numerous Jinhua job openings in a variety of DRAM positions, including process and design R&D, manufacturing, DRAM yield and process optimization, and DRAM testing.  (FAC ¶ 80.)  In October 2016, UMC and Jinhua sent a delegation to Silicon Valley, including seven UMC and Jinhua executives, led personally by Chen, to recruit experienced semiconductor engineers from the U.S. for the UMC/Jinhua DRAM Project. (*Id.*)  The job fair was hosted by CASPA in this District and sponsored by Jinhua.  (*Id.*) Additionally, Jinhua held a separate recruiting event to actively recruit potential hires for its DRAM project.  (FAC ¶¶ 24-25.)  Jinhua recruited DRAM engineers at CASPA with UMC's assistance.  (FAC ¶ 27.)  UMC and Jinhua jointly prepared materials to present at CASPA, including milestone and technology roadmap information based off trade secret information stolen from Micron.  (FAC ¶¶ 24, 27.)  Approximately 60-80 engineers attended the CASPA event, and *on behalf of Jinhua*, UMC interviewed roughly 20 of them, many residing in Northern California. (FAC ¶ 80.)  Jinhua's and UMC's efforts to recruit for the DRAM project, relying on roadmaps and assurances of technical capabilities based on Micron's stolen technology, constituted acts in furtherance of UMC's misappropriation and support the Court's jurisdiction.  (FAC ¶¶ 24, 82.)

### 3.  Jinhua Visited Bay Area Vendors and Purchased Tools for Manufacturing Products to Use the Stolen Technology.

Nor was UMC's week-long trip to Silicon Valley limited to recruiting; it included equipment vendor meetings.  Courts have found that meetings with companies constitute "purposeful direction" to a forum and support personal jurisdiction.  *See Synthes*, 563 F.3d at 1290; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).  Here, the UMC-Jinhua delegation spent several days visiting leading suppliers of semiconductor equipment in this District.  (FAC ¶ 83.)  The suppliers included Applied Materials, Inc. ("Applied Materials"), KLA-Tencor ("KLA"), and Lam Research Corporation ("LAM"), all based in this District.  (FAC ¶ 38.) With Micron's confidential DRAM technology in hand while visiting the equipment vendors,

MICRON'S OPP'N TO JINHUA'S MTD
Case No. 3:17-CV-06932-MMC

1    (FAC ¶ 37), UMC and Jinhua knew precisely what equipment to procure.

2         In fact at the time of meeting with the vendors, UMC/Jinhua had already placed orders for

3    DRAM manufacturing equipment in this District and vendors had performed tool demonstration

4    work "for the DRAM project, all in furtherance of exploiting Micron's stolen DRAM technology."

5    (FAC ¶¶ 42, 83.)  One local vendor had even provided products in support of the UMC/Jinhua

6    DRAM Project prior to these meetings.  (*See* FAC ¶ 45.)  Each of the local vendors contributed to

7    the sale and export of the very equipment UMC and Jinhua would use to exploit technology stolen

8    from Micron.  (FAC ¶¶ 46, 84.)  Like recruiting, Jinhua's business meetings with crucial suppliers

9    in this District utilized stolen technology and were acts in furtherance of its misappropriation,

10   supporting the Court's jurisdiction (FAC ¶¶ 83, 84.).  *See Synthes*, 563 F.3d at 1290.

11        Finally, Micron also alleges that the vendor meetings were *acts in furtherance* of an even

12   more elaborate use of Micron's technology: the full commercialization of the stolen technology.

13   (FAC ¶¶ 80-84.)  As such, contrary to Jinhua's assertion, Jinhua's recruiting efforts and visits with

14   equipment vendors are "but for" causes of Micron's claims because they constitute acts of

15   misappropriation and acts in furtherance (an element required under 18 U.S.C. § 1837(2)) of

16   misappropriation *in the United States*.

17        **B.    Jinhua Has Failed to Satisfy Its Heavy Burden to Show That Exercise**

18              **of the Court's Jurisdiction Would Be Unreasonable.**

19        Because the minimum contacts portion of the jurisdictional analysis has been met, Jinhua

20   bears the heavy burden of showing that the Court's exercise of jurisdiction would nevertheless be

21   unreasonable under the seven factors set forth by the Ninth Circuit.  *Harris Rutsky,* 328 F.3d at

22   1132.  These factors must convincingly tilt against the exercise of jurisdiction.  *Id.* at 1134 (citing

23   *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991)); *see also Dole*, 303 F.3d at 1117 ("A

24   number of our cases emphasize the heavy burden on both domestic and foreign defendants in

25   proving a 'compelling case' of unreasonableness to defeat jurisdiction.").  "For the Court's

26   exercise of jurisdiction to be unreasonable, the burden of defending in California must be 'so

27   gravely difficult and inconvenient' that it violates due process."  *Enriquez v. Interstate Grp., LLC*,

28   No. 11-CV-05155 YGR, 2012 WL 3800801, at *6 (N.D. Cal. Aug. 31, 2012).  Jinhua cannot

1    present a "compelling case" that the Court should decline jurisdiction.

2         **(1)  Extent of Defendant's Purposeful Interjection into the Forum.**  This factor

3    typically favors jurisdiction even when "contacts with the forum state are nevertheless attenuated."

4    *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) (defendants' only contact

5    with forum state was writing an article alleged to have targeted a California resident).  Some Ninth

6    Circuit cases even say the degree of intrusion is irrelevant once minimum contacts has been met.

7    *See Corporate Invest. Business Brokers v. Melcher*, 824 F.2d 786, 787 (9th Cir. 1987).  Here,

8    however, the degree of intrusion—into California and the U.S. as a whole—is not attenuated.  As

9    Micron has shown, Jinhua's presence includes 117 U.S. patent filings many shown to incorporate

10   trade secrets stolen from Micron, (Dkt. 75-107 ¶¶ 13, 31, 38, 39, 46, 52, 59, 61; Dkt. 116-23 ¶¶ 5-

11   7, 9; FAC ¶¶ 4, 95), recruiting in this District, and meetings with and purchases from equipment

12   vendors in this District.  (FAC ¶¶ 23-45, 83-84.)  Further, Jinhua knowingly misappropriated trade

13   secrets and conspired against a company headquartered in Idaho, incorporated in Delaware, and

14   with a facility in this District that employs roughly 450 professionals including the executive

15   leadership of the company and the business units that market Micron's DRAM products.  (Dkt. 42-

16   1 ("Myers Decl.") ¶¶ 3-4.)

17        **(2)  Burden on Defendant of Defending in the Forum.**  Any burden to Jinhua of

18   defending this action in California is eclipsed by the burden to Micron if the case were brought in

19   Taiwan.  *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) (finding for plaintiff

20   after taking into account the balance of burdens between both parties, among other factors) (citing

21   *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986)).  To litigate in Taiwan, Micron

22   would have to contend with a court system that lacks discovery proceedings, does not have jury

23   trials, cannot compel Taiwanese defendants to produce evidence, cannot compel Jinhua to attend

24   trial or produce documents from China,[12] lacks an equivalent claim for RICO, and cannot enforce

25   judgment against Jinhua.  (Declaration of Po-Chien Chen ("Chen Decl.") ¶¶ 6, 9, 14, 15.)

26   _____

27   [12] While Jinhua claims that Taiwan can compel attendance of Jinhua's witnesses, it cannot.  (Chen Decl. ¶ 6.)  At most, Taiwanese courts may serve subpoenas, but they cannot compel compliance.
     (*Id.*)  Moreover, since Jinhua is a state-owned company, it is even more unlikely that the Chinese
28   government would hand over documents or witnesses. (*See id.* ¶ 8.)

Moreover, "modern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Sinatra*, 854 F.2d at 1199.

**(3)  Extent of Conflict with Sovereignty of Defendant's State.**  "Although this factor is important, it is not controlling." *Harris Rutsky*, 328 F.3d at 1133 (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984) ("If [this factor were] given controlling weight, it would always prevent suit against a foreign national in a United States court.")).  Here, Jinhua is not even arguing for jurisdiction in China, but rather Taiwan.  Therefore, the sovereignty of Jinhua's state is irrelevant.  Moreover, the U.S. has its own sovereignty to protect.  The U.S. has strong policy reasons to protect its companies from trade secret theft from China, and in making Micron whole.  H.R. Rep. No. 114-529 at 3-4 (2016).  Also, the alleged actions in this case include 117 UMC/Jinhua Patent Filings, each of which may constitute a separate act of misappropriation in the U.S., but not in Taiwan.

**(4)  Forum State's Interest in Adjudicating the Dispute.**  Applying Rule 4(k)(2), and considering the interests of the U.S., the legislative history of the DTSA leaves no doubt that Congress viewed it as an imperative public interest to provide U.S. technology companies a federal, private right of action to defend against misappropriation taking place abroad.  Explaining the rationale behind the DTSA's civil-action provision, Congress recognized "the 'significant and growing threat presented by criminals who engage in espionage on behalf of foreign adversaries and competitors.' . . . 'And the EEA, as a criminal statute, is not suited to making whole the victims of misappropriation.'" H.R. Rep. No. 114-529 at 3-4 (citations omitted).  In short, Congress enacted the DTSA to promote the national interest in enlisting civil enforcement against foreign violators of trade secret laws.  Micron further incorporates herein the forum non conveniens factors for public interest factors (1)-(5) *infra* Section V.B.

**(5)  Most Efficient Judicial Resolution of the Controversy.**  While typically turning on which forum will provide the litigants with better access to proof, "this factor is 'no longer weighed heavily given the modern advances in communication and transportation'" and, for that reason, the Ninth Circuit has sustained the reasonableness of personal jurisdiction even where almost all of the evidence and potential witnesses reside outside the United States.  *See Harris*

1  *Rutsky*, 328 F.3d at 1133 (quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir.

2  1998)).  Here, however, there is a significant amount of evidence and witnesses in this District.

3  (See public interest factor (3) *infra* Section V.B.)  Moreover, whatever the physical location of the

4  documents or witnesses, Taiwan's lack of discovery proceedings and methods to compel a

5  defendant—even for a Taiwanese defendant—to produce evidence refutes any argument that a

6  proceeding in Taiwan could provide better access to proof.  (Chen Decl. ¶ 9.)

7       **(6)  Forum's Importance to Plaintiff.**  Proceeding in this forum is important to Micron.

8  First, Micron maintains two DRAM-related business units (directly affected in this case) and

9  accounting for roughly 64 percent of Micron's sales in Fiscal Year 2017 in this District.  (Myers

10  Decl. ¶ 4.)  Second, much of Micron's corporate leadership is here, including its President and

11  CEO and the heads of three of Micron's four business units.  (*Id.*)  Finally, Micron incorporates

12  the forum non conveniens factors for private interest (1)-(3) *infra* Section V.B.

13       **(7)  Existence of an Alternative Forum.**  While Jinhua contends that Taiwan is an

14  adequate forum, it is not.  Micron incorporates *infra* Section V.A, demonstrating that Taiwan is

15  not an adequate forum, and even if it was, the other factors for forum non conveniens weigh in

16  favor of this District.  In particular, *infra* Section V.B, (private interest (1)-(6); public interest (1))

17  demonstrate the importance of this forum over Taiwan.

18       These factors favor Micron, and Jinhua has failed to meet its burden of unreasonableness.

19  **IV.  MICRON'S PLEADING STATES A CLAIM AND SATISFIES FRCP 8(A)(2)**

20       Rule 8(a)(2) requires that a complaint include "a short and plain statement of the claim

21  showing that the pleader is entitled to relief."  A complaint that fails to meet this standard may be

22  dismissed pursuant to Rule 12(b)(6).  The United States Supreme Court has held that Rule 8(a)

23  requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."

24  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when

25  the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

26  defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The

27  plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

28  possibility that a defendant has acted unlawfully."  *Id.* (quotations omitted).  For purposes of ruling

on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Micron has pled sufficient facts to show that Jinhua and UMC conspired to misappropriate Micron's trade secrets in violation of the DTSA, California Uniform Trade Secrets Act ("CUTSA"), and RICO. *See Bell Atlantic*, 550 U.S. at 570; *Ashcroft*, 556 U.S. 662 at 678; Fed. R. Civ. P. 8(a)(2). Under both the DTSA and the CUTSA, "misappropriation" means either (1) the "[a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means;" or (2) the "[d]isclosure or use of a trade secret of another without express or implied consent." [13] 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b). Misappropriation of trade secrets qualifies as a "racketeering activity" sufficient to state a claim under RICO. *See* 18 U.S.C. § 1961(1)(B) (identifying theft of trade secrets among the enumerated crimes qualifying as "racketeering activity"). The RICO statute, 18 U.S.C. § 1962(c), requires a plaintiff to prove that each defendant participated in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity which (5) proximately harmed the victim. *See Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Thus, to state a claim under all three of these statutes, Micron need only plead that Jinhua participated in the conduct of an enterprise that affects interstate commerce to steal Micron's trade secrets, and that Micron was proximately harmed. *See id*. Micron alleges facts supporting each of these elements.

First, Micron pleads that Jinhua and UMC entered a business arrangement that relied on UMC's theft of Micron's trade secrets. Micron pleads that Jinhua and UMC agreed to undertake the UMC/Jinhua DRAM Project, a global business enterprise under which UMC would provide Jinhua with advanced DRAM technology in exchange for $300 million in R&D equipment, $400 million in development fees, co-ownership of the resulting technology, and the potential for additional future licensing revenues. (FAC ¶¶ 67-68.) Micron pleads that at the time Jinhua

---

[13] Jinhua does not challenge Micron's allegations related to the existence, sufficiency and ownership of the trade secrets at issue. (*See generally* Motion at 12-15.)

entered this agreement, it knew that "UMC did not possess the technological resources to develop the promised technology by itself, and understood that the technology would be based substantially on Micron's DRAM designs and processes." (*Id.* ¶ 68.)  Micron further pleads that during a public groundbreaking event at the outset of the project, Jinhua "acknowledged that its partner, UMC, lacked the technical wherewithal for the project and would have to 'acquire' the necessary talent from other companies in Taiwan and elsewhere." (*Id.* ¶ 76.)  In fact, UMC and the founders of Jinhua developed and set in motion a plan for UMC to recruit key personnel from Micron's Taiwanese affiliate, Micron Memory Taiwan Co., Ltd ("Micron-Taiwan") and conspired together to induce former Micron-Taiwan employees to misappropriate trade secrets. (*Id.* ¶ 3.) Moreover, UMC and Jinhua jointly filed patents in the U.S. containing Micron's trade secrets, conduct affecting interstate commerce.  (*Id.* ¶¶ 92-95.) These facts demonstrate the conduct of an enterprise between UMC and Jinhua affecting interstate commerce.

Second, UMC's and Jinhua's conduct constitutes a pattern of racketeering activity based on repeated instances of misappropriation.  Micron pleads that Jinhua jointly filed over a hundred U.S. patents with UMC, and at least eleven were specifically alleged to use and disclose Micron's trade secrets.  (*Id.* ¶¶ 92-95.)  The eleven patent filings alone show a pattern of racketeering activity, because each constitutes a new act of trade secret misappropriation.  *See* 18 U.S.C. § 1961(1)(B).  Also, contrary to Jinhua's assertions, (Motion 15:1-5), Micron did, in fact, show that Jinhua acquired trade secrets, (FAC ¶ 95), knew that the information was a trade secret acquired through improper means, (FAC ¶¶ 68, 76), and that Jinhua benefitted from such use or disclosure (FAC ¶¶ 4, 7, 118).

Finally, Micron pleads damages arising from Jinhua's wrongful conduct.  (FAC ¶ 7, 62, 116-18, 146.)  The filing of patents constitutes misappropriation, (*Id.* ¶¶ 4, 92-95), and these filings threaten Micron from using its own trade secrets, which is a concrete financial loss.  *Attia v. Google LLC*, No. 17-CV-06037-BLF, 2018 WL 2971049, at *14 (N.D. Cal. June 13, 2018) (finding plaintiffs "sufficiently alleged concrete financial loss at the pleading stage through Plaintiffs' specific lost opportunities to use and profit from EA technology after Google patented the alleged trade secrets in 2012").  These misappropriations have caused and will continue to

cause Micron irreparable and substantial injury, as well as give UMC and Jinhua improper advantages, positions, and rights in the marketplace to Micron's detriment.[14]  (FAC ¶¶ 7, 116-118.)  Having alleged facts sufficient to show that Jinhua participated in the conduct of an enterprise that affects interstate commerce to steal Micron's trade secrets, and that Micron was proximately harmed, Micron has adequately stated claims under DTSA, CUTSA and RICO.  Rule 8(a) does not require more.

Jinhua has no basis to claim that Micron must meet Rule 9(b)'s heightened pleading standard.  Rule 9(b) applies when a party alleges fraud.  But fraud is not an element of any of Micron's claims.  In "a case where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b).  Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).  Given that fraud is not an element of any of Micron's claims, only specific factual averments of fraud would be subject to Rule 9(b).  Here, Jinhua does not point to any specific allegations of fraud, but merely asserts that Micron's allegations "touch on fraud."  (Motion at 22.)

Jinhua's other attempts to avoid the application of the DTSA, CUTSA, and RICO are similarly unavailing.  Jinhua is not correct that its wrongful conduct is immune from prosecution under the DTSA simply by virtue of beginning in 2015, before enactment of the DTSA.  The DTSA applies to "misappropriations that occur or *continue to occur* on or after its date of enactment on May 11, 2016."  *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (emphasis added, citations and quotations omitted).  Here, many patent filings, each a separate and independent act of misappropriation, occurred after May 11, 2016, (FAC

---

[14] Jinhua argues that Micron fails to sufficiently plead damages, because it does not allege a "concrete financial loss," but in fact it does, by claiming patent filings, "economic damage," and "actual damages in an amount to be proven at trial."  (FAC ¶¶ 61, 62, 92-95, 112, 117, 126, 134, 141, Prayer for Relief).  The cases Jinhua cites for this proposition are inapposite.  Micron is not pleading an intangible, abstract injury based solely on the loss of exclusive control of its trade secrets, with no provable damages as in *Mattel, Inc. v. MGA Ent't Inc.*, 782 F. Supp. 2d 911, 1020-21 (C.D. Cal. 2010).  In fact, *Mattel* is a summary judgment opinion, which is not relevant to a Rule 12(b)(6) motion.  Nor is the loss Micron claims attenuated from Jinhua's conduct, as in *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 929 (9th Cir. 1994), because Jinhua directly caused injury by filing patents that disclosed trade secrets resulting in harm to Micron.

1    ¶ 95), but even if they were considered a continuation of a misappropriation from before May 11,

2    2016, the DTSA would still apply.  *Alta Devices*, 343 F. Supp. 3d at 877.  Jinhua also cannot

3    escape application of the CUTSA by claiming its actions occurred only outside California.

4    (Motion at 15.)  They did not.  (*See, e.g.,* FAC ¶¶ 80-84 (alleging that Jinhua representatives

5    travelled to this district to recruit employees and entered into business contracts relying on

6    Micron's technology).)  Moreover, Jinhua's actions caused harm in California (FAC ¶ 62).  *See*

7    *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip., Inc.*, No. C 07-05248 JW, 2008

8    WL 11398913, at *6 (N.D. Cal. Feb. 29, 2008) (finding plaintiff stated a claim where alleged that

9    defendants "misappropriated its trade secrets and caused injurious effects in California").

10   　　　Finally, Jinhua's reliance on *Destfino* to argue that Micron did not satisfy Rule 8 by

11   incorporating allegations is misplaced.  The *Destfino* case involved the heightened pleading

12   standard for fraud (unlike here), and the complaint did not distinguish between 40 defendants,

13   lumping all together for each and every allegation, and incorporating every preceding paragraph

14   by reference.  *Destfino v. Kennedy*, No. CVF081269LJODLB, 2009 WL 63566, at *1, 5 (E.D. Cal.

15   Jan. 8, 2009), aff'd sub nom *Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011).  Here, unlike in

16   *Destino*, Micron meticulously specifies for each allegation whether it applies to UMC, Jinhua or

17   both, and it does <u>not</u> incorporate every preceding paragraph by reference for each cause of action.

18   While Micron does incorporate most allegations into the causes of action, it does so because it

19   "promotes simple, concise pleadings."  *Id.* at *4 (citing *Fontana v. Haskin*, 262 F.3d 871, 877 (9th

20   Cir. 2001)).  For the same reasons as *Destino*, UMC's citation of *S.E.C. v. Fraser,* No. CV-09-

21   00443-PHX-GMS, 2010 WL 5776401, at *9 (D. Ariz. Jan. 28, 2010), is misplaced.

22   **V.     JINHUA FAILED TO SATISFY THE HIGH BURDEN FOR DISMISSAL BASED**

23   **        ON FORUM NON CONVENIENS**

24   　　　The burden is extremely high for forum non conveniens, and Jinhua has not met it.  "A

25   party moving to dismiss based on forum non conveniens bears the burden of showing (1) that there

26   is an adequate alternative forum, and (2) that the balance of private and public interest factors

27   favors dismissal."  *Dole*, 303 F.3d 1104 at 1118.  "The plaintiff's choice of forum will not be

28   disturbed *unless* the 'private interest' and 'public interest' factors *strongly favor* trial in the foreign

country." *Id.* (emphasis added).  "Forum non conveniens is 'an exceptional tool *to be employed sparingly*, [not a] ... doctrine that compels plaintiffs to choose the optimal forum for their claim.'" *Id.* (emphasis added) (citations omitted).  Here, Jinhua has not demonstrated that Taiwan is an adequate forum, and Jinhua has not shown that the balance of factors favor dismissal.

### A.    Taiwan Is Not an Adequate Forum.

Jinhua failed to meet its burden that Taiwan is an adequate alternative forum.  *Dole*, 303 F.3d at 1118.  A foreign forum is adequate when it has personal jurisdiction over all defendants *and* "provides the plaintiff with a sufficient remedy for his wrong."  *Id.*  Here, Jinhua claims that a Taiwanese court will have jurisdiction over it under Taiwan's Code of Criminal Procedure; yet this is a civil case.  (Dkt. 168-2 ¶ 6.)  Jinhua's claim that Taiwan would have jurisdiction is groundless.  (Chen Decl. ¶ 7.)  Further, Jinhua makes only conclusory assertions that Taiwan is an adequate forum based on other cases, but "[t]he court makes the determination of adequacy on a case-by-case basis."  *Nibirutech Ltd v. Jang*, 75 F. Supp. 3d 1076, 1082 (N.D. Cal. 2014).  Jinhua ignores the lack of discovery procedures, the unavailability of an equivalent to RICO claims in Taiwan, the lesser remedies for trade secret misappropriation matters, the inability to force defendants (even Taiwanese defendants) to produce evidence, the inability to compel Jinhua's attendance at trial in Taiwan, and the lack of ability to enforce judgment against Jinhua.  (Chen Decl. ¶¶ 6, 9, 13-16.)  Jinhua also is <u>not</u> a party to any lawsuit in Taiwan, but is in this District.  Because Jinhua has not established that a Taiwanese court will have personal jurisdiction over it, that Taiwan "offers a satisfactory remedy[,] and that [it] can be bound by a judgment issued there," it has not met its burden.  *See Nibirutech Ltd*,  75 F. Supp. 3d at 1086 (denying dismissal due to inadequacy of China as forum, even with Chinese company).

### B.    Private / Public Interest Factors Weigh Strongly Against Dismissal.

Even if the Court finds Taiwan to be an adequate forum, the balance of private and public interest factors must still *strongly favor* trial in a foreign country for the Court to grant dismissal.  *Dole*, 303 F.3d at 1118.  The factors here favor proceeding in this District.

**Private Factors:**  Courts address seven private interest factors, *Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1206–07 (9th Cir. 2009), which are addressed as follows:

**(1) The residence of the parties and the witnesses.**  Micron has a strong business presence in this District.  Micron's President and CEO, its Executive Vice President and Chief Business Officer, and the heads of three of the company's four business units sit in Micron's Milpitas facility, along with roughly 450 Micron professionals (including engineering, management, and executive positions).  (FAC ¶ 62; Myers Decl. ¶ 4.)  Moreover, Micron's business location in this District is of special relevance to this case and accounts for a large portion of Micron's sales:  the Compute & Networking Business Unit ("CNBU") and the Mobile Business Unit ("MBU") are responsible, among other things, for Micron's DRAM products for PCs and mobile devices, respectively.  (Myers Decl. ¶ 4.)  These units account for about 64% of the company's net sales in Fiscal Year 2017 in this District.  (*See id.*)

Given Micron's strong ties to this District, Jinhua is not correct that Micron's choice of forum is entitled to less deference simply because its headquarters are in Boise, Idaho.  *See Rare Breed Distilling v. Heaven Hill Distilleries*, No. C-09-04728 EDL, 2010 WL 335658, at *3 (N.D. Cal. Jan. 22, 2010) (finding this District proper, even though plaintiff headquartered in Kentucky, because plaintiff had a presence in this District that performed functions related to issues in the case, and plaintiff's President worked in San Francisco).  Not only does Micron have a business presence in this District, but the leadership of its core business, and business units central to this case—responsible for a majority of Micron's sales—is here.  (*See* FAC ¶ 62; Myers Decl. ¶ 4.)

Additionally, Defendant UMC has significant sales in this District, as its *wholly-owned* subsidiary is located here, and UMC has reported annual inter-party sales into its subsidiary of approximately $1.8 billion.  (FAC ¶ 11.)  Moreover, UMC recently reported that 43% of its foundry sales were in North America with most of those sales from the United States, and UMC is traded on the New York Stock Exchange.  (*Id.*)

Micron anticipates relying on upwards of 50 witnesses residing in this District or nearby, including: (i) its technical expert, Dr. David Liu, in this District; (ii) its damages expert, Alan Cox, in this District; (iii) forensic experts in California; (iv) ten company witnesses who live in this District or nearby in Idaho; (v) six Jinhua job applicants in this District; (v) UMC's technical expert, John Berg, in this District.  (Dkts. 162-6, 181-2; FAC ¶ 80; Clark Decl. ¶¶ 4-6, Ex. 2.)

Moreover, several nonparty companies with witnesses and evidence reside in this District, including CASPA, Google, LLC, Applied Materials, KLA, and Lam.  (FAC ¶ 38, 47; *U.S.A. v United Microelectronics Corp., et al.*, Case No. 5:18-cv-06643 ("U.S. Civil Action") Dkt. 1 ¶ 24.) Micron is aware of at least another 28 individual witnesses from the nonparty companies, from whom Micron will likely seek discovery and/or testimony.  (Clark Decl. ¶¶ 8-10, Exs. 4-6.) Moreover, Jinhua employed patent agents in California for filing some of the 117 UMC/Jinhua Patent Filings, who may be witnesses.  (FAC ¶ 96.)

The fact that witnesses employed by Jinhua and UMC reside in China and Taiwan does not outweigh Micron's choice of forum.  *See, e.g., Perfect 10, Inc. v. RapidShare AG*, No. 09-CV-2596 H (WMC), 2010 WL 11508846, at *6 (S.D. Cal. May 12, 2010) (finding that private interest factors weighed against dismissal where party witnesses were "located in California, Switzerland, Germany, and elsewhere," reasoning that witnesses would have to travel between Europe and the U.S. regardless of the forum).  This factor favors Micron.

**(2) The forum's convenience to the litigants.**  Courts also find a strong presumption in favor of plaintiffs on this factor, *Boston Telecomms.*, 588 F.3d at 1206, and Micron's bringing suit in this forum comports with UMC's prior statement favoring this District as a forum.  UMC declared in another matter under penalty of perjury that: "A trial in Northern California would be significantly more convenient for UMC Taiwan's potentially relevant employees," because of the proximity of this District to Taiwan and that "employees could work at UMC USA's offices in Sunnyvale, California if required to travel to Northern California in connection with [the] lawsuit." (Myers Decl. ¶ 5.)  Further, the Northern District of California has international airports and easier access for defendants than Boise, Idaho.  *See Rare Breed Distilling* 2010 WL 335658, at *8.

Moreover, this forum is convenient because Jinhua has appeared before this Court in *U.S.A. v United Microelectronics Corp., et al.*, Case No. 3:18-cr-00465 ("U.S. Criminal Action"), and has another pending case in this Court—the U.S. Civil Action.  Those two actions closely relate to this case.  As such, witnesses and evidence will be here.  This factor favors Micron.

**(3) Access to physical evidence and other sources of proof.**  As Jinhua acknowledges, much of the evidence is already in the United States—from technical details about Micron's

technology, to the measures the company took to protect its secrets, to the forensic evidence of UMC's misappropriation, to the economic damage that UMC's and Jinhua's misconduct has caused.  (Dkt. 168 at 20:21-25; Myers Decl. ¶ 6.)  In fact, much of the technical documents already reside with Dr. Liu in this District; much of the forensic evidence would be in the possession of James Whitely, a Micron employee residing in this District; and much of the forensic evidence is also with experts in California.  (*See* Dkts. Dkt. 75-107, 116-23; Clark Decl. ¶¶ 5, 7.)  That some evidence is in Boise, Idaho rather than California nevertheless weighs in favor of this forum as it is easier to bring this evidence to California than to Taiwan, especially with Micron's large presence here.  Moreover, much of the physical evidence located outside this District will likely already be here, as the U.S. Criminal Action and U.S. Civil Action are before this Court, and the government collected volumes of materials before those actions commenced.  Even if evidence is not in this District, in this digital age, evidence can be easily accessed here.  *See Sarinana v. DS Waters of Am., Inc.*, No. C-13-0905 EMC, 2013 WL 3456687, at *2 (N.D. Cal. July 9, 2013) (finding access to evidence neutral, noting the availability of digital records).  Finally, contrary to Jinhua's claims, Taiwanese courts cannot mandate the transfer of evidence from China to Taiwan.  (Chen Decl. ¶¶ 3, 6, 8, 9) (explaining that Taiwan may request China for evidence, but cannot compel it).  This factor favors Micron.

> **(4) Whether unwilling witnesses can be compelled to testify.**  Due to the U.S. Criminal Action and U.S. Civil Action before this Court, Micron expects that many, if not most, witnesses will be available to testify in this District.  To the extent a party witness is unwilling to testify, moving this case to Taiwan would not resolve the issue, as Taiwan cannot compel a witness from China to testify in a civil trial.  (Chen Decl. ¶¶ 3, 6, 8, 9); *see Manu Int'l., S.A. v. Avon Prods, Inc.*, 641 F.2d 62, 67 (2d Cir. 1981) (the unavailability of compulsory process over witnesses weighed against Taiwan trial).  Jinhua's argument that Taiwan's criminal rules permit its courts to exercise jurisdiction over foreign defendants does not solve this problem.  (*See* Dkt. 168-2 ¶ 6).  Nor can Jinhua claim that consenting to jurisdiction in Taiwan means that all witnesses will agree to appear there.  In fact, in recent trade secret cases where the Taiwanese MOJ has made official requests to Chinese agencies for judicial assistance, it has *never* received any responses from those Chinese

1     agencies.  (Chen Decl. ¶ 8.)  This factor favors Micron.

2          **(5) The cost of bringing witnesses to trial.**  The costs for bringing witnesses to trial

3     would be neutral, because: (i) the Court needs to offset Micron's costs for sending potentially

4     dozens of witnesses / experts to Taiwan, *see Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. &*

5     *Tech. Development Co., LTD.*, No. C 06-7541 PJH, 2007 WL 2403395, at *10 (N.D. Cal. Aug. 20,

6     2007); and (ii) if timed correctly, witnesses brought here for the parallel proceedings could defray

7     costs.  As stated above, there are 50 plus witnesses in this District or nearby.  (*Supra* Private

8     Factor (1).)  Moreover, Defendant UMC has a wholly-owned subsidiary in this District where its

9     employees can work if they come here to testify, defraying costs.  (Myers Decl. ¶ 5.)

10         **(6) The enforceability of the judgment.**  Jinhua offers no explanation for why a judgment

11    against it could be enforced by a Taiwanese, but not a U.S., court.  Contrary to Jinhua's statement

12    made under penalty of perjury, Jinhua has extensive assets in the U.S., including at least 132

13    patents or pending patent applications (Dkt. 162-5 ¶ 5).  *See In re Cybernetic Servs., Inc.*, 252 F.3d

14    1039, 1044 (9th Cir. 2009) (noting that patent was debtor's "primary asset").  Article 9 of the

15    Uniform Commercial Code permits liens on patents.  *See id.* at 1045-46.  Therefore, this Court can

16    easily enforce judgment on Jinhua's 132  patent assets.  This Court also can enforce a judgment

17    against Jinhua's co-defendant, UMC, with inter-party U.S. sales through UMC Group (USA) of

18    approximately $1.8 billion.  (FAC ¶ 11); *Cooper v. Tokyo Elec. Power Co.*, 166 F. Supp. 3d 1103,

19    1135 (S.D. Cal. 2015), aff'd, 860 F.3d 1193 (9th Cir. 2017) (denying motion to dismiss for forum

20    non conveniens, finding enforceability factor neutral where defendant was from Tokyo but had

21    "significant assets" in the U.S.).  A Taiwanese court, however, can only enforce a judgment

22    against Jinhua if it has assets in Taiwan.  (Chen Decl. ¶ 13.)  Jinhua does not claim to have assets

23    in Taiwan, but even if it did, Micron could enforce judgments against Jinhua's assets there.  (*Id.*

24    ¶¶ 13-14.)  Conversely, it is questionable whether a Taiwanese judgment could be enforced against

25    Jinhua in China.  (Chen Decl. ¶ 13.)  This factor favors Micron.

26         **(7) All other practical problems that make trial of a case easy, expeditious and**

27    **inexpensive.**  Micron's claims arise under U.S. and California law, namely the DTSA, CUTSA,

28    and RICO.  A U.S. trial will be more efficient than a forum unfamiliar with U.S. law.  *See, e.g.,*

1 | *CYBERsitter, LLC v. People's Republic of China,* No. CV 10-38-JST SHX, 2010 WL 4909958, at

2 | *8 (C.D. Cal. Nov. 18, 2010) (denying motion to dismiss for forum non conveniens even though

3 | only four of seven claims relied on California and federal law); *Condos v. Condos,* No. CV 04-

4 | 07365 DT (SHx), 2006 WL 8431432, at *4 (C.D. Cal. Feb. 9, 2006) (reasoning that "where

5 | questions of California law predominate, the Court is disinclined to dismiss the case simply

6 | because certain questions of Greek law may arise").  Moreover, Taiwan does not have an

7 | equivalent law to RICO.  (Chen Decl. ¶ 15.)  This factor favors Micron.

8 |      **Public Interest Factors**: Courts address five public interest factors, *Boston Telecomms.*,

9 | 588 F.3d at 1211, which are addressed as follows:

10 |      **(1) The local interest in the lawsuit.**  Both California and the U.S. have a strong interest

11 | in this lawsuit.[15]  (Clark Decl. Ex. 7.)  First, Micron has a large local presence.  Micron, a multi-

12 | billion dollar company, has two DRAM-related business units located in Milpitas, one accounting

13 | for roughly 42 percent of the local net sales in Fiscal Year 2017, and the other accounting for 22

14 | percent.  (Myers Decl. ¶ 4.)  Second, Micron brings a claim under the CUTSA, and California has

15 | "a significant interest in protecting the intellectual property of its citizens and business from

16 | infringement by foreign defendants."  *Mintel Learning Tech., Inc.*, 2007 WL 2403395, at *11.

17 |      As for the U.S., it too has a big interest in this case.  The government issued a press release,

18 | memorializing its interest to bring justice for UMC's and Jinhua's trade secret theft.  (Clark Decl.

19 | Ex. 1.)  Former Attorney General Jeff Sessions recognized the importance of this case as it

20 | pertained to combatting Chinese economic espionage.[16]  Moreover, legislative history of the

21 | DTSA leaves no doubt that Congress views cases under the DTSA as an imperative public interest

22 | to provide U.S. technology companies a federal, private right of action to defend against

23 | misappropriation taking place abroad.  Explaining the rationale, Congress recognized the necessity

24 | for the DTSA to "mak[e] whole the victims of misappropriation."  H.R. Rep. No. 114-529 at 3-4.

25 | [15] Jinhua claims Taiwan has a greater interest in this dispute, in part due to the breach of employee

26 | agreements in Taiwan.  (Motion at 22:22-24.) Since there is no breach of contract issue in this case, however, that argument is irrelevant.

27 | [16] U.S. Dept. Justice, "Attorney General Jeff Sessions Announces New Initiative to Combat Chinese Economic Espionage," (Nov. 1, 2018) *available at*

28 | https://www.justice.gov/opa/speech/attorney-general-jeff-sessions-announces-new-initiative-combat-chinese-economic-espionage.

In short, Congress enacted the DTSA to promote the national interest in enlisting civil enforcement against foreign violators of trade secret laws.  Congress additionally mandated that "[t]his bill will equip companies with the additional tools they need to protect their proprietary information. . . . As trade secret owners increasingly face threats from both at home and abroad. . . . [And] protect their intellectual property and ensures continued growth and innovation in the American economy."  H.R. Rep. No. 114-529 at 6.  Congress enacted the DTSA because it was necessary to provide U.S. businesses with a forum to obtain protection and redress of their trade secrets misappropriated abroad.  That there may, in theory, be some alternative forum where Micron could attempt to assert its rights does nothing to alter Micron's interest—and the national interest—in having its claims adjudicated here.  This factor strongly favors Micron.

     **(2) The court's familiarity with the governing law.**  As stated above, this lawsuit is brought exclusively under California and U.S. law: the CUTSA, DTSA, and RICO.  Taiwanese courts do not have familiarity with these laws.[17]  This factor favors Micron.

     **(3) The burden on local courts and juries.**  The burden on the courts will likely be the same for both U.S. and Taiwanese courts.  Regardless of forum—U.S. or Taiwan—there will likely be extensive translations of testimony between the two languages. *See CYBERsitter, LLC*, 2010 WL 4909958, at *8.  This factor is likely neutral.

     **(4) Congestion in the court.**  "Congestion . . . is afforded little weight in assessing the public interest factors." *In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1203 (C.D. Cal. 2004); *see Gates Learjet*, 743 F.2d at 1337 (finding it "unfair for a court to subject a United States corporation to the courts of another country merely because plaintiff's home country courts are congested.")  Here, as in *In re Air Crash* "it is difficult to ascertain

---

[17] Jinhua claims that Taiwanese law should govern based on employment agreements not raised in this action.  These employment agreements have no bearing on this case, because the employee-signatories are not parties to the action and this case does not include third party beneficiaries to the contracts, or parties with extremely close ties to a signatory. *See, e.g., Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 511, 514 n.5 (9th Cir. 1988); *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 822 (N.D. Cal. 2015).  Moreover, the forum selection clause in these agreements was permissive, not mandatory, meaning the parties did not agree to be bound to jurisdiction in Taiwan. *See Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987).  Courts have found that the exact language at issue here—"agree to be subject to"—is permissive. *Basic Fun, Inc. v. POP Mktg. Grp., Inc.*, No. CIV.A. 06-1129, 2006 WL 1648982, at *1 (E.D. Pa. June 12, 2006); *Wood v. World Wide Ass'n of Specialty Progs. & Sch., Inc.*, No. 2:06-CV-708 TS, 2007 WL 2821768, at *1-2 (D. Utah Sept. 27, 2007).

1  whether retention of the actions in the United States or transfer to Taiwan would result in a more

2  expeditious resolution of plaintiffs' claims." 331 F. Supp. 2d at 1203.  Regardless, Taiwan delays

3  are real, including congestion due to high workload of the judges, (Chen Decl. ¶ 11), a time frame

4  of five years to go through all three Taiwanese courts, (*id.* ¶ 10), and time for obtaining visas for

5  Jinhua witnesses going to Taiwan, (*id.* ¶ 12).  This factor favors Micron or is neutral.

6       **(5) The costs of resolving a dispute unrelated to a particular forum.**  This factor is not

7  applicable, because the dispute is related to this forum, with Jinhua's actions targeting Micron in

8  in this District, and patent filings targeting the U.S., not Taiwan.  This factor is likely neutral.

9       Overall, the factors strongly weigh in Micron's favor.  Because dismissal would only be

10  appropriate if these factors weighed "strongly" in favor of Jinhua, the Court must deny Jinhua's

11  motion to dismiss on forum non conveniens.  *See Dole*, 303 F.3d at 1118.

12  **VI.**   **<u>CONCLUSION</u>**

13       Jinhua disregards that at least eleven of its 117 UMC/Jinhua Patent Filings use and disclose

14  Micron's trade secrets, constituting separate acts of misappropriation in the U.S. and purposefully

15  availing itself in the U.S.  Micron's claims for trade secret misappropriation arose from these

16  patent filings, as well as from Jinhua's recruiting and vendor visits in this District.  Jinhua failed to

17  demonstrate that this District is unreasonable, or that the forum is inconvenient.  Jurisdiction and

18  forum are proper.  Finally, Micron demonstrated that it sufficiently pled all facts for its claims, but

19  if the Court believes otherwise, Micron requests leave to amend its FAC to remedy any

20  deficiencies.  Jinhua's Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a

21  Claim and Forum Non Conveniens should therefore be denied.

22    Dated:  March 28, 2019             JONES DAY

23

24                          By:  *s/ Randall E. Kay*

25                             Randall E. Kay

26                          Attorneys for Plaintiff

27                          MICRON TECHNOLOGY, INC.

NAI-1506796284

28