IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICRON TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED MICROELECTRONICS CORPORATION, and FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD., <br><br> Defendants. | Case No. 17-cv-06932-MMC <br><br> **ORDER DENYING UNITED MICROELECTRONICS CORPORATION'S MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART JINHUA FUJIAN INTEGRATED CIRCUIT CO.'S MOTION TO DISMISS; AFFORDING PLAINTIFF LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |

Before the Court are two motions: (1) defendant United Microelectronics Corporation's ("UMC") Motion, filed February 22, 2019, "to Dismiss Plaintiff Micron Technology, Inc's First Amended Complaint"; and (2) defendant Fujian Jinhua Integrated Circuit Co., Ltd.'s ("Jinhua") Motion, filed March 14, 2019, "to Dismiss First Amended Complaint." The motions have been fully briefed. Having read and considered the parties' respective written submissions, the Court rules as follows.[1]

## BACKGROUND

In its First Amended Complaint ("FAC"), plaintiff Micron Technology, Inc. ("Micron") describes the parties as follows: Micron is a "global leader in advanced semiconductor systems" with a "portfolio of high performance memory technologies," including "Dynamic Random Access Memory ('DRAM') integrated circuits" (see FAC ¶¶ 1, 8); defendant UMC is a "semiconductor foundry with operations centered in Taiwan, China, and

---

[1]By order filed April 16, 2019, the Court took the matters under submission.

Singapore" (see FAC ¶ 2); and defendant Jinhua is a "company founded in Mainland China in early 2016" that "plan[s] to begin commercial DRAM production by 2018" (see FAC ¶ 12).

According to Micron, UMC and Jinhua "executed a deal," under which UMC, although it "lack[ed] any significant, independent intellectual property in advanced DRAM technology," would "provide Jinhua with DRAM process technology and enable Jinhua to become a leading force in the DRAM business." (See FAC ¶ 2.) Micron alleges that UMC and Jinhua then "developed and set in motion a plan for UMC to recruit key personnel from Micron's Taiwanese affiliate," specifically, Micron Memory Taiwan Co., Ltd. ("MMT"). (See FAC ¶ 3.a.) In particular, Micron alleges that "UMC and Jinhua conspired to induce former MMT employees to misappropriate electronic and paper files containing Micron trade secrets from MMT and to deliver those trade secrets to UMC" (see FAC ¶ 3.b), that UMC then "recruit[ed] various MMT personnel with access to Micron trade secrets" (see FAC ¶ 69), that two MMT employees, prior to resigning from MMT and beginning employment with UMC, took "Micron trade secrets" from MMT (see FAC ¶¶ 16-17) and that UMC "incorporated Micron's trade secrets into technologies that it transferred and/or plans to transfer to Jinhua to enable Jinhua to mass produce advanced DRAM products as early as 2018" (see FAC ¶ 3.c). Additionally, Micron alleges, "UMC and Jinhua have been using Micron's stolen trade secrets to file joint patent applications with the United States Patent and Trademark Office." (See FAC ¶ 4.)

Based on the above allegations, Micron asserts against UMC and Jinhua four Counts: (1) "Misappropriation of Trade Secrets under the Defend Trade Secrets Act[,] 18 U.S.C. § 1836(b)," (2) "Civil RICO[,] 18 U.S.C. § 1962(c)," (3) "Civil RICO [,] 18 U.S.C. § 1962(d)," and (4) "Trade Secret Misappropriation Under the California Uniform Trade Secrets Act[,] Cal. Civ. Code § 3426."

**DISCUSSION**

In their respective motions, defendants argue the above-titled action should be dismissed on various grounds, which the Court considers in turn.

**A. Personal Jurisdiction**

Each defendant argues the Court lacks personal jurisdiction over it.

To exercise personal jurisdiction over a defendant, "due process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantive justice." See Ranza v. Nike, Inc., 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation and citation omitted). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." Id.

Here, Micron alleges the Court has specific jurisdiction over defendants. (See FAC ¶ 22.) A court has specific jurisdiction over a defendant if (1) "the defendant has purposefully directed his activities at residents of the forum," (2) "the litigation results from alleged injuries that arise out of or relate to those activities," and (3) the exercise of jurisdiction over the defendant would not be "unreasonable." See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 477 (1985).[2]

"The plaintiff bears the burden on the first two prongs." Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008). To meet its burden, "the plaintiff need only make a prima facie showing of the jurisdictional facts." See id. at 1015. Where a defendant does not rely on evidence to contradict the complaint, the "allegations in the plaintiff's complaint must be taken as true," see id., and the complaint is subject to dismissal only if the factual allegations, assumed true, are insufficient to support a finding that the plaintiff's claim arises "out of sufficient minimum contacts with [the forum]," see Butcher's Union Local No. 498 v. SDC Investment, Inc., 788 F.2d 535, 540 (9th Cir. 1986). Where a defendant offers evidence to controvert the factual allegations in the complaint, the

---

[2]Micron argues, and the Court agrees, that the relevant forum here is the United States, as Micron has alleged federal claims and neither defendant has identified a state in which it would be subject to jurisdiction. See Holland America Lina Inc v. Wartsila North America, Inc., 485 F.3d 450, 461-62 (9th Cir. 2007) (holding where plaintiff alleges federal claim and defendant does not identify state in which it would be subject to jurisdiction, court considers defendant's "contacts with the nation as a whole").

plaintiff must offer evidence that "support[s] a finding of jurisdiction."  See Data Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  In either instance, if the plaintiff makes the requisite prima facie showing, the defendant has the burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  See Burger King, 471 U.S. at 477.

### 1. UMC

#### a. Prima Facie Showing

Micron argues the exercise of personal jurisdiction over UMC is appropriate in light of its allegations that (1) its trade secrets were downloaded from servers in the United States at UMC's direction, (2) UMC, while in the United States, assisted Jinhua in the latter's attempt to recruit engineers, and met with vendors from which UMC ordered equipment, and (3) Micron's trade secrets were disclosed in patent applications filed jointly by UMC and Jinhua.  The Court considers such alleged activities in turn.

#### (1) Acquisition of Trade Secrets

Micron alleges that Kenny Wang ("Wang"), who is presently an employee of UMC, "improperly downloaded over 1,200 confidential Micron technical files" while he was employed by MMT, and that "at least 174" of the files were downloaded from "Micron's SharePoint system which is hosted exclusively on U.S. servers."  (See FAC ¶¶ 3, 47.) According to Micron, Wang downloaded the files at the "direct[ion]" of Le-Tian Rong, UMC's "Assistant Vice President of Project Technology Management."  (See FAC ¶¶ 4, 15).  Micron also alleges Wang knew "his misappropriation efforts directly targeted U.S. servers," as he had attended Micron trainings in which attendees were advised "all SharePoint servers were consolidated in a single Boise location" (see FAC ¶ 49), and as he had been advised that, to access the files he sought, he had to obtain, and thereafter did obtain, "an account on the R&D Boise network" (see FAC ¶ 50).[3]

The Court finds the above-referenced allegations, assumed true, are sufficient to

_____

[3]Micron alleges its headquarters is located in Boise, Idaho.  (See FAC ¶ 9.)

4

support a finding that UMC, acting through Wang, purposefully directed its activities at a resident of the United States, specifically, Micron. See CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1076-79 (9th Cir. 2011) (holding defendant "expressly aimed its actions" at forum in which plaintiff resided, when it hired non-party to misappropriate material from plaintiff's website).

UMC argues the above-referenced allegations should not be assumed true, relying on evidence that, if credited, would support a finding that Stephen Chen ("Chen") and J.T. Ho ("Ho"), two UMC Vice Presidents who, like Wang, previously had been employed by MMT, did not know the files assertedly containing Micron's trade secrets were stored on servers located in the United States. (See Moore Decl., filed August 27, 2018, Ex. 2 at 75:2-16, Ex. 3 at 89:1-90:1.) Micron does not allege, however, that either Chen or Ho downloaded its trade secrets from a server in the United States. Moreover, Micron, as noted, alleges Wang's knowledge came from his specific interactions with Micron. Under such circumstances, UMC has failed to show that any lack of knowledge on the part of Chen and Ho is probative of Wang's knowledge, and, consequently, the evidence upon which UMC relies does not contradict Micron's allegations as to Wang's knowledge.

Accordingly, in light of the above, and there being no dispute that each of Micron's claims is based on Wang's allegedly downloading Micron's trade secrets from servers located in the United States (see FAC ¶¶ 108, 121, 132, 139), the Court finds Micron has made a prima facie showing that UMC is subject to personal jurisdiction as to such claims. Further, as to Micron's claims that UMC, through its alleged direction of Wang and Ho, acquired Micron's trade secrets from other locations, the Court likewise finds Micron has made such prima facie showing, in that said additional claims arise out of a common nucleus of operative facts with Micron's claim that Wang downloaded trade secrets from servers located in the United States. (See FAC ¶¶ 3, 15-17, 67, 70-74); Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1180-81 (9th Cir. 2004) (holding district courts have discretion to exercise "pendent personal jurisdiction" over claims "aris[ing] out of a common nucleus of operative facts" with claims as to which

defendant is subject to personal jurisdiction).

**(2)  Employee Recruitment/Meetings with Suppliers**

Micron alleges that, in October 2016, "UMC and Jinhua sent a delegation of executives to Northern California," who "participated in a job fair" and met with three "major semiconductor equipment vendors."  (See FAC ¶¶ 23, 24, 37, 38.)  According to Micron, UMC, at the job fair, provided "support and assistance" to Jinhua in the latter's attempt to hire "highly-skilled DRAM engineers" to "carry out its DRAM manufacturing plans."  (See FAC ¶¶ 24, 27, 31.)  Micron also alleges that "Jinhua made presentations to the vendors and UMC participated as Jinhua's technical partner" (see FAC ¶ 38), that each vendor "identified specific equipment [it] could supply" (see FAC ¶¶ 39-41), and that UMC and Jinhua "placed orders for DRAM manufacturing equipment" (see FAC ¶ 42), which equipment UMC subsequently has used (see id.).

Although UMC acknowledges its participation in the job fair and above-referenced meetings with vendors constituted "purposeful contact with California" (see UMC's Mot. at 9:18-20), it argues personal jurisdiction cannot be based thereon as Micron's claims do not arise out of or relate to those activities.  The Court disagrees.

Count I in the FAC asserts misappropriation of trade secrets in violation of 18 U.S.C. § 1836(b) and Counts II and III assert claims based on misappropriation of trade secrets in violation of 18 U.S.C. § 1832.  Sections 1832 and 1836 "appl[y] to conduct occurring outside the United States if . . . an act in furtherance of the [misappropriation] was committed in the United States."  See 18 U.S.C. § 1937.  Although Micron does not assert UMC's activities at the job fair or at the meetings with vendors constituted acts of misappropriation, Micron alleges such activities were "in furtherance" of (see FAC ¶¶ 23, 36, 83, 84) acts of misappropriation occurring outside the United States (see FAC ¶¶ 28, 81, 91, 108, 120, 131), in particular, the development and manufacture of products containing its trade secrets (see FAC ¶¶ 31, 42, 80).  As Micron's ability to seek relief for acts of misappropriation committed outside the United States is dependent on a showing of acts in furtherance thereof committed in the United States, the Court finds Micron's

1   claims arise out of the above-described alleged acts committed in California.  See Ballard

2   v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995) (holding claim "arises out of forum-related

3   activities" where claim does not arise "but for" those activities).

4          Accordingly, in light of the above, the Court finds Micron has made a prima facie

5   showing that UMC is subject to personal jurisdiction as to claims predicated on

6   defendants' development and manufacture of products containing Micron's trade secrets.

7                        **(3)  Patent Applications**

8          Micron alleges UMC and Jinhua, acting through "United States Registered Patent

9   Agents," have jointly applied for "at least one hundred and seventeen" patents with the

10  United States Patent and Trademark Office,[4] that such applications "began publishing in

11  late 2017,"[5] and that some of those applications have been granted.  (See FAC ¶¶ 4, 92,

12  95-97.)  According to Micron, "[a]t least" seven patents and four pending applications

13  disclose Micron's trade secrets (see FAC ¶ 95; see, e.g., FAC ¶ 95.a (alleging U.S.

14  Patent '901 "discloses Micron's trade secret process for forming shallow trench isolation

15  and active areas in a DRAM device")), and each identifies at least one former Micron or

16  MMT employee as the inventor (see FAC ¶ 95).[6]  Additionally, Micron alleges, in July

17  2016, Chen, who was then a Vice President of UMC, made a "presentation" to a

18  "governance board for a Mainland [China] development zone," at which time he "told one

19  or more members" of the board that "he was using 'Rexchip' (now Micron) technology at

20  _____

21      [4]In support of its opposition, Micron offers a declaration by David Liu, who states
    he has "become aware" of patents applications filed by UMC and Jinhua, and now
22  believes there are 132.  (See Liu Decl., filed March 8, 2019, ¶ 5.)  The FAC, however,
    includes no allegation as to such recently discovered applications.  Consequently, the
23  Court does not further address said declaration herein.  See Butcher's Union Local No.
    498, 788 F.2d at 540 (holding finding of personal jurisdiction may not be based on
24  allegations not made in complaint).

25      [5]Subject to certain exceptions, a patent application "shall be published," i.e., made
    available to the public, "promptly after the expiration of a period of 18 months from the
26  earliest filing date for which a benefit is sought" or, upon request by the applicant, on an
    earlier date.  See 35 U.S.C. § 122(b)(1).

27      [6]Micron alleges the inventors "transferr[ed] their individual rights to UMC and
28  Jinhua."  (See FAC ¶ 97).

7

UMC" (see FAC ¶ 79),[7] and, two months later, UMC and Jinhua began filing the above-referenced patent applications (see FAC ¶ 92).

The Court finds the above-referenced allegations, assumed true, are sufficient to support a finding that UMC purposefully directed its activities at a resident of the United States, specifically, Micron. See Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403, 1416 (Fed. Cir. 2009) (holding party seeking "U.S. patent" has "purposefully directed [its] activities at parties in the United States").

UMC, in its moving papers, argues the above-referenced allegations should not be assumed true because Micron "recites no evidence" to support a finding that the patent applications disclose Micron's trade secrets, and, further, that the allegations are "speculation," as "the parties have not produced technical documentation or provided discovery on the products they developed." (See UMC's Mot. at 21:1-9.) At this stage, however, Micron is required to offer evidence to support its factual allegations only if those allegations are contradicted by evidence, see Data Disc, 557 F.2d at 1285, and UMC has not offered any such evidence with its moving papers.[8]

Accordingly, in light of the above, and there being no dispute that Micron's claims are based in part on UMC's filing of patent applications (see FAC ¶¶ 108, 121, 132, 139); Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc., 226 Cal. App. 4th 26, 66 (2014) (holding filing patent applications based on another's trade secrets is "a classic violation

---

[7]Micron alleges, on a date not disclosed in the FAC but prior to the alleged acts of misappropriation, it "acquired" Rexchip, a "joint venture" that had an "exclusive focus on DRAM production," and renamed it MMT. (See FAC ¶ 10.) Micron also alleges that, as a result of such acquisition, it became the "sole owner" of the trade secrets of MMT, i.e., the entity previously known as Rexchip. (See id.)

[8]With its reply, UMC offers the Declaration of John Berg, in which said declarant opines that the seven patents and four applications identified in the FAC do not disclose any Micron trade secret. Micron's objection to consideration of said declaration is hereby SUSTAINED. See Ellingson v. Burlington Northern, Inc., 653 F.2d 1327, 1331-32 (9th Cir. 1981) (holding "[n]ew material does not belong in a reply brief"; noting "[a]n issue advanced only in reply provides the [opposing party] no opportunity to meet the contention"). The issue of whether the claimed trade secrets are in fact secret can, of course, be addressed at a later stage of the proceedings.

of trade secret law"), the Court finds Micron has made a prima facie showing that UMC is subject to personal jurisdiction as to claims based on defendants' filing of patent applications.

### b. Unreasonableness

As noted, a defendant has the burden to "present a compelling case" that exercising jurisdiction would be "unreasonable." See Burger King, 471 U.S. at 477. Although raised in its reply, UMC, in its moving papers, makes no argument that exercising jurisdiction would be unreasonable. Under such circumstances, the issue is waived. See Ellingson, 653 F.2d at 1331-32; Shuster v. Shuster, 2017 WL 20254, at *5 (D. Az. January 1, 2017) (finding arguments as to unreasonableness not included in "opening brief" were "waived"); Cray Inc. v. Raytheon Co., 179 F. Supp. 3d 977, 989 (W.D. Wash. 2016) (same).[9]

### c. Summary

UMC has not shown the claims asserted against it are subject to dismissal for lack of personal jurisdiction.

### 2. Jinhua

#### a. Prima Facie Case

Micron argues that exercising personal jurisdiction over Jinhua is appropriate in light of its allegations that (1) Jinhua, while in the United States, attempted to recruit engineers, and met with vendors from whom it ordered equipment, and (2) Micron's trade secrets were disclosed in patent applications filed jointly on behalf of UMC and Jinhua. The Court considers such alleged activities in turn.

#### (1) Employee Recruitment/Meetings with Suppliers

Jinhua argues its participation in the above-referenced job fair and its having met with and ordered equipment from vendors do not constitute purposeful availment, as,

---

[9]The Court notes, however, that essentially the same arguments were timely made in support of UMC's request for dismissal under the doctrine of forum non conveniens and have been addressed below in that context.

according to Jinhua, the FAC lacks allegations that such acts were aimed at the relevant forum and that Jinhua knew it was likely harm would result in the forum.  See Bancroft & Masters, Inc. v. Augusta National Inc., 223 F.3d 1082, 1087 (9th Cir. 2000) (holding "purposeful availment" established where defendant engages in intentional act it knows is likely to cause harm in forum, so long as act is "expressly aimed at the forum").  Although Jinhua acknowledges its alleged activities in this district were "efforts to lay the groundwork for Jinhua's eventual launch of its DRAM manufacturing program," it argues such activities are "fully consistent with Jinhua's belief that UMC's DRAM technology would be lawfully developed."  (See Jinhua's Mot. at 5:11-14.)

As set forth above, the activities Micron alleges occurred in this district are not themselves alleged to be acts of misappropriation, but, rather, acts in furtherance of misappropriation occurring outside the United States, namely, Jinhua's development and manufacture of products incorporating Micron's trade secrets.  Consequently, the Court understands Jinhua to be arguing that the FAC lacks allegations to support a finding that Jinhua, at the time it engaged in such acts in furtherance, knew Micron was likely to be harmed thereby.

In the FAC, Micron alleges Jinhua entered into a contract with UMC under which, in return for Jinhua's providing UMC certain forms of consideration,[10] UMC "would provide Jinhua with advanced DRAM technology."  (See FAC ¶ 67.)  Micron also alleges "Jinhua knew that UMC did not possess the technological resources to develop the promised technology by itself, and understood that the technology would be based substantially on Micron's DRAM designs and processes."  (See FAC ¶ 68.)  Micron further alleges that Jinhua, at a "public groundbreaking" in July 2016, made statements that, "[i]n effect," acknowledged UMC "lacked the technical wherewithal for the project and would have to 'acquire' the necessary talent from other companies in Taiwan and

---

[10]According to Micron, Jinhua agreed to provide UMC with "$300 million in R&D equipment, $400 million in development fees, co-ownership of the resulting technology, and the potential for additional future licensing revenues."  (See FAC ¶ 67.)

elsewhere." (See FAC ¶ 76.) As Jinhua has not offered evidence to contradict any of the above-referenced factual allegations, they are assumed true, and the Court finds them sufficient to support a finding that Jinhua knew or had reason to know UMC would acquire Micron's DRAM technology by improper means. See 18 U.S.C. § 1839(5) (defining "misappropriation" to include "use" of another's trade secret by one who "knew or had reason to know" trade secret was "derived from or through a person who had used improper means to acquire the trade secret"); Kittrich Corp. v. Chilewich Sultan, LLC, 2013 WL 12131376, at *6 (C.D. Cal. February 20, 2013) (holding plaintiff "need only plead enough facts that plausibly give rise to the inference that [d]efendant knew or had reason to know that [another] misappropriated the information [defendant used]").

Further, Jinhua has not offered evidence to contradict Micron's allegation that Jinhua was aware that Micron's principal place of business is in the United States (see FAC ¶ 80), and, consequently, Micron's allegations are sufficient to support a finding that Jinhua knew its activities in the United States were likely to cause harm to Micron in the United States, see CollegeSource, 653 F.3d at 1079 (holding "a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business").

Accordingly, and for the reasons stated above with respect to UMC, the Court finds Micron has made a prima facie showing that Jinhua is subject to personal jurisdiction as to Micron's claims based on activities outside the United States to develop and manufacture products containing Micron's trade secrets.

### (2) Patent Applications

Jinhua argues the FAC lacks allegations that Jinhua knew the above-described patent applications would be likely to harm Micron or that any such harm would be incurred in the United States. (See FAC ¶¶ 4, 92, 95-97.) For the reasons stated above, the Court disagrees.

Accordingly, the Court finds Micron has made a prima facie showing that Jinhua is subject to personal jurisdiction as to claims based on the filing of patent applications.

//

### b. Unreasonableness

Jinhua, in its moving papers, contends the Court's exercise of personal jurisdiction would be unreasonable. As noted, where, as here, a plaintiff makes a prima facie showing as to jurisdiction, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." See Burger King, 471 U.S. at 477. To determine whether a defendant has made such a showing, a court must "balance" seven "factors," specifically, "(1) the extent of the defendant['s] purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant['s] state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." See Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1487-88 (9th Cir. 1993).

Here, one factor, the last of the above, weighs in favor of Jinhua. In particular, Jinhua has shown Taiwan is an adequate alternative forum, as "Taiwanese courts are capable of providing monetary damages and injunctive relief for trade secret misappropriation." See VIA Technologies, Inc. v. ASUS Computer Int'l, 2015 WL 3809382, at *7 (N.D. Cal. June 18, 2015). Although, as Micron asserts, any recovery might be less than that available in the United States, such difference does not alter the analysis. See Ceramic Corp. v. Inka Maritime Corp., 1 F.3d 947, 949 (9th Cir. 1993) (holding alternative forum is adequate even where it "does not provide the same range of remedies as are available in the home forum," so long as alternative forum "provide[s] some potential avenue for redress"). Further, Jinhua has "agree[d] to submit to jurisdiction in Taiwan and to guarantee to satisfy any judgment." (See Jinhua's Reply at 11:9-10); see also Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1450 (9th Cir. 199)) (holding "adequate alternative forum" existed, where defendant "agreed to submit to the jurisdiction of [the alternative forum's] courts" and "issue[d] a letter of

guaranty that it would satisfy any judgment").  As set forth below, however, the remaining factors either weigh against Jinhua or are, at best, neutral.

First, the extent of Jinhua's alleged purposeful availment in the United States is considerable, specifically, its having applied for patents that disclose Micron's trade secrets and having ordered equipment and endeavored to hire engineers necessary to develop and use those trade secrets.

Further, the United States has a significant interest in the matter, as demonstrated by its having charged Jinhua with conspiracy to commit economic espionage, theft of trade secrets, and other crimes, arising from the same factual allegations as those asserted in the instant civil action, see United States v. United Microelectronics Corp., et al., CR 18-465 MMC, and its having "implemented export controls on Jinhua's ability to receive U.S. technologies" (see FAC ¶ 5).  Although, as pointed out by Jinhua, the FAC alleges the Taiwan Taichung District Prosecutor's Office has filed against UMC and three UMC employees an indictment alleging violations of Taiwan's Trade Secret Act (see FAC ¶ 3, Ex. 2), there is no allegation that Taiwan has brought any action against Jinhua or any of its employees (see FAC Ex. 2).

Moreover, as the United States' criminal case is pending before the undersigned, and the likely witnesses in the two cases will substantially overlap, the most efficient forum for resolution of the instant matter is this district.  See Ballard, 65 F.3d at 1502 (holding "most efficient" forum, for purposes of reasonableness of exercising personal jurisdiction, is district "familiar with the facts and procedural history of the litigation").

Next, Micron has a substantial interest in trying the case in the United States, as federal law provides for jurisdiction over misappropriation occurring outside the United States, see 18 U.S.C. § 1837, the intricacies of United States patent laws would be more easily addressed in the United States, and Micron has identified potential non-party witnesses located in the United States, e.g., the three vendors that sold equipment to //

Jinhua (see Clark Decl., filed March 28, 2019, ¶¶ 8-10).[11]

Lastly, although litigating the case in this district may well impose a financial burden on Jinhua, Jinhua has made a general appearance in the related criminal case, and, in the instant case, has not identified any non-party witness, much less any witness it could not subpoena for trial in this district, nor has it shown any other circumstance that might cause it to be denied the opportunity to present a defense to Micron's claims. See Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1481 (9th Cir. 1986) (holding unless "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction").

Accordingly, the Court finds Jinhua has not made a compelling showing that the exercise of jurisdiction would be unreasonable.

### c. Summary

Jinhua has not shown the claims asserted against it are subject to dismissal for lack of personal jurisdiction.

## B. Forum Non Conveniens

Both defendants argue the instant action is subject to dismissal on the ground the case is more appropriately tried in Taiwan.

Under the "doctrine of forum non conveniens," a "district court may dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 425 (2007). "A party moving to dismiss based on forum non conveniens bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." Dole Food Co. v. Watts, 303 F.3d 1104, 1118 (9th Cir. 2002).

---

[11]Micron also identifies as non-party witnesses in the United States the entity that sponsored the job fair, persons who submitted resumes to Jinhua at the job fair, patent agents allegedly hired by Jinhua, and Google, whose "Google Cloud" and/or "Google Drive" (see FAC ¶¶ 47, 72) allegedly were used by Ho and Wang to store Micron's trade secrets.

**1. Adequacy of Taiwan**

An alternative forum is adequate "when defendants are amenable to service of process in the foreign forum" and it can "provide[ ] the plaintiff with a sufficient remedy for his wrong." See id. Here, there is no dispute that UMC, a corporation organized under the laws of Taiwan, can be served in Taiwan. Additionally, as noted above, Jinhua has consented to jurisdiction in Taiwan with respect to Micron's claims, and Taiwanese law provides for monetary and injunctive relief for trade secret misappropriation.

Accordingly, as defendants have shown Taiwan is an adequate alternative forum, the Court considers whether the private and public factors balance in favor of dismissal.

**2. Private Interest Factors**

Where a defendant shows "trial in the chosen forum would establish oppression and vexation of a defendant out of all proportion to plaintiff's convenience," a district court has discretion to dismiss the case in favor of the alternative forum. See Piper Aircraft Co. v Reyno, 454 U.S. 235, 241 (1981). In determining whether to exercise such discretion, a court considers "private interest factors affecting the convenience of the litigants." See id. (internal quotation and citation omitted). "Private interests of the litigants include ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining attendance of willing witnesses; and likelihood of a fair trial." Dole Food, 303 F.3d at 1119.

Here, the parties' interests in the first and third factors, i.e., the relative ease of access to sources of proof and the cost of obtaining the attendance of willing witnesses, are equally balanced, in that defendants assert they intend to rely on their respective officers and employees, all of whom are located in Taiwan and China, as well as on documents and other evidence located in Taiwan and China, while Micron asserts it intends to rely on its officers, employees and experts, all of whom are located in the United States, as well as on documents and other evidence located in the United States. The second factor, however, the availability of compulsory process, weighs against dismissal, as neither defendant has identified any non-party witness it intends to call,

15

1  whereas, as noted above, Micron has identified several potential non-party witnesses that

2  are located in the United States.  As to the last factor, neither defendant has shown any

3  circumstance exists that, were the matter to be tried in this district, would likely cause

4  such defendant to be deprived of a fair trial.  Although Jinhua points out that witnesses

5  from Taiwan and China who do not speak English would have to testify in this district

6  through an interpreter, any such inconvenience would not deprive Jinhua of their

7  testimony, and, in any event, whatever weight such concern may provide is equally

8  balanced by the inconvenience Micron would incur if the trial were conducted in Taiwan.[12]

9        Accordingly, the Court finds defendants have not shown the private interest factors

10  weigh in favor of dismissal.

11        **3. Public Interest Factors**

12        Where a defendant shows "the chosen forum is inappropriate because of

13  considerations affecting the court's own administrative and legal problems," a district

14  court has discretion to dismiss the case in favor of the alternative forum.  See Piper

15  Aircraft, 454 U.S. at 241.  In determining whether to exercise such discretion, a court

16  considers "public interest factors affecting the convenience of the forum."  See id.

17  (internal quotation and citation omitted).  "Public interest factors include court congestion,

18  local interest in resolving the controversy, and preference for having a forum apply a law

19  with which it is familiar."  Dole Food, 303 F.3d at 1119.

20        Here, defendants have not shown any relevant factor weighs in favor of dismissal;

21  rather, each is, at best, neutral.  First, there is no evidence as to relative court

22  congestion.  Second, both the United States and Taiwan have a significant interest in

23  resolving the controversy, as demonstrated by each such country's having filed a criminal

24  _____

25        [12]Although UMC's counsel has filed a declaration in which he states "[his]
   understanding is that multiple individuals mentioned in Micron's civil complaint have
26  restrictions on their ability to travel outside of Taiwan due to the pending criminal matter
   in Taiwan" (see Moore Decl., filed March 15, 2019, ¶ 8), no such individual has been
27  identified, and, further, there is no showing any such restriction would preclude a person
   with relevant testimony from traveling to the United States for the limited purpose of
28  attending the trial of the instant matter.

case based on the alleged misappropriation, although, as noted above, the indictment

filed in the United States is broader in scope.  Lastly, the claims in the FAC arise under

federal and California statutes, whereas, were the matter to be heard in Taiwan, the

claims alleged in such forum would arise under Taiwanese law, see, e.g., Good Earth

Lighting, Inc. v. New Chao Feng Indus. Co., 1999 WL 58555, at *2 (N.D. Ill. February 3,

1999) (observing Taiwanese courts apply Taiwan's Trade Secrets Act to "trade secrets

disclosures" occurring on or after January 19, 1996); consequently, either forum would be

familiar with the applicable law.

Accordingly, the Court finds defendants have not shown the public interest factors

weigh in favor of dismissal.

### 4.  Summary

Defendants have not shown dismissal under the doctrine of forum non conveniens

is appropriate.

## C.  Forum Selection Clauses

UMC argues the claims asserted against it are subject to dismissal in light of a

forum selection clause contained in an "Employment Agreement" between MMT and

Wang, as well as a forum selection clause contained in an "Employment Agreement"

between MMT and Neil Lee ("Lee").[13]

The forum selection clauses contained in the above-referenced employment

agreements are identical and provide as follows:

> Any dispute or controversy arising out of or in connection with the
> interpretation of this Agreement shall be settled by the parties through
> amicable negotiation in good faith; in case of any litigation arising thereof,
> the parties agree to be subject to Taichung District Court in the first
> instance.

(See Johnson Decl., filed February 22, 2019, Ex. 2 at MTI00000246, Ex. 3 at MTI at 7.)

UMC argues the above-quoted language requires Micron to file the instant case in

---

[13]Micron alleges Lee, a UMC employee formerly employed by MMT (see FAC
¶ 86), is listed as the inventor on one patent and on four patent applications that are
based on Micron's trade secrets (see FAC ¶¶ 95.b, 95.h, 95.i, 95.j, 95.k).

Taichung District Court, which is located in Taiwan.  As Micron points out, however, the above-quoted language, while requiring the parties to the agreement to consent to jurisdiction in the referenced court, does not state said court has exclusive jurisdiction over covered disputes.  See Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 76-77 (9th Cir. 1987) (holding clause providing "courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract" means neither party can "object to litigation in the Orange County Superior Court," but "does not mean that the same subject matter cannot be litigated in any other court"); Abokasem v. Royal Indian Raj Int'l Corp., 2011 WL 635222, at *8 (N.D. Cal. February 11, 2011) (holding clause providing "[a]ll disputes and settlements shall be subject to Bangalore jurisdiction" is "permissive rather than mandatory"); cf. Hunt Wesson, 817 F.2d at 77 (providing, as example of mandatory clause, "this Agreement shall be litigated only in the Superior Court for Los Angeles (and in no other").  In sum, even assuming Micron's claims against UMC arise out of the employment agreements, and that UMC has standing to enforce the agreements against Micron even though neither Micron nor UMC is a party thereto, the agreements do not mandate such claims be filed in the Taichung District Court.

Accordingly, UMC has not shown the claims against it are subject to dismissal by reason of the above-quoted forum selection clauses.

**D.  Failure to State a Claim**

Jinhua contends each of the causes of action asserted against it is subject to dismissal for failure to state a claim.

### 1.  Count I:  Violation of 18 U.S.C. § 1836(b)

Section 1836(b), on which Count I is based, provides a private cause of action to owners of trade secrets where those secrets have been misappropriated.  As Jinhua points out, however, the Defend Trade Secrets Act ("DTSA"), by which Congress amended § 1836 to create such private cause of action, was enacted May 11, 2016, and "[t]he DTSA only covers acts occurring on or after the date of the enactment."  See Cave

*Consulting Group, Inc. v. Truven Health Analytics Inc.*, 2017 WL 1436044, at *3 (N.D. Cal. April 24, 2017) (internal quotation and citation omitted).  According to Jinhua, Count I is based on acts predating May 11, 2016, and, consequently, is subject to dismissal in its entirety.

Misappropriation, for purposes of § 1836, includes "acquisition of a trade secret," as well as "disclosure or use" thereof.  *See* 18 U.S.C. § 1839(5).  Here, the only alleged acts of misappropriation that Micron asserts occurred prior to May 11, 2016 are the acquisitions by Ho and Wang.  (*See* FAC ¶¶ 70-75.)  Although Micron may not base its § 1836(b) claim on those alleged acts of acquisition, it may base its claim on any acts of misappropriation occurring on or after May 11, 2016, such as Jinhua's alleged disclosure of Micron's trade secrets in patent applications and its alleged use of secrets in its manufacturing activities in China.  *See* *Cave Consulting Group*, 2017 WL 1436044, at *4 (holding "[n]othing suggests that the DTSA forecloses a use-based theory simply because the trade secret being used was misappropriated before the DTSA's enactment").

Jinhua further contends such later acts, even if covered by § 1836(b), nonetheless do not support a claim against Jinhua.  Contrary to Jinhua's argument, however, Micron, for the reasons stated above, has sufficiently alleged Jinhua knew or had reason to know UMC acquired Micron's trade secrets by improper means.  Additionally, contrary to Jinhua's argument, Micron's trade secret misappropriation claims do not sound in fraud,[14] and, as a result, Count I need not be pleaded in conformity with Rule 9(b) of the Federal Rules of Civil Procedure.

Accordingly, to the extent Count I is based on the allegedly wrongful acquisitions by Ho and Wang, Count I is subject to dismissal, and, in all other respects, is not subject to dismissal.

---

[14]Micron does not allege, for example, that it disclosed its trade secrets to Ho or Wang, or any other person, in reliance on a representation that was false when made.

### 2. Count II: Violation of 18 U.S.C. § 1962(c)

In Count II, Micron alleges a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically, 18 U.S.C. § 1962(c). "To prevail on a civil RICO claim [under § 1962(c)], a plaintiff must prove that the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." Chaset v. Fleer/Skybox Int'l LP, 300 F.3d 1083, 1086 (9th Cir. 2002). With respect to the fifth of the above-quoted elements, the plaintiff must establish it "suffered a concrete financial loss" that was "proximately caused" by the alleged pattern of racketeering; "mere injury to a valuable intangible property interest" is insufficient. See id. at 1086-87.

The racketeering activity on which Micron bases its RICO claim is the alleged misappropriation of its trade secrets, specifically, acts in violation of 18 U.S.C. § 1832. (See FAC ¶ 124.)[15] Although the definition of "racketeering" includes violations of § 1832, see 18 U.S.C. § 1961(1), "racketeering" was not so defined prior to the DTSA, see DTSA, PL 114-153, § 3(b), 130 Stat 376, which, as noted, was enacted May 11, 2016. Consequently, Micron's RICO claim cannot be based on the alleged acts of misappropriation occurring before May 11, 2016, specifically, acquisitions by Ho and Wang. See, e.g., Attia v. Google LLC, 2018 WL 2971049, at *12 (N.D. Cal. June 13, 2018) (dismissing RICO claim based on violations of § 1832, where plaintiff failed to allege defendant "committed a predicate act of criminal trade secret theft on or after May 11, 2016").

As discussed above, Micron also alleges acts of misappropriation occurring on or

---

[15]Section 1832 provides that "[w]hoever, with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will injure any owner of that trade secret, knowingly . . . without authorization appropriates, . . . without authorization copies . . ., or receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained or converted without authorization" shall be guilty of a crime. See 18 U.S.C. § 1832(a).

1    after May 11, 2016, including Jinhua's alleged filing of multiple patent applications

2    disclosing Micron's trade secrets.  As to such claims, Jinhua argues Micron has failed to

3    sufficiently allege facts to support a finding that those acts have caused Micron to incur a

4    concrete financial loss.  As set forth below, the Court agrees.

5         "[T]he holder of a trade secret does not ordinarily suffer any lost opportunity unless

6    it can provide some concrete example of how it would have exploited its exclusive

7    possession of the trade secret." Mattel, Inc. v. MGA Entertainment, Inc., 782 F. Supp. 2d

8    911, 1021 (C.D. Cal. 2011).  Here, although Micron alleges it has incurred losses as a

9    result of the misappropriation, such allegations are stated in wholly conclusory terms

10   (see, e.g., FAC ¶ 62 (alleging that, "[t]hrough their trade secret misappropriation scheme,

11   UMC and Jinhua have caused Micron considerable harm"); FAC ¶ 116 (alleging

12   "misappropriation of the Micron trade secrets has caused and will continue to cause

13   Micron irreparable and substantial injury")), and, consequently, are insufficient to plead

14   the requisite loss. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (holding complaint subject

15   to dismissal where it lacks "sufficient factual matter" to support "legal conclusions");

16   Harmoni Int'l Spice, Inc. v. Hume, 914 F.3d 648, 654-55 (9th Cir. 2019) (holding plaintiff

17   failed to sufficiently state RICO claim, where complaint "merely assert[ed] the bare

18   conclusion" that plaintiff suffered damage "as a result of the defendants' predicate

19   acts").[16]

20        Accordingly, Count II is subject to dismissal for failure to state a claim, and, as set

21   forth below, the Court will afford Micron leave to amend as it may be able to allege facts

22   sufficient to support a finding it has incurred a concrete financial loss as a result of acts of

23   misappropriation occurring on or after May 11, 2016.

24   _____

25        [16]The case on which Micron relies is unavailing.  Although the plaintiff therein, as
     does Micron here, alleged the defendant disclosed trade secrets in patent applications,
26   the court did not hold such disclosure, without more, constituted a concrete financial loss;
     rather, the court found the requisite financial loss existed in light of the plaintiff's
27   allegation that, as a result of the disclosure, investors who would have invested in
     plaintiff's efforts to commercially develop the trade secrets instead invested with the
28   defendant. See Attia, 2018 WL 2971049, at *14.

**3. Count III: Violation of 18 U.S.C. § 1962(d)**

In Court III, Micron alleges Jinhua conspired with UMC and others to violate § 1962(c). As such, the claim is derivative of Count II, and, consequently, fails for the reasons set forth above with respect to Count II.

Accordingly, Count III is subject to dismissal, with leave to amend.

**4. Count IV: Violation of California Civil Code § 3426**

In Count IV, Micron alleges the acts of misappropriation were in violation of the California Uniform Trade Secrets Act ("CUTSA"). California defines "misappropriation" as (1) the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" and/or (2) the "[d]isclosure or use" of a trade secret so acquired. See Cal. Civ. Code § 3426.1(b) (providing, as examples of improper means, "theft" and "espionage through electronic or other means").

Jinhua argues that CUTSA, unlike 18 U.S.C. § 1836, does not have extraterritorial application, and that the FAC lacks facts to support a finding that any alleged act of misappropriation occurred in California.

Under California law, it is "presume[d] the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." See Sullivan v. Oracle Corp., 51 Cal. 4th 1191, 1207 (2011) (internal quotation, alteration, and citation omitted). Although Micron argues CUTSA provides a remedy for misappropriation so long as the misappropriation "affects interstate commerce" (see Pl.'s Opp. to Jinhua's Mot. at 14:4-6, 17-19, 16:3-5), Micron cites no authority in support of such proposition, nor does it point to any language in the legislative history or other source sufficient to rebut the presumption that CUTSA does not have extraterritorial application. Indeed, the one court to have analyzed the issue has held that no grounds exist to rebut the presumption. See Cave Consulting Group, 2017 WL 1436044, at *6.

Micron alternatively relies on its allegations that Jinhua, while in this District, recruited employees and met with vendors from which it ordered supplies. As discussed above, however, Micron has not alleged such conduct itself constitutes misappropriation, but, rather, acts in furtherance of misappropriation, which misappropriation, as alleged, occurred outside the United States.

Accordingly, given Micron's failure to allege any act of misappropriation occurring in California, Count IV is subject to dismissal. The Court will, however, afford Micron leave to amend to allege, if it can do so, facts to identify any such act.

## CONCLUSION

For the reasons stated:

1. UMC's motion to dismiss is hereby DENIED.

2. Jinhua's motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

    a. Count I is DISMISSED to the extent it is based on an acquisition of trade secrets occurring before May 11, 2016.

    b. Counts II, III and IV are DISMISSED.

    c. In all other respects, the motion is DENIED.

3. If Micron wishes to amend, it shall file a Second Amended Complaint no later than May 24, 2019.

In light of the above, the case management conference, currently scheduled for May 24, 2019, is hereby CONTINUED to June 7, 2019, at 10:30 a.m. A Joint Case Management Statement shall be filed no later than May 31, 2019.

**IT IS SO ORDERED.**

Dated: May 2, 2019

MAXINE M. CHESNEY
United States District Judge

23