Daniel Johnson Jr. (Bar No. 57409)
Mario Moore (Bar No. 231644)
Robert G. Litts (Bar No. 205984)
DAN JOHNSON LAW GROUP, LLP
400 Oyster Point Blvd., Suite 321
South San Francisco, CA 94080
Telephone: (415) 604-4500
dan@danjohnsonlawgroup.com
mario@danjohnsonlawgroup.com
robert@danjohnsonlawgroup.com
*Attorneys for Defendant*
United Microelectronics Corporation

Lyle B. Vander Schaaf (DC Bar No. 422380)
Evi T. Christou (DC Bar No. 1600066)
Fei Hu (DC Bar No. 1016150)
BRINKS GILSON & LIONE
1775 Pennsylvania Ave, NW, Suite 900
Washington, DC 20006
Telephone: (202) 296-8700
lvanderschaaf@brinksgilson.com
echristou@brinksgilson.com
fhu@brinksgilson.com
Appearance *pro hac vice*

Harold V. Johnson (IL Bar No. 6188149)
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Drive, Suite 3600
Chicago, IL 60611
Telephone: (312) 321-4200
hjohnson@brinksgilson.com
Appearance *pro hac vice*
*Attorneys for Defendant*
Fujian Jinhua Integrated Circuit Co., Ltd.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICRON TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED MICROELECTRONICS CORPORATION, FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD., and DOES 1-10 <br><br> Defendants. | Case No. 3:17-CV-6932-MMC <br><br> DECLARATION OF MARIO MOORE IN SUPPORT OF UNITED MICROELECTRONICS AND FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S JOINT MOTION TO STAY CIVIL ACTION PENDING RESOLUTION OF CRIMINAL PROCEEDINGS <br><br> Judge: Hon. Maxine M. Chesney <br> Courtroom: 7 – 19th Floor <br> Hearing date: June 21, 2019 <br> Hearing time: 9:00 a.m. <br><br> FAC Filed: February 8, 2019 |

I, Mario Moore, hereby declare as follows:

1.      I am an attorney licensed to practice law in the State of California, and I am admitted to practice before this Court. I am a partner at Dan Johnson Law Group, LLP, and I am one of the attorneys representing United Microelectronics Corporation (UMC) in the above-captioned matter. I submit this declaration in support of UMC and Fujian Jinhua Integrated Circuit Co., Ltd.'s (Jinhua) Motion to Stay Civil Action Pending Resolution of Criminal Proceedings.  I make this declaration on personal knowledge, and if called as a witness, I could and would competently testify with respect to the matters stated herein.

2.      Attached hereto as Exhibit **1** is a true and correct copy of the Indictment, filed in *United States of America v. United Microelectronics Corporation, et al.*, Case No. CR-18-00465 (N.D. Cal.), dated September 27, 2018.

3.      Attached hereto as Exhibit **2** is a true and correct copy of the United States' Complaint for Injunctive Relief, filed in *United States of America v. United Microelectronics Corporation, et al.*, Case No. CV-18-06643 (N.D. Cal.), dated November 1, 2018.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 23rd day of May 2019, in Irvine, California.

Dated: May 23, 2019                              DAN JOHNSON LAWGROUP


                                                    */s/ Mario Moore*
                                                    Mario Moore (Bar No. 231644)

MOORE DECL. ISO UMC AND JINHUA'S
JOINT MOTION TO STAY CIVIL ACTION                    Case No. 3:17-CV-6932-MMC

**Ex. 1**

# United States District Court

## FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

VENUE: SAN JOSE

FILED

SEP 27 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF COURT
SAN JOSE CALIFORNIA

UNDER SEAL

UNITED STATES OF AMERICA,

V.

# CR 18  465

LHK

UNITED MICROELECTONICS
CORPORATION, et al.,

SVK

DEFENDANT(S).

# INDICTMENT

VIOLATIONS:

Title 18, United States Code, Section 1831(a)(5) – Conspiracy to Commit Economic Espionage;
Title 18, United States Code, Section 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets;
Title 18, United States Code, Section 1831(a)(1) – Economic Espionage (Theft of Trade Secrets);
Title 18, United States Code, Section 1831(a)(2) – Economic Espionage (Copying and Conveying of Stolen Trade
Secrets); Title 18, United States Code, Section 1831(a)(3) and (2) – Economic Espionage (Receipt and Possession
of Stolen Trade Secrets); Title 18 United States Code, Section 1832(a)(1) – Theft of Trade Secrets;
Title 18, United States Code, Section 2323 – Criminal Forfeiture

A true bill.

_____
Foreman

Filed in open court this ___27th___ day of

___Sept, 2018___

ROSE MAHER

_____
Clerk

Thomas S. Hixson

Bail, $ _____

NO PROCESS

DOCUMENT NO.   C.S.'s
INITIALS

DISTRICT COURT
CRIMINAL CASE PROCESSING

ALEX G. TSE (CABN 152348)
United States Attorney

UNDER SEAL

FILED

SEP 27 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

UNITED MICROELECTONICS
CORPORATION; FUJIAN JINHUA
INTEGRATED CIRCUIT, CO., LTD.; CHEN
ZHENGKUN, a.k.a. STEPHEN CHEN; HE
JIANTING, a.k.a. J.T. HO; and WANG
YUNGMING, a.k.a. KENNY WANG.

    Defendants.

CR 18 465 LHK SVK

VIOLATIONS:
Title 18, United States Code, Section 1831(a)(5) –
Conspiracy to Commit Economic Espionage;
Title 18, United States Code, Section 1832(a)(5) –
Conspiracy to Commit Theft of Trade Secrets;
Title 18, United States Code, Section 1831(a)(1) –
Economic Espionage (Theft of Trade Secrets);
Title 18, United States Code, Section 1831(a)(2) –
Economic Espionage (Copying and Conveying of
Stolen Trade Secrets);
Title 18, United States Code, Section 1831(a)(3) and
(2) – Economic Espionage (Receipt and Possession of
Stolen Trade Secrets);
Title 18 United States Code, Section 1832(a)(1) –
Theft of Trade Secrets;
Title 18, United States Code, Section 2323 –
Criminal Forfeiture

**SAN JOSE VENUE**

I N D I C T M E N T

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

    1.    Dynamic random-access memory (DRAM) is a memory device product used in
electronics to store information.  DRAM stores each bit of data in a separate tiny capacitor within an
integrated circuit.  DRAM is a technologically advanced commodity; it is widely used in digital

INDICTMENT                1

1  electronics where low-cost and high-capacity memory is required.  DRAM is used in leading-edge

2  computing, consumer, networking, automotive, industrial, embedded, and mobile productions, and is a

3  product that is used or intended for use in interstate or foreign commerce.

4      2.     Growth of the electronics industry in the People's Republic of China (PRC) created

5  significant demand for memory products such as DRAM.  The Central Government and State Council of

6  the PRC publicly identified the development of DRAM technology as a national economic priority

7  because PRC companies had not been able to develop technologically advanced DRAM production

8  capabilities, and PRC electronics manufacturers relied on producers outside the PRC to supply DRAM.

9  DRAM production technology was closely held by manufacturers in the United States, South Korea, and

10  Taiwan, including Micron Technology, Inc. ("Micron"), which had improved the technology through

11  intensive research and development over many years.

12      3.     Aware of the PRC's national priority and the barriers placed by non-PRC manufacturers,

13  including Micron, on access to the technology, at the times set forth below, individuals and companies

14  named in this Indictment obtained DRAM trade secrets belonging to Micron and conveyed information

15  containing those trade secrets to a company controlled by the PRC government without authorization

16  from Micron.

17  Defendants

18      4.     Defendant United Microelectronics Corporation ("UMC") was a semiconductor foundry

19  company headquartered in Taiwan with global offices in Taiwan, China, Europe, Singapore, Japan,

20  Korea, and the United States, including in Sunnyvale, California.  UMC was publicly listed and traded

21  on the NASDAQ.  UMC's primary business was to mass produce integrated-circuit logic products based

22  on designs and technology developed and provided by its customers.  UMC did not, prior to the events

23  charged in this Indictment, possess advanced DRAM-related technology.

24      5.     Defendant Fujian Jinhua Integrated Circuit, Co., Ltd. ("Jinhua") was established in

25  February 2016 in the Fujian Province of China for the sole purpose of designing, developing, and

26  manufacturing DRAM.  Jinhua was created with US$5.65 billion in funding provided by the PRC

27  government and PRC government entities.  Its two major shareholders were Electronics & Information

28  Group Co., Ltd. and Jinjiang Energy Investment Co., Ltd., which were PRC state-owned enterprises.

1   Jinhua's self-described aim was "to introduce intellects, technology, and resources from Taiwan and the

2   world, create the first self-dependent DRAM production project and 12 inch DRAM wafer line in China

3   and fill the blank." Jinhua described itself as having the "duty to realize the domestic manufacturing of

4   [integrated circuit] chip and aims to become a state owned [integrated circuit] manufacturing enterprise

5   with advanced process and [an] independent intellectual property system."

6       6.      In or around January 2016, UMC entered into a technology cooperation agreement with

7   Jinhua to develop DRAM technology for a product that UMC referred to as the "32nm and 32Snm

8   DRAM" or "F32nm/F32Snm DRAM." Under the technology cooperation agreement, UMC would

9   provide the DRAM research and development, and Jinhua would provide the manufacturing and

10  fabrication facilities to mass-produce DRAM. UMC and Jinhua were to jointly own the DRAM

11  technology and development. Under the terms of the agreement, Jinhua would provide US$300 million

12  for purchasing necessary equipment for DRAM development and would pay US$400 million to UMC

13  based on the progress of DRAM development. In or around April 2016, Taiwan's Ministry of

14  Economics approved the UMC and Jinhua technology cooperation agreement.

15      7.      Defendant Chen Zhengkun (a.k.a. Stephen Chen) was a Taiwanese national and former

16  General Manager and Chairman of Rexchip Electronics Corporation ("Rexchip"), a company that

17  Micron acquired in or around 2013, which formed Micron Memory Taiwan Co., Ltd. ("MMT"),

18  Micron's Taiwan subsidiary. Chen became the President of MMT and Site Director of MMT's

19  Fabrication Facility 16, responsible for making Micron's 25nm DRAM chip. Chen resigned from MMT

20  in July 2015 and began working for UMC as the Senior Vice President and Fabrication Director in

21  Taiwan in September 2015. In or around January 2016, Chen helped negotiate the terms of the

22  UMC/Jinhua technology cooperation agreement and became the Senior Vice President of UMC's newly

23  formed New Business Development ("NBD") division, tasked with overseeing UMC's F32nm DRAM

24  development project and the technology cooperation agreement between UMC and Jinhua. In or around

25  February 2017, UMC released Chen from his position at UMC, and Chen became the President of

26  Jinhua in charge of its DRAM production facility.

27      8.      Defendant He Jianting (a.k.a. J.T. Ho) was a Taiwanese national and former process

28  integration manager at MMT, whom Chen recruited to join UMC. Ho resigned from MMT in or around

1  October 2015 and began working at UMC in its process integration division in November 2015.  Prior to

2  leaving MMT, Ho stole Micron confidential and proprietary materials and used the stolen materials in

3  his work at UMC to advance the development of UMC's F32 DRAM technology design for transfer to

4  Jinhua. In April 2016, Ho became a project integration manager in UMC NBD's Project Management 2

5  Department.  Between about December 2015 and January 2017, Ho communicated with another former

6  MMT employee, Wang Yungming (a.k.a. Kenny Wang), using the LINE Messaging platform and

7  personal emails, to share and exchange confidential and proprietary Micron information to further

8  UMC's F32nm DRAM technology design.

9       9.     Defendant Kenny Wang was a Taiwanese national and former MMT employee, whom

10  Chen hired to join UMC.  At MMT, Wang was a Process Integration/Device Section Manager and

11  remained in that role until his promotion to Product Quality Integration Section Manager in January

12  2016 and resignation from MMT in April 2016.  While at MMT, Wang shared and exchanged

13  confidential and proprietary Micron information with Ho, who at the time was working at UMC.  Prior

14  to his official exit from MMT, Wang misappropriated over 900 Micron files, some containing Micron

15  confidential and proprietary information for the design of the company's DRAM technology in its

16  current and future generations that were still in its research and development phase.  Wang downloaded

17  trade secrets from Micron's company servers in the United States, took them with him when he left the

18  company, and stored the files on his Google Drive account located on servers in the United States.  After

19  Wang left MMT in April 2016 and began working at UMC immediately thereafter, he used the

20  misappropriated confidential and proprietary Micron materials to further UMC's design of the F32nm

21  DRAM design process.

22                    Micron Trade Secrets and Confidentiality Provisions

23       10.    Micron is the only United States-based company that manufactures DRAM.  Micron's

24  headquarters were in Boise, Idaho, and it maintained a large office in the Northern District of California.

25  The company became a major participant in the global semiconductor industry with its purchase of

26  Texas Instruments' DRAM memory business in 1998 and thereafter specialized in the advanced

27  research and development and manufacturing of memory products including, but not limited to, DRAM.

28  Micron provides approximately 20-25% of the world supply of DRAM.  The trade secrets identified

INDICTMENT                                    4

1  below consisted of detailed, confidential information used to design and construct efficient

2  manufacturing processes for advanced DRAM technology. The development of this information and its

3  confidentiality provides Micron with a significant competitive advantage in the world market. This

4  competitive advantage allows Micron to remain in business and continue to research and develop

5  advanced DRAM for commercial and other uses.

6      11.    MMT was a subsidiary of Micron. MMT was one of Micron's fabrication plants in

7  Taiwan that engaged in making DRAM. MMT assigned all intellectual property, including all trade

8  secrets that it developed, to Micron.

9      12.    Micron's DRAM technology included, but was not limited to, the following trade secrets,

10  as defined in 18 U.S.C. § 1839(3):

11      a.    **Trade Secret 1:** The Micron process to manufacture and produce DRAM

12  contained in the totality of information stolen by Wang and Ho from Micron and provided to UMC and

13  Jinhua under the direction of Chen and others. Trade Secret 1 included ways and means in which

14  proprietary and non-proprietary components were compiled and combined by Micron to form substantial

15  portions of the DRAM design and manufacturing process, including Trade Secrets 2 through 8, below.

16      b.    **Trade Secret 2:** A 233-page PDF document identified with digital filename

17  "FAB16 90s Traveler-20150518" (hereafter "25nm Process Traveler document"). The 25nm Process

18  Traveler document contained comprehensive and very detailed information documenting the beginning-

19  to-end manufacturing process for Micron's 25nm DRAM product, including details of specifications and

20  production processes.

21      c.    **Trade Secret 3:** An Excel spreadsheet with multiple tabs identified with digital

22  filename "(ALL) IMP conditions Table_20150318" (hereinafter "Implant Conditions Table"). The

23  Implant Conditions Table contained implant data required to make each of the various different

24  transistor types required to make a 25nm DRAM product. Data in the Implant Conditions Table

25  included very specific details of the relevant particular process code - which could be matched back to

26  process descriptions in Trade Secret 2.

27      d.    **Trade Secret 4:** An Excel spreadsheet with multiple tabs identified with digital

28  filename "Implant Condition for MES setting_1015" (hereafter "Implant Conditions for MES

INDICTMENT          5

1  document"). MES referred to a particular software used to track the 25nm DRAM product through the
2  fabrication process, and the Implant Conditions for MES document was a tracking document that
3  informed the software. The document inputted into the MES software enabled Micron to closely
4  monitor and manage its 25nm DRAM fabrication process. The Implant Conditions for MES document
5  provided critical details to manage the fabrication of the 25nm DRAM product through the fabrication
6  process and provided information on the precision and outcome of each particular step.

7      e.    **Trade Secret 5:** An Excel spreadsheet with multiple tabs identified with digital
8  filename "[DR25nmS] Design rules Periphery_EES_2012000026-013_Rev.13" (hereafter "Design
9  Rules document"). The Design Rules document contained detailed design specifications for the
10 architecture of the 25nm DRAM product, including details on how to layer Micron's 25nm DRAM
11 product. The Design Rules document included precise information on how to build distances between
12 elements in a DRAM product to avoid electrical and physical interference. The Design Rules document
13 included Micron trade secrets related to these types of specifications, which were critical information
14 needed to build a 25nm DRAM product.

15     f.    **Trade Secret 6:** A 302-page PDF document identified with digital filename
16 "DRAM_100_series_(20nm)_traveler_(v00h) 150730" (hereafter "20nm Process Traveler document").
17 The 20nm Process Traveler document contained the specific types of details summarized in the 25nm
18 Process Traveler document but for the next generation 20nm DRAM product. The 20nm Process
19 Traveler document also contained details regarding Micron's upgrade from the 25nm to the 20nm
20 DRAM product and contained trade secret information pertinent to both generations of the product.

21     g.    **Trade Secret 7:** A 360 page PDF identified with digital filename
22 "dram_110_series_(1xnm)_ traveler_(z11a)-20150915.pdf" (hereafter "1xnm Process Traveler
23 document"). The 1xnm Process Traveler document contained the comprehensive and very detailed
24 information documenting the beginning-to-end manufacturing process for Micron's 1xnm DRAM
25 product, including details of specifications and production processes. The 1xnm DRAM product was
26 Micron's most advanced DRAM at the time. The 1xnm Process Traveler document also contained
27 details regarding Micron's upgrade from the 20nm DRAM product to the 1xnm DRAM product and
28 contained trade secret information pertinent to both generations of the product.

1        h.    **Trade Secret 8**: A 260 page PDF identified with digital filename

2  "dram_1xnm_process_(Z11AA41200)_-_summary_flow_document" (hereafter "1xm Process Summary

3  Flow document"). The 1xnm Process Summary Flow document contained the manufacturing process of

4  the 1xn DRAM chip as it flowed through the manufacturing facility. It compared the 1xnm process flow

5  with prior generations of DRAM products. It described the evolution of the DRAM product to the 1xnm

6  generation, explaining the purpose and reasons why certain changes and upgrades were made from one

7  generation to the next.

8       13.    Micron took reasonable measures to keep Trade Secrets 1 through 8 secret, including

9  physical, electronic, legal, and policy measures.

10      14.    The information contained in Trade Secrets 1 through 8 derived independent economic

11  value, actual and potential, from not being generally known to, and not being readily ascertainable

12  through proper means by, another person who could obtain economic value from the disclosure or use of

13  the information.

14      15.    The value of Trade Secrets 1 through 8, and each of them, to UMC and Jinhua, was at

15  least $400 million and up to $8.75 billion, including expenses for research and design and other costs of

16  reproducing the trade secrets that UMC and Jinhua avoided by the actions alleged in Counts 1, 2, and

17  7.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

INDICTMENT              7

1   <u>COUNT ONE:</u>     (18 U.S.C. § 1831(a)(5) – Conspiracy to Commit Economic Espionage)

2           16.     The allegations contained in Paragraphs 1 through 15 are re-alleged.

3           17.     Beginning in or about January 2016, and continuing to the date of this Indictment, in the

4   Northern District of California and elsewhere, defendants,

5                           UNITED MICROELECTONICS CORPORATION,
                       FUJIAN JINHUA INTEGRATED CIRCUIT, CO., LTD.,
6                           CHEN ZHENGKUN, a.k.a. STEPHEN CHEN,
                                HE JIANTING, a.k.a. J.T. HO,
7                       WANG YUNGMING, and a.k.a. KENNY WANG,

8   together with others known and unknown to the Grand Jury, knowingly combined, conspired, and

9   agreed to:

10          a.      knowingly steal and without authorization appropriate, take, carry away, and

11  conceal, and by fraud, artifice, and deception obtain trade secrets belonging to Micron; and

12          b.      knowingly and without authorization copy, duplicate, sketch, draw, photograph,

13  download, upload, alter, destroy, photocopy, replicate, transmit, deliver, send, mail, communicate, and

14  convey trade secrets belonging to Micron; and

15          c.      knowingly receive, buy, and possess trade secrets belonging to Micron, knowing

16  the same to have been stolen, appropriated, obtained, and converted without authorization; intending and

17  knowing that the offenses would benefit a foreign government, namely the PRC, and a foreign

18  instrumentality, namely Jinhua.

19                          Manner and Means of the Conspiracy

20          18.     In order to develop DRAM technology and production capabilities without investing

21  years of research and development and the expenditure of many millions of dollars, UMC and Jinhua, a

22  company entirely funded by the PRC government, and employees of both, conspired to circumvent

23  Micron's restrictions on its proprietary technology and illegally obtain DRAM technology that had been

24  developed by Micron, including Trade Secrets 1 through 8.

25          19.     In or around February 2016, the PRC formed and funded Jinhua for the purpose of

26  developing, designing, and mass-producing advanced DRAM technology.  The PRC prioritized the

27  development of integrated circuit devices, which included DRAM, in its 13th Five-Year Plan, a national

28  plan that included objectives for China's economic priorities for the years 2016-2020, ratified by the

1   National People's Congress, and which established the Chinese Communist Party's vision for the

2   country's future developments.

3        20.    In or around January 2016, Jinhua and UMC negotiated and later entered into a

4   technology cooperation agreement whereby, with funding from Jinhua, UMC would develop DRAM

5   technology, transfer the technology to Jinhua, and Jinhua would mass produce DRAM.

6        21.    In the years leading up to the technology cooperation agreement, UMC did not have

7   advanced DRAM technology and had not been producing DRAM.  UMC, however, had intentions to

8   take over DRAM business in China.

9        22.    In September 2015, UMC hired Chen, who was previously the President of MMT and the

10  site director of MMT's Fabrication Facility 16 in charge of producing Micron's 25nm DRAM product,

11  to be the Senior Vice President of UMC.  In January 2016, UMC established the NBD division for

12  developing DRAM technology to transfer to Jinhua and placed Chen in charge of the NBD division.

13       23.    From in or around October 2015 through April 2016, Chen recruited and hired several

14  MMT employees to work for UMC, including Ho and Wang, among others.

15       24.    In or around November 2015, Chen hired Ho to work for UMC.  Prior to leaving MMT,

16  Ho stole confidential and proprietary materials belonging to Micron, including trade secrets pertaining to

17  the prior, current, and future generations of Micron's DRAM technology, including the 80 (30nm), 90

18  (25nm), 100 (20nm), and 110 (1Xnm) series DRAM.  Ho referenced the stolen Micron materials to

19  support UMC's design of the F32nm DRAM technology for transfer to Jinhua pursuant to the two

20  companies' technology transfer agreement.  Ho stored the stolen Micron trade secrets, including Trade

21  Secrets 1, 6, 7, and 8 on one or more digital devices belonging to UMC.

22       25.    Between in or around December 2015 and April 2016, Ho communicated with his former

23  colleague Wang, who was still working at MMT.  Wang provided Ho with confidential and proprietary

24  Micron information to further UMC's F32nm DRAM technology design, including information related

25  to Micron's wafer specifications for its 25nm DRAM chip.

26       26.    On April 26, 2016, Wang left MMT's employment.  During Wang's exit interview from

27  MMT, Wang told MMT that he was leaving to work at his family business, and he signed the MMT

28  Declaration of Resignation, declaring and certifying that he did not keep any documents, confidential or

1  otherwise, belonging to the company, and that he destroyed any hard copy or electronic form in his

2  possession or control that were stored on non-Micron property, including computers, phone, personal

3  email, or file sharing accounts.

4          27.     Wang did not leave to work for his family business but rather immediately began

5  working for UMC.

6          28.     In the weeks leading up to Wang's resignation from MMT, he downloaded over 900

7  confidential and proprietary files belonging to Micron, including Trade Secrets 1-8, by downloading the

8  files from Micron servers and transferring them to USB external storage devices or uploading the files to

9  his personal Google Cloud account stored on servers in the United States.  Many of the files were

10 marked "Micron Confidential," "Micron Technology, Inc., Confidential and Proprietary," or "Micron

11 Confidential/Do Not Duplicate." The created dates in the Google files metadata showed that Wang

12 accessed Micron confidential and proprietary files both before and after he left Micron employment, and

13 while working at UMC.

14         29.     In the weeks leading up to Wang's resignation from MMT, Wang ran numerous deletion

15 processes and a CCleaner program on his laptop computer to mask his theft of Micron trade secrets.  He

16 also conducted numerous internet searches, accessing a number of publicly available news articles about

17 the PRC government's support of the growth of the DRAM business in the PRC, and specifically on

18 UMC and Jinhua's cooperation toward creating and producing DRAM.

19         30.     While working at UMC, Wang referenced Micron trade secrets to assist and further

20 UMC's development of its F32nm DRAM technology.  In or around July or August 2016, Wang, at the

21 direction of a UMC employee, referenced Micron's Trade Secret 5 and provided critical design rule data

22 to that employee to further UMC's development of its F32nm DRAM technology, knowing that UMC

23 would transfer the technology to Jinhua.  Wang used his UMC-assigned laptop to access his Google

24 Drive, download a copy of Trade Secret 5, and reference the data contained therein to assist UMC with

25 its F32nm DRAM design rule.  UMC employees were directed to use the information Wang provided to

26 complete UMC's F32nm DRAM design rule.  Trade Secret 5 and UMC's F32nm DRAM design rule

27 were stored in Wang's Google Drive, and a comparison of the two show Micron's information being

28 used in UMC's F32nm DRAM design rule document.

31.   On October 23, 2016, Chen, UMC, Jinhua, and government officials from the PRC attended a Jinhua/UMC recruiting fair in the Northern District of California to recruit employees from the United States with semi-conductor experience to work for both companies in either the research and development or sales and marketing division.  Chen stated at the recruiting fair that UMC had transferred its 25nm DRAM chip to Jinhua.  On or about October 24, 2016, Chen and others from UMC and Jinhua, including the mayors from the PRC cities of Jinjiang and Quanzhou, also visited several semiconductor equipment-manufacturing companies in the Northern District of California to facilitate its DRAM production process.  While at the recruiting fair and visiting the equipment-manufacturing companies in the Northern District of California, Chen, UMC, and Jinhua had obtained and were in continuous control of the stolen Micron trade secrets.

32.   From in or around September 2016 through March 2017, UMC and Jinhua filed five patents and a patent application concerning DRAM technology that contained information that was the same or very similar to technology described in Micron's Trade Secrets 2 and 6.  Ho was listed as an inventor in each of the five patents and the patent application.  The information contained in the patents and patent application contained Micron trade secrets that could not be obtained through reverse engineering.

33.   In February 2017, Taiwan law enforcement authorities executed search warrants and seized items from UMC's offices and Ho's and Wang's residences.  They found electronic and hard copy files containing Micron trade secrets in areas and on devices associated with UMC and belonging to Ho and Wang.  Knowing that Taiwan law enforcement was on its way to execute search warrants at UMC, a UMC employee directed both Ho and Wang to remove any electronic devices they possessed that contained Micron information on them.  Some of the electronic devices that contained Micron information were turned over to Taiwan law enforcement.  At least one electronic device that contained Micron information was not turned over to Taiwan law enforcement and had been concealed by UMC and Chen.

34.   In or around February 2017, in addition to his position at UMC, Chen assumed the post of President of Jinhua.

<u>Overt Acts</u>

35.     Between in or about October 2015 and April 2016, Chen recruited Micron employees Ho and Wang to work at UMC to develop F32nm DRAM technology.

36.     In or around January 2016, UMC entered a technology cooperation agreement to develop and transfer F32nm DRAM technology to Jinhua, a state-owned enterprise of the People's Republic of China.

37.     In or around October 2015, Ho stole Micron trade secrets, including Trade Secret 1 and files identified as Trade Secrets 6, 7, and 8, and brought them with him to UMC.  In or around December 2015, Ho saved files identified as Trade Secrets 6, 7, and 8 onto his UMC laptop.

38.     In or around December 2015, Ho obtained from Chen a UMC company laptop with USB capability in order to access confidential and proprietary Micron materials in support of the UMC F32nm DRAM project.

39.     On or about February 28, 2016, Wang downloaded Trade Secret 5 from Micron servers. On or about May 4, 2016 and June 29, 2016, Wang uploaded Trade Secret 5 to his BRH5476 Google Cloud Account.

40.     On or about April 23, 2016, Wang downloaded Trade Secrets 2, 3, and 4 from his Micron company laptop and uploaded Trade Secrets 2, 3, and 4 to his BRH5476 Google Cloud Account.

41.     On or about April 23, 2016, Wang downloaded Trade Secret 6 from Micron servers.  On or about April 23, 2016 and October 23, 2016, Wang uploaded Trade Secret 6 to his BRH5476 Google Cloud Account.

42.     On or about May 22, 2016, Wang emailed Trade Secret 5 from his BRH5476 Gmail Account to his UMC email account.

43.     In or around July or August 2016, Wang used stolen Micron trade secret material contained in Trade Secret 5 to assist UMC with its design of the F32nm DRAM product.  Information from Trade Secret 5 was put into UMC's document titled: UMC 32nm DRAM Process Topological Layout Rule Version 0.1, Phase 3 (Revision History Approved Date August 1, 2016).

44.     On or about October 10, 2016, Wang uploaded Trade Secrets 7 and 8 to his BRH5476 Google Cloud Account.

45.     On or about October 18, 2016, UMC and Jinhua filed a patent application (with corresponding Patent No. 9,679,901 B1) in the United States Patent and Trademark Office, which claimed priority to a Chinese patent application filed on September 22, 2016.  Ho was listed as a named inventor on the patent application.  The disclosures and inventions described in the patent application were based on or derived from misappropriated proprietary Micron materials identified in Trade Secrets 2 and 6.  On June 13, 2017, the United States Patent and Trademark Office issued patent 9,679,901 B1 to UMC and Jinhua.

46.     On or about October 23, 2016, UMC, Jinhua, and Chen, after having obtained Micron trade secrets and being in continuous control over them, arranged and coordinated a UMC/Jinhua recruiting event in the Northern District of California to recruit employees from the United States with semi-conductor experience to work for UMC/Jinhua.  PRC government officials attended the event to show support for the companies.  Chen announced at the recruiting event that UMC had transferred the F32nm DRAM design technology to Jinhua.

47.     On or about October 24, 2016, UMC, Jinhua, Chen, and government officials from the PRC visited Applied Materials, Lam Research, and KLA Tencor, semiconductor equipment-manufacturing companies in the Northern District of California, to facilitate and further its DRAM production process.

48.     In February 2017, a UMC employee directed Ho and Wang to remove and hide electronic devices containing Micron information from Taiwan law enforcement who were going to search UMC's offices.

49.     Sometime after February 2017, UMC and Chen concealed at least one electronic device containing misappropriated Micron materials from Taiwan law enforcement.

All in violation of Title 18, United States Code, Section 1831(a)(5).

///
///
///
///
///

1  COUNT TWO:        (18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets)

2      50.    The allegations contained in Paragraphs 1 through 15 are re-alleged and incorporated as

3  if fully set forth herein.

4      51.    Beginning in or about October 2015, and continuing to the date of this Indictment, in the

5  Northern District of California and elsewhere, defendants,

UNITED MICROELECTONICS CORPORATION,
FUJIAN JINHUA INTEGRATED CIRCUIT, CO., LTD.,
CHEN ZHENGKUN, a.k.a. STEPHEN CHEN,
HE JIANTING, a.k.a. J.T. HO,
WANG YUNGMING, and a.k.a. KENNY WANG,

9  together with others known and unknown to the Grand Jury, knowingly combined, conspired, and

10  agreed to:

11      a.    knowingly steal and without authorization appropriate, take, carry away, and

12  conceal, and by fraud, artifice, and deception obtain trade secrets belonging to Micron; and

13      b.    knowingly and without authorization copy, duplicate, sketch, draw, photograph,

14  download, upload, alter, destroy, photocopy, replicate, transmit, deliver, send, mail, communicate, and

15  convey trade secrets belonging to Micron; and

16      c.    knowingly receive, buy, and possess trade secrets belonging to Micron, knowing

17  the same to have been stolen, appropriated, obtained, and converted without authorization;

18  intending to convert a trade secret that is related to a product, namely DRAM, that is used in and

19  intended for use in interstate and foreign commerce, to the economic benefit of someone other than

20  Micron, and intending and knowing that the offense would injure Micron.

21                        Manner and Means of the Conspiracy

22      52.    The objects of the conspiracy were carried out, in part, as alleged in Paragraphs 18

23  through 34 above.

24                                Overt Acts

25      53.    In furtherance of the conspiracy and to effect its objects, defendants committed the overt

26  acts alleged in paragraphs 34 through 49, among others, in the Northern District of California and

27  elsewhere.

28      All in violation of Title 18, United States Code, Section 1832(a)(5).

INDICTMENT                              14

1  COUNT THREE:     (18 U.S.C. § 1831(a)(1) – Economic Espionage (Theft of Trade Secrets))

2      54.   The allegations contained in Paragraphs 1 through 49 are re-alleged.

3      55.   From in or about March 2016 to in or about October 2016, in the Northern District of

4  California and elsewhere, defendant

5                      WANG YUNGMING, a.k.a. KENNY WANG,

6  intending and knowing that he would benefit a foreign government, foreign instrumentality, and foreign

7  agent, knowingly stole, and without authorization, appropriated, took, carried away, and concealed, and

8  by fraud, artifice, and deception, obtained Trade Secrets 1 through 8, in violation of Title 18, United

9  States Code, Section 1831(a)(1).

10  COUNT FOUR:     (18 U.S.C. § 1831(a)(2) – Economic Espionage (Copying and Conveying of Trade

11                    Secrets))

12      56.   The allegations contained in Paragraphs 1 through 49 are re-alleged.

13      57.   From in or about March 2016 to in or about February 2017, in the Northern District of

14  California and elsewhere, defendant

15                      WANG YUNGMING, a.k.a. KENNY WANG,

16  intending and knowing that he would benefit a foreign government, foreign instrumentality, and foreign

17  agent, knowingly and without authorization, copied, duplicated, downloaded, uploaded, replicated,

18  transmitted, delivered, sent, communicated, and conveyed Trade Secrets 1 and 5, in violation of Title 18,

19  United States Code, Section 1831(a)(2).

20  COUNT FIVE:     (18 U.S.C. § 1831(a)(2) – Economic Espionage (Copying and Conveying of

21                    Trade Secrets))

22      58.   The allegations contained in Paragraphs 1 through 49 are re-alleged.

23      59.   From in or about February 2016 to in or about February 2017, in the Northern District of

24  California and elsewhere, defendant

25                      HE JIANTING, a.k.a. J.T. HO,

26  intending and knowing that he would benefit a foreign government, foreign instrumentality, and foreign

27  agent, knowingly and without authorization, copied, duplicated, downloaded, uploaded, replicated,

28  transmitted, delivered, sent, communicated, and conveyed Trade Secret 1, in violation of Title 18,

1   United States Code, Section 1831(a)(2).

2

3   <u>COUNT SIX</u>:      (18 U.S.C. § 1832 (a)(1) – Theft of Trade Secrets)

4        60.    The allegations contained in Paragraphs 1 through 49 are re-alleged.

5        61.    In or about October 2015, in the Northern District of California and elsewhere, defendant

6                                    HE JIANTING, a.k.a. J.T. HO,

7   intending to convert a trade secret to the economic benefit of someone other than Micron, and intending

8   and knowing that the offense would injure Micron, knowingly stole and without authorization

9   appropriated, took, carried away, concealed, and by fraud, artifice and deception obtained Trade Secrets

10   1, 6, 7, and 8, related to a product and service used in and intended for use in interstate and foreign

11   commerce, in violation of Title 18, United States Code, Section 1832(a)(1).

12

13   <u>COUNT SEVEN</u>:      (18 U.S.C. §§ 1831(a)(3) and 2 – Economic Espionage (Receiving and Possessing Stolen Trade Secrets))

14        62.    The allegations contained in Paragraphs 1 through 49 are re-alleged.

15        63.    From in or about February 2016 to the present, in the Northern District of California and

16   elsewhere, defendants,

17                        UNITED MICROELECTRONICS CORPORATION,
18                        FUJIAN JINHUA INTEGRATED CIRCUIT, CO., LTD.,
                          CHEN ZHENGKUN, a.k.a. STEPHEN CHEN,
19                        HE JIANTING, a.k.a. J.T. HO, and
                          WANG YUNGMING, a.k.a. KENNY WANG,
20
21   intending and knowing that they would benefit a foreign government, foreign instrumentality, and

22   foreign agent, knowingly received, bought, and possessed Trade Secrets 1 through 8, knowing them to

23   have been stolen and appropriated, obtained, and converted without authorization, in violation of Title

24   18, United States Code, Sections 1831(a)(3) and 2.

25   ///

26   ///

27   ///

28   ///

INDICTMENT                                        16

1

<u>CRIMINAL FORFEITURE ALLEGATION:</u>

2    64.    The allegations contained in Counts One through Seven of this Indictment are hereby

3  realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C.

4  § 2323(b).

5    65.    As a result of their conviction on one or more of the felony offenses set forth in Counts

6  One through Seven of this Indictment, defendants,

7

UNITED MICROELECTONICS CORPORATION,
8  FUJIAN JINHUA INTEGRATED CIRCUIT, CO., LTD.,
CHEN ZHENGKUN, a.k.a. STEPHEN CHEN,
9  HE JIANTING, a.k.a. J.T. HO,
WANG YUNGMING, and a.k.a. KENNY WANG,

10

11  shall forfeit the following property, real or personal, to the United States:

12    (1)    Any article, the making or trafficking of which, is prohibited under 18 U.S.C. Chapter 90;

13    (2)    Any property used, or intended to be used, in any manner or part to commit or facilitate a

14  violation of 18 U.S.C. Chapter 90; and

15    (3)    Any property constituting or derived from any proceeds obtained directly or indirectly as

16  a result of a violation of 18 U.S.C. Chapter 90.

17    66.    If any of the property described above, as a result of any act or omission of the defendant:

18    a.    cannot be located upon exercise of due diligence;

19    b.    has been placed beyond the jurisdiction of the Court;

20    c.    has been transferred or sold to, or deposited with a third party;

21    d.    has been substantially diminished in value; or

22    e.    has been commingled with other property which cannot be divided without difficulty;

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1  the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

2  21, United States Code, Section 853(p), all pursuant to Title 18, United States Code, Section 2323(b).

4  DATED: _Sept. 29, 2018_                    A TRUE BILL.

FOREPERSON
San Francisco Grand Jury No. 17-3

ALEX G. TSE
United States Attorney

BARBARA VALLIERE
Chief, Criminal Division

Approved as to form:

JOHN H. HEMANN
Deputy Chief, Criminal Division
SHIAO LEE
Assistant United States Attorney

INDICTMENT                    18

AO 257 (Rev. 6/78)

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☐ SUPERSEDING

─── OFFENSE CHARGED ───

See Attached

☐ Petty
☐ Minor
☐ Misde-
meanor
☒ Felony

PENALTY:
See Attached

*UNDER SEAL*

─── PROCEEDING ───

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. ATTORNEY   ☐ DEFENSE
SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form       ALEX G. TSE

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)       John Hemann and Shiao Lee

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

*FILED*
*NORTHERN DISTRICT OF CALIFORNIA SAN JOSE COURT*

─── DEFENDANT - U.S ───

United Microelectronics Corporation, Inc.

DISTRICT COURT NUMBER

CR 18   465

─── DEFENDANT ───   *LHK*

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)   *SVK*

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction   ☐ Federal   ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No   If "Yes" give date filed

DATE OF ARREST       Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY       Month/Day/Year

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:
☒ SUMMONS   ☐ NO PROCESS*   ☐ WARRANT
If Summons, complete following:
☒ Arraignment   ☒ Initial Appearance
Defendant Address:

United Microelectronics Corporation, Inc.

Comments:

Bail Amount: _____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: November 19, 2018   Before Judge: Duty Magistrate *SVK*

@ 1:30pm

/\1

## PENALTY SHEET ATTACHMENT (UNITED MICROELECTRONICS CORPORATION, INC.)

**Offenses Charged**

Count One: 18 U.S.C. § 1831(a)(5) – Conspiracy to Commit Economic Espionage

Count Two: 18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets

Count Seven: 18 U.S.C. §§ 1831(a)(3) and 2 – Economic Espionage (Receiving and Possessing Stolen Trade Secrets)

**Maximum Penalties**

Counts One and Seven:
- A fine not more than the greater of $10,000,000 or 3 times the value of the stolen trade secret to the organization, including expenses for research and design and other costs of reproducing the trade secret that the organization has thereby avoided;
- Restitution;
- Asset Forfeiture; and
- $400 special assessment

Count Two:
- A fine not more than the greater of $5,000,000 or 3 times the value of the stolen trade secret to the organization, including expenses for research and design and other costs of reproducing the trade secret that the organization has thereby avoided;
- Restitution;
- Asset Forfeiture; and
- $400 special assessment

A1

AO 257 (Rev. 6/78)

*FILED*

*SEP 27 2018*

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT  ☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

*NORTHERN DIS. SOONG*
*DISTRICT COURT*
*SAN JOSE CALIFORNIA*

**OFFENSE CHARGED**

See Attached

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

*UNDER SEAL*

PENALTY:
See Attached

**DEFENDANT - U.S**

▸ Fujian Jinhua Integrated Circuit, Co., Ltd.

DISTRICT COURT NUMBER

CR 18 465 LHK

**DEFENDANT**

*SVK*

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▸

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction  } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form        ALEX G. TSE

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)        John Hemann and Shiao Lee

Has detainer been filed?  ☐ Yes  ☐ No
If "Yes" give date filed

DATE OF ARREST ▸  Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▸  Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☒ SUMMONS  ☐ NO PROCESS*  ☐ WARRANT

If Summons, complete following:
☒ Arraignment  ☒ Initial Appearance

Defendant Address:

Fujian Jinhua Integrated Circuit, Co., Ltd.

Comments:

Bail Amount:

*\* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time: November 19, 2018
*@ 1:30pm*

Before Judge: Duty Magistrate

*SVK*

## PENALTY SHEET ATTACHMENT (FUJIAN JINHUA INTEGRATED CIRCUIT, CO., LTD.)

### Offenses Charged

Count One: 18 U.S.C. § 1831(a)(5) – Conspiracy to Commit Economic Espionage

Count Two: 18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets

Count Seven: 18 U.S.C. §§ 1831(a)(3) and 2 – Economic Espionage (Receiving and Possessing Stolen Trade Secrets)

### Maximum Penalties

Counts One and Seven:
- A fine not more than the greater of $10,000,000 or 3 times the value of the stolen trade secret to the organization, including expenses for research and design and other costs of reproducing the trade secret that the organization has thereby avoided;
- Restitution;
- Asset Forfeiture; and
- $400 special assessment

Count Two:
- A fine not more than the greater of $5,000,000 or 3 times the value of the stolen trade secret to the organization, including expenses for research and design and other costs of reproducing the trade secret that the organization has thereby avoided;
- Restitution;
- Asset Forfeiture; and
- $400 special assessment



AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☐ SUPERSEDING

— OFFENSE CHARGED —

See Attached

☐ Petty
☐ Minor
☐ Misde-
  meanor
☒ Felony

PENALTY:
  See Attached

UNDER SEAL

— PROCEEDING —

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:
☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW
DOCKET NO.

☐ this prosecution relates to a
pending case involving this same
defendant

MAGISTRATE
CASE NO.

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under

Name and Office of Person
Furnishing Information on this form          ALEX G. TSE

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)          John Hemann and Shiao Lee

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

— DEFENDANT - U.S —

▶ CHEN ZHENGKUN a.k.a. STEPHEN CHEN

DISTRICT COURT NUMBER

CR 18   465

LHK

— DEFENDANT —

IS *NOT* IN CUSTODY
  Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
  summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

SV

IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges
  If answer to (6) is "Yes", show name of institution

☐ Federal  ☐ State

Has detainer  ☐ Yes      If "Yes"
been filed?              give date
  ☐ No                  filed

DATE OF          Month/Day/Year
ARREST ▶

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED        Month/Day/Year
TO U.S. CUSTODY ▶

☐ This report amends AO 257 previously submitted

— ADDITIONAL INFORMATION OR COMMENTS —

PROCESS:
☒ SUMMONS   ☐ NO PROCESS*   ☐ WARRANT

If Summons, complete following:
☒ Arraignment  ☒ Initial Appearance
Defendant Address:

CHEN ZHENGKUN a.k.a. STEPHEN CHEN

Comments:

Bail Amount:

* Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Date/Time: November 19, 2018     Before Judge: Duty Magistrate

@ 1:30pm

## PENALTY SHEET ATTACHMENT (CHEN ZHENGKUN, a.k.a. STEPHEN CHEN)

### Offenses Charged

Count One: 18 U.S.C. § 1831(a)(5) – Conspiracy to Commit Economic Espionage

Count Two: 18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets

Count Seven: 18 U.S.C. §§ 1831(a)(3) and 2 – Economic Espionage (Receiving and Possessing Stolen Trade Secrets)

### Maximum Penalties

Counts One and Seven:
- $5,000,000 fine or twice the gross gain or loss
- 15 years imprisonment
- 3 years supervised release
- $100 special assessment
- Restitution
- Forfeiture

Count Two:
- $250,000 fine or twice the gross gain or loss
- 10 years imprisonment
- 3 years supervised release
- $100 special assessment
- Restitution
- Forfeiture



AO 257 (Rev. 6/78)

**FILED**

AUG _ _ 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

─ **OFFENSE CHARGED** ─

See Attached

☐ Petty
☐ Minor
☐ Misde-
  meanor
☒ Felony

PENALTY:    See Attached

UNDER SEAL

─ **DEFENDANT - U.S.** ─

▶ HE JIANTING a.k.a. J.T. HO

DISTRICT COURT NUMBER

CR 18 465

LHK
SVK

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. ATTORNEY   ☐ DEFENSE
  } SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
  } MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form    ALEX G. TSE

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)    John Hemann and Shiao Lee

### DEFENDANT

**IS *NOT* IN CUSTODY**
  Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction
  } ☐ Federal   ☐ State

6) ☐ Awaiting trial on other charges
  If answer to (6) is "Yes", show name of institution

Has detainer   ☐ Yes     If "Yes"
been filed?    ☐ No       give date
                          filed

DATE OF        ▶    Month/Day/Year
ARREST

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED   ▶   Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

─── **ADDITIONAL INFORMATION OR COMMENTS** ───

PROCESS:
☒ SUMMONS   ☐ NO PROCESS*   ☐ WARRANT

If Summons, complete following:
☒ Arraignment   ☒ Initial Appearance

Defendant Address:

HE JIANTING a.k.a. J.T. HO

Comments:

Bail Amount: _____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: November 19, 2018    Before Judge: Duty Magistrate - SVK

@ 1:30 pm

N4

## PENALTY SHEET ATTACHMENT (HE JIANTING a.k.a. J.T. HO)

### Offenses Charged

Count One: 18 U.S.C. § 1831(a)(5) – Conspiracy to Commit Economic Espionage

Count Two: 18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets

Count Five: 18 U.S.C. § 1831(a)(2) – Economic Espionage (Copying and Conveying Trade Secrets)

Count Six: 18 U.S.C. § 1832(a)(1) – Theft of Trade Secrets

Count Seven: 18 U.S.C. §§ 1831(a)(3) and 2 – Economic Espionage (Receiving and Possessing Stolen Trade Secrets)

### Maximum Penalties

Counts One, Five, and Seven:
- $5,000,000 fine or twice the gross gain or loss
- 15 years imprisonment
- 3 years supervised release
- $100 special assessment
- Restitution
- Forfeiture

Counts Two and Six:
- $250,000 fine or twice the gross gain or loss
- 10 years imprisonment
- 3 years supervised release
- $100 special assessment
- Restitution
- Forfeiture

AO 257 (Rev. 6/78)

FILED

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

─── OFFENSE CHARGED ───

See Attached

☐ Petty

☐ Minor

☐ Misde-meanor

☒ Felony

PENALTY:
See Attached

UNDER SEAL

─ DEFENDANT - U.S ─

▶ WANG YUNGMING a.k.a. KENNY WANG

DISTRICT COURT NUMBER

CR 18 465 LHK

─── PROCEEDING ───

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW
DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE
CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form          ALEX G. TSE

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)          John Hemann and Shiao Lee

─ DEFENDANT ─

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

SVK

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction

☐ Federal  ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes ·  If "Yes" give date filed
☐ No

DATE OF ARREST          Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY          Month/Day/Year

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:
☒ SUMMONS  ☐ NO PROCESS*  ☐ WARRANT

Bail Amount:

If Summons, complete following:
☒ Arraignment  ☒ Initial Appearance
Defendant Address:

WANG YUNGMING a.k.a. KENNY WANG

Comments:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: November 19, 2018    Before Judge: Duty Magistrate – SVK

@ 1:30 pm

**PENALTY SHEET ATTACHMENT (WANG YUNGMING a.k.a. KENNY WANG)**

**Offenses Charged**

Count One: 18 U.S.C. § 1831(a)(5) – Conspiracy to Commit Economic Espionage

Count Two: 18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets

Count Three: 18 U.S.C. § 1831(a)(1) – Economic Espionage (Theft of Trade Secrets)

Count Four: 18 U.S.C. § 1831(a)(2) – Economic Espionage (Copying and Conveying Trade Secrets)

Count Seven: 18 U.S.C. §§ 1831(a)(3) and 2 – Economic Espionage (Receiving and Possessing Stolen Trade Secrets)

**Maximum Penalties**

Counts One, Three, Four, and Seven:
- $5,000,000 fine or twice the gross gain or loss
- 15 years imprisonment
- 3 years supervised release
- $100 special assessment
- Restitution
- Forfeiture

Count Two:
- $250,000 fine or twice the gross gain or loss
- 10 years imprisonment
- 3 years supervised release
- $100 special assessment
- Restitution
- Forfeiture



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED

SEP 2 7 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNDER SEAL

## CRIMINAL COVER SHEET

**Instructions:** *Effective November 1, 2016, this Criminal Cover Sheet must be completed and submitted, along with the Defendant Information Form, for each new criminal case.*

**CASE NAME:**

USA V.   JUNITED MICROELECTONICS CORPORATION, et al.

**CASE NUMBER:**

CR 18 465

LHK SVK

| | |
|---|---|
| Is This Case Under Seal? | No |
| Total Number of Defendants: | Five |
| Does this case involve ONLY charges under 8 U.S.C. § 1325 and/or 1326? | No |
| Venue (Per Crim. L.R. 18-1): | San Jose |
| Is this a potential high-cost case? | No |
| Is any defendant charged with a death-penalty-eligible crime? | No |
| Is this a RICO Act gang case? | No |

**Assigned AUSA (Lead Attorney):** Shiao C. Lee

**Date Submitted:** 9/27/2018

**Comments:**

RESET FORM       SAVE PDF

**Ex. 2**

1    ALEX G. TSE (CABN 152348)
     United States Attorney
2
     SARA WINSLOW (DCBN 457643)
3    Chief, Civil Division

4    KIMBERLY FRIDAY (MABN 660544)
     Assistant United States Attorney
5
           450 Golden Gate Avenue, Box 36055
6          San Francisco, California 94102-3495
           Telephone: (415) 436-7102
7          FAX: (415) 436-6748
           kimberly.friday@usdoj.gov
8
     Attorneys for the United States
9
                          UNITED STATES DISTRICT COURT
10
                        NORTHERN DISTRICT OF CALIFORNIA
11

12   UNITED STATES OF AMERICA,            )   CASE NO.
                                          )
13          Plaintiff,                    )
                                          )
14      v.                                )
                                          )   **UNITED STATES' COMPLAINT**
15   UNITED MICROELECTRONICS              )   **FOR INJUNCTIVE RELIEF**
     CORPORATION; FUJIAN JINHUA           )
16   INTEGRATED CIRCUIT, CO., LTD.; and   )
     CHEN ZHENGKUN a.k.a. STEPHEN CHEN,   )
17                                        )
                                          )
18          Defendants.                   )
     _____)

19

20                              **INTRODUCTION**

21          1.      The United States of America ("United States") brings this action against Defendants

22   United Microelectronics Corporation ("UMC"), Fujian Jinhua Integrated Circuit, Co., Ltd. ("Jinhua"), and

23   Chen Zhengkun a.k.a. Stephen Chen ("Chen"), pursuant to 18 U.S.C. § 1836, to obtain permanent

24   injunctive relief to prevent Defendants from (1) exporting, reexporting, causing the export of, attempting

25   to export to the United States; selling or supplying, directly or indirectly to the United States; or causing

26   the import into the United States of, any products containing DRAM manufactured by Jinhua or UMC; or

27   conducting any transaction that evades or avoids or has the purpose of evading or avoiding that

28
     U.S. COMPLAINT                          1
     FOR INJUNCTIVE RELIEF

prohibition; or (2) transferring or in any way conveying Trade Secrets 1-8 (described below) to any other individual or entity; and for all such further relief as may be just and proper.

2.      The United States has criminally charged Defendants UMC, Jinhua, and Chen with conspiracy to commit economic espionage in violation of 18 U.S.C. § 1831(a)(5); conspiracy to commit theft of trade secrets in violation of 18 U.S.C. § 1832(a)(5); and knowing receipt, purchase, and possession of trade secrets, knowing them to have been stolen and appropriated, obtained, and converted without authorization, in violation of 18 U.S.C. §§ 1831(a)(3) and 2.  *See* Indictment, *United States v. United Microelectronics Corp., et al.,* 18-CR-465-LHK (N.D. Cal. filed Sept. 27, 2018) ("Indictment").

3.      As set forth in the Indictment, dynamic random-access·memory ("DRAM") is a memory device product used in electronics to store information.  DRAM stores each bit of data in a separate tiny capacitor within an integrated circuit.  DRAM is a technologically advanced commodity; it is widely used in digital electronics where low-cost and high-capacity memory is required.  DRAM is used in leading-edge computing, consumer, networking, automotive, industrial, embedded, and mobile productions, and is a product that is used or intended for use in interstate or foreign commerce.

4.      Growth of the electronics industry in the People's Republic of China ("PRC") created significant demand for memory products such as DRAM.  The Central Government and State Council of the PRC publicly identified the development of DRAM technology as a national economic priority because PRC companies had not been able to develop technologically advanced DRAM production capabilities, and PRC electronics manufacturers relied on producers outside the PRC to supply DRAM.  DRAM production technology was closely held by manufacturers in the United States, South Korea, and Taiwan, including Micron Technology, Inc. ("Micron"), which had improved the technology through intensive research and development over many years.

5.      Aware of the PRC's national priority and the barriers placed by non-PRC manufacturers, including Micron, on access to the technology, Defendants UMC and Chen obtained DRAM trade secrets

U.S. COMPLAINT                                    2
FOR INJUNCTIVE RELIEF

belonging to Micron and conveyed information containing those trade secrets to Defendant Jinhua, a company controlled by the PRC government, without authorization from Micron.

## JURISDICTION AND VENUE

6.   This action arises under 18 U.S.C. § 1836(a), which permits the Attorney General to "obtain appropriate injunctive relief" against violations of 18 U.S.C. §§ 1831 and 1832.  This Court has subject matter jurisdiction over this action under 18 U.S.C. § 1836(c), 28 U.S.C. § 1345, and 28 U.S.C. § 1331.

7.   This Court may exercise personal jurisdiction over Defendants UMC, Jinhua, and Chen because each of the defendants committed an act in furtherance of the offenses in this District, as set forth below.  In addition, UMC and Jinhua have purposefully availed themselves of the protections of U.S. law by applying for and obtaining U.S. patents containing the stolen trade secrets, as set forth below.  UMC has also incorporated a wholly-owned subsidiary that it uses as its North American sales arm, UMC Group (USA), in California, with a principal place of business located in this District.

8.   Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(3), (c)(2), (c)(3), and (f)(3), and 18 U.S.C. §1837, because an act in furtherance of the offenses occurred in this District.

## INTRADISTRICT ASSIGNMENT

9.   The acts in furtherance of the offenses in this District occurred in Santa Clara County and Alameda County.

## THE PARTIES

10.   Plaintiff, the United States of America, acts pursuant to the authority in 18 U.S.C. § 1836 to file a civil suit to obtain appropriate injunctive relief against violations of 18 U.S.C. §§ 1831 and 1832.

11.   Defendant UMC is a semiconductor foundry company headquartered in Taiwan with global offices in Taiwan, China, Europe, Singapore, Japan, Korea, and the United States, including the

offices of its wholly-owned subsidiary, UMC Group (USA), in Sunnyvale, California. UMC Group (USA) is a California corporation with a principal place of business at 488 Deguigne Drive, Sunnyvale, California. In its SEC Form 20-F for fiscal year ended December 31, 2017, UMC stated that its "sales in North America are made through UMC Group (USA), our subsidiary located in Sunnyvale, California." UMC is publicly listed and traded on the New York Stock Exchange. UMC did not, prior to the alleged theft of trade secrets set forth in this Complaint, possess advanced DRAM-related technology.

12. Defendant Jinhua was established in early 2016 in the Fujian Province of China for the sole purpose of designing, developing, and manufacturing DRAM. Jinhua was created with US$5.65 billion in funding provided by the PRC government and PRC government entities. Its two major shareholders were Electronics & Information Group Co., Ltd. and Jinjiang Energy Investment Co., Ltd., which were PRC state-owned enterprises.

13. Defendant Chen is a Taiwanese national and former General Manager and Chairman of Rexchip Electronics Corporation ("Rexchip"). Micron acquired Rexchip in or around 2013, and renamed it Micron Memory Taiwan Co., Ltd. ("MMT"). Chen became the President of MMT and Site Director of MMT's Fabrication Facility 16, responsible for making Micron's 25nm DRAM chip. Chen resigned from MMT in July 2015 and began working for UMC as its Senior Vice President and Fabrication Director in Taiwan in September 2015. In or around January 2016, Chen helped negotiate the terms of a technology cooperation agreement between UMC and Jinhua and became the Senior Vice President of UMC's newly formed New Business Development ("NBD") division, tasked with overseeing UMC's F32nm DRAM development project and the technology cooperation agreement between UMC and Jinhua. In or around February 2017, Chen became the President of Jinhua in charge of its DRAM production facility.

//

//

//

U.S. COMPLAINT
FOR INJUNCTIVE RELIEF

4

## <u>VIOLATIONS OF 18 U.S.C. §§ 1831 and 1832</u>

As set forth in the Indictment and below:

<u>Violations of 18 U.S.C. § 1831(a)(5): Conspiracy to Commit Economic Espionage</u>

14.     Beginning in or about January 2016, and continuing to present day, defendants UMC, Jinhua and Chen, along with others named as defendants in the Indictment, knowingly combined, conspired, and agreed to:

      a.   knowingly steal and without authorization appropriate, take, carry away, and conceal, and by fraud, artifice and deception obtain trade secrets belonging to Micron;

      b.   knowingly and without authorization copy, duplicate, sketch, draw, photograph, download, upload, alter, destroy, photocopy, replicate, transmit, deliver, send, mail, communicate, and convey trade secrets belonging to Micron; and

      c.   knowingly receive, buy, and possess trade secrets belonging to Micron, knowing the same to have been stolen, appropriated, obtained, and converted without authorization; intending and knowing that the offenses would benefit a foreign government, namely the PRC, and a foreign instrumentality, namely Jinhua,

in violation of Title 18, United States Code, Section 1831(a)(5).

15.     In order to develop DRAM technology and production capabilities without investing years of research and development and the expenditure of many millions of dollars, UMC and Jinhua, a company entirely funded by the PRC government, and employees of both, conspired to circumvent Micron's restrictions on its proprietary technology and illegally obtain DRAM technology that had been developed by Micron, including Trade Secrets 1 through 8, discussed *infra* Paragraphs 33-40.

16.     In or around early 2016, the PRC formed and funded Jinhua for the purpose of developing, designing, and mass-producing advanced DRAM technology.  The PRC prioritized the development of integrated circuit devices, which included DRAM, in its 13th Five-Year Plan, a national plan that included objectives for China's economic priorities for the years 2016-2020, ratified by the National People's Congress, and which established the Chinese Communist Party's

vision for the country's future developments.

17.     In or around January 2016, UMC entered into a technology cooperation agreement with Jinhua to develop DRAM technology for a product that UMC referred to as the "32nm and 32Snm DRAM" or "F32nm/F32Snm DRAM."  Under the technology cooperation agreement, UMC would provide the DRAM research and development, and Jinhua would provide the manufacturing and fabrication facilities to mass produce DRAM.  UMC and Jinhua were to jointly own the DRAM technology and development.  Under the terms of the agreement, Jinhua would provide US$300 million for purchasing necessary equipment for DRAM development and would pay US$400 million to UMC based on the progress of DRAM development.  In or around April 2016, Taiwan's Ministry of Economics approved the UMC and Jinhua technology cooperation agreement.

18.     In the years leading up to the technology cooperation agreement, UMC did not have advanced DRAM technology and had not been producing DRAM.  UMC, however, had intentions to take over DRAM business in China.

19.     In September 2015, UMC hired Chen, who was previously the President of MMT and the site director of MMT's Fabrication Facility 16 in charge of producing Micro's 25nm DRAM product, to be the Senior Vice President of UMC.  In January 2016, UMC established the NBD division for developing DRAM technology to transfer to Jinhua and placed Chen in charge of the NBD division.

20.     From in or around October 2015 through April 2016, Chen recruited and hired two MMT employees to work for UMC and develop F32nm DRAM technology.

21.     In or around November 2015, Chen hired a former MMT employee ("Employee 1") to work for UMC.  Prior to leaving MMT, Employee 1 stole confidential and proprietary materials belonging to Micron, including trade secrets pertaining to the prior, current, and future generations of Micron's DRAM technology, including the 80 (30nm), 90 (25nm), 100 (20nm), and 110 (1Xnm) series DRAM.  While working at UMC, Employee 1 referenced the stolen Micron materials to support UMC's design of the F32nm DRAM technology for transfer to Jinhua pursuant to the two companies' technology transfer agreement.  Employee 1 stored the stolen Micron trade secrets, including Trade Secrets 1, 6, 7, and 8, discussed *infra* Paragraphs 33-40, on one or more digital devices belonging to

U.S. COMPLAINT                                      6
FOR INJUNCTIVE RELIEF

UMC.

22.      Between in or around December 2015 and April 2016, Employee 1, acting as an agent of UMC, communicated with a current employee of MMT ("Employee 2").  Employee 2 provided Employee 1 with confidential and proprietary Micron information to further UMC's F32nm DRAM technology design, including information related to Micron's wafer specifications for its 25nm DRAM chip.

23.      On April 26, 2016, Employee 2 left MMT's employment.  Employee 2 told MMT that he was leaving to work at his family business, and he signed the MMT Declaration of Resignation, declaring and certifying that he did not keep any documents, confidential  or otherwise, belonging to the company, and that he destroyed any hard copy or electronic forms in his possession or control that were stored on non-Micron property, including computers, phone, personal email, or file sharing accounts. Employee 2 did not leave to work for his family business but rather immediately began working for UMC.

24.      In the weeks leading up to Employee 2's resignation from MMT, he downloaded over 900 confidential and proprietary files belonging to Micron, including Trade Secrets 1-8, discussed *infra* Paragraphs 33-40, by downloading the files from Micron servers and transferring them to USB external storage devices or uploading the files to his personal Google Cloud account stored on servers in the United States.  Many of the files were marked "Micron Confidential," "Micron Technology, Inc., Confidential and Proprietary," or "Micron Confidential/Do Not Duplicate."  The created dates in the Google files metadata showed that Employee 2 accessed Micron confidential and proprietary files both before and after he left Micron employment, and while working at UMC.

25.      In the weeks leading up to Employee 2's resignation from MMT, Employee 2 ran numerous deletion processes and a CCleaner program on his laptop computer to mask his theft of Micron trade secrets.  He also conducted numerous internet searches, accessing a number of publicly available news articles about the PRC government's support of the growth of the DRAM business in the PRC, and specifically on UMC and Jinhua's cooperation toward creating and producing DRAM.

26.      While working at UMC, Employee 2 referenced Micron trade secrets to assist and further

U.S. COMPLAINT                          7
FOR INJUNCTIVE RELIEF

UMC's development of its F32nm DRAM technology.  In or around July or August 2016, Employee 2, at the direction of a UMC employee, referenced Micron's Trade Secret 5 and provided critical design rule data to that employee to further UMC's development of its F32nm DRAM technology, knowing that UMC would transfer the technology to Jinhua.  Employee 2 used his UMC-assigned laptop to access his Google Drive, download a copy of Trade Secret 5, and reference the data contained therein to assist UMC with its F32nm DRAM design rule.  UMC employees were directed to use the information Employee 2 provided to complete UMC's F32nm DRAM design rule.  Trade Secret 5 and UMC's F32nm DRAM design rule were stored in Employee 2's Google Drive, and a comparison of the two show Micron's information being used in UMC's F32nm DRAM design rule document.

27.    On October 23, 2016, Chen, UMC, Jinhua, and government officials from the PRC attended a Jinhua/UMC recruiting fair in the Northern District of California to recruit employees from the United States with semi-conductor experience to work for both companies in either the research and development or sales and marketing division.  Chen stated at the recruiting fair that UMC had transferred its 25nm DRAM chip to Jinhua.  On or about October 24, 2016, Chen and others from UMC and Jinhua, including the mayors from the PRC cities of Jinjiang and Quanzhou, also visited semiconductor equipment-manufacturing companies Applied Materials, Lam Research, and KLA Tencor, all located in the Northern District of California, to facilitate its DRAM production process.  While at the recruiting fair and visiting the equipment-manufacturing companies in the Northern District of California, Chen, UMC, and Jinhua had obtained and were in continuous control of the stolen Micron trade secrets.

28.    From in or around September 2016 through March 2017, UMC and Jinhua filed five patents and a patent application concerning DRAM technology that contained information that was the same or very similar to technology described in Micron's Trade Secrets 2 and 6.  Employee 1 was listed as an inventor in each of the five patents and the patent application.  The patents were subsequently jointly issued to UMC and Jinhua.  The information contained in the patents and patent application contained Micron trade secrets that could not be obtained through reverse engineering.

29.    In February 2017, Taiwan law enforcement authorities executed search warrants and

seized items from UMC's offices and the residences of Employee 1 and 2.  They found electronic and hard copy files containing Micron trade secrets in areas and on devices associated with UMC and belonging to Employee 1 and 2.  Knowing that Taiwan law enforcement was on its way to execute search warrants at UMC, another UMC employee directed both Employee 1 and 2 to remove any electronic devices they possessed that contained Micron information on them.  Some of the electronic devices that contained Micron information were turned over to Taiwan law enforcement.  At least one electronic device that contained Micron information was not turned over to Taiwan law enforcement and had been concealed by UMC and Chen.

30.     In or around February 2017, in addition to his position at UMC, Chen assumed the post of President of Jinhua.

Violations of 18 U.S.C. § 1832(a)(5): Conspiracy to Commit Theft of Trade Secrets

31.     As set forth in Paragraphs 15-30, beginning in or about October 2015, and continuing to present day, defendants UMC, Jinhua and Chen, along with others named as defendants in the Indictment, knowingly combined, conspired, and agreed to:

    a.  knowingly steal and without authorization appropriate, take, carry away, and conceal, and by fraud, artifice and deception obtain trade secrets belonging to Micron;

    b.  knowingly and without authorization copy, duplicate, sketch, draw, photograph, download, upload, alter, destroy, photocopy, replicate, transmit, deliver, send, mail, communicate, and convey trade secrets belonging to Micron; and

    c.  knowingly receive, buy, and possess trade secrets belonging to Micron, knowing the same to have been stolen, appropriated, obtained, and converted without authorization; intending to convert a trade secret that is related to a product, namely DRAM, that is used in and intended for use in interstate and foreign commerce, to the economic benefit of someone other than Micron, and intending and knowing that the offense would injure Micron,

in violation of Title 18, United States Code, Section 1832(a)(5).

U.S. COMPLAINT                                    9
FOR INJUNCTIVE RELIEF

Violations of 18 U.S.C. §§ 1831(a)(3) - Economic Espionage (Receiving and Possessing Stolen Trade Secrets)

32.     As set forth in Paragraphs 15-30, beginning in or about February 2016, and continuing to present day, defendants UMC, Jinhua and Chen, along with others named as defendants in the Indictment, intending and knowing that they would benefit a foreign government, foreign instrumentality, and foreign agent, knowingly received, bought, and possessed Trade Secrets 1 through 8, knowing them to have been stolen and appropriated, obtained, and converted without authorization, in violation of Title 18, United States Code, Section 1831(a)(3).

## MICRON'S TRADE SECRETS

As set forth in the Indictment:

33.     Micron is the only United States-based company that manufactures DRAM.  Micron's headquarters are in Boise, Idaho, and it maintains a large office in the Northern District of California. Micron became a major participant in the global semiconductor industry with its purchase of Texas Instruments' DRAM memory business in 1998 and thereafter specialized in the advanced research and development and manufacturing of memory products including, but not limited to, DRAM.  Micron provides approximately 20-25% of the world supply of DRAM.

34.     The trade secrets identified below consisted of detailed, confidential information used to design and construct efficient manufacturing processes for advanced DRAM technology.  The development of this information and its confidentiality provides Micron with a significant competitive advantage in the world market.  This competitive advantage allows Micron to remain in business and continue to research and develop advanced DRAM for commercial and other uses.

35.     MMT was one of Micron's fabrication plants in Taiwan that engaged in making DRAM. MMT assigned all intellectual property, including all trade secrets that it developed, to Micron.

36.     Micron's DRAM technology included, but was not limited to, the following trade secrets, as defined in 18 U.S.C. § 1839(3):

a.  **Trade Secret 1**:  The Micron process to manufacture and produce DRAM contained in

the totality of information stolen by Employees 1 and 2 from Micron and provided to UMC and Jinhua under the direction of Chen and others. Trade Secret 1 included ways and means in which proprietary and non-proprietary components were compiled and combined by Micron to form substantial portions of the DRAM design and manufacturing process, including Trade Secrets 2 through 8, below.

b. **Trade Secret 2**: A 233-page PDF document identified with digital filename "FAB16 90s Traveler-20150518" (hereafter "25nm Process Traveler document"). The 25nm Process Traveler document contained comprehensive and very detailed information documenting the beginning-to-end manufacturing process for Micron's 25nm DRAM product, including details of specifications and production processes.

c. **Trade Secret 3**: An Excel spreadsheet with multiple tabs identified with digital filename "(ALL) IMP conditions Table_20150318" (hereafter "Implant Conditions Table"). The Implant Conditions Table contained implant data required to make each of the various different transistor types required to make a 25nm DRAM product. Data in the Implant Conditions Table included very specific details of the relevant particular process code - which could be matched back to process descriptions in Trade Secret 2.

d. **Trade Secret 4**: An Excel spreadsheet with multiple tabs identified with digital filename "Implant Condition for MES setting_1015" (hereafter "Implant Conditions for MES document"). MES referred to a particular software used to track the 25nm DRAM product through the fabrication process, and the Implant Conditions for MES document was a tracking document that informed the software. The document inputted into the MES software enabled Micron to closely monitor and manage its 25nm DRAM fabrication process. The Implant Conditions for MES document provided critical details to manage the fabrication of the 25nm DRAM product through the fabrication process and provided information on the precision and outcome of each particular step.

e. **Trade Secret 5**: An Excel spreadsheet with multiple tabs identified with digital filename "[DR25nmS] Design rules Periphery_EES_2012000026-013_Rev.13" (hereafter "Design Rules document"). The Design Rules document contained detailed design specifications for the architecture of the 25nm DRAM product, including details on how to layer Micron's 25nm DRAM product. The

Design Rules document included precise information on how to build distances between elements in a DRAM product to avoid electrical and physical interference. The Design Rules document included Micron trade secrets related to these types of specifications, which were critical information needed to build a 25nm DRAM product.

f. **Trade Secret 6**: A 302-page PDF document identified with digital filename "DRAM_100_series_(20nm)_traveler_(v00h) 150730" (hereafter "20nm Process Traveler document"). The 20nm Process Traveler document contained the specific types of details summarized in the 25nm Process Traveler document but for the next generation 20nm DRAM product. The 20nm Process Traveler document also contained details regarding Micron's upgrade from the 25nm to the 20nm DRAM product and contained trade secret information pertinent to both generations of the product.

g. **Trade Secret 7**: A 360 page PDF identified with digital filename "dram_110_series_(1xnm)_traveler_(z11a)-20150915.pdf" (hereafter "1xnm Process Traveler document"). The 1xnm Process Traveler document contained the comprehensive and very detailed information documenting the beginning-to-end manufacturing process for Micron's 1xnm DRAM product, including details of specifications and production processes. The 1xnm DRAM product was Micron's most advanced DRAM at the time. The 1xnm Process Traveler document also contained details regarding Micron's upgrade from the 20nm DRAM product to the 1xnm DRAM product and contained trade secret information pertinent to both generations of the product.

h. **Trade Secret 8**: A 260 page PDF identified with digital filename "dram_1xnm_process_(Z11AA41200)_-_summary_flow_document" (hereafter "1xm Process Summary Flow document"). The 1xnm Process Summary Flow document contained the manufacturing process of the 1xn DRAM chip as it flowed through the manufacturing facility. It compared the 1xnm process flow with prior generations of DRAM products. It described the evolution of the DRAM product to the 1xnm generation, explaining the purpose and reasons why certain changes and upgrades were made from one generation to the next.

37. Micron took reasonable measures to keep Trade Secrets 1 through 8 secret, including physical, electronic, legal, and policy measures.

38.     The information contained in Trade Secrets 1 through 8 derived independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

39.     UMC did not, prior to the events alleged in this Complaint, possess advanced DRAM-related technology and did not produce DRAM.  Beginning in 2016, UMC and Jinhua filed patent applications concerning DRAM technology that contain information that is the same or very similar to the misappropriated trade secrets – information that could not be obtained through reverse engineering. UMC and Jinhua could not have filed the patent applications, nor manufacture advanced DRAM, within this short time period except through exploitation of Micron's stolen trade secrets.

40.     The value of Trade Secrets 1 through 8, and each of them, to UMC and Jinhua, was at least $400 million and up to $8.75 billion, including expenses for research and design and other costs of reproducing the trade secrets that UMC and Jinhua avoided by the actions alleged in Paragraphs 15-30.

## FIRST CAUSE OF ACTION
### 18 U.S.C. § 1836(a)

41.     The United States incorporates by reference all paragraphs of this complaint set out above as if fully set forth.

42.     Title 18, United States Code, Section 1836(a) empowers the Attorney General to obtain appropriate injunctive relief against any violation of 18 U.S.C. §§ 1831 or 1832.

43.     As set forth above, Defendants violated 18 U.S.C. § 1831(a)(5) (conspiracy to commit economic espionage); 18 U.S.C. § 1832(a)(5) (conspiracy to commit theft of trade secrets); and 18 U.S.C. § 1831(a)(3) (Economic espionage – receipt and possession of stolen trade secrets).

44.     The United States seeks permanent injunctive relief to prevent Defendants from using or conveying Micron's trade secrets.  In particular, the United States seeks an order prohibiting Defendants from: (1) exporting, reexporting, causing the export of, attempting to export to the United States; selling or supplying, directly or indirectly to the United States; or causing the import into the United States of

U.S. COMPLAINT                            13
FOR INJUNCTIVE RELIEF

any products containing DRAM manufactured by Jinhua or UMC; or conducting any transaction that evades or avoids or has the purpose of evading or avoiding that prohibition; or (2) transferring or in any way conveying Trade Secrets 1-8 to any other individual or entity.

### PRAYER FOR RELIEF

WHEREFORE, the United States demands and prays that judgment be entered in its favor against defendants through a Final Order that permanently enjoins Chen, UMC, Jinhua, and their agents, servants, employees, attorneys, and all persons acting in concert or participation with them, from the unauthorized acquisition, disclosure, use, duplication, or distribution of the Micron trade secrets, including through a prohibition on: (1) exporting, reexporting, causing the export of, attempting to export to the United States; selling or supplying, directly or indirectly to the United States; or causing the import into the United States of any products containing DRAM manufactured by Jinhua or UMC; or conducting any transaction that evades or avoids or has the purpose of evading or avoiding that prohibition; or (2) transferring or in any way conveying Trade Secrets 1-8 to any other individual or entity; and for all such further relief as may be just and proper.

Respectfully submitted,

ALEX G. TSE
United States Attorney

*/s Kimberly Friday*
KIMBERLY FRIDAY
Assistant United States Attorney

Attorneys for the United States of America

DATED: November 1, 2018

JS-CAND 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Assistant United States Attorney Kimberly Friday, U.S. Attorney's Office, Northern District of California, 450 Golden Gate Avenue, 11th Floor, San Francisco, CA 94103

## DEFENDANTS

United Microelectronics Corporation; Fujian Jinhua Integrated Circuit, Co., Ltd.; Chen Zhengkun a.k.a. Stephen Chen

County of Residence of First Listed Defendant     Hsinchu, Taiwan
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[x] 1  U.S. Government Plaintiff

[ ] 2  U.S. Government Defendant

[ ] 3  Federal Question
*(U.S. Government Not a Party)*

[ ] 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                          *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | **LABOR** | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 710 Fair Labor Standards Act | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 720 Labor/Management Relations | 835 Patent—Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 370 Other Fraud | 740 Railway Labor Act | 840 Trademark | 460 Deportation |
| | 350 Motor Vehicle | 371 Truth in Lending | 751 Family and Medical Leave Act | **SOCIAL SECURITY** | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 790 Other Labor Litigation | 861 HIA (1395ff) | 480 Consumer Credit |
| 160 Stockholders' Suits | 360 Other Personal Injury | 385 Property Damage Product Liability | 791 Employee Retirement Income Security Act | 862 Black Lung (923) | 490 Cable/Sat TV |
| 190 Other Contract | 362 Personal Injury -Medical Malpractice | | **IMMIGRATION** | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 462 Naturalization Application | 864 SSID Title XVI | [x] 890 Other Statutory Actions |
| 196 Franchise | 440 Other Civil Rights | **HABEAS CORPUS** | 465 Other Immigration Actions | 865 RSI (405(g)) | 891 Agricultural Acts |
| **REAL PROPERTY** | 441 Voting | 463 Alien Detainee | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 210 Land Condemnation | 442 Employment | 510 Motions to Vacate Sentence | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 220 Foreclosure | 443 Housing/ Accommodations | 530 General | | 871 IRS–Third Party 26 USC § 7609 | 896 Arbitration |
| 230 Rent Lease & Ejectment | 445 Amer. w/Disabilities–Employment | 535 Death Penalty | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 240 Torts to Land | 446 Amer. w/Disabilities–Other | **OTHER** | | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 448 Education | 540 Mandamus & Other | | | |
| 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[x] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation–Transfer
[ ] 8 Multidistrict Litigation–Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. 1836(a)

Brief description of cause:
Complaint for injunctive relief

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**     [ ] Yes   [x] No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:

JUDGE   Hon. Maxine M. Chesney          DOCKET NUMBER   CR 18-465-MMC

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)
*(Place an "X" in One Box Only)*

[ ] SAN FRANCISCO/OAKLAND          [x] SAN JOSE          [ ] EUREKA-MCKINLEYVILLE

DATE   11/01/2018          SIGNATURE OF ATTORNEY OF RECORD          /s/ Kimberly Friday