Daniel Johnson Jr. (Bar No. 57409)
Mario Moore (Bar No. 231644)
Robert G. Litts (Bar No. 205984)
DAN JOHNSON LAW GROUP, LLP
400 Oyster Point Blvd., Suite 321
South San Francisco, CA 94080
Telephone: (415) 604-4500
dan@danjohnsonlawgroup.com
mario@danjohnsonlawgroup.com
robert@danjohnsonlawgroup.com

Attorneys for Defendant
UNITED MICROELECTRONICS CORPORATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICRON TECHNOLOGY, INC., <br><br>Plaintiff,<br><br>v.<br><br>UNITED MICROELECTRONICS CORPORATION, FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD., and DOES 1-10,<br><br>Defendants. | Case No. 3:17-CV-06932-MMC<br><br>**DEFENDANT UNITED MICROELECTRONICS CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF MICRON TECHNOLOGY, INC.'S SECOND AMENDED COMPLAINT**<br><br>Judge: Hon. Maxine M. Chesney<br>Courtroom: 7 – 19th Floor<br>Hearing date: July 12, 2019<br>Hearing time: 10:30 a.m.<br><br>SAC Filed: May 24, 2019 |

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on July 12, 2019, at 9:00 a.m. or as soon thereafter as counsel may be heard, in Courtroom 7 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, defendant United Microelectronics Corporation ("UMC") will and hereby does move this Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing the Second Amended Complaint ("SAC") by plaintiff

Micron Technology, Inc. ("Micron") on the grounds that the SAC fails to state a claim upon which relief may be granted.

As set forth more fully below in the Memorandum of Points and Authorities, the causes of action purport to allege use of the alleged trade secrets to apply for patents that should be owned by Micron, but Micron fails to allege who the inventors are, what contracts obligated the inventors to designate Micron as the owner, what purported Micron trade secrets are listed in the patents, and what trade secrets were disclosed to the world such that trade secret protection was lost.

Additionally, the causes of action asserted against UMC in the SAC fail to allege a claim for conspiracy under either trade secret law or RICO.

This motion is based on this Notice of Motion and accompanying Memorandum of Points and Authorities, the declaration of Daniel Johnson Jr. filed herewith, all pleadings and papers filed herein, and any argument of counsel or other matter as the Court may allow.

Respectfully submitted,

Dated: June 7, 2019

DAN JOHNSON LAW GROUP LLP

/s/ *Daniel Johnson Jr.*
Daniel Johnson, Jr.

*Attorneys for Defendant*
UNITED MICROELECTRONICS CORPORATION

## **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  LEGAL STANDARD .................................................................................................... 3

III. ARGUMENT ................................................................................................................. 5

    A.   Micron's Misappropriation of Trade Secret Claims Should be Dismissed for Failing to Identify the Allegedly Stolen Secrets with Sufficient Particularity ........ 5

    B.   Micron's Speculative Theories of Patent Ownership Should Be Dismissed .......... 8

    C.   Micron's Allegations Under 18 U.S.C. § 1962(c) and (d) Must Be Dismissed For Failure to Allege Concrete Financial Loss ..................................... 11

IV.  CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

**CASES**

*AccuImage Diagnostics Corp. v. Terarecon, Inc.*,
260 F. Supp. 2d 941 (N.D. Cal. 2003)……………………………………………………………4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ………………………………………………………………….……..….3

*Associated General Contractors v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) ………………………………………………………………….…..…….3

*Atl. Research Mktg. Sys. v. Troy*,
659 F.3d 1349 (Fed. Cir. 2011) ……………………………………………………...……..….8

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
No. 18-cv-00933-MMC, 2018 WL 2298500 (N.D. Cal. May 21, 2018) ……………...………4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ……………………………………………………………………..…….3

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989) ……………………………..………………………………..……………8

*Brixham Sols. Ltd. v. Juniper Networks*, Inc.,
No. 13-CV-00616-JCS, 2014 WL 250204 (N.D. Cal. Jan. 22, 2014) ……...……………..…10

*Chaset v. Fleer/Skybox Int'l, LP*,
300 F.3d 1083 (9th Cir. 2002) ………...……..……………………….………...…………..11

*Diodes, Inc. v. Franzen*,
260 Cal.App.2d 244 (1968) …………………………………………………....………4

*Donohue v. Apple, Inc.*,
871 F. Supp. 2d 913 (N.D. Cal. 2012) ……...………..…………….…..………………10

*DSMC, Inc. v. Convera Corp.*,
273 F. Supp. 2d 14 (D.D.C. 2002) ……………………………………………………………8

*Ethicon, Inc. v. U.S. Surgical Corp.,*
135 F.3d 1456 (Fed.Cir.1998) ……………………………………………………………10

*Farhang v. Indian Inst. of Tech., Kharagpur*,
No. C-08-2658, 2010 WL 2228936 (N.D. Cal. 2010)……………………………...………….4

*In re Century Aluminum Co. Secs. Litig.*,
729 F.3d 1104 (9th Cir. 2013)……………………………………………………...………3

*Izenberg v. ETS Servs., LLC*,
589 F. Supp. 2d 1193 (C.D. Cal. 2008)………..…………..……….………..………....…12

*Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*,
944 F. Supp. 2d 775 (N.D. Cal. 2013)……...……..…………….………………...………….9

*Lemelson v. Wang Labs.*,
874 F. Supp. 403 (D. Mass. 1994)……………..…………….……..………..……11,12

*Mattel, Inc. v. MGA Entm't, Inc.*,

782 F. Supp. 2d 911 (C.D. Cal. 2011)........................................................12

*MedioStream, Inc. v. Microsoft Corp.*,
869 F. Supp. 2d 1095 (N.D. Cal. 2012) ..........................................................4, 5

*On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*,
386 F.3d 1133 (Fed. Cir. 2004) ..........................................................................8

*Otworth v. Southern Pac. Transp. Co.*,
166 Cal.App.3d 452 (Cal. App. Ct. 1985)..........................................................10

*Physician's Surrogacy, Inc. v. German*,
2018 U.S. Dist. LEXIS 16261 (S.D. Cal. Jan. 31, 2018)........................................8

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010)............................................................................13

*Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*,
758 F.2d 613 (Fed. Cir.1985)...........................................................................10

*Stereoscope, LLC v. U.S. Bank N.A.*,
675 Fed. Appx. 725 (9th Cir. 2017).....................................................................3

*Veronica Foods Co. v. Ecklin*,
No. 16-cv-07223-JCS, 2017 WL 2806706 (N.D. Cal. June 29, 2017).........................4

*Waterman v. Mackenzie*,
138 U.S. 252 (1891)........................................................................................10

*Yi-Zarn Wang v. Medical Ctr.-Kenner, LLC*,
2017 U.S. Dist. LEXIS 201571 (E.D. La. Dec. 7, 2017)...........................................3

*Youngman v. Nevada Irrigation Dist.*,
70 Cal.2d 240 (Cal. Sup. Ct. 1969)....................................................................11

**STATUTES**

18 U.S.C. § 1836.................................................................................................1

18 U.S.C. § 1962.........................................................................................1, 11, 13

35 U.S.C. § 256.............................................................................................9, 11

Cal. Civ. Code §§ 3426.....................................................................................1, 4

**RULES**

Fed. R. Civ. P. 9(b)............................................................................................10

Fed. R. Civ. P. 11................................................................................................12

I.     **INTRODUCTION**

Micron Technology, Inc.'s ("Micron") Second Amended Complaint filed May 24, 2019 (ECF No. 206-3) ("SAC") alleges five causes of action against United Microelectronics Corporation ("UMC") based upon UMC's alleged misappropriation of purported Micron trade secrets pursuant to: 1) Defend Trade Secrets Act, 18 U.S.C. § 1836(b) ("DTSA"); 2) Civil RICO under 18 U.S.C. § 1962(c); 3) Civil RICO under 18 U.S.C. § 1962(d); 4) California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 (CUTSA); and 5) Idaho Trade Secrets Act, Idaho Code § 48-801, et seq. (IUTSA). However, each of these five counts has pleading requirements the SAC simply fails to meet. Further, the SAC requests in its prayer for relief an award of ownership of one hundred sixty-one (161) patent filings by UMC and co-defendant Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua") that are "improperly based on or derived from Micron trade secrets" (the "UMC/Jinhua Patent Filings"), but the SAC fails to include a count directed to patent ownership, allege facts sufficient to support that remedy, or even properly identify which UMC/Jinhua Patent Filings are being referred to. Each of Micron's five causes of action have been insufficiently pleaded and should be dismissed, and Micron's demanded remedy – including its unpled request for an award of ownership in unspecified UMC/Micron patents – should be stricken.

**Summary of Arguments Presented**

A cause of action arising from an alleged misappropriation of trade secrets, whether under the Federal DTSA, the CUTSA, or IUTSA, requires a plaintiff to *identify with sufficient particularity* the alleged trade secrets that have been misappropriated. While a complaint alleging trade secret misappropriation need not describe the purported trade secrets in such detail that trade secret protection is lost by the mere act of filing the complaint, the plaintiff must nonetheless provide enough detail to allow the defendants to be able to determine what trade secrets they have been accused of stealing. Here, Micron has failed to do so. The SAC alleges that two former Micron employees stole documents and files that generally relate to the design, manufacture, and testing of dynamic random-access memory ("DRAM") devices, but the SAC does not identify in any detail what information within those documents and files constitutes purported Micron trade

secrets. This deficiency in the SAC is particularly problematic because the DRAM technology at issue in this case is very mature, having been first invented in 1967 and refined to its current state no later than 1993, as can be seen in numerous issued patents and published patent applications. If Micron is entitled to any trade secret protection for its DRAM technology — which seems highly improbable given the state of the art — it could only conceivably be in very specific design or manufacturing details. The SAC completely fails, however, to identify — even in vague terms — any such details regarding the design or manufacture of Micron's DRAM products. Consequently, it is impossible for UMC to determine what specific parts of this vast and mature technological space Micron alleges to be uniquely theirs.

      Furthermore, Micron's two causes of action under the Federal RICO statute also have additional pleading requirements aside from those pertaining to the identification of purported Micron trade secrets. In particular, a plaintiff cannot claim RICO violations without alleging concrete financial loss. But the SAC fails to allege any financial loss other than the alleged costs it undertook to file this lawsuit. Such costs do not as a matter of law count as the concrete loss needed to allege a RICO violation. Micron's two causes of action under the Federal RICO statute are deficient for this additional reason.

      With respect to Micron's demand for the transfer of ownership of the UMC/Jinhua Patent Filings, the SAC includes no allegations that would support such an award. Rather, Micron merely asserts in its General Allegations — which are incorporated by reference in each of the SAC's five counts — that the UMC/Jinhua Patent Filings are "based on," "derived from," "contain," and "disclose" purported Micron trade secrets. These allegations, even if true, would not support a transfer of ownership from UMC and/or Jinhua to Micron. For example, if the UMC/Jinhua Patent Filings claimed improvements upon Micron's DRAM designs or manufacturing processes, those improvements would properly belong to UMC and Jinhua, and Micron would have no claim for ownership. The SAC completely fails to: 1) identify what claims — if any — of the UMC/Jinhua Patent Filings read onto any purported Micron trade secrets; 2) include any cause of action or statutory basis that would provide for a transfer of ownership in the UMC/Jinhua Patent Filings to Micron; or 3) allege any breach of a contractual obligation on the part of any UMC or Jinhua

employee to assign the UMC/Jinhua Patent Filings to Micron. Consequently, the SAC provides no factual or legal allegations to support a finding that ownership of even one claim of one UMC/Jinhua Patent Filing should be transferred to Micron due to conversion, fraud on the United States Patent and Trademark Office ("USPTO"), breach of contractual obligation, or any other reason.

The pleadings of the SAC are simply insufficient to support the allegations made or the remedies requested. Each count, whether expressly pleaded or implied, should be dismissed.

## II. LEGAL STANDARD

To survive a FRCP 12(b)(6) motion to dismiss, a complaint must allege sufficient facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Stereoscope, LLC v. U.S. Bank N.A.*, 675 Fed. Appx. 725, 726 (9th Cir. 2017) ("Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."). Any allegations involving fraud are scrutinized under a heightened pleading standard and must be "state[d] with particularity." FRCP 9(b).

Use of "legal tests in the abstract, or magic words, with no concrete facts" fails to satisfy the pleadings requirements. *Yi-Zarn Wang v. Medical Ctr.-Kenner, LLC*, 2017 U.S. Dist. LEXIS 201571, at *31 (E.D. La. Dec. 7, 2017). Likewise, allegations that are "mere conclusions" are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664.

With respect to FRCP 12(b)(6) motions, the Ninth Circuit has further required that:

> When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. ***Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible.***

*See In re Century Aluminum Co. Secs. Litig.*, 729 F.3d at 1108 (emphasis added) (quoting *Iqbal*, 556 U.S. at 678; citing *Twombly*, 550 U.S. at 554). Generally, it may not be "assume[d] that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the [] laws in ways that have not been alleged." *Associated General Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Both the DTSA and CUTSA require a plaintiff to plead (1) the existence of a trade secret, and (2) misappropriation of that secret. 18 U.S.C. §§ 1836(b), 1839; Cal. Civ. Code §§ 3426 et seq.; *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003) (citing Cal. Civ. Code § 3426.1(b)). Given the substantial similarities in claims of misappropriation under the DTSA and CUTSA, courts often assess them together. See *Veronica Foods Co. v. Ecklin*, No. 16-cv-07223-JCS, 2017 WL 2806706, at *12, 2017 U.S. Dist. LEXIS 101325, at *42 (N.D. Cal. June 29, 2017) (collecting cases); *see, e.g.*, *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-cv-00933-MMC, 2018 WL 2298500, at *2, 2018 U.S. Dist. LEXIS 85121, at *5 (N.D. Cal. May 21, 2018) (noting that the elements of misappropriation of trade secrets claims under the DTSA and the CUTSA are essentially the same).

With respect to claims for trade secret misappropriation, "[t]he complaint need not 'spell out the details of the trade secret' but must identify the trade secret with sufficient particularity to give defendants 'reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery.'" *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1112–13 (N.D. Cal. 2012) (quoting *Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-2658, 2010 WL 2228936, at *13, 2010 U.S. Dist. LEXIS 53975, at *13 (N.D. Cal. 2010)). Further, the plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade ... to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.* (quoting *Farhang*, 2010 WL 2228936, at *13) (citing *Diodes, Inc. v. Franzen*, 260 Cal.App.2d 244, 253 (1968)). This requirement is even more important in the instant case because, as discussed *infra*, DRAM technology has been around for decades and there are numerous patents and articles covering virtually every aspect of the design and manufacture of these devices. Thus, making a general claim about any aspect of the technology will necessarily fail to describe the boundaries of the secrets.

## III. ARGUMENT

### A. Micron's Misappropriation of Trade Secret Claims Should be Dismissed for Failing to Identify the Allegedly Stolen Secrets with Sufficient Particularity

The heart of Micron's SAC is the accusation that UMC and Jinhua stole, and conspired to steal, Micron's trade secrets. Other than vague assertions that the trade secrets relate to the design, manufacture, and testing of Micron DRAM devices, however, Micron does not actually identify what those secrets are in any way that would "separate [them] from matters of general knowledge in the trade ... to permit the defendant to ascertain at least the boundaries within which the secret lies." *MedioStream*, 869 F. Supp. 2d at 1112–13. Micron was required to provide this identification in its SAC because the DRAM technology at issue in this case has existed for decades. The highest level of detail provided in the SAC with respect to any identification of Micron's purported trade secrets is that the defendants allegedly inserted parameters relating to the "cell," "array," and "periphery" regions from Micron's DR25nmS DRAM design rules into UMC's own F32 DRAM design rules. But, the "periphery" region of the DRAM technology at issue in this case includes circuitry that was invented in 1967 by Robert H. Dennard of International Business Machines ("IBM"), and is described and claimed in U.S. Patent No. 3,387,286 ("'286 Patent"), which was filed on July 14, 1967 and issued on June 4, 1968. Declaration of Robert Litts in Support of Defendant United Microelectronics Corporation's Motion to Dismiss Plaintiff Micron Technology, Inc.'s Second Amended Complaint ("Litts Decl."), Ex. 1. Figure 1 of the '286 Patent shows the general layout of a DRAM device, with the peripheral word line driver 20 and bit line driver and sense amplifier 22 constituting the circuitry in the peripheral region:



Figures 5, 6, and 7 of the '286 Patent, and the corresponding portions of the specification, describe in detail the circuit structure and operation of this peripheral circuitry:





Similarly, the "cell" region of the DRAM technology at issue in this case was invented no later than 1993 by NEC Corporation ("NEC"), as is reflected in Fig. 3 of U.S. Patent No. 5,398,205 ("'205 Patent"), which was filed on May 9, 1994, claiming priority to a Japanese patent application that was filed on May 10, 1993, and which issued on March 14, 1995:



Litts Decl., Ex. 2 ['205 Patent], Fig. 3. And, the "array" of the DRAM technology at issue in this case was also invented no later than 1993 by NEC, as is shown in Fig. 2 of the '205 Patent:



In fact, even superior array layouts to those that were allegedly misappropriated by the defendants in this case were described in patents filed by Hynix Semiconductor Inc. ("Hynix") beginning in 2009, including U.S. Patent No. 8,048,737 ("'737 Patent"), which was filed on December 29, 2009, claiming priority to a Korean patent application that was filed on August 11, 2009, and which issued on November 1, 2011:



Litts Decl., Ex. 3 ['737 Patent], Figs. 13(a) and 11. In view of the maturity of DRAM technology at the time of UMC's alleged misappropriation, Micron was obligated to explain, at least in general terms, what aspects of its technology are purportedly entitled to trade secret protection. Micron completely failed to do so. Micron's conclusory allegations regarding Defendants' use and disclosure of Micron's trade secrets" are not well-pleaded facts, but rather mere inferences that are

neither "necessary" nor even plausible. *See Physician's Surrogacy, Inc. v. German*, 2018 U.S. Dist. LEXIS 16261, *27-28 (S.D. Cal. Jan. 31, 2018) (finding "Plaintiff's allegation that 'Defendants, and each of them, are willfully and improperly using [the alleged trade secrets] and intend to disclose and use [the alleged trade secrets]' is a 'legal conclusion couched as a factual allegation' that does not meet Plaintiff's burden of pleading").

It is certainly true that a plaintiff is not required to plead its trade secrets in detail when such a public disclosure would amount to an effective surrender of the trade secret itself. *See DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 24 (D.D.C. 2002). But that is not a concern here. Micron's SAC claims that much, if not all, of its allegedly stolen trade secrets are now openly displayed to the public in 161 UMC and Jinhua patent filings. Micron sought no relief from this Court, or from the PTO, to seal the patent filings. This means the disclosures are in the public record. Thus, if Micron's allegations are to be taken as true, the very trade secrets at issue are already in the public domain as patent filings, and trade secrets disclosed in patents as a matter of law are no longer secret. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 149 (1989); *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1141 (Fed. Cir. 2004) ("After a patent has issued, the information contained within it is ordinarily regarded as public and not subject to protection as a trade secret."); *Atl. Research Mktg. Sys. v. Troy*, 659 F.3d 1349, 1357 (Fed. Cir. 2011) ("A trade secret is secret. A patent is not. That which is disclosed in a patent cannot be a trade secret."), citing *On-line Techs.*, 386 F.3d at 1141. There is then no excuse not to identify exactly what within the now publicly available information is, or was, a trade secret.

Without some indication of what the purported trade secrets are, particularly when there is now no risk of disclosing to the public something that is still secret, Micron's misappropriation claims simply cannot stand, and should be dismissed.

B.   **Micron's Speculative Theories of Patent Ownership Should Be Dismissed**

The inadequacy of Micron's pleadings is made apparent by Micron's inclusion in the "General Allegations" of 161 UMC/Jinhua patent filings alleged to be "based on Micron's trade secrets." SAC, ¶ 92. Micron goes so far as to identify 11 patents and patent applications as specifically "describing" or "disclosing" trade secrets contained in documents allegedly in

possession of UMC. SAC, ¶ 95. This "General Allegation" is included by reference in each of the five causes of action Micron has pleaded, but in no instance does Micron identify what specific disclosure in the patent or applications actually contains their alleged trade secrets, and the SAC fails to identify even one patent claim that embodies something Micron can claim to own.

Similarly, the SAC makes a "General Allegation" (included by reference in every count of the SAC) that UMC has "claimed those stolen secrets as their own," but offers no factual support for this claim. There is no allegation that ownership is based on a contract or a statutory right. Despite ready access to the language of each patent filing or patent referenced in the SAC, Micron does not anywhere identify what exactly the named inventors told the patent office that was not true. Instead, Micron's SAC alleges generally that various "UMC/Jinhua Patent Filings are based on or derived from Micron's trade secrets" (SAC, ¶ 95 (a)-(k)), and demands ownership be transferred.

Micron specifically seeks as relief "[e]ntry of an order that all right, title and interest in patents improperly based on or derived from Micron trade secrets misappropriated by defendants be assigned or otherwise transferred to or declared owned by Micron." (SAC, p. 46). Micron's requested relief is untethered to any particular cause of action, and none of the bases that might normally support such relief are alleged.

First, there is no allegation of conversion. *Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*, 944 F. Supp. 2d 775, 780 (N.D. Cal. 2013) ("[i]n order to state a claim for conversion, the plaintiff must identify some property in which he had property rights with which the defendant could, and did, interfere.")

Second, there is no allegation of incorrect inventorship. Micron does not, for example, assert a claim for correction of inventorship under 35 U.S.C. § 256. Even as a factual matter, the complaint fails to support a claim for correction of inventorship. *See Brixham Sols. Ltd. v. Juniper Networks*, Inc., No. 13-CV-00616-JCS, 2014 WL 250204, at *7 (N.D. Cal. Jan. 22, 2014) (citing *Ethicon, Inc. v. U.S. Surgical Corp.,* 135 F.3d 1456, 1460 (Fed.Cir.1998) and *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 624 (Fed. Cir.1985). Micron makes no allegation that any specific claim of the patents and patent applications identified were invented by anyone

other than the inventors who are actually listed. Micron does not allege that it is either the sole inventor or one of the co-inventors on the patents as is required by statute.

Third, there is no pleaded claim of fraud on the USPTO. By asserting that UMC patented Micron's trade secrets, Micron essentially alleges that UMC purposely misled the Patent Office. But Micron has not come close to pleading fraud on the P.T.O. under Fed. R. of Civ. Pro. 9(b)., since . *Chiron Corp. v. Abbott Labs.*, 156 F.R.D. 219, 222 (N.D. Cal. 1994) ("to meet the requirements of Rule 9(b), [a Plaintiff] must, at a minimum, specify the nature of the deception it alleges in order to apprise defendants of the misconduct alleged.") (internal quotation omitted).

Finally, there is no allegation that Micron is entitled by contract (express or implied) to ownership of UMC and Jinhua's patents. This omission fails to meet the minimum pleading requirement for a breach of contract claim. *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012). A non-inventor of a patent can claim ownership by assignment. *Waterman v. Mackenzie*, 138 U.S. 252, 255, 11 S. Ct. 334, 335, 34 L. Ed. 923 (1891). But in order to state a claim under such a contract, a plaintiff must plead the existence of a contract, his performance of the contract or excuse for nonperformance, the defendant's breach, and resulting damages. *Donohue*, 871 F. Supp. at 930 (citing *Otworth v. Southern Pac. Transp. Co.*, 166 Cal.App.3d 452, 458, 212 Cal.Rptr. 743 (Cal. App. Ct. 1985)). Micron has met none of these requirements. Micron's SAC repeatedly points out that inventors on the identified patents and applications are former employees of Micron, but Micron never alleges that any contract obligates these former employees to assign their inventions to Micron. SAC, ¶¶ 95 (a)-(k). Since Micron fails to plead any "facts from which the promise is implied," any claim to breach of implied contract must be dismissed, and all demands for transfer of ownership as a remedy based on them should be stricken. *See Youngman v. Nevada Irrigation Dist.*, 70 Cal.2d 240, 246-47 (Cal. Sup. Ct. 1969).

Moreover, to take Micron's allegations as true, the 161 public patent filings disclose the alleged trade secrets at the heart of this dispute. That information is now public, and there is simply no excuse not to plead with enough specificity to allow the Defendants to be able to determine what purported Micron trade secrets they have been accused of patenting. The correct procedure to challenge inventorship and ownership of a patent claim is by following the statutory

requirements of 35 U.S.C. § 256. No such allegations are made in the complaint and there is no equitable claim based on fraud or contract that would allow Micron to claim ownership of the patent filings referenced in the complaint. In short, Micron failed to make any allegations that would allow for it to obtain ownership of the patents it claims are using its trade secrets.

Having failed to plead any of the predicate statutory or contractual bases for a change in patent ownership, Micron's claim for a change in patent ownership should be dismissed, and the corresponding prayer for relief should be stricken.

### C. Micron's Allegations Under 18 U.S.C. § 1962(c) and (d) Must Be Dismissed For Failure to Allege Concrete Financial Loss

Section 1962(c) requires Micron to prove that UMC engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," and, additionally, that UMC's acts were the "but-for" cause of "concrete financial loss" to Micron. *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002).

The Court's May 2, 2019 Order on the Defendants' Motions to Dismiss ("Order") specifically states that "Micron's RICO claim cannot be based on the alleged acts of misappropriation occurring before May 11, 2016, specifically acquisitions by Ho and Wang." Order at 20. The SAC's allegations of "concrete financial loss" refer solely to investigative costs sustained as a consequence of Mr. Wang's alleged pre-May 11, 2016 misappropriation. According to the SAC (¶ 127), Micron "expend[ed] hundreds of hours of time, effort and labor in collecting [the following] evidence":

- "the Micron-issued laptop used by Kenny Wang;"
- "imaging the Micron-issued laptop that had been assigned to *Kenny Wang*;"
- "[D]etermining what *Kenny Wang* and others took from Micron;"
- "[A]ccessing data that *Kenny Wang* sought to delete from his Micron-issued laptop;"
- "[E]valuating .pst files from *Kenny Wang's* Micron-issued laptop;"
- "[S]earching for and evaluating artifacts from *Kenny Wang's* Micron-issued laptop[;]"
- "[E]xpense and cost for computer storage devices used for copies of *Kenny Wang's* Micron-issued laptop[;]"

- "[F]orensic analysis into the downloading of Micron's computer files from United States-based servers by *Kenny Wang* and potentially others."

SAC, ¶ 127 (emphasis added). Micron's allegations regarding losses sustained by "others" or "potentially others" are mere conclusory statements and thus insufficient. See Order, at 21 (dismissing RICO claims as "stated on wholly conclusory terms").

Moreover, Micron's alleged losses from investigative costs can not constitute "concrete financial losses," regardless of when they incurred. A RICO plaintiff asserting injury from theft of trade secrets must show proof of "concrete financial loss, *either in the form of lost opportunity or lost profits*, as a result of the deprivation of its property interest in the exclusive use of its trade secret materials." *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1019-21 (C.D. Cal. 2011) (emphasis added) (rejecting RICO plaintiff's arguments that the "loss of exclusive use" of its trade secrets was a "per se concrete financial injury," or that such loss of exclusive use constituted an actionable "lost opportunity"). As the Court previously recognized, Micron must adequately allege a "concrete example of how it would have exploited its exclusive possession of the trade secret" after May 11, 2019. See Order, at 21 (*citing Mattel,* 782 F. Supp. 2d at 1021. "[T]he cost of filing a RICO action does not satisfy the concrete financial injury requirement." *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1204 (C.D. Cal. 2008) (dismissing RICO claim allegation injury "in having to hire attorneys before bringing this action and in bringing this action"); *Lemelson v. Wang Labs.*, 874 F. Supp. 403 (D. Mass. 1994) (if litigation was not an instrument of the alleged RICO racketeering activity or its intended harm or consequence, there is no RICO injury for such litigation expense). Micron's claimed injuries effectively read the statute's "concrete financial loss" element out of the statute since any plaintiff's counsel's compliance with the pre-filing due diligence of Fed. R. Civ. P. 11 would be cognizable under RICO.

Here, Micron's SAC fails to articulate any "harm to a specific business or property interest" caused by UMC's post-enactment conduct. *See* SAC, ¶ 134 (generically alleging "economic damages both domestically and abroad"), *id*. ¶ 118 (referring to unspecified "improper advantages, positions, and rights in the marketplace"). The mere loss of exclusive possession of a trade secret is insufficiently "tangible" to qualify as a RICO injury.

With respect to Micron's § 1962(d) conspiracy RICO claim, Micron's failure to state a claim under § 1962(c) automatically requires dismissal. *See, e.g.*, *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO"). Accordingly, Micron's RICO claims should be dismissed.

## IV. CONCLUSION

Despite multiple opportunities to amend, Micron's theories rest on speculation and hyperbole, fail the stringent pleading standards for such claims, and should be dismissed.

DATED: June 7, 2019

By: */s/ Daniel Johnson Jr.*
Daniel Johnson Jr. (No. 57409)
Mario Moore (No. 231644)
Robert G. Litts (No. 205984)
DAN JOHNSON LAW GROUP
400 Oyster Point Blvd., Suite 321
South San Francisco, CA 94080
Telephone: (415) 604-4500
dan@danjohnsonlawgroup.com
mario@danjohnsonlawgroup.com
robert@danjohnsonlawgroup.com

*Attorneys for Defendant*
UNITED MICROELECTRONICS CORPORATION