Daniel Johnson Jr. (Bar No. 57409)
Mario Moore (Bar No. 231644)
DAN JOHNSON LAW GROUP, LLP
400 Oyster Point Blvd., Suite 321
South San Francisco, CA 94080
Telephone: (415) 604-4500
dan@danjohnsonlawgroup.com
mario@danjohnsonlawgroup.com

Lyle B. Vander Schaaf (DC Bar No. 422380)
Evi T. Christou (DC Bar No. 1600066)
Fei Hu (DC Bar No. 1016150)
BRINKS GILSON & LIONE
1775 Pennsylvania Ave, NW, Suite 900
Washington, DC 20006
Telephone: (202) 296-8700
lvanderschaaf@brinksgilson.com
echristou@brinksgilson.com
fhu@brinksgilson.com
Appearance *pro hac vice*

Harold V. Johnson (IL Bar No. 6188149)
Judy K. He (IL Bar No. 6327020)
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Drive, Suite 3600
Chicago, IL 60611
Telephone: (312) 321-4200
hjohnson@brinksgilson.com
jhe@brinksgilson.com
Appearance *pro hac vice*

*Attorneys for Defendant*
Fujian Jinhua Integrated Circuit Co., Ltd.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICRON TECHNOLOGY, INC., | Case No. 3:17-cv-6932-MMC |
| Plaintiff, | |
| v. | **DEFENDANT FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM** |
| UNITED MICROELECTRONICS CORPORATION, FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD., and DOES 1-10, | |
| Defendants | Judge: Honorable Maxine M. Chesney Courtroom: 7, 19th Floor (Proposed) Hearing Date: July 12, 2019 (Proposed) Hearing Time: 9:00 am |

## REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on July 12, 2019 at 9:00 am, or as soon thereafter as the matter may be heard before the Honorable Maxine M. Chesney, United States District Court Judge, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 7, 19th Floor, Defendant Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua") will and hereby does move to dismiss the Second Amended Complaint ("SAC") filed on May 24, 2019 by Plaintiff Micron Technology, Inc. ("Micron"), pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) for failure to state a claim. For the reasons set forth below, Jinhua respectfully requests this Court to dismiss the SAC with prejudice.

This motion is based on this notice of motion, and the following memorandum of points and authorities, the exhibits and declarations filed herewith, all pleadings and papers filed herein, and any argument of counsel or other matter as the Court may allow.

Respectfully submitted,

DATED: June 7, 2019                DAN JOHNSON LAW GROUP LLP
                                   BRINKS GILSON & LIONE


                                   By: */s/ Daniel Johnson Jr.*


                                   *Attorneys for Defendant*
                                   FUJIAN JINHUA INTEGRATED
                                   CIRCUIT CO., LTD.

# **TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................1

II.  MICRON'S SECOND AMENDED COMPLAINT ........................................2

III.  LEGAL STANDARDS........................................................................................6

IV.  ARGUMENT .......................................................................................................8

    A.  Micron's Trade Secret Misappropriation Claims Remain Deficient     8

        1.  Counts I and IV of Micron's SAC Are Nearly Identical to Counts I
and IV of Micron's FAC and Are Deficient for Similar Reasons...................8

            a.  Acquisitions by Ho and Wang Cannot Support Micron's
DTSA Claim Against Jinhua.................................................................9

            b.  Micron's SAC Fails to Identify Any Acts of
Misappropriation by Jinhua Occurring in California .......................10

                i.  Micron's SAC Fails to Identify Any Disclosures
Made by Jinhua ...................................................................10

                ii.  Micron's SAC Fails to Identify Any Use by Jinhua .............16

                iii.  Micron's SAC Fails to Identify Any Injury to
Micron or Benefit to Jinhua as a "Direct and
Proximate Result" of Any Alleged "Use or
Disclosure" Made by Jinhua .................................................17

        2.  Micron's SAC Fails to State a Claim Against Jinhua Under the
ITSA .......................................................................................................17

    B.  Micron's SAC Fails to State a Civil RICO Claim Against Jinhua     18

        1.  Counts II and III of Micron's SAC Are Nearly Identical to Counts
II and III of Micron's FAC and Are Deficient for Similar Reasons .............19

        2.  Micron's SAC Does Not Allege that Jinhua Committed Any
Requisite "Predicate Acts".........................................................................19

        3.  Micron's SAC Does Not Allege that Jinhua Engaged in a "Pattern
of Racketeering Activity" ..........................................................................19

        4.  Micron's SAC Fails to Identify a Single "Concrete Financial Loss" ...........19

        5.  Micron's SAC Fails to State a § 1962(d) Conspiracy RICO Claim .............22

V.  CONCLUSION...................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 2, 6, 7

*Associated General Contractors v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) ............................................................................................ 7

*Attia v. Google LLC*,
    2018 U.S. Dist. LEXIS 99400 (N.D. Cal. June 13, 2018) ................................ 19

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................... 2, 6, 7

*Canyon Cty. v. Syngenta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) ............................................................................ 21

*Chaset v. Fleer/Skybox Int'l, LP*,
    300 F.3d 1083 (9th Cir. 2002) ..................................................................... 18, 21

*Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*,
    235 F. Supp. 3d 1132 (E.D. Cal. 2017) ...................................................... 19, 20

*Destfino v. Kennedy*,
    2009 U.S. Dist. LEXIS 18138 (E.D. Cal. Jan. 7, 2009) ..................................... 9

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
    2012 U.S. Dist. LEXIS 28865 (N.D. Cal. March 5, 2012) ............................... 18

*Eng v. Hargrave*,
    2012 U.S. Dist. LEXIS 4649 (N.D. Cal. Jan. 13, 2012) ..................................... 8

*Flsmidth Spokane, Inc. v. Emerson*,
    2014 U.S. Dist. LEXIS 82361 (D. Id. June 16, 2014) ...................................... 18

*Galderma Labs., L.P. v. Teva Pharms. U.S., Inc.*,
    290 F. Supp. 3d 599 (N.D. Tex. 2017) ............................................................... 8

*In re Century Aluminum Co. Secs. Litig.*,
    729 F.3d 1104 (9th Cir. 2013) ........................................................ 2, 7, 11, 13, 15

*In re WellPoint, Inc. v. Out-of-Network UCR Rates Litig.*,
    903 F. Supp. 2d 880 (C.D. Cal. 2012) .............................................................. 19

*Izenberg v. ETS Servs.*, LLC,
    589 F. Supp. 2d 1193 (C.D. Cal. 2008) ............................................................ 21

*JustMed, Inc. v. Byce*,
    600 F.3d 1118 (9th Cir. 2010) .......................................................................... 16

*Mattel, Inc. v. MGA Ent't Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2010) .............................................................. 21

*MedioStream Inc. v. Microsoft Corp.*,
    869 F.Supp.2d 1095 (2012) ......................................................................... 10, 17

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.*,
    2007 U.S. Dist. LEXIS 59946, (N.D. Cal. Aug. 9, 2007) ............................... 7, 8

*Omnitech Int'l, Inc. v. Clorox Co.*,
    11 F.3d 1316 (5th Cir.1994) ............................................................................. 16

*Oscar v. Univ. Students Co-Operative Ass'n*,
    965 F.2d 783 (9th Cir. 1992) ............................................................................ 21

- iii -

*Physician's Surrogacy, Inc. v. German*,
  2018 U.S. Dist. LEXIS 16261 (S.D. Cal. Jan. 31, 2018) .......................................... 15

*Pillsbury, Madison & Sutro v. Lerner*,
  31 F.3d 924 (9th Cir. 1994) ........................................................................................ 21

*Portfolio Investments LLC v. First Sav. Bank N.W.*,
  583 Fed. App'x 814 (9th Cir. 2014) ............................................................................ 22

*Sanford v. MemberWorks, Inc.*,
  625 F.3d 550 (9th Cir. 2010) ...................................................................................... 22

*SEC v. Fraser*,
  2010 U.S. Dist. LEXIS 7038 (D. Ariz. Jan. 28, 2010) ................................................. 9

*Stereoscope, LLC v. U.S. Bank N.A.*,
  675 Fed. Appx. 725 (9th Cir. 2017) .............................................................................. 6

*Tung Van Nguyen v. CTS Elecs. Mfg. Solutions*,
  301 F.R.D. 337 (N.D. Cal. 2014) .......................................................................... 7, 17

*United States v. United Microelectronics Corp., et al.*,
   No. 3:19-cv-00465-MMC (N.D. Cal. filed Sept. 28, 2018) ......................................... 3

*Univ. Computing Co. v. Lykes– Youngstown Corp.*,
  504 F.2d 518 (5th Cir.1974) ....................................................................................... 16

*Veronica Foods Co. v. Ecklin*,
  2017 U.S. Dist. LEXIS 101325 (N.D. Cal. June 29, 2017). ......................................... 8

*Yi-Zarn Wang v. Medical Ctr.-Kenner, LLC*, 2017 U.S. Dist. LEXIS 201571 (E.D.
  La. Dec. 7, 2017) .......................................................................................................... 7

**Statutes**

18 U.S.C. § 1962(c) ......................................................................................................... 1

18 U.S.C. § 1962(d) ......................................................................................................... 1

18 U.S.C. § 1964(c) ....................................................................................................... 19

**Rules**

Fed. R. Civ. P. 11 .......................................................................................................... 22

Fed. R. Civ. P. 12(b)(6) ............................................................................................ i, 6, 7

Fed. R. Civ. P. 12(f) ................................................................................................... 7, 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On May 2, 2019, the Court dismissed Counts II and III (alleging violations of §§ 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO")), Count IV (alleging a violation of the California Uniform Trade Secrets Act ("CUTSA")), and Count I (alleging a violation of the Defend Trade Secrets Act ("DTSA")) of Micron Technology, Inc.'s ("Micron") First Amended Complaint ("FAC") against Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua") "to the extent it is based on an acquisition of trade secrets occurring before May 11, 2016." (D.E. 199 ("May 2 Order")). At the same time, the Court afforded Micron leave to amend if Micron can allege sufficient facts to support its claims against Jinhua. (*Id.*)

On May 24, 2019, Micron filed a Second Amended Complaint (D.E. 206-3 ("SAC"))[1] that is substantively identical to its FAC, but somehow adds a new Count V that purports to arise under the Idaho Trade Secrets Act ("ITSA"). Micron has absolutely no basis for adding this duplicative count, especially given that both Micron's CUTSA and ITSA counts are essentially identical, and nowhere in Micron's SAC does Micron allege any non-conclusory facts as sufficient to establish the elements of the reasserted claims against Jinhua, or any acts by Jinhua in the United States that would give rise to such claims.

Stripped of its conclusory statements, the sole allegation remaining with respect to Jinhua is that Jinhua agreed to purchase dynamic random memory access ("DRAM") technology from its co-defendant, United Microelectronics Corporation ("UMC"))—an agreement formally approved by the Taiwan government (the "Cooperation Agreement")—and that former Micron Memory Taiwan Co., Ltd. ("MMT")[2] employees misappropriated Micron's trade secrets. The SAC fails entirely to allege facts that, if true, would demonstrate that Jinhua participated in the alleged theft of Micron's trade secrets or ever acquired, disclosed, or used any of Micron's trade secrets, either in the United States or abroad. Indeed, nowhere in the SAC does Micron allege that UMC ever completed its

---

[1] On May 9, 2019, the parties agreed that UMC and Jinhua need not answer or otherwise respond to Micron's FAC. (D.E. 200). The Court granted the stipulation on May 13, 2019. (D.E. 201).

[2] As alleged by Micron, MMT is Micron's Taiwan affiliate. (SAC ¶ 10).

1    DRAM technology or delivered the same to Jinhua, let alone acquire, disclose, or use any of

2    Micron's trade secrets.

3          At the end of the day, despite having the opportunity to amend its FAC, Micron's SAC is a

4    mere rehash of the same allegations that have the same deficiencies as identified in the Court's May

5    2 Order. Micron's continued failure to cure the deficiencies that were identified by the Court is

6    telling, and as set forth in Part IV.A.1.b., *infra*, Micron's SAC still fails to exclude the possibility

7    that Jinhua's alleged activities are consistent with an innocent intent to develop DRAM production

8    capability using purchased technology from UMC pursuant to the Cooperation Agreement. As a

9    result, because Micron's allegations do not satisfy the Ninth Circuit's requirement that it should

10   "tend[] to exclude the possibility that [Jinhua's] alternative explanation [*i.e.*, as an innocent

11   purchaser] is true," Jinhua respectfully requests for all relevant parts of Count I and all of Counts II,

12   III, IV, and V of Micron's SAC to be dismissed for failure to state a claim. *In re Century Aluminum*

13   *Co. Secs. Litig.,* 729 F.3d 1104, 1108 (9th Cir. 2013) (applying *Bell Atlantic Corp. v. Twombly*, 550

14   U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). In addition, Jinhua also moves in the

15   alternative to strike the irrelevant allegations that were incorporated by reference to Micron's DTSA

16   claim (Count I) as well as the entirety of Micron's duplicative, redundant ITSA claim (Count V).

17   **II.    MICRON'S SECOND AMENDED COMPLAINT**

18         At the heart of Micron's SAC is a civil claim for conspiracy. Specifically, Micron alleges

19   that "UMC and Jinhua **conspired** to induce former [Micron] employees to misappropriate electronic

20   and paper files containing Micron trade secrets from [Micron] and to deliver those trade secrets to

21   UMC." (SAC ¶ 3(b) (emphasis added)). However, even with the benefit of the criminal indictment

22   of UMC and MMT's former employees by Taiwan authorities ("Taiwan Indictment"), attached as

23   Exhibit 2 to the SAC, Micron – in both the FAC and SAC – at most alleges:

24        •    "UMC and the founders of Jinhua developed and set in motion a plan for UMC to

25             recruit key personnel from [MMT];" (SAC ¶ 3(a), *see also id.* ¶ 67);

26        •    "Working in concert, UMC and Jinhua conspired to induce former MMT employees to

27             misappropriate electronic and paper files containing Micron trade secrets from MMT

28             and to deliver those trade secrets to UMC;" (*Id.* ¶ 3(b)) and

JINHUA'S MOTION TO
DISMISS MICRON'S SAC

- "UMC then incorporated Micron's trade secrets into technologies that it transferred and/or plans to transfer to Jinhua to enable Jinhua to mass produce advanced DRAM products as early as 2018 – thus avoiding substantial, time-consuming and costly R&D efforts that UMC or Jinhua would have had to undertake to compete fairly." (*Id.* ¶ 3(c)).

The reason is simple: Jinhua is not identified in the Taiwan Indictment as an alleged wrongdoer, but rather as an arms-length party to a Cooperation Agreement with UMC entered in January 2016, under which UMC was obligated to provide Jinhua, an innocent purchaser, with DRAM-related technologies. Indeed, Micron's SAC does not allege that the Cooperation Agreement itself was in any way illegal or that it contemplated the transfer of technology stolen from Micron. (*See id.* ¶ 67 ("Under the UMC/Jinhua DRAM Project—to which the Defendants agreed in principle by January 2016—UMC would provide Jinhua with advanced DRAM technology in exchange for $300 million in R&D equipment, $400 million in development fees, co-ownership of the resulting technology, and the potential for additional future licensing revenues.")). This is consistent with the U.S. Indictment, which further adds that "[i]n or around April 2016, Taiwan's Ministry of Economics approved the [Cooperation Agreement]." (*See United States v. United Microelectronics Corp., et al.,* No. 3:19-cr-00465-MMC (N.D. Cal. filed Sept. 28, 2018), Dkt. 1 ("Crim. D.E.") ¶ 6). Indeed, it is implausible that the Taiwan Ministry would have approved the Agreement if it bore any indicia of contemplated trade secrets theft.[3]

What Micron's SAC makes clear is that the alleged theft occurred entirely in Taiwan. In an effort to demonstrate that "Defendants" purposefully directed activities toward the United States, Micron claims that a small percentage of the allegedly downloaded files were stored on Micron's servers in Idaho. (*Id.* ¶¶ 47, 55). However, these files were allegedly downloaded by an MMT

---

[3] The U.S. Indictment (unlike the Taiwan Indictment) names Jinhua as a defendant. However, it does not allege (even conclusorily) that Jinhua was involved in, or had knowledge of, the alleged theft of Micron's trade secrets. None of the alleged "overt acts" in furtherance of the alleged theft were taken by Jinhua. (Crim. D.E. ¶¶ 35-49) Jinhua is alleged only to have taken steps to lay the groundwork for its future DRAM chip production, as also alleged in the FAC and SAC. (*See id.* ¶¶ 45-47) But, as described below, such steps are fully consistent with Jinhua's belief that it was an innocent purchaser. They provide no basis for inferring any unlawful conduct or intent on the part of Jinhua.

---

JINHUA'S MOTION TO
DISMISS MICRON'S SAC

employee, Kenny Wang, from Taiwan before he was hired by UMC. (*Id.* ¶¶ 17, 47, 71) Micron's SAC does not allege that Jinhua was aware of Mr. Wang's downloads, let alone that the files he downloaded were stored in servers in the United States. More importantly, Micron only asserts that these acts are made by "former MMT employees," *i.e.*, not Jinhua. (*Id.* ¶ 3(b); *see also id.* ¶¶ 13-17, 47-58, 67, 70-73). Indeed, the SAC does not identify a single act by Jinhua in furtherance of these acts.[4] Nor does the SAC allege any facts that, if true, would demonstrate that Jinhua directed, acquiesced in, or knew of, the alleged theft.[5]

To the extent the SAC alleges activities by Jinhua in the United States, each of those alleged activities constitutes efforts by Jinhua to lay the groundwork for Jinhua's eventual launch of its DRAM manufacturing program. None of them involved the disclosure or use by Jinhua of any trade secrets. Rather, each is fully consistent with Jinhua's belief that the DRAM technology to be supplied by UMC would be developed lawfully by UMC, pursuant to the Cooperation Agreement, *i.e.*, not stolen from Micron.

First, Micron's SAC belabors the October 2016 job fair held in Santa Clara, California, which Jinhua and UMC attended in an unsuccessful effort to recruit engineers for Jinhua's DRAM project. (*Id.* ¶¶ 24-36). The SAC, however, nowhere alleges that Jinhua or UMC disclosed any of Micron's trade secrets at the job fair. Nor does the SAC allege that Jinhua's attendance or activities at the job fair caused Micron any harm or inured to either Defendants' benefit. Despite these shortcomings, Micron continues to speculate that the "ambitious" timetable for Jinhua's

---

[4] Each of the alleged "Co-Conspirators" is an employee of UMC, with the exception of Stephen Chen. (*See* SAC ¶¶ 13-17) Mr. Chen, however, did not join Jinhua until February 2017, nine months after the alleged theft of Micron's secrets was complete. (*Id.* ¶ 13) Moreover, he is not one of the former MMT employees alleged to have stolen Micron's trade secrets.

[5] Micron's continued lumping of Jinhua with UMC in the SAC only exemplifies Micron's inability to set forth any facts that are sufficient to state a claim against Jinhua. *See, e.g., id.* ¶ 67 (stating that "*UMC and the founders of Jinhua* developed and set in motion a plan to . . . misappropriate Micron trade secrets" without identifying who the "founders of Jinhua" are); ¶ 74 (stating that "*Defendants* stole thousands of confidential Micron files" without identifying what Jinhua did); ¶¶ 77 and 80 (alleging that "*UMC and its Co-Conspirators* . . . incorporat[ed] the stolen Micron trade secrets" without identifying Jinhua at all); ¶ 85 (stating "*UMC and Jinhua* also continued to work together," but then only identifying Sandy Kuo, a UMC Project Manager); ¶ 87 (alleging that "*UMC and Jinhua* rewarded the *individual Co-Conspirators* for their contributions to the illegal scheme" without ever defining the "reward").

---

- 4 -

commencement of mass production, which UMC unveiled at the job fair, "would not be possible without the use of the stolen Micron trade secrets." (*Id.* ¶ 81) Micron surmises that this timetable made employment positions at Jinhua more attractive because it would "tend to assuage any concerns of job candidates that the project was distant or speculative." (*Id.*) Micron also conclusorily alleges that "the Co-Conspirators knew or expected that some or all of their recruits would come from Micron." (*Id.* ¶ 80). However, Micron stops from actually alleging that the job fair led to any actual hires. Indeed, despite discovery revealing the identities of each of UMC's interviewees (*Id.*), Micron fails to allege a single Micron employee that was interviewed (let alone hired) by either UMC or Jinhua.

Second, the SAC also alleges that during their October 2016 trip, UMC and Jinhua also visited three semiconductor vendors in California. (*Id.* ¶¶ 37-46). As with the job fair, however, the SAC does not allege that Jinhua disclosed any of Micron's trade secrets to these semiconductor vendors. Nor does Micron allege that any harm sustained, or any benefit accruing to Jinhua, from these visits. As the SAC alleges, "these vendors make and sell equipment used for the manufacture of DRAM." (*Id.* ¶ 38) The SAC does not allege that any of these vendors has an exclusivity arrangement with Micron or that their products are uniquely suitable for Micron's DRAM technology—as opposed to that of any other DRAM manufacturer. Nor does the SAC allege that these visits permitted Jinhua to complete its DRAM program or compete unfairly with Micron. As with the job fair, the visits with California semiconductor vendors were ultimately without consequence.

Third, the final category of United States activities alleged in the SAC is the patent applications filed by UMC and Jinhua. (*Id.* ¶¶ 22, 92-98) Micron initially alleges that many of these patent applications "are based on, derived from, contain and disclose Micron's stolen trade secrets" (*Id.* ¶ 22), but later admits that the patent filings merely "describe the same *or very similar*" unspecified technologies described by Micron. (*Id.* ¶ 93 (emphasis added)) Although the SAC refers to these as the "UMC/Jinhua Patent Filings," the SAC specifies no actual involvement by Jinhua in preparing or filing the applications—other than its status as a joint-applicant and joint-assignee, along with UMC. Such designations on the patent applications are consistent with its rights under

the Cooperation Agreement. (*Id.* ¶ 67) The SAC alleges that former MMT employees, now employed by UMC, are named as inventors on "the vast majority" of these patent applications. (*Id.* ¶¶ 94-95) But no employee of Jinhua is identified as an inventor on any of them. Nothing in the SAC, or the patent applications themselves, suggests that Jinhua had any knowledge of (to say nothing of responsibility for) the content of the patent applications or the inventions claimed therein.

Moreover, to the extent Micron alleges that the patent applications (*Id.* ¶ 22) "are based on, derived from, contain and disclose Micron's stolen trade secrets," that is unsupported by the actual facts pled in the SAC as well as the patents and applications themselves. Nowhere does Micron identify any trade secret that is actually "disclosed" in any patent application. In fact, true "disclosure" of a trade secret in a patent application (a public document) would enable anyone skilled in the art to use the trade secret—thereby destroying its competitive value. Micron neither claims that has occurred nor does it identify any patent or patent application that discloses a Micron trade secret. As such, Micron's argument that the patent applications constitute a disclosure of its trade secrets is meritless.

Micron's contention, in other words, is essentially the same as with respect to the job fair and visits to semiconductor vendors and fails to exclude the possibility of the alternative explanation, *i.e.*, Jinhua is an innocent purchaser under the Cooperation Agreement. However, the fact remains that UMC never completed its DRAM technology nor delivered it to Jinhua. As such, without having any realistic chance at using Micron's alleged trade secrets, Micron's SAC cannot allege – nor does it sufficiently allege – that it has been harmed by any alleged conduct by Jinhua.

## III.   LEGAL STANDARDS

A complaint is subject to dismissal under FRCP 12(b)(6) unless it alleges sufficient facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Stereoscope, LLC v. U.S. Bank N.A.*, 675 Fed. Appx. 725, 726 (9th Cir. 2017) ("Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss.").

In California, civil conspiracy is a legal doctrine where the "allegations must be separately pled as to each of the substantive causes of action." *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.*, 2007 U.S. Dist. LEXIS 59946, at *11-12 (N.D. Cal. Aug. 9, 2007). Specifically, a claim for civil conspiracy is subject to dismissal unless the complaint sets forth sufficient facts demonstrating: (1) "the formation and operation of a conspiracy"; (2) "wrongful conduct in furtherance of the conspiracy"; and (3) damages arising from the wrongful conduct" for each cause of action. *Id.* Use of "legal tests in the abstract, or magic words, with no concrete facts" fails to satisfy its pleadings requirements. *Yi-Zarn Wang v. Medical Ctr.-Kenner, LLC*, 2017 U.S. Dist. LEXIS 201571, at *31 (E.D. La. Dec. 7, 2017). Likewise, allegations that are "mere conclusions" are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664.

With respect to FRCP 12(b)(6) motions, the Ninth Circuit has further required that:

> When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. ***Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible.***

*See In re Century Aluminum Co. Secs. Litig.*, 729 F.3d at 1108 (emphasis added) (quoting *Iqbal*, 556 U.S. at 678; citing *Twombly*, 550 U.S. at 554). Generally, it may not be "assume[d] that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the [] laws in ways that have not been alleged." *Associated General Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

On the other hand, a FRCP 12(f) motion allows a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." *Tung Van Nguyen v. CTS Elecs. Mfg. Solutions*, 301 F.R.D. 337, 340 (N.D. Cal. 2014) (internal quotation and citation omitted). "Granting a motion to strike may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues." *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.   ARGUMENT

### A.   Micron's Trade Secret Misappropriation Claims Remain Deficient

#### 1.   Counts I and IV of Micron's SAC Are Nearly Identical to Counts I and IV of Micron's FAC and Are Deficient for Similar Reasons

As a preliminary matter, Micron has made no effort to amend Counts I and IV of its SAC with respect to Jinhua albeit the Court's May 2 Order that dismissed Count I in part and Count IV in its entirety. Reasserted claims that lack (i) "any amendments"; (ii) "are a rehash of legal conclusions"; or (iii) "still fall far short of presenting any relevant facts" are subject to dismissal. *See Eng v. Hargrave*, 2012 U.S. Dist. LEXIS 4649, at *9 (N.D. Cal. Jan. 13, 2012).

Here, Counts I and IV of Micron's SAC are nearly identical to Counts I and IV of Micron's FAC. In fact, Micron's only addition to Count IV is Paragraph 139, which states:

> Micron sues under [CUTSA] based on the misappropriation of its trade secrets in California through *Co-Conspirators' improper disclosure* of Micron trade secrets to patent agents in California, the *use by those agents of Co-Conspirators* in preparing the UMC/Jinhua Patent Filings based on Micron's trade secrets, *Co-Conspirators'* use of Micron's trade secrets in preparing a presentation and providing assurances to recruits at the CASPA job fair in California, *Co-Conspirators'* disclosure of Micron's trade secrets to Applied Materials located in Santa Clara, California, and the use of those trade secrets by *Co-Conspirators*, all as alleged in above paragraphs 4, 24, 27, 42, 45, 46, 83, 84, and 95 through 99.

Nowhere does "Jinhua" appear in the above text, and Micron's continued use of "Co-Conspirators" is no more than "an everything-but-the-kitchen-sink assertion that *Defendants* 'have made [an] improper and unauthorized use," which is improper. *Veronica Foods Co. v. Ecklin*, 2017 U.S. Dist. LEXIS 101325, at *45 (N.D. Cal. June 29, 2017).

This is the same deficiency as identified before by Jinhua with respect to Micron's FAC, where Micron simply "scatter[ed] the allegations of formation of the conspiracy, wrongful conduct in furtherance of the conspiracy, and damages arising from the wrongful conduct throughout the FAC, and then simply alleges that [Jinhua] 'conspired with [UMC], to commit the" allegedly wrongful acts in this case. *See Mintel Learning Tech., Inc.*, 2007 U.S. Dist. LEXIS 59946, at *23-24. "Such 'naked assertions' and 'conclusions' are not the sort of factual allegations that the Court must accept as true at the pleading stage." *See Veronica Foods Co.*, 2017 U.S. Dist. LEXIS 101325, at *45; *see also Galderma Labs., L.P. v. Teva Pharms. U.S., Inc.*, 290 F. Supp. 3d 599, 617-18

- 8 -

(N.D. Tex. 2017) ("Regardless of the particular theory asserted, Plaintiffs' allegations against Teva Israel fail because they are not specific to Teva Israel. Rather, the FAC lumps together all of the Defendants.").

As further set forth in Parts IV.A.1.a and IV.A.1.b, *infra*, Micron's SAC plainly suffers from the same substantive deficiencies as its FAC and is thus subject to dismissal for the same reasons as identified in the Court's May 2 Order.

### a.   Acquisitions by Ho and Wang Cannot Support Micron's DTSA Claim Against Jinhua

The Court's May 2 Order makes clear that "to the extent Count I is based on the allegedly wrongful acquisitions by Ho and Wang, Count I is subject to dismissal." Micron's SAC, however, continues to allege those exact same allegations as "acts of misappropriation . . . encouraged and directed by UMC, Chen and Jinhua" (SAC ¶ 79) and continues to incorporate those same dismissed allegations to its DTSA Claim without regard to their lack of relevancy (SAC ¶ 101).

As raised before by Jinhua with respect to Micron's FAC, allegations "incorporat[ing] each preceding paragraph, regardless of relevancy, are not permitted." *Destfino v. Kennedy*, 2009 U.S. Dist. LEXIS 18138, at *14 (E.D. Cal. Jan. 7, 2009) ; *see also SEC v. Fraser*, 2010 U.S. Dist. LEXIS 7038, at *29-30 (D. Ariz. Jan. 28, 2010) (holding that in order for a complaint to be considered a shotgun pleading, it must incorporate 'all or nearly all' of the previous allegations and 'make[] no attempt to lay out which conduct constitutes the violation alleged.'). Here, Micron's DTSA claim continues to incorporate each preceding paragraph albeit the fact that several of those allegations recite activities that precede the enactment date of the DTSA, *i.e.*, May 11, 2016, and have been expressly dismissed via the Court's May 2 Order. Micron has no basis for continuing to incorporate those allegations to its DTSA claim, meaning that they are, once again, subject to dismissal, or in the alternative, should be stricken under FRCP 12(f) as a matter of irrelevant material.

JINHUA'S MOTION TO
DISMISS MICRON'S SAC                                            Case No. 3:17-cv-6932-MMC

### b.   Micron's SAC Fails to Identify Any Acts of Misappropriation by Jinhua Occurring in California

As a preliminary matter, Micron SAC does not allege that Jinhua acquired Micron's trade secrets, if at all, directly from Micron. As a result, the most that Micron can even suggest in its SAC is that Jinhua "*indirectly* misappropriated trade secrets by entering into [a] contract[]" with UMC to purchase technology based on Micron's trade secrets. *See MedioStream, Inc. v. Microsoft Corp.*, 869 F.Supp.2d 1095, 1114 (2012) (emphasis in original). In California, a claim of indirect trade secret misappropriation requires: (1) "the plaintiff is the owner of a valid trade secret"; (2) "the defendant . . . knew or had reason to know . . . that the information was a trade secret and . . . that the disclosing party had acquired it through improper means"; (3) "the defendant used or disclosed the trade secret without plaintiff's authorization"; and (4) "the plaintiff suffered harm as a direct and proximate result of the defendant's use or disclosure of the trade secret, or the defendant benefitted from such use or disclosure." *Id.*

Here, Micron's CUTSA claim still fails to identify a single act of misappropriation committed by Jinhua in California nor does Micron provide any factual support for any harm to Micron (or alleged benefit to Jinhua) that resulted directly or proximately from any possible use or disclosure of the alleged trade secrets. As such, Count IV of Micron's SAC is subject to dismissal.

### i.   Micron's SAC Fails to Identify Any Disclosures Made by Jinhua

As described above in Part IV.A.1, Micron's sole addition to its CUTSA claim is ¶ 139, and nowhere is "Jinhua" identified as an actor in any of the alleged activities. Rather, each of those activities were alleged to be committed by the "Co-Conspirators," who, Micron has (once again) vaguely defined in its SAC as "collectively to the Defendants, Co-Conspirator Chen, Co-Conspirator Rong, Co-Conspirator Ho, Co-Conspirator Wang, and the Doe defendants." (SAC ¶ 20). Jinhua is not expressly identified as a Co-Conspirator in Micron's SAC, and none of Micron's edits add any specific factual allegations to support a trade secret misappropriation claim against Jinhua under CUTSA.

For example, with respect to the alleged activities at the October 2016 job fair, Micron

JINHUA'S MOTION TO
DISMISS MICRON'S SAC                                   Case No. 3:17-cv-6932-MMC

specifically adds[6] the following to its SAC:

> SAC ¶ 24: "In the course of [the California] job fair, representatives of UMC and Jinhua actively recruited potential hires—highly-skilled DRAM engineers— relying on aggressive development roadmaps **shown to attendees** and assurances of technical capabilities ~~that~~ **made to attendees**. **These roadmaps and assurances** were in fact secretly based on Micron's stolen technology **and trade secrets. Usage of these roadmaps and assurances constitute use of Micron's trade secrets, by which UMC and Jinhua engaged in acts of misappropriation and acts in furtherance of their misappropriation from Micron in California and in this District**."

> SAC ¶ 27: "UMC and Jinhua jointly prepared material to present to the attendees at the CASPA recruiting event, including milestone and technology roadmap information, **which relied on Micron's trade secrets and constituted acts of misappropriation.**"

While Micron claims in ¶ 24 that the "roadmaps and assurances were in fact secretly based on Micron's stolen technology and trade secrets," Micron has notably failed to identify what trade secrets, if any, were disclosed. The reason for this omission is simple: there were no trade secrets disclosed at the job fair because any such disclosure would directly harm UMC and Jinhua's alleged goal "to profit handsomely from their scheme," as alleged in ¶ 7 of Micron's SAC. Moreover, Micron's SAC remains devoid of any facts tending to exclude the possibility that Jinhua's attempts to hire trained engineers at a job fair is consistent with an innocent purpose, *i.e.*, to establish a new DRAM business. *See In re Century Aluminum Co. Secs. Litig.*, 729 F.3d at 1108.

Rather, Micron's SAC seems to establish the contrary. For example, the alleged "roadmaps" shown at the job fair consist solely of dates and anticipated events that even Micron dare not allege are trade secrets. *See, e.g.*, SAC ¶ 29 (showing a slide titled "Milestone & Technology Roadmap" that at most shows a timeline (in years) and UMC and Jinhua's estimated time of completion (in years) with respect to their own projects) and ¶ 32 (showing a slide titled "Capacity & Technology" that shows only a graph of UMC and Micron's estimated capacity (in K wfs/month) without any context or elaboration). These slides make clear that any disclosure, at most, were dates and events that, in and of themselves, are not confidential and have never been alleged by Micron to be confidential. Likewise, any assurances, if made at all, are not trade secrets and have not been

---

[6] For illustrative purposes, additions are **underlined** and deletions are in ~~strikethrough~~.

JINHUA'S MOTION TO
DISMISS MICRON'S SAC                                    Case No. 3:17-cv-6932-MMC

alleged by Micron to be its trade secrets. As such, none of the alleged activities from the October 2016 job fair can give rise to Micron's CUTSA claim against Jinhua.

Micron also uses UMC and Jinhua visits and orders from Californian semiconductor equipment vendors to support its CUTSA claim against Jinhua. (*See* SAC ¶ 84) These allegations, however, are wholly conclusory and lack any specific factual allegations that cures the deficiencies as identified in the Court's May 2 Order, *i.e.*, that such allegations involve only nonactionable acts in furtherance of a misappropriation. For example, Micron specifically revised ¶¶ 42, 45, and 83 of its SAC as follows:

> SAC ¶ 42: "UMC/Jinhua placed orders for DRAM manufacturing equipment with these vendors. The vendors performed tool demonstration work for the UMC/Jinhua DRAM Project. UMC used equipment purchased from these vendors on the UMC/Jinhua DRAM Project. Jinhua paid for and provided UMC with this equipment that UMC used, while UMC paid for the operation and maintenance of the equipment. Jinhua has ordered and purchased equipment from those vendors to support the venture. ~~Jinhua's ordering of equipment from these vendors for the UMC/Jinhua DRAM Project began in~~ ▮▮▮▮ **Ordering of equipment from these vendors for the UMC/Jinhua DRAM Project began as early as 2016.**

> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

> **On information and belief those specifications came from or were derived from Micron's Trade Secrets.**
> **Recipe information is closely guarded information, and Micron alleges that "recipes" used by UMC and Jinhua came from or were derived from Micron's trade secrets."**

> SAC ¶ 45: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

> ▮▮▮▮ **On information and belief, those specifications came from or were derived from Micron's trade secrets, and more particularly from Micron's process flow for its DRAM technology, which Micron maintains as trade secrets. Specifically, UMC had in its possession several stolen documents containing Micron's process flow trade secrets, including at least "FAB16 90s Traveler-20150518.pdf," "DRAM l00 series (20nm) traveler (v00h) 150730," "dram 110 series (1xnm) traveler (z11a)-20150915.pdf," and**

- 12 -

JINHUA'S MOTION TO
DISMISS MICRON'S SAC

Case No. 3:17-cv-6932-MMC

**"dram_1xnm_process (Z11AA41200) – summary_flow_document.pdf." It is further alleged that UMC shared this information with Jinhua. Disclosure by UMC and Jinhua of these Micron trade secrets to Applied Materials in this District constitutes acts of misappropriation in California.**

SAC ¶ 83: While in the Silicon Valley area, UMC and Jinhua also spent several days conducting business with three specific leading semiconductor equipment vendors – companies based in Northern California, and in this District. **On information and belief, Micron's trade secrets were disclosed by Co-Conspirators to these equipment vendors** from whom ~~the Defendants~~ equipment was ordered and purchased ~~equipment~~ for the UMC/Jinhua DRAM Project, all in furtherance of exploiting Micron's stolen DRAM technology. Micron learned the identities of these equipment vendors in jurisdictional discovery, but UMC designated their names confidential under the Court protective order.

Despite these edits, Micron carefully avoids identifying any actors from Jinhua or specifying any allegedly disclosed trade secret in these activities, and as a result, none of the above allegations are sufficient for purposes of pleading that Jinhua disclosed Micron's trade secrets to one of these vendors. Micron's edits are also inconsistent and merits further explanation. For example, while Micron's FAC originally alleged that "Jinhua's ordering of equipment . . . began in 2018," Micron changed its storyline to "as early as 2016" in ¶ 42 of its SAC without providing any facts for why. This is improper, and Micron should at least provide a basis for this change.[7]

The same holds true for ¶¶ 45 and 83 of Micron's SAC. As demonstrated above, Micron's edits add nothing to ¶¶ 45 and 83 that would even suggest that Jinhua knew of, or participated in, the development of any specifications or recipes, let alone make any disclosures. Micron's primary allegation, *i.e.*, "It is further alleged that UMC shared this information with Jinhua" in ¶ 45, is plainly conclusory, and Micron has yet to identify a single instance where UMC actually transferred Micron's technology to Jinhua.[8] Moreover, Micron has provided no facts that tends to exclude the possibility that an alternative explanation for Jinhua's alleged orders from these vendors is true. *See In re Century Aluminum Co. Secs. Litig.*, 729 F.3d at 1108. Indeed, it is certainly possible, that the vendors, who Micron alleges are "leading semiconductor equipment vendors," could have provided the information itself given that they would almost certainly be familiar with the process limitations

---

[7] As with Micron's FAC, Micron's SAC is plagued with inconsistencies, and Jinhua expressly reserves the right to identify and challenge each of these defects in any subsequent pleadings.

[8] Indeed, there is no reason to infer that UMC would have done so given that a seller of misappropriated technology would have no reason to confess to the buyer that the technology was misappropriated.

JINHUA'S MOTION TO
DISMISS MICRON'S SAC

Case No. 3:17-cv-6932-MMC

1   of their own equipment. (SAC ¶ 83) Something more is required here, and Micron's failure to

2   provide any more merits dismissal. *See In re Century Aluminum Co. Secs. Litig.*, 729 F.3d at 1108.

3          The last of Micron's alleged activities that could conceivably form the basis of its CUTSA

4   claim are the "UMC/Jinhua Patent Filings," which supposedly "are based on, derived from, contain

5   and disclose Micron's stolen trade secrets" (*see* SAC ¶ 22); this allegation, however, is a classic

6   example of a conclusory allegation that is unsupported by the actual facts pled in the SAC nor the

7   actual patents and applications themselves. For example, Micron adds the following to ¶¶ 96, 98,

8   and 99 of its SAC:

9          SAC ¶ 96: The UMC/Jinhua Patent Filings noted above were filed by United States
10   Registered Patent Agents from (1) JC Patents, located at 4 Venture, Suite 250, Irvine
     California; and (2) North America Intellectual Property Organization (NAIPO), located
11   in Taiwan. The JC Patents registered U.S. Patent Agents include Jiawei Huang (Reg.
     #43330, address on file with the United States Patent and Trademark Office as JC
12   Patents, 4 Venture, Suite 250, Irvine, California 92618 US, Primary Telephone (949)
     660-0761, date registered as agent 04/28/1998). **JC Patents prosecuted at least two of**
13   **the UMC/Jinhua Patent Filings containing trade secrets—namely the '901 Patent**
     **and the '258 Patent.** The NAIPO registered U.S. Patent Agents include Xuan Zhang
14   (Reg. # 66781, address on file with the United States Patent and Trademark Office as
     IntellFluence Patent Firm, 9910 Baldwin Place, El Monte, California 91731 US, Primary
15   Telephone (626) 628-7931, date registered as agent 07/12/2010) and Scott Margo (Reg.
     #56277, address on file with the United States Patent and Trademark Office as 3305
     Northland Dr. Suite 305, Austin, Texas 78731 US, Primary Telephone (512) 459-9292).
16   **At least nine of the UMC/Jinhua Patent Filings containing Micron trade secrets**
     **were prosecuted by NAIPO, of which Xuan Zhang from El Monte, California was**
17   **listed as a patent agent for those nine patents and applications—namely the '790**
     **Patent, '167 Patent, '162 Patent, '283 Patent, '251 Patent, '777 Patent, '700 Patent,**
18   **'084 Application and '911 Patent.**

19          SAC ¶ 98: The U.S. Patent Agents of JC Patents and NAIPO prosecuted each of the
     UMC/Jinhua Patent Filings on behalf of UMC and Jinhua by corresponding with the United
20   States Patent Office and by filing numerous documents including the above noted Power of
     Attorney and Declarations, as well as numerous information disclosure statements,
21   application data sheets, and responses to Office Actions with claim amendments and
     arguments in order to secure issuance of the UMC/Jinhua Patent Filings. **At least two of the**
22   **UMC/Jinhua Patent Filings (the '901 Patent and the '258 Patent) were prosecuted by**
     **an agent of defendants located in Irvine, California. he remaining nine UMC/Jinhua**
23   **Patent Filings (the '790 Patent, '167 Patent, '162 Patent, '283 Patent, '251 Patent, '777**
     **Patent, '700 Patent, '084 Application and '911 Patent) were prosecuted by NAIPO, and**
24   **further list a patent agent from El Monte, California. On information and belief all of**
     **the UMC/Jinhua Patent Filings were prosecuted entirely or in part by U.S. patent**
25   **agents located in California.**

26          SAC ¶ 99: **In order for the U.S. patent agents located in California to prosecute the**
     **UMC/Jinhua Patent Filings, UMC and Jinhua necessarily disclosed Micron's trade**
27   **secrets to JC Patents and Xuan Zhang located in California. These disclosures of**
     **Micron's trade secrets to individuals in California constitute acts of misappropriation**
28   **in California. Moreover, JC Patents and Xuan Zhang as agents of UMC and Jinhua**

- 14 -

JINHUA'S MOTION TO
DISMISS MICRON'S SAC                                          Case No. 3:17-cv-6932-MMC

**used those trade secrets in preparing applications for the UMC/Jinhua Patent Filings in California. Using Micron's trade secrets in California in patent applications constitute acts of misappropriation in California.**

Noticeably missing from Micron's revisions is any identification of a trade secret that was actually "disclosed" in the patent applications, let alone any acts that could tie Jinhua to those alleged disclosures. *See Physician's Surrogacy, Inc. v. German*, 2018 U.S. Dist. LEXIS 16261, *27-28 (S.D. Cal. Jan. 31, 2018) (finding "Plaintiff's allegation that 'Defendants, and each of them, are willfully and improperly using [the alleged trade secrets] and intend to disclose and use [the alleged trade secrets]' is a 'legal conclusion couched as a factual allegation' that does not meet Plaintiff's burden of pleading"). Indeed, Micron's mere statement that "UMC and Jinhua ***necessarily*** disclosed Micron's trade secrets" in ¶ 99 is not a well-pleaded fact, but rather a mere inference that is neither "necessary" nor even plausible, especially given that Micron has yet to identify any communications between Jinhua and the Californian patent agents.

At the end of the day, Micron's SAC lacks sufficient facts alleging that Jinhua was responsible for, or even had knowledge of, the content of the patent applications, let alone their alleged derivation from Micron's trade secrets. As it is currently pled, the SAC only identifies the following inventors as former Micron employees: Ho, Wang, Neil Lee, Hsien- Shih Chu, Ming-Feng Kuo, Yi-Wang, Zhan Yu-Ting Li, Jen-Chien Lin, Wen-Chin Lin, and Chien-Cheng Tsai, and of these individuals, the SAC only alleges that three of them (Ho, Wang, Neil Lee) are employees of UMC. [9] (*See* SAC ¶¶ 94-95, 15-16, 86) Moreover, at least one possible inference that Micron's allegations fail to exclude is that Jinhua was named as co-assignee pursuant to the terms of the Cooperation Agreement, under which Jinhua was entitled to 50% ownership of the technology to be developed solely by UMC. *See In re Century Aluminum Co. Secs. Litig.*, 729 F.3d at 1108. Ultimately, Micron's sole fact that Jinhua is a co-assignee of the patents listed in Micron's SAC is

---

[9] Even if it is the case that some of the named inventors on the other roughly 160 patent applications are Jinhua employees, it would be irrelevant if a Jinhua employee was a named inventor on a patent application other than the 11 specifically identified in the SAC, and the SAC makes no specific allegations regarding the remaining patents. It would also be irrelevant if a named inventor became a Jinhua employee after filing the patent application, at least in the absence of allegations that such employee continued to participate in the patent application process after becoming a Jinhua employee.

JINHUA'S MOTION TO
DISMISS MICRON'S SAC

Case No. 3:17-cv-6932-MMC

insufficient for purposes of alleging that Jinhua had knowledge, used, or disclosed Micron's trade secrets. As such, these alleged activities cannot form the basis of Micron's CUTSA claim against Jinhua.

### ii.    Micron's SAC Fails to Identify Any Use by Jinhua

Micron's SAC also fails to allege that Jinhua actually used any of its trade secrets in California. As the Ninth Circuit has held, "The term 'use' in the context of misappropriation of a trade secret generally contemplates some type of use that reduces the value of the trade secret to the trade secret owner." *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1130 (9th Cir. 2010) (applying ITSA). "[T]he purpose of the trade secrets statute is to prevent someone from profiting from another's trade secret," thus "[t]he defendant must have actually put the trade secret to some commercial use." *Id.* (citations omitted). "'[T]o sustain a trade secrets action under the 'use' prong of the statutory definition of 'misappropriation,' a plaintiff must necessarily demonstrate that the defendant received some sort of unfair trade advantage.'" *Id.*  (quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1325 (5th Cir. 1994). "The law governing protection of trade secrets essentially is designed to regulate unfair business competition, and is not a substitute for criminal laws against theft or other civil remedies for conversion." *Justmed*, 600 F.3d at 1130 (quoting *Univ. Computing Co. v. Lykes– Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir. 1974)).

For example, in *JustMed*, there was no "use," and thus no "misappropriation," of plaintiff's trade secret source code where the defendant "fil[ed] for a copyright and threaten[ed] to withhold the source code . . , [after] deleting all copies of the source code from [plaintiff's] computers," since the defendant's conduct did not reduce the value of the trade secret to the plaintiff. 600 F.3d at 1130 ("Nothing here brings [defendant's] inappropriate conduct beyond the realm of simple conversion into that of misappropriation of a trade secret.").

Similarly here, the SAC alleges no more than that the Defendants took preliminary steps toward commercializing UMC's DRAM technology that were allegedly derived from Micron's trade secrets, but nowhere does it allege that such steps were successful, or that the value of Micron's trade secrets has been reduced in the least.

**iii.     Micron's SAC Fails to Identify Any Injury to Micron or
Benefit to Jinhua as a "Direct and Proximate Result" of Any
Alleged "Use or Disclosure" Made by Jinhua**

Conspicuously absent from Micron's SAC is any allegation of an injury to Micron, or a benefit to Jinhua, that was the "direct and proximate result" of Jinhua's alleged "use or disclosure" of Micron's trade secrets. *See MedioStream*, 869 F. Supp. 2d at 1114. And for good reason: Micron cannot allege any lost sales nor claim any "reasonable royalty" given that Jinhua never marketed or sold any DRAM product and cannot possibly reap any benefit from technology it never received or commercialized. The SAC's mere allegation that "***Defendants***" have benefited from the alleged misappropriation by saving the time and expense that would have been necessary to develop DRAM technology on their own does not cognizably allege any benefit to ***Jinhua***.

### 2.   Micron's SAC Fails to State a Claim Against Jinhua Under the ITSA

For the first time, Micron attempts to add an ITSA claim against Jinhua without providing any explanation for why this action merits the inclusion of duplicate trade secret misappropriation counts, especially given that Micron seems to rely on the same set of facts for its ITSA claim as its CUTSA claim. For this reason alone, Micron's ITSA claim should be dismissed or, in the alternative, struck as duplicative and redundant of its original CUTSA claim. *See Tung Van Nguyen*, 301 F.R.D. at 342 (granting in part defendant's motion to strike "because almost all of the allegations in Plaintiffs' second cause of action are redundant of the allegations made in Plaintiffs' first cause of action").

Moreover, ¶¶ 152 to 160 of Micron's ITSA claim is exactly the same as ¶¶ 140 to 148 of Micron's CUTSA claim. Micron also relies on the same set of "General Allegation" for these counts. *See, e.g.*, SAC ¶ 138 (incorporating by reference [¶¶] 1 through 20, 22 through 58, and 65 through 100" for its CUTSA claim) and ¶ 150 (incorporating by reference [¶¶] 1 through 20, 22 through 25, 27 through 58, 65 through 95, and 97 through 100" for its ITSA claim). Both examples only demonstrate that Micron's ITSA claim is no more than a duplicative count that has no reason to add, especially given that it has already alleged trade secret misappropriation under CUTSA.

Nonetheless, even if Micron pleads under the ITSA, Micron has incorporated by reference Paragraphs 1-20, 22-25, 27-58, 65-95, and 97-100 for Count V, and all of this is based on the

- 17 -

acquisitions by Ho and Wang "from Micron's servers located in Boise, Idaho, as alleged in [P]aragraphs 47, 49 through 51, and 55, inclusive, above." None of those acts were alleged to have been done Jinhua, and as a result, Micron cannot establish "a *prima facie* case of a violation of the ITSA." *Flsmidth Spokane, Inc. v. Emerson*, 2014 U.S. Dist. LEXIS 82361, at *19 (D. Id. June 16, 2014) (finding that, for an ITSA claim to survive dismissal, "plaintiff must adequately allege that a defendant acquired a trade secret by 'improper means' or that a defendant disclosed or used the trade secret without consent and with knowledge that the trade secret was acquired by improper means or under circumstances giving rise to a duty to maintain secrecy.").

Here, Micron's SAC is plainly lacking such allegations. For example, ¶ 55 states, "*UMC* improperly had possession of internal confidential Micron documents that came from Boise, Idaho" *i.e.*, not Jinhua. In fact, Micron's SAC does not identify any acts committed by Jinhua in Idaho, let alone an acquisition or disclosure of Micron's trade secrets that would give rise to an action under the ITSA. For these reasons, Micron's Count V under ITSA should be dismissed.

### B.   Micron's SAC Fails to State a Civil RICO Claim Against Jinhua

Section 1962(c) requires Micron to prove that Jinhua engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," and, additionally, that Jinhua's acts were the "but-for" cause of "concrete financial loss" to Micron. *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002). Each element "must be established as to each individual defendant." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 2012 U.S. Dist. LEXIS 28865, at *21 (N.D. Cal. March 5, 2012). As with Micron's FAC, however, Counts II and III of Micron's SAC fail to allege sufficient facts to show any of these elements.[10] As a result, both Counts II and III of Micron's SAC should be dismissed for at least the reasons stated below.

---

[10] Due to Micron's minimal efforts in amending its SAC, several of the same deficiencies from Micron's FAC have carried over into the current SAC. As a result, Jinhua's arguments as identified during the parties' earlier briefing regarding Counts I-IV of Micron's FAC are still applicable and incorporated fully by reference in this current motion. (*See generally* D.E. 168, 192).

JINHUA'S MOTION TO
DISMISS MICRON'S SAC

Case No. 3:17-cv-6932-MMC

1

### 1. Counts II and III of Micron's SAC Are Nearly Identical to Counts II and III of Micron's FAC and Are Deficient for Similar Reasons

2

As described above with Counts I and IV of Micron's SAC, *see supra* Part IV.A.1, Counts II

3

and III of Micron's SAC are also nearly identical to Counts II and III of Micron's FAC albeit the

4

fact that both Counts II and III were both dismissed in their entireties via the Court's May 2 Order.

5

Micron's minimal edits to any "General Allegations" are insufficient for purposes of stating

6

a claim against Jinhua for the reasons that follow.

7

### 2. Micron's SAC Does Not Allege that Jinhua Committed Any Requisite "Predicate Acts"

8

9

To even rely on violations of the Economic Espionage Act as predicate acts under RICO,

10

Micron must show that "each defendant committed a predicate act under RICO that caused injury to

11

[Micron] on or after May 11, 2016." *Attia v. Google LLC*, 2018 U.S. Dist. LEXIS 99400, at *38

12

(N.D. Cal. June 13, 2018) (citing 18 U.S.C. § 1964(c)).

13

Here, however, Micron has failed to allege any predicate act that was ***specifically*** committed

14

by Jinhua. Micron's generic references to alleged activity committed by the "Co- Conspirators" is

15

insufficient. *See Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp.

16

3d 1132, 1177 (E.D. Cal. 2017) ("Where RICO claims under 1962(c) are asserted against multiple

17

defendants, a plaintiff must allege at least two predicate acts by each defendant." (citing *In re*

18

*WellPoint, Inc. v. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012)). As

19

such, dismissal of Micron's civil RICO claim under §1962(c) is warranted.

20

### 3. Micron's SAC Does Not Allege that Jinhua Engaged in a "Pattern of Racketeering Activity"

21

To satisfy RICO's "pattern" element, Micron must adequately allege that Jinhua itself

22

committed at least two predicate violations of the Economic Espionage Act (both after May 2016).

23

Here, Micron's SAC is devoid of any factual basis to infer Jinhua's commission of even a single

24

predicate act, let alone two or more predicate acts. *See Comm. to Protect Our Agric. Water*, 235 F.

25

Supp. 3d at 1177.

26

### 4. Micron's SAC Fails to Identify a Single "Concrete Financial Loss"

27

Despite having the opportunity to amend its SAC, Micron has failed to properly cure the

28

main defect that the Court identified with its civil RICO claims in the May 2 Order, *i.e.*, that

- 19 -

1    "Micron's RICO claim cannot be based on the alleged acts of misappropriation occurring before

2    May 11, 2016, specifically acquisitions by Ho and Wang." In fact, the Court "afford[ed] Micron

3    leave to amend" so Micron could try to "allege facts sufficient to support a finding it has incurred a

4    concrete financial loss as a result of acts of misappropriation occurring on or after May 11, 2016."

5    Sadly, Micron's additions do the exact opposite.

6         For example, in ¶ 127 of Micron's SAC, Micron provides a laundry list of "internal

7    investigation costs, computer forensic costs and increased operational costs" that allegedly occurred

8    as a result of the Co-Conspirators' misappropriation, *i.e.*, not Jinhua. These costs include:

9    - "the Micron-issued laptop used by ***Kenny Wang***;"

10   - "imaging the Micron-issued laptop that had been assigned to ***Kenny Wang***;"

11   - "[D]etermining what ***Kenny Wang*** and others took from Micron;"

12   - "[A]ccessing data that ***Kenny Wang*** sought to delete from his Micron-issued laptop;"

13   - "[E]valuating .pst files from ***Kenny Wang's*** Micron-issued laptop;"

14   - "[S]earching for and evaluating artifacts from ***Kenny Wang's*** Micron-issued laptop[;]"

15   - "[E]xpense and cost for computer storage devices used for copies of ***Kenny Wang's*** Micron-

16   issued laptop[;]"

17   - "[F]orensic analysis into the downloading of Micron's computer files from United States-

18   based servers by ***Kenny Wang*** and potentially others."

19   (SAC ¶ 127). Given that the Ho and Wang acquisitions cannot form the basis of Micron's DTSA or

20   civil RICO claims, none of the alleged costs in ¶ 127 of Micron's SAC could possibly have been

21   "incurred . . . as a result of acts of misappropriation occurring on or after May 11, 2016."

22        Moreover, to the extent Micron asserts that any of the above costs were incurred as a result

23   of alleged acts committed by Jinhua after May 11, 2016, Micron has failed to show any "concrete

24   financial loss," *i.e.*, a tangible loss to business or property, caused as a result of such alleged

25   conduct. *See, e.g.*, *Canyon Cty. v. Syngenta Seeds, Inc.,* 519 F.3d 969, 975 (9th Cir. 2008) (county's

26   expenditure on public services not a cognizable "property interest"); *Oscar v. Univ. Students Co-*

27   *Operative Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (claimed decreased in value of a rented

28   apartment insufficiently "concrete" (affirming dismissal on the pleadings)). For example, ¶¶ 128

- 20 -

1    and 136 of Micron's SAC allege only general "economic damages both domestically and abroad,"

2    which fall far short of pleading a "concrete financial loss."[11]

3         Moreover, as the Court's May 2 Order explained, "the holder of a trade secret does not

4    ordinarily suffer any lost opportunity unless it can provide some concrete example of how it would

5    have exploited its exclusive possession of the trade secret." *See also Mattel, Inc. v. MGA Ent't Inc.*,

6    782 F. Supp. 2d 911, 1021 (C.D. Cal. 2010) (neither loss of "exclusive use or confidentiality" of

7    trade secrets or the "'competitive advantage' that sometimes flows from the deprivation of

8    exclusive use" sufficient for RICO injury). Rather, a RICO plaintiff asserting injury from theft of

9    trade secrets must show proof of "concrete financial loss, either in the form of lost opportunity or

10   lost profits, as a result of the deprivation of its property interest in the exclusive use of its trade

11   secret materials." *Id*. at 1019-21 (rejecting RICO plaintiff's arguments that the "loss of exclusive

12   use" of its trade secrets was a "per se concrete financial injury," or that such loss of exclusive use

13   constituted an actionable "lost opportunity"). For example, "the cost of filing a RICO action does

14   not satisfy the concrete financial injury requirement." *Izenberg v. ETS Servs.*, LLC, 589 F. Supp. 2d

15   1193, 1204 (C.D. Cal. 2008) (dismissing RICO claim allegation injury "in having to hire attorneys

16   before binging this action and in bringing this action"); *Portfolio Investments LLC v. First Sav.*

17   *Bank N.W.*, 583 Fed. App'x 814, 816 (9th Cir. 2014) ("deprivation of honest services" not

18   cognizable as RICO injury).

19        Here, Micron's claimed injuries effectively read the statute's "concrete financial loss"

20   element out of the statute since any plaintiff's counsel's compliance with the pre-filing due

21   diligence of Fed. R. Civ. P. 11 would be cognizable under RICO. For at least these reasons,

22   Micron's SAC (once again) fails to state a civil RICO claim against Jinhua and should be dismissed.

23

24

25

26   [11] Nor can Micron establish "concrete financial losses" independent of UMC's alleged acts of
     misappropriation. *See Chaset*, 300 F.3d at 1087; *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924,
27   929 (9th Cir. 1994) ("failure to adequately demonstrate that such loss resulted *directly* from the
     wrongful conduct of the defendants means its loss is too remote to be actionable under RICO").
28

JINHUA'S MOTION TO
DISMISS MICRON'S SAC                                          Case No. 3:17-cv-6932-MMC

### 5.  Micron's SAC Fails to State a § 1962(d) Conspiracy RICO Claim

As the Court previously acknowledged in its May 2 Order, Micron's failure to state a claim under § 1962(c) requires dismissal of its conspiracy claim under 18 U.S.C. § 1962(d). *See, e.g.*, *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO."). As such, Jinhua respectfully requests that the Court dismisses Count IV of the SAC.

## V.    CONCLUSION

For the reasons set forth herein, Micron's claims should be dismissed in their entirety.


Dated: June 7, 2019                 */s/ Daniel Johnson Jr.*

Daniel Johnson Jr. (Bar No. 57409)
Mario Moore (Bar No. 231644)
DAN JOHNSON LAW GROUP, LLP
400 Oyster Point Blvd., Suite 321
South San Francisco, CA 94080
Telephone: (415) 604-4500
dan@danjohnsonlawgroup.com
mario@danjohnsonlawgroup.com

Lyle B. Vander Schaaf (DC Bar No. 422380)
Evi T. Christou (DC Bar No. 1600066)
Fei Hu (DC Bar No. 1016150)
BRINKS GILSON & LIONE
1775 Pennsylvania Ave, NW, Suite 900
Washington, DC 20006
Telephone: (202) 296-8700
lvanderschaaf@brinksgilson.com
echristou@brinksgilson.com
fhu@brinksgilson.com
Appearance *pro hac vice*


Harold V. Johnson (IL Bar No. 6188149)
Judy K. He (IL Bar No. 6327020)
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Drive, Suite 3600
Chicago, IL 60611
Telephone: (312) 321-4200
hjohnson@brinksgilson.com
jhe@brinksgilson.com

- 22 -

Appearance *pro hac vice*

*Attorneys for Defendant*
Fujian Jinhua Integrated Circuit Co., Ltd.

JINHUA'S MOTION TO
DISMISS MICRON'S SAC                                    Case No. 3:17-cv-6932-MMC