Randall E. Kay (State Bar No. 149369)
rekay@jonesday.com
Douglas L. Clark (State Bar No. 279408)
dlclark@jonesday.com
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121.3134
Telephone:     +1.858.314.1200
Facsimile:     +1.844.345.3178

Marcus S. Quintanilla (State Bar No. 205994)
mquintanilla@jonesday.com
JONES DAY
555 California Street, Suite 2600
San Francisco, CA 94104.1501
Telephone:     +1.415.626.3939
Facsimile:     +1.415.875.5700

Attorneys for Plaintiff
MICRON TECHNOLOGY, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICRON TECHNOLOGY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED MICROELECTRONICS CORPORATION, FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD., and DOES 1-10,<br><br>Defendants. | **Case No. 3:17-CV-06932-MMC**<br><br>**PLAINTIFF MICRON TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANT UNITED MICROELECTRONICS CORPORATION'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:          July 12, 2019<br>Time:          9:00 a.m.<br>Judge:        Hon. Maxine M. Chesney<br>Courtroom:  7, 19th Floor |

NAI-1507789364v7

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................1

II.   RELEVANT PROCEDURAL HISTORY AND FACTS ...................................1

III.   LEGAL STANDARD........................................................................................2

IV.   ARGUMENT ....................................................................................................3

    A.   Micron's SAC Identifies the Trade Secrets UMC Stole with Sufficient Particularity..............................................................................................3

    B.   Micron Properly Pled its Patent Assignment Equitable Remedy. ...........7

    C.   Micron Has Sufficiently Alleged a Concrete Financial Loss Supporting Its RICO Claim. ........................................................................................8

V.   CONCLUSION ...............................................................................................10

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Alaska Ctr. For Env't v. U.S. Forest Serv.*,
189 F.3d 851 (9th Cir. 1999) ............................................................................................. 3

*Alta Devices, Inc. v. LG Elecs., Inc.*,
343 F. Supp. 3d 868 (N.D. Cal. 2018) ......................................................................... 3, 4, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................ 3

*Becher v. Contoure Labs., Inc.*,
279 U.S. 388 (1929) ............................................................................................................ 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................ 2

*Genentech, Inc. v. JHL Biotech, Inc.*,
No. C 18-06582 WHA, 2019 WL 1045911 (N.D. Cal. Mar. 5, 2019) ................................ 10

*Giorgi Glob. Holdings, Inc. v. Smulski*,
No. CV 17-4416, 2019 WL 1294849 (E.D. Pa. Mar. 21, 2019) ......................................... 8

*Hayhurst v. Rosen*,
No. CV-91-4496, 1992 WL 123178 (E.D.N.Y. May 18, 1992) ......................................... 8

*Izenberg v. ETS Servs., LLC*,
589 F. Supp. 2d 1193 (C.D. Cal. 2008) ............................................................................. 9

*Keyssa, Inc. v. Essential Prods., Inc.*,
No. 17-CV-05908-HSG, 2019 WL 176790 (N.D. Cal. Jan. 11, 2019) ............................... 4

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ............................................................................................ 3

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
214 F. Supp. 3d 808 (N.D. Cal. 2016), *aff'd*, 890 F.3d 828 (9th Cir. 2018), *amended by*,
897 F.3d 1224 (9th Cir. 2018), and *aff'd*, 735 F. App'x 241 (9th Cir. 2018) ..................... 9

*Richardson v. Suzuki Motor Co.*,
868 F.2d 1226 (Fed. Cir. 1989) ..................................................................................... 7, 8

NAI-1507789364v7

1

2
*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) ............................................................................. 8

3
*Sonoma Pharms., Inc. v. Collidion Inc.*,
    No. C 17-01459 EDL, 2018 WL 3398940 (N.D. Cal. June 1, 2018) ..................................... 10
4

5
*Space Data Corp. v. Alphabet Inc.*,
    No. 16-CV-03260-BLF, 2017 WL 9840133 (N.D. Cal. Dec. 18, 2017) ............................... 10
6

7
*T-Mobile USA, Inc. v. Huawei Device USA, Inc.*,
    115 F. Supp. 3d 1184 (W.D. Wash. 2015) ................................................................. 7
8

9
*Walker v. Blackground Records, LLC*,
    No. CV 16-4833 FMO (FFMx), 2017 WL 8186040 (C.D. Cal. Aug. 7, 2017) ...................... 3

10
**STATUTES**

11
18 U.S.C. § 1838 ......................................................................................................... 7
12

13
18 U.S.C. § 1962 ....................................................................................................... 10

14
**OTHER AUTHORITIES**

15
Fed. R. Civ. P. 8 ................................................................................................... 2, 5

16
Fed. R. Civ. P. 12 ................................................................................................... 3

17
Restatement (Third) of Unfair Competition § 44 cmt. e (Am. Law Inst. 1995) ............................ 8

18

19

20

21

22

23

24

25

26

27

28

iii

1   **I.     INTRODUCTION**

2          In its motion to dismiss Plaintiff Micron Technology, Inc.'s ("Micron") Second Amended

3   Complaint ("SAC"), Defendant United Microelectronics Corporation's ("UMC") raises—for the

4   first time, despite having already filed two previous motions to dismiss—an argument that Micron

5   has not alleged the trade secrets UMC stole with sufficient particularity.  UMC's argument

6   mischaracterizes the legal standard and ignores this Court's previous observation that UMC knows

7   what trade secrets it misappropriated because the documents it stole spell them out.

8          UMC's remaining arguments—that Micron has not adequately pled entitlement to

9   assignment of the patents obtained using Micron's trade secrets, and that Micron has not alleged a

10  concrete financial loss sufficient to support a RICO claim—similarly fail.  Assignment of patents

11  based on stolen trade secrets is an equitable remedy available under the DTSA.  And Micron's

12  SAC contains allegations that Micron incurred investigation and operating costs as a result of

13  UMC's misappropriation, both of which qualify as concrete financial losses for a RICO claim.

14  Because Micron has sufficiently pled all of its claims, the court should deny UMC's motion to

15  dismiss.

16  **II.    RELEVANT PROCEDURAL HISTORY AND FACTS**

17         Micron filed this lawsuit for trade secret misappropriation against Defendants UMC and

18  Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua") (collectively, "Defendants") on December 5,

19  2017.  (Dkt. 1.)  UMC filed its first motion to dismiss, for lack of jurisdiction, on February 15,

20  2018, and Jinhua filed its first motion to dismiss, for lack of personal jurisdiction and insufficient

21  service of process, on October 2, 2018.  (Dkts. 27, 106.)  On January 18, 2019, the Court granted

22  Jinhua's motion to dismiss with leave to amend, after which Micron filed its FAC and the Court

23  denied UMC's motion to dismiss as moot in light of the FAC.  (Dkts. 139, 140, 141.)  UMC then

24  moved to dismiss Micron's FAC for lack of personal jurisdiction and forum non conveniens on

25  February 22, 2019, and Jinhua followed suit on March 14, 2019, arguing lack of personal

26  jurisdiction, forum non conveniens and failure to state a claim.  (Dkts. 153, 168.)  On May 2,

27  2019, the Court held that it will exercise personal jurisdiction over UMC and Jinhua, denying their

28  motions to dismiss on that basis.  (Dkt. 199.)  The Court also denied both Defendants' forum non

1

1  conveniens claim and denied Jinhua's motion to dismiss Micron's DTSA claim for failure to state

2  a claim.  (*Id*.)  Regarding Micron's RICO claims, the Court granted Micron leave to amend to

3  allege concrete financial harm.  (*Id*.)  On May 23, 2019, the Defendants filed a motion to stay the

4  case based on a criminal matter brought over six months earlier.  (Dkt. 204.)  A day later, on May

5  24, 2019, Micron filed its SAC (Dkt. 206-4), and UMC filed this motion to dismiss (its third

6  motion to dismiss) on June 7, 2019.  (Dkt. 219.)

7          Micron's SAC alleges that UMC stole "thousands of confidential Micron files that detail

8  Micron's trade secret DRAM process and design technologies," including: "(1) Micron's

9  manufacturing processes as described in Micron's process travelers and other process

10  documentation; (2) Micron's design rules, including electrical design rules and geometrical design

11  rules; (3) Micron's layout, masks and reticle specification files; (4) Micron's in-line testing

12  processes; (5) Micron's wafer acceptance testing technology; (6) Micron's wafer sort flow; and

13  (7) Micron's failure analysis and yield-enhancement data."  (SAC ¶ 74.)  Micron further describes

14  the trade secrets UMC stole as including: "Information disclosing Micron's DRAM manufacturing

15  and testing processes; Wafer acceptance test files including test structures/data and layout

16  regarding areas destroyed in processing; Test programming files; Probe performance and

17  parametric tests showing testing and yield; Test results; Process information for 30nm, 25nm,

18  20nm, 1Xnm process nodes; Metallization process and layout; Failure-analysis information;

19  Reticle specification files; and many others."  (SAC ¶ 73.)

20          Micron further describes the ways UMC used the information it stole in partnership with

21  Jinhua, including preparing F32 DRAM design rules, filing patents based on Micron's trade

22  secrets, recruiting employees, and purchasing equipment.  (SAC ¶ 77-83.)  Finally, the SAC

23  describes concrete financial harm Micron suffered as a result of UMC's misappropriation,

24  including investigation, computer forensic, and operational costs. (SAC ¶ 127.)

25  **III.   LEGAL STANDARD**

26          A complaint must include "a short and plain statement of the claim showing that the

27  pleader is entitled to relief," and plead "enough facts to state a claim to relief that is plausible on

28  its face."  Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

1   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

2   the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

3   556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but

4   it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotations

5   omitted).  A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).

6   In ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as

7   true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*

8   *v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Because Micron's SAC

9   meets these requirements, UMC's motion to dismiss should be denied.

10  **IV.    ARGUMENT**

11         **A.    Micron's SAC Identifies the Trade Secrets UMC Stole with Sufficient
              Particularity.**

12

13         Micron's SAC "give[s] both the Court and [UMC] notice of the boundaries within which

14  the trade secrets lie."  This is all that is required.  *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F.

15  Supp. 3d 868, 882 (N.D. Cal. 2018).[1]  UMC suggests otherwise only by distorting this legal

16  standard and offers no explanation for why it raises this argument only now, in its third motion to

17  dismiss, when Micron first described the trade secrets at issue in its original Complaint.

18         Micron alleges that UMC stole "thousands of confidential Micron files that detail Micron's

19  trade secret DRAM process and design technologies," including various processes, design rules,

20  layouts, masks, testing, failure analysis and more.  (SAC ¶ 74.)  Micron further explains that the

21  trade secrets contained in the stolen files included highly confidential and sensitive information

22  disclosing Micron's DRAM manufacturing and testing processes; wafer acceptance test files; test

23  results; layouts regarding areas destroyed on wafers; yield information of successful wafers;

24  process information for 30nm, 25nm, 20nm, 1Xnm process nodes; metallization process; reticle

25  _____

26         [1] UMC does not challenge the remaining elements of Micron's trade secret
    misappropriation claims, and thus cannot raise those arguments in its reply brief.  *See Alaska Ctr.*
27  *For Env't v. U.S. Forest Serv.*, 189 F.3d 851, 858 n.4 (9th Cir. 1999) ("Arguments not raised in
    opening brief are waived.");  *Walker v. Blackground Records, LLC*, No. CV 16-4833 FMO
28  (FFMx), 2017 WL 8186040, at *7 (C.D. Cal. Aug. 7, 2017) ("In the Reply, [defendant] raises new
    arguments for the first time that the court need not consider.") (citations omitted).

1   specification files; and much more.  (SAC ¶ 73.)

2       The allegations in SAC paragraphs 73 and 74 resemble trade secret descriptions previously

3   found sufficient by courts in this District.  For example, in *Alta Devices, Inc.*, the court found that

4   the plaintiff sufficiently described the stolen trade secrets as information related to manufacturing

5   processes for thin-film GaAs solar technology, including methods of "high throughput thin-film

6   deposition; epitaxial lift-off of the thin-film; and GaAs substrate maintenance and re-use."  *Alta*

7   *Devices, Inc.*, 343 F. Supp. 3d at 881.  In *Keyssa, Inc. v. Essential Products, Inc.*, the court found

8   that the plaintiff sufficiently described the stolen trade secrets related to design and testing of its

9   semiconductor products such as: "Detailed antenna, transmitter, and receiver designs to minimize

10  channel crosstalk and maximize signal integrity"; "Methods for minimizing electromagnetic

11  interference, radiofrequency interference, and electrostatic discharge"; and "Proprietary test and

12  validation methods for materials, components and subcomponents of the wireless accessory

13  connector."  *Keyssa, Inc.*, No. 17-CV-05908-HSG, 2019 WL 176790, at *2 (N.D. Cal. Jan. 11,

14  2019).  The plaintiffs' trade secret descriptions in *Alta Devices, Inc.* and *Keyssa, Inc.* are no more

15  specific than those of Micron here.

16      UMC purports to hold Micron to a heightened pleading standard, claiming that Micron

17  needs to provide more detail regarding the stolen trade secrets because of the maturity[2] of DRAM

18  technology and UMC's own disclosure of Micron's trade secrets through UMC's patent filings.

19  (Mot. to Dismiss, Dkt. 219, at 7-8.)  But UMC offers no authority supporting these propositions,

20  and in fact, "Federal Rule of Civil Procedure 9's heightened pleading standard does not apply to

21  trade secrets cases."  *Alta Devices, Inc.*, 343 F. Supp. 3d at 882.  Nor does "Rule 8 … have a

22  particularity requirement."  *Id.*  Besides, UMC states that there are "even superior array layouts to

23  those that were allegedly misappropriated by the defendants in this case," which indicates it

24  already knows with particularity at least some of the trade secrets to make that evaluation. (Mot. to

---

[2] In support of its argument on the maturity of the technology, UMC points to three patents, each of which discusses a separate technology related to DRAM, namely "periphery," "cell," and "array."  The mere fact that these concepts existed and were invented is irrelevant, however, to the fact that the parameters used for each constitute trade secrets.  UMC's argument would be analogous to saying that DRAM itself was invented decades ago, and therefore all DRAM trade secrets must meet a heightened pleading standard due to the maturity of the technology.  No two DRAM chips are the same, including their parameters for "periphery," "cell," and "array."

4

1  Dismiss, Dkt. 219, at 7:9-13.)

2       UMC's reliance on older DRAM technology does nothing to explain why UMC cannot

3  ascertain the parameters of Micron's trade secret information for pleading purposes.  UMC knows

4  what information Kenny Wang provided when he prepared UMC's F32 DRAM design rules using

5  the materials he unlawfully took from Micron, including that it came directly from Micron's

6  DR25nmS design rules.  (SAC ¶ 77.)  As stated in the SAC, Kenny Wang filled in vital gaps in

7  UMC's work, including "parameters relating to ion-implantation which cannot be obtained

8  through reverse engineering, and help[ed] complete the parts including 'Cell', 'Array', and

9  'Periphery.'"  (SAC ¶ 77.)  In fact, this Court has previously commented, during an exchange with

10  the United States during a hearing in the criminal proceeding against UMC, that UMC knows the

11  trade secrets at issue because they are "spelled out" in the documents UMC stole from Micron.

12  (Feb. 6, 2019 Tr. at 9:23-10:3) ("The Court: Okay. So that the document itself is the secret in

13  effect?  Ms. Lee:  Yes.  The Court:  It has the secret spelled out on it, here is how you make it?"

14  Ms. Lee:  Yes.").) (Hearing on Motion for Bill of Particulars, which was denied).

15       Micron's allegations regarding the UMC/Jinhua Patent Filings explicitly provide details

16  identifying trade secrets that UMC stole and disclosed.  (SAC ¶ 95.)  Specifically, Micron

17  identifies eleven patents along with filing dates, titles, and named inventors.  (*Id.*)  For each patent,

18  Micron identifies the specific trade secrets disclosed, by providing the filename of the document—

19  stolen from Micron by UMC—and the page numbers on which the trade secrets appear.  (*Id.*)  For

20  example, Micron identifies U.S. Patent No. 9,679,901, which discloses Micron's "trade secret

21  process for forming shallow trench isolation and active areas in a DRAM device."  (*Id.* ¶ 95(a).)

22  Micron provides the filename for the document UMC stole that discloses the trade secret process:

23  "FAB16 90s Traveler-20150518.pdf."  (*Id.*)  Micron describes how UMC stole the document:

24  through the wrongful acts of co-conspirator Wang.  (*Id.*)  And Micron provides the specific pages

25  within the document that describe the trade secrets: pages 12-13, 32, and 35-36.  (*Id.*)  Micron

26  provides the same information for the following patents and patent applications:

27       •  U.S. Patent Application No. 15/384,940, which discloses Micron's "trade secret

28          process for forming shallow trench isolation in a DRAM device," (*Id.* ¶ 95(b));

- U.S. Patent No. 9,773,790, which discloses Micron's "trade secret process for forming connections to storage nodes in a DRAM device," (*Id.* ¶ 95(c));

- U.S. Patent No. 9,960,167, which discloses Micron's "trade secret process for forming storage nodes in a DRAM device," (*Id.* ¶ 95(d));

- U.S. Patent No. 9,929,162, which discloses Micron's "trade secret process for forming storage node contact plugs in a DRAM device," (*Id.* ¶ 95(e));

- U.S. Patent No. 9,859,283, which discloses Micron's "trade secret process for forming active regions and bitlines in a DRAM device," (*Id.* ¶ 95(f));

- U.S. Patent No. 10,128,251, which discloses Micron's "trade secret process for simultaneous array and peripheral structure formation in a DRAM device," (*Id.* ¶ 95(g));

- U.S. Patent No. 10,192,777, which discloses Micron's "trade secret process for shallow trench isolation formation in a DRAM device," (*Id.* ¶ 95(h));

- U.S. Patent No. 10,062,700, which discloses Micron's "trade secret process for forming storage node cell contacts in a DRAM device," (*Id.* ¶ 95(i));

- U.S. Patent Application No. 15/856,084, which discloses Micron's "trade secret process for forming a capacitor structure in a DRAM device," (*Id.* ¶ 95(j)); and

- U.S. Patent No. 10,204,911, which discloses Micron's "trade secret process for fabricating a capacitor structure in a DRAM device," (*Id.* ¶ 95(k)).

UMC cannot show that these allegations fail to provide "notice of the boundaries within which the trade secrets lie." *See Alta Devices, Inc.*, 343 F. Supp. 3d at 882.  Nor can UMC defeat Micron's trade secret claims at the pleading stage simply by pointing to these patent filings, which Micron alleges were *based on or derived from* some of the trade secrets at issue (SAC ¶ 95), and claiming that all of Micron's trade secrets are now in the public domain.  (*See* Mot. to Dismiss, Dkt. 219, at 8:6-20.)  Micron has sufficiently identified trade secret documents in UMC's possession, with pinpoint page citations to the relevant information.  (SAC ¶ 95.)  This level of particularity suffices under Rule 8.[3]  *See Alta Devices, Inc.*, 343 F. Supp. 3d at 882.  Micron is not

---

[3] These patent filings are only select examples of the trade secrets UMC stole.  Micron has also alleged that UMC stole "thousands of confidential Micron files" containing a multitude of

1    required to do more at this stage.  *See T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F.

2    Supp. 3d 1184, 1192 (W.D. Wash. 2015) (finding that plaintiff adequately pled the existence of

3    and identified the trade secrets at issue, rejecting as "manifestly beyond the scope of a motion to

4    dismiss for failure to state a claim" the defendant's argument that all plaintiff's trade secrets were

5    disclosed in patent filings and therefore in the public domain).

6         Because Micron's SAC describes the trade secrets UMC stole with sufficient particularity,

7    UMC's motion to dismiss should be denied.

8              **B.    Micron Properly Pled its Patent Assignment Equitable Remedy.**

9         UMC's motion fails to explain what relief it seeks with its argument that Micron is not

10   entitled to the assignment of the patents UMC wrongfully obtained using Micron's trade secret

11   information.  UMC asks that Micron's "claim for a change in patent ownership … be dismissed,"

12   (Mot. to Dismiss, Dkt. 219, at 11:6), and states that it "should be stricken."  (*Id.* at 11:6-7.)  A

13   motion to strike is not, however, properly before the Court on this issue.  But even if it were, UMC

14   is not correct that Micron must bring a cause of action for conversion, correction of inventorship,

15   fraud on the USPTO, or breach of contract in order to obtain assignment of patents as a remedy.

16   Patent assignment is a proper remedy for Micron's DTSA claim.

17        Longstanding federal law provides for patent assignment as a remedy for trade secret

18   misappropriation.  Specifically, both the United States Supreme Court and the Federal Circuit have

19   recognized assignment of patents as an equitable remedy for trade secret misappropriation.  The

20   DTSA expressly provides that the statute "shall not be construed to preempt or displace any other

21   remedies, whether civil or criminal, provided by United States Federal, State, commonwealth,

22   possession, or territory law for the misappropriation of a trade secret."  18 U.S.C. § 1838.

23        In *Becher v. Contoure Laboratories, Inc.*, the Supreme Court affirmed a decree issued by a

24   New York state court ordering that the defendant, who had wrongfully obtained a patent based on

25   the plaintiff's trade secrets, assign the patent to the plaintiff.  *Becher v. Contoure Labs.*, 279 U.S.

26   388 (1929).  In *Richardson v. Suzuki Motor Co.*, the Federal Circuit explained that in trade secret

27   misappropriation cases, patent assignment is "an equitable remedy," distinct from correction of

28   trade secret information.  (SAC ¶¶ 73-74.)

inventorship.  *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1249 (Fed. Cir. 1989) (abrogated on other grounds as recognized by *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011)).  The Federal Circuit reasoned that ordering the assignment of the defendant's patents does not require the court to determine "whether [plaintiff] is a sole or joint inventor," and that the remedy applies regardless of "the presence of [defendant's] further modification [of the plaintiff's secrets] in one or two claims," because "[t]o hold otherwise would ratify and indeed reward the [defendant's] wrongdoing."  *Id.*

Federal district courts echo this view of patent assignment as an equitable remedy for trade secret misappropriation, in addition to any remedies available under applicable state laws, as does the Restatement (Third) of Unfair Competition. *See  Hayhurst v. Rosen*, No. CV-91-4496, 1992 WL 123178, at *4 (E.D.N.Y. May 18, 1992) ("[I]f a court finds that a patented invention is the creation of a different party, it may, as a matter of equity, assign the patent at issue to the correct inventor.") (citing *Richardson*, 868 F.2d 1226 ); Restatement (Third) of Unfair Competition §44 cmt. e (Am. Law. Inst. 1995) (providing that courts are empowered to require assignment of any patents covering inventions derived from the plaintiff's trade secrets).  The remedy of patent assignment is therefore available under the DTSA, and the Court should deny UMC's improper attempt to strike it.

### C.     Micron Has Sufficiently Alleged a Concrete Financial Loss Supporting Its RICO Claim.

Finally, Micron's SAC sufficiently alleges a concrete financial loss.[4]  Micron's SAC alleges that Micron incurred investigation, computer forensic, and operational costs caused by the actions of both UMC and Jinhua – all of which constitute the type of concrete financial losses recognized by courts. (SAC ¶ 127.)  UMC is not correct that a concrete financial loss in a trade secret case must take the form of either lost opportunity or lost profits.  (*See* Mot. to Dismiss, Dkt. 219, at 12:8-9.)  Investigation and operational costs qualify as a concrete financial loss sufficient to support a RICO claim.  *See Giorgi Glob. Holdings, Inc. v. Smulski*, No. CV 17-4416, 2019 WL

---

[4] UMC does not challenge the sufficiency of Micron's allegations regarding the other elements of its RICO claim.

NAI-1507789364v7                                           8                    MICRON'S OPP'N TO UMC'S MOTION TO DISMISS 2ND AMENDED COMPLAINT Case No. 3:17-CV-06932-MMC

1294849, at *4 (E.D. Pa. Mar. 21, 2019) (finding allegation that plaintiff company "incurred significant costs … for the internal and computer forensic investigations that eventually uncovered [defendant employee's] fraudulent scheme" sufficient to support RICO claim); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 820-21 (N.D. Cal. 2016), *aff'd*, 890 F.3d 828 (9th Cir. 2018), *amended by*, 897 F.3d 1224 (9th Cir. 2018), and *aff'd*, 735 F. App'x 241 (9th Cir. 2018) (finding that plaintiff sufficiently alleged concrete financial loss supporting RICO claim where it claimed "increased operational costs" to improve security systems).

These costs also are not—as UMC claims—un-recoverable litigation costs.  (Mot. to Dismiss, Dkt. 219, at 12:15-21.)  The forensic investigation was required to ascertain what Micron trade secrets Defendants were continuing to use, to evaluate how to stop the ongoing misappropriation, and to investigate the strength of Micron's security measures to prevent further misappropriations by the Defendants and co-conspirators.  This has nothing to do with "having to hire attorneys" to bring a RICO lawsuit.  *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1204 (C.D. Cal. 2008).

UMC is not correct that the costs Micron incurred arose exclusively from Defendants' pre-DTSA conduct.  These costs are a result not just of the Defendants' initial acquisition of Micron's trade secrets, but also, and more importantly, of Defendants' continuing use and disclosure of these trade secrets after May 11, 2016 in UMC design rules, patent applications, employee recruitment, and equipment purchasing.  For example, Kenny Wang incorporated stolen Micron trade secrets into UMC's design rules in July or August 2016.  (SAC ¶77.)  Also, as late as November 28, 2016, UMC was still actively (and improperly) attempting to recruit Micron employees.  (SAC ¶ 86.)  This is the precise conduct Micron incurred costs to mitigate.  Micron needed to conduct its investigations and forensic analysis so that it could determine what trade secrets Defendants now have in their possession, permitting Micron to evaluate the business impacts of the misappropriation, and so that it could mitigate Defendants' (and other, potentially undiscovered co-conspirators') ability to continue misappropriating Micron's trade secrets.  *See Planned Parenthood*, 214 F. Supp. 3d at 820-21.

9

1    In other words, these concrete financial losses are directly traceable to Defendants'

2  continuing use of Micron's trade secrets after May 11, 2016, and Micron's efforts to engage in

3  reasonable measures to protect its trade secrets.  *Cf. Space Data Corp. v. Alphabet Inc.*, No. 16-

4  CV-03260-BLF, 2017 WL 9840133, at *4 (N.D. Cal. Dec. 18, 2017) ("Indeed, courts have held

5  that continuous use of misappropriated trade secrets that began prior to DTSA's enactment date

6  can give rise to DTSA liability."); *Genentech, Inc. v. JHL Biotech, Inc.*, No. C 18-06582 WHA,

7  2019 WL 1045911, at *9 (N.D. Cal. Mar. 5, 2019) ("The 'DTSA applies to misappropriations that

8  began prior to the DTSA's enactment if the misappropriation continues to occur after the

9  enactment date, so long as the defendant took some relevant act after that date.'") (quoting

10 *Sonoma Pharms., Inc. v. Collidion Inc.*, No. C 17-01459 EDL, 2018 WL 3398940, at *5 (N.D.

11 Cal. June 1, 2018)).  Because Micron has sufficiently alleged a concrete financial loss, UMC's

12 motion to dismiss its RICO claim should be denied.

13    As for Micron's § 1962(d) conspiracy RICO claim,  UMC's only argument for dismissal

14 rises and falls with whether the Court finds a claim for RICO under 18 U.S.C. § 1962(c).  As

15 shown above, Micron has adequately pled RICO under 18 U.S.C. § 1962(c), and therefore, it has

16 also adequately pled § 1962(d).

17 **V.    CONCLUSION**

18    Because Micron has sufficiently alleged the trade secrets UMC stole, the propriety of its

19 patent assignment remedy based on its DTSA claim, and the concrete financial loss it suffered as a

20 result of UMC's misappropriation, Defendant UMC's Motion to Dismiss Second Amended

21 Complaint should be denied.

22   Dated:  June 21, 2019                    JONES DAY

23

24                                      By:  *s/ Randall E. Kay*
                                            Randall E. Kay

25                                      Attorneys for Plaintiff
                                        MICRON TECHNOLOGY, INC.
26

27

28

NAI-1507789364v7