Daniel Johnson Jr. (Bar No. 57409)
Mario Moore (Bar No. 231644)
Robert G. Litts (Bar No. 205984)
DAN JOHNSON LAW GROUP, LLP
400 Oyster Point Blvd., Suite 321
South San Francisco, CA 94080
Telephone: (415) 604-4500
dan@danjohnsonlawgroup.com
mario@danjohnsonlawgroup.com
robert@danjohnsonlawgroup.com

Attorneys for Defendant
UNITED MICROELECTRONICS CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICRON TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED MICROELECTRONICS CORPORATION, FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD., and DOES 1-10, <br><br> Defendants. | Case No. 3:17-CV-06932-MMC <br><br> **DEFENDANT UNITED MICROELECTRONICS CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS** <br><br> Judge: Hon. Maxine M. Chesney <br> Courtroom: 7 – 19th Floor <br> Hearing date: August 2, 2019 <br> Hearing time: 9:00 AM <br><br> SAC Filed: May 24, 2019 |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION.................................................................................................. - 1 -

II.     ARGUMENT ........................................................................................................ - 2 -

        A.    Micron's SAC Fails to Provide UMC Fair Notice Differentiating the
              Alleged Trade Secrets From Public Knowledge. ................................... - 2 -

              1.    Micron's Generalized Descriptions of Technology Are Too Vague
                    to Differentiate the Alleged Trade Secrets From Public Knowledge..... - 2 -

              2.    Micron's Document References Also Fail to Differentiate the
                    Alleged Trade Secrets From Public Knowledge ................................... - 4 -

        B.    Micron's Requested Patent Relief Is Improperly Pled ....................... - 6 -

        C.    Micron's Unsupported Request for Out-of-Pocket Forensic Investigation
              Costs Fails to Provide a Basis for RICO Damages ........................... - 8 -

III.    CONCLUSION ..................................................................................................... - 10 -

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Alta Devices, Inc. v. LG Elecs., Inc.*,
  343 F. Supp. 3d 868 (N.D. Cal. 2018) ....................................................... 2, 6

5

6

*AutoMed Techs., Inc. v. Eller*,
  160 F. Supp. 2d 915 (N.D. Ill. 2001) ............................................................. 4

7

*Becher v. Contoure Labs.*,
  279 U.S. 388 (1929) ..................................................................................... 7, 8

8

9

*BioD, LLC v. Amnio Tech.*,
  LLC, No. 2:13-CV-1670-HRH, 2014 WL 3864658 (D. Ariz. Aug. 6, 2014)........................... 4

10

*Brixham Sols. Ltd. v. Juniper Networks*, Inc., No. 13-CV-00616-JCS, 2014 WL 250204 (N.D. Cal. Jan. 22, 2014)........................................................................... 7

11

12

*Farhang v. Indian Inst. of Tech., Kharagpur*,
  No. C-08-2658, 2010 WL 2228936 (N.D. Cal. 2010) ................................. 2, 3

13

14

*Giorgi Glob. Holdings, Inc. v. Smulski*,
  No. CV 17-4416, 2019 WL 1294849 (E.D. Pa. Mar. 21, 2019) ................... 8

15

*Hayhurst v. Rosen*,
  No. CV-91-4496, 1992 WL 123178 (E.D.N.Y. May 18, 1992) .................... 7

16

17

*Heat Techs., Inc. v. Papierfabrik Aug. Koehler SE*,
  No. 1:18-CV-1229-LMM, 2019 WL 1915620 (N.D. Ga. Jan. 3, 2019), amended, No. 1:18-CV-01229-LMM, 2019 WL 1923663 (N.D. Ga. Apr. 18, 2019)........................ 7

18

19

*Hill v. Best Med. Int'l, Inc.*,
  No. CIV.A 09-1194, 2010 WL 2546023 (W.D. Pa. June 24, 2010) ............ 4

20

21

*Izenberg v. ETS Servs., LLC*,
  589 F. Supp. 2d 1193 (C.D. Cal. 2008) ........................................................ 9

22

23

*Keyssa, Inc. v. Essential Products Inc.*,
  No. 17-CV-05908-HSG, 2019 WL 176790 (N.D. Cal. Jan. 11, 2019) ........ 6

24

*MedioStream, Inc. v. Microsoft Corp.*,
  869 F. Supp. 2d 1095 (N.D. Cal. 2012) ..................................................... 2, 3

25

26

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  214 F. Supp. 3d 808 (N.D. Cal. 2016) .......................................................... 8

27

28

*Richardson v. Suzuki Motor Co.*,
  868 F.2d 1226 (Fed. Cir. 1989)...................................................................... 7

DEFENDANT UMC'S REPLY
ISO MOTION TO DISMISS SAC                    CASE NO. 3:17-CV-06932-MMC

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,*
   758 F.2d 613 (Fed. Cir.1985) ............................................................................................. 7

*Space Data Corp. v. X*, Case No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16,
   2017) ............................................................................................................................ 2, 5, 6

*Switch Commc'n Group v. Ballard,*
   Case No. 2:11-cv-00285-KJD-GWF, 2012 WL 2342929 (D. Nev. June 19, 2012) ................ 3

*T-Mobile USA, Inc. v. Huawei Device USA, Inc.,*
   115 F. Supp. 3d 1184 (W.D. Wash. 2015) ........................................................................... 6

*Tucson Embedded Sys. Inc. v. Turbine Powered Tech. LLC,*
   No. CV-14-01868-TUC-BGM, 2016 WL 1408347 (D. Ariz. Apr. 11, 2016) ......................... 3

*Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697 (N.D. Cal. Mar. 23,
   2018) ............................................................................................................................ 2, 5, 6

*Walter v. Palisades Collection, LLC,*
   480 F. Supp. 2d 797 (E.D. Pa. 2007) .................................................................................. 9

**Statutes**

35 U.S.C. § 256 ..................................................................................................................... 6, 7

RICO .............................................................................................................................. 1, 2, 8, 9

**Other Authorities**

Rule 9(b) ................................................................................................................................... 9

iii

## I.      **INTRODUCTION**

Micron's Opposition ignores and runs away from the core flaws in its SAC, namely its failure to properly identify its purported trade secrets, plead its request for relief on patent ownership, or provide a basis for damages under RICO.

With respect to Micron's failure to identify its trade secrets, Micron continues to improperly rely on vague allegations about generalized categories of DRAM technology. Like its previous complaint, Micron's SAC does not differentiate what information is claimed as trade secret from the wide swaths of DRAM technology that are publicly known or readily ascertainable by proper means. This runs contrary to the teaching of Northern District of California case law, which makes clear that trade secret allegations must differentiate what is trade secret from what is publicly known. Micron's approach is particularly problematic considering that DRAM is an extremely mature technology field, involving commodity products that have been commercially available for years and are easily reverse-engineered, for which a vast amount of design and process information has long been contained in publicly-available reverse-engineering reports, best known methods, trade journals, textbooks, and published patents and patent applications. And, Micron continues to improperly rely on its identification of ***documents*** and ***files*** — or, at most, ***pages*** therein — that allegedly contain Micron trade secrets, rather than identifying actual ***information*** that Micron believes is entitled to trade secret protection. Because Micron's SAC again fails to identify any such information, UMC still lacks notice of what is actually claimed as trade secret.

Regarding Micron's request for the unprecedented remedy of taking ownership of dozens of patents, the SAC does not come close to pleading a basis for such drastic relief. Micron's request is also unsupported by any law in the Ninth Circuit or this district. The smattering of old and obscure cases cited by Micron all concern a detailed factual record relating to a single patent, not the dozens of patents that are the subject of Micron's requested relief.

Finally, as for Micron's RICO claims, the Opposition fails to address the SAC's lack of support for its request for damages associated with Micron's forensic investigation, and none of Micron's cited cases support litigation-based forensic investigation as a basis for relief in the

- 1 -

1  context of a trade secret matter. As a result, Micron's SAC lacks any allegation of harm to support

2  damages for its RICO claims.

3  **II.**    **ARGUMENT**

4      **A.**    **Micron's SAC Fails to Provide UMC Fair Notice Differentiating the Alleged Trade Secrets From Public Knowledge.**

5

6         1.    <u>Micron's Generalized Descriptions of Technology Are Too Vague to Differentiate the Alleged Trade Secrets From Public Knowledge</u>

7        Micron has amended the complaint twice, but it has still failed to provide UMC with fair

8  notice of what protectable material is the subject of Micron's operative complaint. Rather, Micron

9  has merely identified general structures and regions that have been present in virtually all DRAM

10  devices manufactured over the last twenty-five years, and listed document and file names without

11  specifying what — if any — of the information contained therein is entitled to trade secret

12  protection. And Micron's failure is not for lack of either time or opportunity to investigate —

13  Micron filed its Second Amended Complaint after a year and a half of litigation that included

14  extensive jurisdictional discovery and followed a joint investigation with Taiwanese authorities.

15        Under the operative case law, including one case cited by Micron, "the plaintiff must

16  'describe the subject matter of the trade secret with sufficient particularity to separate it from

17  matters of general knowledge in the trade or of special persons who are skilled in the trade, and to

18  permit the defendant to ascertain at least the boundaries within which the secret lies." *Alta Devices,*

19  *Inc. v. LG Elecs., Inc*., 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018), quoting *Vendavo, Inc. v. Price*

20  *f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citations

21  omitted); *Space Data Corp. v. X*, Case No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal.

22  Feb. 16, 2017) (same); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1112–13 (N.D.

23  Cal. 2012) (same); *Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-2658, 2010 WL

24  2228936, at *13 (N.D. Cal. 2010) (same). The plaintiff cannot merely "set out its purported trade

25  secrets in broad, categorical terms, more descriptive of the types of information that generally may

26  qualify as protectable trade secrets" without "any kind of listing of particular trade secrets [that

27  Plaintiff] has a basis to believe actually were misappropriated here." *Vendavo, Inc.*, 2018 WL

28  1456697, at *4 (dismissing complaint for lack of specificity); *see also Space Data Corp.*, 2017 WL

- 2 -

5013363, at \*2 (dismissing complaint where claim failed to specify the trade secrets or distinguish them from materials available in published patents and patent applications); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1112–13 (N.D. Cal. 2012) (dismissing trade secret claim against Apple due to insufficient particularity in the pleading); *Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-02658 RMW, 2010 WL 2228936, at \*14 (N.D. Cal. June 1, 2010) (dismissing claim relating to "business models and implementations" because "this vague description does not describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade. . . .") (internal citations omitted).

Micron's Opposition utterly fails to address the SAC's inability to identify any ***information*** that Micron believes to be entitled to trade secret protection. First, Micron's repeated references to unspecified parameters for the "Cell," "Array," and "Periphery" are disingenuous, since those three terms merely refer to three regions that, in total, make up every DRAM integrated circuit. Micron's reliance on these unspecified parameters is akin to arguing misappropriation of parameters for the "engine," "transmission," and "suspension" of an automobile. Similarly, the categories of "trade secret process[es]" listed on pages 5-6 of the Opposition as allegedly being disclosed in UMC/Jinhua patents and patent applications include structures included in virtually every DRAM product sold, such as "shallow trench isolation," "storage nodes," "connections to storage nodes," "storage node contact plugs," "active regions," "bitlines," "array and peripheral structures," "storage node cell contacts," and "capacitor structure[s]." Since this list comprises most of the key components contained in all DRAM devices, merely enumerating them in the SAC, without more, is meaningless for the purpose of identifying what within each process is a protectable trade secret. ECF No. 172-36 at pp. 15-17, 30-32, 37-40, 41-43, 45-47, 49-51.

Micron's vague identification of generic DRAM regions and structures is insufficient to put the defendant on proper notice of what the alleged trade secrets are. "Plaintiffs cannot claim that a method or process is a trade secret without identifying the steps in the process and explaining how those steps make their method or process unique." *Tucson Embedded Sys. Inc. v. Turbine Powered Tech. LLC*, No. CV-14-01868-TUC-BGM, 2016 WL 1408347, at \*8 (D. Ariz. Apr. 11, 2016); see also *Switch Commc'n Group v. Ballard*, Case No. 2:11-cv-00285-KJD-GWF, 2012 WL 2342929,

- 3 -

at *5 (D. Nev. June 19, 2012) ("In order to meet its burden of describing its alleged trade secrets with reasonable particularity . . . Switch must specifically describe what particular combination of components renders each of its designs novel or unique, how the components are combined, and how they operate in unique combination"). "It is simply not sufficient for plaintiffs to identify a trade secret as a 'method' without some explanation of why that 'method' could be considered a legally protectable trade secret." *BioD, LLC v. Amnio Tech.*, LLC, No. 2:13-CV-1670-HRH, 2014 WL 3864658, at *6 (D. Ariz. Aug. 6, 2014). The Plaintiff must identify specific information relating to its DRAM technology that it believes derived independent economic value from not being generally known and therefore is entitled to trade secret protection, rather than merely assert protection for unidentified "processes" for forming DRAM regions and structures contained in every DRAM device. Micron has not done so here.

### 2. Micron's Document References Also Fail to Differentiate the Alleged Trade Secrets From Public Knowledge

Micron's SAC is also fundamentally flawed in that it continues to merely identify documents and files (or, at most, pages within those documents and files), rather than specify which information within those documents and files that it believes is entitled to trade secret protection. In essence, Micron's SAC improperly assumes that all Micron documents and files must contain trade secrets. An allegedly misappropriated document or even a page number, however, is not a trade secret; only specific information within a document or a page are trade secret. *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) ("Plaintiff must articulate what specific information they believe defendants have misappropriated…."). For that reason, courts have found in other contexts that general references to files are insufficient to provide notice of what is claimed as trade secret. *Id.* (rejecting, as insufficiently vague, references to source code, designs, and research code names); *Hill v. Best Med. Int'l, Inc*., No. CIV.A 09-1194, 2010 WL 2546023, at *4 (W.D. Pa. June 24, 2010) ("General allegations of drawings, patterns, software programs, methods, techniques, processes, source code, libraries, data files and 'tens of thousands of files'" insufficient to identify trade secret with reasonable particularity). Micron's recitation of

- 4 -

document titles and particular page numbers does nothing to tell UMC what in the document or what on each page number is claimed as trade secret.

Where a complaint fails to differentiate the non-protectable information, such as what one could find in industry patents, from the alleged trade secrets, dismissal is appropriate. *Vendavo, Inc.*, 2018 WL 1456697, at *4 (dismissing complaint for lack of specificity, including failure to distinguish protectable and unprotectable elements); *Space Data Corp.*, 2017 WL 5013363, at *2 (dismissing complaint where claim failed to specify the trade secret or distinguish them from materials available in published patents and patent applications).

Here, Micron's document title and page citations fail to identify what technology discussed on those pages it believes is entitled to trade secret protection, as opposed to being publicly known or readily ascertainable from publicly-available information. This failure is particularly glaring given that Micron was on notice of the issue from the declaration of UMC's expert John Berg submitted in support of its motion to dismiss the First Amended Complaint, which explains in exhaustive detail that Micron's internal documents are, like any other DRAM manufacturer, rife with references to publicly-known information and information readily ascertainable from public materials. ECF No. 172-36 at 11-21, 38-40, 44-45. The declaration shows in great detail how all of the core aspects of Micron's DRAM technology are, in actuality, ascertainable through the reverse engineering of DRAM chips that Micron itself put on the market years ago, and are also disclosed in trade journals, issued patents, and published patent applications from competitors and industry leaders, such as IBM, NEC, Samsung, and Hynix. ECF No. 172-36 at 11-21, 38-40, 44-45. Following that motion, Micron was given leave to amend its complaint, but nonetheless failed to fix the notice problem identified in the Berg declaration three months ago.

Micron's failure to identify its purported trade secrets is also entirely unjustified in view of its contention that its purported "trade secrets" were disclosed by UMC and Jinhua in their patent filings. This allegation amounts to an admission that Micron would suffer no harm by identifying these purported trade secrets in its pleadings, as that information is now, according to Micron, known to the public. The admittedly public status of Micron's trade secrets also makes this case distinguishable from the district cases cited in Micron's Opposition, where the courts were

- 5 -

concerned that a more detailed disclosure in the complaint would have the potential to disclose otherwise secret information into the public record. *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 882 (N.D. Cal. 2018) ("plaintiffs cannot be expected to disclose publicly in the complaint the very secrets they are seeking to protect."); *Keyssa, Inc. v. Essential Products Inc.*, No. 17-CV-05908-HSG, 2019 WL 176790, at \*2 (N.D. Cal. Jan. 11, 2019) ("Requiring Plaintiff to go into more detail risks compelling public disclosure of the same trade secrets Plaintiff seeks protect."); *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1192 (W.D. Wash. 2015) ("a plaintiff should not be compelled to divulge with specificity all of its possible trade secrets."). There is no similar concern here.

Micron's Opposition also misses the point with respect to UMC's references to the maturity of DRAM technology. UMC is not arguing that the maturity of the technology governs whether the disclosure is sufficient; what matters is that much — if not all — of the technology at issue is in the public record or readily ascertainable by proper means such as reverse engineering, and therefore is not entitled to trade secret protection. In fact, it was Micron itself that gave this information to the public when it began selling DRAM products that incorporate its purported trade secrets, knowing the ease with which DRAM devices are reverse engineered. Micron's allegations fail to identify any information in its documents and files that is not also found in the public record, or readily ascertainable from public information and therefore entitled to trade secret protection.

Micron has now had three attempts to identify its trade secrets in its complaint. Instead of doing so with reasonable particularity, Micron has continued to rely upon vague references to documents and files, or to regions and structures present in all DRAM devices. Micron's identification of unspecified "trade secrets" in its complaint is therefore meaningless and fails to provide appropriate notice to satisfy the pleading requirement. *Vendavo, Inc.*, 2018 WL 1456697, at \*4; *see also Space Data Corp.*, 2017 WL 5013363, at \*2. Dismissal here is appropriate.

**B.    Micron's Requested Patent Relief Is Improperly Pled**

The vast and broad scope of Micron's requested patent ownership relief overreaches in seeking a remedy untethered to the case law.

- 6 -

Micron does not dispute that it has made no attempt to allege facts to support a cause of action for correction of inventorship under 35 U.S.C. § 256. "Once a patent has issued, if a person who was not an inventor was improperly joined ("misjoinder") or if an actual inventor was never joined ("nonjoinder"), the [Patent] Commissioner or a district court may correct the error pursuant to 35 U.S.C. § 256." *Heat Techs., Inc. v. Papierfabrik Aug. Koehler SE*, No. 1:18-CV-1229-LMM, 2019 WL 1915620, at *2 (N.D. Ga. Jan. 3, 2019), amended, No. 1:18-CV-01229-LMM, 2019 WL 1923663 (N.D. Ga. Apr. 18, 2019), citing *Stark v. Advanced Magnetics, Inc*., 119 F.3d 1551, 1552-53 (Fed. Cir. 1997). Micron's Opposition offers no explanation for why it is not seeking correction of inventorship under § 256, or why it is not seeking any relief before the U.S. Patent and Trademark Office. The omission is telling because it suggests that Micron lacks the basis to seek such relief. By not even attempting to address UMC's cited cases, Micron effectively concedes that it cannot make out a claim under 35 U.S.C. § 256. *See Brixham Sols. Ltd. v. Juniper Networks*, Inc., No. 13-CV-00616-JCS, 2014 WL 250204, at *7 (N.D. Cal. Jan. 22, 2014) (citing *Ethicon, Inc. v. U.S. Surgical Corp.,* 135 F.3d 1456, 1460 (Fed.Cir.1998) and *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,* 758 F.2d 613, 624 (Fed. Cir.1985).

Instead of relying upon the vast body of law governing proper correction of inventorship, Micron shoehorns its requested relief into the holding of a few obscure cases from other circuits. Micron does not cite any Ninth Circuit, Northern District, California, or Idaho authority to support its requested relief. Instead, Micron relies on a 90-year-old Supreme Court case involving an attempt to enjoin in federal court the ruling of a New York state court with respect to ownership of a single patent. *Becher v. Contoure Labs*., 279 U.S. 388 (1929). Even there, Micron mischaracterizes the procedural history. The case did not actually decide the equitable remedy at issue in the New York state court proceeding; it merely allowed dismissal of a parallel federal action that sought to enjoin the state court remedy. *Id*. at 392.

The out-of-circuit equitable remedies cases cited by Micron concern narrow, carefully-supported allegations regarding a single patent on a carefully-defined set of technology. In each of those cases, assignment was discussed as a remedy to be available only after a full trial involving careful exploration of whether the patent encompassed the plaintiffs' trade secrets. *Richardson v.*

*Suzuki Motor Co.*, 868 F.2d 1226, 1249 (Fed. Cir. 1989) (concerning a single patent after a full jury trial); *Hayhurst v. Rosen*, No. CV-91-4496, 1992 WL 123178, at *4 (E.D.N.Y. May 18, 1992) (in opinion denying summary judgment, dicta stating that assignment may be available after trial as an equitable remedy if inventorship is proven as to a single patent); *Becher v. Contoure Labs.*, 279 U.S. 388, 391 (1929).

In contrast to those cases, Micron is seeking assignment of an entire portfolio of DRAM patents based on a four-paragraph allegation in the complaint. SAC, ¶¶ 92-95. Micron's SAC identifies a few patent numbers, but without page, line, or claims citations. *Id*. In so doing, Micron makes no attempt to provide sufficient detail to show that it is entitled to relief on all of those patents. As to those patents, no details are provided on how each named inventor allegedly used Micron information to apply for the patent. In fact, the vast majority of the named listed inventors on each of those patents are not even named in the complaint.

Worse yet, Micron provides no allegations forming the basis for its claims that it is entitled to equitable relief on the numerous patent application and patents for which it does not even bother to list the patent number or patent application number. Having not even identified the patents, let alone specific claims, Micron cannot seek ownership of an unspecified set of patents without particularizing which patents, claims, and inventors are the subject of the requested remedy.

## C.   Micron's Unsupported Request for Out-of-Pocket Forensic Investigation Costs Fails to Provide a Basis for RICO Damages

In a creative attempt to stretch the case law beyond all bounds, Micron seeks damages for the costs of forensic investigation and revamping of its security procedures. In any trade secret case, a forensic investigation is necessary to determine what has supposedly been taken, and what has not. Yet despite the pervasive nature of forensic investigation in trade secret cases, Micron is unable to point to any trade secret case where such out-of-pocket investigational costs were a basis for damages under RICO, DTSA, or any other statute.

Moreover, Micron's cited RICO cases are off point; they involved after-the-fact revamping of security procedures in instances of fraud and secret surveillance. *See Giorgi Glob. Holdings, Inc. v. Smulski*, No. CV 17-4416, 2019 WL 1294849, at *4 (E.D. Pa. Mar. 21, 2019) (fraudulent

- 8 -

financial scheme); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 820-21 (N.D. Cal. 2016) (scheme to secretly record political meetings). Here, there is no allegation of fraud or secret surveillance, and certainly no pleading of such facts pursuant to Rule 9(b); instead Micron contends that Rule 9(b) does not apply to this case.

Like in UMC's cited cases, Micron's reasons for hiring investigators firmly fall within the realm of the expenses involved in pursuing the RICO suit, which are not a category of recoverable damages. *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1204 (C.D. Cal. 2008). Micron used its existing internal investigation team to investigate its potential claims relating to Kenny Wang's conduct, and then relied upon that investigation for purposes of arguing that this Court has jurisdiction. ECF No. 43-1 (March 1, 2018 Heller Declaration in support of Micron Opposition to Motion to Stay) at ¶¶ 2-4. Micron does not allege that any out-of-pocket expenses resulted from its internal investigator's time, and none would be expected given that the investigator was acting in accordance with his pre-existing job duties. *Id*. Later, while this suit was pending and jurisdiction issues were being briefed, Micron's litigation counsel Jones Day, not Micron, hired an outside forensic investigation firm, Berkeley Research Group, for the purposes of supporting its jurisdiction arguments in this lawsuit. ECF No. 75-95 (Bandemer Declaration) at 2; ECF No. 82-13 (Bandemer Depo. Tr.) at 6:9-23, 7:23-25, 47:16-25. Those litigation vendor expenses clearly related to the arguments to be made in the litigation, not enhancements to Micron's security. As the case law notes, allowing a plaintiff to rely on litigation expenses would read the damages requirement out of the statute because any RICO plaintiff could qualify without alleging any other form of damages. *Id*.; *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 805 (E.D. Pa. 2007) ("any actions taken by Mr. Walter or his counsel to initiate or litigate the case …cannot form the basis for RICO liability. It would be illogical to allow a plaintiff to have RICO standing based on damages incurred by the plaintiff in paying his attorney to file the RICO action. RICO's injury requirement would be a nullity if paying an attorney to initiate the RICO action itself sufficed as a damage.").

In the absence of any case support for litigation-related forensic investigation as a basis for damages, Micron's claim for damages for its RICO claims lacks any basis, and the claims should therefore be dismissed.

- 9 -

1    **III.    <u>CONCLUSION</u>**

2          For the foregoing reasons, Micron's SAC should be dismissed.

3

4

5    DATED: June 28, 2019

6                                                      DAN JOHNSON LAW GROUP

7                                                      By: */s/ Daniel Johnson Jr.*
                                                        Daniel Johnson, Jr.
8
                                                      *Attorneys for Defendant*
9                                                      UNITED MICROELECTRONICS
                                                      CORPORATION
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 10 -