Daniel Johnson Jr. (Bar No. 57409)
Mario Moore (Bar No. 231644)
DAN JOHNSON LAW GROUP, LLP
400 Oyster Point Blvd., Suite 321
South San Francisco, CA 94080
Telephone: (415) 604-4500
dan@danjohnsonlawgroup.com
mario@danjohnsonlawgroup.com

Lyle B. Vander Schaaf (DC Bar No. 422380)
Evi T. Christou (DC Bar No. 1600066)
Fei Hu (DC Bar No. 1016150)
BRINKS GILSON & LIONE
1775 Pennsylvania Ave, NW, Suite 900
Washington, DC 20006
Telephone: (202) 296-8700
lvanderschaaf@brinksgilson.com
echristou@brinksgilson.com
fhu@brinksgilson.com
Appearance *pro hac vice*

Harold V. Johnson (IL Bar No. 6188149)
Judy K. He (IL Bar No. 6327020)
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Drive, Suite 3600
Chicago, IL 60611
Telephone: (312) 321-4200
hjohnson@brinksgilson.com
jhe@brinksgilson.com
Appearance *pro hac vice*

*Attorneys for Defendant*
Fujian Jinhua Integrated Circuit Co., Ltd.

**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

MICRON TECHNOLOGY, INC.,

Plaintiff,

v.

UNITED MICROELECTRONICS CORPORATION, FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD., and DOES 1-10,

Defendants.

Case No. 3:17-cv-6932-MMC

**DEFENDANT FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Judge: Honorable Maxine M. Chesney
Courtroom: 7, 19th Floor
(Proposed) Hearing Date: August 2, 2019
(Proposed) Hearing Time: 9:00 am PCT

# TABLE OF CONTENTS


I. SUMMARY ..... 1

II. ARGUMENT ..... 2

A. Micron's Trade Secret Misappropriation Claims Against Jinhua in its FAC and SAC are Nearly the Same ..... 2

1. Micron Cannot Continue to Base Its DTSA Claim on the Ho and Wang Acquisitions ..... 2

2. Micron's SAC Does Not Sufficiently Allege Jinhua's Liability ..... 4

3. Micron's SAC Fails to State Sufficient Facts of Any Acts of Misappropriation by Jinhua Occurring in California ..... 6

4. Micron's SAC Fails to State a Claim Against Jinhua Under ITSA ..... 12

B. Micron's § 1962 Civil RICO Claims Against Jinhua in its FAC and SAC are Nearly the Same ..... 13

1. Micron Cannot Continue to Base Its Alleged Predicate Acts on the Ho and Wang Acquisitions ..... 14

2. Micron's SAC Does Not Allege Any Concrete Financial Loss Arising from Any Acts Occurring After May 11, 2016 ..... 14

3. Micron's § 1962(d) RICO Conspiracy Claim in its SAC is Exactly the Same as its FAC ..... 15

III. CONCLUSION ..... 15

**TABLE OF AUTHORITIES**

**Cases**

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*,
260 F. Supp. 2d 941 (N.D. Cal. 2003) .......... 9

*Alta Devices, Inc. v. LG Elecs., Inc.*,
343 F. Supp. 3d 868 (N.D. Cal. Oct. 17, 2018) .......... 11

*Arista Records LLC v. Doe*,
604 F.3d 110 (2d Cir. 2010) .......... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 6

*Bourns, Inc. v. Raychem Corp.*,
331 F.3d 704 (9th Cir. 2003) .......... 5

*EnerTrode, Inc. v. Gen. Capacitor Co.*,
2019 WL 1715170 (N.D. Cal. Apr. 17, 2019) .......... 11

*Eng v. Hargrave*,
2012 U.S. Dist. LEXIS 4649 (N.D. Cal. Jan. 13, 2012) .......... 2

*Genentech, Inc. v. JHL Biotech, Inc.*,
D.E. 132, Civ. No. 18-06582 (N.D. Cal. March 5, 2019) .......... 3, 13

*Giorgi Glob. Holdings Inc. v. Smulski*,
2019 U.S. Dist. LEXIS 47069 (E.D. Pa. Mar. 21, 2019) .......... 14

*In re Century Aluminum Co. Secs. Litig.*,
729 F.3d 1104 (9th Cir. 2013) .......... 4

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......... 11

*Intermedics, Inc. v. Ventritex, Co.*,
775 F. Supp. 1258 (N.D. Cal. 1991) .......... 13

*Menzel v. Scholastic, Inc.*
2018 U.S. Dist. LEXIS 44833 (N.D. Cal. Mar. 19, 2019) .......... 10

*Metzler v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008) .......... 2

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.*, 2007 U.S. Dist. LEXIS 59946 (N.D. Cal. Aug. 9, 2007) .......... 9

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 214 F. Supp. 3d 808 (N.D. Cal. Sept. 30, 2016) .......... 15

*Sonoma Pharms., Inc. v. Coalition Inc.*, 2018 U.S. Dist. LEXIS 199088 (N.D. Cal. June 1, 2018) .......... 3, 5

*Veronica Foods Co. v. Ecklin*, 2017 U.S. Dist. LEXIS 101325 (N.D. Cal. June 29, 2017) .......... 6, 10

*Yamauchi v. Cotterman*, 84 F. Supp. 3d 993 (N.D. Cal. 2015) .......... 7

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) .......... 2

**Other Authorities**

Mark Klapow et al., *How Courts Approach Trade Secret Identification: Part 1*, LAW360 (July 10, 2018) .......... 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. SUMMARY

On May 2, 2019, the Court dismissed Counts II to IV of Micron Technology, Inc.'s First Amended Complaint ("FAC") against Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua") and Count I "to the extent [it] is based on the allegedly wrongful acquisitions by Ho and Wang," and afforded Micron leave to amend sufficient facts to support each of its claims. (D.E. 199, "May 2 Order" or "Order"). On May 24, 2019, Micron filed a Second Amended Complaint ("SAC") against Jinhua that is no more than a mere "rehash" of the same legal conclusions that were previously dismissed.[1] Micron's failure to provide more in its SAC shows that Micron simply has no additional facts to plead. As such, the same counts that were dismissed from Micron's FAC, *i.e.*, RICO, CUTSA, and DTSA to the extent they were based on the Ho and Wang acquisitions, are subject to dismissal for at least the same reasons as identified in the Court's May 2 Order.

Micron's newly asserted claim under the Idaho Trade Secrets Act ("ITSA") is also subject to dismissal because this claim relies entirely on a conspiracy allegation that Micron has yet to establish for the reasons described in Jinhua's Motion to Dismiss the SAC (D.E. 220-3, hereinafter "Mot."). While Micron claims in its Opposition to Jinhua's Motion (D.E. 235-3, hereinafter "Opp.") that it "has alleged all of the elements of a conspiracy" (Opp. at 4), it never sets forth the elements of this conspiracy, let alone explain how its SAC satisfies those elements. Moreover, Micron's claim that "it has alleged all of the elements of a conspiracy" directly contradicts the Court's May 2 Order finding that Micron cannot base its DTSA claim against Jinhua "on the allegedly wrongful acquisitions by Ho and Wang," *i.e.*, Jinhua's alleged co-conspirators, thereby drawing a distinct line between Jinhua's alleged conduct and the alleged Ho and Wang acquisitions. (Order at 19). For at least these reasons, Micron's ITSA claim also merits dismissal.

[1] A comparison of the substantive changes between Micron's FAC and SAC is attached to Jinhua's Reply to Micron's Opposition as Exhibit 1, which demonstrates that Micron's revisions to its SAC are minimal, conclusory, and subject to dismissal for the same reasons as stated before. The highlighting in the Exhibit reflects what Micron designated as confidential in their FAC and SAC.

## II. ARGUMENT

### A. Micron's Trade Secret Misappropriation Claims Against Jinhua in its FAC and SAC are Nearly the Same

When dealing with amended pleadings, reasserted claims that (i) lack "any amendments"; (ii) "are a rehash of legal conclusions"; or (iii) "still fall far short of presenting any relevant facts" are subject to dismissal. *See Eng v. Hargrave*, 2012 U.S. Dist. LEXIS 4649, at *9 (N.D. Cal. Jan. 13, 2012). Micron's SAC suffers from all these deficiencies, and Micron's failure to cure the deficiencies in its FAC is "a strong indication that [it] ha[s] no additional facts to plead." *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (affirming dismissal with prejudice where plaintiff could "point[] to no additional facts that it might allege to cure these deficiencies, which persisted in every prior iteration of the" complaint). As set forth below, the trade secret misappropriation claims against Jinhua in Micron's SAC are nearly the same as those in its FAC. (*See* Mot. at 8- 9).

As a result, Micron's reasserted trade secret misappropriation claims under CUTSA and the DTSA, to the extent the DTSA is based on the Ho and Wang acquisitions, should be dismissed.

#### 1. Micron Cannot Continue to Base Its DTSA Claim on the Ho and Wang Acquisitions

Micron fundamentally mischaracterizes Jinhua's Motion with respect to Micron's DTSA claim. As Jinhua explained before, the Court dismissed Count I of Micron's FAC "to the extent [it] is based on the allegedly wrongful acquisitions by Ho and Wang," *i.e.*, Jinhua's alleged "co-conspirators," thereby drawing a distinct line between the conduct of Ho and Wang and Jinhua. (Order at 19). The Order further provided that Micron "may base [Count I] on any acts of misappropriation occurring on or after May 11, 2016, such as Jinhua's alleged disclosure of Micron's trade secrets in patent applications and its alleged use of secrets in its manufacturing activities in China." (*Id.*).

Despite the Court's May 2 Order, Micron's Opposition makes clear that "Micron's allegations regarding these issues have not changed between its FAC and SAC," thereby confirming that Micron has ignored the Court's partial dismissal of Count I and did not even attempt to cure the deficiencies that resulted in that partial dismissal. (Opp. at 5). The alleged Ho and Wang acquisitions occurred before May 11, 2016, and Micron cannot now assert that Jinhua is liable under the DTSA because its alleged co-conspirators, *i.e.*, Ho and Wang, "acquired Micron's trade secrets before enactment of the DTSA, for which Jinhua continues to use and disclose." (*Id.* at 12).

Micron's reliance on *Genentech, Inc.* and *Sonoma Pharms., Inc.* is misplaced. (*Id.* at 12). In both of those cases, the court found that the "DTSA applies to misappropriations that began prior to the DTSA's enactment if the misappropriation continues to occur after the enactment date, so long as the defendant took some relevant act after that date." *Genentech, Inc. v. JHL Biotech, Inc.*, D.E. 132, Civ. No. 18-06582 (N.D. Cal. March 5, 2019) (quoting *Sonoma Pharms., Inc. v. Coalition Inc.*, 2018 U.S. Dist. LEXIS 199088, at *14 (N.D. Cal. June 1, 2018). Here, the Court already found that Micron "may not base its [DTSA] claim on [the] alleged acts of acquisition" by Ho and Wang given that those acts "occurred prior to May 11, 2016." (Order at 19). As such, to the extent Micron continues to assert that the Ho and Wang acquisitions remain relevant and could give rise to DTSA liability for Jinhua, Micron is improperly ignoring the Court's May 2 Order.

Indeed, it is even more telling that Count I of Micron's SAC is practically identical to Count I of Micron's FAC,[2] and "repeats, realleges and reincorporates herein by reference the allegations of paragraphs 1 through 100, inclusive, above," including "the allegedly wrongful acquisitions by Ho and Wang" that occurred before May 11, 2016. Micron has provided no reason why it should be allowed to circumvent the Court's May 2 Order with respect to the partial dismissal of its DTSA claim. At this time, Jinhua respectfully requests that the Court enforce its May 2 Order against Micron and dismiss Count I of Micron's SAC, to the extent it is still based on the Ho and Wang acquisitions, with prejudice, or in the alternative, strike those allegations under FRCP 12(f).

---

[2] Micron's only addition is ¶ 99, which, as explained in Section II.A.3, *infra*, consists solely of legal conclusions that are subject to dismissal.

**2. Micron's SAC Does Not Sufficiently Allege Jinhua's Liability**

As stated in Jinhua's Motion, Micron's allegations that Jinhua knew or had reason to know that the alleged trade secrets were acquired by improper means are merely conclusory, based on speculation, and have been sufficiently rebutted by Jinhua. (Mot. at 2, 3, 6, 11). Again, Jinhua submits that it was an innocent purchaser of legitimately-developed DRAM technology from UMC under the Cooperation Agreement with UMC and lacked knowledge of the alleged theft of Micron's alleged trade secrets. (*Id.*). These facts directly contradict Micron's allegations that Jinhua knew or had reason to know UMC would acquire Micron's DRAM technology by improper means. Moreover, they also constitute the type of plausible alternative explanation that renders Micron's explanation implausible.

Micron attempts to distinguish *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) by claiming that this Court has already found Micron's allegations sufficient and that Jinhua failed to provide evidence supporting its alternative theory, but that was before Jinhua advanced additional arguments and evidence in its opening brief. Moreover, Micron itself mischaracterizes *In re Century Aluminum* because the Ninth Circuit nevertheless made clear that a plaintiff "must do more than allege facts that are merely consistent with their favored explanation." *In re Century Aluminum*, at 1108 (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Micron has not offered any arguments as to why its explanation is plausible, rather than possible. As a result, Micron's factually-devoid conclusions are not enough where, as explained in Jinhua's moving papers and here, that Jinhua lacked knowledge of the alleged theft of Micron's alleged trade secrets.

Micron's argument that the "UMC/Jinhua" patents were filed after Micron filed this lawsuit alleging trade secret misappropriation by Jinhua is extremely misleading and involves creative counting of dates and timeframes relevant to this case. For example, this case was filed on December 5, 2017, but Micron's allegations that the UMC/Jinhua patents were based on Micron's trade secrets were completely absent from the original complaint at that time. *See* D.E. 1; *see also* D.E. 139, Order at 4 ("Micron has not based any of its claims on those activities, and consequently, any such contacts cannot support a finding of specific jurisdiction here"). Such facts were only vaguely brought to Jinhua's attention when Micron opposed Jinhua's motion to dismiss the original complaint (D.E. 118) in October 2018 and then formally alleged in Micron's FAC (D.E. 140-3) on February 8, 2019. Of

the eleven patents alleged in the SAC, the last patent filing date is January 2, 2018 – ***months to nearly a year*** before Micron alleged that the UMC/Jinhua patent filings were allegedly "based on" or "incorporated" Micron's alleged trade secrets. *See* SAC, ¶ 95.k.

Additionally, Micron's argument that Jinhua was "put on notice that UMC had misappropriated Micron documents" does not comport with Micron's allegations that Jinhua entered a conspiracy with its co-defendant UMC and UMC employees to misappropriate Micron's trade secrets" (Opp. at 2 (citing SAC, ¶¶13-20, 67-72)). This is a classic case of a plaintiff wanting its cake and eating it too by arguing on one hand, that Jinhua allegedly conspired from the very beginning to misappropriate Micron's trade secrets while on the other hand, also arguing that Jinhua allegedly had notice that UMC allegedly misappropriated Micron documents when this case was filed. (Opp. at 6).

Finally, Micron improperly dismisses Jinhua's argument that Micron cannot demonstrate it has been injured because Jinhua has not successfully marketed any products relying on Micron's alleged trade secrets. (Opp. at 6). Micron relies on *Bourns, Inc. v. Raychem Corp.*, 331 F.3d 704， 709-10 (9th Cir. 2003) to support the notion that Micron has been somehow injured by Jinhua's "avoidance of research and development costs". However, in *Bourns*, a Sherman Act claim was involved, rather than a DTSA claim, and the development costs at issue were certain ($3 million per year) and there was credible evidence in the industry that the defendant saved approximately three years of development because of its misappropriation. *Bourns*, at 709-10. Here, Micron neither alleges any such facts in the SAC nor addresses this in its Opposition. *Sonoma Pharms, Inc.* is similarly distinguishable because summary judgment was at issue, and as noted by Micron, the plaintiff forwarded evidence that the documents in the defendants' possession reflected years of research and development that cost the plaintiff "tens of millions of dollars." 2018 U.S. Dist. LEXIS 199088, at *19. The *Sonoma Pharms* plaintiff submitted evidence in the form of an affidavit and deposition testimony from its CEO and General Counsel. *Id.* However, in this case, Micron pled only that Jinhua allegedly avoided costs rather than plead any facts, for example, regarding how much time and resources were incurred by Micron.

### 3. Micron's SAC Fails to State Sufficient Facts of Any Acts of Misappropriation by Jinhua Occurring in California

The only change to Micron's CUTSA claim is ¶ 139, which states:

> Micron sues under [CUTSA] based on the misappropriation of its trade secrets in California through ***Co-Conspirators' improper disclosure*** of Micron trade secrets to patent agents in California, the ***use by those agents of Co-Conspirators*** in preparing the UMC/Jinhua Patent Filings based on Micron's trade secrets, ***Co-Conspirators'*** use of Micron's trade secrets in preparing a presentation and providing assurances to recruits at the CASPA job fair in California, ***Co-Conspirators'*** disclosure of Micron's trade secrets to Applied Materials located in Santa Clara, California, and the use of those trade secrets by ***Co-Conspirators***, all as alleged in above paragraphs 4, 24, 27, 42, 45, 46, 83, 84, and 95 through 99.

(SAC ¶ 139 (emphasis added).) As Jinhua explained in its Motion, "Jinhua" does not appear anywhere in Paragraph 139, and Micron's continued use of unidentified "Co-Conspirators" is no more than "an everything-but-the-kitchen-sink assertion that ***Defendants*** 'have made [an] improper and unauthorized use," which is improper. *Veronica Foods Co. v. Ecklin*, 2017 U.S. Dist. LEXIS 101325, at *45 (N.D. Cal. June 29, 2017). Moreover, while Micron claims that Paragraph 139 is "a roadmap to newly added information in [¶¶] 4, 24, 27, 42, 45, 46, 83, 84, and 95 through 99," it ignores that ¶¶ 46 and 97 are taken verbatim from its FAC, and cannot overcome the reality that its other minor "additions" are not only conclusory but unrelated to Jinhua. *See Iqbal*, 556 U.S. at 678. For example, SAC ¶¶ 4, 24, 27, 83, 84, and 95 are classic examples of conclusory statements:

- SAC ¶ 4 (adding "**in California**" to the last sentence);

- SAC ¶ 24: "In the course of [the California] job fair, representatives of UMC and Jinhua actively recruited potential hires—highly-skilled DRAM engineers— relying on aggressive development roadmaps **shown to attendees** and assurances of technical capabilities ~~**that made to attendees**~~. **These roadmaps and assurances** were in fact secretly based on Micron's stolen technology **and trade secrets. Usage of these roadmaps and assurances constitute use of Micron's trade secrets, by which UMC and Jinhua engaged in acts of misappropriation and acts in furtherance of their misappropriation from Micron in California and in this District**."

- SAC ¶ 27 (adding "**which relied on Micron's trade secrets and constituted acts of misappropriation**" to the last sentence);

- SAC ¶ 83: While in the Silicon Valley area, UMC and Jinhua also spent several days conducting business with three specific leading semiconductor equipment vendors – companies based in Northern California, and in this District. **On information** and **belief, Micron's trade secrets were disclosed by Co-Conspirators to these equipment vendors** from whom ~~**the Defendants**~~ **equipment was** ordered and purchased ~~**equipment**~~ for the

UMC/Jinhua DRAM Project, all in furtherance of exploiting Micron's stolen DRAM technology. Micron learned the identities of these equipment vendors in jurisdictional discovery, but UMC designated their names confidential under the Court protective order.

- SAC ¶ 84: ~~The visits made~~ **Disclosures in California of Micron's trade secrets** by UMC and Jinhua to the semiconductor equipment vendors **in California** described herein and taking place in this District were **acts of misappropriation and** acts in furtherance of their scheme of misappropriation from Micron.
- SAC ¶ 95 (adding minor changes to a list of patents and patent applications);

Nowhere in the above does Micron add any additional facts to support its claims, particularly with respect to Jinhua. Micron attempts to use its Opposition as a vehicle to cure these flaws, however, "[a]rgument[s] in opposition cannot cure a defect in the pleading." *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1009 (N.D. Cal. 2015). That Micron's SAC lacks any facts stating a claim specifically against Jinhua and relies solely on wholly conclusory allegations with respect to the California semiconductor equipment vendors, means that the SAC suffers from the same deficiencies as the FAC and should be dismissed for at least the same reasons. (*See, e.g.*, ¶¶ 42, 45).

- SAC ¶ 42: "UMC/Jinhua placed orders for DRAM manufacturing equipment with these vendors. The vendors performed tool demonstration work for the UMC/Jinhua DRAM Project. UMC used equipment purchased from these vendors on the UMC/Jinhua DRAM Project. Jinhua paid for and provided UMC with this equipment that UMC used, while UMC paid for the operation and maintenance of the equipment. Jinhua has ordered and purchased equipment from those vendors to support the venture. ~~**Jinhua's ordering of equipment from these vendors for the UMC/Jinhua DRAM Project began in**~~ [redacted] **Ordering of equipment from these vendors for the UMC/Jinhua DRAM Project began as early as 2016.** [redacted] **On information and belief those specifications came from or were derived from Micron's Trade Secrets.** [redacted] **Recipe information is closely guarded information, and Micron alleges that "recipes" used by UMC and Jinhua came from or were derived from Micron's trade secrets."**

- SAC ¶ 45: [redacted]

> [redacted] **<u>On information and belief, those specifications came from or were derived from Micron's trade secrets, and more particularly from Micron's process flow for its DRAM technology, which Micron maintains as trade secrets. Specifically, UMC had in its possession several stolen documents containing Micron's process flow trade secrets, including at least "FAB16 90s Traveler-20150518.pdf," "DRAM 100 series (20nm) traveler (v00h) 150730," "dram 110 series (1xnm) traveler (z11a)-20150915.pdf," and "dram 1xnm process (Z11AA41200) - summary flow document.pdf." It is further alleged that UMC shared this information with Jinhua. Disclosure by UMC and Jinhua of these Micron trade secrets to Applied Materials in this District constitutes acts of misappropriation in California.</u>**

Micron's so-called "additions" relating to the patent filings (*e.g.*, ¶¶ 96, 98, and 99) share the same flaws. For example, the changes made to ¶¶ 96, 98, and 99 are as follows:

- SAC ¶ 96: The UMC/Jinhua Patent Filings noted above were filed by United States Registered Patent Agents from (1) JC Patents, located at 4 Venture, Suite 250, Irvine California; and (2) North America Intellectual Property Organization (NAIPO), located in Taiwan. The JC Patents registered U.S. Patent Agents include Jiawei Huang (Reg. #43330, address on file with the United States Patent and Trademark Office as JC Patents, 4 Venture, Suite 250, Irvine, California 92618 US, Primary Telephone (949) 660-0761, date registered as agent 04/28/1998). **<u>JC Patents prosecuted at least two of the UMC/Jinhua Patent Filings containing trade secrets—namely the '901 Patent and the '258 Patent.</u>** The NAIPO registered U.S. Patent Agents include Xuan Zhang (Reg. # 66781, address on file with the United States Patent and Trademark Office as IntelllFluence Patent Firm, 9910 Baldwin Place, El Monte, California 91731 US, Primary Telephone (626) 628-7931, date registered as agent 07/12/2010) and Scott Margo (Reg. #56277, address on file with the United States Patent and Trademark Office as 3305 Northland Dr. Suite 305, Austin, Texas 78731 US, Primary Telephone (512) 459-9292). **<u>At least nine of the UMC/Jinhua Patent Filings containing Micron trade secrets were prosecuted by NAIPO, of which Xuan Zhang from El Monte, California was listed as a patent agent for those nine patents and applications—namely the '790 Patent, '167 Patent, '162 Patent, '283 Patent, '251 Patent, '777 Patent, '700 Patent, '084 Application and '911 Patent.</u>**

- SAC ¶ 98: The U.S. Patent Agents of JC Patents and NAIPO prosecuted each of the UMC/Jinhua Patent Filings on behalf of UMC and Jinhua by corresponding with the United States Patent Office and by filing numerous documents including the above noted Power of Attorney and Declarations, as well as numerous information disclosure statements, application data sheets, and responses to Office Actions with claim amendments and arguments in order to secure issuance of the UMC/Jinhua Patent Filings. **<u>At least two of the UMC/Jinhua Patent Filings (the '901 Patent and the '258 Patent) were prosecuted by an agent of defendants located in Irvine, California. he remaining nine UMC/Jinhua Patent Filings (the '790 Patent, '167 Patent, '162 Patent, '283 Patent, '251 Patent, '777 Patent, '700 Patent, '084 Application and '911 Patent) were prosecuted by NAIPO, and further list a patent agent from El Monte, California. On information and belief all of the UMC/Jinhua Patent Filings were prosecuted entirely or in part by U.S. patent agents located in California.</u>**

- SAC ¶ 99: **<u>In order for the U.S. patent agents located in California to prosecute the UMC/Jinhua Patent Filings, UMC and Jinhua necessarily disclosed Micron's trade secrets to JC Patents and Xuan Zhang located in California. These disclosures of</u>**

**Micron's trade secrets to individuals in California constitute acts of misappropriation in California. Moreover, JC Patents and Xuan Zhang as agents of UMC and Jinhua used those trade secrets in preparing applications for the UMC/Jinhua Patent Filings in California. Using Micron's trade secrets in California in patent applications constitute acts of misappropriation in California.**

Nowhere does Micron specifically identify how Jinhua was involved with the patent filings. While Micron claims that it "has alleged all of the elements of a conspiracy," (*see* Opp. at 4), Micron simply cannot satisfy its pleading requirements with a single statement, especially when Micron's statement cannot be reconciled with the Court's dismissal of Counts II to IV and partial dismissal of Count I of Micron's FAC. *See, e.g.*, *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.*, 2007 U.S. Dist. LEXIS 59946, at *12 (N.D. Cal. Aug. 9, 2007) ("If the plaintiff fails to adequately plead the underlying claim, the corresponding conspiracy claim must also fail."). As explained multiple times now, civil conspiracy is a legal doctrine in California where the "allegations must be separately pled as to each of the substantive causes of action." *Id.* at *11-12. Those elements include: (1) "the formation and operation of a conspiracy"; (2) "wrongful conduct in furtherance of the conspiracy"; and (3) damages arising from the wrongful conduct" for each cause of action. *Id.* Micron's Opposition, however, does not even set forth those elements, let alone explain how its reasserted claims satisfy those elements with respect to Jinhua. As such, Micron's conspiracy claim against Jinhua fails.

Where several defendants are involved, as in this case, Micron "must more clearly allege specific action on the part of each defendant that corresponds to the elements of a conspiracy cause of action." *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 948 (N.D. Cal. 2003). Here, Micron cites to ¶¶ 13-20, 47, 49-51, 55, 67-72, 76, and 86 of its SAC, however, those paragraphs demonstrate only that Micron simply "scatter[ed] the allegations of formation of the conspiracy, wrongful conduct in furtherance of the conspiracy, and damages arising from the wrongful conduct throughout the FAC, and then simply allege[d] that [Jinhua] 'conspired with [UMC], to commit the'" allegedly wrongful acts in this case. *Mintel Learning Tech., Inc.*, 2007 U.S. Dist. LEXIS 59946, at *23-24; *see, e.g.*, ¶¶ 13-20 (describing co-conspirators Chen, Rong, Ho, Wang, and the Doe Defendants but not Jinhua); ¶¶ 47, 49-51 (describing Wang's acquisitions of files from Micron's servers in Boise, Idaho, but not Jinhua); ¶ 55 (stating UMC, *i.e.*, not Jinhua, "improperly

had possession of internal confidential Micron documents that came from Boise, Idaho"); ¶¶ 67-72 (simply scattering the allegation that the unnamed so-called founders of Jinhua "developed and set in motion a plan" with UMC without specifying the "allegedly wrongful acts" in the case); ¶ 76 (describing that "Jinhua held a public groundbreaking event for its DRAM factory," but failing to explain why this event is an "allegedly wrongful act"); ¶ 86 (describing recruiting efforts by Sandy Kuo, a UMC project manager, *i.e.*, not Jinhua). "Such 'naked assertions' and 'conclusions' are not the sort of factual allegations that the Court must accept as true at the pleading stage." *See Veronica Foods Co.*, 2017 U.S. Dist. LEXIS 101325, at *45 (N.D. Cal. June 29, 2017).

Likewise, Micron's insistence that it stated a claim under the CUTSA based on three alleged acts of misappropriation is further misplaced given that Micron only alleges conclusory allegations that are insufficiently supported by specific facts.

**a. Alleged Disclosure of Trade Secrets to Vendors**

First, Micron argues that it sufficiently pled that Jinhua disclosed trade secret information in California to DRAM equipment vendors. (Opp. at 8). Micron's dedication of nearly an entire page in its opposition on this issue comprises a regurgitation, nearly verbatim, of the allegations in the SAC – all of which are conclusory and speculative allegations wherein Micron indiscriminately lumps Jinhua together with UMC. Such speculation is evidenced by Micron's pleading "on information and belief" in most of the paragraphs discussing Jinhua's and UMC's visit to DRAM vendor visits. *See* SAC ¶¶ 38, 42, 45. This Court has held that conclusory allegations based on information and belief remains insufficient under *Iqbal/Twombly*. *Menzel v. Scholastic, Inc.* 2018 U.S. Dist. LEXIS 44833, at *5 (N.D. Cal. Mar. 19, 2019) (citing *Arista Records LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)). An allegation made on information and belief must still be "based on factual information that makes the inference of culpability plausible," although a court may take into account whether "facts are peculiarly within the possession and control of the defendant." *Id.*

Here, it is surprising that Micron pleads on information and belief when it presumably has all the information it sought through third-party discovery. Specifically, Micron's allegations that [redacted]

[REDACTED] are proof that such alleged facts are in Micron's possession and control. Micron's failure to plead such facts beyond "information and belief" calls into question whether Micron is merely guessing that the specifications came from or were derived from Micron's alleged trade secrets ***or*** that the specifications did not actually come from or were derived from Micron's trade secrets. Moreover, it is not enough for Micron to merely give the Court and Jinhua "notice of the boundaries within which [Micron's] trade secrets lie." (Opp. at 9 (citing *Alta Devices, Inc. v. LG Elecs., Inc.,* 343 F. Supp. 3d 868, 882 (N.D. Cal. Oct. 17, 2018)). Micron must also set forth sufficient allegations of misappropriation, which as noted herein, Micron has not done.

**b. Alleged Incorporation of Trade Secrets in Roadmaps and Assurances**

Second, Micron argues that it sufficiently alleged that Jinhua and UMC gave a presentation at the CASPA job fair which were "based on" or "incorporated" Micron's alleged trade secrets. (Opp. at 9). These arguments, though, are just as conclusory as Micron's allegations in the SAC. *See* SAC, ¶¶ 24 and 27. Micron's allegations are wholly insufficient because they failed to identify which, if any, of the trade secrets alleged in the SAC were encompassed in the CASPA presentation. As the Ninth Circuit has consistently held, courts are not required to accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Without more, Micron's allegations in paragraphs 24 and 27 of the SAC are the exact type of conclusory, unwarranted deductions of fact, and unreasonable inferences, that should not be accepted as true.

**c. Alleged Disclosure of Trade Secrets to California Patent Agents**

Third, Micron argues that Jinhua and UMC jointly filed patent applications using patent agents in California and that this establishes Micron's misappropriation under CUTSA because "it necessarily involves a disclosure of Micron's trade secrets in California." (Opp. at 9). As support, Micron cites *EnerTrode, Inc. v. Gen. Capacitor Co.*, 2019 WL 1715170, at *7 (N.D. Cal. Apr. 17, 2019). However, this case is distinguishable because at issue in the case was a motion for a new trial, rather than a motion to dismiss, and the Court did not address the sufficiency of a pleading under

CUTSA. Moreover, *EnerTrode* does not mention any facts regarding the location or residency of the patent agents that filed the patents in that case so it cannot support Micron's contention that the UMC/Jinhua patent applications filed by patent agents in California establishes misappropriation in California under the CUTSA.

Moreover, as discussed in Jinhua's moving papers, it is not enough for Micron to allege that there was "disclosure" in the abstract – Micron must allege facts that could tie Jinhua to those facts.

**4. Micron's SAC Fails to State a Claim Against Jinhua Under ITSA**

Micron does not dispute that ¶¶ 152 to 160 of Micron's ITSA claim is exactly the same as ¶¶ 140 to 148 of Micron's CUTSA claim and that it relies on the same set of "General Allegations" for these counts. *See, e.g.*, SAC ¶ 138 (incorporating by reference [¶¶] 1 through 20, 22 through 58, and 65 through 100 for its CUTSA claim) and ¶ 150 (incorporating by reference [¶¶] 1 through 20, 22 through 25, 27 through 58, 65 through 95, and 97 through 100" for its ITSA claim). Indeed, the redundancy in Micron's SAC speaks for itself, and Micron's ITSA claim should be dismissed under FRCP 12(b)(6) or, in the alternative, stricken under FRCP 12(f) as redundant.

As a way to save its ITSA claim, Micron explains that its CUTSA claim "is based on UMC and Jinhua's acts of misappropriation in California" while its ITSA claim "is based on UMC and Jinhua's conspiracy to misappropriate Micron's trade secrets." (Opp. at 11). Micron's explanation, however, is flawed given that Micron has yet to plead any facts to allege a civil conspiracy in either California or Idaho, let alone state a civil conspiracy claim against Jinhua in both states. Moreover, Micron cannot have it both ways. Micron cannot simultaneously assert that it is alleging civil conspiracy in Idaho (but not California) for ITSA purposes and is only alleging trade secret misappropriation in California, especially given that Micron claims that it "has alleged all of the elements of a conspiracy" with its FAC, and the FAC did not contain an ITSA count. (Opp. at 4). Also, Micron's belief that it "has alleged all of the elements of a conspiracy" is undermined by the Court's finding in the May 2 Order that the Ho and Wang acquisitions – the same acts that form the basis of Micron's ITSA claim – are distinguishable and separate from Jinhua's conduct.[3]

[3] Jinhua cannot be "liable for its co-conspirators' alleged theft of trade secret information from Micron's Boise servers" as Micron claims because, if that were accepted as true, Jinhua would be liable under the DTSA as well, which this Court has already found that Jinhua is not. (Order at 19).

Micron's single cite to *Intermedics, Inc.* – a case from 1991 – as the sole support for its statement that "[c]ourts frequently permit plaintiffs to bring trade secret misappropriation claims under the laws of multiple states" is laughable. At issue in *Intermedics, Inc.* is whether the plaintiff brought the trade secret misappropriation actions within the proper statute of limitations, *i.e.*, not, as in this case, whether plaintiff's complaint alleged sufficient facts under the state statutes to survive dismissal. *See Intermedics, Inc. v. Ventritex, Co.*, 775 F. Supp. 1258, 1265 (N.D. Cal. 1991). In addition, Micron has provided no support for its claim that "a party should . . . have a right to protect its trade secrets in each state in which they are misappropriated." Indeed, Micron's claim would allow trade secret misappropriation plaintiffs to allege 50 different causes of action in each state of the United States, which contributes to the "lack of uniformity [that] has plagued trade secret cases for decades" and defeats the purpose of establishing the DTSA.[4]

Micron's continued reliance on *Genentech, Inc.* is meritless. (Opp. at 12). As stated before, the court in *Genentech, Inc.* found that the "DTSA applies to misappropriations that began prior to the DTSA's enactment if the misappropriation continues to occur after the enactment date, so long as the defendant took some relevant act after that date." *Genentech, Inc.*, D.E. 132, Civ. No. 18-06582, slip op. at * 15. Here, Micron has failed to allege a conspiracy,[5] and as a result, *Genentech, Inc.* does not apply. Moreover, Micron's cite to *United States v. Saavedra* is also inapposite as that case involves a criminal action involving fraud conspiracy. *See* 684 F.2d 1293, 1301 (9th Cir. 1982).

### B. Micron's § 1962 Civil RICO Claims Against Jinhua in its FAC and SAC are Nearly the Same

As explained in Jinhua's Motion, Micron's Counts II and III of its SAC are nearly identical to Counts II and III of its FAC and thus suffer from the same defects. (Mot. at 19).

---

[4] *See* Mark Klapow et al., *How Courts Approach Trade Secret Identification: Part 1*, LAW360 (July 10, 2018), available at https://www.law360.com/articles/1059129/how-courts-approach-trade-secret-identification-part-1

[5] Indeed, as even the court in *Genentech* points out, what is "[m]issing [from Micron's SAC] is any specific allegation allowing a reasonable inference as to [Ho and Wang's] agreement with [***Jinhua***] to misappropriate trade secrets on its behalf," thereby warranting dismissal. *See Genentech, Inc.*, D.E. 132, Civ. No. 18-06582, slip op. at * 16.

**1. Micron Cannot Continue to Base Its Alleged Predicate Acts on the Ho and Wang Acquisitions**

As a preliminary matter, the Court's May 2 Order makes clear that "Micron's RICO claim cannot be based on the alleged acts of misappropriation occurring before May 11, 2016, specifically, acquisitions by Ho and Wang." (Order at 19). Micron's Civil RICO claim, however, starts with ¶ 120 and "repeats, realleges, and incorporates herein by reference the allegations of [¶¶] 1 through 119, inclusive, above," including the acquisitions by Ho and Wang that this Court found previously cannot form the basis of its civil RICO claim. To the extent Micron continues to incorporate these allegations as part of its civil RICO claim, Micron is in violation of the Court's May 2 Order, and those allegations should be dismissed.

Micron now alleges that its RICO allegations relate to "Jinhua's multiple patent applications, use and disclosure of Micron's trade secrets through its presentation at the CASPA job fair, meetings with semiconductor vendors, and purchase of equipment." However, as explained in Section II.A.3, *supra*, Micron's CUTSA claim in its FAC – where Micron also alleges that "Jinhua, while in this District recruited employees and met with vendors from which it ordered supplies" – was dismissed for failing to "allege such conduct itself constitutes misappropriation." As such, for the same reasons as provided above in the CUTSA analysis, Micron's civil RICO claim should be dismissed.

**2. Micron's SAC Does Not Allege Any Concrete Financial Loss Arising from Any Acts Occurring After May 11, 2016**

Micron has failed to meet its burden to establish a concrete financial loss arising from acts occurring after May 11, 2016. Micron's reliance on *Giorgi Glob. Holdings, Inc. v. Smulski* and *Planned Parenthood* is inapposite given that, in both cases, the courts found that the allegations were sufficient because plaintiff pled additional damages tied directly to defendant's conduct, including: (1) salary payments made directly to the defendant at the time that he "was scheming to defraud [plaintiff's] sister companies" (*Giorgi Glob. Holdings Inc. v. Smulski*, 2019 U.S. Dist. LEXIS 47069, at *15 (E.D. Pa. Mar. 21, 2019)); (2) costs resulting from an impairment of plaintiff's ability to serve clients; (3) "increased operational costs to ensure safety"; (4) additional costs as a result of subsequent hacking; and (5) interrupted or terminated "business relations with vendors" as a result of defendants'

activity. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 214 F. Supp. 3d 808, 820-21 (N.D. Cal. Sept. 30, 2016). Micron has pled none of those costs here.

Moreover, Micron's Opposition is inconsistent. For example, Micron claims that its alleged "costs are a result not just of the Defendants' initial acquisition of Micron's trade secrets, but also, and more importantly, of Defendants' continuing use and disclosure of these trade secrets after May 11, 2016, including use in UMC design rules, patent applications, employee recruitment, and equipment purchasing." (Opp. at 16). Yet none of those costs relate to any events that occurred ***after*** May 11, 2016. Rather, they relate solely to Wang's conduct,[6] which, as Jinhua described in its Motion, predates May 11, 2016, and is unrelated to Jinhua. (*See* Mot. at 20).

Because Micron has yet to allege any concrete financial loss arising from acts occurring after May 11, 2016, Micron's civil RICO claim should be dismissed.

#### 3. Micron's § 1962(d) RICO Conspiracy Claim in its SAC is Exactly the Same as its FAC

For the reasons stated in Sections II.B.1 to II.B.2, *supra*, Micron has failed to state a claim against Jinhua under 18 U.S.C. § 1962(c), and as a result, Micron's 18 U.S.C. § 1962(d) claim is also subject to dismissal. (*See also* Mot. at 22).

## III. CONCLUSION

For the reasons stated above, Jinhua respectfully asks the Court to dismiss Counts II, III, IV and V of Micron's SAC, and Count I, to the extent Count I remains based on the Ho and Wang acquisitions, with prejudice.

Dated: June 28, 2019

*/s/ Mario Moore*
Mario Moore

DAN JOHNSON LAW GROUP, LLP
*Attorneys for Defendant*
Fujian Jinhua Integrated Circuit Co., Ltd.

[6] Tellingly, Micron has not – and cannot – provide a cite to its SAC in support of its allegation that "[w]hile Wang was a UMC employee, his actions were in furtherance of the conspiracy with Jinhua." (Opp. at 16).