IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICRON TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED MICROELECTRONICS CORPORATION, et al., <br><br> Defendants. | Case No. 17-cv-06932-MMC <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO STAY** <br><br> Re: Dkt. No. 204 |

Before the Court is defendants United Microelectronics Corp. ("UMC") and Fujian Jinhua Integrated Circuit Co., Ltd.'s ("Jinhua") Motion, filed May 23, 2019, "to Stay Civil Action Pending Resolution of Criminal Proceedings," whereby defendants seek a stay of the above-titled action pending resolution of a criminal case, specifically, <u>United States v. United Microelectronics Corp., et al.</u>, CR 18-465. Plaintiff Micron Technology, Inc. ("Micron") has filed opposition, to which defendants have replied. Having read and considered the parties' respective written submissions, the Court rules as follows.[1]

## BACKGROUND

In the instant case, Micron, a company that manufacturers "Dynamic Random Access Memory ('DRAM') integrated circuits" (<u>see</u> SAC ¶¶ 1, 8), alleges that "UMC and Jinhua conspired to induce former MMT employees to misappropriate electronic and paper files containing Micron trade secrets from MMT and to deliver those trade secrets to UMC" (<u>see</u> SAC ¶ 3.b),[2] and that UMC and Jinhua's "co-conspirators" in such endeavor included Stephen Chen ("Chen"), who initially was UMC's Senior Vice

---

[1] By order filed July 10, 2019, the Court took the matter under submission.

[2] "MMT" is a reference to Micron Memory Taiwan Co., Ltd., a subsidiary of Micron. (<u>See</u> SAC ¶ 3.a.)

President and later became Jinhua's President (see SAC ¶¶ 13-14), J.T. Ho ("Ho"), UMC's Process Integration Manager (see SAC ¶ 16), and Kenny Wang ("Wang"), who initially worked in UMC's New Business Development Unit and later became the manager of UMC's Device Department (see SAC ¶¶ 17, 87). Micron also alleges that, in furtherance of said conspiracy, Chen "recruit[ed] various MMT personnel with access to Micron trade secrets" (see SAC ¶ 69), that Ho and Wang took "Micron trade secrets" from MMT prior to resigning therefrom and beginning their respective employments with UMC (see SAC ¶¶ 16-17) and that "UMC then incorporated Micron's trade secrets into technologies that it transferred and/or plans to transfer to Jinhua to enable Jinhua to mass produce advanced DRAM products" (see SAC ¶ 3.c). Additionally, Micron alleges, "UMC and Jinhua have been using Micron's stolen trade secrets to file joint patent applications with the United States Patent and Trademark Office." (See SAC ¶ 4.)

In the above-referenced criminal case, the United States has charged UMC, Jinhua, Chen, Ho, and Wang with violating 18 U.S.C. §§ 1831(a) and 1832(a), based on the same allegations set forth in the instant civil case, i.e., the acquisition, use and disclosure of Micron's trade secrets. (See Indictment, CR 18-465 (hereinafter, "Indictment"), ¶¶ 3-6, 8-9, 18, 20, 24-25, 32, 35-45.)

**DISCUSSION**

A court has discretion to stay a civil case in favor of a criminal prosecution. See Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995). In considering whether a stay is appropriate, a court "should consider the extent to which the defendant's fifth amendment rights are implicated," and, in addition, "should generally consider the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with [the civil] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the [civil] proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal

2

litigation." See id. at 324-25. The Court first considers the initial, unenumerated, factor, specifically, whether Fifth Amendment rights are implicated.

As set forth in the operative civil complaint, as well as the Indictment, the key allegedly wrongful acts of UMC and Jinhua, i.e., the acquisition, use, and disclosure of Micron's alleged trade secrets, are those of Chen, Ho, and Wang, the individual defendants in the criminal case, and, consequently, it is likely said individual criminal defendants will be called as witnesses in the civil case. Additionally, as both the civil and criminal actions allege a company-wide conspiracy, UMC and Jinhua officers and employees other than said three individuals likewise are likely to be called as witnesses in the civil case. Although neither UMC nor Jinhua has a Fifth Amendment right against self-incrimination, see United States v. White, 322 U.S. 694, 698-99 (1944) (holding privilege against self-incrimination "appl[ies] only to natural individuals" and "cannot be utilized by or on behalf of any organization, such as a corporation"), each undoubtedly will need to rely on testimony from Chen, Ho, and Wang, as well as other officers and employees, who undoubtedly will assert their respective privileges against self-incrimination as long as the criminal case is ongoing.[3]

---

[3] On April 23, 2008, Judge Jeffrey S. White, to whom the instant case was earlier assigned, afforded Micron leave to conduct limited jurisdictional discovery pertaining to UMC (see Order Granting Pl.'s Req. for Jurisdictional Discovery at 1:21-26), after which Micron then deposed Chen and Ho (see Clark Decl. Exs. 1, 2). Micron argues Chen and Ho, having provided such testimony, "cannot claim a significant burden on their own privilege." (See Pl.'s Opp. at 6:25-26). The Court disagrees. Chen testified he did not know whether UMC ever possessed "Micron technical documents on DRAM technology" (see Clark Decl. Ex. 1 at 15) and Ho testified that, during the time he was working for UMC, he had Micron documents on his computer (see id. Ex. 2 at 32:16-33:21). Assuming such testimony constitutes a waiver of the privilege for those matters as to which Chen and Ho respectively testified, there is no showing that either Chen or Ho waived the privilege as to other key allegations in the Indictment, such as Chen's having engaged in criminal acts on behalf of Jinhua (see, e.g., Indictment ¶¶ 17, 34), Ho's having recruited Wang to unlawfully acquire Micron trade secrets (see Indictment ¶¶ 8, 25), and Ho's having used Micron trade secrets to purportedly invent devices and/or methods (see Indictment ¶¶ 32, 45). See Mitchell v. United States, 526 U.S. 314, 321, 325 (1999) (holding "privilege is waived for the matters to which the witness testifies" only; finding defendant who pleaded guilty to conspiracy to distribute cocaine did not, by such admission, waive her privilege not to answer questions at sentencing as to amount of cocaine she conspired to distribute).

In sum, the risk of prejudice to UMC and Jinhua arising from an inability to obtain testimony from individuals who have the right not to incriminate themselves is substantial. See, e.g., Taylor, Bean & Whitaker Mortgage Corp. v. Triduanum Financial, Inc., 2009 WL 2136986, at 3 (E.D. Cal. July 15, 2009) (holding, where corporation's directors and officers had been indicted for engaging in same conduct for which civil plaintiff sought to hold corporation liable, corporation was "likely to be greatly prejudiced in [its] ability to meaningfully defend itself in the civil matter"); Mr. Dee's, Inc. v. International Outsourcing Services, LLC, 2008 WL 4853601, at *1 (E.D. Wis. November 3, 2008) (holding where corporation, "to mount an effective defense" to civil action, needed testimony from indicted officers and employees, "risk of prejudice" to corporation "arising from an inability to access key information and witnesses" was "substantial").  The Court next turns to the five enumerated factors.

Micron's interest in proceeding with the civil case in an expeditious manner is, of course, significant, particularly in light of Micron's allegation that UMC and Jinhua intend to use Micron's trade secrets to develop DRAM products that would compete with Micron's DRAM products.  As UMC and Jinhua point out, however, Micron's concern as to competition has been at least in part addressed by action taken relatively recently by the federal government.  In particular, the United States Department of Commerce has, as of October 30, 2018, placed Jinhua on its "Entity List," thereby prohibiting anyone from exporting or transporting to Jinhua "items subject to the EAR [Export Administration Regulations]" without a license and further imposing a "presumption of denial" as to any license request.  See 83 FR 54519-02, 2018 WL 5425570.[4]  Consequently, as a practical matter, Jinhua's ability to manufacture DRAM products has been greatly diminished if not entirely foreclosed.

---

[4] "Items" subject to the EAR include "[a]ll items in the United States," as well as "[a]ll U.S. origin items wherever located" and certain types of "[f]oreign-made commodities."  See 15 C.F.R. § 734.3(a).  UMC and Jinhua assert, and Micron has not disputed, DRAM technology is subject to the EAR.

4

To the extent Micron asserts it has been harmed by public disclosures of its trade secrets, specifically, UMC and Jinhua's alleged disclosure of Micron trade secrets in patent applications that have been made public (see, e.g., SAC ¶¶ 92-95, 100),[5] such harm may be remedied by monetary damages or, as Micron alternatively seeks (see SAC, Prayer for Relief at 46:12-14), an order directing ownership of UMC/Jinhua patents based on Micron trade secrets be transferred to Micron, if it obtains a judgment in its favor.[6]  Further, although a stay may create a risk of fading memories, any such risk is less where, as here, the key witnesses in the civil case are likely to be called as key witnesses in the criminal case, thereby preserving their testimony.  See, e.g., Volmar Distributors, Inc. v. New York Post Co., 152 F.R.D. 36, 40 (S.D. N.Y. 1993) (staying civil case in light of pending criminal case; observing, "due to the overlapping issues in the criminal and civil trials, the criminal justice system will help safeguard the evidence").

Next, as to the burden imposed on defendants by the civil case, the Court notes that, if the instant case were to proceed, UMC and Jinhua would be put in the position of having to publicly disclose, in filings such as motions, oppositions, and case management conference statements, the basis of their respective defenses in advance of the criminal trial, and such disclosures would likely be in excess of that to which the government would be entitled under the Federal Rules of Criminal Procedure.  See Federal Insurance Co. v. Laney, 2013 WL 594267, at *3 (N.D. Cal. 2013) (staying civil case in favor of

---

[5]Subject to certain exceptions, a patent application "shall be published," i.e., made available to the public, "promptly after the expiration of a period of 18 months from the earliest filing date for which a benefit is sought" or, upon request by the applicant, on an earlier date.  See 35 U.S.C. § 122(b)(1).

[6]In some cases, courts have found, as a factor weighing against a stay, the likelihood the defendant will dissipate assets during the stay.  See, e.g., Cal-Cleve, Ltd. v. Wrag-Time Air Freight, Inc., 2005 WL 8157878, at *5 (C.D. Cal. May 20, 2005) (denying motion to stay civil case in favor of pending criminal investigation, where, inter alia, plaintiff "raised serious and justified concerns that [d]efendants [would] dissipate their assets during any period of stay").  Here, however, Micron does not assert that either UMC or Jinhua is likely to dissipate assets, including any current or future patents, so as to frustrate Micron's ability to obtain relief in the event the civil case is resolved in its favor.

criminal prosecution; finding, as factor weighing in favor of stay, "[a]llowing the civil proceedings to continue [would] permit the government to gain access to discovery that it would otherwise not have").

      Case management concerns also weigh in favor of a stay. Proceeding first with the criminal prosecution will make efficient use of judicial time and resources, as the vast majority of factual disputes pertaining to liability in the instant case are likely to be resolved in the course of the criminal case, and, although the civil case has been pending for approximately a year and a half, it remains at its early stages, given initial jurisdictional and venue challenges made by UMC and Jinhua. Further, to the extent there may remain a need to conduct some discovery following resolution of the criminal case, e.g., the extent of any loss incurred by Micron, such discovery will be able to proceed at that time unimpeded by limitations imposed by potential self-incrimination.

      As to the remaining two factors, "the public interest is furthered by a stay 'because the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant.'" See Jones v. Conte, 2005 WL 1287017, at *2 (N.D. Cal. April 19, 2005) (quoting Javier H. v. Garcia-Botello, 218 F.R.D. 72, 75 (W.D. N.Y. 2003) (noting government's ability to restrict discovery in criminal cases would be circumvented by defendant's use of civil discovery)). Although the public also has a strong interest in the protection of trade secrets, see S. Rep. No. 114-220, 2016 WL 886187, at *2 (Senate Report citing findings that "annual losses to the American economy caused by trade secret theft are over $300 billion" and that such theft "is slowing the development of new inventions and industries that could raise the prosperity and quality of life for everyone"), and companies that presently compete in the same market as Micron have a strong interest in preserving the integrity of the market, see Cal-Cleve, 2005 WL 8157878, at *5 (observing where civil plaintiff alleged defendant engaged in unfair business practices in "long distance ground freight transportation," non-parties who competed in said market had interest in resolution of plaintiff's claim), such interests are advanced by the pending criminal prosecution, which seeks to protect both the public's interest in protecting

Micron's trade secrets as well as the integrity of the DRAM market.

In sum, the Court finds the relevant factors weigh in favor of a stay and, accordingly, defendant's motion will be granted.

## CONCLUSION

For the reasons stated above, defendants' motion for a stay is hereby GRANTED, and the instant action is hereby STAYED pending the resolution of <u>United States v. United Microelectronics Corp., et al.</u>, CR 18-465.

Lastly, in light of the stay, the Case Management Conference scheduled for August 23, 2019, is vacated, and defendants' motion to dismiss the SAC, currently noticed for hearing on August 2, 2019, is deemed withdrawn, without prejudice to refiling after the stay is lifted.

**IT IS SO ORDERED.**

Dated: July 11, 2019

MAXINE M. CHESNEY
United States District Judge