Daniel Johnson Jr. (Bar No. 57409)
Mario Moore (Bar No. 231644)
Robert G. Litts (Bar No. 205984)
DAN JOHNSON LAW GROUP, LLP
1350 Old Bayshore Highway, Suite 520
Burlingame, CA 94010
Telephone: (415) 604-4500
dan@danjohnsonlawgroup.com
mario@danjohnsonlawgroup.com
robert@danjohnsonlawgroup.com

Attorneys for Defendant
UNITED MICROELECTRONICS CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICRON TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED MICROELECTRONICS CORPORATION, FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD., and DOES 1-10, <br><br> Defendants. | **Case No. 3:17-CV-06932-MMC** <br><br> **DEFENDANT UNITED MICROELECTRONICS CORPORATION'S OPPOSITION TO PLAINTIFF MICRON TECHNOLOGY, INC.'S MOTION TO LIFT STAY** <br><br> Date:       January 8, 2021 <br> Time:       9:00 a.m. <br> Judge:      Hon. Maxine M. Chesney <br> Courtroom:   7, 19th Floor |

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................- 1 -

II.     STATEMENT OF FACTS ....................................................................- 2 -

    A.      The Timing of This Motion Within the Context of the U.S. and Taiwan Criminal Proceedings That Are Close to Resolution ...........................- 2 -

    B.      The Precise Same Set of Facts Are Alleged by the Government in Its Indictment ........................................................................................- 4 -

    C.      The Government Agreed That the Facts Are the Same ......................- 4 -

III.    LEGAL STANDARD............................................................................- 5 -

IV.     ARGUMENT ......................................................................................- 6 -

    A.      Fifth Amendment Rights of Relevant Witnesses of UMC Are Extensively Implicated and Weigh Heavily in Favor of a Stay................................- 6 -

        1.      The Fifth Amendment Rights of the Witnesses and Defendants are Directly Implicated. ...............................................................- 6 -

        2.      The Implicated Fifth Amendment Rights Extend to Nearly the Entire Case and Will Have Extensive Impact.....................................- 8 -

        3.      The Proximity of the Jinhua Trial Compels Maintaining the Stay. .......- 8 -

    B.      Maintaining the Stay Will Maximize Convenience of Court and Result in Efficient Use of Judicial Resources .................................................- 10 -

    C.      Micron's Interests Will Not Be Prejudiced by Continuation of the Stay .........- 12 -

    D.      There is Already Relief in Place Preventing the Transfer of Information to Jinhua ..............................................................................................- 13 -

    E.      Interests of Third Parties and the Public Will Be Served .................- 13 -

    F.      A Partial Stay as to Only Jinhua Would Not Resolve the Prejudice to UMC ..- 14 -

    G.      Micron's Hyperbole Should be Ignored ..........................................- 15 -

V.      CONCLUSION...................................................................................- 17 -

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*800537 Ontario, Inc. v. World Imports U.S.A. Inc.*, 145 F.Supp.2d 288, 291
(N.D.N.Y 2001) ....................................................................................................- 9 -

*Acacia Corp. Mgmt., LLC v. United States*, CIV F-07-1129 AWI GSA, 2009 U.S.
Dist. LEXIS 49484, 2009 WL 1531099 (E.D. Cal. May 28, 2009) ...............................- 9 -

*Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) .............................................- 9 -

*Douglas v. United States*, Nos. C 03-04518, C 04-05357, 2006 WL 2038375 (N.D.
Cal. July 17, 2006) .................................................................................... - 10 -, - 13 -

*Fed. Ins. Co. v. Laney,* No. C 12-04708 WHA, 2013 U.S. Dist. LEXIS 21250, at *8
(N.D. Cal. Feb. 14, 2013)....................................................................................- 10 -

*Fuller v. Amerigas Propane, Inc.,* Nos. C 09-2493 TEH; 09-2616 THE, 2009 U.S.
Dist. LEXIS 71413, at *2 (N.D. Cal. Aug. 3, 2009).........................................................- 5 -

*Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y 2003).............................................- 13 -

*Jones v. Conte*, No. C 04-5312 SI, 2005 WL 1287017, at *1 (N.D. Cal. Apr. 19,
2005) ........................................................................... - 6 -, - 7 -, - 13 -

*Keating v. Office of Thrift Supervision,* 45 F.3d 322, 324 (9th Cir. 1995) ................................- 6 -

*Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)........................- 5 -

*McCormick v. Rexroth*, Case No. C 09-4188 JF, 2010 U.S. Dist. LEXIS 35783,
2010 WL 934242 (N.D. Cal. Mar. 15, 2010).................................... - 8 -, - 9 -, - 11 -, - 14 -

*Medina v. Argent Mortg. Co.*, No. 05-cv-2905 RS, 2006 U.S. Dist. LEXIS 30582,
at *7-8 (N.D. Cal. May 11, 2006) ...................................................................- 11 -

*Mr. Dee's, Inc. v. International Outsourcing Services, LLC*, 2008 WL 4853601, at
*1 (E.D. Wis. November 3, 2008) .......................................................................- 6 -

*Ontario, Inc. v. World Imports U.S.A. Inc.*, 145 F. Supp. 2d 288, 291 (N.D.N.Y
2001) .......................................................................................................- 11 -

*Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) ......................................- 5 -

*Rodriguez v. Summit Mortg. Realty, Inc.*, No. C05-02904 HRL, No. C05-02905
HRL, 2007 U.S. Dist. LEXIS 53179 (N.D. Cal. July 11, 2007)....................................- 14 -

*S.E.C. v. Alexander*, No. 10-CV-04535-LHK, 2010 WL 5388000, at *5 (N.D. Cal.
Dec. 22, 2010)...........................................................................................- 11 -

*S.E.C. v. Nicholas*, 569 F.Supp.2d 1065, 1067 (C.D. Cal. 2008) ............................... - 9 -, - 10 -

*Souza v. Schiltgen*, No. C-95-3997 MHP, 1996 WL 241824 (N.D. Cal. May 6,
1996) ...........................................................................................................- 9 -

ii

*Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76, 202 U.S. App. D.C. 345 (D.C. Cir. 1980) ........................................................................ - 6 -

*Square 1 Bank v. Lo*, No. 12-cv-05595-JSC, 2014 WL 7206874 (N.D. Cal. Dec. 17, 2014) ................................................................................. - 6 -, - 10 -, - 11 -

*Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F.Supp.2d 573, 580 (S.D.N.Y.2001) .................................................................................... - 10 -

*Taylor, Bean & Whitaker Mortgage Corp. v. Triduanum Financial, Inc.*, 2009 WL 2136986, at 3 (E.D. Cal. July 15, 2009) ......................... - 6 -, - 7 -, - 8 -, - 9 -, - 11 -

*United States v. Booth*, CIV-F-09-1689 AWI BAK, 2010 U.S. Dist. LEXIS 9123 (E.D. Cal. Jan. 19, 2010) ...................................................................... - 9 -

*Volmar Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36  (S.D. N.Y. 1993)-10-, - 12 -, - 14 -

*Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523 (D.N.J. 1998) ............ - 8 -, - 10 -

*Wroth v. City of Rohnert Park*, No. 17-cv-05339-JST, 2018 WL 888466, at *3 (N.D. Cal. Feb. 14, 2018).............................................................- 11 -

**STATUTES**

18 U.S.C. §§ 1831 and 1832 ...................................................................... - 3 -

18 U.S.C. §§ 1832 ................................................................................... - 3 -

18 U.S.C. §§ 1836 .......................................................................... - 2 -, - 3 -

18 U.S.C. §§ 1839 .......................................................................... - 2 -, - 3 -

18 U.S.C. §§ 1962(c) ...................................................................... - 2 -, - 3 -

8 U.S.C. §§ 1962(d) ....................................................................... - 2 -, - 3 -

Cal. Civ. Code § 3426 ..................................................................... - 2 -, - 3 -

**REGULATIONS**

15 C.F.R. pt. 744, Supp. No. 4 (Jan. 23, 2019) ............................................ - 13 -

19 C.F.R. § 744.16(a) ............................................................................. - 13 -

83 Fed. Reg. 54,519, 54,521 (Oct. 30, 2018).............................................. - 13 -

83 Fed. Reg. 54,521 (Oct. 30, 2018)......................................................... - 13 -

I.      **INTRODUCTION**

UMC opposes Micron's request to lift the stay of this matter.

In July 2019, the Court entered a stay of this matter, recognizing that UMC's and Jinhua's defenses would be hampered by the unavailability of key witnesses who would likely take the Fifth Amendment. Particularly significant now is the concern voiced at the time that many witnesses not named as individual defendants in the criminal matter may take the Fifth Amendment based upon having been named by Micron, the U.S. prosecutors, or the Taiwan prosecutors as unindicted co-conspirators or otherwise material witnesses in connection with the criminal proceedings in the U.S. and Taiwan. Those same concerns continue to apply because the U.S. criminal case remains slated for trial, and the Taiwan criminal case is on appeal after a trial decision was entered in June 2020. The Taiwan trial and decision primarily focused on the use and "divulgence" of one trade secret — the 25 nm Design Rules — by Kenny Wang to UMC, not Jinhua. Further, the Taiwan court judgment clearly stated that the court did not find any evidence that UMC itself used this trade secret or provided it to Jinhua. On October 28, 2020, UMC, based on the U.S. legal principal of respondeat superior, entered a guilty plea related to Kenny Wang's use of portions of the 25nm Design Rules (identified in the U.S. criminal indictment as Trade Secret 5) on one occasion in August 2016 in an early draft version of the UMC DRAM design rules. Despite this guilty plea, UMC is still unable to put on a full defense because witnesses other than Stephen Chen, J.T. Ho, and Kenny Wang have the right to and may invoke the Fifth Amendment, just as the Court anticipated when it noted that Fifth Amendment concerns would be pervasive so long as the criminal matter was pending. The UMC guilty plea and cooperation agreement cannot and do not vitiate the Fifth Amendment rights of any UMC employees.

The Court's July 2019 Stay Order also recognized that judicial efficiency would be greatly aided by allowing the U.S. criminal matter to proceed first, and that this matter would benefit from the evidence presented in the criminal matter. Those judicial efficiencies are especially relevant here where the criminal trial is already on calendar for August 9, 2021, and this matter can proceed shortly thereafter. Indeed, Micron's motion notes that it intends to heavily rely on matters covered in the Taiwan criminal trial and U.S. criminal matter. Proceeding with this matter after the U.S.

- 1 -

criminal trial will avoid duplicative motion practice, and eliminate contentious disagreements over the scope of permissible deposition testimony.

The lack of prejudice to Micron from the stay is as clear now as it was in 2019. Micron will be free to pursue its damages case and any trade secrets above and beyond those in the criminal matter once the criminal matter is resolved, and Micron's motion confirms that it will seek to obtain and use any documents and testimony given in both the U.S. and Taiwan criminal proceedings. Further, Micron already effectively has an injunction since Jinhua remains on the Department of Commerce entity list.

In short, all the same reasons for the stay apply now just as they did last year. The stay should remain.

## II.     **STATEMENT OF FACTS**

### A.     The Timing of This Motion Within the Context of the U.S. and Taiwan Criminal Proceedings That Are Close to Resolution

On September 11, 2017, the Taiwan Taichung District Prosecutor's Office indicted UMC and UMC employees Kenny Wang, J.T. Ho, and L.T. Rong on trade secret charges.

On December 15, 2017, Micron filed a Complaint in this District seeking injunctive relief and damages against UMC, Jinhua, and unnamed "Does 1-10" ("Complaint") for claims under 18 U.S.C. §§ 1836 and 1839 (Defend Trade Secrets Act); 18 U.S.C. §§ 1962(c) and 1962(d) (Civil RICO); and Cal. Civ. Code § 3426 (California Uniform Trade Secrets Act). (*See* ECF No. 1). In this Complaint, Micron also named Stephen Chen, J.T. Ho, L.T. Rong, and Kenny Wang as "Co-Conspirators." (*Id.* at 4, 5). The Complaint attached and heavily cited to a September 2017 indictment in the Taichung District Court in Taiwan.

UMC filed a Motion to Dismiss for Lack of Personal Jurisdiction on February 15, 2018 (*See* ECF No. 27) and Jinhua filed a Motion to Dismiss the Complaint for Insufficient Service of Process and Lack of Jurisdiction on October 2, 2018 (*See* ECF No. 106). This Court granted Jinhua's Motion on January 18, 2019, providing Micron leave to file an Amended Complaint. (*See* ECF No. 139). Micron filed its First Amended Complaint on February 8, 2019 (*See* ECF No. 140-4), and this Court dismissed UMC's Motion to Dismiss as moot shortly thereafter. (*See* ECF No.

- 2 -

141). UMC and Jinhua then refiled their Motions to Dismiss on February 22, 2019 and March 14, 2019 respectively (*See* ECF Nos. 153-4 and 168). In its May 2, 2019 Order (ECF No. 199), the Court dismissed Micron's claims under 18 U.S.C. §§ 1836 and 1839 (Defend Trade Secrets Act) but only to the extent they are based on an acquisition of trade secrets occurring before May 11, 2016. The Court also dismissed Micron's claims under 8 U.S.C. §§ 1962(c) and 1962(d) (Civil RICO) and Cal. Civ. Code § 3426 (California Uniform Trade Secrets Act). Micron's claims under 18 U.S.C. §§ 1836 and 1839 (Defend Trade Secrets Act) that are based on an acquisition of trade secrets occurring after May 11, 2016 remain in the case. These claims directly overlap with the claims in the Government's criminal case against UMC, Jinhua, Chen, Ho, and Wang. Micron filed its Second Amended Complaint ("SAC") on May 27, 2019. ECF No. 206-4.

On September 27, 2018, the United States filed its Indictment against UMC, Jinhua, Chen, Ho, and Wang on charges of violating and conspiring to violate provisions of the Economic Espionage Act, 18 U.S.C. §§ 1831 and 1832, namely, conspiracy to commit economic espionage, and theft of trade secrets. The Indictment, unsealed on November 1, 2018, revealed that the seven counts being brought were against the Defendants in the criminal case as well as the SAC's named "Co-Conspirators" and were predicated on the very same acts Micron has alleged as the premise for its claims under 18 U.S.C. §§ 1836 and 1839 (Defend Trade Secrets Act) in the instant case.

On June 12, 2020, the Taichung District Court issued its verdict regarding the 2017 indictment after a three-month trial that lasted from January to April 2020. CR-ECF No. 144 at 6.[1] The Taiwan prosecutor (at Micron's request) has appealed the verdict. *Id*. Appeals were separately filed by UMC and individual defendants J.T. Ho, Kenny Wang, and L.T. Rong — all of whom are also listed as co-conspirators in Micron's complaint. *Id*. The various parties' appeals remain pending. Declaration of Yi-hsiu Chen ("Y. Chen Decl."), ¶¶ 8-9. The individual defendants in the Taiwan action are not permitted to leave Taiwan. Y. Chen Decl., ¶¶ 5, 7.

On October 28, 2020, UMC executed its plea agreement, and appeared before this Court to enter a guilty plea in the U.S. criminal matter. CR-ECF No. 148. The plea was to a superseding

---

[1] Citations to docket entries in 18-cv-6643 and 18-cr-465 are identified as CV-ECF and CR-ECF, respectively, to differentiate from docket entries in the current matter.

DEFENDANT UMC'S OPPOSITION TO                    CASE NO. 3:17-CV-06932-MMC
MICRON'S MOTION TO LIFT STAY

1    information alleging possession of a single trade secret (identified in the original indictment as

2    Trade Secret 5). Following UMC's plea, the original indictment was dismissed as to UMC. *Id*., ¶

3    2(v), 2(w). Jinhua, Ho, Chen, and Wang remain defendants in the criminal matter, which is set for

4    trial on August 9, 2021. ECF No. 256 at 11.

5
6
    **B.      The Precise Same Set of Facts Are Alleged by the Government in Its
             Indictment**

7         As the Court noted in granting the stay, the U.S criminal case is "based on the same

8    allegations set forth in the instant civil case, i.e., the acquisition, use and disclosure of Micron's

9    trade secrets." ECF No. 247 at 2, citing Indictment, CR 18-465 (hereinafter, "Indictment"), ¶¶ 3-

10   6, 8-9, 18, 20, 24-25, 32, 35-45.

11   **C.      The Government Agreed That the Facts Are the Same**

12        In conjunction with its Indictment, the Government filed the United States' Complaint for

13   Injunctive Relief on November 1, 2018, case no. 18-cv-6643 (CV-ECF No. 1 ["Government

14   Complaint"]) asking for the same injunctive relief Micron seeks in its SAC. (*See* SAC "Prayer for

15   Relief" at p. 45-46; *and* Government Complaint at ¶ 1 (seeking permanent injunction to prevent

16   UMC, Jinhua, and Chen from transferring the alleged Micron trades secrets)). The Government

17   subsequently filed a Notice of Related Case in this proceeding the following day ("Notice"), (*See*

18   ECF No. 131), giving this Court notice that the Indictment and the Government Complaint were

19   related to this proceeding. In this Notice, the Government made explicit that the Government

20   Complaint and the "Indictment concern[] the same events as described in Micron's civil

21   complaint," and that "all three actions concern one or more of the same defendants and the same

22   alleged events, occurrences, transactions, or property." (*See* Notice at 3-4 (internal quotations

23   omitted).)[2]

24        Similarly, during the UMC plea and sentencing hearing, the government again recognized

25   the importance and significance of the substantial overlap between the criminal case and this civil

26   case. At the hearing, the government explained that any restitution issues should be deferred to the

27   _____

28        [2] The government recently dismissed UMC from the civil matter as part of the plea agreement.
     CR-ECF No. 148 at ¶ 15.

DEFENDANT UMC'S OPPOSITION TO                          CASE NO. 3:17-CV-06932-MMC
MICRON'S MOTION TO LIFT STAY

civil case because restitution requires "complex judgment" and the "facts that will go into that judgment are precisely those that will be at issue in the [criminal] case . . . in the forthcoming and upcoming trial against Jinhua as it concerns the use of the trade secrets that are alleged in the Indictment." *See* CR-ECF No. 154 [October 28, 2020 Tr. of Proceedings] at 30:4-21. The government also stated that at the forthcoming criminal trial against the remaining defendants the complex issues would be "the subject of expert testimony both from the Government and presumably from defense counsel. And the experts will opine on precisely the types of issues that will be implicated in the restitution decision." *Id*.

### III.    <u>LEGAL STANDARD</u>

The power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Fuller v. Amerigas Propane, Inc.,* Nos. C 09-2493 TEH; 09-2616 THE, 2009 U.S. Dist. LEXIS 71413, at *2 (N.D. Cal. Aug. 3, 2009) (quoting *Rivers v. Walt Disney Co*., 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (quoting *Landis v. N. Am. Co*., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936) (internal quotation marks omitted)).

A court may stay a civil proceeding "when the interests of justice seem to require such an action." *See Jones v. Conte*, No. C 04-5312 SI, 2005 WL 1287017, at *1 (N.D. Cal. Apr. 19, 2005) (quoting *Keating v. Office of Thrift Supervision,* 45 F.3d 322, 324 (9th Cir. 1995)). Whether to stay civil proceedings where there is a parallel criminal proceeding should be determined based on the circumstances and competing interests involved. *Id.* Courts deciding whether to grant a stay should weigh the following factors: "1) the extent to which the defendant's Fifth Amendment rights are implicated; 2) the interest of the plaintiff in proceeding with the litigation and the potential prejudice to plaintiff of a delay; 3) the convenience of the court and the efficient use of judicial resources; 4) the interests of third parties; and 5) the interests of the public." *Id.*

## IV.   <u>ARGUMENT</u>

### A.   Fifth Amendment Rights of Relevant Witnesses of UMC Are Extensively Implicated and Weigh Heavily in Favor of a Stay

"[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Jones v. Conte*, 2005 WL 1287017, at *2 (*quoting Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76, 202 U.S. App. D.C. 345 (D.C. Cir. 1980)). This is particularly true because criminal and civil proceedings arising out of the same matter present a "concern that allowing the civil action to proceed may undermine the defendant's Fifth Amendment privilege against self-incrimination, result in discovery beyond the scope of what the Federal Rules of Criminal Procedure allow, expose the defense strategy, or otherwise cause prejudice." *Square 1 Bank v. Lo*, No. 12-cv-05595-JSC, 2014 WL 7206874, at *1 (N.D. Cal. Dec. 17, 2014).

### 1.   The Fifth Amendment Rights of the Witnesses and Defendants are Directly Implicated.

As in 2019, in the civil case, "the risk of prejudice to UMC and Jinhua arising from an inability to obtain testimony from individuals who have the right not to incriminate themselves is substantial." ECF No. 247 at 4, citing *Taylor, Bean & Whitaker Mortgage Corp. v. Triduanum Financial, Inc.*, 2009 WL 2136986, at 3 (E.D. Cal. July 15, 2009) (holding where corporation's directors and officers had been indicted for engaging in the same conduct for which civil plaintiff sought to hold corporation liable, corporation was "likely to be greatly prejudiced in [its] ability to meaningfully defend itself in the civil matter"); *Mr. Dee's, Inc. v. International Outsourcing Services, LLC*, 2008 WL 4853601, at *1 (E.D. Wis. November 3, 2008) (holding corporation, "to mount an effective defense" to civil action, needed testimony from indicted officers and employees, "risk of prejudice" to corporation "arising from an inability to access key information and witnesses" was "substantial").

As the Court noted in granting the stay, UMC "will need to rely on testimony from officers and employees who undoubtedly will assert their respective privileges against self-incrimination

- 6 -

1  as long as the criminal case is ongoing." ECF No. 247 at 3. Although Micron argues that Stephen
2  Chen, J.T. Ho, and Kenny Wang are unlikely to ever testify in this case, the fact remains that the
3  Fifth Amendment rights of other current and former UMC employees, some of whom were named
4  as "Co-Conspirators" by Micron's complaint, are directly implicated so long as the U.S. criminal
5  matter is pending. Likewise, the individuals' rights to remain silent under Taiwan law are
6  implicated so long as the Taiwan criminal matter is pending.

7  In its stay order, the Court acknowledged this fact: "as both the civil and criminal actions
8  allege a company-wide conspiracy, UMC and Jinhua officers and employees other than said three
9  individuals likewise are likely to be called as witnesses in the civil case." Micron's motion
10  identifies 193 patents on which it will seek discovery (ECF No. 256 at 11), potentially implicating
11  dozens of UMC employees who were involved in the inventorship of those patents, as well as
12  individuals involved in prosecution of the patents. The actions, motivations, and beliefs of UMC's
13  employees regarding their engineering and patent activities will be critical issues Micron will seek
14  to explore and develop evidence around in order to make its case. Any witness's compliance will
15  not be just as an employee of UMC, but also under the direct threat of being named as a Defendant
16  in the civil case. Micron's SAC sues "Does 1-10" under fictitious names as a placeholder until it
17  has decided who to name (SAC at ¶ 18). "[I]f discovery moves forward, [individual witnesses]
18  will be faced with the difficult choice between asserting [their] right against self-incrimination,
19  thereby inviting prejudice in the civil case, or waiving those rights, thereby courting liability in the
20  [criminal] case." *Jones*, 2005 WL 1287017, at *1.

21  Because the testimony of these individual witnesses will be essential to mounting UMC's
22  defense to Micron's claims, and there is a serious danger that the individuals may invoke the Fifth
23  Amendment given the active criminal matter pending in the U.S. (and similarly may invoke the
24  right to remain silent under Taiwan law given the pending criminal matter there), these factors
25  weigh in favor of lifting the stay only after the criminal case set for trial is finished. *Taylor, Bean*
26  *& Whitaker Mortg. Corp. v. Triduanum Financial, Inc.*, 2009 U.S. Dist. LEXIS 60849, at *8 (E.D.
27  Cal. Jul. 15, 2009). If relevant witnesses invoke their individual Fifth Amendment rights in the
28  civil matter, it might compromise UMC's ability to mount an adequate defense.

1

2

### 2.      The Implicated Fifth Amendment Rights Extend to Nearly the Entire Case and Will Have Extensive Impact.

3      When evaluating the extent to which a defendant's Fifth Amendment rights are implicated,

4   courts also consider: (a) the extent to which the issues in the criminal case overlap with those

5   presented in the civil case; (b) the status of the criminal proceeding, including whether the

6   defendant has been indicted; and (c) whether the civil proceedings may expand the scope of

7   criminal discovery beyond the limits of the FRCP or otherwise prejudice the case. *Taylor*, 2009

8   U.S. Dist. LEXIS 60849, at *6; *Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523,

9   527 (D.N.J. 1998). These factors when analyzed in the context of this case weigh heavily in favor

10   of a stay.

11      ### 3.      The Proximity of the Jinhua Trial Compels Maintaining the Stay.

12      The case law makes clear that a stay should be granted if the criminal matter is headed to

13   trial. In the instant case there is no debate the DOJ is scheduled for trial against Jinhua in August

14   2021. Courts have repeatedly favored a stay of a civil case in circumstances where the overlapping

15   criminal proceeding was close to trial. *Taylor,* 2009 U.S. Dist. LEXIS 60849, at *2 (granting a six-

16   month stay of all proceedings in a civil fraud case when a parallel criminal case was headed to

17   trial); *McCormick v. Rexroth*, Case No. C 09-4188 JF, 2010 U.S. Dist. LEXIS 35783, 2010 WL

18   934242 (N.D. Cal. Mar. 15, 2010) ("Given the proximity of the trial date in the criminal case, there

19   is little to be gained from a situation in which the Court likely would be called upon to determine

20   what types of discovery do and do not fall within the bounds of a partial stay.").

21      In the instant case there is little to be gained from lifting the stay. The Fifth Amendment

22   problems remain, and indeed may be worse now because Micron has continuously expanded its

23   allegations to cover conduct of many more individuals. More importantly, it is likely that Micron

24   will be seeking testimony from the same witnesses and collecting the same documents that will be

25   used in the criminal case. Objections made by UMC will have to be reconsidered if similar

26   objections are made by Jinhua. In short, there will likely be significant duplication of efforts by

27   the parties and additional effort by the Court if the stay is lifted. Indeed, the government recognized

28   as much when it argued that restitution should be deferred to the civil matter, which it clearly

- 8 -

1   anticipated would take place after the criminal matter was complete. *See* CR-ECF No. 154

2   [October 28, 2020 Tr. of Proceedings] at 30:4-17.

3       Since the simultaneous civil and criminal proceedings involve nearly identical facts, Fifth

4   Amendment concerns of critical witnesses continue to weigh heavily in favor of keeping the stay

5   in place at least until resolution of the government's trial of Jinhua in the U.S., and the resolution

6   of UMC's appeal of the Taiwan criminal matter. *See United States v. Booth*, CIV-F-09-1689 AWI

7   BAK, 2010 U.S. Dist. LEXIS 9123 (E.D. Cal. Jan. 19, 2010) (staying a civil case completely until

8   resolution of the parallel criminal case); *Taylor,* 2009 U.S. Dist. LEXIS 60849, at *2 (granting a

9   six-month stay of all proceedings in a civil fraud case when a parallel criminal case was ongoing

10  because "[b]oth the civil and criminal cases arise from the alleged scheme to defraud . . . [, and as]

11  such, the pending civil litigation may substantially implicate defendants' Fifth Amendment rights

12  against self-incrimination, create unnecessary complexities with respect to discovery, expose

13  defendants' strategy or theories with respect to the criminal case, or otherwise prejudice the

14  pending criminal proceedings."); *Acacia Corp. Mgmt., LLC v. United States*, CIV F-07-1129 AWI

15  GSA, 2009 U.S. Dist. LEXIS 49484, 2009 WL 1531099 (E.D. Cal. May 28, 2009) (granting stay

16  of civil action until the resolution of the parallel criminal case); *see also McCormick v. Rexroth*,

17  Case No. C 09-4188 JF, 2010 U.S. Dist. LEXIS 35783, 2010 WL 934242 (N.D. Cal. Mar. 15,

18  2010); *S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065 (C.D. Cal. 2008); *Souza v. Schiltgen*, No. C-95-

19  3997 MHP, 1996 WL 241824 (N.D. Cal. May 6, 1996); *Bureerong v. Uvawas*, 167 F.R.D. 83

20  (C.D. Cal. 1996); *800537 Ontario, Inc. v. World Imports U.S.A. Inc*., 145 F.Supp.2d 288, 291

21  (N.D.N.Y 2001) (granting stay in matter where foreign criminal proceedings involving same facts

22  were scheduled for trial in five months).

23      Here, there remains considerable risk that the broader scope of civil discovery will impair

24  the integrity of the parallel criminal proceedings in this Court and in Taiwan. Disclosures required

25  in this civil proceeding will be highly relevant to the issues in the criminal proceeding and will

26  give the U.S. government and Taiwan government access to discovery they cannot obtain under

27  the federal rules of criminal procedure (such as documents derived from initial disclosures,

28  defendants' responses to interrogatories, and pleadings and admissions at any depositions). *See*

- 9 -

1   *Fed. Ins. Co. v. Laney,* No. C 12-04708 WHA, 2013 U.S. Dist. LEXIS 21250, at *8 (N.D. Cal.

2   Feb. 14, 2013); *see also Square 1 Bank*, 2014 WL 7206874, at *2 (observing "it is possible that

3   any information [the defendant] produces to fulfill his civil discovery obligations—in particular,

4   requests for admissions and deposition testimony—may be used against him in his criminal case").

### B.   Maintaining the Stay Will Maximize Convenience of Court and Result in Efficient Use of Judicial Resources

7   Judicial economy continues to strongly favor maintaining the stay of this proceeding

8   pending the resolution of the criminal proceeding in the U.S. and Taiwan. *Sterling Nat'l Bank v.*

9   *A-1 Hotels Int'l, Inc.*, 175 F.Supp.2d 573, 580 (S.D.N.Y.2001); *Walsh Securities, Inc. v. Cristo*

10  *Property Mgmt., Ltd.*, 7 F.Supp.2d 523, 528 (D.N.J.1998). The potential is high for unnecessary

11  complexity, overlapping issues, duplicative rulings, and conflict between the rulings of this Court

12  in this proceeding and the criminal proceeding, and staying the matter will be a more prudent and

13  efficient management of resources. *S.E.C. v. Nicholas*, 569 F.Supp.2d 1065,  1067 (C.D. Cal.

14  2008) ("[a]llowing for competing civil and criminal cases to proceed simultaneously would

15  undermine the public's right to a fair and efficient prosecution of its criminal laws, distract the

16  Defendants and the USAO from fully preparing their respective cases, and divert the Court's

17  attention with burdensome discovery litigation and duplicative law and motion."). Indeed, one of

18  the overlapping issues would undoubtedly be the value, if any, of the alleged trade secrets and

19  defendants' corresponding obligations to pay restitution. *See* CR-ECF No. 154 [October 28, 2020

20  Tr. of Proceedings.] at 30:4-17.

21  As the Stay Order noted, sequencing the civil proceeding after the criminal proceeding will

22  promote more streamlined civil discovery and swifter resolution. ECF No. 247 at 6 ("Proceeding

23  first with the criminal prosecution will make efficient use of judicial time and resources, as the

24  vast majority of factual disputes pertaining to liability in the instant case are likely to be resolved

25  in the course of the criminal case"); *see also Volmar. Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D.

26  36, 42 (S.D.N.Y. 1993) (stating that "the outcome of the criminal case may encourage settlement");

27  *Douglas v. United States*, Nos. C 03–04518, C 04–05357, 2006 WL 2038375, at *5 (N.D. Cal.

28  2006) ("Allowing the criminal action to proceed first may narrow the issues and streamline

- 10 -

discovery in the civil proceeding."); *Wroth v. City of Rohnert Park*, No. 17-cv-05339-JST, 2018 WL 888466, at *3 (N.D. Cal. Feb. 14, 2018) (finding that "[t]he resolution of the criminal matter may narrow the scope of civil discovery"); *McCormick v. Rexroth*, No. C 09-4188 JF, 2010 WL 934242, at *3–4 (N.D. Cal. Mar. 15, 2010) ("Given the proximity of the trial date in the criminal case, there is little to be gained from a situation in which the Court likely would be called upon to determine what types of discovery do and do not fall within the bounds of a partial stay.").

Other cases point out that in "discovery following resolution of the criminal case, e.g., the extent of any loss incurred by Micron,… will be able to proceed at that time unimpeded by limitations imposed by potential self-incrimination." ECF No. 247 at 6; *Square 1 Bank v. Lo*, No. 12-CV-05595-JSC, 2014 WL 7206874, at *4–5 (N.D. Cal. Dec. 17, 2014) (noting that staying case until criminal case resolves was more efficient and would lead to fewer disputes over appropriate scope of deposition questioning); *Ontario, Inc. v. World Imports U.S.A. Inc*., 145 F. Supp. 2d 288, 291 (N.D.N.Y 2001) (granting stay pending trial in foreign criminal proceeding that was filed prior to U.S. civil proceeding). *Taylor*, 2009 U.S. Dist. LEXIS 60849, at *9 (granting motion to stay where the proceeding was "in the early stages of litigation"); *Medina v. Argent Mortg. Co.*, No. 05-cv-2905 RS, 2006 U.S. Dist. LEXIS 30582, at *7-8 (N.D. Cal. May 11, 2006) ("As discovery has not yet begun in this case, only the initial pleadings have been filed, and no dispositive motions have yet been presented, the efficient use of judicial resources favors a stay in this action."); *Alexander*, 2010 WL 5388000, at *5.

It bears emphasis that neither UMC nor Jinhua has filed an answer in this case. Micron's First Amended Complaint was partially dismissed, without prejudice, and Micron filed its Second Amended Complaint just prior to the stay; and, apart from limited jurisdictional discovery prior to the commencement of criminal proceedings, no discovery has issued. *See S.E.C. v. Alexander*, No. 10-CV-04535-LHK, 2010 WL 5388000, at *5 (N.D. Cal. Dec. 22, 2010) ("while it is generally preferable to avoid delay, in this case, where no answer has been filed and several defendants have not yet appeared, a stay may prove the more efficient course"); *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Financial, Inc*., No. CIV. 2:09–cv–0954, 2009 WL 2136986, at *4 (E.D. Cal. July 15, 2009) (finding that a stay would make efficient use of judicial resources where "[n]o

answer has been filed, no scheduling order has been issued, and no dispositive motions have been filed").

The nearly complete overlap in conduct underlying the criminal charges and civil allegations makes it likely that issues of fact resolved in the criminal case will bear directly on UMC's, Jinhua's, and the "Does 1-10" civil liability and allow the civil proceeding against them to be resolved more quickly. Additionally, the Defendants' own burden in litigating parallel proceedings regarding the same conduct and navigating the complexities of civil discovery in that context would be greatly alleviated by allowing the proceedings to proceed sequentially rather than simultaneously.

### C.    Micron's Interests Will Not Be Prejudiced by Continuation of the Stay

Micron's interests will not be impaired from the continuation of the stay of this proceeding pending resolution of the parallel criminal case. Micron has counsel who are involved in the Taiwan criminal proceedings and closely monitoring the U.S. criminal proceedings. Further, Micron makes clear in its motion that it seeks to obtain and use documents from those matters as well as witness testimony given by any of UMC's employees in those matters.

As the Court's stay order noted "[t]o the extent Micron asserts it has been harmed by public disclosures of its trade secrets, specifically, UMC and Jinhua's alleged disclosure of Micron trade secrets in patent applications that have been made public (*see, e.g.*, SAC ¶¶ 92-95, 100), Micron has included prayer for relief to remedy such harm with monetary damages or …an order directing ownership of UMC/Jinhua patents based on Micron trade secrets be transferred to Micron, if it obtains a judgment in its favor." ECF No. 247 at 5. Similarly, the "risk of fading memories" is lower in this case because many of Micron's own witnesses in the civil case may be called by the DOJ as witnesses in the U.S. criminal case or have already testified in the Taiwan criminal case, or may have testified before the U.S. grand jury, "thereby preserving their testimony." *Id*., citing *Volmar Distributors, Inc. v. New York Post Co*., 152 F.R.D. 36, 40 (S.D. N.Y. 1993) (staying civil case in light of pending criminal case; observing, "due to the overlapping issues in the criminal and civil trials, the criminal justice system will help safeguard the evidence.").

### D.   There is Already Relief in Place Preventing the Transfer of Information to Jinhua

Micron's moving papers omit advising the Court that it already has the equivalent of injunctive relief against Jinhua in the form of Jinhua's placement on the Entity List established by the United States Department of Commerce under the Export Administration Regulations ("EAR"). As of October 30, 2018, any exports or transfers to Jinhua of technology subject to the EAR require a license. ECF No. 247 at 4; 19 C.F.R. § 744.16(a); 15 C.F.R. pt. 744, Supp. No. 4 (Jan. 23, 2019); *see also* Export Administration Regulations, 83 Fed. Reg. 54,519, 54,521 (Oct. 30, 2018) (codified at 15 C.F.R. pt. 744) (noticing the addition of Jinhua to the Entity List). Additionally, pursuant to the terms of Jinhua's entry on the Entity List, license applications for exports or transfers to Jinhua carry a presumption of denial. ECF No. 247 at 4, citing Export Administration Regulations, 83 Fed. Reg. at 54,521, 2018 WL 5425570. Since October 30, 2018, UMC has been, and is, effectively prohibited from transferring DRAM technology to Jinhua. ECF No. 204 at 9. As long as the Entity List designation remains in place, there is no basis or need for the injunctive relief sought by Micron's Complaint, and Micron will not be prejudiced by a stay. ECF No. 247 at 4.

### E.   Interests of Third Parties and the Public Will Be Served

The interests of third parties and/or the public are served by preserving the stay of this proceeding. ("[T]he public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant."). *Jones*, 2005 U.S. Dist. LEXIS 46962, at, *5 (quoting *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y 2003)). In fact, the public's interest is in "ensuring that the criminal process is not subverted by ongoing civil cases." *Douglas v. United States*, Nos. C 03-04518, C 04-05357, 2006 WL 2038375 (N.D. Cal. July 17, 2006). Here, the public has an interest in ensuring the integrity of the still pending criminal prosecution of Jinhua, and respecting the integrity of the still pending criminal proceedings in Taiwan. Moreover, any continuing third-party interest on behalf of Micron is adequately protected by Jinhua's placement on the Entity List, such that it will not be prejudiced by the stay.

Finally, the interests of third parties and the public are outweighed by Fifth Amendment concerns and the interests of justice. See *Rodriguez v. Summit Mortg. Realty, Inc.*, No. C05-02904

- 13 -

HRL, No. C05-02905 HRL, 2007 U.S. Dist. LEXIS 53179 (N.D. Cal. July 11, 2007) (continuing a stay of civil proceedings for seven months or until the criminal trial was complete, whichever came first, because of Fifth Amendment concerns, and stating that "[w]hile the court and the public generally have an interest in the expeditious resolution of litigation, under the circumstances presented here, the court concludes that, on balance, the interests of justice require an extension of the stay of these proceedings.").

### F.    A Partial Stay as to Only Jinhua Would Not Resolve the Prejudice to UMC

Micron alternatively argues that the Court should partially lift the stay as to UMC but not Jinhua. This approach should be rejected due to the same Fifth Amendment concerns and the judicial efficiency concerns that favor no lift of the stay at all. *McCormick v. Rexroth*, Case No. C 09-4188 JF, 2010 WL 934242, *3-4 (N.D. Cal. Mar. 15, 2010) (rejecting argument for partial stay or bifurcating discovery; resolution of criminal matter would not resolve civil matter in its entirety, and complete stay was more efficient given that criminal matter was close to trial); *Volmar Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36, 42 (S.D.N.Y. 1993) ("Although plaintiffs would prefer a partial over a complete stay so as to obtain discovery from at least some of the defendants…to avoid duplication of effort and unnecessary litigation costs, this Court, … grants a complete stay as to all defendants until the criminal proceedings now pending against La Chance and Orlando are resolved.").

In particular, a partial stay would still leave UMC in a position where it could not completely defend itself due to the likelihood that individual witnesses will invoke their Fifth Amendment privileges, which is each individual's right, especially while the criminal cases remain pending. UMC, as a corporate entity, has agreed to cooperate with the DOJ in the criminal matter, but it cannot compel employees to meet with the government or to waive their constitutional rights in that matter or the civil matter. At the same time, UMC needs relevant witness testimony to present its defense in the civil case. This will be far easier to achieve after the criminal proceedings are no longer impeding the presentation of witness testimony in this matter.

- 14 -

1  Additionally, lifting the stay will lead to a swath of duplicative motion practice that is far

2  less likely if the civil case is resumed after the criminal matters are resolved. Certain factual issues

3  will inevitably be more settled once the criminal matters have run their course.

4  **G.  Micron's Hyperbole Should be Ignored**

5  Micron, in reciting the procedural history, makes a series of misstatements and speculative

6  assertions that are less relevant to their motion, but require correction.

7  First, Micron inaccurately describes individual defendants Chen, Ho, and Wang as

8  fugitives. ECF No 256 at 10. Chen, Ho, and Wang are not fugitives; as Micron concedes, they

9  have never appeared in the U.S. case. ECF No 256 at 10-11.

10  Second, contrary to Micron's hyperbole (ECF No. 256 at 5), time is not of the essence to

11  stop use of Micron's technology. As discussed above, UMC ceased any technology cooperation

12  with Jinhua once Jinhua was placed on the Entity List. Y. Chen Decl., ¶ 10.

13  Micron offers unmitigated speculation without any evidence to suggest that Micron's

14  technology was transferred to China. In reality, Kenny Wang referenced only portions of the 25nm

15  design rules on one occasion in August 2016 in connection with an early draft of the UMC design

16  rules. This early draft was not provided to Jinhua when the technology transfer to Jinhua was done

17  in September 2018. CR-ECF No. 144 at 5; CR-ECF No. 148, ¶ 2(w). Indeed, the Taiwan Taichung

18  District Court found no evidence that UMC used the "DR25nmS Design Rules" or handed them

19  over to Jinhua for Jinhua's use. CR-ECF No. 144 at 6. Additionally, Micron makes no showing to

20  support its speculation that the UMC technology transferred to Jinhua has been used by Jinhua or

21  anyone else in Mainland China, or that such technology was based upon Micron's products.

22  Micron presents no evidence that any DRAM products have ever been produced or sold by UMC

23  or Jinhua in connection with UMC's 2016 DRAM project. CR-ECF No. 144 at 6. At the

24  appropriate juncture of the case when the stay is eventually lifted, UMC will present expert

25  testimony showing that UMC's design involved a fundamentally different approach than Micron's.

26  Third, Micron's motion presents no evidence to back up its claim (ECF No. 256 at 11) that

27  any of the 193 patents issued to UMC and Jinhua disclose any confidential information of Micron.

28  Given that the patents are in the public record (ECF No. 256-6, ¶¶ 2-3), and many have been there

- 15 -

1   for many months, Micron has had the opportunity to review those patents with a technical expert

2   and identify the purported trade secrets disclosed in the patents. Micron could also have filed a

3   petition with the Patent Office for correction of inventorship as to any patents for which it had

4   evidence that the inventions were actually Micron's. Instead, Micron simply counted up patents

5   on which UMC and Jinhua are both listed as assignees or applicants, with no technical analysis of

6   the actual patents. ECF No. 256-6. Micron does not come close to providing competent evidence

7   showing that any of the patents have any relevance to Micron's claims of trade secret

8   misappropriation.

9        Fourth, Micron makes baseless claims about dangers of lost evidence resulting from the

10   passage of time. ECF No. 256 at 11, 14. Micron points to the departure of unspecified former

11   employees previously listed on Micron's initial disclosures (*id.*), but fails to explain the relevance

12   of these individuals, or why it could not still call those individuals as third-party witnesses in this

13   case. Micron also fails to point out that some of its employees previously provided lengthy

14   recorded testimony to the Taiwan authorities, and may have testified before the U.S. grand jury.

15   Additionally, with modern electronic data preservation and litigation hold practices, all of which

16   are currently in place in the civil litigation, Micron presumably is able to preserve all the Micron

17   documents possessed by each of its former employees listed on its initial disclosures prior to their

18   departure from the company; if Micron failed to do so, the prejudice to Micron — *and UMC* — is

19   the result of Micron's own failings, not UMC's. Similarly, Micron references the potential loss of

20   documentary evidence, but Micron is well aware that litigation holds are in place in connection

21   with both this civil case and the DOJ criminal case.

22        Finally, Micron mischaracterizes the nature of the evidence from the Taiwan and U.S.

23   criminal cases. Micron references the guilty verdict in the Taiwan criminal case, but fails to note

24   that the criminal case found little or no evidence of any damage to Micron, which caused the

25   Taiwan prosecutor to appeal the decision. The Taiwan court denied the prosecutor's request —

26   which was driven by Micron — for an order requiring UMC to disgorge $700 million USD, finding

27   there was no evidence in the case showing that UMC had used the Micron 25 nm Design Rules or

28   that UMC had provided the Micron 25 nm Design Rules to Jinhua. CR-ECF No. 144 at 6. Micron

DEFENDANT UMC'S OPPOSITION TO          CASE NO. 3:17-CV-06932-MMC
MICRON'S MOTION TO LIFT STAY

1  references the guilty plea in the U.S. criminal case and concedes that it related to only a single

2  trade secret document, but ignores that the U.S. guilty plea says nothing about the key facts

3  underpinning UMC's alleged liability in the civil case, or about whether any damages to Micron

4  resulted from the acts to which UMC pled guilty. Therefore, neither the Taiwan nor the U.S.

5  criminal proceedings have established anything close to the allegations in Micron's complaint.

6  And, of course, all charges contained in the original indictment have been dismissed as to UMC.

7  **V.      CONCLUSION**

8       For the reasons set forth herein, UMC respectfully requests that the Court maintain the stay

9  of this action pending resolution of the parallel criminal proceedings, including the Taiwan

10  criminal matter appeal and the U.S. criminal matter trial scheduled for August 2021.

11

12  DATED: December 18, 2020

13            DAN JOHNSON LAW GROUP, LLP

14            By: */s/ Daniel Johnson Jr.*

15             Daniel Johnson Jr.

16            *Attorneys for Defendant*
             UNITED MICROELECTRONICS

17            CORPORATION

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT UMC'S OPPOSITION TO                    CASE NO. 3:17-CV-06932-MMC
MICRON'S MOTION TO LIFT STAY