Daniel Johnson Jr. (Bar No. 57409)
Mario Moore (Bar No. 231644)
Robert G. Litts (Bar No. 205984)
DAN JOHNSON LAW GROUP, LLP
1350 Old Bayshore Highway, Suite 520
Burlingame, CA 94010
Telephone: (415) 604-4500
dan@danjohnsonlawgroup.com
mario@danjohnsonlawgroup.com
robert@danjohnsonlawgroup.com

Lyle B. Vander Schaaf (DC Bar No. 422380)
Fei Hu (DC Bar No. 1016150)
BRINKS GILSON & LIONE
1775 Pennsylvania Ave, NW, Suite 900
Washington, DC 20006
Telephone: (202) 296-8700
lvanderschaaf@brinksgilson.com
fhu@brinksgilson.com
Appearance *pro hac vice*

Harold V. Johnson (IL Bar No. 6188149)
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Drive, Suite 3600
Chicago, IL 60611
Telephone: (312) 321-4200
hjohnson@brinksgilson.com
Appearance *pro hac vice*

Attorneys for Defendant
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICRON TECHNOLOGY, INC., | **Case No. 3:17-CV-06932-MMC** |
| Plaintiff, | **DEFENDANT FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S OPPOSITION TO PLAINTIFF MICRON TECHNOLOGY, INC.'S MOTION TO LIFT STAY** |
| v. | |
| UNITED MICROELECTRONICS CORPORATION, FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD., and DOES 1-10, | Date:         January 8, 2021<br>Time:         9:00 a.m.<br>Judge:        Hon. Maxine M. Chesney<br>Courtroom:    7, 19th Floor |
| Defendants. | |

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     STATEMENT OF FACTS ....................................................................................... 2

     A.     The Timing of This Motion Within the Context of the U.S. and Taiwan Criminal Proceedings and the Instant Case .............................................. 2

     B.     The Precise Same Set of Facts Are Alleged by the Government in Its Indictment .................................................................................................... 3

III.    LEGAL STANDARD ............................................................................................. 4

IV.    ARGUMENT ......................................................................................................... 5

     A.     Lifting the Stay Will Unfairly and Fatally Undermine Jinhua's Ability to Mount an Effective Defense Due to the Likelihood that Key Defense Witnesses Will Assert Their Fifth Amendment Rights Rather Than Testify for Jinhua .................................................................................................... 5

     B.     The Five Keating Factors Also Weigh Heavily in Favor of a Stay ........................ 8

         1.     Micron Fails to Establish any Significant Prejudice Caused by a Further Stay .................................................................................... 8

         2.     Jinhua Would Be Significantly Prejudiced if the Stay is Lifted .............. 14

         3.     Court Convenience and Judicial Resource Efficiency Weigh in Favor of Continuing the Stay ................................................................ 16

         4.     Third Party and Public Interests Will Not Be Impaired By Continuation of the Stay ............................................................................ 18

V.      CONCLUSION ..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Acacia Corp. Mgmt., LLC v. United States*, CIV F-07-1129 AWI GSA, 2009 U.S. Dist. LEXIS 49484, 2009 WL 1531099 (E.D. Cal. May 28, 2009) ................................. 16

*Bell ex. rel. Eco Sci. Sols., Inc. v. Taylor*, No. 17-00530 LEK-RLP, 2019 U.S. Dist. LEXIS 70528 (D. Haw. Apr. 26, 2019) ............................................................. 17

*Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) ................................................ 16

*Cal-Cleve v. Wrag-Time Air Freight, Inc.*, No. CV 04-10543 SJO (JTLx), 2005 WL 8157878 (C.D. Cal. May 20, 2005) ........................................................ 18, 19, 20

*Douglas v. United States*, Nos. C 03-04518, C 04-05357, 2006 U.S. Dist. LEXIS 52754 (N.D. Cal. 2006) ............................................................................. 18, 19

*Fed. Ins. Co. v. Laney*, No. C 12-04708 WHA, 2013 WL 594267 (N.D. Cal. 2013) ............... 5, 15

*Fuller v. Amerigas Propane, Inc.*, Nos. C 09-2493 TEH, 09-2616 THE, 2009 U.S. Dist. LEXIS 71413 (N.D. Cal. Aug. 3, 2009) ....................................................... 4

*Genentech, Inc. v. JHL Biotech, Inc.*, No. C 18-06582 WHA, 2019 WL 1045911 (N.D. Cal. Mar. 5, 2019) ....................................................................... 11

*Javier H. v. Garcia-Botello*, 218 F.R.D. 72 (W.D. N.Y. 2003) ..................................... 19

*Jones v. Conte*, No. C 04-5312 SI, 2005 WL 1287017 (N.D. Cal. Apr. 19, 2005) ........... 4, 5, 7, 19

*Landis v. N. Am. Co.*, 299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ....................... 4

*McCormick v. Rexroth*, Case No. C 09-4188 JF, 2010 U.S. Dist. LEXIS 35783, 2010 WL 934242 (N.D. Cal. Mar. 15, 2010) ................................................... 16, 18

*Medina v. Argent Mortg. Co.*, No. 05-cv-2905 RS, 2006 U.S. Dist. LEXIS 30582 (N.D. Cal. May 11, 2006) ....................................................................... 17

*Mr. Dee's, Inc. v. Int'l Outsourcing Servs., LLC*, No. 08-C-457, 2008 WL 4853601 (E.D. Wis. Nov. 3, 2008) ........................................................................ 7

*Rivers v. Walt Disney Co.*, 980 F. Supp. 1358 (C.D. Cal. 1997) .................................... 4

*Rodriguez v. Summit Mortg. Realty, Inc.*, No. C05-02904 HRL, No. C05-02905 HRL, 2007 U.S. Dist. LEXIS 53179 (N.D. Cal. July 11, 2007) .................................. 20

*Sec. & Exch. Comm'n v. Alexander*, No. 10-CV-04535-LHK, 2010 WL 5388000 (N.D. Cal. Dec. 22, 2010) ....................................................................... 17

*Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368 (D.C. Cir. 1980) ................... 5

*Sec. & Exch. Comm'n v. Nicholas*, 569 F. Supp. 2d 1065 (C.D. Cal. 2008) ...................... 16

*Shannahan v. IRS.*, 672 F.3d 1142 (9th Cir. 2012) ................................................. 6

*Square 1 Bank v. Lo*, No. 12-cv-05595-JSC, 2014 WL 7206874 (N.D. Cal. Dec. 17, 2014)........................................................................................................................... 5, 15

*Starlight Int'l, Inc. v. Herlihy*, No. CIV.A. 97-2329-GTV, 1998 WL 560045 (D. Kan. Aug. 4, 1998) ............................................................................................................ 11

*Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Financial, Inc.*, No. 2:09-cv-0954 FCD EFB, 2009 U.S. Dist. LEXIS 60849 (E.D. Cal. Jul. 15, 2009) ............... passim

*United States v. Booth*, CIV-F-09-1689 AWI BAK, 2010 U.S. Dist. LEXIS 9123 (E.D. Cal. Jan. 19, 2010) .......................................................................................... 15

*United States v. Hsu*, 155 F.3d 189 (3d Cir. 1998) ....................................................... 6

*Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36 (1993) .................................. 18

*Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523 (D.N.J. 1998)......................... 14

*Wroth v. City of Rohnert Park*, No. 17-cv-05339-JST, 2018 WL 888466 (N.D. Cal. Feb. 14, 2018)........................................................................................................ 18

**REGULATIONS**

83 FR 54519-02, 2018 WL 5425570 ............................................................................ 8

# I.   **INTRODUCTION**

Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua") opposes Micron's request to lift the stay of this matter, which was issued by the Court in July 2019.  At the time, the Court recognized that Jinhua's defenses would be hampered by the unavailability of key witnesses who would likely take the Fifth Amendment if called to testify.  Nothing has changed that equation, so the Court should deny Micron's motion.

The Defendants voiced concern at the time that many witnesses not named as individual defendants in the criminal matter may assert their rights under the Fifth Amendment (or the Taiwanese equivalent) based upon their concerns that they could be prosecuted by the Department of Justice.  Those same concerns continue to apply because the U.S. criminal case against Jinhua remains slated for trial, and the Taiwan criminal case against United Microelectronics Corporation ("UMC") and several individual defendants is on appeal after a trial decision was entered in June 2020.  Due to these pending criminal matters, numerous key defense witnesses, including the named defendants in the U.S. criminal trial (Stephen Chen, J.T. Ho, and Kenny Wang) and other unnamed UMC and Jinhua employees, may seek to invoke the Fifth Amendment if called to testify, thus depriving Jinhua of the ability to mount a full defense.

The Court's July 2019 Stay Order also recognized that judicial efficiency would be greatly aided by allowing the U.S. criminal matter to proceed first, with this matter benefitting from the evidence presented in the criminal matter.  Those judicial efficiencies are now more discernable, with the criminal trial currently calendared for August 2021.  The stay will not result in an "indefinite delay" as Micron claims, and this civil matter can proceed shortly thereafter using the evidence from that trial.  Indeed, Micron's motion concedes that it intends to heavily rely on matters covered in the Taiwan criminal trial and U.S. criminal matter.  Proceeding with this matter after the U.S. criminal trial will avoid duplicative motion practice and eliminate contentious disagreements over the scope of permissible deposition testimony.

Contrary to Micron, continuing the stay will not prejudice Micron.  Micron will be free to pursue its damages case and any trade secrets above and beyond those in the criminal matter once the criminal matter is resolved, and it will have the benefit of any documents and testimony

1  introduced in the U.S. and the Taiwan criminal proceedings.  And Jinhua has already been

2  effectively enjoined since it remains on the Department of Commerce's Entity List.

3      In short, all the same reasons for the stay apply now as they did last year.  Accordingly, the

4  stay should remain in place pending the resolution of the criminal trial.

5

6  **II.**  **STATEMENT OF FACTS**

7      **A.**  **The Timing of This Motion Within the Context of the U.S. and Taiwan
              Criminal Proceedings and the Instant Case**

8      On August 8, 2017, the Taiwan Taichung District Prosecutor's Office indicted UMC and

9  UMC employees Kenny Wang, J.T. Ho, and L.T. Rong on charges of trade secret

10  misappropriation.  CR-ECF No. 7 at 19.[1]

11      On December 5, 2017, Micron filed a Complaint seeking injunctive relief and damages

12  against UMC, Jinhua, and unnamed "Does 1-10" ("Complaint") for claims under 18 U.S.C. §§

13  1836 and 1839 (Defend Trade Secrets Act); 18 U.S.C. §§ 1962(c) and 1962(d) (Civil RICO); and

14  Cal. Civ. Code § 3426 (California Uniform Trade Secrets Act).  ECF No. 1.  Micron also named

15  Chen, Ho, and Wang as "Co-Conspirators."  *Id.* at 4, 5.  UMC Filed a Motion to Dismiss for Lack

16  of Personal Jurisdiction on February 15, 2018 (ECF No. 27), and Jinhua filed a Motion to Dismiss

17  for Lack of Jurisdiction and Insufficient Service of Process on October 2, 2018.  ECF No. 106.

18  This Court granted Jinhua's Motion to Dismiss on January 18, 2019 and afforded Micron leave to

19  file an Amended Complaint.  ECF No. 139.  Micron filed its First Amended Complaint ("FAC")

20  on February 8, 2019 (ECF No. 140-4), and this Court dismissed UMC's Motion to Dismiss as

21  moot shortly thereafter.  ECF No. 141.  UMC and Jinhua then refiled their Motions to Dismiss on

22  February 22, 2019 and March 14, 2019, respectively.  ECF Nos. 153 and 168.  In its May 2, 2019

23  Order, the Court dismissed Micron's claims under 18 U.S.C. §§ 1836 and 1839 (Defend Trade

24  Secrets Act), but only to the extent they are based on an acquisition of trade secrets occurring

25  before May 11, 2016.  ECF No. 199.  The Court also dismissed Micron's claims under 8 U.S.C.

26  §§ 1962(c) and 1962(d) (Civil RICO) and Cal. Civ. Code § 3426 (California Uniform Trade

27

28      [1] Citations to docket entries in 18-cv-6643 and 18-cr-465 are identified as CV-ECF and CR-ECF, respectively, to differentiate from docket entries in the current matter.

2

1  Secrets Act).  *Id.*  Micron's claims under 18 U.S.C. §§ 1836 and 1839 (Defend Trade Secrets Act)

2  that are based on an acquisition of trade secrets occurring after May 11, 2016 remain in the case.

3  *Id.*  These claims directly overlap with the claims in the Government's criminal case against UMC,

4  Jinhua, Chen, Ho, and Wang.  Micron filed its Second Amended Complaint ("SAC") on May 24,

5  2019.  ECF No. 206.

6  　　　　On September 27, 2018, the United States Department of Justice indicted UMC, Jinhua,

7  Chen, Ho, and Wang on charges of conspiring to commit economic espionage and theft of trade

8  secrets, in violation of 18 U.S.C. §§ 1831 and 1832, as well as substantive counts of economic

9  espionage and theft of and/or receipt of stolen trade secrets.  CR-ECF No. 1 ("Indictment").  The

10 Indictment, which was unsealed on November 1, 2018, revealed that the seven counts brought

11 against the Defendants in the criminal case were predicated on the very same acts Micron has

12 alleged as the premise for its claims under 18 U.S.C. §§ 1836 and 1839 (Defend Trade Secrets

13 Act) in the instant case.  *See id.*; ECF No. 247 at 2.

14 　　　　On June 12, 2020, the Taichung District Court issued its verdict on the criminal charges

15 against UMC and the individual defendants after a three-month trial that lasted from January to

16 April 2020.  *See* CR-ECF No. 144 at 6.  The Taiwanese prosecutor (at Micron's request) appealed

17 the verdict.  *Id.*  UMC and individual defendants J.T. Ho, Kenny Wang, and L.T. Rong (all of

18 whom are named in Micron's complaint) also appealed.  *Id.*

19 　　　　On October 29, 2020, UMC appeared before this Court to enter a guilty plea in the U.S.

20 criminal matter.  CR-ECF No. 148.  The plea relates to a single trade secret among the eight trade

21 secrets mentioned in the 2018 indictment.  *Id.* at ¶¶ 2(v), 2(w).  Jinhua, Ho, Chen, and Wang remain

22 defendants in the criminal matter, which is set for trial in August 2021.  ECF No. 256 at 11.

23 　　　**B.**　　　**The Precise Same Set of Facts Are Alleged by the Government in Its**
   　　　　　　　**Indictment**

24

25 　　　　In conjunction with its Indictment, the Government filed the United States' Complaint for

26 Injunctive Relief on November 1, 2018, Case no. 18-cv-6643 (CV-ECF No. 1 ("Government

27 Complaint")) asking for equivalent relief Micron seeks in its SAC.  *See* SAC "Prayer for Relief"

   at 45-46; *and* Government Complaint at ¶ 1, (seeking permanent injunction to prevent UMC,

28

Jinhua, and Chen from transferring the alleged Micron trades secrets). The Government subsequently filed a Notice of Related Case in this proceeding the following day ("Notice"), (*see* ECF No. 131), giving this Court notice that the Indictment and the Government Complaint were related to the instant proceeding. In this Notice, the Government made explicit that the Government Complaint and the "Indictment concern[] the same events as described in Micron's civil complaint," and that "all three actions concern one or more of the same defendants and the same alleged events, occurrences, transactions, or property."  Notice at 3-4 (internal quotations omitted).[2]

Therefore, as the Court noted in granting the stay, the U.S criminal case is "based on the same allegations set forth in the instant civil case, i.e., the acquisition, use and disclosure of Micron's trade secrets."  ECF No. 247 at 2 (citing Indictment, CR-ECF No. 1, ¶¶ 3-6, 8-9, 18, 20, 24-25, 32, 35-45).

## III.    LEGAL STANDARD

"Granting a motion to stay is within the sound discretion of the Court."  *Fuller v. Amerigas Propane, Inc.*, Nos. C 09-2493 TEH, 09-2616 THE, 2009 U.S. Dist. LEXIS 71413, at *2 (N.D. Cal. Aug. 3, 2009).  The power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Id.* (quoting *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936) (internal quotation marks omitted))); *see also* ECF No. 247 at 2 (reciting that a court has discretion to stay a civil case in favor of a criminal prosecution).

A court may stay a civil proceeding "when the interests of justice seem to require such an action."  *See Jones v. Conte*, No. C 04-5312 SI, 2005 WL 1287017, at *1 (N.D. Cal. Apr. 19, 2005) (quoting *Keating v. Office of Thrift Supervision,* 45 F.3d 322, 324 (9th Cir. 1995)).  Whether to stay civil proceedings where there is a parallel criminal proceeding should be determined based on the circumstances and competing interests involved.  *Id.*  "In considering whether a stay is

[2] The government recently dismissed UMC from the civil matter pursuant to the plea agreement.  CR-ECF No. 148 at ¶ 15.

DEFENDANT JINHUA'S OPPOSITION TO           CASE NO. 3:17-CV-06932-MMC
MICRON'S MOTION TO LIFT STAY

1  appropriate, a court 'should consider the extent to which the defendant's fifth amendment rights

2  are implicated,' and, in addition, 'should generally consider the following factors: (1) the interest

3  of the plaintiffs in proceeding expeditiously with the civil litigation or any particular aspect of it,

4  and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of

5  the civil proceedings may impose on defendants; (3) the convenience of the court in the

6  management of its cases, and the efficient use of judicial resources; (4) the interests of persons not

7  parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal

8  litigation.'"  ECF No. 247 at 2-3 (citing *Keating*, 45 F.3d at 324-25).

9

## IV.  **ARGUMENT**

10

11
   A.  **Lifting the Stay Will Significantly Impair Jinhua's Ability to Mount an Effective Defense Due to the Likelihood that Key Defense Witnesses Will Assert Their Fifth Amendment Rights Rather Than Testify for Jinhua**

12  "[T]he strongest case for deferring civil proceedings until after completion of criminal

13  proceedings is where a party under indictment for a serious offense is required to defend a civil or

14  administrative action involving the same matter."  *Jones*, 2005 U.S. Dist. LEXIS 46962, at *3

15  (quoting *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980)).

16  This is particularly true because criminal and civil proceedings arising out of the same matter

17  present a "concern that allowing the civil action to proceed may undermine the defendant's Fifth

18  Amendment privilege against self-incrimination, result in discovery beyond the scope of what the

19  Federal Rules of Criminal Procedure allow, expose the defense strategy, or otherwise cause

20  prejudice."  *Square 1 Bank v. Lo*, No. 12-cv-05595-JSC, 2014 WL 7206874, at *1 (N.D. Cal. Dec.

21  17, 2014); *see also* ECF No. 247 at 5 (noting that the disclosures UMC and Jinhua would have to

22  make in defense of the civil case "would likely be in excess of that to which the government would

23  be entitled under the Federal Rules of Criminal Procedure" and citing *Fed. Ins. Co. v. Laney*, No.

24  C 12-04708 WHA, 2013 WL 594267, at *3 (N.D. Cal. 2013)).

25         Lifting the stay here prior to the resolution of the criminal case would raise all of the

26  concerns cited above.  Most significantly, it would put key defense witnesses — including current

27  and former employees of Jinhua and UMC, and potentially countless other third parties — in the

28

DEFENDANT JINHUA'S OPPOSITION TO
MICRON'S MOTION TO LIFT STAY

CASE NO. 3:17-CV-06932-MMC

1   impossible position of deciding between putting themselves in jeopardy of potential criminal

2   prosecution by testifying and providing discovery on behalf of Jinhua or asserting their Fifth

3   Amendment, but thereby depriving Jinhua of their favorable testimony.   There can be no doubt

4   that the Fifth Amendment rights of Jinhua and UMC employees (including, but not limited to,

5   Chen, Ho, and Wang), the unnamed defendants "Does 1-10," and so-called "founders" of Jinhua

6   — whom Micron has yet to identify — will be directly implicated if the stay is lifted and the civil

7   case is allowed to proceed.  The SAC lists "Does 1-10" as Defendants and alleges that Chen, Wang

8   and Ho and Jinhua's unspecified "founders" were part of a conspiracy.  ECF No. 206-3 at ¶¶13-

9   20, 67.   Chen, Wang and Ho were indicted in the criminal case.   Although "Does 1-10" and

10   Jinhua's "founders" were not indicted in the criminal case, as alleged "Co-Conspirators," they

11   continue to face the significant risk of potential prosecution and thus have valid Fifth Amendment

12   rights.   As this Court previously found, because both the civil and criminal actions allege a

13   company-wide conspiracy, UMC and Jinhua officers and employees (other than the three

14   individual defendants in the U.S. criminal case) are likely to be called as witnesses in this case and

15   undoubtedly will assert their respective privileges against self-incrimination as long as the criminal

16   case is ongoing.  *See* ECF. No. 247 at 3.

17        Although Micron argues that Stephen Chen, J.T. Ho, and Kenny Wang are unlikely to ever

18   testify in this case (which is entirely unclear and unknown at this time),[3] the Fifth Amendment

19   rights of other current and former Jinhua and UMC employees are directly implicated.   Their

20   conduct, knowledge and motivations in developing the DRAM technology will be *the* critical

21

22        [3] Micron asserts that individual defendants Chen, Ho, and Wang have not participated in the
   criminal case and argues they never will.  This misleading argument should be ignored for a
23   number of reasons.  First, Micron offers no evidence to support the allegation that these individuals
   will never participate in the criminal case—the stay should not be lifted based on mere speculation.
24   Further, Micron inaccurately describes individual defendants Chen, Ho, and Wang as fugitives.
   ECF No 256 at 10.  This statement is false and inflammatory.  Chen, Ho, and Wang are not
25   fugitives; as Micron concedes, they reside in countries with no extradition treaties with the United
   States.  ECF No 256 at 10-11 (citing *United States v. Hsu*, 155 F.3d 189, 193 n.2 (3d Cir. 1998)
26   (noting absence of an extradition treaty between the U.S. and Taiwan); *Shannahan v. IRS.*, 672
   F.3d 1142, 1144 (9th Cir. 2012) ("China has no extradition treaty with the United States.")).
27

28

DEFENDANT JINHUA'S OPPOSITION TO                    CASE NO. 3:17-CV-06932-MMC
MICRON'S MOTION TO LIFT STAY

issues Micron must explore in discovery to make its case.  It thus goes without question that these witnesses will be subpoenaed to testify, produce documents, answer interrogatories, and be under court order to perform other discovery activities once the stay is lifted.  But at the same time, many of them may justifiably fear being investigated and potentially prosecuted by the Department of Justice if they agree to testify.  Accordingly, "if discovery moves forward, [Jinhua and UMC officers and employees] will be faced with the difficult choice between asserting [their] right against self-incrimination, thereby inviting prejudice in the civil case, or waiving those rights, thereby courting liability in the [criminal] case." *Jones*, 2005 WL 1287017, at *1.

While corporate defendants do not have a privilege against compulsory self-incrimination, Jinhua's officers and employees have Fifth Amendment rights and their testimony will be essential to mounting Jinhua's defense.  *See Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Financial, Inc.*, No. 2:09-cv-0954 FCD EFB, 2009 U.S. Dist. LEXIS 60849, at *8 (E.D. Cal. Jul. 15, 2009).  Accordingly, many officers or employees may "assert their respective privileges against self-incrimination" rather than testify on Jinhua's behalf.  ECF No. 247 at 3.  As such, just as in 2019, there remains in the civil case a substantial "risk of prejudice to UMC and Jinhua arising from an inability to obtain testimony from individuals who have the right not to incriminate themselves."  ECF No. 247 at 4 (citing *Taylor*, 2009 U.S. Dist. LEXIS 60849, at *8 (holding, where corporation's directors and officers had been indicted for engaging in the same conduct for which civil plaintiff sought to hold corporation liable, corporation was "likely to be greatly prejudiced in [its] ability to meaningfully defend itself in the civil matter"); *Mr. Dee's, Inc. v. Int'l Outsourcing Servs., LLC*, No. 08-C-457, 2008 WL 4853601, at *1 (E.D. Wis. Nov. 3, 2008) (holding where corporation, "to mount an effective defense" to civil action, needed testimony from indicted officers and employees, "risk of prejudice" to corporation "arising from an inability to access key information and witnesses" was "substantial")).

Because the testimony of these and other Jinhua (and UMC) officers and employees will be essential to mounting Jinhua's defense to Micron's claims, and because there is a serious danger that these individuals may invoke their Fifth Amendment rights, the Court should refrain from

7

lifting the stay until <u>only after</u> the criminal case is finished.  *Taylor*, 2009 U.S. Dist. LEXIS 60849, at *8.  Failure to do so will unquestionably compromise Jinhua's ability to mount an adequate defense (*see* Section IV.B.2).

### B.    The Five Keating Factors Also Weigh Heavily in Favor of a Stay

While protecting the constitutional rights at stake alone warrants a stay, the five factors enumerated in *Keating* also support a stay.

#### 1.    Micron Fails to Establish any Significant Prejudice Caused by a Further Stay

Micron's Motion speculates about the ongoing relationship between UMC and Jinhua, but in reality, little has changed since the defendants' motion to stay was granted on July 11, 2019. The operative facts that counseled in favor of the initial stay remain the same.  As explained below, Jinhua ceased operation when the U.S. Government placed Jinhua on the "Entity List," continues to be idle and has taken prompt and appropriate measures to preserve evidence. And Jinhua's currently scheduled criminal trial is only 8 months away.  If anything, the rationale underlying the initial stay applies more strongly today. As set forth below, Micron's interests will not be impaired from a continued stay of this proceeding pending resolution of the parallel criminal case.

#### a.    Jinhua Has Effectively Ceased Operation Since Being Placed on the "Entity List"

Contrary to Micron's assertions, Jinhua has effectively ceased operations since it was put on the United States Department of Commerce's "Entity List" on October 30, 2018, which prohibits anyone from exporting or transporting to Jinhua "items subject to the EAR [Export Administration Regulations]" without a license and further imposes a "presumption of denial" as to any license request.  *See* 83 FR 54519-02, 2018 WL 5425570; Declaration of Jinfu Zheng ("Zheng Decl.") at ¶ 6; Declaration of Mario Moore ("Moore Decl."), Ex. B [Saif M. Khan, *U.S. Semiconductor Exports to China: Current Policies and Trends*, CSET (Oct. 2020)], at 12-13 (demonstrating Applied Materials, KLA-Tencor, Lam Research, ASML, Tokyo Electron and other Japanese SME firms all stopped working with Jinhua immediately after Jinhua was put on the "Entity List" and thereafter Jinhua halted operations); Declaration of Fei Hu ("Hu Decl.") at ¶ 3(a). For the same reason, UMC also stopped all Jinhua-related research and development activities on

8

October 31, 2018. *See* Moore Decl., Ex. C [Scott Morgan, *Taiwan's UMC freezes ties with Chinese firm in response to US sanctions*, TAIWAN NEWS (Nov. 1, 2018)]; Zheng Decl. at ¶ 7; Hu Decl. at ¶ 3(b). To the extent any transfer of any technology developed by UMC occurred, it happened before Jinhua was placed on the "Entity List." *See* CR-ECF No. 148 at 6 ¶ 2(n).

Micron repeats its unsupported accusations that high-ranking UMC employees' actions were under Jinhua's direction. Despite citing to the entirety of "UMC and Jinhua's DRAM Technology Cooperation Agreement and UMC's Hiring of the Individual Defendants" section of UMC's Plea Agreement, Micron failed to identify a single fact in the Plea Agreement to support its arguments — there are none. *See* CR-ECF No. 148 at 4-10 ¶¶ 2(g)-(z).

Micron's assertion that UMC and Jinhua have used and continue to use Micron's alleged trade secrets is solely based on the additional published U.S. patent applications assigned to UMC and Jinhua between May 23, 2019 and December 2, 2020 ("Additional Published Applications") and is misleading.[4] The Additional Published Applications are being published in the ordinary course based on applications filed ***before*** Jinhua was put on the entity list, a fact Micron chose not to mention. All of the Additional Published Applications claim priority to either a parent Chinese application or a parent U.S. patent application that was filed on or before October 18, 2018. *See* Ex. F, Tung Decl. at ¶¶ 4-7. Thus, everything is based on past acts, not ongoing cooperation between Jinhua and UMC—the cooperation ended when Jinhua was placed on the Entity List.

Micron's Sinophobic allegations reach a new low when it speculates that the PRC would build a DRAM industry using its alleged "trade secret" "through Jinhua or some surrogate," "some other PRC DRAM company," or "other government-owned DRAM startups." ECF No. 256 at 2, 5, 7, 16. Not surprisingly, Micron failed to support its political canard by identifying even one

---

[4] Notably, Micron provides no support for its assertion (ECF No. 256 at 11) that the 193 patents issued to UMC and Jinhua disclose confidential information of Micron. Given that the patents are in the public record (ECF No. 256-6 at ¶¶ 2-3), and many have been there for many months, Micron has the opportunity to review those patents with a technical expert and identify the purported trade secrets allegedly disclosed in the patents and yet has chosen not to do so. Micron could also have filed a petition with the Patent Office for correction of inventorship as to any patents for which it had evidence that the inventions were actually Micron's. Instead, Micron simply tabulated the patents on which UMC and Jinhua are both listed as assignees or applicants, with no technical analysis of the actual patents. ECF No. 256-6.

9

1    such entity.  Jinhua has not provided its technology to any third parties, including any Chinese

2    government agencies, officials, or any other Chinese companies.  *See* Zheng Decl. at ¶ 8.

3        Micron's purported concerns about DRAM development in China are belied by its own

4    activities, as it continues to expand its DRAM manufacturing and R&D facilities in China.  *See*

5    Moore Decl., Ex. D [Ma Si, *Micron bets on Xi'an plant for accolades*, CHINA DAILY (Apr. 16,

6    2020)] (explaining Micron has Xi'an DRAM chip manufacture plant, Shanghai engineering center,

7    sales, marketing, and customer labs in Beijing, Shanghai and Shenzhen); Hu Decl. at ¶ 3(c).

8    Moreover, Manish Bhatia, Micron's executive vice president, has publicly stated that expressed

9    "emerging Chinese rivals pose no threat" because the memory chipset industry is a moving target

10   and it would take them time to catch up.  Moore Decl., Ex. E [Cheng Ting-Fang, et al., *Micron*

11   *says emerging Chinese rivals pose no threat – for now*, NIKKEI ASIA (Oct. 7, 2020)]; *see also*

12   Moore Decl., Ex. F [*Experience is more important than money: Micron does not believe in the*

13   *imminent success of Chinese memory manufacturers and is afraid of competition with them*, 4YOU

14   DAILY (Oct. 2020)]; Hu Decl. at ¶¶ 3(d)-(e).

15       As concluded by the Court, "as a practical matter, Jinhua's ability to manufacture DRAM

16   products has been greatly diminished if not entirely foreclosed."  *See* ECF No. 230 at 4.  Nothing

17   has changed that observation.  There has been no cooperation between UMC and Jinhua since

18   then.  Despite Micron's arguments, a further stay of this case would not result in any prejudice to

19   Micron.

            **b.**       **There Are Sufficient Remedies Available to Micron**

20       Micron is also unable to show any prejudice because, as the Court has correctly found in

21   its Order granting the stay,  any harm to Micron can be remedied by "monetary damages or, . . .

22   an order directing ownership of UMC/Jinhua patents based on Micron trade secrets be transferred

23   to Micron, if it obtains a judgment in its favor."  ECF No. 247 at 5.  This is especially true because

24   the technology UMC was working on with Jinhua under the technology development agreement

25   was not the most up-to-date DRAM design.  *See* Moore Decl., Ex. H [Peter Singer, *DRAM, NAND*

26   *and Emerging Memory Technology Trends and Developments in 2019*, SEMICONDUCTOR DIGEST

27   (Sept. 13, 2019)] (showing 14nm-20nm are the current DRAM design); Hu Decl. at ¶ 3(g); CR-

28

DEFENDANT JINHUA'S OPPOSITION TO          CASE NO. 3:17-CV-06932-MMC
MICRON'S MOTION TO LIFT STAY

1   ECF No. 148 at 5 (finding the DRAM technology under the UMC and Jinhua technology

2   development agreement was at least one generation behind the most advanced technology back in

3   2016 by the Taiwan Ministry of Economic Affairs Investment Committee).  Such outdated design

4   rules in the DRAM industry cannot support Micron's allegations that "Micron will never be made

5   whole merely by damages or patent re-assignment" and "they can never be restored."  Micron is

6   free to enforce the patents, if they are transferred to Micron after the final judgment, against any

7   entity employing the patented technology.

8        Micron's reliance on *Starlight Int'l, Inc. v. Herlihy*, No. CIV.A. 97-2329-GTV, 1998 WL

9   560045 (D. Kan. Aug. 4, 1998), is as misplaced now as it was during the briefing of the initial

10  stay.  The stay in *Starlight* was granted because there was a significant risk the defendant would

11  dissipate assets.  *Id.* at \*9.  As the Court noted, Micron failed to assert that "Jinhua is likely to

12  dissipate assets, including any current or future patents."  ECF No. 247 at 5 n.6.  Yet again, Micron

13  has not asserted such a possibility.

14        **c.    Evidence Preservation Measurements Have Been Implemented**

15        Micron's allegation that the continued stay of the case would risk the loss of third-party

16  evidence is largely unfounded and speculative.  Micron specifically pointed out Jinhua's

17  equipment vendors as such third parties, relying on *Genentech, Inc. v. JHL Biotech, Inc.* But

18  *Genentech* does not support its position.  No. C 18-06582 WHA, 2019 WL 1045911, at \*25-26

19  (N.D. Cal. Mar. 5, 2019).  Unlike here, in *Genentech*, the third parties were the plaintiff's direct

20  competitors.  *See id.* at \*53-54.  Jinhua did not disclose any information to any of Micron's direct

21  competitors or anyone else.  *See* Zheng Decl. at ¶ 8.  However, Micron has actually subpoenaed at

22  least Applied Materials, Inc., KLA-Tencor Corporation and Lam Research Corporation early in

23  the case and they have participated in this case as interested parties and/or miscellaneous parties.

24  *See* Moore Decl., Ex. I [Notice of Subpoena to KLA-Tencor Corporation (June 4, 2019)]; Moore

25  Decl., Ex. A [Notice of Subpoena to Applied Materials, Inc. (June 4, 2019)]; ECF Nos. 145

26  (demonstrating Micron served a subpoena to Lam Research on July 13, 2018), 146, 147, and 148

27  (showing Applied Materials, KLA-Tencor and Lam Research all retained counsel in this case).

28

DEFENDANT JINHUA'S OPPOSITION TO             CASE NO. 3:17-CV-06932-MMC
MICRON'S MOTION TO LIFT STAY

All of these third-party equipment vendors are sophisticated companies and presumably represented by counsel and have been informed about their duty to preserve evidence.

Micron's attempt to use its own employee attrition to justify the alleged loss of witnesses and evidence from UMC, Jinhua or third parties is unjustifiable.  There is no basis to extrapolate UMC's or Jinhua's employee retention from that of Micron.  Nor has Micron supported the notion that memories have failed because former employees are no longer in the same place.  Micron's baseless claims about the threat of lost evidence resulting from the passage of time and Micron employees leaving Micron should be rejected.  ECF No. 256 at 11, 14.  There is no showing as to any relevance of any such employees.  Nor is there any showing by Micron that it could not still call those individuals as third-party witnesses in this case.  In fact, Micron should be able to preserve all the Micron documents possessed by each of its former employees and its failure to do so cannot serve as a basis for Micron to claim prejudice.

In furthering its argument that evidence will be lost, Micron continues to lump Jinhua together with UMC and improperly suggests that because one UMC laptop went missing that is somehow attributable in part to Jinhua.  The UMC Public Laptop 2 that Micron claimed has not been provided to the Taiwan authorities or the United States went missing prior to the searches conducted by the Taiwan authority on February 7, 2017, about 10 months before Micron filed the original complaint against UMC and Jinhua in this Court.  *See* CR-ECF No. 148 at 9 ¶ 2(y).  UMC also agreed to conduct "an internal investigation by a reputable international law firm into the disposition and current whereabouts of Public Laptop 2."  *See id.* at 12 ¶ 9(e).  Other than by innuendo, Micron made no assertion, and provided no support for the fact that Jinhua has any knowledge about the missing laptop.  UMC's inability to locate its Public Laptop 2 cannot be used to infer that Jinhua will destroy evidence.

Micron cited Wang Decl. ¶ 3 and Ex. 1 at 10 in support of its claim that "a UMC senior manager ordered the destruction of relevant evidence."  A careful review of the cited documents reveals nothing remotely supporting Micron's statement much less the notion that Jinhua had anything to do with it.

DEFENDANT JINHUA'S OPPOSITION TO             CASE NO. 3:17-CV-06932-MMC
MICRON'S MOTION TO LIFT STAY

1    Jinhua acted appropriately in issuing a document hold notice for this case, and the hold

2    remains in place.  *See* Zheng Decl., ¶¶ 3-4.  Jinhua implemented measures preserving evidence

3    early in the case and continues to preserve evidence, and Micron has not provided any evidence

4    supporting its alleged concern relating to the destruction by Jinhua, UMC or any of the third parties

5    of evidence during the continued stay of this case.  Any prejudice to Micron during the continued

6    stay is thus negligible.

7        **d.    Both Jinhua's Civil and Criminal Investigation Status Show a**
             **Continued Stay Has No Prejudice to Micron**
8
9    When the stay was granted, the civil case was in its very early stages—neither UMC nor

10   Jinhua had answered and Micron's Second Amended Complaint was dismissed, without prejudice.

11   The Court acknowledged this fact and supported the stay because the "vast majority of factual

12   disputes pertaining to liability in the instant case are likely to be resolved in the course of the

13   criminal case."  ECF No. 247 at 6.  The parallel criminal case against UMC supported the Court's

14   finding, as the criminal investigation against UMC has significantly narrowed to one count.  Not

15   only that, the continued stay of this case against Jinhua will not result in an "indefinite delay" as

16   asserted by Micron.  The criminal trial is currently scheduled for August 2021.  *See* CR-ECF No.

17   138.  With the strong likelihood that the criminal investigation would streamline and narrow the

18   issues, the continued stay of the civil proceeding against Jinhua does not prejudice Micron.

         **e.    The Proximity of the Jinhua Criminal Trials Compels**
19            **Maintaining the Stay**

20       The fact that the criminal trial is currently scheduled for August 2021 further weighs in

21   favor of continuing the stay.  The prejudice to Micron of continuing the trial for this period will be

22   negligible, if not non-existent, and will be far outweighed by the prejudice to Jinhua of lifting the

23   stay.  Courts have repeatedly favored a stay of a civil case in circumstances where the overlapping

24   criminal proceeding was close to trial.  *Taylor*, 2009 U.S. Dist. LEXIS 60849, at *2 (granting a

25   six-month stay of all proceedings in a civil fraud case when a parallel criminal case was headed to

26   trial); *McCormick v. Rexroth*, Case No. C 09-4188 JF, 2010 U.S. Dist. LEXIS 35783, 2010 WL

27   934242 (N.D. Cal. Mar. 15, 2010) ("Given the proximity of the trial date in the criminal case, there

28

13

is little to be gained from a situation in which the Court likely would be called upon to determine what types of discovery do and do not fall within the bounds of a partial stay.").

### 2. Jinhua Would Be Significantly Prejudiced if the Stay is Lifted

As detailed previously (*see* Section IV.A), Jinhua would be significantly prejudiced if the stay is lifted because key defense witnesses would be reluctant to waive their Fifth Amendment rights to testify in this case while the criminal case is pending, thus depriving Jinhua of valuable evidence.   Moreover, the broader scope of civil discovery may unfairly impact Jinhua.

### a. The Implicated Fifth Amendment Rights Extend to Nearly the Entire Case and Will Have an Extensive Impact

When evaluating the extent to which a defendant's Fifth Amendment rights are implicated, courts also consider: (a) the extent to which the issues in the criminal case overlap with those presented in the civil case; (b) the status of the criminal proceeding, including whether the defendant has been indicted; and (c) whether the civil proceedings may expand the scope of criminal discovery beyond the limits of the FRCP or otherwise prejudice the case.  *Taylor*, 2009 U.S. Dist. LEXIS 60849, at *6; *Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998).  These factors when analyzed in the context of this case weigh heavily in favor of a stay.

The issues in the criminal proceeding do not just overlap with the issues in this proceeding; they are *essentially identical*.  *See* ECF No. 247 at 2 (finding the United States has charged UMC, Jinhua, Chen, Ho, and Wang with violating 18 U.S.C. §§ 1831(a) and 1832(a), based on the same allegations set forth in the instant civil case).  Both the Government and Micron allege that Jinhua and UMC devised a scheme to steal Micron's trade secrets and allege the same motivations for doing so.  Both implicate the identical cast of players (Jinhua, UMC, Chen, Ho, and Wang), and allege wrongdoing based on the exact same alleged conduct of those players.  In its Order denying the Motions to Dismiss, this Court recognized the overlap, finding that the Indictment "aris[es] from the same factual allegations as those asserted in the instant civil action."  *See* ECF No. 247 at 13.  The Government too recognizes them to be the same, as noted in the Notice of Related Cases filed in this proceeding "all three actions concern . . . the same alleged events, occurrences,

transactions, or property." *See* Notice at 4 (referencing the Complaint, the Indictment, and the Government Complaint). And, in light of the substantial overlap, the Government had no objection to its own civil complaint being stayed because of it. CR-ECF No. 25-1. This factor alone shows that proceeding here will substantially implicate the Defendants' and most of the essential witnesses' Fifth Amendment rights against self-incrimination, create unnecessary complexities with respect to discovery, expose the Defendants' strategy or theories with respect to the criminal proceeding, or otherwise prejudice the pending criminal proceedings.

The status of the parallel proceedings does not change this analysis. Here, Jinhua, UMC, Chen, Ho, and Wang have all been indicted. Because the Fifth Amendment rights of Jinhua's employees have been directly-implicated by the ongoing criminal prosecution and Jinhua cannot realistically defend against Micron's claims in this proceeding without the assistance of these witnesses, Jinhua's ability to defend itself in this case will be significantly jeopardized if the stay is lifted while the criminal case is pending.

Furthermore, there is considerable risk that the broader scope of civil discovery here will impair the integrity of the parallel criminal proceeding. Disclosures required in this civil proceeding will be highly relevant to the issues in the criminal proceeding and will give the government access to discovery it cannot obtain itself under the Federal Rules of Criminal Procedure (such as documents derived from initial disclosures, defendants' responses to interrogatories, pleadings, and admissions at any depositions). *See Fed. Ins. Co.*, 2013 U.S. Dist. LEXIS 21250, at *8; *see also Square 1 Bank*, 2014 WL 7206874, at *2 (observing "it is possible that any information [the defendant] produces to fulfill his civil discovery obligations—in particular, requests for admissions and deposition testimony—may be used against him in his criminal case."); ECF No. 247 at 5 (noting that the disclosures UMC and Jinhua would have make in defense of the civil case "would likely be in excess of that to which the government would be entitled under the Federal Rules of Criminal Procedure"). If this proceeding were to proceed in tandem with the criminal proceeding, the more liberal obligations under civil discovery rules could force Jinhua, UMC — and potentially Chen, Ho, Wang, and other individuals — to produce materials that would expose facts that they would not be required to produce in the criminal

15

1    proceeding, and substantially prejudice all the indicted parties when they would inevitably be used
2    against them there anyway.
3          Therefore, since the simultaneous civil and criminal proceedings involve nearly identical
4    facts, Fifth Amendment concerns weigh heavily in favor of granting a stay.  *See United States v.*
5    *Booth*, CIV-F-09-1689 AWI BAK, 2010 U.S. Dist. LEXIS 9123 (E.D. Cal. Jan. 19, 2010) (staying
6    a civil case completely until resolution of the parallel criminal case); *Taylor*, 2009 U.S. Dist.
7    LEXIS 60849, at *2 (granting a six-month stay of all proceedings in a civil fraud case when a
8    parallel criminal case was ongoing because "[b]oth the civil and criminal cases arise from the
9    alleged scheme to defraud . . . [, and as] such, the pending civil litigation may substantially
10   implicate defendants' Fifth Amendment rights against self-incrimination, create unnecessary
11   complexities with respect to discovery, expose defendants' strategy or theories with respect to the
12   criminal case, or otherwise prejudice the pending criminal proceedings."); *Acacia Corp. Mgmt.,*
13   *LLC v. United States*, CIV F-07-1129 AWI GSA, 2009 U.S. Dist. LEXIS 49484, 2009 WL
14   1531099 (E.D. Cal. May 28, 2009) (granting stay of civil action until the resolution of the parallel
15   criminal case); *Sec. & Exch. Comm'n v. Nicholas*, 569 F. Supp. 2d 1065 (C.D. Cal. 2008) (same);
16   *Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) (same).
17
18
19                    **3.      Court Convenience and Judicial Resource Efficiency Weigh in Favor
                               of Continuing the Stay**
20          As this Court previously recognized, the United States has charged UMC, Jinhua, Chen,
21   Ho, and Wang with violating 18 U.S.C. §§ 1831(a) and 1832(a), based on the same allegations set
22   forth in the instant civil case, *i.e.*, the acquisition, use and disclosure of Micron's trade secrets.  ECF
23   No. 247 at 2.  Accordingly, many of the factual disputes pertaining to liability in the civil case are
24   likely to be resolved in the course of the criminal case.  *Id.* at 6.  As such, even if the civil case
25   remains stayed, the Court will not have to ascend the learning curve twice as asserted by Micron
26   because resolution of at least some of the substantial factual dispute in the criminal case will ease
27   the Court's burden in learning facts in the civil case.  *See* ECF No. 256 at 15.
28

                                                        16

In addition, although the civil case has been pending for approximately three years, it remains at its very early stages. Neither UMC nor Jinhua has filed an answer. With the exception of limited jurisdictional discovery related to UMC prior to the commencement of criminal proceedings, no discovery has commenced. Therefore, continuing the stay is the more efficient approach. *See Sec. & Exch. Comm'n v. Alexander*, No. 10-CV-04535-LHK, 2010 WL 5388000, at *5 (N.D. Cal. Dec. 22, 2010) ("[W]hile it is generally preferable to avoid delay, in this case, where no answer has been filed and several defendants have not yet appeared, a stay may prove the more efficient course"); *Taylor*, 2009 WL 2136986, at *4 (finding that a stay would make efficient use of judicial resources where "[n]o answer has been filed, no scheduling order has been issued, and no dispositive motions have been filed"). A stay is especially appropriate for purposes of advancing judicial efficiency where, as here, the proceeding is in its very early stages. *See Medina v. Argent Mortg. Co.*, No. 05-cv-2905 RS, 2006 U.S. Dist. LEXIS 30582, at *7-8 (N.D. Cal. May 11, 2006) ("As discovery has not yet begun in this case, only the initial pleadings have been filed, and no dispositive motions have yet been presented, the efficient use of judicial resources favors a stay in this action.").

Micron relies on *Bell ex. rel. Eco Sci. Sols., Inc. v. Taylor*, No. 17-00530 LEK-RLP, 2019 U.S. Dist. LEXIS 70528, at *11 (D. Haw. Apr. 26, 2019) to argue that opening discovery in the civil case now will not likely create unnecessary duplication with the pending criminal case. Micron's reliance is misplaced. In *Bell*, only one of five specifically named individual defendants in the civil case was charged in the criminal case, and the other four individual defendants were able to proceed with discovery unhindered by Fifth Amendments concerns in the civil case. As set forth above, the Fifth Amendment implications in this case are much broader. Here, the SAC lists "Does 1-10" as Defendants and alleges that Chen, Wang and Ho and Jinhua's unspecified "founders" were part of a conspiracy. ECF No. 206-3 at ¶¶13-20, 67. As stated above, all of these individuals face significant risk of burdening their Fifth Amendment rights by proceeding in the civil case because they will likely be called as witnesses in the civil case and undoubtedly will assert their respective privileges against self-incrimination as long as the criminal case is ongoing. *See* ECF. No. 247 at 3. As such, lifting the stay of the civil case will result in duplicative proceedings

17

because the parties and the Court will be forced to consistently evaluate Defendants' and their witnesses' assertions of the Fifth Amendment rights.

In advancing the notion that the Court's case management weighs in favor of lifting the stay, Micron relied on *Cal-Cleve v. Wrag-Time Air Freight, Inc.*, which pertains to a significantly different situation. In *Cal-Cleve*, none of the defendants in the civil case had actually been indicted. No. CV 04-10543 SJO (JTLx), 2005 WL 8157878, at *5 (C.D. Cal. May 20, 2005). Moreover, there, the stay may have lasted at least five years because the federal criminal claims were subject to a five-year statute of limitations. *Id.* at *2, *4. However, in the instant case, the stay has been imposed for only one and a half years. Additionally, resuming the civil proceeding after the criminal proceeding may promote a more streamlined civil discovery and swifter resolution of the same. *See Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 42 (1993) (stating that "the outcome of the criminal case may encourage settlement"); *Douglas v. United States*, Nos. C 03-04518, C 04-05357, 2006 U.S. Dist. LEXIS 52754, at *17 (N.D. Cal. 2006) (allowing the criminal action to proceed first to narrow the issues and streamline discovery in the civil proceeding); *Wroth v. City of Rohnert Park*, No. 17-cv-05339-JST, 2018 WL 888466, at *3 (N.D. Cal. Feb. 14, 2018) (finding that "[t]he resolution of the criminal matter may narrow the scope of civil discovery"). Therefore, the Court's interest in convenience and efficiency of judicial resources would be better served by staying this proceeding pending the outcome of the criminal proceeding. *See McCormick*, 2010 WL 934242, at *3-4 ("Given the proximity of the trial date in the criminal case, there is little to be gained from a situation in which the Court likely would be called upon to determine what types of discovery do and do not fall within the bounds of a partial stay."); *see also* ECF No. 247 at 6 (finding that case management concerns and certain efficiencies in judicial time and resources also weigh in favor of a stay).

**4.    Third Party and Public Interests Will Not Be Impaired By Continuation of the Stay**

Micron fails to identify any third-party companies in the DRAM sector that would be adversely affected by the continuance of the stay. ECF No. 256 at 16. Micron's reliance on *Cal-Cleve* in this regard is misplaced. In *Cal-Cleve*, judicial notice gave rise to the concern that the

18

1    defendant was likely to continue with its alleged practice of unfairly competing with third-party

2    providers.  2005 WL 8157878, at *5.  Here, Micron does not present any evidence that Jinhua

3    unfairly competed with any third-party DRAM company, much less unfairly competed using

4    Micron's trade secrets.  In fact, as explained previously, Jinhua has effectively ceased operation

5    since being placed on the "Entity List," which prohibits anyone from exporting or transporting to

6    Jinhua "items subject to the EAR [Export Administration Regulations" without a license.  Jinhua's

7    operational cessation definitely demonstrates its inability to harm any third-party companies in the

8    DRAM sector.

9        The public interest is furthered by a stay because the "public's interest in the integrity of the

10   criminal case is entitled to precedence over the civil litigant." *Jones*, 2005 U.S. Dist. LEXIS 46962,

11   at *5 (quoting *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D. N.Y. 2003)).  In fact, the

12   public's interest is in "ensuring that the criminal process is not subverted by ongoing civil cases."

13   *Douglas*, 2006 U.S. Dist. LEXIS 52754, at *18-19.  In granting the stay, this Court previously found

14   that, although the public has a strong interest in the protection of trade secrets, such interest is

15   advanced by the pending criminal prosecution.  Nothing Micron advanced in its motion justifies

16   revisiting that analysis.

17       Under the guise of public interest, Micron makes a speculative political argument that,

18   because China reiterated its commitment to "technology self-reliance," "other state-owned DRAM

19   startups in China can easily take Jinhua's place" and exploit Micron's technology.  ECF No. 256 at

20   16-17.  First, politics have no place in this case.  Second, Micron's assertion that the Chinese

21   government would order the transfer of the purportedly misappropriated trade secret to other state-

22   owned DRAM companies in China is wholly unfounded and unsupportable.  Jinhua has not

23   transferred its DRAM technology to any third party.  Zheng Decl., ¶ 8.  Finally, Micron's argument

24   obviously ignores the massive expenditure of funds required to start a DRAM business, activity

25   that would be obvious to anyone in the industry if such activity were actually occurring.  There is

26   absolutely no support for Micron's assertions that China would use "other state-owned DRAM

27   startups in China . . . [to] take Jinhua's place."  ECF No. 256 at 16.

28

DEFENDANT JINHUA'S OPPOSITION TO          CASE NO. 3:17-CV-06932-MMC
MICRON'S MOTION TO LIFT STAY

1   Here, the public has an interest in ensuring the integrity of the still-pending criminal

2   prosecution of Jinhua, and respecting the integrity of the still-pending criminal proceedings in

3   Taiwan.  Moreover, any continuing third-party interest on behalf of Micron is adequately protected

4   by Jinhua's placement on the Entity List, such that Micron will not be prejudiced by the stay.

5   Furthermore, the interests of third parties and the public are outweighed by Fifth

6   Amendment concerns and the interests of justice.  *See Rodriguez v. Summit Mortg. Realty, Inc.*, No.

7   C05-02904 HRL, No. C05-02905 HRL, 2007 U.S. Dist. LEXIS 53179 (N.D. Cal. July 11, 2007)

8   (continuing a stay of civil proceedings for seven months or until the criminal trial was complete,

9   whichever came first, because of Fifth Amendment concerns, and stating that "[w]hile the court

10   and the public generally have an interest in the expeditious resolution of litigation, under the

11   circumstances presented here, the court concludes that, on balance, the interests of justice require

12   an extension of the stay of these proceedings.").  Therefore, third-party and public interests will not

13   be impaired by a continuation of the stay.

14   **V.    CONCLUSION**

15   For the reasons set forth herein, Jinhua respectfully requests that the Court maintain the

16   stay of this action pending resolution of the parallel criminal proceedings, including the Taiwan

17   criminal appeal and the U.S. criminal trial scheduled for August 2021.

18

19   DATED: December 18, 2020

20                                     DAN JOHNSON LAW GROUP, LLP

21                                     By: */s/ Daniel Johnson Jr.*
22                                      Daniel Johnson Jr.

23                                     Daniel Johnson Jr. (Bar No. 57409)
24                                     Mario Moore (Bar No. 231644)
        Robert G. Litts (Bar No. 205984)
25                                     DAN JOHNSON LAW GROUP, LLP
        1350 Old Bayshore Highway, Suite 520
26                                     Burlingame, CA 94010
        Telephone: (415) 604-4500
27                                     dan@danjohnsonlawgroup.com
        mario@danjohnsonlawgroup.com
28                                     robert@danjohnsonlawgroup.com

DEFENDANT JINHUA'S OPPOSITION TO                    CASE NO. 3:17-CV-06932-MMC
MICRON'S MOTION TO LIFT STAY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lyle B. Vander Schaaf (DC Bar No. 422380)
Fei Hu (DC Bar No. 1016150)
BRINKS GILSON & LIONE
1775 Pennsylvania Ave, NW, Suite 900
Washington, DC 20006
Telephone: (202) 296-8700
lvanderschaaf@brinksgilson.com
fhu@brinksgilson.com
Appearance *pro hac vice*

Harold V. Johnson (IL Bar No. 6188149)
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Drive, Suite 3600
Chicago, IL 60611
Telephone: (312) 321-4200
hjohnson@brinksgilson.com
Appearance *pro hac vice*

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT
CO., LTD.

21